SHILPI AGARWAL (SBN 270749)
AVRAM D. FREY (MJP 804789) (*Admitted Pro Hac Vice*)
EMI YOUNG (SBN 311238)
HANNAH KIESCHNICK (SBN 319011)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
Email: sagarwal@aclunc.org
afrey@aclunc.org
eyoung@aclunc.org
hkieschnick@aclunc.org

JUSTINA SESSIONS, State Bar No. 270914
JOHN P. FLYNN, State Bar No. 141094
COLLEEN BAL, State Bar No. 167637
MALAVIKA F. LOBO, State Bar No. 317635
ANA ALICIA SONTAG, State Bar No. 340602 (*Admission pending*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2000
Email: jsessions@wsgr.com
jflynn@wsgr.com
cbal@wsgr.com
mlobo@wsgr.com
asontag@wsgr.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, individually and on behalf of all others similarly situated, DIANA BLOCK, an individual, and COMMUNITY RESOURCE INITIATIVE, an organization,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, in his official capacity as SAN FRANCISCO SHERIFF,<br><br>Defendants. | CASE NO.: 4:22-CV-05541-JST<br><br>**DECLARATION OF JOSHUA SIMON IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: January 12, 2023<br>Time: 2:00 p.m.<br>Place: Courtroom 6<br>Judge: Hon. Jon S. Tigar |

## DECLARATION OF JOSHUA SIMON

I, Joshua Simon, declare:

1. I am 19 years old and a life-long resident of the Bay Area. I was on an ankle monitor for approximately four months while my case was pending in San Francisco Superior Court.

2. On May 22, 2022, I was arrested and taken to the San Francisco County Jail.

3. On May 27, 2022, I went to court and a judge ordered me released on the Sheriff's electronic monitoring program pending trial. I was told this meant that I would have to stay within a 50-mile radius of San Francisco but did not know what else being on the program involved. Neither the judge nor anyone else in the courtroom told me about the specific rules or conditions I'd be required to sign. Nobody told me anything about collection or sharing of my data; they just told me that I was on the monitor so the Sheriff would know if I violated the court's stay away order.

4. After I was ordered released, I was taken to a holding cell within the courthouse building. There, a Sheriff's deputy put the electronic monitor on my ankle and instructed me to report to the Sentinel program offices (located within a Sheriff's Department building) several days later.

5. I agreed to the electronic monitor because I thought it was the only way for me to get out of jail, and I was anxious to make it to my high school graduation that was scheduled for May 31, 2022. I care very much about my education, and began classes at City College this summer.

6. After my graduation, I went to Sentinel's office and then, for the first time, I saw the Sheriff's electronic monitoring "Program Rules." A Sentinel employee gave me a copy of the Rules and told me to sign it. I noticed Rules 5 and 13 and I understood what they meant. I did not feel comfortable giving up my rights against warrantless searches and location sharing, but I didn't think I had any choice about it. I did not have an attorney or anyone else with me at that time, and I signed the form as instructed because I did not think I would be permitted to leave the building unless I did what they told me to do.

7. I was on the electronic monitor for about four months, before the judge ordered it removed on or about September 21, 2022. My case still has not been resolved.

8. Being on the monitor and knowing that I could be called in for a check-in by the Sheriff's office at any time made it difficult to find consistent work and go about my regular activities.

9. Knowing that I could be searched at any time, or that my house could be searched, and that my location information could be stored and shared, was stressful to me. Growing up in Hunter's Point, San Francisco, I experienced being stopped and searched by police for no apparent reason. I worried that this rule would give police officers a license to stop and harass me even though I am not on probation or convicted of any charges.

10. One day, while I was wearing the ankle monitor, I saw someone randomly assault another person in a public place. I got scared that the police would later suspect me because the ankle monitor would show I was in the same area. I left as quickly as I could, but I have worried about this incident since. While I was on the ankle monitor I also worried that it would mistakenly connect me to other crimes in my area that I was not even aware of. This constant worry made it hard to live normally.

11. Now that the electronic monitor has been removed, I feel some relief from this anxiety. I still feel uncomfortable with the idea that the Sheriff might use and share the data it collected on me, because it feels like my privacy is being violated even though I am no longer on the ankle monitor. I hope to have my data deleted so that I can have my privacy and peace of mind.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of October 2022, at Pleasant hill, California.

Joshua Simon, Declarant

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Justina Sessions, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated: October 7, 2022                     */s/ Justina Sessions*
                                           Justina Sessions