SHILPI AGARWAL (SBN 270749)
AVRAM D. FREY (MJP 804789) (*Admitted Pro Hac Vice*)
EMI YOUNG (SBN 311238)
HANNAH KIESCHNICK (SBN 319011)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
Email: sagarwal@aclunc.org
afrey@aclunc.org
eyoung@aclunc.org
hkieschnick@aclunc.org

JUSTINA SESSIONS, State Bar No. 270914
JOHN P. FLYNN, State Bar No. 141094
COLLEEN BAL, State Bar No. 167637
MALAVIKA F. LOBO, State Bar No. 317635
ANA ALICIA SONTAG, State Bar No. 340602 (*Admission pending*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2000
Email: jsessions@wsgr.com
jflynn@wsgr.com
cbal@wsgr.com
mlobo@wsgr.com
asontag@wsgr.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, individually and on behalf of all others similarly situated, DIANA BLOCK, an individual, and COMMUNITY RESOURCE INITIATIVE, an organization,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, in his official capacity as SAN FRANCISCO SHERIFF,<br><br>Defendants. | CASE NO.: 4:22-CV-05541-JST<br><br>**DECLARATION OF DAVID BARBER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: January 12, 2023<br>Time: 2:00 p.m.<br>Place: Courtroom 6<br>Judge: Hon. Jon S. Tigar |

BARBER DECL. ISO MOT. FOR PRELIM. INJUNCTION
CASE NO. 4:22-CV-05541-JST

I, David Barber, declare:

1. I am a 43-year-old resident of Fremont. I am currently on an ankle monitor while my case is pending in the San Francisco Superior Court.

2. I have lived in the Bay Area all of my life. Right now, I am living with my mother in Fremont. I was previously living in Hayward on my own, but I lost my apartment when I was arrested, held in jail for several weeks, and unable to work.

3. I was arrested by the San Francisco Police Department in August of 2021. I spent several weeks in the San Francisco County Jail. I was very anxious during that time because I was worrying about losing my job and my apartment. I was also worried about my cat, who was in my apartment. Fortunately, my mom was able to get my cat and take care of it until I returned.

4. The week after my arrest, I was brought to court on August 11, 2021 for arraignment. I was represented by a public defender.

5. I was returned to court on August 13, 2021. While I was in court that day, the judge ordered me released on electronic monitoring with home confinement pending trial. The judge didn't say anything about what it would mean for me to be on an ankle monitor.

6. I had never been on an ankle monitor before and didn't know what it would be like. I didn't know how it worked or what the rules were. But I understood that if I wanted to get out of jail, this was my only shot.

7. I did not see a paper order from the judge ordering my release on EM. I did not review or sign any papers when I went before the judge.

8. I was not released on the day I went to court. Instead, I remained in jail until the Sheriff's Department took me to their ankle monitoring program office. The day I was released, I was taken by Sheriff's deputies in a secure van to the Sentinel program offices, which are in a building that also has Sheriff's offices. There were other people being transported from the jail that day, and we were chained together and accompanied by a Sheriff's deputy.

9. When we arrived at the Sentinel offices, I was given the Sheriff's "Program Rules" and instructed to review and sign them. My attorney was not present. I had no opportunity to speak to a lawyer.

10. I saw Rule 5 and Rule 13 of the program rules for the first time while I was at the Sentinel office. Rule 5 says the police can search you or your home or car at anytime. Rule 13 says they can share your location information with any law enforcement agency at any time. I remember seeing these rules because I didn't like them. They made me feel like I was being punished already, when I haven't been convicted of anything. I signed everything they told me to sign at Sentinel anyway, because I felt like I had no choice. I knew that if I didn't sign, they would just bring me back to jail, and I was anxious to get out, get my stuff out of my apartment, and get my life back together.

11. I have now been on the electronic monitoring program for nearly a year while awaiting trial.

12. I am no longer on home detention and I've been able to get back to work. I'm an on-call service technician; I work on hydraulic systems for heavy machinery. The ankle monitor still interferes with my ability to work, though. I'm not allowed outside of a 50-mile radius, and I have to be home by curfew. Both of those things make it hard or sometimes impossible to work certain calls.

13. On August 30, 2022, I was pulled over by California Highway Patrol while driving at night. I was pulled over for speeding. After I gave my license to the officer, two officers returned to my car and asked me what I was on probation or parole for. I said I was not on probation or parole, I am fighting my case. One of the officers then put me in handcuffs and told me they were going to search me and then my vehicle.

14. One of the officers then searched me, patting me down and looking in my pockets. Then they told me to stand by their cruiser while they searched my car.

15. I think I was standing my the side of the road in handcuffs for about two hours. It felt like a long time. At some point, one or two more police cars showed up. I think there were about four officers there in total. One of them would stand with me while I waited near the police cruiser that pulled me over. I was in handcuffs the whole time. The other two or three officers were searching my car.

16. One of the officers was on the phone the whole time. I think he was speaking to a deputy at the San Francisco Sheriff's Department. One of the officers told me they were going to call the San Francisco Sheriff's Department, and it sounded like that's who this officer was talking to.

17. At some point, one of the other officers told me they'd found a crack pipe in my car and a small amount of a controlled substance. I didn't see what they found or where they found it. I just saw that something was wrapped in a paper towel in one of the officers' hands.

18. I'm not sure what they found or how it got there. My car was out of commission for about two years until recently. During that time, I didn't drive it, and a number of times, I found homeless people sleeping in it. I wonder if someone who broke into my car to sleep in it left something that the police found.

19. After they searched my car and told me they found a crack pipe and a controlled substance, one of the officers told me that he was going to call my case manager. Then he made a phone call, I assume to my case manager.

20. An officer then told me he was writing me a ticket for the crack pipe and controlled substance. He said it was a misdemeanor.

21. After they issued me the ticket, the officers told me to drive myself home, and I did.

22. Having this ankle monitor on me for the past year has taken a psychological toll. I feel anxious and depressed about it. Part of that comes from what I know about the electronic monitoring rules, that I can be searched whenever, and that the Sheriff's department can share my location information with other law enforcement agencies. I feel like I'm being surveilled all the time. I feel like I have no privacy, like I'm wearing this Scarlet Letter and I don't have the same rights. That feels wrong to me, and it upsets me because I haven't been convicted of anything. This stress has gotten worse as my case has gone on. My trial has been delayed for nearly a year without my consent, extending the time that I have to wear this ankle monitor and feel like I'm constantly being watched.

23. The fact that I was searched has made me feel much worse. I assume I was searched because I'm on EM and the highway patrol officers saw that I am subject to search at any time under Rule 5. Now I don't know whether I am going to be allowed to stay out, or if they are going to take me back to jail.

24. Sometimes I feel like giving up. I feel powerless, and something I think I should just let the system do whatever it is going to do to me.

1  I declare under penalty of perjury that the foregoing is true and correct. Executed this  02  day of
2  September 2022, at ___Fremont___, California

*David Barber, Declarant*

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OF MOTION FOR PRELIMINARY INJUNCTION

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Justina Sessions, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated: October 7, 2022                    */s/ Justina Sessions*
                                          Justina Sessions