DAVID CHIU, State Bar #189542
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
KAITLYN MURPHY, State Bar #293309
ALEXANDER J. HOLTZMAN, State Bar #311813
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:      (415) 554-3867 [Murphy]
Telephone:      (415) 554-3999 [Holtzman]
Facsimile:      (415) 554-3837
E-Mail:         kaitlyn.murphy@sfcityatty.org
E-Mail          alexander.holtzman@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
PAUL MIYAMOTO IN HIS OFFICIAL CAPACITY AS
SAN FRANCISCO SHERIFF,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, DIANA BLOCK, AN INDIVIDUAL AND COMMUNITY RESOURCE INITIATIVE, AN ORGANIZATION,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>        Defendants. | Case No. 22-cv-05541-JST<br><br>**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT (ECF NO. 1-1)**<br><br>Judge:              Honorable Jon S. Tigar<br>Courtroom:      Courtroom 6, 2nd Floor<br>Hearing Date:  January 19, 2023<br>Time:              2:00 p.m.<br><br>Trial Date:        Not Set |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

    I.      Introduction ............................................................................................... 2

    II.    Factual Allegations .................................................................................. 3

          A.      Factual Background ..................................................................... 3

               1.      Court Orders Requiring Electronic Monitoring for Pretrial Defendants ...................................................................... 3

               2.      SFSO Rules Implementing the Court's Pretrial EM Orders ........... 5

               3.      Role of the City and County of San Francisco ............................... 7

               4.      Taxpayer Plaintiffs ............................................................................ 7

          B.      Claims Alleged ............................................................................. 7

    III.   Legal Standard ........................................................................................ 7

    IV.   Argument .................................................................................................. 8

          A.      Plaintiffs Cannot Pursue Their Challenge to the Scope of State Criminal Court Orders Through a Blanket Civil Action. ............................ 9

               1.      The Sheriff's Implementation of Court-Ordered Pretrial Release Conditions Is Constitutional and Necessary. ................................... 9

               2.      The Appropriate Forum for Plaintiffs' Contentions is the Criminal Defendants' State Criminal Proceedings or Collateral Habeas Proceedings. .................................................................................. 11

          B.      The Conditions Plaintiffs Challenge Are Constitutional as a Matter of Law as Applied to Criminal Defendants Released Subject to Electronic Monitoring. ................................................................................. 13

               1.      Plaintiffs' Due Process Arguments Fail as a Matter of Law. ........ 13

               2.      The Four-Way Search Condition Is Constitutional as Implemented Here as a Matter of Law. ......................................... 16

               3.      The Alleged Law Enforcement Retention and Sharing of Electronic Monitoring Data Is Constitutional as a Matter of Law. 19

               4.      Plaintiffs' Separation of Powers Claim Fails as a Matter of Law.. 21

          C.      The Sheriff Acts as a State Actor in Implementing Pretrial Release Conditions. ................................................................................ 22

          D.      Taxpayer Plaintiffs' Claims Fall Outside California's Standing Statute.. 23

    V.    Conclusion .............................................................................................. 24

Defs' Motion to Dismiss
Case No. 22-cv-05541-JST

n:\lit\li2022\230184\01633223.docx

## <u>TABLE OF AUTHORITIES</u>

**State Cases**

*Am. C.L. Union Found. v. Superior Ct.*
  3 Cal. 5th 1032 (2017) ...................................................................................20

*Carmel Valley Fire Prot. Dist. v. State*
  25 Cal. 4th 287 (2001) ...................................................................................22

*Carsten v. Psych. Examining Comm.*
  27 Cal. 3d 793 (1980) .....................................................................................23

*Dix v. Superior Court*
  53 Cal. 3d 442 (1991) .....................................................................................23

*Hill v. National Collegiate Athletic Association*
  7 Cal. 4th 1 (1994) ..........................................................................................18

*Loder v. Mun. Ct.*
  17 Cal. 3d 859 (1976) .....................................................................................20

*People v. Buza*
  4 Cal. 5th 658 (2018) .......................................................................................19

*People v. McInnis*
  6 Cal. 3d 821 (1972) .......................................................................................20

*People v. Thomas*
  52 Cal. 2d 521 (1959) .....................................................................................22

*Van Atta v. Scott*
  27 Cal. 3d 424 (1980) .....................................................................................23

*Venegas v. County of Los Angeles*
  32 Cal. 4th 820 (2004) ....................................................................................22

**State Statutes & Codes**

California Government Code § 23000 .....................................................................22

California Government Code § 23004(a) .................................................................22

California Penal § 1269b(c) ....................................................................................22

California Penal Code § 1192.7(c)(31) ......................................................4, 17, 19

California Penal Code § 1210 ................................................................................15

California Penal Code § 1270 ................................................................................22

California Penal Code § 1270.1(a) ................................................................................................ 17, 19

California Penal Code § 1270.1(c) ..................................................................................................... 9

California Penal Code § 1318(a)(2) ................................................................................................. 10

California Penal Code § 1320.18 ....................................................................................................... 9

California Penal Code § 1320.20(e)(1) .............................................................................................. 9

California Penal Code § 148(a)(1) ..................................................................................................... 4

California Penal Code § 243(e)(1) ..................................................................................................... 5

California Penal Code § 245(a)(1) ..................................................................................................... 4

California Penal Code § 245(a)(4) ..................................................................................................... 4

California Penal Code § 273.5(a) ....................................................................................................... 4

California Penal Code § 422 ............................................................................................................... 4

California Penal Code § 594(b)(1) ..................................................................................................... 4

**Federal Cases**

*Alaska Pretrial Detainees for End of Unwarranted Courtroom Shackling v. Johnson*
    2018 WL 2144345 (D. Alaska May 9, 2018) ......................................................................... 12

*Arevalo v. Hennessy*
    882 F.3d 763 (9th Cir. 2018) ................................................................................................. 13

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................................................................. 3

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................................................................. 8

*Bell v. Wolfish*
    441 U.S. 520 (1979) ......................................................................................................... 13, 17

*Buffin v. City & County of San Francisco*
    2016 WL 374230 (N.D. Cal. Feb. 1, 2016) ........................................................................ 9, 22

*Cantrell v. City of Long Beach*
    241 F.3d 674 (9th Cir. 2001) ................................................................................................. 23

*Carpenter v. United States*
    138 S. Ct. 2206 (2018) ........................................................................................................... 18

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ..................................................................................21

*Foman v. Davis*
    371 U.S. 178 (1962) ....................................................................................8

*Haskell v. Brown*
    317 F. Supp. 3d 1095 (N.D. Cal. 2018) ...................................................20

*Hirt v. Jackson County*
    2020 WL 3104502 (D. Or. June 11, 2020) ...............................................13

*Hudson v. Palmer*
    468 U.S. 517 (1984) ..................................................................................18

*L.A. Cnty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992) ....................................................................12

*Lacey v. Maricopa County*
    693 F.3d 896 (9th Cir. 2012) ......................................................................8

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ......................................................................8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
    519 F.3d 1025 (9th Cir. 2008) ....................................................................3

*MGIC Indem. Corp. v. Weisman*
    803 F.2d 500 (9th Cir. 1986) ......................................................................8

*Nnachi v. City & County of San Francisco*
    2014 WL 1230771 (N.D. Cal. Mar. 21, 2014) .........................................22

*Norris v. Premier Integrity Solutions, Inc.*
    641 F.3d 695 (6th Cir. 2011) ....................................................................17

*Sanchez v. County of San Diego*
    464 F.3d 916 (9th Cir. 2006) ....................................................................19

*Schacht v. United States*
    398 U.S. 58 (1970) ....................................................................................17

*Twitter, Inc. v. Paxton*
    26 F.4th 1119 (9th Cir. 2022) ...................................................................21

*United States v. Aviles*
    229 F. Supp. 3d 1039 (N.D. Cal. 2017) ...................................................11

*United States v. Barnett*
    415 F.3d 690 (7th Cir. 2005) ....................................................................17

iv

*United States v. Dailey*
   941 F.3d 1183 (9th Cir. 2019) .............................................................................10

*United States v. Groves*
   2009 WL 3234187 (E.D. Cal. Oct. 5, 2009) .......................................................17

*United States v. Knights*
   534 U.S. 112 (2001).............................................................................................16

*United States v. Salerno*
   481 U.S. 739 (1987)................................................................................13, 14, 15

*United States v. Scott*
   450 F.3d 863 (9th Cir. 2006) ..............................................................................19

*United States v. Smith*
   414 F.2d 630 (5th Cir. 1969) ..............................................................................17

*United States v. Wells*
   29 F.4th 580 (9th Cir. 2022) ...................................................................10, 11, 21

*Welchen v. County of Sacramento*
   343 F. Supp. 3d 924 (E.D. Cal. 2018) ................................................................22

*Whitmore v. Arkansas*
   495 U.S. 149 (1990).............................................................................................21

*Wyoming v. Houghton*
   526 U.S. 295 (1999).............................................................................................16

**San Francisco Statutes, Codes & Ordinances**

San Francisco Charter, Art. I, Section 1.101 ...............................................................22

**Rules**

Federal Rules of Civil Procedure 12(b)(6).....................................................................1

Federal Rules of Civil Procedure 8(a) ...........................................................................1

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** at 2:00 p.m. on Thursday, January 19, 2023, or as soon thereafter as the matter may be heard before the Honorable Jon S. Tigar in Courtroom 6, 2nd Floor, Oakland Courthouse, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Defendants the City and County of San Francisco (the "City") and Sheriff Paul Miyamoto, in his official capacity as the San Francisco Sheriff, will and hereby do move for an order pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiffs' claims against them on the independent grounds that:

(1)  Plaintiffs' claims are not cognizable as a putative class and civil constitutional action because they have not sufficiently alleged conditions of pretrial release inconsistent with the criminal court's orders in their individual cases; and

(2) Plaintiffs do not plausibly allege any of the search or data sharing and retention conditions they challenge are unconstitutional.

(3) The Court should dismiss Taxpayer Plaintiffs' claims for the independent reason that their claims fall outside of the scope of the California statute allowing taxpayers to sue.

(4) The Court should dismiss all claims against the City because the Sheriff acts as a matter of law in his state officer capacity in implementing the criminal court's pretrial monitoring orders.

This motion is based on the memorandum of points and authorities below, the accompanying request for judicial notice, the docket and files of this Court, and other arguments and authorities the parties may bring to the Court's attention.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   Introduction

Plaintiffs Joshua Simon, David Barber, and Josue Bonilla (together "Criminal Defendant Plaintiffs") along with Plaintiffs Diana Block and Community Resource Initiative ("CRI") (together "Taxpayer Plaintiffs") have sued the City and County of San Francisco ("City") and San Francisco Sheriff Paul Miyamoto challenging aspects of the court-ordered, consent-based program for pretrial release of criminal defendants on electronic monitoring ("EM") in San Francisco. Plaintiffs ask the Court to interfere on a blanket basis with the state criminal court's determinations regarding the least restrictive pretrial release conditions for individuals charged with serious felonies that will protect the public and promote the criminal defendants' appearance at future hearings. They urge the Court to do so based on a fundamental misapprehension about how pretrial release functions in San Francisco and a mischaracterization of the constitutional balancing employed for these conditions of pretrial release.

Plaintiffs frame their Complaint (ECF No. 1-1) as challenging conditions imposed by the San Francisco Sheriff's Office ("SFSO") in implementing the criminal court's orders, recognizing the legal hurdles they would face by challenging those court orders directly. But the SFSO acts, for purposes of pretrial release, solely to implement the criminal court's directives. And the conditions Plaintiffs challenge are consistent with the criminal court's orders. Criminal Defendant Plaintiffs and all others placed on EM sought pretrial release and agreed repeatedly—both in court and afterwards—to abide by the conditions governing that release from detention, which included an agreement to waive their Fourth Amendment rights. They have not taken any of the appropriate steps in their criminal cases to challenge the application of the conditions they now contend are unconstitutional.

Even to the extent Plaintiffs' allegations suffice to plead that the SFSO is acting independently of the criminal courts, Plaintiffs' claims all fail as a matter of law. *First*, their due process claims fail because they have not sufficiently alleged that any challenged condition acts as a punishment or that the extensive procedures for pretrial detention and release are insufficient. *Second*, the search condition for criminal defendants on electronic monitoring is constitutional as a matter of law. *Third*, the sharing and retention of EM data within law enforcement is constitutional as a matter of law.

Plaintiffs additionally bring claims against the City, a party that cannot provide the relief

2

sought here, and on behalf of Taxpayer Plaintiffs, parties that cannot properly seek relief. Plaintiffs'

claims against the City fail because the Sheriff acts in his capacity as a state officer rather than in his

capacity head of a City department in implementing court-ordered pretrial EM. Taxpayer Plaintiffs'

claims should be dismissed because they fall outside the scope of California's taxpayer standing

statute, which restricts its application in the context of criminal cases. Given the Complaint's multiple,

independent procedural and substantive failings, the Court should grant the Motion to Dismiss.

## II.    Factual Allegations

### A.    Factual Background

For purposes only of this motion, Defendants "accept factual allegations in the complaint as

true." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But they do

not accept as true "legal conclusions" in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1.    Court Orders Requiring Electronic Monitoring for Pretrial Defendants

After arrest, criminal defendants in San Francisco come before a judge who must determine the

level of restrictions to place on the defendant pending trial. Compl. ¶ 2. The court assesses whether,

under the circumstances of that individual's case, it is appropriate to: remand the defendant into

custody, release the defendant on the defendant's own recognizance, or release the defendant subject

to certain conditions. *Id.* ¶¶ 13-15. Common pretrial release conditions include drug testing,

prohibition on gun ownership, home detention, or a curfew. *Id.* ¶ 16; *id.*, Ex. A. The court can also

order a criminal defendant to participate in EM while on release. *Id.* ¶ 17. The SFSO, led by Sheriff

Paul Miyamoto, administers EM when the court imposes it as a condition of release. *Id.* ¶ 12; *id.*, Ex.

A. Criminal defendants ordered onto EM are required to abide by the SFSO's Program Rules, *id.*, Ex.

B, and sign a contract regarding their participation, *id.*, Ex. C.

Plaintiffs allege there are more than 200 pretrial criminal defendants who have been ordered by

a San Francisco criminal court to either participate in EM or be remanded into custody while awaiting

trial and are now on EM as administered by the SFSO. *Id.* ¶ 3. The number of EM participants is

growing as criminal courts use it as a less restrictive alternative to pretrial detention. *Id.*

Plaintiffs allege that at a pretrial hearing, the court does not mention the EM Program Rules,

"does not make any individualized determination concerning" the reasonableness of those rules to the

defendant, and "there is no evidence that the Court itself is aware of—let alone has approved—the content of the Sheriff's EM Program Rules." *Id.* ¶ 18. Plaintiffs also allege that the judge does not "elicit a general waiver of Fourth Amendment rights on the record" at the pretrial hearing. *Id.*

However, a criminal court's determination to impose EM conditions on a criminal defendant's release is memorialized in an order titled "County of San Francisco Sheriff's Office / Superior Court Pre-Sentenced Electronic Monitoring – Court Order," which references both the SFSO rules and the criminal defendant's waiver of his or her Fourth Amendment rights. Compl. ¶ 19; *id.*, Ex. A. The order states that "[b]y checking [the] boxes below, the Court will indicate what supervision the San Francisco Sheriff's Office (SFSO) will employ and the expectations the Court has of the defendant." *Id.* Two further provisions of the order state: "All participants on pre-trial electronic monitoring shall obey all orders given by any SFSO employee(s) or contract service provider(s)" and "By signing these instructions and affixing a seal, the Court indicates that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." *Id.*

Criminal Defendant Plaintiffs all have pending charges classified as "serious felonies" for which California law governing pretrial detention and release imposes heightened restrictions on releasing defendants on their own recognizance. Compl. ¶¶ 6-8; Cal. Penal Code §§ 1192.7(c)(31) (defining "assault with a deadly weapon . . . in violation of Section 245" as a "serious felony"), 1270.1(a) (classifying "serious felonies" as well as felony domestic violence charges under Penal Code section 273.5 as among charges subject to heightened requirements). Joshua Simon is charged with felony domestic violence (Cal. Penal Code § 273.5(a)), assault with a deadly weapon by means of force likely to produce great bodily injury (*id.* § 245(a)(4)), and vandalism (*id.* § 594(b)(1)) and with two counts of misdemeanor resisting arrest (*id.* § 148(a)(1)). Request for Judicial Notice ("RJN"), Ex. A. David Barber is charged with felony domestic violence (Cal. Penal Code § 273.5(a)), assault with a deadly weapon by means of force likely to produce great bodily injury (*id.* § 245(a)(4)), and making criminal threats (*id.* § 422). RJN, Ex. A. Josue Bonilla is charged with felony domestic violence (Cal. Penal Code § 273.5(a)), assault with a deadly weapon other than a firearm (*id.* § 245(a)(1), assault with a deadly weapon by means of force likely to produce great bodily injury (*id.* § 245(a)(4)), and making criminal threats (*id.* § 422), and two counts of misdemeanor domestic battery

4

(*id.* § 243(e)(1)). RJN, Ex. A. Each Criminal Defendant Plaintiff came before a judge who assessed the circumstances of his case, determined that release without any conditions was inappropriate, and gave Criminal Defendant Plaintiffs a choice between remand into SFSO custody and pretrial release with conditions including EM. Compl. ¶¶ 13-16. Each alleges the judge in his criminal case did not refer to the Program Rules or inform him that participation in the EM program would require a waiver of Fourth Amendment rights during his pretrial hearing. *Id.* ¶ 21. Nevertheless, each Criminal Defendant Plaintiff elected to participate in the EM program after being presented with the rules. *Id.* ¶¶ 6-8, 21.

**2.      SFSO Rules Implementing the Court's Pretrial EM Orders**

The SFSO works with a contractor, Sentinel Offender Services, LLC ("Sentinel") to administer the EM program. Compl. ¶ 22. Pretrial defendants enroll at the SFSO's Community Programs building in San Francisco. *Id.* Participants receive a copy of the Program Rules during enrollment and are asked to read the rules and initial each one. Compl. ¶¶ 23-24. Although Plaintiffs allege criminal defendants are not provided access to counsel during this process, they do not allege that defendants whose court-appointed criminal attorneys wished to be present during the EM intake process were denied access to counsel. *Id.* ¶ 23.

Plaintiffs allege that Program Rules 5 and 13 are "not authorized by the Court's release order." *Id.* ¶ 1. The challenged Program Rules state:

> We want you to succeed in this opportunity to remain out of custody during your court involvement. Please review and indicate by initialing that after each item that you understand your obligations. If you do not follow the rules, you may be taken into custody by order of the court
>
> . . .
>
> 5. I shall submit to a search of my person, residence, automobile or property by any peace officer at any time.
>
> . . .
>
> 13. I acknowledge that my EM data may be shared with other criminal justice partners.

*Id.* ¶¶ 25-26; *id.*, Ex. B. Criminal Defendant Plaintiffs each signed the EM Program Rules. *Id.* ¶ 24. Plaintiffs allege "many" defendants either "do not comprehend the forms or the conditions imposed" or believe the Program Rules are "irrelevant" because they want to avoid pretrial detention. *Id.* ¶ 31. Simon read the Program Rules and was "bothered" by Rules 5 and 13 but signed the Program Rules

anyway. *Id*. ¶ 32. Barber read Rules 5 and 13, recalls they "offended him," but "nonetheless initialed and signed" the rules "under what he describes as 'duress'" and "consented to release on EM" to avoid jail. *Id*. ¶ 33. Bonilla does not "clearly recall" the events of his EM orientation and does not recall whether he signed the Program Rules or Contract. *Id*. ¶ 34.

Pretrial defendants who choose to participate in EM also sign a program contract, which contains provisions "substantively equivalent to Program Rules 5 and 13." *Id*. ¶ 27; *id*., Ex. C. The contract states in relevant part:

> You have been placed in the Electronic Monitoring Program (EMP) as an alternative to incarceration. Based on the monitoring equipment you are issued, this program uses technology to alert a central monitoring station each time you leave and enter your home (GPS based monitoring), track your movement in the community (GPS), or test positively for the consumption of alcohol (Breath Alcohol Testing or Transdermal Alcohol Testing).
>
> . . .
>
> 5. I agree to the use of electronic monitoring or supervising devices for the purpose of verifying my compliance with the rules and regulations of the program.
>
> . . .
>
> 8. I acknowledge that in court, I knowingly waived by 4th Amendment rights and agree to submit my person, property, place of residence and/or personal effects to search at my [sic] time, with or without a warrant and with or without probable cause.
>
> 9. I acknowledge that my electronic monitoring data may be shared with other criminal justice partners.
>
> . . .
>
> I have been advised that my participation in the Electronic Monitoring Program (EMP) is voluntary and that, if I prefer, I may stay in custody at a jail facility. These program guidelines have been explained to me and a copy given to me. I agree to comply with al program rules and regulations, mandated by the Court and the SFSD. I further understand that failure to follow program guidelines may result in my immediate return to custody.

*Id*., Ex. C.

Consistent with Program Rule 5, the SFSO puts a notice of an EM participant's search conditions into a state law enforcement database referred to as CLETS, "California Law Enforcement Telecommunications System." *Id*. ¶ 42. Barber alleges he was subject to a search of his person and vehicle after a law enforcement officer stopped him for speeding and saw his search conditions in the CLETS database in August 2022. *Id*. ¶ 45. Neither Simon nor Bonilla have been searched based on Rule 5. *Id*. ¶ 47.

In addition to challenging Rules 5 and 13, Plaintiffs allege the SFSO's data retention policy is inappropriate. Plaintiffs allege that the none of the EM policies from the court, SFSO, or Sentinel "provide for the destruction or expungement" of GPS data at the conclusion of a defendant's participation in the program. *Id.* ¶ 30. EM involves a GPS monitor that is always operational and can be tracked in real-time. *Id.* ¶¶ 38, 50. Participants wear an ankle cuff and the defendant's location is tracked to ensure compliance with pretrial release conditions. *Id.* ¶ 35. Sentinel maintains the GPS data "for at least the duration of the participant's enrollment in the EM Program." *Id.* ¶ 36. When properly requested, GPS data obtained through the EM program can be shared with other law enforcement agencies. *Id.* ¶ 54. The requesting law enforcement agency must "represent that they are requesting this information as part of a current criminal investigation," but no warrant is required. *Id.* Criminal Defendant Plaintiffs do not know if their GPS data has been shared. *Id.* ¶ 56.

### 3. Role of the City and County of San Francisco

Plaintiffs acknowledge that the City, through its Board of Supervisors, did not authorize the SFSO's pretrial EM policies. Compl. ¶¶ 58-59.

### 4. Taxpayer Plaintiffs

Taxpayer Plaintiffs have not alleged any personal participation in the EM program. Block is a San Francisco resident, and CRI is a San Francisco based non-profit. Compl. ¶¶ 9-10. Both allege they paid property tax, sales tax, and use taxes which fund the SFSO, and oppose the use of EM. *Id.*

### B. Claims Alleged

Based on the above, Plaintiffs allege eight causes of action. All Plaintiffs allege causes of action under the federal and California constitutions for unreasonable searches and seizures (claims one and two), due process violations (claims five and six), as well as a violation of California's constitutional rights to privacy (claim three) and the separation of powers (claim four), and a claim for declaratory judgment under California Code of Civil Procedure section 1060 (claim eight). Taxpayer Plaintiffs additionally allege a claim under California Code of Civil Procedure section 526A for the illegal expenditure of funds (claim seven).

## III. Legal Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, a "pleading that states a claim for

relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6), in turn, requires a complaint be dismissed if it fails to "state a claim upon which relief can be granted." A claim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). The court will not accept "threadbare recitals" that are "supported by mere conclusory statements," which are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Dismissal with prejudice is appropriate when leave to amend would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Although courts are generally limited to the information contained in the complaint in considering a motion to dismiss, that includes materials attached to the complaint as exhibits. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) ("a court may consider material which is properly submitted as part of the complaint"). Courts may also "take judicial notice of matters of public record outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).[1]

## IV.   Argument

Plaintiffs' attempt to evade normal criminal court processes to challenge the conditions for pretrial release fails for several, independent procedural and substantive reasons requiring dismissal of the Complaint. Plaintiffs brought their complaint in the wrong forum. A putative class action is not the

---

[1] If the Court concludes that any cited document is not properly considered as part of a motion to dismiss, it should decide the Motion without considering that document rather than converting this Motion into a motion for summary judgment.

appropriate place to challenge individualized determinations by the criminal court as to whether pretrial release is appropriate at all, and if so, which conditions are prudent. The pretrial release process Plaintiffs describe is also consistent with an individual's state and federal rights to due process, the right to be free from unreasonable searches and seizures, their right to privacy, and the separation of powers. Finally, Plaintiffs have inappropriately sued the City for conduct the SFSO undertook in its capacity as an arm of the state and Taxpayer Plaintiffs, as distinct from Criminal Defendant Plaintiffs, lack standing to challenge the criminal court process at issue in the Complaint.

### A. Plaintiffs Cannot Pursue Their Challenge to the Scope of State Criminal Court Orders Through a Blanket Civil Action.

Plaintiffs' complaint hinges on a belief that the Sheriff's EM Program Rules exceed the scope of the pretrial release conditions ordered by the criminal court. But the challenged Program Rules are—as a matter of plain meaning—subsets of the pretrial release conditions ordered by the court. The forum best suited to resolve whether—despite the ordinary meaning of the conditions—the SFSO is imposing conditions beyond the court's order is the criminal case in which the EM order was issued not a civil putative class action.

### 1. The Sheriff's Implementation of Court-Ordered Pretrial Release Conditions Is Constitutional and Necessary.

After arrest, a criminal defendant is brought before a superior court judge in a pretrial hearing to determine whether the defendant should be released pending trial or remain in custody. The authority to determine the terms of bail and other conditions of pretrial release rests with the superior court. *Buffin v. City & County of San Francisco*, No. 15-CV-04959-YGR, 2016 WL 374230, at *5 (N.D. Cal. Feb. 1, 2016) ("The terms of bail and other conditions of pre-trial release are determined by superior courts – not the City – under California law."). The criminal court's analysis considers "evidence of past court appearances of the detained person, the maximum potential sentence that could be imposed, and the danger that may be posed to other persons if the detained person is released." Cal. Penal Code § 1270.1(c). It is the criminal court's role to determine "the least restrictive nonmonetary condition or combination of conditions that will reasonably assure public safety and the defendant's return to court." *Id.* § 1320.18; *see also id.* § 1320.20(e)(1). A defendant shall not be assigned to pretrial release unless they sign a release agreement promising, among other things, "to obey all

reasonable conditions imposed by the court or magistrate" even where the court determines that pretrial release may be appropriate. *Id.* § 1318(a)(2).

In San Francisco, the court directs the SFSO to administer the pretrial release process, including EM after the court issues its order. *See* Compl., Ex. A (indicating in the pretrial release order "supervision the San Francisco Sheriff's Office (SFSO) will employ"). The criminal court's orders instruct defendants to comply with all SFSO rules, implicitly acknowledging that the SFSO will need to promulgate more detailed Program Rules than what is included in the court's order. Courts recognize that law enforcement agencies are in the best position to implement the court's orders and have "repeatedly" rejected arguments that criminal courts abuse their discretion by delegating to law enforcement "the implementation of a condition of supervised release." *United States v. Wells*, 29 F.4th 580, 592-93 (9th Cir. 2022) (affirming order that permitted probation officer to lay out details of release condition because the officer "is in the best position to determine when a use of computer devices or internet service is appropriate" for the defendant); *United States v. Dailey*, 941 F.3d 1183, 1194-95 (9th Cir. 2019) ("The court clearly directed Dailey to register as a sex offender under SORNA. That federal probation officers or the local sheriff may later tell Dailey how to register properly in a given location is not a delegation of the Article III judicial power."). Plaintiffs do not allege Criminal Defendant Plaintiffs or any criminal defendant in San Francisco has ever raised EM Program Rules 5 or 13 with the criminal court.

While Plaintiffs categorize the challenged Program Rules as inconsistent with the court's release orders, the language of the criminal court's orders demonstrate that the challenged Program Rules fall as a matter of law within the grant of authority given to the SFSO by the court. The criminal court's release orders recognize that the criminal defendants have "waived their 4th Amendment rights," "shall obey all orders given by any SFSO employee(s) or contract service provider," and "understands the restrictions ordered by the Court." Compl., Ex. A. This waiver is broad enough on its own to encompass a waiver of the Fourth Amendment rights implicated by the EM Program's more granular rules regarding searches. The Program Rules do not *expand* the waiver from the court's order, they *explain* that waiver in more detail. The waiver of one's Fourth Amendment rights includes, at a minimum, the agreement to "submit to a search of my person, residence, automobile, or property,"

which is the search provision described in the SFSO Program Rules. *Id.*, Ex. B.

The same is true of Plaintiffs' allegations about sharing and retention of GPS data. An order to place a criminal defendant on EM clearly contemplates the collection of location data from the defendant's ankle monitor. The criminal court's order does not limit sharing or retention of that data at least for law enforcement purposes. *Id.*, Ex. A. The Program Rules identify that "participants' EM data may be shared with other criminal justice partners" and Plaintiffs acknowledge that in order to obtain GPS data from the SFSO, another law enforcement agency must "represent that they are requesting this information as part of a current criminal investigation." *Id.* ¶ 54. This provision does not impose any additional liberty restrictions on a criminal defendant beyond the court's EM order.

Plaintiffs' contention that every detail of the rules governing pretrial release must be discussed on the record at a hearing, *id.* ¶¶ 18, 21, would grind California's already overburdened criminal courts to a halt and is unnecessary where the court's order requires a defendant to "obey all orders given by any SFSO employee(s) or contract service provider(s)." *Id.*, Ex. A. Their contention also contradicts Ninth Circuit decisions approving of criminal court orders setting supervision guidelines while leaving decisions regarding the rules for supervision to the sheriff or probation officer charged with implementing the court's orders. *See Wells*, 29 F.4th at 593 (observing that courts have "summarily rejected [] arguments that a district court abuses its discretion by delegating to the probation office the implementation of a condition of supervised release"). Accordingly, the SFSO's Program Rules are an implementation, but not an enlargement, of the authority vested in them by the criminal court.

### 2. The Appropriate Forum for Plaintiffs' Contentions is the Criminal Defendants' State Criminal Proceedings or Collateral Habeas Proceedings.

Because the Sheriff implements the state criminal court's pretrial release orders, the appropriate path to resolve Plaintiffs' claims would be for those subject to the challenged conditions to seek modification or clarification of their pretrial release conditions from the state criminal court. *See United States v. Aviles*, 229 F. Supp. 3d 1039, 1044 (N.D. Cal. 2017) (explaining a "law enforcement officer who encounters someone and learns that the person is a probationer subject to a suspicionless search condition is in no position to inquire whether that search condition still ought to apply" and "the probationer can go back to the sentencing judge and seek to modify the conditions of his probation").

11

Plaintiffs contend that criminal defendants do not discuss or understand what they are waiving in court. Compl. ¶¶ 18-21. But any dispute about whether criminal defendants released on EM have agreed to give up their Fourth Amendment rights and obey SFSO orders as reflected in the criminal court's orders is for the criminal court to resolve.

Not only is the state criminal court the most appropriate body to adjudicate the questions Plaintiffs raise, it is also the one vested with the legal authority to do so. Adjudication of claims regarding the interpretation of criminal courts orders would run counter to the Ninth Circuit's guidance that federal courts "should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992). Courts therefore decline to grant relief requiring an ongoing intrusion in the administration of state judicial systems as would occur if Plaintiffs can proceed in seeking their requested injunctive and declaratory relief. *See, e.g.*, *Alaska Pretrial Detainees for End of Unwarranted Courtroom Shackling v. Johnson*, No. 3:17-cv-00226-SLG, 2018 WL 2144345, at *2 (D. Alaska May 9, 2018) (holding abstention appropriate when plaintiffs sought injunction requiring state court to forego shackling pretrial detainees absent an individual judicial determination that shackling is necessary, finding such relief would require the court "to step into the role of ongoing compliance monitor and enforcer of the injunction"), *aff'd as to abstention and remanded for dismissal*, 745 F. App'x 61 (9th Cir. 2018).

Another appropriate avenue to challenge whether the EM Program Rules comply with the criminal court's pretrial release order is through a petition for habeas relief. Plaintiffs do not allege that any criminal defendant has challenged the SFSO's Program rules through a petition for habeas relief. See Cal. Super. Ct., S.F. Cnty., Local Rules, rule 16.12(A) ("writs of habeas corpus relating to all criminal matters must be presented to the Supervising Judge"). The alternative availability of such petitions further demonstrates why Plaintiffs cannot bring their claims in the contemplated class action. Faced with a petition for a writ of mandate by a pretrial criminal defendant, the California Court of Appeal "elected to treat [the] petition for writ of mandate as a petition for writ of habeas corpus . . . which is the appropriate vehicle for raising questions concerning the legality of a grant or denial of bail." *In re Brown*, 76 Cal. App. 5th 296, 301 (2022), *review denied* (June 22, 2022); *see also*

12

*In re Humphrey*, 11 Cal. 5th 135 (2021) (adjudicating challenge to pretrial bail determination via a habeas petition). Courts have repeatedly rejected attempts to bring constitutional challenges regarding pretrial detention and release under § 1983 because of the availability of habeas petitions. *See Hirt v. Jackson County*, No. 1:19-CV-00887-AC, 2020 WL 3104502, at *4 (D. Or. June 11, 2020) ("Although the Amended Complaint is styled as a § 1983 action, the claims allege due process and equal protection violations in relation to bail. These allegations fall within the core of habeas corpus because they challenge the fact or duration of confinement. Accordingly, the Amended Complaint must be dismissed." (citation omitted)); *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Arevalo also has properly exhausted his state remedies as to his bail hearing. He filed two motions with the superior court, a habeas petition with the California Court of Appeal, and a petition for a writ of habeas corpus with the California Supreme Court, each of which was denied."). The Court should do the same here.

**B.** **The Conditions Plaintiffs Challenge Are Constitutional as a Matter of Law as Applied to Criminal Defendants Released Subject to Electronic Monitoring.**

Even if Plaintiffs' challenges to the pretrial EM conditions were cognizable as a putative class action, which they are not, their claims all fail as a matter of law. The California Supreme Court recently recognized that pretrial release on EM is an alternative to retaining criminal defendants in custody. *See Humphrey*, 11 Cal. 5th at 154. The liberty restrictions for someone in custody are more pervasive than someone released on EM. The aspects of EM Plaintiffs challenge are constitutional, especially in light of Criminal Defendant Plaintiffs' repeated, knowing, and voluntary Fourth Amendment waivers.

**1.** **Plaintiffs' Due Process Arguments Fail as a Matter of Law.**

Plaintiffs have not pled facts supporting a violation of the federal Due Process Clause as to either substantive or procedural due process. The relevant substantive due process inquiry for pretrial detention and release is whether challenged conditions amount to punishment or are instead supported by legitimate government interests. *See Bell v. Wolfish*, 441 U.S. 520, 540, 555 (1979). To overcome a procedural due process claim via a facial challenge, the procedures for imposing the restriction need only be "adequate to authorize the [challenged conditions for] at least some [persons] charged with crimes." *United States v. Salerno*, 481 U.S. 739, 751 (1987); *see* Compl. ¶¶ 13-37 (alleging a general

13

process and that Criminal Defendant Plaintiffs' experiences are consistent with that process; *id.* ¶ 85 (alleging due process challenge as to "Named Plaintiffs and the Class they seek to represent").

The allegations in the Complaint do not support a conclusion that the challenged conditions amount to punishment because they are intended to "ensure the defendant appears at court proceedings" and "to protect the victim, as well as the public, from further harm." *Humphrey*, 11 Cal. 5th at 150. The complaint lacks any factual allegations plausibly disputing the purpose of the EM program, and the EM Program Rules bear a logical relationship to the legitimate purposes described above. *United States v. Salerno* upheld the bail and pretrial detention considerations authorized under the federal Bail Reform Act against a due process challenge. 481 U.S. at 755. In assessing the due process issue, *Salerno* held that the government's interest in preventing crime by those charged with crimes was compelling, *id.* at 749, described the government's interests in the "particularly acute problem" of arrestee crime as "overwhelming," *id.* at 750, and characterized the government's interest in protecting community safety as a legitimate regulatory concern rather than a punitive interest, *id.* at 747, as "Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest," *id.* at 750. As in *Salerno* (which Plaintiffs cite in their federal due process cause of action, Compl. ¶ 85), the challenged EM conditions further the government's "overwhelming" interest in combatting the "particularly acute problem" of arrestee crime. *Salerno*, 481 U.S. at 747, 750. The four-way search condition and the retention and sharing of GPS data with law enforcement agencies all promote community safety by creating an enforcement mechanism for stay away zones and home detention associated with EM. Compl. ¶¶ 14-18; *id.*, Ex. A; RJN, Ex. B (home detention and stay away zone applied to Barber). The conditions also promote the appearance of criminal defendants at court hearings by tracking their location in the event they do not appear. *Id.* These interests would be promoted at least as fully by pretrial detention, but electronic monitoring and the accompanying conditions impose less on a criminal defendant's liberty interests, which is why the court gives defendants the option of submitting to pretrial release if they are willing to waive their Fourth Amendment rights and "obey all orders given by any SFSO employee(s) or contract service provider(s)." Compl., Ex. A. Each Criminal Defendant Plaintiff chose to participate in EM rather than continue in pretrial detention, recognizing that EM offers significantly more liberty.

The procedures here are also "adequate to authorize the [challenged conditions for] at least some [persons] charged with crimes." *Salerno*, 481 U.S. at 751. Plaintiffs do not allege either the four-way search condition or the collection and retention of GPS data is inappropriate in all circumstances, only that they should be imposed after an individualized determination by the court. *See e.g.*, Compl. ¶¶ 15-18, 21. Take Plaintiff David Barber as an example. The judge in his criminal case weighing whether Barber needed to be detained offered instead to release him without money bail subject to conditions including placement on EM. Compl. ¶¶ 15-18, 21; *see* Cal. Penal Code § 1210; *Humphrey*, 11 Cal. 5th at 154. Plaintiffs agree that the criminal court's determination of whether a defendant is appropriate for pretrial release and, if so, the appropriate conditions to apply, is an individualized one. Compl. ¶ 2. That court's determinations involved "individualized consideration" of factors including "the protection of the public as well as the victim, the seriousness of the charged offense, [the defendant's] previous criminal record and history of compliance with court orders, and the likelihood that [he would] appear at future court proceedings." *Humphrey*, 11 Cal. 5th at 152. At the time the court ordered Barber onto EM, it made a finding that he had "waived [his] 4th Amendment rights." Compl. ¶ 19; *id.*, Ex. A. The court did not limit sharing of GPS data from electronic monitoring or set restrictions on its retention. *Id.* ¶¶ 18-19, 21. Barber reviewed the Program Rules containing the specific provisions challenged here before enrolling in EM. *Id.* ¶¶ 23-24, 33. He initialed and signed the Program Rules and separately signed the Participant Contract, containing the specific provisions challenged here. *Id.* ¶ 27. He has since brought at least two Motions to Modify Conditions of Release, asking the court to lift his home detention condition and change his case manager check-ins to be telephonic, although he did not challenge the EM Program rules in either. *See* RJN, Exs. C-D. Both motions were granted. *Id.* In several respects, these procedures go beyond those approved in *Salerno* for pretrial detention, which concerned a far more serious deprivation of liberty. *Salerno*, 481 U.S. at 751-52. Because the procedures with respect to the challenged conditions are appropriate for Barber, Plaintiffs' procedural due process challenge fails as well.

Plaintiffs' allegations likewise do not suffice to plead a violation of California due process protections. The California Supreme Court rejected federal and state due process challenges to suspicionless search conditions for pretrial criminal defendants imposed consistent with California's

statutory procedures for pretrial detention and release determinations. *In re York*, 9 Cal. 4th 1133, 1153 (1995). And in *Humphrey*, 11 Cal. 5th at 152, 154, analyzing federal and state due process protections together, the California Supreme Court identified electronic monitoring as an alternative for the criminal court to consider at a detention hearing to achieve the government interests in safety and preventing flight while avoiding continued detention. The EM program as alleged in the complaint complies with the standards set forth in *York* and *Humphrey*.

### 2. The Four-Way Search Condition Is Constitutional as Implemented Here as a Matter of Law.

Plaintiffs' assertions regarding the four-way search condition incident to EM highlight the misguided nature of their claims by comparing criminal defendants conditionally released from custody on a Fourth Amendment waiver and EM with the general public while ignoring the more appropriate comparison to criminal defendants held in custody following a detention hearing.

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy" evaluated in terms of the individual's "reasonable expectation of privacy," "and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)) (upholding probation search condition).

The intrusion of the four-way search condition on the privacy interests of those subject to EM is reduced in several important respects compared to the privacy interests of the public. First, Criminal Defendant Plaintiffs and their putative class all agreed to waive their Fourth Amendment rights no fewer than three times before their EM equipment was put in place. Compl. ¶¶ 19, 25-27; *id.*, Exs. A-C. With the Court, while represented and advised by counsel, they agreed to a broad waiver of their Fourth Amendment rights as reflected in the court's orders. Compl. ¶¶ 15-19; *id.*, Ex. A. Then they agreed to the specific four-way search condition at least twice in writing to the SFSO, noting their agreement with initials and signatures on the Program Rules and program contract. *Id.* ¶¶ 23-24, 27; *id.*, Exs. B-C. These repeated agreements significantly diminished the individuals' reasonable expectation of privacy.

Plaintiffs' arguments that the EM search condition violates "Fourth Amendment protections ignores the circumstance that a pretrial detainee is not required to agree to such restrictions, but rather is subject to them only if he or she consents to their imposition, in exchange for obtaining OR release." *York*, 9 Cal. 4th at 1149-50 (upholding constitutionality of suspicionless search condition for pretrial criminal defendant); *see Knights*, 534 U.S. at 118 (holding it was unnecessary to decide if the consent was dispositive but that it was at least "a salient circumstance); *United States v. Barnett*, 415 F.3d 690, 691-92 (7th Cir. 2005) (concluding a "blanket waiver of Fourth Amendment rights" was valid because "imprisonment is a *greater* invasion of personal privacy than being exposed to searches of one's home on demand"); *United States v. Smith*, 414 F.2d 630, 636 (5th Cir. 1969) (holding a defendant "could have rejected probation and elected prison" and that, having "chose[n] to enjoy the benefits of probation," the defendant had to "endure its restrictions"), *rev'd as to other defendant on unrelated grounds sub. nom. Schacht v. United States*, 398 U.S. 58 (1970); *United States v. Groves*, No. CR-S-07-229FCD(GGH), 2009 WL 3234187, at *2 (E.D. Cal. Oct. 5, 2009) ("One's right to be free from searches of person and property without warrants in violation of the Fourth Amendment can be greatly circumscribed during pretrial release."). In *Norris v. Premier Integrity Solutions, Inc.*, 641 F.3d 695, 699 (6th Cir. 2011), the Sixth Circuit recognized as two bases for reduced privacy interest by individuals on pretrial release (1) their agreement and (2) participation in the "Pretrial Release Program" in upholding a direct observation method for urine testing against constitutional challenge. The same is true of the EM program here. Criminal Defendant Plaintiffs all agreed to the terms of EM and went on to participate in the program.

Second, Criminal Defendant Plaintiffs' reasonable expectations of privacy were diminished by their status as pretrial criminal defendants subject to heightened restrictions on pretrial release based on the seriousness of their charges. *See* RJN, Ex. A; Cal. Penal Code §§ 1192.7(c)(31), 1270.1(a). Plaintiffs twice allege in passing a purported tension between the challenged conditions and the presumption of innocence. Compl. ¶¶ 9, 49. Perhaps Plaintiffs intend these allegations to suggest that criminal defendants have an undiminished expectation of privacy notwithstanding the charges against them. If so, courts have rejected the view that the presumption of innocence affects the constitutionality of conditions like those at issue in this case. *See Wolfish*, 441 U.S. at 533 (holding the

presumption of innocence "has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun"); *York*, 9 Cal. 4th at 1148.

Given the California Supreme Court's holding in *York* that a suspicionless search condition for pretrial criminal defendants passed constitutional muster in part based on rejecting "the flawed premise that a defendant who seeks OR release has the same reasonable expectation of privacy as that enjoyed by persons not charged with any crime," 9 Cal. 4th at 1149, it would be unreasonable for criminal defendants on pretrial release to believe they maintained the same expectation of privacy that they had prior to their arrest and charges, which is what Plaintiffs seek in eliminating the search provisions of the EM Program in their entirety, rendering their Fourth Amendment waiver to the court meaningless. Whatever restrictions criminal defendants face on EM, those rights are further restricted while in custody. *Cf. Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell"). As the California Supreme Court has explained, "the [four-way search condition] do[es] not place greater restrictions upon an OR releasee's privacy rights than the releasee would have experienced had he or she not secured OR release." *York*, 9 Cal. 4th at 1149-50. Like the student athletes at issue in *Hill v. National Collegiate Athletic Association*, 7 Cal. 4th 1 (1994), these individuals belong to a group with a "special set of social norms" with a "diminished expectation of privacy" compared to the "general population." *Id.* at 9 (holding that student athletes' diminished expectation of privacy was outweighed by the NCAA's legitimate regulatory objectives in conducting testing for proscribed drugs).

Third, Criminal Defendant Plaintiffs' reasonable expectation of privacy was diminished by the criminal court's determination that they needed to be subject to EM if released—a determination Plaintiffs do not challenge. The EM greatly reduces the incremental interference with privacy rights of the four-way search condition. *Compare Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (addressing expectations of privacy of ordinary citizens not charged with serious felonies, not on pretrial release contingent on electronic monitoring, and who had not consented to the search at issue).

Meanwhile, the four-way search condition furthers significant government (and public) interests. *See York*, 9 Cal. 4th at 1151. Criminal Defendant Plaintiffs are all charged with multiple

felonies including domestic violence subjecting them to heightened release restrictions. *See* RJN, Ex. A; Cal. Penal Code §§ 1192.7(c)(31), 1270.1(a). They were placed on EM to promote public safety and attendance at court hearings. Compl. ¶¶ 14-18. And they were released from custody without payment of bail. *See id.* Bail can further some of the same government interests as the four-way search condition. *See York*, 9 Cal. 4th at 1149; *In re Webb*, 7 Cal. 5th 270, 278 (2019). But bail also may raise countervailing equity considerations not implicated by EM. *See Humphrey*, 11 Cal. 5th at 143.

*United States v. Scott*, 450 F.3d 863 (9th Cir. 2006), is consistent with the constitutionality of the four-way search condition in this case. *Scott* rejected blanket imposition of a suspicionless drug testing condition without "findings made after any sort of hearing" on all defendants. *Id.* at 865. The question in *Scott* was whether an "arrest itself is sufficient to establish that the [random drug testing] conditions are required." *Id.* at 874. Unlike in *Scott*, the need for EM and a Fourth Amendment waiver here was "demonstrated on an individualized basis." *Id.*; Compl. ¶¶ 14-18. Meanwhile, *Scott* recognized the reduced privacy interest of criminal defendants released pretrial. 450 F.3d at 873. And it endorsed the enhanced government interest in searches of individuals charged with serious crimes. *Id.* at 874.

The California Constitution provides no broader protections than the Fourth Amendment in this context. *See Sanchez v. County of San Diego*, 464 F.3d 916, 930 (9th Cir. 2006); *York*, 9 Cal. 4th at 1149. Plaintiffs' state law claims regarding the four-way search condition therefore all fail as well.

### 3. The Alleged Law Enforcement Retention and Sharing of Electronic Monitoring Data Is Constitutional as a Matter of Law.

Plaintiffs' allegations regarding the sharing and retention by law enforcement of electronic monitoring data likewise raise no cognizable constitutional issues. Courts have rejected challenges to sharing and retention of information about arrestees and those charged with crimes, generally holding that these are issues of policy best addressed through legislation. "[T]he retention of an arrestee's fingerprints, photographs, and other identifying information in law enforcement files generally has not been thought to raise constitutional concerns, even though the arrestee may later be exonerated." *People v. Buza*, 4 Cal. 5th 658, 680 (2018). A federal court considering retention of DNA records and samples found "no authority holding that California is required to expunge [] DNA records and

samples at all" and observed that "courts have not held that a state must always return fingerprints or other identifying information taken at arrest." *Haskell v. Brown*, 317 F. Supp. 3d 1095, 1110 (N.D. Cal. 2018) (citation omitted) (granting motion for judgment on the pleadings); *Loder v. Mun. Ct.*, 17 Cal. 3d 859, 868 (1976) (holding that balance of substantial government interest in police, prosecutors, courts, and probation and parole authorities' ability to "consult records of arrests not resulting in conviction" outweighed risks to individuals); *People v. McInnis*, 6 Cal. 3d 821, 825-26 (1972) ("Commonly known as 'mug shots,' the photos are kept in permanent files regardless of the eventual disposition of the case; indeed, thousands of persons ultimately found to be entirely innocent undoubtedly have their photographs, as well as fingerprints, on record with law enforcement agencies."). Given the absence of specific constitutional guidelines on sharing and retention of this information by law enforcement, "[a]ny expungement provision should be provided by statute." *Loder*, 17 Cal. 3d at 876. For example, the California Supreme Court has rejected the argument that unredacted, non-anonymized license plate data should be disclosed publicly but raised no concerns regarding sharing of that data within law enforcement agencies or its retention even though it involves location information about the general public. *Am. C.L. Union Found. v. Superior Ct.*, 3 Cal. 5th 1032, 1044 (2017).

Electronic monitoring location data serves many of the same government interests while raising fewer concerns than retention and sharing of the types of data discussed above. Unlike DNA, fingerprints, or mug shots, historical GPS data does not reflect anything immutable about an individual. The information gathering is limited to when the criminal defendant is on pretrial release and subject to EM. Members of law enforcement requesting location data must attest that they are "requesting this information as part of a current criminal investigation." Compl., Ex. E. And the sharing of location data Plaintiffs allege has occurred does not extend beyond San Francisco law enforcement agencies, *id.* ¶ 55, further reducing any possible constitutional concerns.

The primary harm Plaintiffs appear to identify from sharing and retention of the location data is that criminal defendants might be discovered to have been near the scene of a crime and thereby potentially implicated in the crime. *See* Compl. ¶¶ 53 (alleging the potential for reports connecting those on electronic monitoring with crime scenes), 57 (alleging Simon was concerned he might be

20

identified as a suspect in an assault that he observed while on electronic monitoring). But there is absolutely no constitutional right to be free from suspicion as a criminal defendant near the scene of a crime even for defendants maintaining their innocence as to the underlying offense.

As with the search condition, the alleged sharing and retention of electronic monitoring data also imposes on criminal defendants' rights less than would be the case if they were in custody. For pretrial defendants remaining in custody, the government can retain and share housing information and schedules (the in-custody version of location data) with law enforcement partners. Those in custody are monitored continuously in more intrusive ways than EM and without the consent present here.

Criminal Defendant Plaintiffs' arguments regarding data retention are additionally insufficient to support standing or at least prudentially unripe. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (holding "respondents' theory of *future injury* [was] too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending'" (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990))); *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1124 (9th Cir. 2022) (holding constitutional claims were prudentially unripe). Given that Criminal Defendant Plaintiffs allege that they are currently on EM, Compl. ¶¶ 6-8, 46-47, they suffer no current or impending injury from the retention of their data. *See id.* at 23 (seeking an injunction requiring Defendants "to expunge all GPS data still located within their position [sic] for individuals whose criminal matters have already concluded"); *see also* ECF No. 22-5 (Simon Decl.) ¶ 7 (declaring the court took him off EM but his case has not resolved). For similar reasons, the nature of any constitutional privacy claim with respect to their GPS data is still developing and Criminal Defendant Plaintiffs will suffer little to no hardship from waiting to adjudicate their claims until their criminal cases resolve.

### 4.    Plaintiffs' Separation of Powers Claim Fails as a Matter of Law.

Plaintiffs also challenge the conditions of pretrial release on separation of powers grounds. This claim fails, as discussed above, because courts constitutionally may, and typically do, delegate implementation of their supervision orders to offices charged with overseeing those released from custody. *See Wells*, 29 F.4th at 592-93. California's separation of powers doctrine, like the federal doctrine, "recognizes that the three branches of government are interdependent, and it permits actions of one branch that may 'significantly affect those of another branch,'" so long as they do not "defeat or

materially impair" the inherent powers of that other branch. *Carmel Valley Fire Prot. Dist. v. State*, 25 Cal. 4th 287, 298 (2001). The EM Program Rules explain rather than expand the criminal court's broad order. Particularly in the absence of any allegations that the criminal court lacks the authority to set or modify conditions of release, or to instruct the SFSO to execute those conditions, this delegation from the criminal court to the SFSFO raises no separation of powers issues.

### C. The Sheriff Acts as a State Actor in Implementing Pretrial Release Conditions.

The City is often the correct defendant in cases involving San Francisco departments including the SFSO. *See e.g.*, *Nnachi v. City & County of San Francisco*, No. C 13-5582-KAW, 2014 WL 1230771, at *3 (N.D. Cal. Mar. 21, 2014) (dismissing claim against San Francisco Juvenile Probation Department); *compare* Cal. Gov. Code §§ 23000, 23004(a); *see also* San Francisco Charter, Art. I, Section 1.101 (confers right of City to sue and be sued); *id.* Art. IV, Section 4.102 (does not confer right to sue or be sued on departments).

Not so in this case, because the Sheriff acts as an agent of the state criminal court for purposes of implementing the court's orders regarding conditions of pretrial release in the context of the EM program. *See Buffin v. California*, 23 F.4th 951, 962 (9th Cir. 2022) (observing that "the Sheriff has no discretion over when to release or hold a pre-trial detainee" (citing Cal. Penal Code § 1270)); *see also Welchen v. County of Sacramento*, 343 F. Supp. 3d 924, 934 (E.D. Cal. 2018) ("district courts within this circuit have determined that California Sheriffs act as representatives of the state, and not the county, when enforcing state laws"); *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 839 (2004). "The terms of bail and other conditions of pre-trial release are determined by superior courts – not the City – under California law." *Buffin*, 2016 WL 374230, at *5 (citing, *inter alia*, Cal. Penal Code § 1269b(c)). The sheriff undertakes the duty of implementing the Superior Court's release order on behalf of the court. *See People v. Thomas*, 52 Cal. 2d 521, 532 (1959) ("the sheriff is both a ministerial officer of the court for the purpose of keeping defendant until service of sentence begins and also the executive officer who executes the jail sentence" (citation omitted)). Plaintiffs concern is whether the Sheriff has exceeded his authority as a state actor, not whether such authority exists in the first instance. Compl. ¶ 1 (alleging SFSO imposed rules not authorized by the court).

### D.      Taxpayer Plaintiffs' Claims Fall Outside California's Standing Statute.

Taxpayer Plaintiffs' claims all fail for the additional reason that they are barred under California law from interfering in other peoples' criminal cases. The question of whether the EM Program Rules exceed the scope of the pretrial release orders is part of a criminal proceeding. Courts curtail the typically broad ability of taxpayers to challenge government actions in the criminal context.

The California Supreme Court recognized in *Dix v. Superior Court*, 53 Cal. 3d 442 (1991), that "neither a crime victim nor any other citizen has a legally enforceable interest, public or private, in the commencement, conduct, or outcome of criminal proceedings against another." *Id.* at 450. The effect that a ruling here would have on rulings regarding criminal defendants released on EM places this case squarely within the rule of *Dix* and differentiates it from the earlier decision in *Van Atta v. Scott*, 27 Cal. 3d 424, 448 (1980) (plurality opinion), *overruled on other grounds by York*, 9 Cal. 4th at 1143.

The ruling compelled by *Dix* is also sound as a matter of the policy considerations California courts consider to determine the scope of taxpayer standing. But for the restriction on taxpayer intervention in criminal proceedings, any taxpayer could circumvent time limitations, exhaustion rules, and preclusion doctrines for claims by criminal defendants. Claims like those brought by Taxpayer Plaintiffs broadly challenging conditions in criminal court orders would inflict "inevitable damage" on courts' management of pretrial and probation release and should not be permitted. *Carsten v. Psych. Examining Comm.*, 27 Cal. 3d 793 (1980) (denying taxpayer standing to members of an administrative agency seeking to challenge agency rules because of "the inevitable damage such lawsuits will inflict upon the administrative process"). The Court should therefore dismiss Taxpayer Plaintiffs' claims.

This deficiency is not capable of remedy in an amended complaint because it is fundamental to Taxpayer Plaintiffs' theories of liability. And even if Taxpayer Plaintiffs had statutory standing under state law, they lack Article III standing to pursue their claims in federal court. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). Therefore, as to Taxpayer Plaintiffs, dismissal without leave to amend is appropriate.

1

**V.      Conclusion**

2

      For the reasons above, the Court should dismiss Plaintiffs' claims, dismissing at least the

3

claims against the City and those brought by Taxpayer Plaintiffs without leave to amend.

4

5

Dated:  October 17, 2022

6

                                        DAVID CHIU
7                                        City Attorney
                                        MEREDITH B. OSBORN
8                                        Chief Trial Deputy
                                        KAITLYN MURPHY
9                                        ALEXANDER J. HOLTZMAN
                                        Deputy City Attorneys
10

11                              By: _____*/s/ Alexander J. Holtzman*_____
                                        ALEXANDER J. HOLTZMAN
12

                                        Attorneys for Defendants
13                                        CITY AND COUNTY OF SAN FRANCISCO, PAUL
                                        MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN
14                                        FRANCISCO SHERIFF

15

16

17

18

19

20

21

22

23

24

25

26

27

28