1   SHILPI AGARWAL (SBN 270749)
    AVRAM D. FREY (MJP 804789) (Admitted *Pro Hac Vice*)
2   EMI YOUNG (SBN 311238)
    HANNAH KIESCHNICK (SBN 319011)
3   AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN CALIFORNIA, INC.
4   39 Drumm Street
    San Francisco, CA 94111
5   Telephone: (415) 621-2493
    Facsimile: (415) 255-1478
6   Email: sagarwal@aclunc.org
    afrey@aclunc.org
7   eyoung@aclunc.org
    hkieschnick@aclunc.org
8

9   ADDITIONAL COUNSEL IDENTIFIED ON SIGNATURE PAGE
    *Attorneys for Plaintiffs*
10

                    **UNITED STATES DISTRICT COURT**
11                 **NORTHERN DISTRICT OF CALIFORNIA**
                         **OAKLAND DIVISION**
12

13  JOSHUA SIMON, DAVID BARBER, and JOSUE          )   CASE NO.: 22-cv-05541-JST
    BONILLA, individually and on behalf of all     )   (San Francisco Superior Court
14  others similarly situated, DIANA BLOCK, an      )   Case No: CGC-22-601686)
    individual, and COMMUNITY RESOURCE             )
15  INITIATIVE, an organization,                   )   <u>CLASS ACTION</u>
                                                    )
16              Plaintiffs,                         )   **NOTICE OF MOTION AND MOTION**
                                                    )   **FOR CLASS CERTIFICATION,**
17         v.                                       )   **APPOINT CLASS**
                                                    )   **REPRESENTATIVES, AND APPOINT**
18  CITY AND COUNTY OF SAN FRANCISCO, PAUL         )   **CLASS COUNSEL; MEMORANDUM**
    MIYAMOTO, in his official capacity as San       )   **OF POINTS AND AUTHORITIES IN**
19  Francisco Sheriff,                              )   **SUPPORT THEREOF**
                                                    )
20              Defendants.                         )   Date: January 19, 2023
                                                    )   Time: 2:00 p.m.
21                                                  )   Place: Courtroom 6
                                                    )   Judge: Hon. Jon S. Tigar
22                                                  )
                                                    )   Complaint Filed:  September 8, 2022
23                                                  )   Removal Filed:  September 28, 2022
                                                    )
24                                                  )   TRIAL DATE:  None set
                                                    )
25                                                  )   CLASS ACTION
                                                    )
26                                                  )   DEMAND FOR JURY TRIAL
                                                    )
27  _____ )
28
    MOTION FOR CLASS CERT., APPOINT CLASS REPS.
    & APPOINT CLASS COUNSEL
    CASE NO. 4:22-CV-05541-JST

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................. 1

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)) ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

I.      INTRODUCTION .................................................................................................... 2

II.     FACTS ...................................................................................................................... 2

        A.      Court-Ordered Electronic Monitoring ........................................................ 2

        B.      The Sheriff's Program Rules ....................................................................... 3

        C.      Program Rules 5 and 13 and the Sheriff's Indefinite Retention of GPS
                Location Data ............................................................................................... 5

        D.      Named Plaintiffs .......................................................................................... 7

                1.      Joshua Simon ................................................................................... 7

                2.      David Barber .................................................................................... 7

                3.      Josue Bonilla ................................................................................... 8

III.    ARGUMENT ............................................................................................................ 8

        A.      Plaintiffs' Proposed Class Is Sufficiently Definite .................................... 9

        B.      Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(a) ........ 9

                1.      Numerosity ..................................................................................... 10

                2.      Commonality .................................................................................. 11

                3.      Typicality ....................................................................................... 12

                4.      Adequacy ........................................................................................ 13

        C.      The Class Should be Certified Under Rule 23(b)(2) ................................ 14

        D.      This Court Should Appoint Counsel as Class Counsel Under Rule 23(g) ........... 15

IV.     CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
　　731 F.3d 952 (9th Cir. 2013) ................................................................................................ 11

*Ahlman v. Barnes*,
　　445 F. Supp. 3d 671 (C.D. Cal. 2020), *cert. denied*, 142 S. Ct. 2755 (2022) .................. 14

*Amchem Prods., Inc. v. Windsor*,
　　521 U.S. 591 (1997) ............................................................................................................... 9

*Campbell v. PricewaterhouseCoopers, LLP*,
　　253 F.R.D. 586 (E.D. Cal. 2008) .......................................................................................... 9

*Daniel F. v. Blue Shield of Cal.*,
　　305 F.R.D. 115 (N.D. Cal. 2014) .......................................................................................... 9

*Evon v. Law Offices of Sidney Mickell*,
　　688 F.3d 1015 (9th Cir. 2012) .............................................................................................. 13

*Gibson v. Local 40, Supercargoes & Checkers*,
　　543 F.2d 1259 (9th Cir. 1976) .............................................................................................. 14

*Gilbert v. MoneyMutual, LLC*,
　　318 F.R.D. 614 (N.D. Cal. 2016) ......................................................................................... 10

*Gray v. Golden Gate Nat'l Recreational Area*,
　　279 F.R.D. 501 (N.D. Cal. 2011) ......................................................................................... 14

*Hanon v. Dataproducts Corp.*,
　　976 F.2d 497 (9th Cir. 1992) ................................................................................................ 12

*Hernandez v. Cnty. of Monterey*,
　　305 F.R.D. 132 (N.D. Cal. 2015) ......................................................................................... 14

*In re Humphrey*,
　　11 Cal. 5th 135 (2021) ............................................................................................................ 2

*In re Itel Sec. Litig.*,
　　89 F.R.D. 104 (N.D. Cal. 1981) ........................................................................................... 10

*Kuang v. U.S. Dep't of Def.*,
　　340 F. Supp. 3d 873 (N.D. Cal. 2018), *vacated and remanded on other
　　grounds by* 778 F. App'x 418 (9th Cir. 2019) ..................................................................... 13

*Lerwill v. Inflight Motion Pictures, Inc.*,
　　582 F.2d 507 (9th Cir. 1978) .................................................................................................. 9

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
　　No. 1:16-cv-00157-DAD-JLT, 2017 WL 2257130 (E.D. Cal. May 23, 2017) ................. 10

*Millan v. Cascade Water Servs., Inc.*,
    310 F.R.D. 593 (E.D. Cal. 2015).............................................................................. 10

*Mulderigg v. Amyris, Inc.*,
    340 F.R.D. 575 (N.D. Cal. 2021) ............................................................................. 13

*Pole v. Estenson Logistics, LLC*,
    No. CV 15-07196 DDP (Ex), 2016 WL 4238635 (C.D. Cal. Aug. 10, 2016) ................. 10

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2009) ................................................................................. 14

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016).................................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................... 11

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ................................................................................. 11

*Wofford v. Safeway Stores, Inc.*,
    78 F.R.D. 460 (N.D. Cal. 1978) .............................................................................. 13

**RULES**

Fed. R. Civ. P. 23 ................................................................................................*passim*

**MISCELLANEOUS**

7A Mary J. Kane, *Fed. Prac. & Proc. Civ.* § 1763 (3d ed. 2018)................................. 11

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

   PLEASE TAKE NOTICE that on January 19, 2023 at 2:00 p.m. Pacific Time, or as soon thereafter as the matter may be heard by the Honorable Jon S. Tigar in Courtroom 6, United States District Court for the Northern District of California, Oakland Courthouse, 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Plaintiffs Joshua Simon, David Barber, and Josue Bonilla ("Lead Plaintiffs"), and Diana Block, and Community Resource Initiative (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23(a) and (b) to: (1) certify a class of all persons who have been subject to the imposition and/or enforcement of the San Francisco Sheriff's Office's Electronic Monitoring Program Rules 5 and 13; (2) appoint Lead Plaintiffs as Class Representatives; and (3) appoint the American Civil Liberties Union Foundation of Northern California ("ACLU NorCal") and Wilson Sonsini Goodrich and Rosati P.C. ("WSGR") as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

**STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3))**

  1.  Whether to certify the proposed Class (as defined below) pursuant to Federal Rule of Civil Procedure 23(a) and (b);

  2.  Whether to appoint Joshua Simon, David Barber, and Josue Bonilla as Class Representatives;

  3.  Whether to appoint ACLU NorCal and WSGR as Class Counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

This action challenges the San Francisco Sheriff's Office's ("Sheriff" or "SFSO") systematic intrusions on the privacy of individuals released pretrial on electronic monitoring ("EM") in San Francisco. After the Superior Court orders individuals released on EM, the Sheriff requires them to agree to a set of "Program Rules," several of which are not authorized by the court's release order.

In particular, Program Rule 5 purports to authorize any law enforcement officer to conduct warrantless, suspicionless searches of an individual's person, property, home, and automobile at any time ("four-way search clause"). Rule 13 purports to authorize the Sheriff to share participant GPS location data with any law enforcement agency upon request and in perpetuity—an ongoing encroachment given that the Sheriff's EM Program seemingly allows GPS data to be retained indefinitely.

The Lead Plaintiffs are individuals who have been or were previously released pretrial on EM and who are currently subject or were formerly subject to the Sheriff's Program Rules. They seek injunctive relief to prevent the Sheriff from imposing or enforcing Program Rules 5 and 13 on the ground that those rules violate their constitutional rights. Because the Sheriff's Program Rules apply to all past, present, and future individuals released pretrial on EM, Plaintiffs seek to represent a class specifically defined as "(a)ll individuals who have in the past been, are currently, or will in the future be subject to the Sheriff's Electronic Monitoring Program Rules [for] Pre-Sentenced Participants and/or San Francisco Sheriff's Dept. Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals." The Court should grant Plaintiffs' motion and certify the proposed class.

**II.     FACTS**

**A.     Court-Ordered Electronic Monitoring**

Following the filing of criminal charges and before trial, a San Francisco Superior Court judge may order release with varying degrees of supervision, set bail in accordance with *In re Humphrey*, 11 Cal. 5th 135 (2021), or, in some limited circumstances, order detention. Kim

Decl. ¶ 4 (ECF No. 22-4). The judge may impose EM on individuals released pretrial under any level of supervision, purportedly to ensure future court appearances and protect public safety. *Id.* ¶ 6.

The Superior Court typically orders EM after a hearing but does not inform releasees about the Sheriff's EM Program Rules, either in form or substance. *Id.*; *see also* Simon Decl. ¶ 3 (ECF No. 22-5); Bonilla Decl. ¶ 3 (ECF No. 22-7); Barber Decl. ¶ 5 (ECF No. 22-6). The court does not discuss on the record the scope of any privacy intrusions imposed by the Sheriff, particularly regarding the four-way search clause or indefinite retention and sharing of GPS location data. Kim Decl. ¶ 6; Simon Decl. ¶ 3; Bonilla Decl. ¶ 3; Barber Decl. ¶ 5. The court also does not obtain general waivers of Fourth Amendment rights. *Id.*

After the Superior Court orders release on EM, it executes a pretrial form order labeled, "County of San Francisco Sheriff's Office / Superior Court Pre-Sentenced Defendant Electronic Monitoring – Court Order." *See* Kieschnick Decl. Ex. 4.[1] This form imposes several requirements on releasees, including a requirement to acquiesce to all orders given by any SFSO employee or service provider. *Id.* Individuals also must live within a 50-mile radius of the Sheriff's EM office. *Id.* In addition, the form states, "the Court indicates that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." *Id.* Finally, the form lists other "court-ordered monitoring conditions" that the court may check off in its discretion, such as not possessing any weapons or consuming any alcohol. None of those discretionary conditions relates to or includes Program Rules 5 and 13. *Id.* Releasees have no opportunity to view this form order before the court signs it, and they do not sign it themselves thereafter. *See* Barber Decl. ¶ 7.

**B.     The Sheriff's Program Rules**

Following a court order, EM releasees are taken to the Sheriff's Community Programs building. There, SFSO's private contractor, Sentinel Offender Services, LLC ("Sentinel"), outfits releasees with an ankle monitor and enrolls them in the EM Program. Kim Decl. ¶ 7;

---

[1] All Kieschnick Decl. Exs. are attached to the Declaration of Hannah Kieschnick (ECF No. 22-1).

Simon Decl. ¶ 4; Bonilla Decl. ¶¶ 4-5; Barber Decl. ¶ 8. During enrollment, individuals are first informed of the Sheriff's "Electronic Monitoring Program Rules [for] Pre-Sentenced Participants." *See* Kieschnick Decl. Ex. 5 (hereinafter "Program Rules" or "Rules"). A Sentinel employee provides the Rules to releasees and instructs them to initial each rule and sign and date at the bottom. *See* Simon Decl. ¶ 6; Bonilla Decl. ¶ 7; Barber Decl. ¶ 9. Releasees are not provided access to counsel while at Sentinel's office and receive no explanation about the Program Rules. *See* Simon Decl. ¶ 6; Barber Decl. ¶ 9; Kim Decl. ¶ 8. In all cases, releasees understand from the circumstances that if they fail to initial, sign, and date the Program Rules, they will be returned to jail. *See* Simon Decl. ¶ 6; Bonilla Decl. ¶ 7; Barber Decl. ¶ 10.

Among the rules that EM releasees must assent to are Rules 5 and 13. Rule 5 states, "I shall submit to a search of my person, residence, automobile or property by any peace officer at any time." Kieschnick Decl. Ex. 5, Program Rules at 1. Rule 13 states "I acknowledge that my EM data may be shared with other criminal justice partners." *Id.* EM releasees also must separately initial, acknowledge, and agree to rules contained in a "San Francisco Sheriff's Dept. Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals," which contain provisions substantively equivalent to Rules 5 and 13. *See* Kieschnick Decl. Ex. 6 (hereinafter "Participant Contract") at 3, 4. No provision of the Program Rules, or any other policy or agreement, provides for the destruction or expungement of releasees' GPS location data after their time on EM concludes.

All individuals released pretrial on EM are subject to the Program Rules and Participant Contract. *See* Kieschnick Decl. ¶ 7; Kieschnick Decl. Ex. 5; Simon Decl. ¶ 6; Bonilla Decl. ¶ 7; Barber Decl. ¶ 10. Although SFSO claims it does not document the number of people released on EM, SFSO explains that the number of bookings received by the San Francisco Sheriff's Office Community Programs Unit approximates the number of people released pretrial on EM because in almost all cases, the booked individual was issued an EM device. *See* Kieschnick Decl. Ex. 2. The Sheriff booked 701 people in 2018, 1,380 people in 2019, 1,602 people in 2020, and 739 from January 1, 2021 through May 31, 2021. *Id.*

On information and belief, no prospective EM releasee has ever refused to initial and sign the Program Rules or Participant Contract. *See* Kim Decl. ¶ 9. To avoid the threat of continued detention pending trial, EM releasees initial and sign the Program Rules and Participant Contract. *See* Simon Decl. ¶ 6; Bonilla Decl. ¶ 7; Barber Decl. ¶ 10. Many do not understand the conditions imposed by the forms and are not provided access to counsel during their enrollment, but almost all need to avoid further pretrial detention for any number of reasons including to retain employment, housing, or child custody. *See* Simon Decl. ¶¶ 5-6; Bonilla Decl. ¶¶ 6-7; Barber Decl. ¶ 3.

### C.   Program Rules 5 and 13 and the Sheriff's Indefinite Retention of GPS Location Data

Program Rules 5 and 13, in concert with the Sheriff's indefinite retention of participant location data, subject some of San Francisco's most vulnerable residents to enormous privacy intrusions.

Once an individual is enrolled in the EM Program, notice of the four-way search condition described in Rule 5 is entered into the California Law Enforcement Telecommunications System ("CLETS"), a database to which all members of law enforcement in the state have access. *See* Kieschnick Decl. Ex. 9 ("General Search Condition Request" form that SFSO uses to enter search conditions "into the criminal justice system (CLETS)"); *id.* Ex. 10 at 2 (instructs SFSO employees and/or contractors to submit "General Search Condition Request" form and enter search conditions into CLETS as part of EM enrollment). CLETS notifies any California law enforcement officer who runs a check on an individual released pretrial on EM of the four-way search clause, purporting to authorize warrantless and suspicionless searches. Plaintiff Barber was subjected to a search of his person and vehicle in precisely this manner when, on August 30, 2022, he was pulled over by California Highway Patrol for speeding. *See* Barber Decl. ¶ 13. The officers ran a check on Plaintiff Barber's driver's license and presumably learned of the four-way search condition from CLETS. *Id.* ¶¶ 13-15. The officers then placed him in handcuffs, searched his person by patting him down and emptying his pockets, and extensively searched his car. *Id.* The Sheriff's Program Rule 5

1 provided the only basis for the California Highway Patrol to search Plaintiff Barber's vehicle.

2       Arguably more intrusive is the data-sharing condition of Rule 13, which

3 "acknowledge[s]" the Sheriff's sharing of GPS data with "criminal justice partners." *See*

4 Kieschnick Decl. Ex. 5, Program Rules at 1. When pretrial releasees are fitted with a

5 functioning ankle monitor, SFSO and Sentinel receive the individual's continuous GPS location

6 coordinates. *See* Kieschnick Decl. Ex. 7 at Appendix A, Part I(E)(6) (hereinafter "Sheriff-

7 Sentinel Contract"). A participant's GPS information can be viewed contemporaneously to

8 track real-time location and movements. Sentinel also saves this data on its servers, so an

9 individual's historic GPS data for their entire time on EM is stored and shareable with law

10 enforcement agencies. *Id.* at Appendix A, Part I(E)(6)(iv). The volume and scope of this data is

11 immense as SFSO and Sentinel track participants' location data the entire time they are

12 released pretrial and such release may last months or even years given the time it may take for

13 their cases to come to trial. Worse still, that information is stored in perpetuity, or until the

14 SFSO orders it destroyed, if ever.

15       Pursuant to Program Rule 13, SFSO routinely shares participant GPS location data with

16 other law enforcement agencies. To acquire the data, a requesting officer need only submit a

17 form titled "Electronic Monitoring Location Request" to the Sheriff. The officer need not

18 obtain a warrant or have any articulable suspicion, but must only represent that they are

19 "requesting this information as part of a current criminal investigation." *See* Kieschnick Decl.

20 Ex. 8 ("Electronic Monitoring Location Request" form); *see also* Kieschnick Decl. ¶ 11 & Ex.

21 2 (SFSO's July 1, 2022 written response labeled "ii"). The requesting agency may obtain either

22 the GPS location data of a specific individual on EM across a period of time, or the GPS

23 location data "of anyone on GPS tracking" in a specific location. *See* Kieschnick Decl. Ex. 8.

24 Because Sentinel may retain the complete GPS location data of all current and historical EM

25 releasees unless or until Sentinel's contract is terminated, data is available indefinitely for

26 cross-agency sharing. *See* Kieschnick Decl. ¶ 10 & Ex. 2 (SFSO's July 1, 2022 written

27 response labeled "ix"); *see also* Kieschnick Decl. Ex. 7, Sheriff-Sentinel Contract at 13.4.3

28 (covering "Disposition of Confidential Information"). Use of Rule 13 to obtain GPS data is on

the rise. In 2019, the Sheriff shared without court oversight the GPS location data of four individuals on pretrial EM. *See* Kieschnick Decl. ¶ 12 & Ex. 2 (SFSO's July 1, 2022 written response labeled "viii"). By 2021, the Sheriff shared the GPS location data of 179 individuals. *Id.*

### D.   Named Plaintiffs

#### 1.   Joshua Simon

Lead Plaintiff Joshua Simon is a 19-year-old life-long Bay Area resident who was on EM for four months while his criminal case was pending. *See* Simon Decl. ¶ 1. On May 22, 2022, Simon was arrested and taken to San Francisco County Jail. *See id.* ¶ 2. Five days later, on May 27, 2022, the Superior Court ordered Simon released on EM pending trial. *Id.* ¶ 3. At no point was Simon told about the Sheriff's EM Program Rules, including that he could be searched at any time, without warrant or any degree of articulable suspicion, and that the Sheriff could share his GPS location data with any member of law enforcement. *Id.* ¶¶ 3, 6. Simon signed the Sheriff's Program Rules because he wanted to attend his high school graduation. *Id.* ¶ 5. On September 21, 2022, after four months on EM, the judge ordered Simon released from EM. *Id.* ¶ 7. While Simon was on EM, he feared that law enforcement would use his GPS location data and identify him as a suspect if he happened to be in the wrong place at the wrong time. *Id.* ¶ 10. Simon struggled to find consistent work because the Sheriff subjected him to frequent check ins. *Id.* ¶ 8. Simon was constantly stressed and worried that he would be stopped at any time and searched pending trial. *Id.* ¶ 9.

#### 2.   David Barber

Lead Plaintiff David Barber is a 43-year-old resident of Fremont who is currently on EM while he awaits trial. *See* Barber Decl. ¶ 1. In August of 2021, Barber was arrested and spent several difficult weeks in the San Francisco County Jail. *Id.* ¶ 3. He struggled with anxiety during those weeks. On August 13, 2021, the Superior Court ordered Barber released pretrial on EM and with a home confinement condition. *Id.* ¶ 5. The court did not advise Barber about the Sheriff's EM Program Rules, including that he could be searched at any time, without warrant or any degree of articulable suspicion, and that the Sheriff could share his GPS location

data with any member of law enforcement. *Id.* ¶¶ 5, 7. Barber does not remember seeing or signing any court order setting forth those rules. *Id.* Instead, Barber learned of the Program Rules, including Rules 5 and 13, for the first time at Sentinel's office. *Id.* ¶ 9. He felt as though he had no choice but to sign the Program Rules because if he did not sign the paperwork, he would be returned to jail. *Id.* ¶ 10. He did not want to go back to jail because he was worried about keeping his job, losing his apartment, and caring for his pet. *Id.* ¶ 3. Although the Superior Court has since removed the home confinement condition, Barber has been on EM for a year. *Id.* ¶¶ 11, 12. While on EM, Barber has been handcuffed and searched following a traffic stop, presumably pursuant to Rule 5. *Id.* ¶ 13. Now, he suffers from anxiety and depression, and feels he has no privacy. *Id.* ¶ 22.

### 3.    Josue Bonilla

Lead Plaintiff Josue Bonilla is a 40-year-old resident of San Francisco who is currently on EM while he awaits trial. *See* Bonilla Decl. ¶ 1. In April of 2022, he was arrested and taken to the San Francisco County Jail. *Id.* ¶ 2. Being in jail was difficult for Bonilla, who is physically disabled. *Id.* ¶ 6. On May 31, 2022, the Superior Court ordered Bonilla released pretrial on EM. *Id.* ¶ 3. Bonilla does not remember whether he reviewed and signed the Program Rules during his enrollment at Sentinel's office. He remembers doing whatever the Sheriff and Sentinel told him to do because he understood that if he did not follow their instructions, he would be returned to jail. *Id.* ¶ 7. As a result of being on EM, Bonilla suffers from anxiety because he fears being searched at any time. *Id.* ¶ 9. Bonilla has lost his sense of privacy during his time on EM. *Id.*

## III.    ARGUMENT

This matter satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. The class is sufficiently definite. The class also satisfies Rule 23(a) and (b)(2). The class meets Rule 23(a) because (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Plaintiffs

further satisfy Rule 23(b)(2), which allows class actions for injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As further demonstrated below, injunctive relief is appropriate as to the proposed class. Finally, ACLU NorCal and WSGR should be appointed as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

### A.   Plaintiffs' Proposed Class Is Sufficiently Definite

Plaintiffs have provided an "adequate class definition" that is "precise, objective, and presently ascertainable." *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 123 (N.D. Cal. 2014) (citation omitted); *see also Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008) ("adequate class definition" is one that "specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity'") (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). Here, Plaintiffs seek to represent a class of "(a)ll individuals who have in the past, are currently, or will in the future, be subject to the Sheriff's Electronic Monitoring Program Rules [for] Pre-Sentenced Participants and/or San Francisco Sheriff's Dept. Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals." *See supra* at 2. Members of the proposed class can be ascertained by reference to objective criteria: whether or not they have been, are, or will be subject to the Sheriff's EM Program Rules. The proposed class is also easily identifiable using SFSO's records of all individuals who have been and currently are subject to the Program Rules and/or Participant Contract. These records include Sentinel's database of EM participants as well as the signed forms the Sheriff obtains from pretrial releasees during enrollment. Accordingly, the class is sufficiently defined.

### B.   Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(a)

The proposed class "satisf[ies] Rule 23(a)'s prerequisites" and "is maintainable under Rule 23(b)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). First, the proposed class satisfies the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see also Amchem Prods.*, 521 U.S. at 613.

Second, the action is maintainable as an injunctive class action under Rule 23(b)(2) because the Sheriff "has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).

### 1.     Numerosity

Under Federal Rule of Civil Procedure 23(a)(1), a class may be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder need not be "impossible"; instead, "the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157-DAD-JLT, 2017 WL 2257130, at *7 (E.D. Cal. May 23, 2017) (citation omitted); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015) (defining "impracticability" as when joinder of all class members is "difficult or inconvenient" and finding 44 class members sufficiently numerous); *In re Itel Sec. Litig.*, 89 F.R.D. 104, 111-12 (N.D. Cal. 1981) (finding that more than 100 prospective class members was sufficient to satisfy the numerosity requirement of 23(a)(1): "Where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met."). Although "[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] . . . [j]oinder has been deemed impracticable in cases involving as few as 25 class members." *Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614, 621 (N.D. Cal. 2016) (citation omitted). In addition to absolute numbers, courts also take into account the "ability of individual class members to bring suit individually," finding numerosity satisfied "when potential class members lack the financial resources to file individual suits." *See Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (Ex), 2016 WL 4238635, at *5 (C.D. Cal. Aug. 10, 2016) (citation omitted).

Here, the proposed class numbers in the thousands and individual pretrial releasees are unlikely to have the financial resources to file individual suits. In response to California Public Records Act requests, the Sheriff has explained that the number of bookings received by SFSO's Community Programs Unit approximates the number of people released pretrial on EM. The

Sheriff booked 701 people in 2018, 1380 people in 2019, 1602 people in 2020, and 739 from January 1, 2021 through May 31, 2021. *See* Kieschnick Decl. Ex. 2. And because all individuals released pretrial on EM are subject to the Sheriff's Program Rules and Participant Contract, *see* Kieschnick Decl. ¶ 7, the proposed class includes more than three thousand individuals—easily satisfying Rule 23(a)(1)'s numerosity requirement.

### 2.    Commonality

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Sufficient commonality exists where class members "suffered the same injury" and their claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). "Th[e] common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality can be satisfied by a "single significant" common issue. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). Suits for injunctive or declaratory relief "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Mary J. Kane, *Fed. Prac. & Proc. Civ.* § 1763 (3d ed. 2018). In this regard, the Rule 23(a)(2) commonality requirement overlaps with the inquiry as to whether a Rule 23(b)(2) injunctive class is appropriate. *See Walters v. Reno*, 145 F.3d 1032, 1045-48 (9th Cir. 1998).

Here, the proposed class meets the commonality requirement for the same reason the Court should certify a class under Rule 23(b)(2), discussed *infra*, because: all class members are subject to the same EM Program Rules and Participant Contract; they all suffer the same constitutional violations; and most significantly, they all seek the same remedy of declaratory relief and an injunction against the imposition or enforcement of Sheriff's Program Rules 5 and 13. *See Wal-Mart*, 564 U.S. at 350 ("What matters . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (citation omitted).

That is, all prospective class members are subject to (i) the blanket imposition and enforcement of Program Rules 5 and 13 (ii) *by the Sheriff*. Plaintiffs have pleaded common

constitutional harms arising from these common facts, namely: that imposition of Rules 5 and 13 by the Sheriff violates the separation of powers; that imposition of these Rules by the Sheriff and without an individualized assessment of their necessity violates Plaintiffs' rights against unreasonable search and seizure; that Rules 5 and 13 impinge on the California right to privacy; and that blanket imposition of these rules by the Sheriff violates due process. These claims do not turn on any individual differences between Plaintiffs and the members of their prospective class—the Sheriff's blanket imposition of Rules 5 and 13 on all EM releasees is either constitutional or it is not.  Finally, because Plaintiffs seek declaratory and injunctive relief, their claims present common questions under Rule 23(b)(2), discussed further below.

### 3.       Typicality

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, Lead Plaintiffs' claims are typical of the claims of the class because they all are or have been released pretrial on EM and their claims all arise from Defendants' imposition and enforcement of the same program rules. The proposed class challenges as unconstitutional the Sheriff's imposition and enforcement of the four-way search clause and data-sharing clause described in Program Rules 5 and 13, in conjunction with the Sheriff's indefinite retention of participants' GPS location data. Because the Sheriff requires all individuals released pretrial on EM to sign the Program Rules and Participant Contract, all individuals released pretrial on EM are subject to those rules and suffer the attendant constitutional violations. Thus, all class members, including the Lead Plaintiffs, have been and will continue to be injured in the same way: their constitutional rights have been and will continue to be violated.

### 4.      Adequacy

Under Federal Rule of Civil Procedure 23(a)(4), in order to serve as class representatives, Lead Plaintiffs must "fairly and adequately protect the interests of the class." "To determine adequacy, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Mulderigg v. Amyris, Inc.*, 340 F.R.D. 575, 581 (N.D. Cal. 2021) (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)) (internal quotations omitted). A lead plaintiff must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation. *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 487 (N.D. Cal. 1978).

Lead Plaintiffs will fairly and adequately protect the interests of the class. They have already prosecuted the action vigorously, and spent considerable time in pursuit of justice in this matter by meeting numerous times with counsel and drafting declarations, and will continue to do so as the case proceeds. In addition, Lead Plaintiffs are similarly situated to members of the class as they too were released pretrial on EM and were and/or are subject to the Sheriff's Program Rules and Participant Contract. *See* Bonilla Decl. ¶¶ 1, 7, 8; Barber Decl. ¶¶ 1, 9, 10, 11; Simon Decl. ¶¶ 1, 6, 7. Because the three Lead Plaintiffs were and/or are subject to EM and the Sheriff's Program Rules and Participant Contract, they all share the same interest in enjoining the imposition and enforcement of those rules. *See Kuang v. U.S. Dep't of Def.*, 340 F. Supp. 3d 873, 892 (N.D. Cal. 2018) (finding adequacy requirement satisfied in part because "named Plaintiffs have a similar alleged injury as the rest of the proposed class"), *vacated and remanded on other grounds by* 778 F. App'x 418 (9th Cir. 2019). There are no conflicts among the Lead Plaintiffs and the purported class as the relief sought will benefit all class members in the exact same manner—namely, that class numbers will not be subject to privacy and constitutional violations under the Sheriff's Rules.

1          **C.     The Class Should be Certified Under Rule 23(b)(2)**

2          Under Federal Rule 23(b)(2), a class should be certified if "the party opposing the class

3  has acted or refused to act on grounds that apply generally to the class, so that final injunctive

4  relief . . . respecting the class as a whole." Fed R. Civ. P. 23(b)(2). "'[I]t is sufficient' to meet

5  the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is

6  generally applicable to the class as a whole.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th

7  Cir. 2009) (citation omitted); *see also Gibson v. Local 40, Supercargoes & Checkers*, 543 F.2d

8  1259, 1264 (9th Cir. 1976) (certifying Rule 23(b)(2) class alleging a general course of racial

9  discrimination by employer or union, "though the discrimination may have . . . affect[ed]

10  different members of the class in different ways"). Accordingly, Rule 23(b)(2) is "'almost

11  automatically satisfied" where, as here, the action "primarily seek[s] injunctive relief.'"

12  *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 151 (N.D. Cal. 2015) (quoting *Gray v.*

13  *Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011)). "[U]nlike

14  actions brought under one of the other 23(b) prongs, 'questions of manageability and judicial

15  economy are . . . irrelevant to 23(b)(2) class actions.'" *Rodriguez*, 591 F.3d at 1125 (citation

16  omitted).

17          The proposed class is a quintessential Rule 23(b)(2) class. Plaintiffs complain of a

18  "pattern or practice that is generally applicable to the class as a whole"—the Sheriff's blanket

19  imposition of Rules 5 and 13, in concert with his indefinite retention of GPS location data, on

20  *all* individuals released pretrial on EM. And an injunction or declaration will provide relief on a

21  class-wide basis. *See Rodriguez*, 591 F.3d at 1126 (certifying Rule 23(b)(2) class of immigrant

22  detainees where "relief from a single practice is requested by all class members"; *Ahlman v.*

23  *Barnes*, 445 F. Supp. 3d 671, 687 (C.D. Cal. 2020) (Rule 23(b)(2) satisfied where plaintiffs

24  challenged jail conditions and officers' alleged insufficient response to COVID-19 pandemic

25  and sought uniform injunctive relief compelling release of disabled and medically-vulnerable

26  inmates), *cert. denied*, 142 S. Ct. 2755 (2022).

27

28

### D.      This Court Should Appoint Counsel as Class Counsel Under Rule 23(g)

Pursuant to Rule 23(g), in appointing lead counsel, the Court takes into account the following considerations: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). These considerations all militate in favor of appointing ACLU NorCal and WSGR as Class Counsel.

*First*, Proposed Class Counsel have expended significant time and resources investigating and developing this action. ACLU NorCal identified and investigated the legal claims set forth in this action and interviewed many individuals impacted by the Sheriff's EM Program Rules.

*Second*, Proposed Class Counsel ACLU NorCal and WSGR have the experience and expertise to vigorously prosecute this action. ACLU NorCal is the largest regional affiliate of the American Civil Liberties Union and is dedicated to the defense and promotion of the guarantees of liberty and individual rights embodied in the U.S. and California constitutions. Declaration of Shilpi Agarwal ("Agarwal Decl.") ¶ 2, filed concurrently herewith. It has extensive experience litigating complex civil actions and has served as class counsel for certified classes in federal and state court. *Id*. For example, ACLU NorCal served as class counsel in this Court for classes of immigration detainees challenging the conditions of their confinement during the COVID-19 pandemic; individuals in the Tulare County jail challenging the conditions of their confinement during the COVID-19 pandemic; and immigration detainees challenging delays in their receipt of bond hearings before an immigration judge. *Id*. ¶ 4. And three of the members of the ACLU NorCal team have served as public defenders so they have intimate knowledge of the criminal legal system, including release determinations. *Id*. ¶¶ 3, 7, 8.

WSGR, who is taking this case *pro bono*, has prosecuted and defended numerous class actions in both state and federal court. Declaration of Justina K. Sessions ("Sessions Decl.") ¶ 2, filed concurrently herewith. In March 2020, WSGR obtained a trial victory for a class of

Medicare patients it represented *pro bono*, which was affirmed by the U.S. Court of Appeals for the Second Circuit. *Id*. ¶ 3. WSGR also earned an honorable mention as part of *The American Lawyer's* national "Litigation Department of the Year" awards. *Id*. ¶ 4. The WSGR team for this case has been personally involved in numerous class actions and civil rights cases, and comprises a diverse group of attorneys who are passionate about restoring the rights of some of San Francisco's most vulnerable residents. *Id*. ¶ 5.

*Third*, ACLU NorCal and WSGR have devoted and will continue to devote the resources necessary to vigorously prosecute this case.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court certify this action as a class action pursuant to Rules 23(a), (b)(2), and (b)(3), appoint Lead Plaintiffs as Class Representatives, and appoint Lead Counsel as Class Counsel.

DATED: October 28, 2022

Respectfully submitted,

By: _____

Shilpi Agarwal (SBN 270749)
  sagarwal@aclunc.org
Avram D. Frey (MJP 804789) (Admitted *Pro Hac Vice*)
  afrey@aclunc.org
Emi Young (SBN 311238)
  eyoung@aclunc.org
Hannah Kieschnick (SBN 319011)
  hkieschnick@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478

Justina K. Sessions (SBN 270914)
  jsessions@wsgr.com
John P. Flynn (SBN 141094)
  jflynn@wsgr.com
Colleen Bal (SBN 167637)
  cbal@wsgr.com
Malavika F. Lobo (SBN 317635)
  mlobo@wsgr.com
Ana Alicia Sontag (SBN 340602)

asontag@wsgr.com
WILSON, SONSINI, GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2000

*Attorneys for Plaintiffs*

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2          I, Justina K. Sessions, am the ECF User whose identification and password are being

3   used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all

4   signatories have concurred in this filing.

5

6   Dated: October 28, 2022                    /s/ Justina K. Sessions
7                                              Justina K. Sessions

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28