1  DAVID CHIU, State Bar #189542
   City Attorney
2  MEREDITH B. OSBORN, State Bar #250467
   Chief Trial Deputy
3  KAITLYN MURPHY, State Bar #293309
   ALEXANDER J. HOLTZMAN, State Bar #311813
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, 6th Floor
   San Francisco, California 94102-5408
6  Telephone:     (415) 554-3867
   Facsimile:     (415) 554-3837
7  Email:         kaitlyn.murphy@sfcityatty.org
                  alexander.holtzman@sfcityatty.org
8

9  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO,
10 PAUL MIYAMOTO IN HIS OFFICIAL CAPACITY AS
   SAN FRANCISCO SHERIFF
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  OAKLAND DIVISION

15

16 | JOSHUA SIMON, DAVID BARBER, AND | Case No. 22-cv-05541 JST |
17 | JOSUE BONILLA, INDIVIDUALLY AND | |
   | ON BEHALF OF ALL OTHERS | **DEFENDANTS' OPPOSITION TO** |
18 | SIMILARLY SITUATED, DIANA BLOCK, | **PLAINTIFFS' MOTION FOR A** |
   | AN INDIVIDUAL AND COMMUNITY | **PRELIMINARY INJUNCTION (ECF NO. 22)** |
19 | RESOURCE INITIATIVE, AN | |
   | ORGANIZATION, | |
20 | | |
   | Plaintiffs, | Judge:        Honorable Jon S. Tigar |
21 | | Courtroom:    Courtroom 6, 2nd Floor |
   | vs. | Hearing Date: January 12, 2023 |
22 | | Time:         2:00 p.m. |
   | CITY AND COUNTY OF SAN | |
23 | FRANCISCO, PAUL MIYAMOTO, IN HIS | Trial Date:    Not Set |
   | OFFICIAL CAPACITY AS SAN | |
24 | FRANCISCO SHERIFF, | |
   | | |
25 | Defendants. | |
26

27

28

**TABLE OF CONTENTS**

I.  Statement of Facts ..................................................................................................2

    A.  EM Program .................................................................................................2

    B.  Criminal Defendant Plaintiffs ....................................................................3

        1.  Joshua Simon ....................................................................................3

        2.  David Michael Barber .......................................................................4

        3.  Josue Bonilla .....................................................................................5

II.  Legal Standard ......................................................................................................5

III.  Argument ...............................................................................................................7

    A.  Plaintiffs are Unlikely to Succeed on Their Underlying Claims. ...............7

        1.  Neither Criminal Defendants nor Taxpayer Plaintiffs Can Viably
            Bring Their Claims in This Forum ....................................................7

            a.  Criminal Defendant Plaintiffs Needed to Raise Any
                Disputes with the Criminal Court. ........................................7

            b.  Taxpayer Plaintiffs Lack Statutory and Article III
                Standing. ...............................................................................9

        2.  Plaintiffs' Constitutional Claims Lack Merit ..................................10

            a.  Plaintiffs' Separation of Powers Arguments Fail. .............10

            b.  Plaintiffs' Search Conditions Arguments Fail. .................13

                i.   Plaintiffs' Claims Fail Under the Totality of the
                     Circumstances Standard ........................................13

                ii.  Plaintiffs' Claims Fail Under the Special Needs
                     Standard. ...............................................................17

                iii. Plaintiffs' Cited Cases Do Not Show a
                     Constitutional Issue ...............................................17

            c.  Plaintiffs' Arguments About Data Sharing and Retention
                Fail. ......................................................................................18

    B.  Plaintiffs Are Not Likely to Suffer Irreparable Harm Absent Injunctive
        Relief ...........................................................................................................21

    C.  The Balance of Equities and Public Interest Tip in Defendants' Favor. ...22

    D.  Because Taxpayer Plaintiffs Lack Standing, Any Injunction Must Be
        Limited to Individual Criminal Defendant Plaintiffs ...............................25

IV.  Conclusion ...........................................................................................................25

i

Opp. to Mot. for Prelim. Inj.; Case No. 22-cv-05541-JST                    n:\lit\li2022\230184\01636615.docx

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**State Cases**

*Carmel Valley Fire Prot. Dist. v. State*
  25 Cal. 4th 287 (2001) ...................................................................................................10

*Carsten v. Psych. Examining Comm.*
  27 Cal. 3d 793 (1980) ....................................................................................................10

*Mathews v. Becerra*
  8 Cal. 5th 756 (2019) .....................................................................................................19

*County of Los Angeles v. Los Angeles Cnty. Emp. Rels. Com.*
  56 Cal. 4th 905 (2013) ...................................................................................................19

*Dix v. Superior Court*
  53 Cal. 3d 442 (1991) ......................................................................................................9

*Hill v. NCAA*
  7 Cal. 4th 1 (1994) .............................................................................................15, 18, 19

*In re Brown*
  76 Cal. App. 5th 296 (2022) .............................................................................................9

*In re Danielle W.*
  207 Cal. App. 3d 1227 (1989) ........................................................................................12

*In re Ryan Waer*
  No. A162548 (Cal. Ct. App. May 27, 2021) ...................................................................13

*In re Ryan Waer*
  No. S269188 (Cal. S. Ct. July 21, 2021) ........................................................................13

*In re Walter E.*
  13 Cal. App. 4th 125 (1992) ...........................................................................................12

*In re York*
  9 Cal. 4th 1133 (1995) ...............................................................................9, 14, 15, 19, 23

*Laisne v. State Bd. of Optometry*
  19 Cal. 2d 831 (1942) ...............................................................................................10, 11

*People v. Bunn*
  27 Cal. 4th 1 (2002) ........................................................................................................12

*People v. Buza*
  4 Cal. 5th 658 (2018) ......................................................................................................20

*People v. Cervantes*
  154 Cal. App. 3d 353 (1984) ..........................................................................................12

ii

Opp. to Mot. for Prelim. Inj.; Case No. 22-cv-05541-JST                     n:\lit\li2022\230184\01636615.docx

*People v. McInnis*
    6 Cal. 3d 821 (1972) ................................................................................................21

*People v. Ryan Waer*
    S.F. Super. Ct. Case No. CI-21001863 ...................................................................12

*Pettus v. Cole*
    49 Cal. App. 4th 402 (1996) ...................................................................................19

*Vallindras v. Mass. Bonding & Ins. Co.*
    42 Cal. 2d 149 (1954) .............................................................................................11

*Van Atta v. Scott*
    27 Cal. 3d 424 (1980) ...............................................................................................9

**State Statutes & Codes**

California Penal Code § 1192.7(c)(31) ...............................................................14, 15

California Penal Code § 1270.1(a) ......................................................................14, 15

California Penal Code § 1270.1(c) ........................................................................8, 22

California Penal Code § 1318(a)(2) ......................................................................8, 22

California Penal Code § 1320.18 ..........................................................................8, 22

California Penal Code § 1320.20(e)(1) .................................................................8, 22

**Federal Cases**

*Alaska Pretrial Detainees for End of Unwarranted Courtroom Shackling v. Johnson*
    2018 WL 2144345 (D. Alaska May 9, 2018) ...........................................................8

*All. for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ..................................................................................6

*Arevalo v. Hennessy*
    882 F.3d 763 (9th Cir. 2018) ....................................................................................9

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*
    950 F.2d 1401 (9th Cir. 1991) ................................................................................21

*Bell v. Wolfish*
    441 U.S. 520 (1979) ................................................................................................16

*Bumper v. North Carolina*
    391 U.S. 543 (1968) ................................................................................................17

*Cantrell v. City of Long Beach*
    241 F.3d 674 (9th Cir. 2001) ..................................................................................10

*Conservation Cong. v. United States Forest Serv.*
   774 F. App'x 364 (9th Cir. 2019) ...................................................................23

*Drakes Bay Oyster Co. v. Jewell*
   747 F.3d 1073 (9th Cir. 2014) .....................................................................22

*Dymo Indus. v. Tapeprinter, Inc.*
   326 F.3d 141 (9th Cir. 1964). .......................................................................6

*Garcia v. Google, Inc.*
   786 F.3d 733 (9th Cir. 2015) .........................................................................6

*Gerstein v. Pugh*
   420 U.S. 103 (1975).....................................................................................12

*Goldie's Bookstore, Inv. v. Super. Ct.*
   739 F.2d 466 (9th Cir. 1984) .......................................................................21

*Great N. Res., Inc. v. Coba*
   2020 WL 6820793 (D. Or. Nov. 20, 2020).................................................21

*Griffin v. Wisconsin*
   483 U.S. 868 (1987).....................................................................................17

*Haskell v. Harris*
   745 F.3d 1269 (9th Cir. 2014) .................................................................6, 20

*Hirt v. Jackson County*
   2020 WL 3104502 (D. Or. June 11, 2020) ...................................................9

*In re Cathode Ray Tube Antitrust Litig.*
   2021 WL 7448552 (N.D. Cal. Jan. 6, 2021)...............................................21

*Johnson v. United States*
   333 U.S. 10 (1948).................................................................................12, 18

*L.A. Cnty. Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992) .........................................................................8

*Legend Night Club v. Miller*
   637 F.3d 291 (4th Cir. 2011) .......................................................................24

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
   571 F.3d 873 (9th Cir. 2009) .........................................................................6

*Martin v. Int'l Olympic Comm.*
   740 F.2d 670 (9th Cir. 1984) .........................................................................6

*Mazurek v. Armstrong*
   520 U.S. 968 (1997).......................................................................................6

iv

*Melendres v. Arpaio*
  695 F.3d 990 (9th Cir. 2012) ............................................................22, 24

*Munaf v. Green*
  553 U.S. 674 (2008)............................................................................5

*Nelson v. NASA*
  530 F.3d 865 (9th Cir. 2008) ..............................................................22

*Norbert v. City & County of San Francisco*
  10 F.4th 918 (9th Cir. 2021) ...............................................................25

*Norris v. Premier Integrity Sols., Inc.*
  641 F.3d 695 (6th Cir. 2011) ..............................................................14

*Olson v. California*
  2020 WL 905572 (C.D. Cal. Feb. 10, 2020) .........................................21

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*
  636 F.3d 1150 (9th Cir. 2011) ..............................................................6

*Payton v. New York*
  445 U.S. 573 (1980)...........................................................................18

*Stanley v. USC*
  13 F.3d 1313 (9th Cir. 1994) .............................................................6, 7

*Tracy Rifle & Pistol LLC v. Harris*
  118 F. Supp. 3d 1182 (E.D. Cal. 2015) *aff'd*, 637 F. App'x 401 (9th Cir. 2016).....................23

*Turner v. City & County of San Francisco*
  617 F. App'x 674 (9th Cir. 2015) ........................................................10

*United States v. Barnett*
  415 F.3d 690 (7th Cir. 2005) ..............................................................14

*United States v. Dailey*
  941 F.3d 1183 (9th Cir. 2019) ............................................................11

*United States v. Duff*
  831 F.2d 176 (9th Cir. 1987) ..............................................................11

*United States v. Groves*
  2009 WL 3234187 (E.D. Cal. Oct. 5, 2009)..........................................14

*United States v. Jones*
  565 U.S. 400 (2012)...........................................................................12

*United States v. Knights*
  534 U.S. 112 (2001)...........................................................................13

v

*United States v. Ocheltree*
    622 F.2d 992 (9th Cir. 1980) .................................................................................18

*United States v. Scott*
    450 F.3d 863 (9th Cir. 2006) .................................................................................17

*United States v. Shaibu*
    920 F.2d 1423 (9th Cir. 1990) ...............................................................................18

*United States v. Stephens*
    424 F.3d 876 (9th Cir. 2005) .................................................................................12

*United States v. Wells*
    29 F.4th 580 (9th Cir. 2022) .................................................................................11

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008)....................................................................................5, 6, 22

*Zepeda v. U.S. I.N.S.*
    753 F.2d 719 (9th Cir. 1983) .................................................................................25

**Federal Statutes**

42 USC § 1983.................................................................................................9

**Charter Provisions**

S.F. Charter § 4.127 .......................................................................................20

S.F. Charter § 6.105 .......................................................................................20

**Miscellaneous**

Edna Erez, et al., *GPS Monitoring Technologies & Domestic Violence: An Evaluation Study* (June
    2022), https://www.ojp.gov/pdffiles1/nij/grants/238910.pdf ...........................................16, 24

Johanna Lacoe, et al., *Bail Reform in San Francisco: Pretrial Release and Intensive Supervision
    Increased After* Humphrey at 1, Cal. Policy Lab (May 25, 2021), https://www.capolicylab.org/wp-
    content/uploads/2021/05/Bail-Reform-in-San-Francisco-Pretrial-Release-and-Intensive-
    Supervision-Increased-after-Humphrey.pdf ...............................................................23

Patricia Tjaden & Nancy Thoennes, U.S. Dep't of Justice, *Extent, Nature, and Consequences of
    Intimate Partner Violence: Findings from The National Violence Against Women Survey* 53 (2000),
    https://www.ojp.gov/pdffiles1/nij/181867.pdf ...........................................................24

n:\lit\li2022\230184\01636615.docx

Criminal Defendant Plaintiffs Joshua Simon, David Barber, and Josue Bonilla are awaiting trial on felony charges. The San Francisco Superior Court gave each man a choice: he could await trial in jail or, if he was willing to waive his Fourth Amendment rights, wear an ankle monitor, and follow the instructions of the San Francisco Sheriff's Office ("SFSO"), he could participate in the court's Electronic Monitoring ("EM") Program and be released pending trial. The EM Program Rules require participants to submit to four-way searches and acknowledge that SFSO can share their GPS location data with other law enforcement agencies. Each Criminal Defendant Plaintiff selected EM over jail. Through this lawsuit and their requested injunction, Criminal Defendant Plaintiffs, along with advocates Diana Block and Community Resource Initiative ("Taxpayer Plaintiffs"), seek to strike a new bargain. Criminal Defendant Plaintiffs do not wish to be remanded, but they also do not wish to abide by the EM Program Rules to which they previously agreed. Instead, they ask the Court to rewrite the choices the criminal court gave to them to fashion a third option for every San Francisco pretrial defendant released on EM—to remain out of custody without having to comply with the EM Program Rules. The Court should not grant Plaintiffs' motion as it would countermand the criminal court's orders, put victims at risk, and destroy law enforcement data.

Plaintiffs do not satisfy any of the requirements for a preliminary injunction. Criminal Defendant Plaintiffs needed to, and did not, raise their claims in criminal court or through habeas proceedings before raising them here. Taxpayer Plaintiffs lack statutory and Article III standing. And Plaintiffs impermissibly seek a class wide injunction before seeking class certification.

Plaintiffs also have not shown they are likely to succeed on the merits of their claims alleging a violation of the separation of powers doctrine, the Fourth Amendment, or their rights to privacy. The challenged EM Program Rules are consistent with the court's pretrial release orders. Courts bless the delegation of criminal supervision to outside agencies such as SFSO without violating the separation of powers doctrine. Plaintiffs also have no Fourth Amendment claims because the consent-based four-way search provision passes constitutional muster, and there is no law that would require deletion or prohibit sharing of GPS location data validly collected from parties subject to EM.

Plaintiffs face limited harm from denial of an injunction given their tenuous, delayed claims. And the requested injunction would harm the public interest by reducing public safety in general and

the security of domestic violence victims in particular. Criminal Defendant Plaintiff Bonilla's own conduct shows why the EM Program Rules are required to keep crime victims safe as he violated the terms of his pretrial release, reportedly pounding on the hood of his victim's car and threatening her after he was placed on EM while facing domestic violence charges. The Court should deny the motion.

## I.       Statement of Facts
### A.       EM Program

Judges determine the level of restrictions on a criminal defendant awaiting trial. ECF No. 1-1 ("Compl.") ¶ 2. Some defendants are remanded into custody, others are released on their own recognizance ("OR") and still others are released with conditions. The court can order a defendant to participate in EM as a condition of release. *Id.* ¶ 17. When it does, SFSO administers the court's EM program. *Id.* ¶ 12; *id.*, Ex. A.

The court's EM release order states: "All participants on pre-trial electronic monitoring shall obey all orders given by any SFSO employee(s) or contract service provider(s)" and "By signing these instructions and affixing a seal, the Court indicates that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." Compl. ¶ 19; *id.*, Ex. A. EM participants receive a copy of the Program Rules during enrollment and are asked to read the rules and initial each one. Compl. ¶¶ 23-24. Plaintiffs challenge the following EM Program Rules:

> 5. I shall submit to a search of my person, residence, automobile or property by any peace officer at any time.
>
> . . .
>
> 13. I acknowledge that my EM data may be shared with other criminal justice partners.

*Id.* ¶¶ 25-26; *id.*, Ex. B. EM participants also sign a contract with similar provisions. *Id.*, Ex. C.

SFSO uses GPS location data from EM participants to investigate and solve crimes including tracking burglaries, robberies, and assaults. Declaration of Lieutenant Philip Judson in Support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Judson Decl.") ¶¶ 3-11, 17. EM's four-way search term addresses needs specific to the EM Program including avoiding and detecting tampering with EM equipment, addressing violations of the Program Rules, enforcing stay-away orders, promoting attendance at court hearings, promoting compliance with court-ordered special

2

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                    n:\lit\li2022\230184\01636615.docx

conditions (e.g. no firearms, no alcohol, or no drugs), and conducting home assessments, in addition to helping SFSO and other law enforcement agencies with typical law enforcement activities. *Id.* ¶ 15. SFSO cannot effectively monitor EM Program participants and enforce court orders if its deputies must develop probable cause to do so. *Id.* ¶ 14.

SFSO searched for records of requests for EM data on Criminal Defendant Plaintiffs from April through September 2022. The only request was from Barber's defense attorney. *Id.* ¶ 16.

**B.     Criminal Defendant Plaintiffs**
**1.     Joshua Simon**

Simon is charged with felony counts of domestic violence, assault with a deadly weapon, and vandalism. Declaration of Kaitlyn Murphy in Support of Opposition to Preliminary Injunction Motion ("Murphy Decl."), Ex. A. The underlying Incident Report indicates he threatened to beat a family member. Declaration of Lieutenant Kevin Lee in Support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Lee Decl."), Ex. A. Approximately four months later, a second Incident Report indicates he assaulted his girlfriend while trying to convince her to give him money, and then balled up his fists at SFPD officers who arrived to intervene. *Id.*, Ex. B.

Simon was represented by counsel at his criminal court hearing on May 25, 2022, where the court placed him on EM and ordered that he be fitted with a GPS device, placed on home detention "and ordered to comply with all terms of release as set forth on the record and by the SFSO." Murphy Decl., Ex. A. The court prevented him from possessing any deadly weapon, prohibited him from going to certain locations, and prevented him from having any contact with certain individuals. *Id.*

The court issued the EM Order, Judson Decl., Ex. A, and Simon signed a copy of the release order and the EM Program Rules. *Id.*, Exs. B-C. He was enrolled in EM on May 28, 2022, *id.*, Ex. E, and signed the EM Contract, *id.*, Ex. D.

Simon's file contains five notices of non-compliance with the EM Program Rules, indicating he was in prohibited locations listed on his "stay away" order three times, left the 50-mile radius set by the court, and cut off his ankle monitor. *Id.*, Ex. F.

### 2.   David Michael Barber

Barber is charged with felony counts of domestic violence, assault with a deadly weapon, and criminal threats. Murphy Decl., Ex. C. The Incident Report indicates he punched and choked his victim to the point that she lost a tooth, lost her voice, and was transported to the hospital. Lee Decl., Ex. C.

Barber was represented by counsel at his criminal court hearing on August 13, 2021, at which point he was released on EM, fitted with a GPS device, and "ordered to comply with all terms of release as set forth on the record and by the SFSO." Murphy Decl., Ex. C. The court also ordered that he remain on home detention, confined within his residence unless authorized to leave by SFSO staff, and forfeit any deadly weapons. *Id.* The court issued an EM order, Judson Decl., Ex. G. Although Barber declared he "did not review or sign any papers when [he] went before the judge," the court's August 13, 2021, release order bears his signature. *Id.*, Ex. H. Barber also initialed and signed the EM Program Rules, enrolled in EM on August 18, 2021, and signed the EM contract. *Id.*, Ex. I-K.

Approximately seven months later, in response to a motion by Barber, the court modified his pretrial release conditions so that he could check in with his case officer via telephone rather than in person. Murphy Decl., Ex. D.

On March 29, 2022, Barber's counsel emailed SFSO stating that his client told him "he had to travel to SF multiple times a week to check in with Sentinel," and seeking clarification as the attorney's understanding was that Barber only had to check in once per week. Judson Decl., Ex. M. SFSO responded indicating that Barber had only come into the office for four compliance checks in 2022 and that his claim of having to come in multiple times per week "is totally false." Judson Decl., Ex. M. Instead, Barber was directed to come in "every Monday between 1pm and 4 pm." *Id.*

After another five months, Barber again moved the court to modify his conditions of release on August 24, 2022. Murphy Decl., Ex. E. The court granted his motion and ordered that he was relieved of his home detention conditions although he was required to remain on GPS monitoring. *Id.* Barber never requested the Court reconsider its order as to the challenged EM Program Rules.

Barber's file contains at least 11 notices of non-compliance for curfew violations. Judson Decl., Ex. L.

### 3.     Josue Bonilla

Bonilla is charged with felony counts of domestic violence, assault with a deadly weapon, and criminal threats. Murphy Decl. Ex. F. An Incident Report from September 20, 2020 states Bonilla punched his victim several times. Lee Decl., Ex. D. A subsequent Incident Report from April 18, 2022, indicates Bonilla came to his victim's home while drunk, yelling he "would make her disappear," and that she "would be the perfect victim because no one would look for her." Lee Decl., Ex. E; *see also* Murphy Decl., Ex. G at 4:10-5:10.

On May 31, 2022, Bonilla waived arraignment and was released subject to the condition that he "be placed on pre-trial monitoring by the Sheriff's Office," fitted with a GPS monitor, and "ordered to comply with all terms of release as set forth on the record and by the SFSO." Murphy Decl., Exs. F-G. The court also ordered him to forfeit any deadly weapons, not to threaten certain individuals, and to stay away from certain individuals and locations. *Id.*, Ex. F. The hearing transcript shows the court considered argument with respect to Bonilla's custodial status and held, in light of his threatening statements: "I definitely think an electronic monitor is warranted." Murphy Decl., Ex. G at 7:15-21.

The court issued an EM order, Judson Decl., Ex. N, and Bonilla signed a copy of the release order as well as the EM Program Rules. *Id.*, Exs. O, P. Bonilla was enrolled in EM on June 1, 2022, *id.*, Ex. R, and signed the EM contract on the same day. *Id.*, Ex. Q.

A June 2, 2022, Incident Report indicates Bonilla was involved in a further incident. Lee Decl., Ex. G. Despite having been ordered two days earlier to stay away from the victim, the report indicates Bonilla approached the victim's car on the street and began to hit it, stating in Spanish, "You are going to pay, bitch." Lee Decl., Ex. G.

Although Bonilla declared on August 19, 2021, that he has been on EM "without violations" since May, Bonilla Decl. ¶ 8, his file contains one Notice of Non-Compliance from four days after his declaration was executed, which states he violated his stay-away order. Judson Decl., Ex. S.

## II.   Legal Standard

Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)). They require "the exercise of a far-reaching power" that should not be "indulged except in a

case clearly warranting it." *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.3d 141, 143 (9th Cir. 1964). A preliminary injunction is inappropriate unless a plaintiff establishes that the law and facts "clearly favor" their position, namely that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 24; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (holding plaintiff carries the burden of proof for a preliminary injunction). While "serious questions going to the merits" may suffice to support a preliminary injunction, they only do so when accompanied by a "balance of hardships that tips sharply towards the plaintiff," a showing of "irreparable injury[,] and [a showing] that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Because Plaintiffs bring a facial challenge—seeking to invalidate conditions of pretrial release for everyone subject to EM—they must show that the challenged conditions (or lack of conditions, in the case of destruction of data) are inappropriate for every person subject to EM to receive their requested injunctions. *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (en banc) (affirming denial of preliminary injunction). Even if a contemplated injunction is limited to Criminal Defendant Plaintiffs, each would independently need to demonstrate entitlement to an injunction.

Plaintiffs' burden here is especially high given that they ask the court to enter an injunction that is to a significant degree mandatory rather than prohibitory. Because mandatory injunctions upset the status quo, they are "particularly disfavored" compared to permissive injunctions. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). "In plain terms, mandatory injunctions should not issue in doubtful cases." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011)); *see Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("In cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction."). Courts deny requests for mandatory injunctions "unless the facts and law clearly favor the moving party." *Stanley v. USC*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citation omitted).

Anticipating this issue, Plaintiffs have tried to frame their requested injunction in prohibitory terms as "enjoin[ing] the imposition and enforcement of [Program] Rules 5 and 13." Mot. at 18. But the balance of the Motion makes clear that Plaintiffs are focused on the topics addressed (or not addressed, in the case of data retention) by Rules 5 and 13, not on the Rules themselves. *See also* Compl. at 23 (prayer for relief seeking an injunction requiring destruction of data). The injunction Plaintiffs describe would appear, among other things, to compel SFSO to (1) countermand the state criminal court's orders regarding criminal defendants' Fourth Amendment waiver; (2) remove from CLETS the (accurate) notation that these individuals have waived their Fourth Amendment rights and agreed to a four-way search condition; (3) refuse to make available EM data to other law enforcement agencies that the criminal courts have clearly contemplated would be available—even when a violent crime is in progress and sharing the data could stop the crime; and (4) destroy EM data based on their concept of the appropriate retention period. And Plaintiffs ask the Court to order this relief without showing that any defendant—much less Criminal Defendant Plaintiffs—have raised this dispute with the criminal court. Plaintiffs cannot demonstrate an entitlement to an injunction and have come nowhere near showing "the facts and law clearly favor" entry of their requested injunction's mandatory aspects. *Stanley*, 13 F.3d at 1320.

## III.   Argument

### A.   Plaintiffs are Unlikely to Succeed on Their Underlying Claims.

Plaintiffs are unlikely to succeed on their underlying claims for at least two independent reasons. First, they brought their arguments in an impermissible forum and cannot use a federal court to circumvent consideration of the issues raised in this lawsuit by state criminal courts. Second, even if Plaintiffs could proceed in federal court, their claims lack merit.

#### 1.   Neither Criminal Defendants nor Taxpayer Plaintiffs Can Viably Bring Their Claims in This Forum.

##### a.   Criminal Defendant Plaintiffs Needed to Raise Any Disputes with the Criminal Court.

The superior court determines the conditions of pretrial release by considering "evidence of past court appearances of the detained person, the maximum potential sentence that could be imposed, and the danger that may be posed to other persons if the detained person is released." Cal. Penal Code

7

§ 1270.1(c). Based on that analysis, it identifies "the least restrictive nonmonetary condition or combination of conditions that will reasonably assure public safety and the defendant's return to court." *Id.* § 1320.18; *see also id.* § 1320.20(e)(1). To be eligible for pretrial release, a defendant must sign a release agreement promising, among other things, "to obey all reasonable conditions imposed by the court." *Id.* § 1318(a)(2). In San Francisco, the court's pretrial release orders require those placed on EM to waive their Fourth Amendment rights and instruct them that they must comply with all SFSO rules to avoid pretrial detention, recognizing that SFSO will need to promulgate more detailed program rules to implement EM. *See* Judson Decl., Ex. A (indicating in the release order "supervision the San Francisco Sheriff's Office (SFSO) will employ"). Thus, Plaintiffs' claims at their core challenge the EM Program Rules as exceeding the scope of the pretrial release conditions ordered by the criminal court. Criminal Defendant Plaintiffs must bring their claims, which concern ongoing criminal proceedings, to the criminal court. That court is the most appropriate body to adjudicate the questions Plaintiffs raise and the one vested with the legal authority to enter the relief Plaintiffs seek.

Adjudication of claims regarding interpretation of criminal courts orders in district court would run counter to the principle that federal courts "should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992). Courts decline to grant relief requiring an ongoing intrusion in the administration of state judicial systems as would occur here if Plaintiffs obtain their requested injunction. *See, e.g.*, *Alaska Pretrial Detainees for End of Unwarranted Courtroom Shackling v. Johnson*, No. 3:17-cv-00226-SLG, 2018 WL 2144345, at *2 (D. Alaska May 9, 2018) (holding abstention appropriate when plaintiffs sought injunction requiring state court not to shackle pretrial detainees absent an individual judicial finding because that relief would require the court "to step into the role of ongoing compliance monitor and enforcer of the injunction"), *aff'd on abstention and remanded*, 745 F. App'x 61 (9th Cir. 2018).

Criminal defendants can alternatively challenge the EM Program Rules through petitions for habeas relief. The availability of this alternative remedy further demonstrates why Plaintiffs cannot bring putative class claims. *See* Cal. Super. Ct., S.F. Cnty., Local Rules, rule 16.12(A) (habeas corpus "[m]atters relating to all criminal proceedings must be presented to the Supervising Judge"). Faced

8

with a writ of mandate petition by a pretrial criminal defendant, the California Court of Appeal "elected to treat [the] petition for writ of mandate as a petition for writ of habeas corpus . . . which is the appropriate vehicle for raising questions concerning the legality of a grant or denial of bail." *In re Brown*, 76 Cal. App. 5th 296, 301 (2022), *review denied* (June 22, 2022). Courts also reject attempts to bring constitutional challenges about pretrial detention under § 1983 because of the availability of habeas petitions. *See Hirt v. Jackson County*, No. 1:19-CV-00887-AC, 2020 WL 3104502, at *4 (D. Or. June 11, 2020) (dismissing complaint on grounds that § 1983 claims alleging "due process and equal protection violations in relation to bail . . . fall within the core of habeas corpus because they challenge the fact or duration of confinement" (citation omitted)); *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (holding petitioner had "properly exhausted his state remedies as to his bail hearing" having "filed two motions with the superior court, a habeas petition with the California Court of Appeal, and a petition for a writ of habeas corpus with the California Supreme Court"). Criminal Defendant Plaintiffs' decision to bring their claims in the wrong form and forum means they are not entitled to any interim relief.

### b.    Taxpayer Plaintiffs Lack Statutory and Article III Standing.

Although Taxpayer Plaintiffs need not present their claims in criminal court, they lack statutory standing under California law and Article III standing in federal court.

California courts place sensible limits on the typically broad ability of taxpayers to challenge government actions in the criminal context. The California Supreme Court recognized in *Dix v. Superior Court*, 53 Cal. 3d 442 (1991), that "neither a crime victim nor any other citizen has a legally enforceable interest, public or private, in the commencement, conduct, or outcome of criminal proceedings against another." *Id.* at 450. The effect that an injunction here would have on pretrial release orders places this case squarely within the rule of *Dix* and differentiates it from *Van Atta v. Scott*, 27 Cal. 3d 424, 448 (1980) (plurality opinion), *overruled on other grounds by In re York*, 9 Cal. 4th 1133, 1143 (1995). But for the restriction on intervention in criminal proceedings, any taxpayer could circumvent time limitations, exhaustion rules, and preclusion doctrines on another's claims. Claims like those Taxpayer Plaintiffs assert, broadly challenging criminal court orders, would

inflict "inevitable damage" on courts' management of pretrial and probation release and should not be permitted. *Carsten v. Psych. Examining Comm.*, 27 Cal. 3d 793 (1980) (denying taxpayer standing).

Taxpayer Plaintiffs also lack Article III standing. Any injury to Taxpayer Plaintiffs from the challenged conditions comes only through their status as taxpayers, Compl. ¶¶ 9-10, but "California's lenient taxpayer standing requirements do not relieve [plaintiffs] of the obligation to establish a direct injury under the more stringent federal requirements for state and municipal taxpayer standing." *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). Taxpayer Plaintiffs present a "generalized grievance for which [they] ha[ve] no standing to sue" because the "'mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court.'" *Turner v. City & County of San Francisco*, 617 F. App'x 674, 677 (9th Cir. 2015) (citation omitted). Taxpayer Plaintiffs' claims therefore cannot support an injunction because they lack standing.

### 2. Plaintiffs' Constitutional Claims Lack Merit.

Plaintiffs are highly unlikely to succeed on their claims. The record even at this early stage has reinforced the need for the challenged conditions given Criminal Defendant Plaintiffs' domestic violence charges, violations of court orders, and inconsistencies in sworn statements to the Court.[1]

### a. Plaintiffs' Separation of Powers Arguments Fail.

Plaintiffs come nowhere close to satisfying the demanding standard for their separation of powers challenge. California courts find a separation of powers violation only when one branch "wrests '*complete*' control of a power charged to another branch." Mot. at 7 (quoting *Laisne v. State Bd. of Optometry*, 19 Cal. 2d 831, 835 (1942)) (emphasis added); *cf. id.* (leaving out "except as permitted by this Constitution" from the end of the phrase, "Persons charged with the exercise of one power may not exercise either of the others . . . ." in quotation from Cal. Const. art. III, § 3). Because "the three branches of government are interdependent," one branch can take actions "that may 'significantly affect those of another branch,'" as long as they do not "defeat or materially impair" the powers of the other branch. *Carmel Valley Fire Prot. Dist. v. State*, 25 Cal. 4th 287, 298 (2001).

---

[1] Plaintiffs do not offer their due process claims as a basis for an injunction, and those claims fail in any event for the reasons described in Defendants' Motion to Dismiss, ECF No. 24, at 13-16.

10

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                                    n:\lit\li2022\230184\01636615.docx

Courts constitutionally may, and typically do, delegate implementation of their supervision orders to executive branch departments charged with overseeing those released from custody. *See United States v. Wells*, 29 F.4th 580, 593 (9th Cir. 2022) (holding the officer "is in the best position to determine when a use of computer devices or internet service is appropriate" for the defendant); *United States v. Dailey*, 941 F.3d 1183, 1195 (9th Cir. 2019) ("That federal probation officers or the local sheriff may later tell Dailey how to register properly in a given location is not a delegation of the Article III judicial power."). Perhaps in recognition of this interdependence, sheriffs' offices receive immunities associated with implementing courts' orders. *See e.g.*, *Vallindras v. Mass. Bonding & Ins. Co.*, 42 Cal. 2d 149, 155 (1954) (cited Mot. at 8). SFSO has permissibly "*adminster*[ed] the conditions determined by the Superior Court." Mot. at 8 (emphasis in original). It has in no way "wrest[ed] complete control" of the conditions of pretrial release from the courts. *Laisne*, 19 Cal. 2d at 835.

Here, the criminal court delegated implementation of the EM program to SFSO through its pretrial release orders. The release orders found that EM was necessary, recognized that the criminal defendants had "waived their 4th Amendment rights," and ordered compliance with "all orders given by any SFSO employee(s) or contract service provider," as conditions for release. Judson Decl., Exs. A, G, N. The challenged conditions (and lack of a set data destruction policy) are subsets of the criminal court's orders but do not exceed the bounds of those orders. *Compare id.*, Exs. A, G, N (EM Orders), *with id.*, Exs. C-D, I-J, P-Q (executed EM Program Rules and Contracts). This type of delegation from the criminal court to a law enforcement agency is allowed (and even necessary). *See United States v. Duff*, 831 F.2d 176, 178 (9th Cir. 1987) ("The probation officer's use of urinalysis to determine whether Duff was using illegal drugs was consistent with the court's condition that Duff not violate the law, and the deterrent effect of such testing was calculated to improve Duff's conduct.").

Plaintiffs do not explain how the challenged EM Program Rules go beyond the criminal court's orders, resting their argument on ipse dixit that the challenged search condition, law enforcement sharing of EM data, and lack of a specified, limited retention period for EM data are inconsistent with the criminal court's orders, when they are not. *See* Mot. at 7-9.

The cases Plaintiffs cite only undermine their general argument that activities are siloed within branches of government and their specific argument that SFSO cannot constitutionally implement the

11

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                              n:\lit\li2022\230184\01636615.docx

criminal court's EM orders. As *In re Danielle W.*, 207 Cal. App. 3d 1227 (1989), explained, "A nonjudicial board or officer may be authorized to perform 'quasi-judicial' powers to determine facts and exercise discretion. Separation of powers does not mean an entire or complete separation of powers or functions, which would be impracticable, if not impossible." *Id.* at 1236 (internal citations omitted) (rejecting separation of powers challenge). *In re Walter E.*, 13 Cal. App. 4th 125, 136 (1992), *publication ordered* (Feb. 11, 1993), rejected a separation of powers argument about implementation of treatment plans for dependent children, recognizing the branches' interrelated roles. *People v. Bunn*, 27 Cal. 4th 1 (2002), repeatedly acknowledged the interconnected work of government branches in analyzing the California Legislature's power to affect courts. *See id.* at 14 ("the 'sensitive balance' underlying the tripartite system of government assumes a certain degree of mutual oversight and influence"). *People v. Cervantes*, 154 Cal. App. 3d 353, 358 (1984), addressed post-trial determinations about the "propriety, amount, and manner of payment of restitution," involving far more discretion than implementation of the court-ordered EM Program. And *United States v. Stephens*, 424 F.3d 876 (9th Cir. 2005), upheld delegations of significant responsibility for implementing drug testing and treatment so long as a court set the maximum number of non-treatment drug tests, *id.* at 884. Similarly, here, the criminal court took the Fourth Amendment waiver and ordered EM but delegated implementation of the EM Program to SFSO.

Plaintiffs cite cases together standing for the proposition that, absent exceptions, courts set the outer bounds of probable cause and constitutional waivers for pretrial release, but the cases are irrelevant because, while courts set the outer bounds, an agency can set narrower rules within the limits set by the courts, as SFSO did here. *See Gerstein v. Pugh*, 420 U.S. 103, 112-13 (1975) (probable cause); *Johnson v. United States*, 333 U.S. 10, 13-14 (1948) (same); *United States v. Jones*, 565 U.S. 400, 404 (2012) (police attachment of GPS tracking device to car constituted a search).

Plaintiffs are also wrong in asserting that criminal defendants cannot petition the court to modify their conditions of release as part of the EM Program. Mot. at 9. They can and do. Barber has at least twice successfully moved to modify his conditions of release. ECF Nos. 25-4, 25-5. There is also evidence that at least one other putative class member has unsuccessfully challenged his four-way search condition. In *People v. Ryan Waer*, S.F. Super. Ct. Case No. CI-21001863, the defendant

12

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                    n:\lit\li2022\230184\01636615.docx

objected to a pretrial four-way search condition and social media monitoring. The court nonetheless

identified those conditions as necessary for pretrial release, the Court of Appeal denied his writ

petition, and the California Supreme Court denied review of the defendant's challenges. *See* Order

Denying Petition for Review, *In re Ryan Waer*, No. S269188 (Cal. S. Ct. July 21, 2021); Order

Summarily Denying Petition, *In re Ryan Waer*, No. A162548 (Cal. Ct. App. May 27, 2021).

In the face of numerous cases recognizing the need for courts to rely on supervising agencies to

implement conditions of release and the demanding standard to find a separation of powers violation,

the Court is highly unlikely to find a separation of powers violation in this case.

### b.   Plaintiffs' Search Conditions Arguments Fail.

The four-way search condition for pretrial release satisfies Fourth Amendment and parallel

California constitutional scrutiny, whether analyzed under the totality of the circumstances or special

needs. This is because of the sharply diminished reasonable expectations of privacy of pretrial

defendants who consent to EM and waive their Fourth Amendment rights, the strong government

interests in the four-way search condition for individuals whose release the court conditioned on that

consent and waiver, and the specialized nature of San Francisco's EM program. "The touchstone of

the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by

assessing, on the one hand, the degree to which it intrudes upon an individual's privacy" evaluated in

terms of the individual's "reasonable expectation of privacy," "and, on the other, the degree to which it

is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S.

112, 118-19 (2001) (citation omitted) (upholding probation search condition). Because both sides of

this balancing favor enforceability of the waiver entered by the court and confirmed in the Program

Rules, Plaintiffs are unlikely to show that the four-way search condition is unconstitutional.[2]

### i.   Plaintiffs' Claims Fail Under the Totality of the Circumstances Standard.

Criminal Defendant Plaintiffs, like others ordered released subject to EM and a Fourth

Amendment waiver, have reduced reasonable expectations of privacy compared to the general public

---

[2] Simon's claims with respect to the four-way search condition are moot because he is no longer a participant in the EM program subject to that condition. *See* ECF No. 22-5 (Simon Decl.) ¶ 7.

in several important respects. First, Criminal Defendant Plaintiffs repeatedly agreed to waive their

Fourth Amendment rights. In court, while represented and advised by counsel, they agreed to a broad

waiver of their Fourth Amendment rights as reflected in the court's orders. Judson Decl., Exs. A, G, N.

If the criminal court did not specifically advise them about their rights during the arraignment, it likely

did not do so based on defense counsels' representation to the court that their clients would forgo

further advisement of their rights having been advised by counsel. *See, e.g.*, Murphy Decl., Ex. G at

3:1 (Bonilla's counsel waiving "further advisement of rights"). Each Criminal Defendant Plaintiff also

signed an Agreement and Order Releasing Defendant on Own Recognizance, agreeing to "comply

with any additional conditions the Court may impose." Judson Decl., Exs. B, H, O; *cf.* Barber Decl.

¶ 7 ("I did not review or sign any papers when I went before the judge."). Criminal Defendant

Plaintiffs then agreed to the specific four-way search condition at least twice in writing to SFSO,

noting their agreement with initials and signatures on the Program Rules and Program Contract.

Judson Decl., Exs. C-D, I-J, P-Q. SFSO records confirm EM Program staff reviewed the Program

Rules and Contract with Criminal Defendant Plaintiffs. *Id.*, Exs. E, K, R. A pretrial detainee is subject

to a restriction on their Fourth Amendment rights "if he or she consents to their imposition, in

exchange for obtaining OR release." *York*, 9 Cal. 4th at 1149-50; *see Norris v. Premier Integrity Sols.,

Inc.*, 641 F.3d 695, 699 (6th Cir. 2011) (recognizing reduced privacy interest based on agreement and

participation in "Pretrial Release Program" in rejecting challenge to direct observation urine testing);

*United States v. Barnett*, 415 F.3d 690, 691-92 (7th Cir. 2005) (concluding a "blanket waiver of Fourth

Amendment rights" was valid because "imprisonment is a greater invasion of personal privacy than

being exposed to searches of one's home on demand"); *United States v. Groves*, No. CR-S-07-

229FCD(GGH), 2009 WL 3234187, at *2 (E.D. Cal. Oct. 5, 2009) ("One's right to be free from

searches of person and property without warrants in violation of the Fourth Amendment can be greatly

circumscribed during pretrial release."). This repeated, knowing consent to suspicionless searches

significantly diminished the Criminal Defendant Plaintiffs' reasonable expectation of privacy.

Second, Criminal Defendant Plaintiffs' reasonable expectations of privacy were diminished by

their status as criminal defendants subject to heightened restrictions on release based on their serious

charges. *See* Murphy Decl., Exs. A, C, F; Cal. Penal Code §§ 1192.7(c)(31), 1270.1(a). Like the

14

student athletes in *Hill v. NCAA*, 7 Cal. 4th 1 (1994), these criminal defendants belong to a group with a "special set of social norms" and a "diminished expectation of privacy." *Id.* at 9 (holding that student athletes' diminished expectation of privacy outweighed by legitimate objectives in drug testing).

Given the California Supreme Court's holding in *York* affirming the constitutionality of a suspicionless search condition for pretrial criminal defendants in part based on rejecting "the flawed premise that a defendant who seeks OR release has the same reasonable expectation of privacy as that enjoyed by persons not charged with any crime," 9 Cal. 4th at 1149, it would be unreasonable for criminal defendants on pretrial release to believe they maintained the same expectation of privacy that they had prior to their arrest and charges, which is what Plaintiffs seek in eliminating the search provisions of the EM Program, rendering their Fourth Amendment waiver meaningless. Whatever restrictions criminal defendants face on EM, they retain greater liberty than those in custody. *York*, 9 Cal. 4th at 1149 (holding "the [four-way search condition] do[es] not place greater restrictions upon an OR releasee's privacy rights than the releasee would have experienced had he or she not secured OR release").

Meanwhile, the four-way search condition furthers important government and public interests. *See id.* at 1151. Criminal Defendant Plaintiffs are charged with multiple felonies subjecting them to heightened release restrictions. *See* Murphy Decl., Exs. A, C, F.; Cal. Penal Code §§ 1192.7(c)(31), 1270.1(a). The court made an individualized determination in each case to condition the defendant's release on (1) enrollment in the EM Program and (2) a Fourth Amendment waiver. *Id.* For example, the court pointed out Bonilla's threat to make his victim disappear was a death threat warranting enhanced supervision. Murphy Decl., Ex. G at 7:17-20. Bonilla also told his victim she "would be the perfect victim because no one would look for her." Lee Decl., Ex. E. His later threat *after* he was put on EM—yelling in Spanish, "You are going to pay, bitch," while striking his victim's car in a crosswalk reflects the ongoing importance of the search condition to ensure Bonilla and others like him do not have weapons to use in carrying out their threats. Lee Decl., Ex. G at 3.

The other Criminal Defendant Plaintiffs are similarly situated. Simon's family reported that he had a gun in his bedroom. *Id.*, Ex. A at 4. In a separate incident, Simon violently flipped his girlfriend onto the ground, smashed her phone, and attempted to flee to avoid getting arrested. *Id.*, Ex. B at 5-7.

15

And Barber choked, hit, and punched his girlfriend, smashing the windshield of her car yelling "Bitch I'll kill you," which the victim believed he was capable of doing. *Id.*, Ex. C at 4-5. The government interest in a four-way search condition also rises because Criminal Defendant Plaintiffs were released from custody without payment of bail, which is an alternative method to promote compliance. *See* Murphy Decl., Exs. A, C, F.

Although Plaintiffs argue the "government's interest in surveilling pretrial releasees is minimal because releasees are presumed innocent," Mot. at 13, courts reject the view that the presumption of innocence affects the constitutionality of conditions like those at issue here, at least when tied to court consideration of individual circumstances as occurs with the EM Order. *See Bell v. Wolfish*, 441 U.S. 520, 540, 533 (1979) (holding the presumption of innocence "has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun").

San Francisco's experiences with respect to the government and public interests align with the empirical literature. A government-funded study of several GPS pretrial release programs determined that a program in the Midwest that was "more rigorous," with defendants "subject to unannounced surprise home visits . . . that may at times turn into a full-fledged search," "found a reduced likelihood of program violations (e.g., curfew) by GPS defendants as compared to [defendants on radio-frequency monitoring], while a less restrictive program [in the South] found no differences in the likelihood of program violations by GPS defendants as compared to RF defendants." Edna Erez, et al., *GPS Monitoring Technologies & Domestic Violence: An Evaluation Study* at xvi, 51 (June 2022), https://www.ojp.gov/pdffiles1/nij/grants/238910.pdf. "This finding [was] especially surprising since the Midwest GPS defendants, who had a higher mean number of prior arrests compared to their counterparts at the South site, had a lower likelihood of violating program rules." *Id.* at xvi. The researchers also found at the Midwest site that "conviction rates were even higher for GPS defendants than for defendants remaining in jail" and hypothesized that "[i]t may be that program-enforced prohibition against contacting the victim (e.g., to persuade her to renege or not appear in court) results in a higher conviction rate." *Id.* at xvi. Balancing Criminal Defendant Plaintiffs' sharply diminished reasonable expectations of privacy against the significant government and public interests in the four-way search condition, the condition passes constitutional muster.

16

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                    n:\lit\li2022\230184\01636615.docx

### ii. Plaintiffs' Claims Fail Under the Special Needs Standard.

Independent of the totality of the circumstances analysis, the four-way search condition is justified based under a "special needs" analysis. California's "operation of a [pretrial EM Program], like its operation of a school, government office or prison, or its supervision of a regulated industry, [] presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987). Those needs include addressing violations of the EM Program Rules including stay-away orders, promoting attendance at hearings; assuring compliance with court-ordered restrictions on firearms, alcohol, or drugs; and conducting home assessments. Judson Decl. ¶ 15. A requirement for officers to develop probable cause for a search would disrupt the "ongoing [non-adversarial] supervisory relationship" between SFSO on behalf of the court and EM Program participants. *Griffin*, 483 U.S. at 879.

### iii. Plaintiffs' Cited Cases Do Not Show a Constitutional Issue.

The cases Plaintiffs cite do not undermine the constitutionality of the four-way search condition. *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006), supports Defendants here based on the criminal court's individualized finding of the need to impose EM as a condition of release and its finding of a Fourth Amendment waiver. The case's central holding is that the need for a Fourth Amendment waiver pretrial must be individualized, as it is here. *Scott*, 450 F.3d at 872 & n.12. The Preliminary Injunction Motion, at 12, excerpts away key language from *Scott*, 450 F.3d at 866, that makes clear limitations on constitutional rights for those released pretrial are acceptable and the concern is for government's "free rein," "abuse of power," and "lopsided deals," none of which are present here. Although *Scott* declined to find special needs justified the blanket drug testing condition at issue, the case did not involve the individualized judicial findings relevant to special needs present here and involved a type of search (drug testing) that *Scott* concluded was "*not* designed to ensure [the defendant's] appearance in court." 450 F.3d at 872 & n.11 (emphasis in original).

Other than *Scott*, Plaintiffs rely for purposes of authority on the scope of consent in cases involving police officers using deception or coercion to extract consent from ordinary individuals, without a judicial finding of a Fourth Amendment waiver. *Bumper v. North Carolina*, 391 U.S. 543 (1968), for example, held that "a search" could not "be justified as lawful on the basis of consent when

17

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                                      n:\lit\li2022\230184\01636615.docx

that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant." *Id.* at 548. The repeated in-court and out-of-court agreements involved in the EM Program are far more voluntarily than "orderly submission" to a warrant. *Id.* at 549 n.14. Plaintiffs have not sued the court or challenged the court's ability to request and receive a valid Fourth Amendment waiver. *United States v. Ocheltree*, 622 F.2d 992 (9th Cir. 1980), similarly addressed consent coerced through a promise to get a warrant unsupported by probable cause to conduct the search absent consent, *id.* at 993-94; *see Payton v. New York*, 445 U.S. 573, 576 (1980) (addressing constitutionality of "warrantless and non-consensual" entry into home); *Johnson v. United States*, 333 U.S. 10, 13 (1948) ("Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office."); *United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990) (retreating into home did not constitute consent to search). Accordingly, the four-way search condition is constitutional.

### c.   Plaintiffs' Arguments About Data Sharing and Retention Fail.

Plaintiffs do not satisfy two of three threshold elements for a California constitutional privacy claim based on EM data sharing and retention: the reasonable expectation of privacy and serious invasion of a privacy interest. Even if they could satisfy these elements, their privacy claims fail when balanced against countervailing government and public interests. Courts consistently hold the collection of data from those charged with serious felonies for law enforcement purposes complies with California's privacy right. For the same reasons, any separate Fourth Amendment claim based on data collection, sharing, and retention falls short.

Plaintiffs do not demonstrate a reasonable expectation of privacy with respect to their GPS data because they consented to the retention and sharing of the data and their claimed expectation of privacy is unsupported by accepted community norms. "[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *Hill*, 7 Cal. 4th at 26. Criminal Defendant Plaintiffs repeatedly consented to GPS data collection and sharing prior to their enrollment in the EM program. Judson Decl., Exs. A, C-E, G, I-K, N, P-R.

Plaintiffs also made no showing of the required "objective entitlement" to destruction and non-sharing of location data. They cannot do so because, as described above, pretrial defendants have a sharply limited expectation of privacy. *York*, 9 Cal. 4th at 1149 (rejecting "the flawed premise" defendant "has the same reasonable expectation of privacy as that enjoyed by persons not charged with any crime"); *compare Mathews v. Becerra*, 8 Cal. 5th 756, 770 (2019) (cited by Plaintiffs but addressing privacy expectations of ordinary individuals not on pretrial release). *Carpenter*, 138 S. Ct. at 2217-18, likewise does not assist Plaintiffs because it involved citizens who were not criminal defendants and did not consent to tracking, where the tracking was not court ordered. The primary harm Plaintiffs identify is that their data "may be used to implicate class members in a crime," Mot. at 15, but there is no constitutional right to be free of suspicion as an individual released pretrial on an EM condition near a crime scene.

Plaintiffs make no attempt to show the necessary "egregious breach of the social norms underlying" their alleged privacy right to the GPS data. *Hill*, 7 Cal. 4th at 37. They try to reduce their burden by arguing an invasion of privacy need only be "slight or trivial," Mot. at 15, but the full quote makes clear that is not the standard. *Id. Hill* held: "No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Id.*; *see County of Los Angeles v. Los Angeles Cnty. Emp. Rels. Com.*, 56 Cal. 4th 905, 929, 931 (2013) (not holding every privacy invasion that is "more than trivial" would "r[i]se to the level of a 'serious' invasion of privacy under *Hill*"). The retention and sharing of location data with law enforcement agencies, for active criminal investigations, does not breach social norms underlying an individual's privacy right, especially where law enforcement agencies are required to affirm they are seeking the information for a valid purpose. ECF No. 22-1 (Kieschnick Decl.), Ex. 8 (requiring signed affirmation that data request is "part of a current criminal investigation"; *compare Pettus v. Cole*, 49 Cal. App. 4th 402, 458 (1996) (addressing *misuse* of confidential medical information).

Any cognizable privacy limitation Plaintiffs could conceive is greatly outweighed by the government and public interests served by SFSO being able to retain and share EM data with other law enforcement agencies. A limitation on law enforcement sharing of data outside of the agency, like the

19

one Plaintiffs request here, would be unprecedented. Judson Decl. ¶ 11. Sharing allowed SFSO to assist the South San Francisco Police Department in identifying an armed robber and in locating him for arrest. *Id.* ¶ 10a. Sharing facilitated the identification of another prolific burglar known to have firearms at the scene of multiple burglaries and allowed police to locate him after a federal warrant was issued. *Id.* ¶ 10b. Sharing facilitated the identification of a third individual who had kidnapped a child. *Id.* ¶ 10c. And sharing data with officers in multiple jurisdictions resulted in the discovery that a fourth criminal had committed a string of robberies across the Bay Area. *Id.* ¶ 10f. In these and many other incidents, *see, e.g.*, *id.* ¶ 10e, retention and sharing of EM data has been critical to protection of the public.

The government interest in allowing sharing and retention of EM data for law enforcement purposes is heightened in San Francisco by the distinct roles created by the San Francisco Charter for the Sheriff and Police Department because San Francisco is both a city and a county. Unlike other jurisdictions where the county sheriff is responsible for general policing, the San Francisco Sheriff has responsibility for court bailiff services, protection of public buildings, oversight of the jail, and execution of orders issued by California courts and San Francisco departments, boards, and commissions. S.F. Charter § 6.105. Meanwhile, the Charter directs the Police Department to "preserve the public peace, prevent and detect crime, and protect the rights of persons and property by enforcing the laws." S.F. Charter § 4.127. SFSO therefore relies on other agencies including the SFPD to assist SFSO in its supervision duties for the EM Program because EM participants are in the community where other law enforcement agencies have primary jurisdiction. Judson Decl. ¶ 6.

Courts have repeatedly held that government and public interests outweigh any privacy limitation for retention and sharing of law enforcement data more sensitive than the EM data at issue here. "[T]he retention of an arrestee's fingerprints, photographs, and other identifying information in law enforcement files generally has not been thought to raise constitutional concerns, even though the arrestee may later be exonerated." *People v. Buza*, 4 Cal. 5th 658, 680 (2018); *see Haskell v. Brown*, 317 F. Supp. 3d 1095, 1110 (N.D. Cal. 2018) (finding "no authority holding that California is required to expunge [] DNA records and samples at all" and observing "courts have not held that a state must always return fingerprints or other identifying information taken at arrest"); *People v. McInnis*, 6

20

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                    n:\lit\li2022\230184\01636615.docx

Cal. 3d 821, 826 (1972) (mugshots "are kept in permanent files regardless of the eventual disposition of the case"). Unlike DNA, fingerprints, or mug shots, which reflect permanent aspects of an individual, historical GPS data is limited to when the criminal defendant is on pretrial release and subject to EM and therefore triggers an even lower privacy interest.

Plaintiffs have not identified any case demonstrating a state or federal constitutional requirement to stop sharing for law enforcement purposes or to destroy data like EM location data. Plaintiffs are unlikely to prevail in establishing that unprecedented requirement here.

**B.      Plaintiffs Are Not Likely to Suffer Irreparable Harm Absent Injunctive Relief.**

Plaintiffs offer a brief argument regarding irreparable harm, contending likelihood of success on their underlying constitutional claims demonstrates irreparable harm. Mot. at 16-17. This argument cannot apply to Taxpayer Plaintiffs who allege only statutory violations based on government spending, not an alleged infringement of their constitutional rights. Taxpayer Plaintiffs offer no irreparable harm argument, and any such argument is forfeited. *See In re Cathode Ray Tube Antitrust Litig.*, No. 07-CV-05944-JST, 2021 WL 7448552, at *4 n.7 (N.D. Cal. Jan. 6, 2021).

Even with respect to Criminal Defendant Plaintiffs, courts reject the argument that alleged constitutional infringement constitutes irreparable harm when, as here, the underlying claim is "too tenuous." *See Goldie's Bookstore, Inv. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984); *see also Great N. Res., Inc. v. Coba*, No. 3:20-CV-01866-IM, 2020 WL 6820793, at *2 (D. Or. Nov. 20, 2020) (rejecting contention that an alleged civil rights violation "creates a presumption of irreparable harm"); *Olson v. California*, No. CV 19-10956-DMG (RAOx), 2020 WL 905572, at *13 & n.16 (C.D. Cal. Feb. 10, 2020) (same). The Court would need to "determine whether [Plaintiffs'] allegations would be entitled to such a presumption of harm" and Plaintiffs have not shown they are entitled to such presumption here. *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991).

Plaintiffs' own conduct demonstrates they have not treated their alleged harm as irreparable. The EM conditions about which Plaintiffs complain have been in place for years, Compl. ¶ 53, and the Criminal Defendant Plaintiffs had the opportunity to raise these issues in their criminal cases. Yet,

21

Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST                                          n:\lit\li2022\230184\01636615.docx

they chose not to do so, suggesting Plaintiffs themselves do not view any harm from the EM Program Rules sufficiently irreparable to require a prompt response.

The cases Plaintiffs cite are unavailing because none involved the issues of delayed action and alternative forums present here. *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012), addressed prospective racially motivated traffic enforcement. And *Nelson v. NASA*, 530 F.3d 865, 881 (9th Cir. 2008), challenged imposition of a new condition to continued employment (and was reversed at the Supreme Court, which held there was no constitutional privacy issue at all, 562 U.S. 134, 150 (2011)).

Plaintiffs' claim of irreparable harm in sharing of GPS data among law enforcement agencies for law enforcement purposes fails for the additional reason that Criminal Defendant Plaintiffs have no evidence of past or reasonably anticipated sharing of their data. SFSO records suggest their data has not been shared except for information about Barber his criminal attorney requested. Judson Decl. ¶ 16. And there is also no irreparable harm in retention of EM data during this case, given that Plaintiffs assert a constitutional right to deletion when a defendant's criminal case concludes, Compl. at 23, and Criminal Defendant Plaintiffs' cases are all ongoing, *id.* ¶¶ 6-8, 46-47.

Plaintiffs' unsupported claims of remaining "vulnerable to harassment, needless intrusion on their privacy, and further criminal legal system involvement" are just another way to phrase the same constitutional violations discussed above, and therefore do not form an independent irreparable harm.

### C.     The Balance of Equities and Public Interest Tip in Defendants' Favor.

Plaintiffs offer a similarly brief account of the balance of equities and public interest. These factors merge "[w]hen the government is a party" to the litigation. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Courts "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (reversing injunction).

The requested injunctions prohibiting SFSO from searching criminal defendants on pretrial release, prohibiting SFSO from sharing GPS data with other law enforcement agencies for valid law enforcement purposes, and destroying data, puts the general public, and crime victims specifically, at risk, and upsets a balance among the competing factors the criminal court already struck.

The district court need not approach this issue from scratch. The criminal court already appropriately weighed the public's interest in community safety and securing a defendant's attendance

at subsequent criminal proceedings against the criminal defendant's liberty interest during arraignment as required by the Penal Code. Cal. Penal Code §§ 1270.1(c), 1318(a)(2), 1320.18, 1320.20(e)(1). The result of that balancing was the court's order that each Criminal Defendant Plaintiff could be released *only if* he waived his Fourth Amendment rights and agreed to follow SFSO's instructions as part of the EM Program. In exchange, Criminal Defendant Plaintiffs are out of custody without having to pay bail, notwithstanding that each is charged with domestic violence. Murphy Decl., Exs. A, C, F.

The challenged EM Program rules support public safety. This benefit is not hypothetical. GPS data from the program has been used to stop crimes in progress and catch those who have committed them. Judson Decl. ¶¶ 7, 9-10; *Conservation Cong. v. United States Forest Serv.*, 774 F. App'x 364, 368 (9th Cir. 2019) (denying injunction where "public safety interests" favored denial). Plaintiffs' requested injunction would put that public interest at risk.

Plaintiffs also face the possibility that an injunction would lead to more criminal defendants being remanded into custody, resulting in additional liberty restrictions. A recent study found that, following the *Humphrey* decision limiting cash bail, the "share of filed cases released to intensive supervision (without financial conditions) doubled, from 14% to 28% for all releases" while, "[d]espite a small reduction in detention, the jail population remained relatively stable." Johanna Lacoe, et al., *Bail Reform in San Francisco: Pretrial Release and Intensive Supervision Increased After* Humphrey at 1, Cal. Policy Lab (May 25, 2021), https://www.capolicylab.org/wp-content/uploads/2021/05/Bail-Reform-in-San-Francisco-Pretrial-Release-and-Intensive-Supervision-Increased-after-Humphrey.pdf. If SFSO is hobbled in administering intensive EM supervision that courts have turned to after *Humphrey*, courts may remand more defendants into custody having already rejected the option of releasing them without conditions. *See York*, 9 Cal. 4th at 1147 n.9 (expressing analogous concern).

Enjoining the EM Program Rules would also reduce the feeling of safety EM provides victims of violence who rely on EM Program Rules to enforce stay-away orders especially in domestic violence cases. *See Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016) ("The costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave.

These costs would affect members of the public, and they would affect the Government which is tasked with managing handgun violence."). A government-sponsored report found that "[m]ore than two-thirds of restraining orders obtained by women against intimates who raped or stalked them were violated." Patricia Tjaden & Nancy Thoennes, U.S. Dep't of Justice, *Extent, Nature, and Consequences of Intimate Partner Violence: Findings from The National Violence Against Women Survey* 53 (2000), https://www.ojp.gov/pdffiles1/nij/181867.pdf. "GPS programs can provide victims peace of mind and relief from harassment and abuse, such that the resumption of a normal life seems more tenable." Erez, *GPS Monitoring Techs.* at xvii. "GPS technologies have an impact in the short term (during the pretrial period): GPS is effective in preventing defendants from (physically) contacting victims, suggesting that GPS 'puts teeth' into restraining orders." *Id.* at xvi. "Many women found that GPS surveillance allowed them to reestablish a sense of control over their own lives. Victims felt safer in their own homes and the constant fear with which they were accustomed began to dissipate." *Id.* at 18. This public interest is intimately tied to the requested injunction given that each Criminal Defendant Plaintiff has been charged with felony domestic violence.

An injunction would additionally threaten the distinct roles the San Francisco Charter gives to SFSO and SFPD. *See supra* Part III.A.2.c. Stripped of an ability to share EM data with SFPD, SFSO deputies would need to undertake duplicative policing work in the domain of the SFPD.

In the face of all this, Criminal Defendant Plaintiffs and their putative class remain free to seek clarification of the terms of pretrial release in their individual cases in the Superior Court. Their victims have no such alternative recourse, which counsels against the requested injunction.

Plaintiffs' sole argument on these factors is that they are entitled to an injunction because the case involves constitutional claims. Mot. at 17. Not so. They rely on *Melendres v. Arpaio*, but in *Melendres*, "the Defendants' ability to enforce local and even federal criminal law [was] not impaired by the injunction." 695 F.3d at 1002. And Plaintiffs rely on the out-of-circuit decision in *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011), which did not consider harms to enforcement of laws in the public interest balancing. Here, Bay Area law enforcement departments' ability to enforce the law would be impaired by an injunction. *See supra* Parts III.A.2.b-c. On balance, the equities and the public interest favor denying Plaintiffs' motion.

24

### D. Because Taxpayer Plaintiffs Lack Standing, Any Injunction Must Be Limited to Individual Criminal Defendant Plaintiffs.

The class wide injunction Plaintiffs seek is unavailable because the Taxpayer Plaintiffs lack standing and Criminal Defendant Plaintiffs have not demonstrated they are entitled to class certification. "Without a properly certified class, a court cannot grant relief on a class-wide basis." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983). Because "[t]he injunctive relief requested can be granted to the individual plaintiffs without the relief inevitably affecting the entire [putative] class," *id.*, any relief must be limited to the named plaintiffs. *Norbert v. City & County of San Francisco*, 10 F.4th 918 (9th Cir. 2021), recognized this limitation in considering the injunctive relief appeal only as to the named plaintiffs because although the plaintiffs "appear[ed] to seek class-wide relief, . . . at the time of the preliminary injunction (and [time of the appellate court's decision]), no class had been certified." *Id.* at 928. Plaintiffs concede this point as they filed a motion for class certification this morning, ECF No. 30. Defendants will respond separately to Plaintiffs' motion for class certification. It remains true that unless or until the Court certifies a class, it would be an abuse of discretion to issue any injunction touching on parties beyond the Criminal Defendant Plaintiffs.

## IV. Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' requested injunction.

Dated: October 28, 2022

> DAVID CHIU
> City Attorney
> MEREDITH B. OSBORN
> Chief Trial Deputy
> KAITLYN MURPHY
> ALEXANDER J. HOLTZMAN
> Deputy City Attorneys
>
>
> By:_____*/s/ Kaitlyn Murphy*_____
> KAITLYN MURPHY
>
> Attorneys for Defendants
> CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF