# EXHIBIT G
# TO THE DECLARATION OF KAITLYN MURPHY

```
 1                  SUPERIOR COURT OF CALIFORNIA
 2                    COUNTY OF SAN FRANCISCO
 3        BEFORE THE HONORABLE A. MARISA CHUN, JUDGE PRESIDING
 4                      DEPARTMENT NUMBER 9
 5                           ---oOo---
 6   PEOPLE OF THE STATE OF CALIFORNIA, )
                                        ) CERTIFIED COPY
 7             PLAINTIFF,               )
                                        ) COURT NO. 22005221
 8   vs.                                )
                                        ) ARRAIGNMENT
 9   JOSUE BONILLA,                     )
                                        ) PAGES 1 - 13
10             DEFENDANT.               )
                                        )
11   _____)
12
13              REPORTER'S TRANSCRIPT Of PROCEEDINGS
14                   TUESDAY, MAY 31, 2022
15
16   A P P E A R A N C E S:
17   FOR THE PEOPLE:
18          CHESA BOUDIN, DISTRICT ATTORNEY
            350 RHODE ISLAND STREET, NORTH BLDG., STE. 400N
19          SAN FRANCISCO, CALIFORNIA  94103
            BY:  ALICE WONG, ASSISTANT DISTRICT ATTORNEY
20
     FOR THE DEFENDANT:
21
            MANOHAR RAJU, PUBLIC DEFENDER
22          555 SEVENTH STREET
            SAN FRANCISCO, CALIFORNIA  94103
23          BY:  COOPER FINDLAY, DEPUTY PUBLIC DEFENDER
24
25
26   REPORTED BY:   LAURA A. REDING, CSR 9711, CRR
                    OFFICIAL REPORTER
27
28
```

```
 1                       Tuesday, May 31, 2022
 2                       P R O C E E D I N G S
 3                              ---oOo---
 4       THE COURT:  Line 605, People versus Josue Bonilla.
 5       MS. WONG:  Alice Wong specially appearing for Rebecca
 6   Wagner.
 7       MR. FINDLAY:  Cooper Findlay with the Public Defender's
 8   Office seeking appointment, specially appearing for Eric Quandt.
 9       THE COURT:  Thank you.  So we're on today for an arraignment
10   for Mr. Bonilla.
11       Good afternoon, Mr. Bonilla.
12       THE DEFENDANT:  Good afternoon.
13       THE COURT:  Sir, can you please confirm that your true name
14   is Josue Alexander Bonilla?
15       THE DEFENDANT:  Yes.
16       THE COURT:  Am I pronouncing the first name correctly?
17       THE DEFENDANT:  Josue.
18       THE COURT:  Thank you.  And that is spelled J-o-s-u-e?
19       THE DEFENDANT:  Yes.
20       THE COURT:  Sir, can you afford to hire your own lawyer in
21   this matter?
22       THE DEFENDANT:  No.
23       THE COURT:  So I find that you are eligible for
24   court-appointed counsel.  And I will appoint Mr. Cooper Findlay
25   of the Public Defender's Office to represent you.
26       THE DEFENDANT:  Okay.
27       THE COURT:  Will you accept appointment, Mr. Findlay?
28       MR. FINDLAY:  Yes, your Honor.  We'll accept appointment.
```

1    Waive instruction and arraignment, further advisement of rights.
2    Reserve the right to demur.  Deny any allegations, enhancements,
3    or priors.  Reserve Serna.
4         I would request to be heard as to his custodial status if I
5    may.
6         THE COURT:  Please go ahead.
7         MR. FINDLAY:  Thank you.
8         My client is a San Francisco resident for the last 35 years.
9    He resides with his mother on Florida Street here in the city.
10   He has two children.  He was working at Allied Security but was
11   placed on disability after he was injured on the job.  And he
12   has some rods in his back.
13        The PSA is a little confusing given there -- it says release
14   not recommended.  But my client has no failures to appear in the
15   last two years.  No failures to appear older than two years.  No
16   prior felony convictions.  And no prior violent convictions.
17        The circumstances of this case -- there are several
18   different incident dates.  I'll start with Count 1 and 2.  That
19   was the September 8, 2021, date.
20        There are several percipient witnesses that see an
21   altercation between my client and the complaining witness in
22   this case.  The complaining witness is actually holding a
23   hammer.  The evidence I'm proffering is that Mr. Bonilla was
24   defending himself.  And I think, given the information in the
25   police reports, that's a reasonable conclusion.
26        As far as Count 3 and 4, Count 3 is alleging a 422 where I
27   believe the incident report is saying -- as a misdemeanor, I
28   believe.  Or as a felony.  Excuse me -- that he would "make her

1  disappear," which surely is not -- does not meet at least two of
2  the elements of a 422, with equivocation and specificity.
3       My request is given that he has the -- his record is devoid
4  of failures to appear -- so he's not a flight risk -- and given
5  his contacts to the community and the circumstance of this case
6  that the Court give Mr. Bonilla an opportunity to be released on
7  his own recognizance or, in the alternative, ACM so he can go be
8  with his children and take care of his mother.  And he would be
9  willing to abide by a stay-away.
10      THE COURT:  Thank you.
11      Ms. Wong, would you like to be heard with regards to
12 custodial status for Mr. Bonilla?
13      MS. WONG:  I would, your Honor.
14      I think the police report is a little bit confusing
15 regarding that first incident.  I don't believe that's correct
16 that it was the victim that was holding the hammer.  Those were
17 two different individuals when you look at the name.
18      What in the arrest warrant by the detective, the sergeant,
19 is that on that occasion, the September 2021 occasion, the
20 defendant was highly intoxicated, angry at the victim, and threw
21 a metal toy at the victim's head area, causing a bruise to her
22 eye.
23      And as far as the 2022 incident in April, the victim
24 indicated that she is extremely afraid of the defendant.  And
25 when he made those statements that he would make her disappear,
26 he also made comments in the past about knowing places to hide a
27 body.  And she believes that he would carry out the threat.
28      And, again, on both occasions, including the second, the

1  April 2022 incident, the defendant is highly intoxicated. The
2  victim also indicated that he has access to firearms. So the
3  concern is that he is a danger to this victim. And she, again,
4  expressed her fear of the defendant.
5      Although there are no prior documented incidents of --
6  reports other than these two incidents, the one in 2021 and the
7  one in 2022, the victim indicated to law enforcement that there
8  were numerous undocumented violence toward her.
9      For all those reasons, I don't think that releasing the
10 defendant on OR is appropriate.
11     THE COURT: I think Mr. Findlay offered ACM.
12     MR. FINDLAY: If I may respond to the 422 as well.
13     THE COURT: Sure. But let's let Ms. Wong finish.
14     You know, I did not see the information about the victim
15 having a hammer when I reviewed the file. Where was that?
16     MR. FINDLAY: It's on the incident report.
17     MS. WONG: That is actually a different -- different
18 parties. I'm not really clear -- it's a different name
19 actually. The individual that was holding the hammer is not the
20 victim.
21     THE COURT: And what page references the hammer in the
22 incident report?
23     MR. FINDLAY: One second. It's police incident report
24 200536049, page seven. And maybe that is a different incident.
25 But it appears to be M. Bonilla, who is, I believe, the
26 complaining witness, with a hammer.
27     But, in any event, as far as the 422 is concerned, saying --
28 again, saying "make you disappear," one, is equivocal and not --

1  has specificity.  But, also, that in the past he's related to
2  others -- allegedly said he knows where to put bodies.  That's
3  in the past.  It has to be in the same incident.  And that's why
4  I don't think a 422 lies here either.
5      THE COURT:  So I think what you're saying is that the People
6  are putting together different actions from different incidents
7  to make the 422 PC charge.
8      MR. FINDLAY:  That's correct.  And I'm not here to litigate
9  it.  It just goes to the weight of whether this individual
10 should be -- my client should be in custody.  And given his de
11 minimis record and his ties to the community, I believe he's
12 entitled -- and there's no motion to detain -- to a release.
13     THE COURT:  Okay.  So I think Ms. Wong didn't have an
14 opportunity to state what terms, custodial terms or release
15 terms, the People are seeking.
16     MS. WONG:  I think ACM would be appropriate.  I also think
17 home detention as well as electronic monitoring and a SCRAM
18 given that both incidents involved Defendant being highly
19 intoxicated, as well as a no-weapons condition.  The police
20 report indicated that the defendant owns two firearms, two
21 semi-automatics.  So a no-weapons condition is appropriate.
22     THE COURT:  So with regards to home detention, I thought
23 that the victim and Mr. Bonilla are sharing a residence.  Does
24 the victim now live someplace else?
25     MR. FINDLAY:  That's correct.  She does not live with his
26 mother and him.
27     THE COURT:  I see.
28     MR. FINDLAY:  And I just don't think we have reached a level

```
 1  of trying the least restrictive means, so in this case an ACM
 2  being the least restrictive means as assuring public safety.
 3  So, given that, I don't think -- I think the proper vehicle,
 4  then, would be ACM.  But we haven't tried any of the least
 5  restrictive means.  So to jump to home detention and ankle
 6  monitor I think is premature.
 7      THE COURT:  What is Mr. Bonilla's current work situation if
 8  he's on disability?
 9      MR. FINDLAY:  He's disabled, on disability.  Was working for
10  Allied Security.  Got injured on the job.
11      THE COURT:  He's not working in other words.
12      MR. FINDLAY:  No.  He's taking care of his children and his
13  mother.  But he's trying to go back once he's off disability to
14  Allied Security.
15      THE COURT:  Okay.  I definitely think an electronic monitor
16  is warranted.
17      I guess, Mr. Findlay, on the "I'm going to make you
18  disappear," the Court read that to simply mean that he was
19  threatening to off her, to kill her, given the presence of the
20  two firearms.  And, to me, it was a pretty specific threat.
21  But, you know, I don't think we need to litigate that.
22      What I'm trying to figure out is -- I mean, would a curfew
23  serve any purpose in protecting the victim?  I definitely think
24  an electronic monitor is warranted so that the Sheriff's
25  Department can know where he is at all times.  Because I do
26  think that Ms. Bonilla is very fearful of -- for her life.  But
27  I'm just wondering what would a curfew or a home detention --
28  what purpose would that serve?
```

1 MR. FINDLAY: I don't think home detention would serve a
2 purpose, particularly if he's -- she does not live there. And
3 he's taking care of a kid and his elderly mother. I think that
4 is essentially virtual jail for an individual who has no flight
5 risk. And the electronic monitoring accomplishes the Court's
6 concerns of him interacting with this individual.
7 THE COURT: Yeah. And I guess I should have directed my
8 question really to Ms. Wong.
9 I guess, Ms. Wong, if the Court did a curfew, what purpose
10 would that advance? I mean, I just -- I don't want to impose a
11 restrictive condition just for the sake of imposing it. I want
12 to make sure to protect the victim here. Because I don't really
13 think public safety is at issue. I think it's really the
14 victim's safety that I'm concerned about.
15 MS. WONG: I think that's fine, Judge. I just want to also
16 make sure that the Court orders a SCRAM bracelet since both
17 incidents involved the defendant being highly intoxicated.
18 THE COURT: Yeah. I would be amenable to the no-weapons
19 condition and a SCRAM device.
20 MR. FINDLAY: I think we'd be fine with a no-weapons
21 condition. The only issue with the SCRAM is I understand there
22 is not -- some allegations that he may have been intoxicated.
23 He's already going to be on electronic monitoring. The problem
24 is he's going to be wearing two bracelets, the SCRAM and the EM.
25 I just think the electronic monitoring essentially accomplishes
26 both other than whether his BAC is registering.
27 THE COURT: Right. The SCRAM device, if I understand it
28 correctly, is to measure his blood alcohol level. Would that be

1  without regard to whether he's driving or not?  Or is the SCRAM
2  device on to prevent somebody driving while intoxicated?
3      MR. FINDLAY:  Simply measures whether my client's sweat has
4  any measurable amount of alcohol in it.  And if there was a
5  violation, his OR could be -- he could be remanded or taken in
6  for a warrant.
7      THE COURT:  Okay.
8      MR. FINDLAY:  But I just -- and I think the electronic
9  monitoring itself accomplishes what we're trying to do.  We're
10 not trying to stop him from drinking.  There's no DUI
11 allegation.  It's just protecting whether, in this situation,
12 he's a danger to this individual and we can't find him or locate
13 him.
14      THE COURT:  I understand.  This is what the Court is going
15 to do.  I'm going to order Mr. Bonilla be released on ACM with
16 an electronic monitor.  A no-weapons condition.  Comply with a
17 stay-away order.
18      And I'm going to decline to impose the SCRAM at this time
19 given that there is no DUI charge.  I don't think that there's
20 anything wrong with him drinking.  I mean, the issue is him
21 acting violently to his wife.  So I think at this time we don't
22 need to put the SCRAM device on.
23      So, Mr. Findlay, do you want to address any time waivers or
24 preliminary hearing dates?
25      MR. FINDLAY:  Yes.  I want to be sure as to the address on
26 the stay-away order.  She's no longer living at the 904 Florida
27 Street address.  That's, in fact, his mother's address.  So I'm
28 just hoping that -- I don't know what's reflected on the -- I





1  to a preliminary hearing within 60 calendar days of today's
2  date.  That is August 1, 2022.  The 60th day is August 1.
3      So, Mr. Findlay, is there a date when you'd like to come
4  back for a prehearing conference or to set?
5      MR. FINDLAY:  If we could have June 28th.  That's
6  Mr. Quandt's next day.  And I know Mr. Bonilla is eager to get
7  this case started.
8      THE COURT:  Sure.
9      Does that work for you, Ms. Wong, or for Ms. Wagner?
10     MS. WONG:  June 28th for the preliminary hearing or
11 prehearing conference?
12     THE COURT:  For prehearing conference and to set?
13     MS. WONG:  Okay.  I think that's fine.
14     THE COURT:  Okay.  Thank you.
15     So we'll set a prehearing conference and to set on Tuesday,
16 June 28, at 9:00 A.M., Department 9.  And Defendant is ordered
17 present.
18     MR. FINDLAY:  Thank you.
19     THE COURT:  So let's make sure that we get this criminal
20 protective order served.
21     MS. WONG:  May the record reflect service of two copies of
22 the criminal protective order on the defendant through counsel.
23     THE COURT:  Yes.  The record will so reflect.
24                      (Matter adjourned.)
25                           ---oOo---

```
1   State of California                    )
                                           )
2   County of San Francisco                )

3

4

5        I, Laura A. Reding, Official Reporter for the Superior
6   Court of California, County of San Francisco, do hereby certify:
7        That I was present at the time of the above proceedings;
8        That I took down in machine shorthand notes all proceedings
9   had and testimony given;
10       That I thereafter transcribed said shorthand notes with the
11  aid of a computer;
12       That the above and foregoing pages 1 through 13, inclusive,
13  is a full, true, and correct transcription of said shorthand
14  notes, and a full, true, and correct transcript of all
15  proceedings had and testimony taken on Tuesday, May 31, 2022;
16       That I am not a party to the action or related to a party
17  or counsel;
18       That I have no financial or other interest in the outcome
19  of the action.
20
21
22  Dated: July 29, 2022
23
24                              _____
25                                   LAURA A. REDING, CRR, CSR NO. 9711
26
27
28
```