DAVID CHIU, State Bar #189542
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
KAITLYN MURPHY, State Bar #293309
ALEXANDER J. HOLTZMAN, State Bar #311813
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:   (415) 554-3867
Facsimile:    (415) 554-3837
Email:         kaitlyn.murphy@sfcityatty.org
                 alexander.holtzman@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
PAUL MIYAMOTO IN HIS OFFICIAL CAPACITY AS
SAN FRANCISCO SHERIFF,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, DIANA BLOCK, AN INDIVIDUAL AND COMMUNITY RESOURCE INITIATIVE, AN ORGANIZATION,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>    Defendants. | Case No. 4:22-cv-05541-JST<br><br>**DECLARATION OF LIEUTENANT PHILIP JUDSON IN SUPPORT OF DFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge:              Hon. Jon S. Tigar<br>Courtroom:     Courtroom 6, 2nd Floor<br>Hearing Date: January 12, 2023<br>Time:              2:00 p.m.<br><br>Trial Date:       Not Set |

1

Judson Decl. ISO Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST          n:\lit\li2022\230184\01629638.docx

## DECLARATION OF LT. PHILIP JUDSON

I, PHILIP JUDSON, declare as follows:

1. I am a Lieutenant with the San Francisco Sheriff's Office ("SFSO"). I am currently assigned to the Community Programs Unit of the SFSO, which administers the SFSO's Pretrial Electronic Monitoring Program ("PTEM"). Except where otherwise indicated, the following facts are known to me personally, and if called upon as a witness, I would testify to them competently.

2. I submit this declaration in support of the Opposition to Plaintiffs' Motion for a Preliminary Injunction filed by the City and County of San Francisco and Sheriff Paul Miyamoto.

3. The San Francisco Sheriff's Office, in implementing the PTEM, is enforcing the criminal court's orders.

4. PTEM serves as an alternative to custody for courts considering pretrial supervision of criminal defendants.

5. People on PTEM are ordered by the court to be monitored by the SFSO.

6. The SFSO relies on other peace officers to assist the SFSO in its supervision duties for PTEM because PTEM participants are in the community where other law enforcement agencies have primary jurisdiction. Those supervision duties may include conducting searches as appropriate.

7. Many people assigned to PTEM by the courts have been arrested prior to the current case. Many PTEM participants have multiple cases. Often the cases involve similar charges. Many criminal defendants commit new crimes while wearing a GPS device.

8. Public safety is served by solving crimes and placing people in custody when appropriate for commission of crimes.

9. For example, we have live tracked for San Francisco Police Department a burglary crew that was operating with an EM participant and have live tracked a PTEM participant who stole a car.

10. In response to Plaintiffs' Motion for a Preliminary, the Community Services Unit in conjunction with the Warrant Service Unit ("WSU") collected examples of instances where GPS data from individuals enrolled in PTEM was used to investigate or solve crimes. The following are such instances:

2

Judson Decl. ISO Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST    n:\lit\li2022\230184\01629638.docx

a. On Thursday night, February 3, 2022, the 7-11 store on Old Mission Road in South San Francisco was violently robbed by two individuals holding guns. The store clerk was pistol whipped, and the suspects escaped with $50 and a pair of ear buds. Sheriff's Office Deputy Martinez conducted a search in the Sentinel EM system for individuals near the 7-11 at the time of the robbery. An individual on PTEM named Lorenzo Grant was at the 7-11 during the time frame of the robbery. WSU called the South San Francisco Police Department and spoke with Detective Zhang. Zhang emailed surveillance pictures of the two suspects so WSU could compare the photos with those in a database of mugshots that we maintain. WSU were able to positively identify Grant. Deputy Martinez generated a report from the Sentinel EM system confirming Grant had been inside the 7-11 at the time of the robbery. WSU provided the South San Francisco Police Department with Grant's current location which was two blocks away from the 7-11. At 9:00pm, the South San Francisco Police Department took Grant into custody. After interviewing Grant, Grant confessed to the robbery and gave the name of his partner in crime.

b. Joseph Atchan is a prolific burglar and known to have firearms. In conjunction with the Federal Police and San Francisco Police Department, we placed him at multiple car burglaries. We safely arrested him using his GPS location after a federal warrant was issued.

c. Erlin Romero is another prolific burglar. He was put on PTEM based on charges for stealing cars. He was arrested multiple times on PTEM for either not abiding by his curfew or for new burglary charges. After car was stolen with a child in it, our GPS data placed Erlin at the scene and was the primary way he was initially identified. He was later arrested on charges of kidnapping.

d. Damanuel Hightower was placed on PTEM based on burglary charges. Our deputies tracked him using the GPS data to a residential neighborhood in San Francisco. They observed Hightower get out of a stolen car, walk over to

3

another car, and smash the window. Hightower then removed items from the car. Our deputies then arrested him.

e. Greg Morten was involved in a homicide. After testifying against his co-defendant and pleading guilty to a reduced charge, he was released to EM before going to prison. Soon after his release, he was arrested in the North Bay with a firearm. He posted bail before law enforcement could obtain a warrant. Once law enforcement obtained a warrant, we tracked Morten to Tanforan Mall in San Bruno, CA. Deputies approached him and he ran. Deputies then caught him and found another gun on his person.

f. Vermond Jones was identified as having been at the scene of a home invasion because of his ankle monitor. After reviewing his movement for the day, he was identified as having been at the scene of several other robberies in the Bay Area that day. This string of robberies was discovered based on sharing data with officers in multiple jurisdictions.

11. Law enforcement typically shares data for legitimate, law enforcement purposes across agencies and jurisdictions. In my experience, a limitation on law enforcement sharing of data outside of the agency, like the one I understand Plaintiffs request here, would be unprecedented.

12. It is the participants' choice to be on PTEM and to commit new crimes while on PTEM. Criminal defendants can opt for no PTEM and stay in jail or to not commit new crimes and abide by the rules set forth by the courts and SFSO while being monitored.

13. PTEM participants have an option to decline to be released from jail and not to be monitored as occurs with PTEM. This has happened on occasion.

14. The SFSO cannot effectively monitor PTEM participants and enforce court orders if officers must develop probable cause to do so.

15. In addition to helping SFSO and other law enforcement agencies with typical law enforcement activities like preventing crimes, PTEM participants' Fourth Amendment waiver in court and the four-way search condition in the Program Rules address needs specific to PTEM including detecting tampering with EM equipment, addressing violations of the EM Program Rules, enforcing

4

Judson Decl. ISO Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST          n:\lit\li2022\230184\01629638.docx

stay-away orders, promoting attendance at court hearings, promoting compliance with court-ordered special conditions (e.g. no firearms, no alcohol, or no drugs) and treatment programs ordered by the court, and conducting home assessments for EM home confinement.

16. In response to this lawsuit, on September 12, 2022, I searched for requests for EM data of Plaintiffs Joshua Simon, David Barber, and Josue Bonilla in the email inbox for EM data requests and in SFSO's paper records from April through the date of the search. The only request he found from outside SFSO was made by Barber's attorney in his criminal case.

17. The following documents are true and accurate copies of documents from SFSO's files, apart from redactions added to private information (e.g. dates of birth, driver's license numbers, Plaintiffs' SF Numbers) irrelevant to the Motion for a Preliminary Injunction for purposes of confidentiality:

   a. **Exhibit A** to my declaration is a Pre-Sentence Defendant Electronic Monitoring – Court Order concerning Joshua Simon, dated May 27, 2022;

   b. **Exhibit B** to my declaration is an Agreement and Order Releasing Defendant on Own Recognizance concerning Joshua Simon, dated May 25, 2022;

   c. **Exhibit C** to my declaration are Electronic Monitoring (EM) Program Rules Pre-Sentenced Participants with the Rules initialed and signed by Joshua Simon on May 28, 2022;

   d. **Exhibit D** to my declaration is an Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals signed by Joshua Simon on May 28, 2022;

   e. **Exhibit E** to my declaration is an Enrollment Notice for Joshua Simon in PTEM on May 28, 2022, reflecting that Simon's "court ordered conditions as well as SFSD program rules and Sentinel participation agreement were reviewed with him by Deputy Cristobal and Case Manager, Estefania Torres, and a copy was provided";

   f. **Exhibit F** to my declaration are Non-Compliance Notices issued regarding Joshua Simon's participation in PTEM;

   g. **Exhibit G** to my declaration is a Pre-Sentence Defendant Electronic Monitoring – Court Order concerning David Barber, dated August 13, 2021;

5

Judson Decl. ISO Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST        n:\lit\li2022\230184\01629638.docx

  h. **Exhibit H** to my declaration is an Agreement and Order Releasing Defendant on Own Recognizance concerning David Barber, dated August 13, 2021;

  i. **Exhibit I** to my declaration are Electronic Monitoring (EM) Program Rules Pre-Sentenced Participants with the Rules initialed and signed by David Barber on August 18, 2021;

  j. **Exhibit J** to my declaration is an Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals initialed and signed by David Barber on August 18, 2021;

  k. **Exhibit K** is an Enrollment Notice for David Barber in PTEM on August 18, 2021, reflecting that Barber's "court ordered conditions as well as SFSD program rules and Sentinel participation agreement were reviewed with him by Deputy Cabuloy and Case Manager, A. Griffith, and a copy was provided";

  l. **Exhibit L** are Non-Compliance Notices issued regarding David Barber's participation in PTEM;

  m. **Exhibit M** is email correspondence received from David Barber's attorney and the response by Deputy Bista reflecting misrepresentations by Barber to his attorney and the SFSO about PTEM requirements;

  n. **Exhibit N** to my declaration is a Pre-Sentence Defendant Electronic Monitoring – Court Order concerning Josue Bonilla, dated May 31, 2022;

  o. **Exhibit O** to my declaration is an Agreement and Order Releasing Defendant on Own Recognizance concerning Josue Bonilla, dated May 31, 2022;

  p. **Exhibit P** to my declaration are Electronic Monitoring (EM) Program Rules Pre-Sentenced Participants with the Rules initialed and signed by Josue Bonilla on June 1, 2022;

  q. **Exhibit Q** to my declaration is an Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals signed by Josue Bonilla on June 1, 2022;

  r. **Exhibit R** is an Enrollment Notice for Josue Bonilla in PTEM on June 1, 2022, reflecting that Bonilla's "court ordered conditions as well as SFSD program rules and Sentinel participation agreement were reviewed with him by Deputy Perez and Case Manager, E. Hernandez, and a copy was provided" and that Bonilla "was also informed and provided a map of stay away order of 150 yards from protected person and 50 yards from" a specified address; and

6

Judson Decl. ISO Opp. to Mot. For Prelim. Inj.; Case No. 22-cv-05541-JST n:\lit\li2022\230184\01629638.docx

s. **Exhibit S** is a Non-Compliance Notice issued regarding Josue Bonilla's participation in PTEM.

18. Exhibits A through S are records made at or near the time of the acts, events, and conditions described therein by—or from information transmitted by—someone with knowledge. These records are kept in the course of the regularly conducted activities of the SFSO in administering the PTEM program. Making these records was a regular practice of the SFSO in administering the PTEM program the Superior Court in setting conditions of pretrial release for criminal defendants.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on this 28th day of October 2022, at San Francisco, California.

_Lt. P. Judson_
LIEUTENANT PHILIP JUDSON