1    SHILPI AGARWAL (State Bar No. 270749)
     AVRAM D. FREY (Admitted *Pro Hac Vice*)
2    EMI YOUNG (State Bar No. 311238)
     HANNAH KIESCHNICK (State Bar No. 319011)
3    AMERICAN CIVIL LIBERTIES UNION
     FOUNDATION OF NORTHERN CALIFORNIA, INC.
4    39 Drumm Street
     San Francisco, CA 94111
5    Telephone: (415) 621-2493
     Email: sagarwal@aclunc.org
6    afrey@aclunc.org
     eyoung@aclunc.org
7    hkieschnick@aclunc.org

8    ADDITIONAL COUNSEL ON SIGNATURE PAGE

9    *Attorneys for Plaintiffs Joshua Simon,*
     *David Barber, Josue Bonilla, Diana Block,*
10    *and Community Resource Initiative*

11            **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13            **OAKLAND DIVISION**

14

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, individually and on behalf of all others similarly situated, DIANA BLOCK, an individual, and COMMUNITY RESOURCE INITIATIVE, an organization, <br><br>          Plaintiffs, <br><br>    v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, in his official capacity as SAN FRANCISCO SHERIFF, <br><br>          Defendants. | CASE NO.: 4:22-CV-05541-JST <br> (San Francisco County Superior Court, Case No.: CGC-22-601686) <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND REQUEST FOR PARTIAL REMAND** <br><br> Date: January 19, 2023 <br> Time: 2:00 p.m. <br> Place: Courtroom 6 <br> Judge: Hon. Jon S. Tigar <br><br> Complaint Filed: September 8, 2022 <br> Removal Filed: September 28, 2022 <br><br> TRIAL DATE: None Set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................................... 1

II.    BACKGROUND .......................................................................................................... 1

    A.    Factual Background ........................................................................................... 1

    B.    Defendants' additional inaccurate and irrelevant facts ............................................ 3

    C.    Procedural History ............................................................................................ 4

III.   ARGUMENT ............................................................................................................... 4

    A.    EM Releasees Do Not Consent to Sheriff's Program Rules 5 and 13. .................. 4

        1.    The unconstitutional conditions doctrine bars the Superior Court and the Sheriff from eliciting a generalized waiver of Fourth Amendment rights in exchange for pretrial release. ................................... 5

        2.    The Superior Court does not elicit a blanket waiver of pretrial releasees' Fourth Amendment rights ............................................................ 6

        3.    EM releasees do not consent to Program Rules 5 and 13 by signing the form the Sheriff presents to them. ............................................. 8

    B.    The Sheriff Imposes Program Rules 5 and 13 Unilaterally and Without Authorization from the Superior Court. ................................................................ 9

    C.    Plaintiffs' Claims Are Well-Pleaded and Meritorious. ........................................ 11

        1.    The Sheriff's four-way search condition violates the Fourth Amendment and Article I, section 13 of the California Constitution. ...... 11

        2.    Unlimited GPS data retention and sharing violates the constitutional prohibition against unreasonable searches and seizures and California's right to privacy. ............................................................ 14

        3.    The Sheriff's usurpation of authority to set conditions of release violates the separation of powers. ........................................................ 17

        4.    The Sheriff's blanket imposition of Rules 5 and 13 violate federal and state guarantees of procedural due process. ................................... 17

    D.    Plaintiffs' Case is Proper and in the Forum of Defendants' Choosing. ................ 20

        1.    Abstention has been waived and does not apply. ........................................ 20

        2.    The City is correctly named as a Defendant. ............................................. 23

    E.    The Taxpayer Claims Should Be Remanded. ..................................................... 24

IV.    CONCLUSION .......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*American Civil Liberties Union Foundation v. Superior Court,*
3 Cal. 5th 1032 (2017)..................................................................................... 15

*Arevalo v. Hennessy,*
882 F.3d 763 (9th Cir. 2018).................................................................... 21, 22

*Ash v. City of Clarksville,*
2004 WL 5913273 (M.D. Tenn. Sept. 3, 2004) ........................................... 21

*Brewster v. Shasta Cnty.,*
275 F.3d 803 (9th Cir. 2001)........................................................................ 24

*Buffin v. City & Cnty. of San Francisco,*
2016 WL 6025486 (N.D. Cal. Oct. 14, 2016) .............................................. 24

*Bumper v. North Carolina,*
391 U.S. 543 (1968) ....................................................................................... 8

*California v. N. Tr. Corp.,*
2013 WL 1561460 (C.D. Cal. Apr. 10, 2013)............................................... 25

*Carpenter v. United States,*
138 S. Ct. 2206 (2018) ................................................................................. 15

*Center for Genetics & Soc'y v. Bonta,*
2021 WL 2373436 (Cal. Ct. App. June 10, 2021) ........................................ 15

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ..................................................................................... 16

*Cobine v. City of Eureka,*
250 F. Supp. 3d 423 (N.D. Cal. 2017) .......................................................... 16

*Cummings v. Husted,*
795 F. Supp. 2d 677 (S.D. Ohio 2011)......................................................... 22

*Dix v. Superior Court,*
53 Cal. 3d 442 (1991) ................................................................................... 25

*Florida v. Jimeno,*
500 U.S. 248 (1991) ....................................................................................... 7

*Ford v. Wainwright,*
477 U.S. 399 (1986) ..................................................................................... 19

*Gerstein v. Pugh,*
420 U.S. 103 (1975) ..................................................................................... 22

*Goldberg v. Kelly,*
397 U.S. 254 (1970) ..................................................................................... 18

*Haas v. Cnty. of San Bernardino*,
    27 Cal. 4th 1017 (2002) ................................................................................................ 18

*Haskell v. Brown*,
    317 F. Supp. 3d 1095 (N.D. Cal. 2018) ........................................................................ 15

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ...................................................................................................... 23

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ........................................................................................................ 14

*Hill v. Town of Valley Brook*,
    2022 WL 989059 (W.D. Okla. Mar. 31, 2022) ............................................................. 21

*In re Estevez*,
    165 Cal. App. 4th 1445 (2008) ..................................................................................... 23

*In re Humphrey*,
    11 Cal. 5th 135 (2021) .................................................................................................. 12

*In re Murchison*,
    349 U.S. 133 (1955) ...................................................................................................... 18

*In re Webb*,
    7 Cal. 5th 270 (2019) .................................................................................................... 10

*In re White*,
    21 Cal. App. 5th 18 (2018), *aff'd*, 9 Cal. 5th 455 (2020) ............................................. 12

*In re York*,
    9 Cal. 4th 1133 (1995) ....................................................................................... 8, 9, 13, 17

*Johnson v. United States*,
    333 U.S. 10 (1948) ................................................................................................... 9, 19

*Johnson v. Zerbst*,
    304 U.S. 458 (1938) ........................................................................................................ 6

*Kaiser v. Cascade Capital, LLC*,
    989 F.3d 1127 (9th Cir. 2021) ........................................................................................ 4

*Kenny A. ex rel. Winn v. Perdue*,
    218 F.R.D. 277 (N.D. Ga. 2003) .................................................................................. 21

*Lammers v. Superior Ct.*,
    83 Cal. App. 4th 1309 (2000), *as modified on denial of reh'g* (Oct. 17,
    2000) ............................................................................................................................. 19

*Lee v. Am. Nat'l Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ........................................................................................ 25

*Loder v. Municipal Court*,
    17 Cal. 3d 859 (1976) ................................................................................................... 15

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................................ 18, 19

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982) ................................................................................... 21

*Miranda v. City of Casa Grande,*
    15 F.4th 1219 (9th Cir. 2021) ................................................................... 20

*Morongo Band of Mission Indians v. State Water Res. Control Bd.,*
    45 Cal. 4th 731 (2009) ....................................................................... 18, 19

*Nance v. Ward,*
    142 S. Ct. 2214 (2022) .............................................................................. 23

*Nelson v. Campbell,*
    541 U.S. 637 (2004) .................................................................................. 23

*O'Donnell v. Harris Cnty.,*
    321 F. Supp. 3d 763 (S.D. Tex. 2018) ...................................................... 23

*Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.,*
    725 F.2d 537 (9th Cir. 1984) ..................................................................... 17

*Page v. King,*
    932 F.3d 898 (9th Cir. 2019) ..................................................................... 22

*Parents for Priv. v. Barr,*
    949 F.3d 1210 (9th Cir. 2020) ................................................................... 18

*People v. Buza,*
    4 Cal. 5th 658 (2018) ........................................................................ 14, 15

*People v. Jimenez,*
    73 Cal. App. 5th 862 (2021) ........................................................................ 8

*People v. McInnis,*
    6 Cal. 3d 821 (1972) ................................................................................. 15

*People v. Ramirez,*
    25 Cal. 3d 260 (1979) ......................................................................... 18, 19

*Polo v. Innoventions Int'l, LLC,*
    833 F.3d 1193 (9th Cir. 2016) ................................................................... 24

*Potrero Hills Landfill, Inc. v. Cnty. of Solano,*
    657 F.3d 876 (9th Cir. 2011) ..................................................................... 21

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973) .................................................................................. 23

*Teutscher v. Woodson,*
    835 F.3d 936 (9th Cir. 2016) ..................................................................... 23

*United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension
    Plan v. Yahn & Mc Donnell, Inc.,* 787 F.2d 128 (3rd Cir. 1986), *Concrete
    Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S.
    California,*
    508 U.S. 602 (1993) .................................................................................. 18

*United States v. Anglin,*
    215 F.3d 1064 (9th Cir. 2000) ..................................................................... 6

*United States v. Basher,*
    629 F.3d 1161 (9th Cir. 2011) ................................................................. 7, 8

*United States v. Dailey,*
    941 F.3d 1183 (9th Cir. 2019) ................................................................. 10

*United States v. Gardner,*
    523 F. Supp. 2d 1025 (N.D. Cal. 2007) ................................................ 11, 18

*United States v. Jones,*
    565 U.S. 400 (2012) ................................................................................. 16

*United States v. Lara,*
    815 F.3d 605 (9th Cir. 2016) ................................................................... 13

*United States v. Ocheltree,*
    622 F.2d 992 (9th Cir. 1980) .................................................................... 8

*United States v. Salerno,*
    481 U.S. 739 (1987) ............................................................................ 12, 19

*United States v. Scott,*
    450 F.3d 863 (9th Cir. 2006) ............................................................*passim*

*United States v. Stephens,*
    424 F.3d 876 (9th Cir. 2005) ................................................................. 9, 10

*United States v. Wells,*
    29 F.4th 580 (9th Cir. 2022) .................................................................... 10

*Withrow v. Larkin,*
    421 U.S. 35 (1975) ................................................................................... 19

*Younger v. Harris,*
    401 U.S. 37 (1971) ............................................................................. 21, 22

## OTHER AUTHORITIES

28 U.S.C. § 1447(c) .................................................................................... 24

Cal. Const. art. 1, § 12 ............................................................................... 12

## I.     INTRODUCTION

Defendants' Motion to Dismiss, ECF No. 24 ("MTD"), is predicated on the claim that the Sheriff's Electronic Monitoring ("EM") Program Rules 5 (four-way search clause) and 13 (indefinite retention and sharing of GPS location data) are part of a "court-ordered, consent-based program . . . ." MTD at 2. Defendants are wrong on both counts. *First*, EM releasees do not consent to Rules 5 and 13: the Superior Court does not elicit a blanket waiver of Fourth Amendment rights in ordering release on EM; and releasees' subsequent signing of the EM Program Rules under threat of confinement does not establish valid consent. *Second*, the Superior Court of San Francisco does not impose Rules 5 and 13, and these rules are not a component of administering EM. The Court cannot, and does not, delegate authority for creation and imposition of such rules to the Sheriff. The Sheriff imposes these rules unilaterally, of his own volition, and for the purpose of ordinary law enforcement and investigation. Defendants' fundamental misconception of how and why Rules 5 and 13 are imposed undermines every argument in their motion. As detailed below, Defendants are accordingly wrong that Plaintiffs' constitutional challenges fail as a matter of law.

Defendants' non-merits arguments are equally unavailing. No federal abstention doctrine applies here, particularly since Defendants voluntarily sought this Court's jurisdiction by removing to federal court. Nor is Defendants' characterization of the Sheriff as a State actor meritorious, as the Sheriff imposes Rules 5 and 13 without court authorization and for his own investigatory purpose.

Ultimately, Defendants offer but one valid argument, that Taxpayer Plaintiffs Diana Block and Community Resources Initiatives ("Taxpayer Plaintiffs") do not have Article III standing. The Taxpayer Plaintiffs' claims were properly pleaded in state court, however, and they should now be remanded to the state forum in which they were originally filed. Otherwise, Defendants' arguments are without merit and this Court should deny the MTD.

## II.     BACKGROUND

### A.     Factual Background

Plaintiffs provide a complete reporting of the facts underlying their claims in the

Complaint and supporting documents. *See* Compl. at pp. 4-16. Here, Plaintiffs highlight facts critical to resolution of Defendants' MTD, as well as instances in which Defendants misstate the facts.

The Superior Court of San Francisco has discretion to impose pretrial release on EM. As reflected in the hearing transcripts of Joshua Simon, David Barber, and Josue Bonilla ("Named Plaintiffs"), the court does not engage in any colloquy with prospective EM releasees concerning the Sheriff's EM Program Rules. *See* Declaration of Sujung Kim ("Kim Decl.") Exs. 1-4, filed concurrently herewith. The court does not inform them that they will be subject to warrantless searches of their person, home, vehicle, and property. The court also does not mention that their GPS location data will be saved, retained indefinitely, and freely shared with any member of law enforcement upon request despite the absence of any degree of articulable suspicion. *Id*. The court does not make any individualized findings that a four-way search clause or GPS data retention and sharing are necessary to ensure EM releasees' future appearance, compliance with any release conditions, or to keep the public safe. *Id*. There is no indication that the Superior Court is even aware that the Sheriff imposes such conditions through Program Rules 5 and 13 as a matter of course. Necessarily, the court also does not ask prospective EM releasees to consent to these conditions prior to imposing EM. The Superior Court also does not discuss or ask defendants to waive their Fourth Amendment rights more broadly. *Id*. There is no colloquy whatsoever regarding the freedoms that defendants must forfeit to be released on EM.

After the hearing, the Superior Court executes a pretrial form order labeled "County of San Francisco Sheriff's Office / Superior Court Pre-Sentenced Defendant Electronic Monitoring – Court Order." *See* ECF No. 1-9, Exhibit 4 (hereinafter "EM Form Order"). The EM Form Order requires Defendants to "adhere to the following court-ordered conditions of Pre-Trial Electronic Monitoring until the Court orders the removal of conditions." *Id.* It then lists various conditions of release which the court may impose in its discretion by ticking one or more boxes, but the conditions reflected in Sheriff's Program Rules 5 and 13 are not listed. *Id.* The court's order further requires participants to "obey all orders given by any SFSO employee(s) or contract service provider(s) . . ." *Id.* Near the top, the form provides, "the Court indicates that the

defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." *Id.* Releasees have no opportunity to review this form before the court signs it, and they do not sign it themselves at the hearing or thereafter. Compl. ¶ 23.

Releasees first learn of the Sheriff's EM Program Rules 5 and 13 at the Sheriff's Community Programs building, when the Sheriff's private contractor, Sentinel Offender Services, LLC ("Sentinel"), initiates the EM program. *Id.* Releasees are provided with the Sheriff's EM Program Rules, which include Rules 5 and 13, and are instructed to initial each rule and sign and date at the bottom. *Id*. ¶¶ 23-24. Releasees are also provided with, and instructed to sign, a participant contract that includes terms substantively identical to Rules 5 and 13. *Id.* ¶ 27. No one from the Sheriff's office or Sentinel explains the Program Rules and releasees are not provided access to counsel during enrollment. *Id.* ¶ 23.

After enrollment, the Sheriff enters notice of the Rule 5 search clause into the California Law Enforcement Telecommunications System ("CLETS"). *Id.* ¶ 42. Whenever any member of law enforcement in California runs a check on an individual released pretrial on EM, they will learn of the four-way search condition. *Id.* Plaintiff Barber has in fact already been searched pursuant to this condition. ECF No. 1-11, ¶¶ 13-21. At least one Superior Court judge has granted a motion to suppress evidence obtained pursuant to a Rule 5 search on the basis that the court's form EM order does not reflect a valid waiver of rights relative to the Sheriff's four-way search clause. Compl. ¶ 44.

The Sheriff and Sentinel collect the GPS location coordinates for all releasees continuously, twenty-four hours a day, seven days a week, for the entire duration of a pretrial releasee's participation in the program. *Id.* ¶ 50. The Sheriff's office routinely and increasingly shares this GPS location data with other law enforcement agencies. *Id.* ¶ 54. To obtain this data, the requesting officer need only represent that they are doing so "as part of a current criminal investigation . . . ." *Id.* Neither the Sheriff nor Sentinel is required to delete this data under any programmatic regulation or policy. *Id.* ¶¶ 30, 53.

**B.      Defendants' additional inaccurate and irrelevant facts**

Defendants must accept these facts as true, as well as all facts pleaded in the Complaint.

*See Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127, 1131 (9th Cir. 2021). But Defendants' Motion injects incorrect and irrelevant information, and contests the facts as pleaded by Plaintiffs. First, Defendants allege that under Rule 13, GPS data sharing is limited to other San Francisco law enforcement agencies, rather than any member of law enforcement, as Plaintiffs have pleaded. *See* MTD at 20; Compl. ¶¶ 50-57. This is simply untrue—the program rule includes no such limitation, and in fact authorizes sharing with "criminal justice partners," a broad and undefined term. *See* ECF No. 1-9, Exhibit 5 at 2. The Court should disregard this assertion as it improperly contradicts facts pleaded in the Complaint.

Second, Defendants inject irrelevant and improper characterizations of Plaintiffs' underlying criminal charges into their briefing. *See* MTD at 4. This information is irrelevant because it has no bearing on Plaintiffs' claims. The Superior Court and Sheriff follow the same procedure in the case of every EM releasee without regard to their underlying charges, so charges against individual releasees are of no legal significance. And it is improper because Defendants' attempt to insert these facts is presumably nothing more than an attempt to besmirch Plaintiffs and color the Court's view of their claims. The Court should accordingly reject the Defendants' attempt to inject improper bias into these proceedings.

### C.      Procedural History

Plaintiffs filed a Complaint in the Superior Court for the County of San Francisco on September 14, 2022 and sought preliminary injunctive relief in that court two weeks later. On September 28, 2022, one day before the hearing on Plaintiffs' application for an order to show cause, Defendants removed this case to federal court. Plaintiffs then filed a Motion for Preliminary Injunction in this Court on October 7, 2022, and selected the earliest date available on the Court's online calendar, January 12, 2023. Defendants filed the instant Motion to Dismiss on October 17, 2022.

### III.      ARGUMENT

### A.      EM Releasees Do Not Consent to Sheriff's Program Rules 5 and 13.

Defendants repeatedly insist that the Sheriff's EM Program Rules were lawfully imposed because, as a condition of their pretrial release on EM, "Plaintiffs and their putative class all

agreed to waive their Fourth Amendment rights no fewer than three times . . . ." MTD at 16. The first alleged waiver, according to Defendants, is reflected in the Superior Court's EM Form Order, which states "[b]y signing these instructions and affixing a seal, the Court indicates that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." ECF No. 1-9, Exhibit 4. The second and third waivers, Defendants allege, occur in Sentinel's office, when EM releasees sign and initial the Sheriff's Program Rules and Participant Contract.

Defendants' position suffers from several flaws: (1) under controlling Ninth Circuit law, courts cannot condition pretrial release upon waiver of all Fourth Amendment rights; (2) the facts alleged in the Complaint and substantiated by hearing transcripts show that the EM Form Order is not a blanket waiver or consent, but must be interpreted more narrowly; and (3) EM releasees' signing of the Sheriff's Program Rules and Participant Contract occurs under threat of unlawful detention and therefore renders any alleged consent involuntary and invalid.

**1.      The unconstitutional conditions doctrine bars the Superior Court and the Sheriff from eliciting a generalized waiver of Fourth Amendment rights in exchange for pretrial release.**

First and foremost, in *United States v. Scott*, 450 F.3d 863, 865-68 (9th Cir. 2006), the Ninth Circuit held that the unconstitutional conditions doctrine limits the government's ability to extract a waiver of Fourth Amendment rights as a condition of pretrial release, even where release is entirely discretionary. As the court noted:

> Giving the government free rein to grant conditional benefits creates the risk that the government will abuse its power by attaching strings strategically, striking lopsided deals and gradually eroding constitutional protections.

*Id*. at 866 (citation omitted). The court recognized this threat as especially grave in the Fourth Amendment context, because "[p]ervasively imposing an intrusive search regime as the price of pretrial release, just like imposing such a regime outright, can contribute to the downward ratchet of privacy expectations." *Id* at 867. As the court stressed, it remained vital to uphold the unconstitutional conditions doctrine notwithstanding the defendant's status as a pretrial releasee, because defendant Scott's "privacy and liberty interests were far greater than a probationer's," and "the assumption that [he] was more likely to commit crimes than other members of the

public, without an individualized determination to that effect, is contradicted by the presumption of innocence . . . ." *Id.* at 873-74. The Ninth Circuit concluded that, in cases where the privacy rights of pretrial releasees have been infringed, the government cannot rely on only general "consent" extracted through the pretrial process to justify its actions, and instead must show that the intrusion upon the Fourth Amendment interest was reasonable and justifiable under the particular circumstances. *Id.* at 867.

Although Defendants largely ignore *Scott* in their MTD, it is directly on point. *Scott* forecloses as a matter of law Defendants' ability to rely only on consent or waiver extracted in exchange for pretrial release to uphold the challenged program rules. Indeed, Defendants lay bare the danger of permitting such a broad waiver when they argue "[t]he waiver of one's Fourth Amendment right includes, *at a minimum*, the agreement to 'submit to a search of my person, residence, automobile, or property . . . .'" MTD at 10-11 (emphasis added). A four-way search clause is itself an enormous intrusion on personal privacy, yet Defendants imply that it is merely one of the Fourth Amendment intrusions that the Sheriff may freely and unilaterally inflict upon EM participants in San Francisco. Defendants' position, it seems, is that the Superior Court has issued the Sheriff—and other law enforcement agencies—a blank check to surveil, search, or seize each EM releasee in the manner and with the frequency of their choosing. This is precisely the type of "intrusive search regime" that *Scott* prohibits.

**2.    The Superior Court does not elicit a blanket waiver of pretrial releasees' Fourth Amendment rights.**

Defendant is also incorrect that the Superior Court elicits any blanket Fourth Amendment waiver from EM participants. A waiver of constitutional rights must be knowing, intelligent, and voluntary. *See United States v. Anglin*, 215 F.3d 1064, 1068 (9th Cir. 2000) ("The sole test of a waiver's validity is whether it was made knowingly and voluntarily."); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("A waiver is . . . an intentional relinquishment . . . of a known right or privilege."). In the context of the Fourth Amendment, where forfeiture of rights is much more likely to occur in the field than through judicial proceedings, courts often use the law of "consent," to inform whether there has been a waiver of Fourth Amendment rights. Specifically,

waiver of Fourth Amendment rights must be the product of voluntary consent that is "freely and intelligently given." *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011) (citation omitted). And while consent can be express or implied, it must be "unequivocal and specific." *Id.* at 1167-68 (citation omitted).

Here, Plaintiffs neither waived nor consented to a generalized, blanket waiver of all their Fourth Amendment rights before the Superior Court. *See generally* Kim Decl. Exs. 1-4. There is no colloquy between the judge and the prospective releasee concerning the Fourth Amendment. *Id.* There is no discussion about a four-way search clause or the sharing of GPS location data for general investigatory purposes. *Id.*; ECF No. 22-5 at 3; ECF No. 22-6 at 5, ECF No. 22-7 at 4. And the releasee has no opportunity to review or sign the Superior Court's EM Form Order prior to its issuance. *See generally* Kim Decl. Exs. 1-4; ECF No. 22-5 at 3, 4, 6; ECF No. 22-6 at 7; ECF No. 22-7 at 4, 7. These facts, pled in the Complaint and further supported by the transcripts submitted alongside this Opposition, defeat the notion of any intelligent, unequivocal consent. Regardless of how Defendants wish to interpret the EM Form Order, the prerequisites for consent and waiver of all Fourth Amendment rights—or any of the other rights implicated by Rules 5 and 13—plainly did not occur.

Moreover, a broad waiver of Fourth Amendment rights cannot be inferred from Plaintiffs' consent to release on EM. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange [preceding the consent]?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citation omitted). A better reading of the EM Form Order language of waiver, therefore, is that, upon submitting to the EM Program, participants waive only those Fourth Amendment rights that are implicated by the specific, court-ordered conditions of which they are made aware at the time of the Order's entry. A reasonable person would understand release on EM—and the corresponding waiver of privacy—to include the placement of a device on their physical person and contemporaneous monitoring of location data. They would not understand this to mean that any officer could search their person, property, residence, and vehicle at any time or obtain, retain, and distribute their GPS location data in perpetuity,

conditions neither imposed nor even discussed by the Superior Court. The Superior Court's Form Order is not a blanket waiver of all Fourth Amendment rights and does not manifest consent to Rules 5 and 13.

### 3.   EM releasees do not consent to Program Rules 5 and 13 by signing the form the Sheriff presents to them.

Defendants likewise cannot rely on Plaintiffs' purported "consent" to the Sheriff's Program Rules. As discussed above, any attempt by the Defendants to rely on consent extracted in exchange for pretrial release is insufficient as a matter of law. *See Scott*, 450 F.3d at 867.

Even if the unconstitutional conditions doctrine did not prohibit this practice, the Sheriff's requirement that EM releasees initial and sign the Program Rules fails to establish voluntary consent. The Complaint alleges what is intuitive from the circumstances—that releasees initial and sign the Sheriff's forms to avoid the threat of a return to jail. This is the essence of coercion, which destroys the possibility of consent "freely . . . given." *Basher*, 629 F.3d at 1167 (citation omitted).

This is not a case like *In re York*, 9 Cal. 4th 1133, 1150 (1995), where the California Supreme Court held that the prospect of continued detention for a bail applicant "does not render the consent coerced or involuntary" because the releasee "is not entitled to unconditional, bail-free release, but may obtain OR release only in the discretion of the court or magistrate, and only upon those reasonable conditions attached to the release." Here, Plaintiffs *do* have a right to release: the Superior Court has already ordered their release unconditioned on agreement to Sheriff's Rules 5 and 13 and their attendant constitutional burdens. The Sheriff's implied threat of continued detention is coercive, because it compels releasees to forfeit additional privacy rights in order to protect the release to which they are already entitled. *See*, *e.g.*, *United States v. Ocheltree*, 622 F.2d 992, 994 (9th Cir. 1980) (implication that narcotics agent would unlawfully detain defendant for a period of hours negated consent to search briefcase); *People v. Jimenez*, 73 Cal. App. 5th 862, 880-81 (2021) (police officers coerced statement via false suggestion that they could arrest detainee's sons); *see also Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

1    In sum, none of the three points alleged by Defendants constitutes valid waiver or

2    consent to the rules imposed by the Sheriff and now challenged in this action.

3    **B.      The Sheriff Imposes Program Rules 5 and 13 Unilaterally and Without Authorization from the Superior Court.**

4

5    Defendants' second foundational argument is that Sheriff's Program Rules 5 and 13

6    "are—as a matter of plain meaning—subsets of the pretrial release conditions ordered by the

7    court." MTD at 9, 10-11. Defendants concede that "authority to determine . . . conditions of

8    pretrial release rests with the superior court." *Id.* at 9. They also acknowledge that the Superior

9    Court does not expressly order a four-way search clause or the unlimited retention and sharing of

10   GPS data for EM releasees. In contrast, the EM Form Order does contemplate other specific

11   conditions that the court may impose on EM releasees, some of which—such as random drug

12   testing—notably implicate Fourth Amendment and privacy interests. The order's contrasting

13   silence regarding the Sheriff's later-imposed rules is further evidence that Defendants' reliance

14   on a phantom court authorization is misplaced.

15   Defendants nonetheless contend that, by instructing EM releasees in the EM Form Order

16   to "obey all orders given by any SFSO employee(s)," ECF No. 1-9, Exhibit 4, the court

17   "implicitly acknowledge[s] that the SFSO will need to promulgate more detailed Program Rules"

18   for the administration of EM. MTD at 10. Defendants maintain that Rules 5 and 13 accordingly

19   fall within the Sheriff's role of administration. *See*, *e.g.*, *id.* These arguments, however, fail to

20   acknowledge the distinction between administrative rules necessary for the implementation of

21   court-ordered conditions, and entirely new conditions that impose additional constitutional

22   burdens. The challenged Program Rules are the latter.

23   Whether an action is judicial or administrative turns on the separation of powers doctrine,

24   which reserves for courts all judicial functions and permits the executive administration of

25   judicial orders. The interpretation, weighing, and balancing of the constitutional rights of a

26   pretrial releasee against governmental interests is a fundamentally judicial role. *See York*, 9 Cal.

27   4th at 1149; *see also Johnson v. United States*, 333 U.S. 10, 13-14 (1948) ("The point of the

28   Fourth Amendment . . . consists in requiring that [privacy intrusions] be drawn by a neutral and

detached magistrate instead of being judged by the officer . . . ."). As the Ninth Circuit held in *United States v. Stephens*, 424 F.3d 876, 880 (9th Cir. 2005), while "the court makes the determination of *whether* a defendant must abide by a [release] condition, and *how*," "it is permissible to delegate to the [executive branch] the details of where and when the condition will be satisfied." Similarly, in *United States v. Dailey*, 941 F.3d 1183, 1194-95 (9th Cir. 2019), the Ninth Circuit held that a court could delegate to a probation department the *when and where* of a SORNA registration requirement imposed by the court. The Ninth Circuit acknowledged that while a court may delegate "'the ministerial task[] of choosing the appropriate' method for *how* the offender will comply with the court's condition," "[the court] alone must 'make[] the determination of *whether* a defendant must abide by a condition.'" *Id.* at 1194 (quoting *Stephens*, 424 F.3d at 880, 882); *see also United States v. Wells*, 29 F.4th 580, 592 (9th Cir. 2022) (holding that the delegation to the executive branch of authority to decide "when it may be appropriate to allow an exception" to a court-ordered release condition was permissible to "ensure[] that the conditions are no more restrictive than necessary").

Here, a four-way search clause and the indefinite retention and sharing of GPS location data with any law enforcement agency are plainly new, standalone conditions of release beyond any intrusions intrinsic to electronic monitoring. *See In re Webb*, 7 Cal. 5th 270, 274, 278 (2019) (categorizing warrantless search requirement as a "condition of release" in holding that courts were authorized to impose additional reasonable release conditions where defendant has posted bail). These rules are not the inherent "where and when" of the EM Program or of any specific conditions imposed by the Superior Court or listed on the EM Form Order. This is made plain by the fact that a system of "electronic monitoring" does not automatically include an allowance that the GPS location data be retained indefinitely and freely shared with other "criminal justice partners" for general investigatory or other unspecified purposes. And a criminal court can readily order a defendant to be placed on electronic monitoring without also permitting the warrantless search of the releasee's home, person, vehicle, and property by any law enforcement

1   officer. *See, e.g.*, *United States v. Gardner*, 523 F. Supp. 2d 1025, 1028 (N.D. Cal. 2007).[1]

2          Rules 5 and 13 impose additional burdens on a releasees' rights and must be weighed and

3   ordered by a court; they cannot fall within, or be delegated pursuant to, the Sheriff's role in mere

4   administration. In contrast, the Sheriff's Program Rules includes other provisions that are plainly

5   administrative in nature requiring, for example, reporting any change of address, maintenance of

6   the EM equipment, and submitting to alcohol monitoring *if such a condition is ordered by the*

7   *court*. ECF No. 1-9, Exhibit 5.

8          **C.      Plaintiffs' Claims Are Well-Pleaded and Meritorious.**

9          In reliance on their mischaracterization of Rules 5 and 13 as "court-ordered" and

10  "consent-based," MTD at 2, Defendants contest each of Plaintiffs' legal claims on the merits,

11  while also raising procedural objections. Defendants' arguments are without merit, and none

12  provides a basis for dismissal under Rule 12(b).

13          **1.      The Sheriff's four-way search condition violates the Fourth**
                    **Amendment and Article I, section 13 of the California Constitution.**
14

15         "[O]ne who has been released on pretrial bail does not lose his or her Fourth Amendment

16  right to be free of unreasonable seizures." *Scott*, 450 F.3d at 868 (citation omitted). Defendants

17  contend the opposite, namely that EM releasees in San Francisco have no cognizable expectation

18  of privacy from warrantless search and seizure. This argument rests on three unsound premises:

19  (1) a purported "waiver" of rights; (2) a claim that EM releasees have the same minimal

20  expectation of privacy as one who is incarcerated; and (3) the alleged equivalency between real-

21  time location monitoring and in-person search and seizure.

22

23

24  _____

25          [1] In their brief, Defendants aver that Rule 13 "does not impose any additional liberty
    restrictions on a criminal defendant beyond the court's EM order" because EM "clearly
26  contemplates the collection of location data," and "[t]he criminal court's order does not limit
    sharing or retention of that data." MTD at 11. This position turns constitutional doctrine on its
27  head. Defendants cite no authority for the proposition that, absent an explicit prohibition from
    the Superior Court, the Sheriff may impose whatever conditions it pleases on individuals under
28  its supervision, regardless of whether those conditions introduce additional burdens on
    constitutional rights.

1      *First*, as discussed in section III(A), *supra*, EM releasees neither enter a general waiver of

2   rights nor consent to Program Rules 5 and 13. As a matter of law, they cannot be blanketly

3   compelled to do so in exchange for release on EM. *Scott*, 450 F.3d at 865-68.

4      *Second*, by contending that individuals released on EM have the same minimal right to

5   privacy as "criminal defendants held in custody following a detention hearing," MTD at 16,

6   Defendants fundamentally misconstrue the law governing pretrial detention. Under Article I,

7   section 12 of the California Constitution, a court may not deny bail in a non-capital case unless

8   the defendant is charged with a felony offense involving violence, sexual assault, or a threat of

9   great bodily harm, the court finds the facts in the record would be sufficient to sustain a

10  conviction, *and also* finds by clear and convincing evidence that there is a substantial likelihood

11  the person's release would result in great bodily harm. Cal. Const. art. 1, § 12; *In re White*, 21

12  Cal. App. 5th 18, 24-25 (2018), *aff'd*, 9 Cal. 5th 455 (2020). In *In re Humphrey*, 11 Cal. 5th 135,

13  153 (2021), the California Supreme Court clarified that the state constitution "bar[s] a court from

14  causing an arrestee to be detained pretrial based on concerns regarding the safety of the public or

15  the victim, unless the court has first found clear and convincing evidence that no other conditions

16  of release could reasonably protect those interests." Where no such finding has been made, there

17  is no corresponding authority to detain, and therefore no commensurate diminution in privacy

18  rights. Put differently, the fact of arrest does not reduce reasonable expectations of privacy to the

19  level of those who have been detained pretrial. *See Scott*, 450 F.3d at 874 ("Neither *Salerno* nor

20  any other case authorizes detaining someone in jail while awaiting trial, or the imposition of

21  special bail conditions, based merely on the fact of arrest for a particular crime.").

22      Here, in asserting that Plaintiffs are similarly situated to those detained pretrial,

23  Defendants posit without basis that individuals ordered released on EM could have, and would

24  have, been found eligible for pretrial detention if they refused to sign the Sheriff's Program

25  Rules 5 or 13. This assumption is grounded in neither fact nor reason. Indeed, available data

26  indicates that nearly fifty percent of people released on EM (and thereafter subjected to Rule 5)

27  were otherwise released with the minimum level pre-trial supervision requirements, Compl. ¶ 17,

28  suggesting that imposition of EM is not inherently tied to public safety risk or factors that would

justify detention. Just as nothing in the pleadings and transcripts suggests that the San Francisco Superior Court contemplated or ordered that EM releasees submit to a four-way search clause, nothing likewise suggests that the Superior Court found releasees must be detained should they fail to sign the Sheriff's rules. The fact that the *Sheriff* conveys to EM releasees that they must agree to Rule 5 or be detained does not mean any *court* has deemed this a lawful pre-condition for release or otherwise made findings necessary to justify detention.

Defendants' reliance on caselaw addressing the diminished expectations of privacy for pretrial *detainees* is accordingly misplaced. Moreover, even *York*, on which Defendants heavily rely, rejected the premise that a search condition can be imposed in every case where the defendant requests OR release, holding instead that the reasonableness of the condition in a particular case would depend "upon both the intrusiveness of the state conduct authorized by the condition and the strength of the state's interest in imposing such a restriction in the particular circumstances," meaning an individualized determination is required. *York*, 9 Cal. 4th at 1150, 1151 n.10.

*Finally*, Defendants argue without supporting authority that because the Superior Court ordered EM releasees to submit to GPS monitoring, they no longer have any reasonable expectation of privacy in their homes, persons, or other areas authorized to be searched under a four-way search clause. While a condition of release may impact an individual's expectations of privacy, the extent of that impact depends on whether they are "unambiguously informed" of the condition at the time of release. *See United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016) (holding that probationer's expectation of privacy was only reduced to the extent that search conditions clearly and unambiguously encompassed the area to be searched). Here, while EM releasees are informed by the Superior Court that they must submit to real-time location monitoring by the Sheriff, nothing in the EM Form Order suggests they must also submit to physical entry and search of their homes, vehicles, property, or person by any law enforcement officer. The Defendants' equating of remote GPS monitoring and physical entry into the home is both legally unsound and ignores how the two kinds of intrusions are experienced in qualitatively different ways.

For these reasons, EM releasees maintain a reasonable expectation in the privacy of their homes, property, and person, and the Sheriff's indiscriminate imposition of search conditions without an individualized judicial determination is *per se* unreasonable. *Scott*, 450 F.3d at 872-74. The Court should therefore deny Defendants' motion as to claims brought under the Fourth Amendment and Article 1, section 13 of the California Constitution.

### 2. Unlimited GPS data retention and sharing violates the constitutional prohibition against unreasonable searches and seizures and California's right to privacy.

Just as the court's order authorizing real-time GPS monitoring does not provide notice of a four-way search clause, neither does it give notice of the Sheriff's ability to collect and indefinitely distribute GPS data. This kind of long-term retention and sharing of private data raises claims under the Fourth Amendment and Article 1, section 13 of the California Constitution. Additionally, the "serious invasion of privacy" effectuated by this policy gives rise to a claim under Article 1, section 1 of the California Constitution. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994).

Rather than grappling with these specific legal doctrines, Defendants generally contend that the indefinite retention and distribution of GPS location data is lawful or otherwise inappropriate for judicial review because: (1) courts have upheld the retention of other personal information by law enforcement, MTD at 20-21, and (2) the privacy interests of EM releasees in GPS data is allegedly slight and the harm speculative, *id.* at 21-22. Each of these arguments is flawed.

*First*, Defendants' claim that courts have "rejected challenges to sharing and retention of information" and have instead deferred to the legislative branches on matters of data retention, *id.* at 19-20, is simply false. Defendants cite *People v. Buza*, 4 Cal. 5th 658, 681 (2018), for the *dicta* that "'retention of an arrestee's fingerprints, photographs, and other identifying information . . . generally has not been thought to raise constitutional concerns . . . .'" *Id.* at 19. But *Buza* did not address the issue of indefinite retention with respect to the DNA information at bar because the legal question was not presented; indeed, *Buza* acknowledged that retention of sufficiently private data might violate the constitutional guarantee against unreasonable search and seizure,

leaving the question "for another day." *Buza*, 4 Cal. 5th at 681. Moreover, the California Court of Appeal recently held that indefinite retention of sensitive personal information—there, DNA—*required* adjudication under Article I, section 1 of the California Constitution, reversing the lower court's dismissal of this claim. *Center for Genetics & Soc'y v. Bonta*, 2021 WL 2373436, at *12 (Cal. Ct. App. June 10, 2021) (unpublished).

Other cases cited by Defendants similarly fail to support their position. In *Haskell v. Brown*, 317 F. Supp. 3d 1095, 1110 (N.D. Cal. 2018), the District Court held that there was no violation of the Fourth Amendment in the state's retention of felony arrestee DNA. But in so holding, *Haskell* noted that the privacy intrusion was greatly reduced because (1) the specific DNA loci retained did not reveal personal information, (2) state law criminalized misuse of this information, and (3) the state maintained an expungement process. *Id.* at 1106. None of those mitigating circumstances are present here. Meanwhile, each of *Loder v. Municipal Court*, 17 Cal. 3d 859 (1976) (retention of arrest records), *People v. McInnis*, 6 Cal. 3d 821 (1972) (mugshots), and *American Civil Liberties Union Foundation v. Superior Court*, 3 Cal. 5th 1032 (2017) (license plates) concerned privacy intrusions of even less significance.

By contrast, the Supreme Court has recognized that GPS location data provides "an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (citations omitted). The Sheriff collects this data for the duration of a releasee's EM condition, a period that can last years, retains it indefinitely, and under Rule 13, claims the authority to share it freely with any member of law enforcement *forever*. This is a privacy infringement of breathtaking scope, dwarfing the intrusions posed by retention and maintenance of a fingerprint, mugshot, or license plate.

*Second*, Defendants fail entirely to address the intrusions inherent in Rule 13's broad and undefined sharing provision.  Instead, Defendants attempt to minimize the privacy intrusion at stake, claiming that GPS location data is less private than the DNA loci at issue in *Haskell*, fingerprints, or mugshots, because it "does not reflect anything immutable . . . ." MTD at 20. Unsurprisingly, Defendants cite no authority for this illogical proposition. The immutable

characteristics of limited DNA loci, fingerprints, and mugshots merely permit comparison for identification purposes—whereas months or years' worth of continuous GPS location data expose "trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on." *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring) (citation omitted). Defendants also wrongly contend that Plaintiffs' only fear is being "discovered to have been near the scene of a crime and thereby potentially implicated in the crime." MTD at 20. Wrongful accusation of a crime is indeed a serious harm. But more broadly, Rule 13 portends an enormous intrusion on personal privacy because it authorizes perpetual sharing of details of Plaintiffs' lives with any requesting "criminal justice partner," resulting in continuous feelings of anxiety and violation.

These are harms Plaintiffs presently suffer as a result of Rule 13. Moreover, Plaintiff Simon's GPS record (containing data for a period of months) is still subject to retention by the Sheriff, notwithstanding the court's termination of his EM condition and the fact that the Sheriff has no court-authorized use for such data. Defendants are thus wrong that Plaintiffs lack standing to challenge indefinite retention of their data, or that this claim is unripe. *See id.* at 21 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)). And with respect to the data sharing authorization, the Sheriff has shared EM participant data with outside agencies with exponentially increasing frequency. Compl. ¶ 55. Thus, there is a realistic danger that Plaintiffs' GPS information has already been or will be so distributed,[2] rendering Rule 13's legality ripe for resolution. *See Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 434 (N.D. Cal. 2017) (pre-enforcement challenge is ripe where "the government conduct poses a real and immediate threat" to plaintiff's Fourth Amendment rights) (citation omitted).

In sum, Defendants fail to demonstrate that the retention claims are either foreclosed by settled law or unsuitable for judicial resolution, and they fail even to address the enormous

---

[2] There is no mechanism by which the Sheriff must inform former or current EM participants when the Sheriff intends to share their GPS data. This makes impossible a judicial challenge at the time the data is actually shared.

privacy interests at stake under Rule 13's broad sharing provisions. The Court should reject

Defendants' arguments that unlimited retention and sharing of GPS data are constitutional as a

matter of law.

> **3.     The Sheriff's usurpation of authority to set conditions of release violates the separation of powers.**

Defendants argue that Plaintiffs' separation of powers claim "[f]ails as a matter of law"

because "[t]he EM Program Rules explain rather than expand the criminal court's broad order."

MTD at 21-22. As discussed above, the Sheriff is not merely explaining conditions of release

ordered by the Court; he is instead creating from whole cloth conditions that intrude upon the

releasee's constitutional rights. *See* section III(B), *supra*. This function improperly invades the

purview of the judiciary, which has exclusive authority to weigh the constitutional interests at

stake. *See York*, 9 Cal. 4th at 1149; *see also Pacemaker Diagnostic Clinic of Am., Inc. v.

Instromedix, Inc.*, 725 F.2d 537, 544 (9th Cir. 1984) ("If the essential, constitutional role of the

judiciary is to be maintained, there must be both the appearance and the reality of control by

Article III judges over the interpretation, declaration, and application of federal law."). Moreover,

while criminal defendants can potentially move to modify the conditions that have been ordered

by the court, there is exists no legal mechanism for EM releasees to appeal the Sheriff's Program

Rules to the Superior Court in their criminal cases; the Sheriff is not a party to the underlying

prosecution. Plaintiffs' Separation of Powers argument is sound.

> **4.     The Sheriff's blanket imposition of Rules 5 and 13 violate federal and state guarantees of procedural due process.**

Finally, Defendants expend considerable effort arguing that the procedure the Superior

Court uses to impose EM comports with procedural due process. But Plaintiffs do not in this case

take issue with the Superior Court's process; rather, Plaintiffs challenge the *Sheriff's* unilateral

imposition of Rule 5 and 13 on every EM releasee. Even if this practice was not categorically

barred by separation of powers, due process requires an individualized assessment by a neutral

decisionmaker as to whether these additional invasive conditions are appropriate.

Rules 5 and 13 unquestionably impair the liberty interests of pretrial releasees. *First*, as

the Ninth Circuit has acknowledged, "one aspect of the 'liberty' protected by the Due Process

Clause of the Fourteenth Amendment is 'a right of personal privacy,'" which includes "the right

to control the disclosure of sensitive information . . . ." *Parents for Priv. v. Barr*, 949 F.3d 1210,

1222 (9th Cir. 2020) (citations omitted); *see also Gardner*, 523 F. Supp. 2d at 1033-34 (existence

of liberty interest depended on whether condition invaded releasee's reasonable expectations of

privacy or common law right). *Second*, under California law, liberty interests are defined more

broadly to include "freedom from arbitrary adjudicative procedures . . . ." *People v. Ramirez*, 25

Cal. 3d 260, 268 (1979). "This approach presumes that when an individual is subjected to

deprivatory governmental action, he always has a due process liberty interest both in fair and

unprejudiced decision-making and in being treated with respect and dignity." *Id*. Under both

standards, because the search clause and indefinite retention and sharing of GPS location data

invade releasees' constitutionally protected expectations of privacy, they are subject to the

procedural requirements of due process.

Decisions that involve the weighing and adjudication of constitutionally protected rights,

such as whether to impose a search clause or warrantless data sharing, are adjudicatory and

therefore require resolution by a neutral and unbiased decisionmaker. *See Goldberg v. Kelly*, 397

U.S. 254, 262, 271 (1970) (insofar as procedure involves "state action that adjudicates important

rights," "an impartial decision maker is essential"). And under both California and federal law,

the absence of an impartial adjudicator gives rise to a due process violation *per se*. *See In re*

*Murchison*, 349 U.S. 133, 136 (1955); *accord Morongo Band of Mission Indians v. State Water*

*Res. Control Bd.*, 45 Cal. 4th 731, 737 (2009).

In these circumstances, the traditional balancing test under *Mathews v. Eldridge*, 424

U.S. 319 (1976), has "no legitimate application . . . ." *Haas v. Cnty. of San Bernardino*, 27 Cal.

4th 1017, 1035 (2002); *accord United Retail & Wholesale Employees Teamsters Union Local*

*No. 115 Pension Plan v. Yahn & Mc Donnell, Inc.*, 787 F.2d 128, 137 (3rd Cir. 1986), *abrogated*

*on other grounds by Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr.*

*for S. California*, 508 U.S. 602 (1993). Instead, the question is simply whether the decisionmaker

acts with actual bias or under conditions where "experience teaches that the probability of actual

1   bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."

2   *Morongo*, 45 Cal. 4th at 737 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

3        Here, a neutral and detached decisionmaker does not determine whether to impose Rules

4   5 and 13. Instead, a law enforcement entity with clear incentives to expand its own investigatory

5   and prosecutorial powers determines when Rules 5 and 13 apply. *See Johnson*, 333 U.S. at 14

6   (distinguishing between "neutral and detached magistrate[s]" and officers "engaged in the often

7   competitive enterprise of ferreting out crime"); *see also Ford v. Wainwright*, 477 U.S. 399, 416

8   (1986) (member of executive branch tasked with criminal law enforcement "cannot be said to

9   have the neutrality that is necessary for reliability in the factfinding proceeding"). For this

10  reason, the Sheriff's imposition of Rules 5 and 13 amounts to a *per se* violation of due process,

11  and the *Salerno* test cited by Defendants poses no obstacle. *See* MTD at 15 (citing *United States

12  v. Salerno*, 481 U.S. 739 (1987)).

13       Even if this Court were to undertake the usual due process interest balancing, it would

14  inevitably lead to the same conclusion. Procedural due process requires balancing of (1) "the

15  private interest," (2) "the risk of an erroneous deprivation of such interest through the procedures

16  used, and the probable value, if any, of additional or substitute procedural safeguards," and (3)

17  "the Government's interest . . . ." *Mathews*, 424 U.S. at 335. Article 1, section 7 incorporates

18  these factors, and also requires consideration of individual "dignitary" values, including the

19  value of being treated with "understanding, respect, and even compassion." *Ramirez*, 25 Cal. 3d

20  at 268 (citation omitted). While *Salerno* requires a facial challenge under the federal Due Process

21  Clause to establish there is "no set of circumstances" under which a procedure would be

22  adequate, 481 U.S. at 745, the more permissive standard for facial challenges under the

23  California Constitution is met when a procedure impinges upon the rights of a "substantial

24  portion of those individuals to whom it applies . . . ." *Lammers v. Superior Ct.*, 83 Cal. App. 4th

25  1309, 1325 (2000), *as modified on denial of reh'g* (Oct. 17, 2000).

26       As discussed in the preceding sections, the private interests at stake here are substantial.

27  And given that the Sheriff imposes Rules 5 and 13 upon *everyone* released on EM, regardless of

28  individual circumstances, there is a considerable risk of erroneous deprivation of these interests.

Defendants seemingly suggest that because the Superior Court weighed considerations of public safety and individual liberty in ordering Plaintiffs released on EM, Plaintiffs received adequate process to safeguard against the erroneous implementation of Rules 5 and 13. But this reasoning is circular; Rules 5 and 13 are not necessary components of GPS monitoring, and although the court *could* order additional conditions in an appropriate case, it is not doing so. Nor does the fact that some Plaintiffs have petitioned the court to modify *its own* order cure the risk of erroneous deprivation at the hands of the Sheriff, because Defendants do not address how the criminal court would have jurisdiction to modify the independent rules by which the Sheriff, who is not a party to the criminal case, operates. And even assuming the court could address the Sheriff's rules vis-à-vis a motion filed by the defendant, the imposition of Sheriff Rules 5 and 13 is not a "random and unauthorized" act for which post-deprivation process would suffice. *See Miranda v. City of Casa Grande*, 15 F.4th 1219, 1226 (9th Cir. 2021).

Defendants also fail to demonstrate a compelling need for a search clause and indefinite retention and warrantless data sharing in every case. While they argue that Rules 5 and 13 promote the government's interests in administering stay-away zones, enforcing home detention orders, and ensuring releasees return to court, MTD at 14, each of these interests is served by the GPS tracking condition ordered by the court (which provides the Sheriff with a real-time account of EM releasees' whereabouts). Defendants can therefore accomplish their interests by less intrusive means. And finally, it would not impose additional fiscal or administrative burdens to shift back to the Superior Court the decision of whether to impose a search clause or warrantless data sharing as that court already is making individualized release determinations. Instead, such a process would be consistent with the dignitary interest in having an opportunity to be heard regarding the appropriateness of such conditions.

For the foregoing reasons, Plaintiffs state a procedural due process claim under the federal and state constitutions, and the Court should deny Defendants' motion as to these claims.

**D.      Plaintiffs' Case is Proper and in the Forum of Defendants' Choosing.**

**1.      Abstention has been waived and does not apply.**

After removing this case, Defendants now suggest that this Court should dismiss this

action because there are more "appropriate" ways for the Plaintiffs to raise their claims. Specifically, Defendants aver that the "appropriate path to resolve Plaintiffs' claims would be for those subject to the challenged conditions to seek modification or clarification of their pretrial release conditions from the state criminal court." MTD at 11, 22-24. "[A] federal court's obligation to hear and decide a case is virtually unflagging," permitting of only specific, limited exceptions. *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (citations and internal quotation marks omitted). Defendants raise no applicable exception to this bedrock principle, and indeed, none applies.

Although they do not identify the governing legal framework for their request, Defendants appear to be invoking *Younger* abstention as a basis for dismissal. *Younger* abstention permits a federal court to abstain where (1) the state action is an ongoing state proceeding (2) that implicates important state interests, and (3) the plaintiff has an adequate opportunity to raise his constitutional claims in the state proceeding. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (applying *Younger* to state bar disciplinary proceeding); *see also Younger v. Harris*, 401 U.S. 37 (1971). The Ninth Circuit also recognizes a distinct, fourth factor: "the federal court action would 'enjoin the proceeding, or have the practical effect of doing so.'" *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (citations omitted).

Courts have routinely held that a defendant waives *Younger* abstention where, as here, he elects to remove a case to federal court. *See Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 285 (N.D. Ga. 2003) ("It would be fundamentally unfair to permit State Defendants to argue that this Court must abstain from hearing the case after they voluntarily brought the case before this Court."); *Hill v. Town of Valley Brook*, 2022 WL 989059, at *5 (W.D. Okla. Mar. 31, 2022) ("Defendants may not now argue that this case should proceed in an 'adequate state forum' after Defendants themselves removed the case to this Court. Permitting a defendant to remove cases from state court then immediately invoke the *Younger* abstention doctrine to obtain dismissal would leave plaintiffs without any forum to pursue federal claims."); *Ash v. City of Clarksville*, 2004 WL 5913273, at *3 (M.D. Tenn. Sept. 3, 2004) ("Defendants invoked federal jurisdiction by

removing the action from state court and thereby waived an abstention defense."); *see also Cummings v. Husted*, 795 F. Supp. 2d 677, 692 (S.D. Ohio 2011). Since it is Defendants who chose this forum, this Court should likewise find that Defendants' invocation of abstention has been waived.

But regardless, *Younger* abstention does not apply in cases, like this one, that challenge illegally imposed release conditions unrelated to the underlying prosecution. In *Arevalo*, a case concerning a due process challenge to a state court bail hearing, the court affirmed the lower court's declination to exercise *Younger* abstention under the fourth factor, holding that:

> *Younger* abstention is not appropriate in this case because the issues raised in the bail appeal are distinct from the underlying criminal prosecution and would not interfere with it. Regardless of how the bail issue is resolved, the prosecution will move forward unimpeded.

882 F.3d at 766. Moreover, *Arevalo* recognized that under U.S Supreme Court precedent, a state proceeding does not provide an adequate opportunity to raise constitutional issues under the third *Younger* factor if the pertinent issues "could not be raised in defense of the criminal prosecution." *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 107 n.9 (1975)); *accord Page v. King*, 932 F.3d 898, 903-05 (9th Cir. 2019) (holding that a challenge to the probable cause hearing to determine whether defendant qualified as a sexually violent predator would not arise within, and therefore would not impede the criminal prosecution, making abstention improper).

So too here, Plaintiffs and the putative class do not challenge any aspect of the underlying prosecution of their cases, which have proceeded unabated during the pendency of this matter. Rather, this challenge is to specific practices of the Sheriff that are imposed on everyone released on EM, regardless of their individual circumstances or charges. And contrary to the Defendants' assertions, under *Arevalo* and *Gerstein*, Named Plaintiffs' underlying criminal proceedings are inadequate to raise Plaintiffs challenges to the Sheriff's EM program because these claims form no part of Plaintiffs' defense, nor do they take issue with any part of the Superior Court's orders.

Relatedly, Defendants are incorrect that this Court should abstain because Plaintiffs might have pursued the vehicle of a habeas petition. MTD at 13. Once again without naming the

doctrine, Defendants invoke *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994), which draw "the dividing line between § 1983 and the federal habeas statute." *Nance v. Ward*, 142 S. Ct. 2214, 2221 (2022). Under this line of cases, in federal court, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement," *Heck*, 512 U.S. at 481, whereas "a [section] 1983 action is a proper remedy for . . . [one] making a constitutional challenge to the conditions [of confinement]." *Preiser*, 411 U.S. at 499. In drawing this distinction, the courts assess whether the relief sought "would necessarily prevent [the State] from carrying out" a judicial order in the underlying criminal matter. *Nelson v. Campbell*, 541 U.S. 637, 647 (2004).

Even assuming for the sake of argument that Plaintiffs could have proceeded in federal habeas, and that *Preiser* applies where Defendants have removed, this doctrine does not bar Plaintiffs' action. Plaintiffs do not challenge the fact or duration of the Court's EM order; they challenge the conditions of their release on EM per the Sheriff's imposition of separate, unauthorized conditions. *See*, *e.g.*, *O'Donnell v. Harris Cnty.*, 321 F. Supp. 3d 763, 777 (S.D. Tex. 2018) (challenge to bail system was not to "'fact or duration' of . . . confinement, but rather [to] 'conditions' of confinement") (citation omitted). And as previously noted, the relief Plaintiffs seek will not interfere with their underlying criminal matters. Moreover, that Plaintiffs might have pursued claims in state habeas corpus is irrelevant: unlike federal habeas, state habeas claims can overlap with those actionable via a section 1983 suit. *See In re Estevez*, 165 Cal. App. 4th 1445, 1461 n.6 (2008). Plaintiffs as "master of [the] complaint . . . [are] entitled to decide what law to rely on and what remedies to pursue." *Teutscher v. Woodson*, 835 F.3d 936, 956-57 (9th Cir. 2016) (citation omitted). Abstention is not appropriate here.

### 2.    The City is correctly named as a Defendant.

Defendants ask the Court to dismiss the City because "the Sheriff acts as an agent of the state criminal court for purposes of implementing the court's orders regarding conditions of pretrial release . . . ." MTD at 22. But the Sheriff is not merely "implementing the court's orders regarding conditions of pretrial release . . . ." *See id.* Instead, he is (1) unilaterally imposing his own privacy-intrusive rules upon EM releasees in San Francisco, and then (2) implementing

1  those rules for general investigatory purposes.

2  The "critical distinction" in determining whether the Sheriff acts as a local or state actor

3  is whether he acts as "required by state law or court order," or whether he acts pursuant to "an

4  administrative policy set by the Sheriff [him]self." *Buffin v. City & Cnty. of San Francisco*, 2016

5  WL 6025486, at *7 (N.D. Cal. Oct. 14, 2016). Here, as discussed in section III(B), the Sheriff is

6  not merely carrying out the orders of the Superior Court; he is instead imposing new

7  constitutionally burdensome conditions that are entirely of his own making; those conditions are

8  not reviewed by the Superior Court at all. Compl. ¶¶ 18-19.

9  Even more instructive, the Ninth Circuit has squarely held that the Sheriff acts a county

10  actor when performing his investigatory function. *Brewster v. Shasta Cnty.*, 275 F.3d 803, 805-

11  12 (9th Cir. 2001); *see also Buffin*, 2016 WL 6025486, at *4-5. Upon unlawfully imposing Rule

12  5 and Rule 13, the Sheriff then widely shares those ill-begotten privacy incursions with other law

13  enforcement agencies for general investigatory and law enforcement purposes. Specifically, the

14  Sheriff uploads notice of the four-way search clause into CLETS, such that any member of law

15  enforcement can search a releasee's person, home, car, or property without even suspicion.

16  Compl. ¶ 42. Moreover, the Sherriff can share real-time GPS location data with any requesting

17  law enforcement agency for any alleged criminal investigation. *Id.* ¶¶ 50, 54. Requests for this

18  data have, unsurprisingly, dramatically increased over time. *Id.* ¶ 55.

19  In imposing Rules 5 and 13, the Sheriff is not acting as an agent of the State; he is instead

20  facilitating the investigation of crime in San Francisco. The City has been properly named as a

21  defendant.

22  **E.      The Taxpayer Claims Should Be Remanded.**

23  Plaintiffs agree that Plaintiffs Diana Block and Community Resource Initiative lack

24  Article III standing and this Court cannot adjudicate their claims. But contrary to Defendants'

25  motion, this Court should remand to state court—not dismiss—the Taxpayer Plaintiffs' claims.

26  *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (under 28 U.S.C. §

27  1447(c), "district court generally *must* remand the case to state court, rather than dismiss it"

28  where there is "failure of federal subject-matter jurisdiction," including lack of Article III

standing). Partial remands, like the one Plaintiffs now urge, avoid the unfairness that would flow

from forcing a plaintiff to "forfeit an otherwise viable state-law claim" that was part of a

removed case. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1006-07 (9th Cir. 2001); *see e.g.*,

*California v. N. Tr. Corp.*, 2013 WL 1561460, at *5 (C.D. Cal. Apr. 10, 2013). Because the

Taxpayer Plaintiffs' claims must be considered in their original state forum, this Court need not

consider Defendants' argument under *Dix v. Superior Court*, 53 Cal. 3d 442 (1991).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion to Dismiss and grant Plaintiffs' request for partial remand of the Taxpayer Plaintiffs'

claims.

Dated: October 31, 2022

Respectfully submitted,

By: _____

Shilpi Agarwal (SBN 270749)
    sagarwal@aclunc.org
Avram D. Frey (MJP 804789) (Admitted
*Pro Hac Vice*)
    afrey@aclunc.org
Emi Young (SBN 311238)
    eyoung@aclunc.org
Hannah Kieschnick (SBN 319011)
    hkieschnick@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA,
INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

Justina Sessions (SBN 270914)
    jsessions@wsgr.com
John P. Flynn (SBN 141094)
    jflynn@wsgr.com
Colleen Bal (SBN 167637)
    cbal@wsgr.com
Dylan G. Savage (SBN 310452)
    dsavage@wsgr.com
Malavika F. Lobo (SBN 317635)
    mlobo@wsgr.com
WILSON, SONSINI, GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2197

*Attorneys for Plaintiffs*
*Joshua Simon, David Barber, Josue Bonilla,*
*Diana Block, and Community Resource*
*Initiative*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Justina K. Sessions, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated: October 31, 2022                    /s/ Justina K. Sessions
                                           Justina K. Sessions