# EXHIBIT 4

```
 1                SUPERIOR COURT OF CALIFORNIA
 2                   COUNTY OF SAN FRANCISCO
 3        BEFORE THE HONORABLE A. MARISA CHUN, JUDGE PRESIDING
 4                      DEPARTMENT NUMBER 9
 5                          ---oOo---
 6   PEOPLE OF THE STATE OF CALIFORNIA, )
                                        ) CERTIFIED COPY
 7              PLAINTIFF,              )
                                        ) COURT NO. 22005221
 8   vs.                                )
                                        ) ARRAIGNMENT
 9   JOSUE BONILLA,                     )
                                        ) PAGES 1 - 13
10              DEFENDANT.              )
                                        )
11   _____)
12
13            REPORTER'S TRANSCRIPT Of PROCEEDINGS
14                   TUESDAY, MAY 31, 2022
15
16   A P P E A R A N C E S:
17   FOR THE PEOPLE:
18         CHESA BOUDIN, DISTRICT ATTORNEY
           350 RHODE ISLAND STREET, NORTH BLDG., STE. 400N
19         SAN FRANCISCO, CALIFORNIA  94103
           BY:  ALICE WONG, ASSISTANT DISTRICT ATTORNEY
20
     FOR THE DEFENDANT:
21
           MANOHAR RAJU, PUBLIC DEFENDER
22         555 SEVENTH STREET
           SAN FRANCISCO, CALIFORNIA  94103
23         BY:  COOPER FINDLAY, DEPUTY PUBLIC DEFENDER
24
25
26   REPORTED BY:   LAURA A. REDING, CSR 9711, CRR
                    OFFICIAL REPORTER
27
28
```

```
 1                     Tuesday, May 31, 2022
 2                     P R O C E E D I N G S
 3                           ---oOo---
 4      THE COURT:  Line 605, People versus Josue Bonilla.
 5      MS. WONG:  Alice Wong specially appearing for Rebecca
 6   Wagner.
 7      MR. FINDLAY:  Cooper Findlay with the Public Defender's
 8   Office seeking appointment, specially appearing for Eric Quandt.
 9      THE COURT:  Thank you.  So we're on today for an arraignment
10   for Mr. Bonilla.
11      Good afternoon, Mr. Bonilla.
12      THE DEFENDANT:  Good afternoon.
13      THE COURT:  Sir, can you please confirm that your true name
14   is Josue Alexander Bonilla?
15      THE DEFENDANT:  Yes.
16      THE COURT:  Am I pronouncing the first name correctly?
17      THE DEFENDANT:  Josue.
18      THE COURT:  Thank you.  And that is spelled J-o-s-u-e?
19      THE DEFENDANT:  Yes.
20      THE COURT:  Sir, can you afford to hire your own lawyer in
21   this matter?
22      THE DEFENDANT:  No.
23      THE COURT:  So I find that you are eligible for
24   court-appointed counsel.  And I will appoint Mr. Cooper Findlay
25   of the Public Defender's Office to represent you.
26      THE DEFENDANT:  Okay.
27      THE COURT:  Will you accept appointment, Mr. Findlay?
28      MR. FINDLAY:  Yes, your Honor.  We'll accept appointment.
```

1  Waive instruction and arraignment, further advisement of rights.
2  Reserve the right to demur.  Deny any allegations, enhancements,
3  or priors.  Reserve Serna.
4      I would request to be heard as to his custodial status if I
5  may.
6      THE COURT:  Please go ahead.
7      MR. FINDLAY:  Thank you.
8      My client is a San Francisco resident for the last 35 years.
9  He resides with his mother on Florida Street here in the city.
10 He has two children.  He was working at Allied Security but was
11 placed on disability after he was injured on the job.  And he
12 has some rods in his back.
13     The PSA is a little confusing given there -- it says release
14 not recommended.  But my client has no failures to appear in the
15 last two years.  No failures to appear older than two years.  No
16 prior felony convictions.  And no prior violent convictions.
17     The circumstances of this case -- there are several
18 different incident dates.  I'll start with Count 1 and 2.  That
19 was the September 8, 2021, date.
20     There are several percipient witnesses that see an
21 altercation between my client and the complaining witness in
22 this case.  The complaining witness is actually holding a
23 hammer.  The evidence I'm proffering is that Mr. Bonilla was
24 defending himself.  And I think, given the information in the
25 police reports, that's a reasonable conclusion.
26     As far as Count 3 and 4, Count 3 is alleging a 422 where I
27 believe the incident report is saying -- as a misdemeanor, I
28 believe.  Or as a felony.  Excuse me -- that he would "make her

1   disappear," which surely is not -- does not meet at least two of
2   the elements of a 422, with equivocation and specificity.
3       My request is given that he has the -- his record is devoid
4   of failures to appear -- so he's not a flight risk -- and given
5   his contacts to the community and the circumstance of this case
6   that the Court give Mr. Bonilla an opportunity to be released on
7   his own recognizance or, in the alternative, ACM so he can go be
8   with his children and take care of his mother.  And he would be
9   willing to abide by a stay-away.
10      THE COURT:  Thank you.
11      Ms. Wong, would you like to be heard with regards to
12  custodial status for Mr. Bonilla?
13      MS. WONG:  I would, your Honor.
14      I think the police report is a little bit confusing
15  regarding that first incident.  I don't believe that's correct
16  that it was the victim that was holding the hammer.  Those were
17  two different individuals when you look at the name.
18      What in the arrest warrant by the detective, the sergeant,
19  is that on that occasion, the September 2021 occasion, the
20  defendant was highly intoxicated, angry at the victim, and threw
21  a metal toy at the victim's head area, causing a bruise to her
22  eye.
23      And as far as the 2022 incident in April, the victim
24  indicated that she is extremely afraid of the defendant.  And
25  when he made those statements that he would make her disappear,
26  he also made comments in the past about knowing places to hide a
27  body.  And she believes that he would carry out the threat.
28      And, again, on both occasions, including the second, the

1  April 2022 incident, the defendant is highly intoxicated. The
2  victim also indicated that he has access to firearms. So the
3  concern is that he is a danger to this victim. And she, again,
4  expressed her fear of the defendant.
5       Although there are no prior documented incidents of --
6  reports other than these two incidents, the one in 2021 and the
7  one in 2022, the victim indicated to law enforcement that there
8  were numerous undocumented violence toward her.
9       For all those reasons, I don't think that releasing the
10 defendant on OR is appropriate.
11      THE COURT: I think Mr. Findlay offered ACM.
12      MR. FINDLAY: If I may respond to the 422 as well.
13      THE COURT: Sure. But let's let Ms. Wong finish.
14      You know, I did not see the information about the victim
15 having a hammer when I reviewed the file. Where was that?
16      MR. FINDLAY: It's on the incident report.
17      MS. WONG: That is actually a different -- different
18 parties. I'm not really clear -- it's a different name
19 actually. The individual that was holding the hammer is not the
20 victim.
21      THE COURT: And what page references the hammer in the
22 incident report?
23      MR. FINDLAY: One second. It's police incident report
24 200536049, page seven. And maybe that is a different incident.
25 But it appears to be M. Bonilla, who is, I believe, the
26 complaining witness, with a hammer.
27      But, in any event, as far as the 422 is concerned, saying --
28 again, saying "make you disappear," one, is equivocal and not --

1  has specificity. But, also, that in the past he's related to
2  others -- allegedly said he knows where to put bodies. That's
3  in the past. It has to be in the same incident. And that's why
4  I don't think a 422 lies here either.
5      THE COURT: So I think what you're saying is that the People
6  are putting together different actions from different incidents
7  to make the 422 PC charge.
8      MR. FINDLAY: That's correct. And I'm not here to litigate
9  it. It just goes to the weight of whether this individual
10 should be -- my client should be in custody. And given his de
11 minimis record and his ties to the community, I believe he's
12 entitled -- and there's no motion to detain -- to a release.
13     THE COURT: Okay. So I think Ms. Wong didn't have an
14 opportunity to state what terms, custodial terms or release
15 terms, the People are seeking.
16     MS. WONG: I think ACM would be appropriate. I also think
17 home detention as well as electronic monitoring and a SCRAM
18 given that both incidents involved Defendant being highly
19 intoxicated, as well as a no-weapons condition. The police
20 report indicated that the defendant owns two firearms, two
21 semi-automatics. So a no-weapons condition is appropriate.
22     THE COURT: So with regards to home detention, I thought
23 that the victim and Mr. Bonilla are sharing a residence. Does
24 the victim now live someplace else?
25     MR. FINDLAY: That's correct. She does not live with his
26 mother and him.
27     THE COURT: I see.
28     MR. FINDLAY: And I just don't think we have reached a level

1  of trying the least restrictive means, so in this case an ACM
2  being the least restrictive means as assuring public safety.
3  So, given that, I don't think -- I think the proper vehicle,
4  then, would be ACM.  But we haven't tried any of the least
5  restrictive means.  So to jump to home detention and ankle
6  monitor I think is premature.
7       THE COURT:  What is Mr. Bonilla's current work situation if
8  he's on disability?
9       MR. FINDLAY:  He's disabled, on disability.  Was working for
10 Allied Security.  Got injured on the job.
11      THE COURT:  He's not working in other words.
12      MR. FINDLAY:  No.  He's taking care of his children and his
13 mother.  But he's trying to go back once he's off disability to
14 Allied Security.
15      THE COURT:  Okay.  I definitely think an electronic monitor
16 is warranted.
17      I guess, Mr. Findlay, on the "I'm going to make you
18 disappear," the Court read that to simply mean that he was
19 threatening to off her, to kill her, given the presence of the
20 two firearms.  And, to me, it was a pretty specific threat.
21 But, you know, I don't think we need to litigate that.
22      What I'm trying to figure out is -- I mean, would a curfew
23 serve any purpose in protecting the victim?  I definitely think
24 an electronic monitor is warranted so that the Sheriff's
25 Department can know where he is at all times.  Because I do
26 think that Ms. Bonilla is very fearful of -- for her life.  But
27 I'm just wondering what would a curfew or a home detention --
28 what purpose would that serve?

1   MR. FINDLAY: I don't think home detention would serve a
2   purpose, particularly if he's -- she does not live there. And
3   he's taking care of a kid and his elderly mother. I think that
4   is essentially virtual jail for an individual who has no flight
5   risk. And the electronic monitoring accomplishes the Court's
6   concerns of him interacting with this individual.
7   THE COURT: Yeah. And I guess I should have directed my
8   question really to Ms. Wong.
9   I guess, Ms. Wong, if the Court did a curfew, what purpose
10  would that advance? I mean, I just -- I don't want to impose a
11  restrictive condition just for the sake of imposing it. I want
12  to make sure to protect the victim here. Because I don't really
13  think public safety is at issue. I think it's really the
14  victim's safety that I'm concerned about.
15  MS. WONG: I think that's fine, Judge. I just want to also
16  make sure that the Court orders a SCRAM bracelet since both
17  incidents involved the defendant being highly intoxicated.
18  THE COURT: Yeah. I would be amenable to the no-weapons
19  condition and a SCRAM device.
20  MR. FINDLAY: I think we'd be fine with a no-weapons
21  condition. The only issue with the SCRAM is I understand there
22  is not -- some allegations that he may have been intoxicated.
23  He's already going to be on electronic monitoring. The problem
24  is he's going to be wearing two bracelets, the SCRAM and the EM.
25  I just think the electronic monitoring essentially accomplishes
26  both other than whether his BAC is registering.
27  THE COURT: Right. The SCRAM device, if I understand it
28  correctly, is to measure his blood alcohol level. Would that be

1  without regard to whether he's driving or not?  Or is the SCRAM
2  device on to prevent somebody driving while intoxicated?
3      MR. FINDLAY:  Simply measures whether my client's sweat has
4  any measurable amount of alcohol in it.  And if there was a
5  violation, his OR could be -- he could be remanded or taken in
6  for a warrant.
7      THE COURT:  Okay.
8      MR. FINDLAY:  But I just -- and I think the electronic
9  monitoring itself accomplishes what we're trying to do.  We're
10 not trying to stop him from drinking.  There's no DUI
11 allegation.  It's just protecting whether, in this situation,
12 he's a danger to this individual and we can't find him or locate
13 him.
14     THE COURT:  I understand.  This is what the Court is going
15 to do.  I'm going to order Mr. Bonilla be released on ACM with
16 an electronic monitor.  A no-weapons condition.  Comply with a
17 stay-away order.
18     And I'm going to decline to impose the SCRAM at this time
19 given that there is no DUI charge.  I don't think that there's
20 anything wrong with him drinking.  I mean, the issue is him
21 acting violently to his wife.  So I think at this time we don't
22 need to put the SCRAM device on.
23     So, Mr. Findlay, do you want to address any time waivers or
24 preliminary hearing dates?
25     MR. FINDLAY:  Yes.  I want to be sure as to the address on
26 the stay-away order.  She's no longer living at the 904 Florida
27 Street address.  That's, in fact, his mother's address.  So I'm
28 just hoping that -- I don't know what's reflected on the -- I

1  don't remember from the one I saw.
2      THE COURT: Sure. So it looks like, Ms. Wong, I think this
3  criminal protective order is requiring Mr. Bonilla to stay at
4  least 150 yards away from 992 Florida Street. And that is, it
5  sounds like, down the block from 904 Florida Street. Do you
6  know is 992 where the alleged victim is?
7      MR. FINDLAY: He has no objection to the 992 address. It's
8  just 904 is the issue.
9      THE COURT: Go ahead, Ms. Wong.
10     MS. WONG: I don't know at this point. I received this case
11 a little while ago. I apologize. Since it is a different
12 address than the one indicated that he's at, I would ask that
13 the Court issue it.
14     THE COURT: That's fine. And I know that you're filling in
15 for Ms. Wagner.
16     So, Mr. Findlay, do you have any objection to the Court
17 entering an order to require Mr. Bonilla to stay at least 150
18 yards away from 992 Florida Street? That is not his address.
19 His address is 904 Florida Street.
20     MR. FINDLAY: Yes. One second. Let me look at the
21 distance.
22     THE COURT: Let's go off the record.
23     (Discussion off record.)
24     THE COURT: Back on the record.
25     Ms. Wong, are you agreeable with what Mr. Findlay is
26 suggesting, to have the stay-away order be 150 yards away from
27 the alleged victim but 50 yards away from the 992 Florida Street
28 address? Because that address is on the same block as his home.

1    MS. WONG: That's fine.
2    THE COURT: Thank you.
3    So, Mr. Bonilla, the Court is ordering that you be released
4    on certain conditions. One of those conditions is that you
5    comply with the criminal protective order. And that requires
6    that you stay at least 150 yards away from Daniella Giselle Ruiz
7    Sanchez and that you have no personal, electronic, telephonic,
8    or any other kind of contact with her, including through a third
9    party. And you must stay 50 yards away from 992 Florida Street
10   in San Francisco.
11   Do you understand and can you comply with this order?
12   THE DEFENDANT: Yes.
13   THE COURT: Thank you. And a violation of this order can
14   give rise to a new criminal offense. Thank you.
15   And, also, you are going to be asked to not possess any
16   weapons while you are out of custody during the pendency of this
17   criminal matter.
18   And, finally, you're going to be fitted with an electronic
19   monitor so that the Sheriff's Department knows where you are.
20   MR. FINDLAY: Mr. Bonilla, you understand, as we discussed
21   in the tank, that you have the right to have a preliminary
22   hearing within ten court days of today's date. Understanding
23   that you'll be out of custody and to prepare some investigation,
24   are you willing to waive your ten-day right only?
25   THE DEFENDANT: Yes.
26   THE COURT: So the Court finds that Mr. Bonilla has
27   personally waived his right to a preliminary hearing within ten
28   court days of today's date. However, he's maintaining his right

```
 1  to a preliminary hearing within 60 calendar days of today's
 2  date.  That is August 1, 2022.  The 60th day is August 1.
 3      So, Mr. Findlay, is there a date when you'd like to come
 4  back for a prehearing conference or to set?
 5      MR. FINDLAY:  If we could have June 28th.  That's
 6  Mr. Quandt's next day.  And I know Mr. Bonilla is eager to get
 7  this case started.
 8      THE COURT:  Sure.
 9      Does that work for you, Ms. Wong, or for Ms. Wagner?
10      MS. WONG:  June 28th for the preliminary hearing or
11  prehearing conference?
12      THE COURT:  For prehearing conference and to set?
13      MS. WONG:  Okay.  I think that's fine.
14      THE COURT:  Okay.  Thank you.
15      So we'll set a prehearing conference and to set on Tuesday,
16  June 28, at 9:00 A.M., Department 9.  And Defendant is ordered
17  present.
18      MR. FINDLAY:  Thank you.
19      THE COURT:  So let's make sure that we get this criminal
20  protective order served.
21      MS. WONG:  May the record reflect service of two copies of
22  the criminal protective order on the defendant through counsel.
23      THE COURT:  Yes.  The record will so reflect.
24                        (Matter adjourned.)
25                            ---oOo---
26
27
28
```

```
State of California            )
                               )
County of San Francisco        )
```

    I, Laura A. Reding, Official Reporter for the Superior Court of California, County of San Francisco, do hereby certify:

    That I was present at the time of the above proceedings;

    That I took down in machine shorthand notes all proceedings had and testimony given;

    That I thereafter transcribed said shorthand notes with the aid of a computer;

    That the above and foregoing pages 1 through 13, inclusive, is a full, true, and correct transcription of said shorthand notes, and a full, true, and correct transcript of all proceedings had and testimony taken on Tuesday, May 31, 2022;

    That I am not a party to the action or related to a party or counsel;

    That I have no financial or other interest in the outcome of the action.

Dated: July 29, 2022

*Laura A. Reding*
LAURA A. REDING, CRR, CSR NO. 9711