1  SHILPI AGARWAL (State Bar No. 270749)
   AVRAM D. FREY (Admitted *pro hac vice*)
2  EMI YOUNG (State Bar No. 311238)
   HANNAH KIESCHNICK (State Bar No. 319011)
3  AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF NORTHERN CALIFORNIA, INC.
4  39 Drumm Street
   San Francisco, CA 94111
5  Telephone: (415) 621-2493
   Email: sagarwal@aclunc.org
6  afrey@aclunc.org
   eyoung@aclunc.org
7  hkieschnick@aclunc.org

8  ADDITIONAL COUNSEL ON SIGNATURE PAGE

9  *Attorneys for Plaintiffs*

10

11                    **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13                          **OAKLAND DIVISION**

14  JOSHUA SIMON, DAVID BARBER, AND        )   CASE NO.: 4:22-CV-05541-JST
    JOSUE BONILLA, individually and on behalf of )  (San Francisco County Superior Court,
15  all others similarly situated, DIANA BLOCK, an )  Case No.: CGC-22-601686)
    individual, and COMMUNITY RESOURCE    )
16  INITIATIVE, an organization,               )   **PLAINTIFFS' REPLY IN SUPPORT**
                                             )   **OF THEIR MOTION FOR A**
17              Plaintiffs,                    )   **PRELIMINARY INJUNCTION**
                                             )
18          v.                               )   Date: January 19, 2023
                                             )   Time: 2:00 p.m.
19  CITY AND COUNTY OF SAN FRANCISCO,       )   Place: Courtroom 6
    PAUL MIYAMOTO, in his official capacity as )  Judge: Hon. Jon S. Tigar
20  SAN FRANCISCO SHERIFF,                   )
                                             )   Complaint Filed:  September 8, 2022
21              Defendants.                   )   Removal Filed:  September 28, 2022
                                             )
22                                           )   TRIAL DATE:  None Set
                                             )
23  _____)

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT ...............................................................................................1

    A.    Rules 5 and 13 Are Not Authorized by the Court or Consent. ...............2

        1.    The Sheriff, not the Superior Court, imposes Rules 5 and 13. ...................2

        2.    Releasees do not consent to Rules 5 and 13. ...............................5

    B.    There Is No Basis for Abstention. .........................................7

    C.    Plaintiffs Are Likely to Succeed on the Merits ............................8

        1.    The Sheriff is in breach of the separation of powers. ...................8

        2.    Rules 5 and 13 violate Plaintiffs' rights against unreasonable search. ......9

        3.    Indefinite retention and data sharing violates the right to privacy. ...........11

    D.    Plaintiffs Have Established Irreparable Harm and the Equities Favor Plaintiffs. ........................................................................12

        1.    Plaintiffs will suffer irreparable harm without preliminary relief. ...........12

        2.    The balance of equities does not weigh in Defendants' favor. .................14

    E.    Defendants' Discussion of Plaintiffs' Charges and Subsequent Conduct is Improper. ......................................................................14

III.  CONCLUSION ............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arevalo v. Hennessy,*
    882 F.3d 763 (9th Cir. 2018)................................................................................. 8

*Ash v. City of Clarksville,*
    2004 WL 5913273 (M.D. Tenn. Sept. 3, 2004) ................................................... 7

*Bumper v. North Carolina,*
    391 U.S. 543 (1968) ............................................................................................. 6

*Carpenter v. United States,*
    138 S. Ct. 2206 (2018) ....................................................................................... 12

*City of Indianapolis v. Edmond,*
    531 U.S. 32 (2000) ............................................................................................. 12

*Cnty. of L.A. v. L.A. Cnty. Emp. Rels. Comm'n,*
    56 Cal. 4th 905 (2013)........................................................................................ 11

*Cobine v. City of Eureka,*
    250 F. Supp. 3d 423 (N.D. Cal. 2017) ............................................................... 13

*Coolidge v. New Hampshire,*
    403 U.S. 443 (1971) ............................................................................................. 3

*Florida v. Jimeno,*
    500 U.S. 248 (1991) ............................................................................................. 6

*Griffin v. Wisconsin,*
    483 U.S. 868 (1987) ........................................................................................... 10

*Hill v. N.C.A.A.,*
    7 Cal. 4th 1 (1994)............................................................................................. 11

*In re Brown,*
    76 Cal. App. 5th 296 (2022) ................................................................................ 8

*In re Webb,*
    7 Cal. 5th 270 (2019)........................................................................................... 4

*In re York,*
    9 Cal. 4th 1133 (1995) ......................................................................................... 3

*Johnson v. United States,*
    333 U.S. 10 (1948) ............................................................................................... 3

*Kenny A. ex rel. Winn v. Perdue,*
    218 F.R.D. 277 (N.D. Ga. 2003) ......................................................................... 7

*Loder v. City of Glendale,*
    14 Cal. 4th 846 (1997) ................................................................................................ 11

*Los Angeles County Bar Association v. Eu,*
    979 F.2d 697 (9th Cir. 1992) ........................................................................................ 7

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ...................................................................................... 13

*People v. Buza,*
    4 Cal. 5th 658 (2018) ................................................................................................. 12

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973) ..................................................................................................... 8

*Schneckloth v. Bustamonte,*
    412 U.S. 218 (1973) ..................................................................................................... 7

*United States v. Basher,*
    629 F.3d 1161 (9th Cir. 2011) ...................................................................................... 6

*United States v. Dailey,*
    941 F.3d 1183 (9th Cir. 2019) ...................................................................................... 2

*United States v. Esparza,*
    552 F.3d 1088 (9th Cir. 2009) ...................................................................................... 3

*United States v. Jones,*
    565 U.S. 400 (2012) ................................................................................................... 12

*United States v. Maciel-Vasquez,*
    458 F.3d 994 (9th Cir. 2006) ........................................................................................ 3

*United States v. Ray,*
    375 F.3d 980 (9th Cir. 2004) ........................................................................................ 4

*United States v. Scott,*
    450 F.3d 863 (9th Cir. 2006) ...................................................................... 5, 9, 10, 11

*United States v. Shaibu,*
    920 F.2d 1423 (1990) ................................................................................................... 6

*United States v. Stephens,*
    424 F.3d 876 (9th Cir. 2005) .................................................................................... 2, 8

*Younger v. Harris,*
    401 U.S. 37 (1971) ....................................................................................................... 7

**MISCELLANEOUS**

Cal. Const. art. I, § 1 ......................................................................................................... 1

Cal. Const. art. I, § 7 ......................................................................................................... 1

Cal. Const. art. III, § 3 ....................................................................................................... 1

U.S. Const., amend. IV ................................................................................................................. 1

## I.     INTRODUCTION

The San Francisco Sheriff unilaterally imposes invasive surveillance conditions on every individual released pretrial on electronic monitoring ("EM"). The Sheriff's EM Program Rules 5 and 13 respectively authorize search of a releasee's home, vehicle, person, and property (four-way search clause), and indefinite retention and sharing of GPS location data. These significant privacy intrusions are not ordered or authorized by the Superior Court. Plaintiffs Simon, Barber, and Bonilla (Named Plaintiffs), previously ordered released on EM, seek to preliminarily enjoin enforcement of Rules 5 and 13 to prevent irreparable harm from the Sheriff's unilateral imposition of these conditions in violation of the Separation of Powers Clause, Cal. Const. art. III, § 3; their rights against unreasonable search and seizure, U.S. Const., amend. IV; Cal. Const. art. I, § 7; and their right to privacy, Cal. Const. art. I, § 1.

Defendants' Opposition relies on two faulty premises: (1) the Superior Court either orders or authorizes Rules 5 and 13, and (2) EM releasees consent to these rules. Neither is true. First, the Superior Court does not impose these rules and could not, and does not, delegate to the Sheriff the fundamentally judicial function of determining appropriate release conditions. Second, EM releasees do not freely and intelligently consent to Rules 5 and 13. Defendants' remaining arguments fail in turn. This Court's jurisdiction, particularly after Defendants' removal, is proper; Plaintiffs are likely to succeed on the merits; and the balance of harms favors Plaintiffs.

In the absence of meritorious arguments, Defendants resort to filling the record with irrelevant facts concerning Named Plaintiffs' criminal charges and their alleged subsequent conduct. This information has no bearing on any issue in the case and is a bare attempt to defile Plaintiffs and discredit their suit. The Court should disregard it and grant Plaintiffs' Motion for a Preliminary Injunction.

## II.     ARGUMENT

Defendants' arguments all reduce to a false conception of the Sheriff's Program Rules 5 and 13: namely, that these rules are "consistent with the court's pretrial release orders," and "consent-based . . . ." Opp. at 1. Because these mischaracterizations are central to Defendants'

1   Opposition, Plaintiffs first demonstrate their inaccuracy. From there, Defendants' remaining

2   arguments collapse.

   **A.      Rules 5 and 13 Are Not Authorized by the Court or Consent.**

3

   **1.      The Sheriff, not the Superior Court, imposes Rules 5 and 13.**

4

5          Conceding, as they must, that the Superior Court itself does not expressly impose Rules 5

6   and 13 on pretrial releasees, Defendants contend that the Superior Court delegates authority to

7   the Sheriff to impose those rules per the Superior Court's EM form order ("EM Form Order").

8   Opp. at 8, 11. It is not entirely clear from Defendants' brief how this so-called delegation occurs.

9   On one hand, Defendants appear to argue that, because the Superior Court purportedly elicits an

10  all-purpose Fourth Amendment waiver, the Sheriff has been delegated the authority to weigh and

11  impose any additional privacy intrusions on EM participants, including Fourth Amendment

12  intrusions that exceed what is listed in the EM Form Order. *See id.* at 12 ("[T]he criminal court

13  took the Fourth Amendment waiver and ordered EM but delegated implementation of the EM

14  Program to SFSO."); *see also id.* at 23 (EM order signifies that "Plaintiff[s] could be released

15  *only* if [they] waived [their] Fourth Amendment rights and agreed to follow SFSO's instructions

16  as part of the EM Program"). On the other hand, Defendants also seem to suggest that Rules 5

17  and 13 do not impose constitutional infringements beyond those necessarily inherent in court-

18  ordered EM. *See id.* at 11 ("subsets"); *id.* at 12 ("narrower rules"). Defendants are wrong on both

19  counts.

20         *First*, the Superior Court cannot and does not delegate to the Sheriff the power to impose

21  constitutional infringements that go beyond those that it has ordered.  In *United States v.*

22  *Stephens*, 424 F.3d 876, 880-81 (9th Cir. 2005), the Ninth Circuit held that under the separation

23  of powers doctrine, "it is permissible to delegate . . . the details of where and when [a] condition

24  will be satisfied," but "the court makes the determination of *whether* a defendant must abide by a

25  [release] condition . . . ." *Accord United States v. Dailey*, 941 F.3d 1183, 1194 (9th Cir. 2019)

26  (executive is left only "the ministerial task[ ]" of implementing the court's order). This division

27  of labor also sounds in the Fourth Amendment, which assigns to courts the task of balancing an

28  individual's privacy interest against the State's interest in law enforcement. *See Johnson v.*

*United States*, 333 U.S. 10, 13-14 (1948) ("The point of the Fourth Amendment" is that the line "be drawn by a neutral and detached magistrate instead of . . . the officer engaged in . . . ferreting out crime."); *see also In re York*, 9 Cal. 4th 1133, 1149 (1995) (holding that "*a court* must balance 'the nature and quality of the intrusion . . . [against] the governmental interests'") (emphasis added) (citation omitted).

Thus, only a court may balance the interest in law enforcement or community safety against intrusions on individual privacy. Where the Sheriff performs this balancing—here, by imposing Rules 5 and 13 and their attendant privacy burdens—he runs afoul of the separation of powers doctrine and the Fourth Amendment. *See*, *e.g.*, *United States v. Maciel-Vasquez*, 458 F.3d 994, 996 (9th Cir. 2006) (holding under separation of powers doctrine that a court may delegate authority that is "incidental to" a court-ordered condition, but delegation of "authority . . . apart from any [court-ordered condition] . . . is an error under *Stephens*"); *see also United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009) (as a matter of separation of powers, executive branch could not impose condition that was "far more restrictive" than what court specifically ordered); *see Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971) (holding it central to Fourth Amendment jurisprudence that, "policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations"). As a matter of law, the EM Form Order cannot delegate to the Sheriff the ability to impose additional Fourth Amendment burdens beyond those that have been ordered by the Superior Court itself.

And consistent with this authority, the EM Form Order does not, in fact, delegate authority to the Sheriff to impose Rules 5 and 13. The EM Form Order states, "[b]y checking boxes below, the Court will indicate what supervision the San Francisco Sheriff's Office (SFSO) will employ," signaling that any delegation must be express and specific. ECF No. 1-9 at 22. The EM Form Order then provides boxes for conditions like "Not possess any weapons," and "Submit to a drug test when directed to do so by a SFSO sworn employee." *Id.* Neither of the conditions reflected in Rules 5 and 13 is listed. *Id.* Moreover, the EM Form Order includes boxes for "other restriction[s] not on this form," and "Other," with space designated for the Superior Court to explain any such conditions, suggesting that the list is intended to be exhaustive. *Id.* The

Order thus explicitly orders certain pretrial conditions for those on EM, and delegates to the

Sheriff *only* the ability to implement those conditions. But the absence of any language regarding

the sharing of location data with other law enforcement or regarding the search of person,

vehicle, home, or property, indicates that no such delegation has occurred for Rules 5 and 13.

Defendants point out that the EM Form Order compels EM participants to "comply with all

SFSO rules to avoid pretrial detention . . . ." Opp. at 8. But in light of the separation of powers

doctrine, this instruction must be understood to refer to rules *in furtherance of conditions*

*ordered by the court*. *See United States v. Ray*, 375 F.3d 980, 995 (9th Cir. 2004) (applying the

canon of constitutional avoidance to, *inter alia*, a court order). The Superior Court's Form EM

Order is not a blank check.

> *Second*, Defendants alternatively posit that Rules 5 and 13 are not distinct release

conditions at all, but rather "subsets of," or "narrower rules" within, EM itself. Opp. at 11-12.

This argument lacks merit. Rules 5 and 13 plainly impose sweeping intrusions on privacy far

beyond what is ordered by the Superior Court in imposing EM. Indeed, courts recognize that

warrantless search conditions are standalone release conditions that may only be determined by

the judiciary. *See, e.g.*, *In re Webb*, 7 Cal. 5th 270, 274, 278 (2019) (categorizing warrantless

search requirement as a "condition of release"). Moreover, an order of release on EM entails

only attachment of an ankle cuff and continuous, real-time location tracking by the Sheriff.

Meanwhile, Rule 5 allows warrantless searches of a participants' person, home, vehicle, and

property at any time and by any law enforcement officer, without any degree of suspicion. Rule

13 allows any "criminal justice partners" to access detailed GPS location data and effectively

surveil the intimate details of a person's whereabouts, in perpetuity, for any generalized

purposes, again without a warrant or any degree of suspicion. ECF No. 1-9 at 25. These are

serious, *additional* invasions of privacy that can be ordered only by a court.

> Defendants insist that Rules 5 and 13 are nonetheless useful in administering an EM

program. Opp. at 2. At the outset, it is unclear how this is true—Defendants do not explain how

these rules assist the Sheriff in "avoiding and detecting tampering with EM equipment,

addressing violations of the Program Rules, enforcing stay-away orders, [or] promoting

attendance at court hearings . . . ." *Id.* Regardless, whether or not a rule is useful in implementing an EM order is not the operative legal standard. There are many intrusions on constitutional liberties that are potentially useful to law enforcement. For example, it might be useful in administering EM for the Sheriff to simply impose house arrest throughout the pretrial period. The point is that the Superior Court does not authorize that infringement on constitutional liberty, just as it does not in the case of Rules 5 and 13. And while Defendants also note that Rules 5 and 13 "help[] SFSO and other law enforcement agencies with typical law enforcement activities," and "investigate and solve crimes," *id.* at 2-3, that is likewise not a valid justification. *Id.* at 2. The Sheriff's general interest in solving Bay Area crimes is separate from the purpose of administering an EM program to enforce the Superior Court's orders. Because the Superior Court does not impose Rules 5 and 13 and their attendant constitutional burdens, the Sheriff may not impose them for his own law enforcement purposes.

### 2. Releasees do not consent to Rules 5 and 13.

Defendants allege that Rules 5 and 13 are "consent-based," *id.* at 1, primarily because the EM Form Order states that by entering the order, "the Court indicates that the defendant has waived their 4th Amendment right[] . . . ." *Id.* at 2. But under the pertinent law, EM participants do not offer valid consent.

Preliminarily, under the unconstitutional conditions doctrine, the "bargain" Defendants allege—release in exchange for forfeiture—cannot justify Rules 5 and 13. *See United States v. Scott*, 450 F.3d 863, 865-68 (9th Cir. 2006). In *Scott*, the Ninth Circuit held that allowing such trades would lead to "abuse" and "lopsided deals," "eroding constitutional protections," "especially . . . in the Fourth Amendment context." *Id.* at 866-67. Following *Scott*, Rules 5 and 13 are "only valid" if the associated privacy intrusions are themselves "reasonable." *Id.* at 868. Defendants respond that "'abuse of power' and 'lopsided deals'" are "[not] present here." Opp. at 17 (quoting *Scott*, 450 F.3d at 866). Plaintiffs disagree. But regardless, the unconstitutional conditions doctrine is a prophylactic rule meant to prevent systemic harms, notwithstanding (and without exceptions for) individual differences. *See Scott*, 450 F.3d at 866-67. Defendants cite decisions from other jurisdictions in an attempt to circumvent this authority. Opp. at 14 (citations

1   omitted). But upon removing to this Court, Defendants must now live with the controlling

2   decision in *Scott*.

3          Consent is also absent as a matter of law. Releasees do not relinquish all Fourth

4   Amendment rights by agreeing to release on EM. A waiver of Fourth Amendment rights, express

5   or implied, must be "freely and intelligently given" and "unequivocal and specific." *United*

6   *States v. Basher*, 629 F.3d 1161, 1167-68 (9th Cir. 2011) (citation omitted). The Superior Court

7   never advises prospective releasees that, by agreeing to release on EM, they consent to

8   imposition of Rules 5 and 13. ECF No. 1-1 at ¶ 18. Defendants surmise that the Superior Court

9   "likely [does] not do so" because defense counsel may have waived further advisement, citing

10  Plaintiff Bonilla's transcript. Opp. at 14. Defendants' claim is speculative and improbable. There

11  is no reason to believe *any* defendant—let alone all, as Defendants suppose—waives further

12  advisement with respect to EM, and the record belies the notion. *See* ECF Nos. 34-1, -2, -3, -4.

13  Indeed, Bonilla's counsel waived "further advisement" at the start of the hearing, *before* the

14  Superior Court imposed EM; in context, this was a waiver of formal arraignment, not

15  hypothetical conditions of release yet to be determined. *See* ECF No. 31-8 at 3:1-3. But even so,

16  a general statement waiving further advisement—particularly where *no one* alerts prospective

17  releasees of Rules 5 and 13 before the Superior Court—cannot satisfy the requirement that

18  consent to waiver of Fourth Amendment rights be "unequivocal and specific" as well as

19  "intelligently given." *Basher*, 629 F.3d at 1167-68. Instead, any consent to a waiver of rights by

20  EM releasees is limited to what "the typical reasonable person [would] have understood by the

21  exchange . . . ." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citation omitted). Here, where the

22  Superior Court instructs releasees only that they will be released on EM, consent is necessarily

23  limited to application of an ankle cuff and contemporaneous GPS monitoring.

24         EM releasees also do not consent by virtue of signing and initialing the Sheriff's EM

25  Program Rules and contract. Releasees sign these papers under threat of return to jail, ECF No.

26  1-1 at ¶¶ 24, 32-34, a circumstance that defeats the notion of consent "freely . . . given." *United*

27  *States v. Shaibu*, 920 F.2d 1423, 1426 (1990) ("[V]oluntary consent cannot be found by a

28  showing of mere acquiescence to a claim of lawful authority."); *see also Bumper v. North*

*Carolina*, 391 U.S. 543, 548-49 (1968) (same). Voluntariness turns on a totality of the circumstances analysis, with "the length of detention," absence of legal advisement, and "the use of physical punishment" all pertinent factors. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). EM releasees are told to sign documents at Sentinel's offices, where they go alone, without counsel present. Their compliance is extracted under the implicit threat of detention, and all the harms to themselves and their families that flow from incarceration. This coercive circumstance renders the signatures of releasees involuntary. EM releasees do not voluntarily consent before the Sheriff, and Rules 5 and 13 are not authorized by consent.

### B.     There Is No Basis for Abstention.

Defendants argue as a threshold matter that Plaintiffs will not succeed because, as they argue in their Motion to Dismiss, this Court should abstain from considering their claims. In particular, they allege Plaintiffs should have raised their claims before the Superior Court in their criminal cases, or else filed a state habeas petition. Opp. at 7-8. But Defendants cannot remove and then complain about federal jurisdiction. *See Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 285 (N.D. Ga. 2003) ("It would be fundamentally unfair to permit State Defendants to argue that this Court must abstain from hearing the case after they voluntarily brought the case before this Court."); *see also Ash v. City of Clarksville*, 2004 WL 5913273, at *3 (M.D. Tenn. Sept. 3, 2004) (removal waives abstention defense).

In substance, Defendants' arguments are indistinct and lack merit. This case is not like *Los Angeles County Bar Association v. Eu*, 979 F.2d 697 (9th Cir. 1992), cited by Defendants, Opp. at 8, where the Ninth Circuit considered (but rejected) the government's arguments for abstention in a case challenging the number of state court judges. Here, Plaintiffs' claims are against the Sheriff, whose unilateral action is not authorized by the Superior Court. Relief would accordingly not "entail heavy interference in . . . the judicial system." *L.A. Cnty. Bar Ass'n*, 979 F.2d at 703. Relatedly, Plaintiffs were not required to "bring their claims, which [purportedly] concern ongoing criminal proceedings, to the criminal court." Opp. at 8. Though not cited by Defendants, this argument invokes *Younger v. Harris*, 401 U.S. 37 (1971). But *Younger* does not apply precisely because Plaintiffs' claims *do not* concern ongoing criminal proceedings. *See*

*Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) ("*Younger* abstention is not appropriate . . . because the issues raised . . . are distinct from the underlying criminal prosecution and would not interfere with it."). Again, Plaintiffs do not assail a matter within the purview of the Superior Court; they challenge the Sheriff's imposition of superfluous constitutional intrusions.

Plaintiffs were likewise not required to proceed in habeas corpus. Defendants cite *In re Brown*, 76 Cal. App. 5th 296 (2022), which held that a challenge to denial of bail is properly brought to the Court of Appeal via a petition for writ of habeas, not of mandate. That decision has no bearing here, where Plaintiffs do not challenge a decision of the Superior Court. Defendants also invoke, without citing, the doctrine of *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973), which held that a challenge to "the fact or duration of . . . confinement" belongs in habeas, while a "challenge to the conditions [of confinement]" may be brought under section 1983. Because Plaintiffs challenge the conditions of EM imposed by the Sheriff, not the fact of EM ordered by the Superior Court, *Preiser* is no bar.

Finally, Defendants argue that Taxpayer Plaintiffs Diana Block and Community Resource Initiatives may not proceed in this venue. Plaintiffs agree that the Taxpayer Plaintiffs lack Article III standing and that their claims should be remanded. *See* ECF No. 33 at 24. Otherwise, Plaintiffs' claims should proceed in this Court.

### C.    Plaintiffs Are Likely to Succeed on the Merits

#### 1.    The Sheriff is in breach of the separation of powers.

On the merits, Defendants argue under the separation of powers doctrine that the Superior Court delegates to the Sheriff the power to impose Rules 5 and 13 through its EM Form Order. Opp. at 11. As previously discussed, no such delegation would be lawful, *see Stephens*, 424 F.3d at 880, and the EM Form Order does not, in fact, so delegate. The question under *Stephens* is whether the Sheriff's imposition of Rules 5 and 13 constitutes the "when and how" of an EM release order, or instead usurps the court's function of deciding "*whether* a defendant must abide by a [release] condition . . . ." *Id.* It is the latter. Though Defendants summarily assert that Rules 5 and 13 are "narrower rules within the limits set by the courts," Opp. at 12, Rules 5 and 13 entail additional and substantial intrusions on privacy.

1    Defendants also suggest that lawful delegation is evident from the fact that EM releasees

2    may "petition the court to modify their conditions of release as part of the EM Program." *Id.*

3    Defendants note that Plaintiff Barber has "twice successfully moved to modify his conditions of

4    release" and cite litigation in which an EM releasee, Ryan Waer, purportedly objected to the

5    Superior Court's imposition of a four-way search condition. *Id.* at 12-13. For clarification, in

6    fact, Waer challenged a specific condition authorizing search of his electronic devices, not the

7    broader search clause authorizing search of his person, residence, and vehicle. *See* Decl. of S.

8    Kim ("Kim. Decl.") Ex. 1 at 7, 10-11, filed concurrently herewith. And, in any event, these are

9    examples of releasees challenging conditions imposed by the Superior Court. *See id*. They do not

10   demonstrate that EM releasees may or do challenge before the Superior Court release conditions

11   imposed by the Sheriff. To the contrary, that the Superior Court itself imposes search conditions

12   in some cases strongly suggests that the court does not simultaneously authorize the Sheriff to

13   impose the same condition in all cases. *See* Kim Decl. Ex. 2 at 5:17-6:21, 7:9-8:17 (trial court

14   making specific findings under *York* as to why condition requiring warrantless search of person,

15   residence, vehicle, and electronic devices was reasonable under the circumstances). Plaintiffs are

16   thus likely to succeed in their separation of powers claim.

17        **2.    Rules 5 and 13 violate Plaintiffs' rights against unreasonable search.**

18        Defendants next argue that Rules 5 and 13 are consistent with the Fourth Amendment and

19   article I, section 13 of the California Constitution, under both "totality of circumstances"

20   balancing and the special needs doctrine. Opp. at 13-21. They are incorrect.

21        Under the totality of the circumstances test, Defendants begin from the mistaken premise

22   that EM releasees have a reduced expectation of privacy because of their purported consent and

23   "their status as criminal defendants . . . ." *Id.* at 13-15. As noted, EM releasees do not consent to

24   the Sheriff's Program Rules. And under *Scott*, unlike parolees or probationers who have been

25   convicted of an offense, "pretrial releasees are ordinary people who have been accused of a

26   crime but are presumed innocent"; their reasonable expectations of privacy are undiminished by

27   the mere fact of arrest or charges. 450 F.3d at 871-72. Defendants contend otherwise under *York*,

28   Opp. at 15, but *Scott* declined to follow *York* on this point, and *Scott* controls. *Scott*, 450 F.3d at

871-72. As a result, for the reasons stated in Plaintiffs' underlying Memorandum of Points and Authorities, Mem. at 11, the privacy interests here are substantial.

Defendants' arguments concerning the governmental and public interests also miss the mark. Defendants discuss the criminal allegations against Named Plaintiffs, Opp. at 15-16, but Defendants do not say why they matter. The Sheriff imposes Rules 5 and 13 in every case of release on EM such that the allegations against individual releasees are accordingly, per the Sheriff's own policies, irrelevant. Further, under *Scott*, the government "has no concern with integrating [pretrial releasees] . . . who . . . never left the community, back into the community," because the mere fact "[t]hat an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime . . . ." 450 F.3d at 874. Accordingly, the governmental and public interests are minimal, and Rules 5 and 13 are unreasonable under the totality of the circumstances.

Defendants also fail to establish reasonableness under the special needs doctrine. In support of their claim, Defendants improperly distort the Supreme Court's holding in *Griffin v. Wisconsin*, 483 U.S. 868 (1987). *Griffin* held that "operation of a probation system" constitutes a special need, while Defendants relay its holding as "operation of a [pretrial EM Program] . . . presents 'special needs . . . .'" *Compare* Opp. at 17, *with Griffin*, 484 U.S. at 873-74. Defendants' edits matter because *Scott* explicitly distinguished *Griffin*, holding that "pretrial releasees are not probationers" for purposes of the special needs doctrine because the latter have been convicted of an offense. *Scott*, 450 F.3d at 872. *Scott* held that, in light of the presumption of innocence, pretrial releasees are not categorically considered more dangerous than other community members; thus, heightened surveillance of pretrial releasees is justified only by the interest in "[c]rime prevention," "a quintessential general law enforcement purpose and therefore . . . the exact opposite of a special need." *Id.* at 870. Defendants make little attempt to distinguish *Scott*, which is devastating to their case. They argue only that Rules 5 and 13 are consistent with *Scott* because the "central holding" of that decision is that imposition of release conditions must be individualized, and the Superior Court orders release on EM on an individualized basis. Opp. at 17. But as noted throughout, the Superior Court's individualized determinations do not

consider or encompass the intrusions that are part of Rules 5 and 13, which are imposed by the Sheriff in blanket fashion. Accordingly, neither the special needs doctrine nor the totality of the circumstances test renders Rules 5 and 13 reasonable, and Plaintiffs are likely to succeed on the merits of their claims under the Fourth Amendment and article I, section 13.

### 3. Indefinite retention and data sharing violates the right to privacy.

Defendants' response to Plaintiffs' article I, section 1 challenge to Rule 13 relies on much the same flawed reasoning as their defense to Plaintiffs' Fourth Amendment and article I, section 13 claims. Thus, they argue that Plaintiffs' expectations of privacy are diminished by purported consent and their status as criminal defendants. *Id.* at 18-19. For the reasons previously discussed, these arguments fail. *See Scott*, 450 F.3d at 872-73.

Next, Defendants contend that Plaintiffs cannot establish a privacy interest that is sufficiently serious to warrant relief. Opp. at 18-19. Defendants misleadingly present Plaintiffs' legal position as "an invasion of privacy need only be 'slight or trivial,'" *id.* at 19, though Plaintiffs in fact stated that a "serious" invasion of privacy is "anything *more than* 'slight or trivial,'" Mem. at 15 (quoting *Hill v. N.C.A.A.*, 7 Cal. 4th 1, 37 (1994)) (emphasis added). Plaintiffs' statement of the legal standard under the California Constitution is correct. *See Cnty. of L.A. v. L.A. Cnty. Emp. Rels. Comm'n*, 56 Cal. 4th 905, 929 (2013) ("The disclosure contemplated in this case was more than trivial. It rose to the level of a 'serious' invasion of privacy under *Hill*."); *see also Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997) (privacy interest is sufficiently serious in "any case that raises a genuine, nontrivial invasion of a protected privacy interest").

Moreover, Defendants misconstrue the privacy interests at stake. They state, "[t]he primary harm Plaintiffs identify is that their data 'may be used to implicate class members in a crime . . . .'" Opp. at 19. That is certainly a potential harm of indefinite retention and sharing of GPS data, but it is far from Plaintiffs' primary concern. Rather, Rule 13 portends retention and limitless sharing of immense troves of data which track releasees' every move over extended periods, revealing extensive, highly sensitive information. The U.S. Supreme Court has repeatedly recognized the considerable privacy interest in this information. *See Carpenter v.*

1  *United States*, 138 S. Ct. 2206, 2217-18 (2018); *United States v. Jones*, 565 U.S. 400, 415-17

2  (2012) (Sotomayor, J., concurring); *id.* at 430 (Alito, J., concurring in the judgment). Plaintiffs'

3  privacy interests are accordingly weighty.

4        Defendants' arguments regarding the government's interest, meanwhile, are revealing.

5  Defendants cite instances in which GPS data-sharing purportedly assisted law enforcement in

6  identifying criminal suspects. Opp. at 19-20. But in so doing, Defendants indicate their true

7  interest in Rule 13 is not enforcement of the Superior Court's EM order, but rather the general

8  law enforcement function of solving crime. This interest cannot override the privacy interests at

9  stake here. That is because Rule 13 is imposed on all EM releasees absent individualized

10  determinations, and where individualized suspicion is lacking, courts require the government to

11  show a purpose other than generalized interest in law enforcement. *See City of Indianapolis v.*

12  *Edmond*, 531 U.S. 32, 37-38, 42 (2000) (exceptions to individualized suspicion requirement—

13  special needs, administrative searches, and checkpoints—all require justification other than

14  ordinary law enforcement); *see also People v. Buza*, 4 Cal. 5th 658, 715-16 (2018) (Cuéllar, J.,

15  dissenting) ("solving crimes" does not "overcome the privacy rights of individuals subject to

16  arrest" where privacy intrusion is generalized and without individualized suspicion). Defendants'

17  position would authorize potentially limitless surveillance to promote the general interest in law

18  enforcement, reducing article I, section 1 to a nullity.

19        But even accepting Defendants' proffered interest as legitimate in this context, it does not

20  outweigh the privacy interests at stake. Rule 13 implicates an enormous quantum of highly

21  personal information, which may be retained and shared years or decades into the future.

22  Plaintiffs' interests in the privacy of this information outweigh any contravening interest.

23  Accordingly, Defendants' arguments under article I, section 1 are unavailing, and Plaintiffs are

24  likely to succeed on the merits of this claim, too.

25          **D.**    **Plaintiffs Have Established Irreparable Harm and the Equities Favor**

26              **Plaintiffs.**

27           **1.**    **Plaintiffs will suffer irreparable harm without preliminary relief.**

28        Defendants attempt to discount Plaintiffs' showing of irreparable harm under several

theories, but all are unpersuasive. First, Defendants argue that Plaintiffs' constitutional claims are "too tenuous" to give rise to a presumption of irreparable harm. Opp. at 21 (citation omitted). But for the reasons discussed, Plaintiffs are likely to prevail on their claims. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (citation omitted).

Next, Defendants assert that Rules 5 and 13 "have been in place for years," and Named Plaintiffs "had the opportunity to raise these issues in their criminal cases," suggesting that Plaintiffs' timing in bringing suit undermines their claim of harm. Opp. at 21. This defies logic. Named Plaintiffs had no notice of Rules 5 and 13 until they themselves were enrolled in the Sheriff's EM Program—after the Superior Court ordered their release on EM. And as repeatedly noted above, they had no opportunity to challenge the Sheriff's Program Rules in their criminal matters. They brought this suit diligently in a manner befitting the harms caused by Rules 5 and 13.

Defendants further argue that Plaintiffs cannot show irreparable harm resulting from data-sharing because "[Named Plaintiffs'] data has not been shared" with law enforcement. *Id.* at 22. Even absent sharing of Plaintiffs' location data with law enforcement to date, there is a "real and immediate threat" sufficient to constitute irreparable harm, *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 434 (N.D. Cal. 2017), particularly given the ease of requesting GPS location data, *see* ECF No. 1-1 at ¶ 54, and the increasing frequency of data-sharing by the Sheriff, *id.* at ¶ 55. Additionally, Plaintiffs have pleaded that the Sheriff is violating their constitutional rights any time he shares their location data absent a warrant supported by probable cause, meaning that they are suffering irreparable harm now, despite the pendency of their criminal cases.

Finally, Defendants summarily dismiss "Plaintiffs' unsupported claims of remaining 'vulnerable to harassment, needless intrusion on their privacy, and further criminal legal system involvement.'" Opp. at 22. These claims are not hypothetical, however. Plaintiff Barber was subjected to a search of his vehicle pursuant to Rule 5 absent individualized suspicion. ECF No. 1-11 at ¶¶ 13-21. And all Named Plaintiffs have expressed present anxiety and distress resulting

1   from the Sheriff's intrusion on their privacy. ECF No. 1-1 at ¶¶ 46-49. Thus, Plaintiffs have

2   demonstrated irreparable harm.

**2.      The balance of equities does not weigh in Defendants' favor.**

4   Defendants argue that in balancing the equities, this Court "need not approach this issue

5   from scratch," as "[t]he criminal court already appropriately weighed" the competing interests.

6   Opp. at 22. Plaintiffs agree. In determining whether to release a criminal defendant, and under

7   what level of supervision, the Superior Court balances community safety and the need to secure

8   future appearances against the defendant's interest in liberty. *Id.* And in doing this balancing, the

9   Superior Court does not order a four-way search clause, or limitless retention and sharing of GPS

10  location data, in every instance of release on EM. The Sheriff does. Accordingly, taking its cue

11  from the Superior Court, this Court should find that the equities do not favor the systematic

12  intrusions challenged here. By arguing the opposite, Defendants do not endorse the Superior

13  Court's judgment so much as second-guess it. Defendants thus invite this Court to do precisely

14  what they acknowledge it may not do, namely interfere "in such sensitive state activities as

15  administration of the judicial system." *Id.* at 8 (citation omitted).

16  But deference aside, this Court should reach the same conclusion as the Superior Court.

17  Defendants' alleged harms reduce to the same generalized interest in law enforcement previously

18  discussed. And just as this interest is insufficient to outweigh the privacy interest of Named

19  Plaintiffs under the Fourth Amendment, article I, section 13, and article I, section 1, it cannot tip

20  the scales in this Court's weighing of the equities. The balance of harms favors Plaintiffs, and the

21  Court should grant a preliminary injunction.

**E.      Defendants' Discussion of Plaintiffs' Charges and Subsequent Conduct is
          Improper.**

24  Finally, Defendants make repeated reference to the criminal allegations against Named

25  Plaintiffs, attempting to fill the record with salacious information, some of it from records

26  Defendants have sought to file under seal, detailing alleged misconduct. The Court should

27  disregard this information entirely, and not only because it reflects the self-serving narratives of

28  law enforcement which have not been tested or proven in court. Named Plaintiffs bring facial

1    challenges to the Sheriff's EM Program Rules 5 and 13, which are applied to every individual

2    released pretrial on EM. Named Plaintiffs have moved for certification of a Rule 23(b)(2) class

3    because the legal issues they raise are common to all EM pretrial releasees and can be resolved

4    for all via declaratory and injunctive relief, without regard to the facts of their individual cases.

5    *See generally* ECF No. 30. The charges against Named Plaintiffs, the allegations underlying

6    those charges, and their reported histories while on pretrial release are of no relevance

7    whatsoever to their legal claims. Defendants' egregious recitation of such allegations is thus

8    nothing more than an attempt to prejudice the Court against Named Plaintiffs and color their

9    claims unfavorably. This is improper, and the Court should ignore the corresponding portions of

10   Defendants' pleadings.

11   **III.     CONCLUSION**

12          For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'

13   Motion for a Preliminary Injunction.

14   Dated: November 4, 2022                     Respectfully submitted,

15

16                                               By: _____

17                                                  Shilpi Agarwal (SBN 270749)
                                                       sagarwal@aclunc.org
18                                                  Avram D. Frey (Admitted *pro hac vice*)
                                                       afrey@aclunc.org
19                                                  Emi Young (SBN 311238)
                                                       eyoung@aclunc.org
20                                                  Hannah Kieschnick (SBN 319011)
                                                       hkieschnick@aclunc.org
21                                                  AMERICAN CIVIL LIBERTIES UNION
                                                   FOUNDATION OF NORTHERN CALIFORNIA,
22                                                 INC.
                                                   39 Drumm Street
23                                                 San Francisco, CA 94111
                                                   Telephone: (415) 621-2493
24
                                                   Justina Sessions (SBN 270914)
25                                                     jsessions@wsgr.com
                                                   John P. Flynn (SBN 141094)
26                                                     jflynn@wsgr.com
                                                   Colleen Bal (SBN 167637)
27                                                     cbal@wsgr.com
                                                   Dylan G. Savage (SBN 310452)
28                                                     dsavage@wsgr.com

Malavika F. Lobo (SBN 317635)
mlobo@wsgr.com
Wilson Sonsini Goodrich & Rosati
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2197

*Attorneys for Plaintiffs*
*Joshua Simon, David Barber, Josue Bonilla,*
*Diana Block, and Community Resource*
*Initiative*

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

2

I, Justina K. Sessions, am the ECF User whose identification and password are being

3

used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all

4

signatories have concurred in this filing.

5

6

Dated: November 4, 2022                         /s/ Justina K. Sessions

7                                                             Justina K. Sessions

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28