1  DAVID CHIU, State Bar #189542
   City Attorney
2  MEREDITH B. OSBORN, State Bar #250467
   Chief Trial Deputy
3  KAITLYN MURPHY, State Bar #293309
   ALEXANDER J. HOLTZMAN, State Bar #311813
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, 6th Floor
   San Francisco, California 94102-5408
6  Telephone:     (415) 554-3867 [Murphy]
   Telephone:     (415) 554-3999 [Holtzman]
7  Facsimile:     (415) 554-3837
   Email:         kaitlyn.murphy@sfcityatty.org
8  Email:         alexander.holtzman@sfcityatty.org

9  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO,
10 AND PAUL MIYAMOTO, IN HIS OFFICIAL
   CAPACITY AS SAN FRANCISCO SHERIFF

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                          OAKLAND DIVISION

15

16 JOSHUA SIMON, DAVID BARBER, AND          Case No. 4:22-cv-05541-JST
17 JOSUE BONILLA, INDIVIDUALLY AND
   ON BEHALF OF ALL OTHERS                  **DEFENDANTS CITY AND COUNTY OF**
18 SIMILARLY SITUATED, DIANA BLOCK,         **SAN FRANCISCO AND SHERIFF PAUL**
   AN INDIVIDUAL AND COMMUNITY             **MIYAMOTO'S REPLY IN SUPPORT OF**
19 RESOURCE INITIATIVE, AN                  **THEIR MOTION TO DISMISS THE**
   ORGANIZATION,                            **COMPLAINT (ECF NO. 24)**
20
         Plaintiffs,
21                                          Judge:           Hon. Jon S. Tigar
      vs.                                   Courtroom:       Courtroom 6, 2nd Floor
22                                          Hearing Date:    January 19, 2023
                                            Time:            2:00 p.m.
23 CITY AND COUNTY OF SAN
   FRANCISCO, PAUL MIYAMOTO, IN HIS         Trial Date:      Not Set
24 OFFICIAL CAPACITY AS SAN
   FRANCISCO SHERIFF,
25
         Defendants.
26

27

28

---

Reply in Support of Motion to Dismiss                    n:\lit\li2022\230184\01638161.docx
Case No. 22-cv-05541-JST

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

REPLY ......................................................................................................................... 1

    I.     Argument ....................................................................................................... 2

          A.    Criminal Defendant Plaintiffs Have Raised Their Claims in the Wrong
               Forum. ............................................................................................... 2

               1.    Criminal Defendant Plaintiffs Failed to Exhaust Required State
                      Processes. ............................................................................... 2

               2.    Plaintiffs Arguments About Abstention Are Incorrect. ................... 4

          B.    Plaintiffs Cannot Succeed on Their Underlying Claims. ............................. 5

               1.    Program Rule 5 and 13 are Consistent with the Fourth
                      Amendment and California Search and Seizure Protections. .......... 5

               2.    Program Rule 5 and 13 are Consistent with the California
                      Constitution's Right to Privacy. .................................................... 9

               3.    The Plain Language of the Court's EM Order Attached to the
                      Complaint Defeats Plaintiff's Separation of Powers Claim ......... 10

               4.    Plaintiffs' Procedural Due Process Claim Still Fails. .................... 11

           C.    The City Is Not a Proper Defendant. .......................................................... 14

          D.    Taxpayer Plaintiffs Claims Should Be Dismissed for Lack of Statutory
                Standing. ....................................................................................... 14

    II.    Conclusion ................................................................................................. 15

# TABLE OF AUTHORITIES

**State Cases**

*ACLU Found. v. Super. Ct.*
   3 Cal. 5th 1032 (2017) ................................................................................................10

*Haas v. County of San Bernardino*
   27 Cal. 4th 1017 (2002) ..............................................................................................13

*In re Brown*
   76 Cal. App. 5th 296 (2022) ..........................................................................................3

*In re Estevez*
   165 Cal. App. 4th 1445 (2008) .......................................................................................3

*In re Humphrey*
   11 Cal. 5th 135 (2021) ................................................................................................14

*In re Ryan Waer*
   No. A162548 (Cal. Ct. App. May 27, 2021) ...............................................................12

*In re Ryan Waer*
   No. S269188 (Cal. S. Ct. July 21, 2021) .....................................................................12

*In re York*
   9 Cal. 4th 1133 (1995) ............................................................................................6, 14

*Morongo Band of Mission Indians v. State Water Res. Control Bd.*
   45 Cal. 4th 731 (2009) ................................................................................................13

*People v. Buza*
   4 Cal. 5th 658 (2018) ..................................................................................................10

*People v. Kwizera*
   78 Cal. App. 4th 1238 (2000) ......................................................................................12

*People v. Ramirez*
   25 Cal. 3d 260 (1979) ..................................................................................................13

*People v. Roberts*
   68 Cal. App. 5th 64 (2021) ............................................................................................9

*People v. Ryan Waer*
   S.F. Super. Ct. Case No. CI-21001863 ..................................................................10, 12

*Venegas v. County of Los Angeles*
   32 Cal. 4th 820 (2004) ................................................................................................14

Reply in Support of Motion to Dismiss
Case No. 22-cv-05541-JST

n:\lit\li2022\230184\01638161.docx

**State Statutes & Codes**

California Penal Code § 118.1 ..................................................................................9

California Penal Code § 1270 ...................................................................................6

California Penal Code § 1270.1 ................................................................................6

California Penal Code § 1270.1(c) ...........................................................................3

California Penal Code § 1318 ...................................................................................8

California Penal Code § 1318(a)(2) ..........................................................................3

California Penal Code § 1320.18 ..............................................................................3

California Penal Code § 1320.20(e)(1) .....................................................................3

**Federal Cases**

*Arevalo v. Hennessy*
    882 F.3d 763 (9th Cir. 2018) ............................................................................4, 5

*Ashcroft v Iqbal*
    556 U.S. 544 (2007)...........................................................................................7

*Bordenkircher v. Hayes*
    434 U.S. 357 (1978)...........................................................................................12

*Brewster v. Shasta County*
    275 F.3d 803 (9th Cir. 2001) .............................................................................14

*Buffin v. City & County of San Francisco*
    2016 WL 6025486 (N.D. Cal. Oct. 14, 2016) ..................................................14

*California v. N. Tr. Corp.*
    2013 WL 1561460 (C.D. Cal. Apr. 10, 2013) ..................................................15

*Ctr. for Genetics & Soc'y v. Bonta*
    2021 WL 2373436 (Cal. Ct. App. June 10, 2021) ............................................9

*Columbia Basin Apartment Ass'n v. City of Pasco*
    268 F.3d 791, 796 (9th Cir. 2001) .....................................................................4

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*
    508 U.S. 602 (1993)...........................................................................................13

*Dowden v. City of Sacramento*
    40 F. Supp. 2d 1146 (E.D. Cal. 1999) ...............................................................4

*Eggleson v. Pierce Cnty. Super. Ct.*
    2022 WL 1468817 (W.D. Wash. May 10, 2022) ..............................................5

iii

*Ford v. Wainwright*
    477 U.S. 399 (1986)................................................................13

*Goldberg v. Kelly*
    397 U.S. 254 (1970)................................................................13

*Heck v. Humphrey*
    512 U.S. 477 (1994)..............................................................4, 5

*Hirt v. Jackson County*
    2020 WL 3104502 (D. Or. June 11, 2020) ...............................3

*In re Murchison*
    349 U.S. 133 (1955)................................................................13

*Johnson v. United States*
    333 U.S. 10 (1948)..................................................................13

*L.A. Cnty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992) ...................................................3

*Lazarus v. Baca*
    389 F. App'x 700 (9th Cir. 2010) .............................................5

*Lee v. Am. Nat'l Ins. Co.*
    260 F.3d 997 (9th Cir. 2001) .................................................15

*Maryland v. King*
    569 U.S. 435 (2013)..................................................................7

*Nelson v. Campbell*
    541 U.S. 637 (2004)..................................................................4

*Norris v. Premier Integrity Sols., Inc.*
    641 F.3d 695 (6th Cir. 2011) ...................................................8

*O'Donnell v. Harris County*
    321 F. Supp. 3d 763 (S.D. Tex. 2018) .....................................4

*Ohio Civil Rights Comm'n v. Dayton Christian Schs.*
    477 U.S. 619 (1986)..................................................................4

*Parents for Priv. v. Barr*
    949 F.3d 1210 (9th Cir. 2020) ...............................................13

*Pension Plan v. Yahn & Mc Donnell, Inc.*
    787 F.2d 128 (3d Cir. 1986) ..................................................13

*Platt v. Moore*
    15 F.4th 895 (9th Cir. 2021) ..................................................15

iv

*Polo v. Innoventions Int'l, LLC*
   833 F.3d 1193 (9th Cir. 2016) .................................................................15

*Preiser v. Rodriguez*
   411 U.S. 475 (1973)..................................................................................4

*Robinson v. Sniff*
   2009 WL 1037716 (C.D. Cal. Apr. 17, 2009) ..........................................5

*Schacht v. United States*
   398 U.S. 58 (1970).....................................................................................8

*Slater v. Thomas*
   100 F.3d 944 (2d Cir. 1996) ......................................................................5

*Stack v. Boyle*
   342 U.S. 1 (1951)...................................................................................2, 3

*Steel Co. v. Citizens for a Better Env't*
   523 U.S. 83 (1998)...................................................................................15

*Teutscher v. Woodson*
   835 F.3d 936 (9th Cir. 2016) .....................................................................4

*United States v. Aviles*
   229 F. Supp. 3d 1039 (N.D. Cal. 2017) .....................................................3

*United States v. Gardner*
   523 F. Supp. 2d 1025 (N.D. Cal. 2007) ...................................................13

*United States v. Jones*
   565 U.S. 400 (2012)..................................................................................10

*United States v. Lara*
   815 F.3d 605 (9th Cir. 2016) .....................................................................8

*United States v. Salerno*
   481 U.S. 739 (1987)..................................................................................12

*United States v. Scott*
   450 F.3d 836 (9th Cir. 2006) .....................................................................5

*United States v. Smith*
   414 F.2d 630 (5th Cir. 1969) .....................................................................8

*United States v. Wagner*
   834 F.2d 1474 (9th Cir. 1987) .................................................................12

*Welchen v. County of Sacramento*
   343 F. Supp. 3d 924 (E.D. Cal. 2018) .....................................................14

v

*Whitsitt v. California*
   2022 WL 1050297 (E.D. Cal. Apr. 7, 2022) ..............................................................5

**Federal Statutes**

28 U.S.C. § 1367(c)(3)...............................................................................................15

28 U.S.C. § 1447(c) ..................................................................................................15

**San Francisco Statutes, Codes & Ordinances**

San Francisco Charter § 4.127 ...................................................................................9

San Francisco Charter § 6.105 ...................................................................................9

Reply in Support of Motion to Dismiss
Case No. 22-cv-05541-JST

n:\lit\li2022\230184\01638161.docx

# **REPLY**

Plaintiffs' Opposition demonstrates the extreme and unsupported nature of their claims, which start from the principle that every rule of EM supervision with potential constitutional implications must be discussed verbatim, out loud, with the court to be enforced by the San Francisco Sheriff's Office ("SFSO"). If Plaintiffs are correct, courts could not—after considering a defendant's individual circumstances—set outer boundaries for necessary constitutional waivers and delegate creation of more specific rules to agencies charged with administering supervision programs. Disgruntled defendants could renegotiate the terms of their release not by presenting arguments to the criminal court that set those terms, but by bringing separate civil proceedings. These propositions run counter to decisions requiring defendants to present these types of disputes to the criminal court in the first instance and then through state habeas procedures if necessary, and decisions allowing courts to delegate administration of pretrial and post-trial supervision.

SFSO promulgates the EM Program Rules in accordance with the criminal court's EM Orders via a constitutionally valid delegation. Criminal Defendant Plaintiffs admit they were informed of and signaled consent to the program rules multiple times before they left the EM Program enrollment office and after the court appointed an attorney to represent them. EM Program Rules 5 (four-way search condition) and 13 (sharing of GPS location data) comport with the authority the court delegated to SFSO and relate to the goals of EM. The EM Order Plaintiffs attached as Exhibit A to the Complaint reflects that authority. Criminal Defendant Plaintiffs' underlying charges, which are properly subject to judicial notice, matter to the Court's inquiry because state law required the criminal court to consider this information when it determined what pretrial release conditions applied to Criminal Defendant Plaintiffs and the serious and violent nature of their felony charges show why Rules 5 and 13 relate to their enrollment in the EM Program. Plaintiffs cannot ask this Court to second guess the criminal court's orders without presenting it with the same facts the criminal court assessed.

The EM Order fairly contemplates Rules 5 and 13 for purposes of Fourth Amendment and constitutional privacy analyses. The four-way search condition ensures law enforcement officers, including from SFSO and SFPD, can confirm criminal defendants' compliance with the terms of their release, for example, avoiding the use of drugs or possessing weapons. And provision for sharing GPS

1

data permits SFSO to provide location data from EM Program participants to other law enforcement agencies who request the information as part of ongoing criminal investigations to ensure that participants comply with the terms of their pretrial release and facilitate identifying and arresting participants who commit crimes while on EM. SFSO has a heightened need to share GPS location data with SFPD given the division of responsibilities between SFSO and SFPD set forth in San Francisco's Charter. Supervision of defendants charged with serious, violent felonies such as domestic violence likewise presents an increased need to share GPS data efficiently because these defendants' alleged victims are not strangers but rather people with whom the defendants had sustained relationships.

In addition to the other defects with Plaintiffs' claims, the City and County of San Francisco ("City") is not an appropriate defendant for their attempt to change the interpretation of state criminal court orders directing action by SFSO, and California's taxpayer standing statute does not make Taxpayer Plaintiffs' claims about others' criminal proceedings cognizable.

All facts the Court needs to dismiss Plaintiffs' claims are included in the Complaint, including the attached exhibits, and court documents properly subject to judicial notice. Accordingly, Defendants request the Court grant their Motion to Dismiss.

## I.     Argument

### A.     Criminal Defendant Plaintiffs Have Raised Their Claims in the Wrong Forum.

Criminal Defendant Plaintiffs try to repackage Defendants' argument that Plaintiffs have brought their claims in the wrong forum as limited to abstention. But Defendants' argument is not primarily about abstention doctrines and is instead about forum requirements—enforced in both state and federal courts—channeling claims about interpretation of, and challenges to, criminal court orders to the courts entering those orders. Although Plaintiffs' case implicates both federal-state comity as in *Younger* and the dividing line between federal habeas and § 1983 claims as in *Heck*, the cases Defendants cited, and to which Plaintiffs did not respond, rely on neither doctrine. Plaintiffs ask the Court to let them challenge SFSO's understanding of court orders without presenting that issue to the criminal court in the first instance. The Court should reject Plaintiffs' approach.

#### 1.     Criminal Defendant Plaintiffs Failed to Exhaust Required State Processes.

As the Supreme Court explained in *Stack v. Boyle*, 342 U.S. 1 (1951), the initial "proper

2

procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the Court of Appeals from an order denying such motion." *Id.* at 6. A challenge to purportedly unlawful conditions of release does not differ analytically from a challenge to a purportedly unlawful bail amount. As discussed in the Motion, the criminal court decides on the least restrictive conditions for release satisfying statutory standards. Cal. Penal Code §§ 1270.1(c), 1320.18, 1320.20(e)(1). To be eligible for release, a defendant must sign a release agreement promising "to obey all reasonable conditions imposed by the court." *Id.* § 1318(a)(2). Especially given defendants' agreement, the criminal court is in the best position to determine if and when there is no further need for EM or a Fourth Amendment waiver. *See United States v. Aviles*, 229 F. Supp. 3d 1039, 1044 (N.D. Cal. 2017); ECF No. 22-5 ¶ 7 (reflecting Simon taken off EM). Plaintiffs' decision to file state and federal putative class claims about interpretation of state criminal court orders improperly invites the Court to insert itself "in such sensitive state activities as administration of the judicial system." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992) (not cited or distinguished in the Opposition).

Plaintiffs' formulation of their claims also ignores state habeas exhaustion requirements. As *Stack* explained, habeas relief may be available after adjudication of appeals from a motion to adjust pretrial release conditions. 342 U.S. at 6. Following *Stack*, courts reject attempts to bring constitutional challenges about pretrial detention under § 1983 because of the availability of habeas petitions. *See Hirt v. Jackson County*, No. 1:19-CV-00887-AC, 2020 WL 3104502, at *4 (D. Or. June 11, 2020) (cited in Motion with no response from Plaintiffs). Criminal Defendant Plaintiffs are subject to the Superior Court of California, San Francisco County's Local Rule providing that habeas "[m]atters relating to all criminal proceedings must be presented to the Supervising Judge." Cal. Super. Ct., S.F. Cnty., Local Rules, rule 16.12(A). They have not done so. Plaintiffs likewise have no response to *In re Brown*, 76 Cal. App. 5th 296, 301 (2022), *review denied* (June 22, 2022), in which the California Court of Appeal "elected to treat" a writ of mandate petition by a pretrial criminal defendant "as a petition for writ of habeas corpus" because a habeas petition "is the appropriate vehicle for raising questions concerning the legality of a grant or denial of bail." *Id.*; *see In re Estevez*, 165 Cal. App. 4th 1445, 1461 (2008), *as modified on denial of reh'g* (Sept. 8, 2008) (highlighting the breadth of California habeas claims to reach even deficient prison medical care claims outside the scope of

3

federal habeas). Plaintiffs cite *Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018), as to *Younger* abstention, but ignore that the requirement for exhaustion of state remedies including state criminal court and habeas challenges satisfied in that case are not satisfied here. *Id.* at 767.

### 2.      Plaintiffs Arguments About Abstention Are Incorrect.

The doctrines Plaintiffs cite do not affect the need for Criminal Defendant Plaintiffs to present their claims to the criminal court first, instead reflecting additional failures in Plaintiffs' claims.

To the extent the decisions above requiring resort to motions to modify conditions of release and exhaustion of state habeas procedures turn on the distinctions in *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Preiser v. Rodriguez*, 411 U.S. 475 (1973), despite using a different analysis and citing different authorities, Plaintiffs are incorrect that the claims in this case survive the *Heck* bar. Unlike the method-of-execution relief sought in *Nelson v. Campbell*, 541 U.S. 637 (2004), the relief Plaintiffs seek here "would necessarily prevent [SFSO] from carrying out" the criminal court's conditional release orders—relief that is *Heck* barred. *Id.* at 647. While the plaintiffs' claims in *O'Donnell v. Harris County*, 321 F. Supp. 3d 763 (S.D. Tex. 2018), challenged the broad process for setting bail amounts rather than interpretation of court orders, *id.* at 777, Plaintiffs here challenge SFSO's implementation of court orders based on individualized findings. And nothing in *Teutscher v. Woodson*, 835 F.3d 936 (9th Cir. 2016), a decision from a civil employment discrimination case holding the plaintiffs could not receive duplicative remedies, *id.* at 957-58, affects the need for Criminal Defendant Plaintiffs to present claims about pretrial release as described here.

With respect to *Younger* abstention—an independent basis for dismissal—Plaintiffs' assertions of waiver or that *Younger* does not apply to individualized pretrial release determinations are likewise incorrect. The out-of-circuit district court decisions Plaintiffs' cite are contrary to the principle that "a state does not waive the comity and federalism interests undergirding *Younger* by invoking the jurisdiction of the federal courts." *Dowden v. City of Sacramento*, 40 F. Supp. 2d 1146, 1152 (E.D. Cal. 1999) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 626 (1986)); *see Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 796, 800 (9th Cir. 2001) (declining to find forfeiture of *Younger* abstention even where government stipulated to stay state proceedings pending resolution federal case). The Supreme Court has held that a state may waive the

4

right to raise *Younger* abstention where the government "expressly urge[s] . . . the District Court to proceed to an adjudication of the constitutional merits." *Dayton Christian Schs.*, 477 U.S. at 626. Here, although Defendants have addressed the constitutional merits, they ask the Court to conclude as a threshold matter that Criminal Defendant Plaintiffs have brought their challenges in the wrong forum. *See* Mot. at 9-13.

This case satisfies the requirements for *Younger* abstention. Plaintiffs' interpretation of *Arevalo* as holding that pretrial release decisions are not subject to *Younger* abstention—for which they cite no other law—contradicts several decisions interpreting *Arevalo* and *Younger* to require abstention in the pretrial detention and release context, with many also highlighting the lack of state criminal court exhaustion discussed above. *See Lazarus v. Baca*, 389 F. App'x 700 (9th Cir. 2010) (excessive bail habeas claim subject to *Younger* abstention); *Slater v. Thomas*, 100 F.3d 944 (2d Cir. 1996) ("Furthermore, the protective order stands as a condition of Slater's pretrial release in the state criminal proceedings. She therefore cannot contest the constitutionality of the protective order statute without running afoul of the federalism and comity concerns enunciated in *Younger*[.]"); *Whitsitt v. California*, No. 2:21-CV-02019-JDP (HC), 2022 WL 1050297, at *1 (E.D. Cal. Apr. 7, 2022) (citing *Arevalo* and holding abstention required), *report and recommendation adopted*, 2022 WL 2182178 (E.D. Cal. June 16, 2022); *Eggleson v. Pierce Cnty. Super. Ct.*, No. 3:22-CV-5322-JLR-DWC, 2022 WL 1468817, at *2 (W.D. Wash. May 10, 2022) (revocation of pretrial release subject to *Younger*); *Robinson v. Sniff*, No. EDCV 09-0033-DDP (RC), 2009 WL 1037716, at *1 (C.D. Cal. Apr. 17, 2009) (excessive bail claim subject to *Younger*). Despite the applicability of both the *Heck* bar and *Younger* abstention, the Court does not need to reach either if it grants dismissal based on Criminal Defendant Plaintiffs' decision not to present their claims to the state criminal court in the first instance.

**B.    Plaintiffs Cannot Succeed on Their Underlying Claims.**

**1.    Program Rule 5 and 13 are Consistent with the Fourth Amendment and California Search and Seizure Protections.**

Plaintiffs' rest their Fourth Amendment argument on *United States v. Scott*, 450 F.3d 836 (9th Cir. 2006), without addressing the aspects of the decision Defendants highlighted in their motion that show why the decision is not controlling here. *Scott* considered whether probable cause was

required to search an individual released on his own recognizance awaiting trial. *Id*. at 865. The Nevada case concerned a defendant who was required, as a condition of his release, to consent to random drug testing and to having his home searched for drugs at any time. There was no evidence "that the conditions imposed were the result of findings made after any sort of hearing." *Id*. The Ninth Circuit recognized that the government "may sometimes condition benefits [such as being released from custody] on waiver of Fourth Amendment rights," but held the search was unreasonable because the government failed to present any evidence that the court considered the particulars of the plaintiff's situation in reaching its order. *Id*. at 867.

Here, the criminal court provided the individualized hearing and consideration missing from *Scott*. Not all individuals on pretrial release in California are subject to the challenged EM Program Rules. Plaintiffs admit some criminal defendants are released on their own recognizance while others are released subject to conditions, and only a subset of those released subject to conditions are released with the condition of EM. Compl. ¶¶ 14, 16. The EM Program Rules apply in the limited cases where the court has identified participation in the program as part of its release order after considering the defendant's unique case. It makes this determination following a hearing, *id*. ¶ 18, after receiving an individualized public safety assessment from the San Francisco Pretrial Diversion Project, *id*. ¶ 14, and consistent with statutory provisions that require the court to assess pretrial release conditions on an individualized basis. *See* Cal. Penal Code §§ 1270, 1270.1. The transcripts for which Plaintiffs seek judicial notice show the court in fact considered the unique circumstances of the Criminal Defendant Plaintiffs' charges, background, and other relevant context before ordering release on EM. ECF Nos. 34-2 (Simon), 34-4 (Barber), 34-5 (Bonilla).

Thus, unlike *Scott*, the record even at the motion to dismiss stage here establishes that the court was not ordering EM as a condition of pretrial release without a hearing or individualized consideration, the problematic features identified in *Scott*. The more closely analogous authority is *In re York*, 9 Cal. 4th 1133, 1153 (1995), where the California Supreme Court held that a pretrial defendant is constitutionally subject to search conditions "if he or she consents to their imposition, in exchange for obtaining OR release," as Criminal Defendant Plaintiffs did here. *Id*. at 1149-50. In so holding, *York* rejected "the flawed premise that a defendant who seeks OR release has the same

reasonable expectation of privacy as that enjoyed by persons not charged with any crime." *Id.* at 1149.

Plaintiffs argue that the criminal court could not have intended Rules 5 and 13 to apply in the cases where it ordered EM, alleging "there is no record evidence that the Court itself is aware of—let alone has approved—the content of the Sheriff's EM Program Rules" when it ordered EM. Compl. ¶ 18. Plaintiffs do not support this conclusory allegation with any factual specifics, even on information and belief. The Supreme Court has found this kind of "threadbare recital[]" inadequate to survive a motion to dismiss. *Ashcroft v Iqbal*, 556 U.S. 544 (2007). The allegation is also implausible given that the EM Order is a shared document between the court and SFSO, Compl., Ex. A, and because Rules 5 and 13 relate to the goals of EM, which Plaintiffs allege are ensuring future court appearances and ensuring public safety. *Id.* ¶ 17. Criminal Defendant Plaintiffs are all charged with felony domestic violence and assault with a deadly weapon. Potentially sharing their location data with other law enforcement officers who affirm they seek it as part of an ongoing criminal investigation helps to keep victims safe and enforce stay-away orders. This need exists in all cases where EM is ordered, but is especially important in cases of intimate partner violence, which have a high rate of recurrence. The four-way search condition also ensures that law enforcement officers are able to confirm whether the defendants are complying with their terms of release, such as prohibitions on carrying illegal weapons, which is a condition of EM Plaintiffs do not challenge. *Id.*, Ex. B (Rule 7).

Plaintiffs' Fourth Amendment claim relies on the assumption that a pretrial criminal defendant has the same expectations of privacy as a member of the general public. Not only does this ignore the relevant case law, but it also ignores the facts as alleged in the Complaint, which show that the Criminal Defendant Plaintiffs' conduct and the court's orders diminished their reasonable expectations of privacy. *See also Maryland v. King*, 569 U.S. 435, 462 (2013) (recognizing serious felony arrestees' diminished reasonable expectation of privacy).

Plaintiffs assert that the Fourth Amendment waivers reflected in the Court's EM Orders, the EM Program Rules they initialed, and the EM contract they signed are not valid because they never "waived nor consented to a generalized, blanket waiver of all their Fourth Amendment rights before the Superior Court," Opp. at 7:5-6, and their consent to SFSO paperwork was invalid because it was "extracted in change for pretrial release." *Id.* at 8:7-8. This is incorrect on both counts. First, the EM

Order indicates the defendants waived their Fourth Amendment rights, regardless of whether the waiver occurred in or out of court. Compl., Ex. A. Plaintiffs attached the EM Order to their complaint and cannot disclaim it now. Second, if the Court accepted Plaintiffs' argument regarding the EM Program Rules and EM Contract, no pretrial releasee could ever validly consent to the terms of their release because acceptance of those terms would always be in the alternative to pretrial incarceration. By statute, a defendant cannot be released OR unless they sign a release agreement, which includes a promise "to appear at all times and places, as ordered by the court," and "to obey all reasonable conditions imposed by the court." Cal. Penal Code § 1318. Plaintiffs' argument about inadequate consent would invalidate the very pretrial release agreement California law requires to authorize release in lieu of pretrial detention. Criminal Defendant Plaintiffs' repeated consent to a Fourth Amendment waiver is unambiguously relevant to the Fourth Amendment analysis as shown by the cases Defendants cited and Plaintiffs ignored. *See Norris v. Premier Integrity Sols., Inc.*, 641 F.3d 695, 699 (6th Cir. 2011); *United States v. Smith*, 414 F.2d 630, 636 (5th Cir. 1969), *rev'd as to other defendant on unrelated grounds sub. nom. Schacht v. United States*, 398 U.S. 58 (1970).

Plaintiffs' final citation to *U.S. v. Lara*, 815 F.3d 605 (9th Cir. 2016), for the proposition that a reasonable expectation of privacy considers whether the defendant was "unambiguously informed" of the search condition, further cuts against their argument because Criminal Defendant Plaintiffs were unambiguously informed of Program Rules 5 and 13. Regardless of whether Criminal Defendant Plaintiffs understood the EM Order to encompass Rules 5 and 13, they cannot credibly argue the EM Program Rules they initialed or the EM Contract they signed—which included Rules 5 and 13 verbatim—failed to inform them of the content of those rules. *Lara* concerned the question of whether an agreement to permit the search of one's "person and property, including any residence, premises, container or vehicle," included permission to search one's cell phone. *Id*. at 610. The ambiguity was between the rule itself and the search that was performed. No such ambiguity exists here because no search has been performed. Plaintiffs challenge the EM Program Rules directly, not whether any particular search exceeded the scope of the rules.

2.      **Program Rule 5 and 13 are Consistent with the California Constitution's Right to Privacy.**

Plaintiffs do not dispute that the collection of GPS location data during the period of their EM is appropriate. Their contention is that the location data collected must be expunged as soon as an individual's criminal case concludes and cannot be shared with any other law enforcement agency absent a warrant. Their claims fail.

Regarding data sharing, Plaintiffs incorrectly argue that, under Rule 13, SFSO "claims the authority to share [GPS location data] freely with any member of law enforcement." Opp. at 21:21-22. As pled in the Complaint, SFSO's sharing of GPS location data is limited only to other law enforcement officers who submit a written Electronic Monitoring Location Request form, and sign the form representing that they are "requesting this information as part of a current criminal investigation. Compl. ¶ 54; *id.*, Ex. E. Any law enforcement officer who falsified information as part of a request would be liable under the California Penal Code for putting false information into a police report. Cal. Penal Code § 118.1. Plaintiffs have identified no case that would support preventing SFSO from sharing information with another law enforcement agency so long as SFSO validly possesses the data.

Plaintiffs' interpretation of the EM Order as contemplating that any sharing of GPS location data requires a warrant also ignores the unique relationship between SFSO and SFPD based on San Francisco's Charter. S.F. Charter § 4.127 (SFPD responsibilities); *id.* § 6.105 (SFSO responsibilities). SFPD is not the only law enforcement agency with whom SFSO is permitted to share GPS location data. But if Plaintiffs succeed, these two agencies, which share overlapping jurisdictions and divided law enforcement responsibilities, would be prohibited from coordinating on law enforcement efforts.

Defendants demonstrated that courts permit the sharing and retention of extensive information for law enforcement purposes. Mot. at 25:19-27:21. *Center for Genetics & Society v. Bonta*, No. A159432, 2021 WL 2373436 (Cal. Ct. App. June 10, 2021), an unpublished decision Plaintiffs cite, invites no concerns with that analysis because it involved a law allowing collection and retention of DNA from individuals who had never been charged with a criminal offense. *Id.* at *1. By the time the court orders any defendant onto EM, the defendant has already been charged. *See People v. Roberts*, 68 Cal. App. 5th 64, 109 (2021) (rejecting California privacy claim—along with all other challenges—

9

about collection of DNA from arrestees even when no charges filed), *as modified on denial of reh'g* (Sept. 17, 2021), *review denied* (Nov. 10, 2021). Plaintiffs also ignore cases such as *ACLU Foundation v. Superior Court*, 3 Cal. 5th 1032, 1044 (2017), where the California Supreme Court raised no concerns regarding the sharing among law enforcement agencies of data even about ordinary individuals. Plaintiffs argue *ACLU Foundation* concerned privacy intrusions of "even less significance," Opp. at 21:15, but dismiss the case too soon. License plate scanners track location information—the same kind of data captured by GPS—only via the nominal additional step of using DMV information to tie an individual to a license plate number. The fears Plaintiffs cite from Justice Sotomayor's concurrence in *United States v. Jones*, 565 U.S. 400, 415 (2012), concerned GPS monitoring of ordinary individuals, not pretrial criminal defendants in an EM program. These concerns apply with far less force in the pretrial EM supervision context. Although Plaintiffs highlight cases discussing the information contained in GPS location data, none of those cases hold GPS location data is entitled to greater privacy protection than the "heightened privacy interests in the sensitive information that can be extracted from a person's DNA." *People v. Buza*, 4 Cal. 5th 658, 689 (2018). And the Court should not afford it any greater protection here.

### 3. The Plain Language of the Court's EM Order Attached to the Complaint Defeats Plaintiff's Separation of Powers Claim

In their brief separation of powers argument, Plaintiffs ignore the decisions cited by Defendants, which establish that California's separation of powers doctrine "permits actions of one branch that may 'significantly affect those of another branch,' so long as they do not 'defeat or materially impair' the inherent powers of that other branch," Mot. at 21:26-22:2, and incredibly argue that "there exists no legal mechanism for EM releasees to appeal the Sheriff's Program Rules to the Superior Court in their criminal cases" because the Sheriff "is not a party to the underlying prosecution." Opp. at 17:15-19. This circular argument is too strained to support Plaintiffs' opposition and is contradicted by other criminal defendants' unsuccessful challenges to EM Program Rules in their criminal cases. *See People v. Ryan Waer*, S.F. Super. Ct. Case No. CI-21001863. The parties agree that the criminal court can and should set the outer bounds of a criminal defendants' conditions of pretrial release, which the court does through its EM Orders. No one is enrolled in EM absent a

10

court order. The dispute here is not about whether the EM Order ought to set the boundaries of the EM Program, but whether in practice the EM Program Rules in fact exceed that delegated authority (which, as demonstrated above, they do not). In administering the EM Program, SFSO is bound by any clarification or amendment to the EM Order the court issues because the court's orders are the source of SFSO's authority. Thus, criminal defendants who successfully ask the criminal court to modify their pretrial release provisions (as Barber did at least twice) have a remedy. ECF Nos. 25-4, 25-5.

The cases Plaintiffs cite are irrelevant because none prevent the judiciary from delegating administration of its EM Program, which is what the criminal court's EM Orders show the Superior Court has done here. The language of the EM Order attached to the Complaint, is clear: "By checking boxes below, the Court will indicate what supervision the San Francisco Sheriff's Office (SFSO) will employ and the expectations the Court has of the defendant. By signing these instructions and affixing a seal, the Court indicates that the defendant has waived their Fourth Amendment rights and understands the restrictions ordered by the Court. . . . All participants on pre-trial electronic monitoring shall obey all orders given by any SFSO employee(s) or contract service provider(s)." Compl., Ex. A. Plaintiffs allege that despite the language of the court's order they have not in fact waived their Fourth Amendment rights during their criminal hearing. *Id.* ¶ 18. Taking Plaintiffs' allegations as true, their concern is with the court, which they allege has entered incorrect orders, not with SFSO, which the court has charged with enforcing those orders.

### 4.     Plaintiffs' Procedural Due Process Claim Still Fails.

Plaintiffs correctly abandoned any substantive due process claim, Opp. at 18:24-25, and still have identified no viable procedural due process challenge. Plaintiffs' due process argument presumes no court has made an individualized finding of the necessity of, and consent to, a Fourth Amendment waiver in ordering a defendant onto EM. But Plaintiffs cannot isolate SFSO's procedures from those of the criminal court. *See* Compl. ¶¶ 15-19; *id.*, Ex. A. Plaintiffs do not allege any criminal defendant has been asked to agree to a four-way search condition without a judicial finding of a Fourth Amendment waiver through its EM Order. They also do not allege any criminal defendant has been asked to agree to Program Rule 13 without a judicial finding of the necessity of EM and an agreement to follow SFSO orders. SFSO's discretion (and obligation) to develop Program Rules based on the

11

court's orders is consistent with due process. *See People v. Kwizera*, 78 Cal. App. 4th 1238, 1240 (2000) (upholding grant of discretion to probation officer to set reasonable program rules).

Recognizing that the Superior Court is not a party to this case, Plaintiffs repeatedly disclaim any grievance with the Superior Court's procedures. *See, e.g.*, Opp. at 17:23-24 ("Plaintiffs do not in this case take issue with the Superior Court's process"), 22:25 ("nor do they take issue with any part of the Superior Court's orders"). These disclaimers render irrelevant Plaintiffs' contention that "Plaintiffs neither waived nor consented to a generalized, blanket waiver of all their Fourth Amendment rights before the Superior Court" because of the plain language in the court's EM Order. Opp. at 7:5-6.

Plaintiffs also minimize the important role of criminal defense attorneys in their clients' cases. In the context of plea bargaining, the Supreme Court has explained, "[d]efendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *see United States v. Wagner*, 834 F.2d 1474, 1483 (9th Cir. 1987) ("'It is primarily the responsibility of the defendant's counsel, not the trial judge, to advise the defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so.'" (citation omitted)). Bonilla's counsel represented to the court that his client was waiving "further advisement of rights." ECF No. 34-5 at 3:1. This waiver by his defense counsel prevents any claim based on the court's failure to put a waiver on the record.

Still other criminal defendants—assisted by counsel—have unsuccessfully petitioned the criminal court to modify Rule 5, which prevents Plaintiffs' facial challenge here. In *People v. Ryan Waer*, S.F. Super. Ct. Case No. CI-21001863, the criminal court overruled the defendant's challenges to the four-way search condition, and the Court of Appeal and California Supreme Court rejected a writ petition and petition for review filed by the defendant. *See* Order Denying Petition for Review, *In re Ryan Waer*, No. S269188 (Cal. S. Ct. July 21, 2021); Order Summarily Denying Petition, *In re Ryan Waer*, No. A162548 (Cal. Ct. App. May 27, 2021).

Plaintiffs' argument about an asserted "*per se* violation of due process," Opp. at 19:3-12, allowing them to evade the due process analysis in *United States v. Salerno*, 481 U.S. 739 (1987), ignores the criminal court's individualized findings as to each criminal defendant. Although Plaintiffs

12

assert SFSO "determines when Rules 5 and 13 apply," Opp. at 19:5, that contradicts their own

allegations that the court must first determine the necessity of EM and the Fourth Amendment waiver,

Compl. ¶¶ 16-18. Virtually none of the cases Plaintiffs cite on procedural due process involve criminal

courts or defendants.[1] And none of the cited decisions addressing criminal proceedings found a due

process violation following a court order conditioning release on a Fourth Amendment waiver and

enrollment in the EM Program Rules after an individualized inquiry into the defendant's charges, prior

legal involvement, and other factors.[2] None involved repeated in-court and out-of-court agreements by

criminal defendants. Compl. ¶¶ 19, 25-27; *id.*, Exs. A-C. The cited cases emphasize, by their

significant distinctions from this case, that Plaintiffs' due process challenge to a typical court-ordered

supervision arrangement fails as a matter of law.

Plaintiffs' alternative analysis under what they call "the usual due process interest balancing"

fares no better. They appear to concede that, if *Salerno* applies—which it does—they have no viable

federal due process claim. Opp. at 19:22-23 (arguing for application of California's "more permissive

standard for facial due process challenges"). In any event, both the criminal court's procedures for

findings and consent and defendant's repeated affirmance of consent to SFSO exceed those approved

in *Salerno*. Mot. at 15:5-22. Plaintiffs make no effort to distinguish *York*'s rejection of federal and

state due process challenges by pretrial releasees, including to a suspicionless search condition, and *In

re Humphrey*'s description of electronic monitoring as a favorable alternative to bail from a due

---

[1] *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) (termination of public assistance); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1222 (9th Cir. 2020) (high school students); *Morongo Band of Mission Indians v. State Water Res. Control Bd.*, 45 Cal. 4th 731, 741 (2009) (employees of a single agency brought enforcement proceedings and adjudicated those proceedings); *Haas v. County of San Bernardino*, 27 Cal. 4th 1017, 1035 (2002) (ad hoc hiring and payment of hearing officer). *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & Mc Donnell, Inc.*, 787 F.2d 128, 136 (3d Cir. 1986) (adjudicator's fiduciary duties), *abrogated by Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 620 n.13 (1993).

[2] *Ford v. Wainwright*, 477 U.S. 399, 416 (1986) (holding unconstitutional the unreviewable determination of sanity for capital punishment by state executive without judicial involvement); *In re Murchison*, 349 U.S. 133, 136 (1955) ("secret 'one-man grand jury' proceedings" followed by public contempt proceedings before the same judge violated due process); *Johnson v. United States*, 333 U.S. 10, 14 (1948) (addressing Fourth Amendment warrant exception, not due process); *United States v. Gardner*, 523 F. Supp. 2d 1025, 1032 (N.D. Cal. 2007) (*rejecting* due process challenge to EM imposed uniformly, without judicial findings, under the Adams-Walsh Act); *People v. Ramirez*, 25 Cal. 3d 260, 264 (1979) (no judicial findings or access to basis for agency determinations).

process perspective. Mot. at 15:26-16:6 (citing *In re Humphrey*, 11 Cal. 5th 135, 152, 154 (2021); *York*, 9 Cal. 4th at 1153). The Court should dismiss Plaintiffs' due process claims.

### C.      The City Is Not a Proper Defendant.

Plaintiffs do not and cannot deny that the Sheriff sometimes acts in a state capacity as opposed to a county capacity. Two respects in which a sheriff can act in a county capacity are in running the jail and—as Plaintiffs highlight—in investigating crimes. *See Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001). But neither of those is at issue in this case, which challenges SFSO's implementation of the criminal court's pretrial release orders. Here, SFSO enforces detention and release from detention under "state law" as interpreted by the criminal court who conditioned release on EM and a Fourth Amendment waiver "rather than under an administrative policy set by the sheriff." *Buffin v. City & County of San Francisco*, No. 15-CV-04959-YGR, 2016 WL 6025486, at *7 (N.D. Cal. Oct. 14, 2016). "The terms of bail and other conditions of pre-trial release are determined by superior courts – not the City – under California law." *Id.* at *5. And "district courts within this circuit have determined that California Sheriffs act as representatives of the state, and not a county, when enforcing state laws." *Welchen v. County of Sacramento*, 343 F. Supp. 3d 924, 934 (E.D. Cal. 2018) (cited without response from Plaintiffs); *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 839 (2004) (same). Furthermore, the City could have—but has not—created a pretrial EM program as allowed by statute, further clarifying that the in administering the EM Program the Sheriff acts through the power vested to him by the judiciary, and not the legislative branch. Compl. ¶¶ 58-59. Plaintiffs identify no case holding that a Sheriff acts in a county capacity in administering court-ordered pretrial EM release program. The Court should therefore dismiss the claims against the City.

### D.      Taxpayer Plaintiffs Claims Should Be Dismissed for Lack of Statutory Standing.

Taxpayer Plaintiffs' claims independently fail based on a lack of Article III and statutory standing. Plaintiffs concede that Taxpayer Plaintiffs' claims cannot proceed in federal court but urge the Court to remand the claims based on a lack of Article III standing rather than considering Defendants' statutory standing argument, which would resolve Taxpayer Plaintiffs' claims. Plaintiffs offer no response on statutory standing. The Court should consider Defendants' statutory standing argument and dismiss the Taxpayer Plaintiffs' claims on that basis. Such an approach is consistent

14

1    with precedent and benefits judicial efficiency.

2          Courts may decide statutory standing issues before Article III questions. *See Steel Co. v.*

3    *Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998). Contrary to Plaintiffs' assertions, 28 U.S.C.

4    § 1447(c) "requires remand of the entire 'case' when jurisdiction is lacking, not of particular claims

5    over which the court lacks jurisdiction." *Platt v. Moore*, 15 F.4th 895, 909 (9th Cir. 2021)

6    (distinguishing *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1194 (9th Cir. 2016)). Continued

7    justiciability of at least one claim in federal court means "§ 1447(c) does not apply, and the district

8    court's decision whether to remand to [state court] remains a matter of discretion under [28 U.S.C.]

9    § 1367(c)(3)." *Id.* Section 1367(c)(3), which provides a district court with discretion to decline to

10   exercise supplemental jurisdiction when it "has dismissed all claims over which it has original

11   jurisdiction," will apply here if the Court—as argued above—dismisses all federal claims by Criminal

12   Defendant Plaintiffs. Otherwise, it does not apply. Plaintiffs' decision not to address the Motion's

13   discussion of statutory standing should not deter the Court from addressing the issue. Judicial

14   economy favors resolving the statutory standing issue to avoid the potential creation of parallel state

15   and federal proceedings.

16         If the Court reaches Article III standing, it should dismiss rather than remand Taxpayer

17   Plaintiffs' claims. Plaintiffs cited cases remanding claims that the plaintiff would otherwise forfeit. *See*

18   *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1007 (9th Cir. 2001) (declining to decide if district court had

19   power to remand specific claims); *California v. N. Tr. Corp.*, No. CV 12-01813-DMG (FMOx), 2013

20   WL 1561460, at *5 (C.D. Cal. Apr. 10, 2013) (identifying risk of forfeiture of claims). Taxpayer

21   Plaintiffs have identified no basis on which they will forfeit any viable claims and have made no

22   showing that any alternative basis for remand exists.

23   **II.   Conclusion**

24         For the foregoing reasons, and those in the Motion, the Court should dismiss the Complaint

25   and dismiss claims against the City and those on behalf of Taxpayer Plaintiffs without leave to amend.

26

27

28

n:\lit\li2022\230184\01638161.docx

Dated:  November 7, 2022

DAVID CHIU
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
KAITLYN MURPHY
ALEXANDER J. HOLTZMAN
Deputy City Attorneys


By:  _____ /s/ Alexander J. Holtzman _____
ALEXANDER J. HOLTZMAN

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, PAUL
MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN
FRANCISCO SHERIFF

16