DAVID CHIU, State Bar #189542
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
KAITLYN MURPHY, State Bar #293309
ALEXANDER J. HOLTZMAN, State Bar #311813
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:      (415) 554-3867 [Murphy]
Telephone:      (415) 554-3999 [Holtzman]
Facsimile:      (415) 554-3837
Email:          kaitlyn.murphy@sfcityatty.org
Email:          alexander.holtzman@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
PAUL MIYAMOTO IN HIS OFFICIAL CAPACITY AS
SAN FRANCISCO SHERIFF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, DIANA BLOCK, AN INDIVIDUAL AND COMMUNITY RESOURCE INITIATIVE, AN ORGANIZATION,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>    Defendants. | Case No. 4:22-cv-05541-JST<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF NO. 30)**<br><br>Judge:          Hon. Jon S. Tigar<br>Courtroom:      Courtroom 6, 2nd Floor<br>Hearing Date:   January 19, 2023<br>Time:           2:00 p.m.<br><br>Trial Date:     Not Set |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

OPPOSITION ................................................................................................................1

   I.    Facts and Procedural History ..........................................................2

       A.    Relevant Factual Background ..............................................2

           1.    EM Orders and SFSO EM Program Rules ....................2

           2.    Variations Among Criminal Court Hearing Transcripts.................3

               a.    Variations in How Judges Conduct Arraignments and Pretrial Hearings ....................................................3

               b.    Variations in Whether a Criminal Defendant Chose to Request Modification of their Conditions of Release, Including Challenging the Four-Way Search Term ............3

               c.    Variations in Whether the Criminal Defendant Had Previously Participated in the EM Program......................4

           3.    Public Interest in Enforcing the EM Program Rules ......................5

           4.    Criminal Defendant Plaintiffs ........................................5

       B.    Procedural History ..............................................................5

   II.    Legal Standard ......................................................................6

   III.    Argument ............................................................................6

       A.    Commonality............................................................................7

       B.    Typicality ..........................................................................13

       C.    Numerosity..........................................................................15

       D.    Adequacy ..........................................................................16

       E.    Appropriateness of Class-Wide Injunctive Relief ....................17

   IV.    Conclusion ..........................................................................21

## <u>TABLE OF AUTHORITIES</u>

**State Cases**

*Hill v. Nat'l Collegiate Athletic Assn.*
  7 Cal. 4th 1 (1994) ...........................................................................................................12

*In re Ryan Waer*
  No. S269188 (Cal. S. Ct. July 21, 2021) ...................................................................4, 10

**Federal Cases**

*Abudllah v. U.S. Security Associates*
  731 F.3d 952 (9th Cir. 2013) ............................................................................................13

*Am. Express Co. v. Italian Colors Rest.*
  570 U.S. 228 (2013)...........................................................................................................6

*Bayer v. Neiman Marcus Grp., Inc.*
  861 F.3d 853 (9th Cir. 2017) ....................................................................................11, 14

*Bordenkircher v. Hayes*
  434 U.S. 357 (1978)..........................................................................................................11

*Boyd v. Bechtel Corp.*
  485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................................19

*Califano v. Yamasaki*
  442 U.S. 682 (1979)...........................................................................................................6

*CE Design Ltd. v. King Architectural Metals, Inc.*
  637 F.3d 721 (7th Cir. 2011) ...........................................................................................17

*Conde v. Open Door Mktg.*
  *LLC*, 223 F. Supp. 3d 949 (N.D. Cal. 2017)...................................................................15

*Crosby v. Soc. Sec. Admin.*
  796 F.2d 576 (1st Cir.1986)................................................................................................8

*Darjee v. Betlach*
  2018 WL 4214438 (D. Ariz. Sept. 5, 2018) ......................................................................8

*Don't Shoot Portland v. City of Portland*
  2022 WL 2700307 (D. Or. July 12, 2022).........................................................................9

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011) .............................................................................................6

*Equal Emp. Opportunity Comm'n v. Gen. Tel. Co. of Nw.*
  599 F.2d 322 (9th Cir. 1979), *aff'd*, 446 U.S. 318 (1980).............................................19

*Forman v. Data Transfer, Inc.*
    164 F.R.D. 400 (E.D. Pa. 1995) ..................................................................................8

*Foster v. City of Oakland*
    2007 WL 219796 (N.D. Cal. Jan. 29, 2007) ..............................................................16

*Gen. Tel. Co. of Southwest v. Falcon*
    457 U.S. 147 (1982) ..............................................................................................7, 13

*Gibson v. Local 40, Supercargoes & Checkers*
    543 F.2d 1259 (9th Cir. 1976) ..................................................................................20

*Halliburton Co. v. Erica P. John Fund, Inc.*
    573 U.S. 258 (2014) ...................................................................................................6

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) ....................................................................................13

*Harris v. Vector Mktg. Corp.*
    753 F. Supp. 2d 996 (N.D. Cal. 2010) ......................................................................16

*Hayes v. Wal-Mart Stores, Inc.*
    725 F.3d 349 (3d Cir. 2013) ...............................................................................16, 20

*Hernandez v. County of Monterey*
    305 F.R.D. 132 (N.D. Cal. 2015) ..............................................................................20

*Hodgers–Durgin v. de la Vina*
    199 F.3d 1037 (9th Cir. 1999) ..................................................................................14

*In re Hydrogen Peroxide Antitrust Litig.*
    552 F.3d 305 (3d Cir. 2008) .......................................................................................6

*In re Rail Freight Fuel Surcharge Antitrust Litig.*
    725 F.3d 244 (D.C. Cir. 2013) ....................................................................................6

*Jennings v. Rodriguez*
    138 S. Ct. 830 (2018) .........................................................................................12, 20

*Juarez v. Asher*
    2020 WL 5746875 (W.D. Wash. Sept. 25, 2020) ......................................................20

*Miller v. Gammie*
    335 F.3d 889 (9th Cir. 2003) ....................................................................................20

*Nguyen v. Kissinger*
    70 F.R.D. 656 (N.D. Cal. 1976) ................................................................................16

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2009) ............................................................................19, 20

iii

*Rolex Emps. Retirement Tr. v. Mentor Graphics Corp.*
  136 F.R.D. 658 (D. Or. 1991) ...................................................................................14

*Ruiz Torres v. Mercer Canyons Inc.*
  835 F.3d 1125 (9th Cir. 2016) .................................................................................15

*Sandoval v. County of Sonoma*
  2015 WL 4148261 (N.D. Cal. July 9, 2015), *aff'd*, 912 F.3d 509 (9th Cir. 2018).............12, 15

*Singh v. Google LLC*
  2022 WL 94985 (N.D. Cal. Jan. 10, 2022) ...............................................................14

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011)...........................................................................6, 8, 13, 17, 20

*Walters v. Reno*
  145 F.3d 1032 (9th Cir. 1998) .................................................................................13

**Federal Rules**

Fed. R. Civ. P. 23 ...........................................................................................................6

Fed. R. Civ. P. 23(a) ..................................................................................................6, 7

Fed. R. Civ. P. 23(a)(1) .................................................................................................15

Fed. R. Civ. P. 23(b) ..................................................................................................6, 7

Fed. R. Civ. P. 23(b)(2)...................................................................................6, 7, 17, 19

Fed. R. Civ. P. 23(b)(3)...................................................................................................19

**Other Authorities**

7A Mary Kay Kane, Federal Prac. & Proc. Civ. § 1763 (4th ed. 2022) .......................13

*Police Arrest Suspected Berkeley Hills Catalytic Converter Thief*
  KTVU (Nov. 3, 2022), https://www.ktvu.com/news/police-arrest-suspected-
  berkeley-hills-catalytic-converter-thief ...................................................................20

iv

**OPPOSITION**

In their filings, Plaintiffs Joshua Simon, David Barber, and Josue Bonilla ("Criminal Defendant Plaintiffs") along with Plaintiffs Diana Block and Community Resource Initiative ("Taxpayer Plaintiffs") paint a picture of criminal defendants and criminal court judges bamboozled by the San Francisco Sheriff's Office ("SFSO") with respect to supervision of criminal defendants released from custody on condition of enrollment in the Electronic Monitoring ("EM") Program. Plaintiffs assert that—without the knowledge or permission of the criminal courts—SFSO has imposed a four-way search condition (also sometimes referred to as a "1035 search condition"), allowed sharing of GPS location data with other law enforcement agencies, and retained GPS location data beyond the end of criminal defendants' cases, all in violation of the United States and California Constitutions. And Plaintiffs contend that their allegations are appropriate for class certification because nothing about the background of the individual criminal defendants released to the EM Program or what happens in the criminal court cases affects that constitutional analysis. As reflected in briefing on Defendants' Motion to Dismiss and Plaintiffs' Motion for a Preliminary Injunction (ECF Nos. 22, 24, 31, 33, 39-40), the law and facts do not support Plaintiffs' account. Even if Plaintiffs' claims as to some individuals had merit, Plaintiffs are not entitled to class certification.

Plaintiffs propose a single, undifferentiated class of all criminal defendants—past, present, and future—released subject to their participation in the EM Program, with Criminal Defendant Plaintiffs serving as class representatives. That proposed class definition is overbroad because it ignores the circumstances in criminal defendants' cases, which differ in important ways that undermine the potential for this litigation to produce common answers to key questions. It also ignores that Criminal Defendant Plaintiffs' claims have both unique strengths and weaknesses compared to those of their putative class members. Nor are Criminal Defendant Plaintiffs adequate representatives for the class they seek to certify. And no single injunction or declaration is appropriate for the proposed class as a whole given the constitutionally relevant variations among the proposed class members including, for example: (1) each defendant's history of contact with the criminal justice system, (2) the facts and circumstances of the defendant's charges, (3) whether the defendant has been placed on EM before, (4) what if any information their counsel had regarding the EM Program, (5) the colloquy at the

arraignment or preliminary hearing, and (6) whether the defendant has sought to modify the terms of release after the Court ordered participation in the EM Program. The proposed class is overbroad, and determining who should be in the class would require ongoing mini-trials on factually-intensive determinations that should lead this Court to decline to certify the class.

## I.    Facts and Procedural History

### A.    Relevant Factual Background

#### 1.    EM Orders and SFSO EM Program Rules

For criminal defendants arrested and initially booked into jail on charges, the San Francisco Superior Court considers appropriate conditions of release at an arraignment or other early pretrial proceeding. The court orders certain individuals remanded into the custody of SFSO awaiting trial. It orders others released on their own recognizance ("OR"), without any additional terms or conditions. It orders still others released OR with conditions. This case concerns the subset of criminal defendants released subject to the specific condition of participation in the EM Program. When the court orders an individual to participate in the EM Program as a condition of release, the court does so in an EM Order. ECF No. 22-15 at 15 (Ex. 4). The EM Order states that "By checking the boxes below, the Court will indicate what supervision the San Francisco Sheriff's Office (SFSO) will employ and the expectations the Court has of the defendant. By signing these instructions, the Court indicates that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." *Id*. The EM Order also states: "Defendants will adhere to the following court-ordered conditions of Pre-Trial Electronic Monitoring until the Court orders the removal of conditions. . . . All participants on pre-trial electronic monitoring shall obey all orders given by any SFSO employee[.]" *Id*.

SFSO administers the EM Program when it is ordered by the criminal court. There are no pretrial criminal defendants participating in the EM Program through SFSO absent a court order. Individuals who enroll in the EM Program initial the EM Program Rules, acknowledging their consent to, and understanding of, the terms and conditions of the Program. At issue in this case are Rules 5 and 13, which respectively state: "I shall submit to a search of my person, residence, automobile or property by any peace officer at any time," and "I acknowledge that my EM data may be shared with

2

other criminal justice partiers." *Id*. at 18 (Ex. 5). Program participants also sign an EM Program Contract containing substantially similar provisions.

2. **Variations Among Criminal Court Hearing Transcripts**

Even the small volume of criminal court orders and transcripts Defendants have collected so far, following Plaintiffs' filing of this lawsuit, show variations in (1) how judges conduct hearings assessing conditions of release, (2) the type of arguments criminal defendants present about conditions of release, and (3) whether criminal defendants have previously participated in the EM Program.

a. **Variations in How Judges Conduct Arraignments and Pretrial Hearings**

Criminal court arraignments and other pretrial hearings are conducted by several judges in San Francisco Superior Court based on department assignments by the presiding judge. Records from the hearings show that these judges have preferences for the way they conduct their hearings and prepare minute orders following the hearings. For example, hearing transcripts before Judge Marisa Chun show that she at least sometimes discusses a four-way search condition with criminal defendants on the record when ordering the defendant to participate in EM. Declaration of Kaitlyn Murphy in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Murphy Decl."), Ex. F at 16:14, 17:2-12 (defendant not ultimately released on EM). A minute order from Judge Christine Van Aken also shows that she ordered a criminal defendant to participate in EM and the order stated that the defendant "is subject to a warrantless search condition, as to defendant's person, property, premises and vehicle, any time of the day or night, with or without probable cause, by and peace, parole, or probation officer." *Id.*, Ex. E.

b. **Variations in Whether a Criminal Defendant Chose to Request Modification of their Conditions of Release, Including Challenging the Four-Way Search Term**

None of the putative class representatives have raised the EM Program Rules challenged in this litigation with the criminal court conducting their underlying criminal proceedings. But Simon at least twice requested the criminal court modify or reconsider pretrial release conditions other than the ones he challenges here. Other criminal defendants have unsuccessfully challenged their four-way search condition with the criminal court. As an example, the criminal trial court considered but overruled an

3

objection from Ryan Waer as to the four-way search condition in his case. *Id.*, Exs. B, C at 12 ("Over Waer's objection [Pet. Exh. D, 7:17-20, PE0050], respondent court ordered Waer released with a warrantless search clause of his home and vehicle."); *id.*, Ex. C, Pet'n Ex. C at 2 (briefing objecting to four-way search); *id.*, Ex. C, Pet'n Ex. D at 4:17-20 ("MS. RYBURN:· Your Honor, I object to the majority of what the People are requesting on multiple grounds. The PSA in this case recommends OR minimum, so defense request is that Mr. Waer be released OR."). Waer then challenged the criminal court's order regarding the four-way search condition by bringing an unsuccessful petition for habeas corpus challenging the holding. *Id.*, Ex. C at 2 (listing unconstitutionality of four-way search condition and unconstitutional conditions doctrine, among others, as issues presented). When the Court of Appeal rejected that petition, Waer filed an unsuccessful petition for review in the California Supreme Court. *See* Order Denying Petition for Review, *In re Ryan Waer*, No. S269188 (Cal. S. Ct. July 21, 2021).

Waer also successfully requested the criminal court remove him from the EM Program for a defined period of time during his pretrial release. *Id.*, Ex. D. At Waer's request, the court modified his conditions of pretrial release in the following way: "The San Francisco Sheriff's Department pre trial monitoring program to remove the electronic monitoring device work by the defendant from the dates 06-13-21 to 06/15/21. The defendant is permitted to leave the San Francisco Bay Area to travel to the Santa Cruz, California area during the period of 06-13-21 to 06-15-21 so that the defendant can participate in a job interview. The Court also orders that the electronic monitoring device be placed back on the defendant by the close of business on 06/15/21." *Id.*

### c.     Variations in Whether the Criminal Defendant Had Previously Participated in the EM Program

Some criminal defendants have been held to charge on multiple occasions and ordered to participate in EM more than once. For example, criminal defendant Michele Garabato has been placed on EM four times. Declaration of Lieutenant Philip Judson in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Judson Decl.") ¶ 4. And Garabato knows, based on at least a preliminary hearing in one of his cases, that his GPS data has been shared among law enforcement officers for law enforcement purposes. Murphy Decl., Ex. G at 11:8-14, 12:5-25; Judson Decl. ¶ 3(c)-

(d). In those circumstances, the criminal defendant choosing to participate in EM rather than be held in custody pending trial is already aware of and familiar with EM Program Rules 5 and 13.

### 3.    Public Interest in Enforcing the EM Program Rules

Defendants addressed the public interest in enforcing the EM Program Rules in their Opposition to Plaintiffs' Motion for a Preliminary Injunction. ECF No. 31 at 22-24. Since then, SFSO has identified additional incidents regarding criminal defendants placed on EM that further support the public interest in enforcing the challenged EM Program Rules. For example, SFSO's ability to share EM data with the Berkeley Police Department allowed that department to arrest an individual for a string of catalytic convert thefts, including one in which the suspect fired a gun at a witness. Judson Decl. ¶ 3(b). The arrest also led to the seizure of a ghost gun loaded with 15 rounds of ammunition and an additional 46 rounds of ammunition in the suspect's backpack. *Id.* In another instance, sharing of EM data with the San Francisco Police Department ("SFPD") allowed the SFPD to track a suspect casing homes in San Francisco and arrest him for a Berkeley home invasion and robbery, finding him in possession of burglary tools. Judson Decl. ¶ 3(a).

### 4.    Criminal Defendant Plaintiffs

Although each Criminal Defendant Plaintiff's case is ongoing, Simon and Barber are no longer enrolled in the EM Program and therefore are no longer subject to the four-way search condition contained in Program Rule 5. ECF No. 22-5 ¶ 7; Murphy Decl., Ex. A.

### B.    Procedural History

Plaintiffs filed their motion for a preliminary injunction on October 7, 2022, without filing a corresponding motion for class certification. ECF No. 22. Instead, Plaintiffs filed a Motion for Class Certification three weeks later on October 28, 2022, ECF No. 30, the same day Defendants' opposition to their preliminary injunction motion was due. ECF No. 29 (order setting briefing schedule). In Plaintiffs' reply brief supporting their Motion for a Preliminary Injunction, Plaintiffs argued they had now "moved for certification," recognizing that to the extent the Court denies their class certification motion, any injunction should extend only to the three Criminal Defendant Plaintiffs.

Plaintiffs seek to certify a class defined as: "[A]ll individuals who have in the past been, are currently, or will in the future be subject to the Sheriff's Electronic Monitoring Program Rules [for]

Pre-Sentenced Participants and/or San Francisco Sheriff's Dept. Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals." Mot. at 2. Plaintiffs propose Simon, Barber, and Bonilla as class representatives. Plaintiffs do not propose the Taxpayer Plaintiffs as putative class representatives.

## II.    Legal Standard

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). To depart from this general rule, a party seeking to certify a class must "affirmatively demonstrate" compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts "should not suppress doubt as to whether a Rule 23 requirement is met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321 (3d Cir. 2008).

The moving party bears the burden of satisfying each of Rule 23's requirements by a preponderance of the evidence. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). A class may be certified "only if 'the trial court is satisfied, after a rigorous analysis,'" that Plaintiffs met all the prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and one alternative condition of Rule 23(b). *Wal-Mart*, 564 U.S. at 350-51 (citation omitted). Allegations and argument will not suffice. Plaintiffs "must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

Because these requirements are "stringent," and "exclude most claims," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013), "certification is far from automatic," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013).

## III.    Argument

Plaintiffs seek certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Rule 23(a) provides that one or more members of a class may sue as representative parties *only if* (a) there are questions of law or fact common to the class, (b) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (c) the class is so numerous that joinder of all members is impracticable, and (d) the representative parties will fairly and adequately

protect the interests of the class. Fed. R. Civ. P. 23(a). These prerequisites are commonly known as the commonality, typicality, numerosity, and adequacy of representation requirements. The party moving for class certification bears the burden of showing each prerequisite is satisfied. *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). Plaintiffs enjoy no presumption of conformance with Rule 23(a). *Id.* ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable.").

In addition to satisfying all parts of Rule 23(a), plaintiffs seeking class certification must also satisfy one of the three parts of Rule 23(b). Rule 23(b)(2), under which Plaintiffs seek to proceed, permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Plaintiffs have not shown they entitled to class certification under Rule 23 based on the evidence gathered to date, which shows material dissimilarities among the proposed class members and between proposed class members and proposed class representatives Simon, Barber, and Bonilla. Criminal defendants' interactions with the criminal court are unique considering the facts of their charges and their criminal history, the information available to counsel, the arguments defense counsel made to the court, the analysis the court performed during the arraignment or pretrial hearing, whether the defendants have been placed on EM before, and any subsequent requests for modification the criminal defendant later requests. These individualized concerns prevent a finding of commonality or typicality. They also prevent a finding of numerosity because Plaintiffs' class as defined is overbroad and they lack any information about the size of a properly defined and narrowed class. Bonilla and Barber face additional shortfalls regarding their adequacy as class representatives given their misstatements to the Court thus far, and Simon and Barber face typicality shortfalls based on their lack of standing to challenge the four-way search condition to which they are no longer subject.

The risk of certifying an overbroad class here is heightened because it would result in a federal district court second guessing the reasoned, fact-based determinations of the California criminal court. Accordingly, the Court should deny Plaintiffs' motion for class certification.

### A.    Commonality

For purposes of the "commonality" requirement, "[w]hat matters to class certification . . . is not

7

the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350 (citation and internal quotation marks omitted). Plaintiffs propose that the common answers here will be resolution of their claims—that is, a determination of whether Defendants have committed constitutional violations. Mot. at 11-12; *see also* ECF No. 1-1 ¶ 65 (same). But Criminal Defendant Plaintiffs do not show by a preponderance of the evidence that there will be common answers to their claims if those claims have viability as a matter of law. Instead, their underlying claims rely on an analysis that considers the facts of each criminal defendant's unique situation.

"[C]ourts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff." *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403-04 (E.D. Pa. 1995). For example, a court refused to certify a class challenging the timing of resolution of disability claims "within a reasonable time" because the individualized circumstances of each proposed class member's claims made "class members impossible to identify prior to individualized fact-finding and litigation." *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 579-80 (1st Cir.1986); *Forman*, 164 F.R.D. at 404 (denying class certification because the plaintiff's "proposed 'common' questions [were] inherently individualized, requiring inquiry into the particular circumstances of each" incident). Similarly, in *Darjee v. Betlach*, No. CV-16-00489-TUC-RM (DTF), 2018 WL 4214438 (D. Ariz. Sept. 5, 2018), the court denied a renewed motion for class certification on the grounds of lack of commonality because "although the [software system used for determining medical benefits] seem[ed] to cause some of the erroneous benefit eligibility reductions, it appear[ed] the system create[d] errors in specific factual situations, but that it [was] not faulty as to every determination it assesses," such that the plaintiffs "putative class [was] overbroad." *Id.* at *9.

Plaintiffs have not shown that the constitutional issues they raise will result in common answers to the extent those claims do not fail as to all putative class members. As the court observed in *Don't Shoot Portland v. City of Portland*, No. 3:20-CV-00917-HZ, 2022 WL 2700307 (D. Or. July 12,

8

2022), "[t]he analyses for . . . Fourth Amendment claims are highly fact intensive." *Id.* at *10 (rejecting class certification based on a lack of commonality). If the Court accepts Plaintiffs' argument that the consents reflected in the EM Order, OR Release Agreement, signed and initialed EM Program Rules, and signed EM Contract are not necessarily effective, the balancing of reasonable expectations of privacy and government interests and analysis of special needs may depend on each defendant's particular criminal history, the information before the court, and the defendant's and counsel's unique colloquy with the criminal court about pretrial release. These different in-court colloquies for each criminal defendant affect whether a defendant will have a claim at all on Plaintiffs' theory and affect the unconstitutional conditions analysis. Thus, even to identify the potential class as appropriately defined, the parties and Court would be required to review the unique circumstances of each criminal defendant's case.

Whether putative class members have sought or received clarity on the applicable search condition from the court will vary by person. Such requests are not uncommon. Criminal Defendant Plaintiff Simon has at least twice requested the criminal court to modify or reconsider his pretrial release conditions, although he chose not to include the specific EM Program Rules at issue in this litigation as part of those motions. ECF Nos. 31-5, 31-6. To address class membership, the parties would be required to review each hearing transcript for every putative class member's underlying criminal case to determine if the individual has chosen to request clarification or modification of the challenged EM Program Rules.

At least some criminal court judges may choose to enter a four-way search condition on the record, out loud, with defendants placed on EM. *See* Murphy Decl., Ex. F at 16:14, 17:2-12 (defendant not ultimately released on EM). The discussion of a four-way search condition may also be reflected in the minute order from a hearing. *See* Murphy Decl., Ex. E (listing four-way search condition). Criminal Defendant Plaintiffs' declarations make clear the centrality of the absence of an on-the-record discussion of the four-way search condition to their view of the case. ECF No. 22-5 ¶ 3 ("Neither the judge nor anyone else in the courtroom told me about the specific rules or conditions I'd be required to sign."), 22-6 ¶ 5 ("The judge didn't say anything about what it would mean for me to be on an ankle monitor."), 22-7 ¶ 3 ("The judge told me that the electronic monitor was for the Sheriff to

know where I was but did not tell me anything else about the program or its rules."). Again, the only way to determine whether the criminal court judge discussed a four-way search condition in a particular putative class member's case would be to review the transcripts and court orders from the underlying criminal proceedings.

Most of the time, the in-court discussion of the four-way search condition does not prompt objections from the defendant or defense counsel. But sometimes it does, and the court then resolves those objections. For example, putative class member Ryan Waer objected in court to the four-way search condition the criminal court imposed in his case. Murphy Decl., Ex. C at 12 ("Over Waer's objection, respondent court ordered Waer released with a warrantless search clause of his home and vehicle." (citation omitted)); *id.*, Pet'n Ex. D at 4:17-20. The court considered and ultimately overruled Waer's objection and imposed the condition. *Id.*, Ex. C at 12; *id.*, Pet'n Ex. D at 7:1-3; Murphy Decl., Ex. B. Waer then brought an unsuccessful petition for habeas corpus in the Court of Appeal challenging the four-way search condition. Murphy Decl., Ex. C at 2 (listing unconstitutionality of four-way search condition and unconstitutional conditions doctrine, among others, as issues presented); Order Summarily Denying Petition, *In re Ryan Waer*, No. A162548 (Cal. Ct. App. May 27, 2021). Contrary to Plaintiffs' representations and selective attachment of exhibits, Waer objected generally to the four-way search condition before the trial court, the trial court found the four-way search condition was necessary, and Waer petitioned the Court of Appeal asserting the unconstitutionality of the four-way search imposed before seemingly narrowing his challenge in his California Supreme Court petition to searches extending to his electronic devices. *Compare* Murphy Decl., Ex. C at 2, *with* Reply on Preliminary Injunction Motion (ECF No. 39) at 9 ("For clarification, in fact, Waer challenged a specific condition authorizing search of his electronic devices, not the broader search clause authorizing search of his person, residence, and vehicle.").

Many criminal defendants arraigned in San Francisco are appointed and represented by experienced counsel who represent other criminal defendants placed into the EM Program and are therefore familiar with the challenged EM Program Rules. Whether or not the four-way search condition is discussed on the record during a criminal defendant's arraignment or preliminary hearing, defense counsel representing many or most putative class members may have spoken with their clients

10

about the EM Program Rules in preparation for the hearing, consistent with counsel's role in advising clients about their rights. *See, e.g.*, *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation."). Determining which putative class members received such advice from their criminal defense counsel presents another individualized inquiry.

Still other putative class members have been released conditional on participation in the EM Program repeatedly and so already know the Program Rules when they go before the judge seeking pretrial release on EM. For example, Michele Garabato has been placed on EM four times. Judson Decl. ¶ 4. From these enrollments, he was already familiar with challenged Program Rules 5 and 13 when he most recently agreed to participate in the EM Program. That factor is material to the putative class's state and federal claims. Thus, an assessment of the appropriately defined class would need to consider the prior EM history of each putative class member.

Plaintiffs' class definition furthermore sweeps in putative class members who lack commonality with others because they do not have standing to bring a Fourth Amendment claim. Putative class members no longer on EM are no longer subject to Program Rule 5 regarding the four-way search condition. Because they no longer face a "reasonably certain basis for concluding" they will face future injury from a search based on Program Rule 5, they lack standing to seek injunctive relief. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017). A request for declaratory relief does not create standing when individuals lack standing to pursue corresponding injunctive relief. *See id.* at 868.

Even if it were feasible to adjudicate these overbreadth issues to determine class membership of criminal defendants currently or previously on EM at the time of certification, the work of addressing class membership would continue. The parties and Court would need to conduct the above inquiries about facts underlying class membership on an ongoing basis given that Plaintiffs seek to certify a class including all future individuals released conditional on EM Program participation.

Plaintiffs' apparent theory of commonality resembles the one rejected in *Sandoval v. County of Sonoma*, No. 11-CV-05817-TEH, 2015 WL 4148261 (N.D. Cal. July 9, 2015), *aff'd*, 912 F.3d 509

11

(9th Cir. 2018). In *Sandoval*, the plaintiffs asserted the "Defendants' Fourth Amendment justifications for the warrantless thirty-day impoundments [of cars], as distinguished from the vehicle's initial seizure and removal from the street, will not turn on the individual circumstances underlying an officer's decision to seize the vehicle and remove it from the street." *Id.* at *8. *Sandoval* rejected this contention, and denied class certification including for lack of commonality, because the plaintiffs "continually fail[ed] to acknowledge that the circumstances of each impoundment and subsequent decision to release a vehicle are different in each case." *Id.* Similarly, here, Plaintiffs' argue the Fourth Amendment justifications for Program Rule 5 do not turn on individual circumstances underlying the criminal court's decision to include EM and a Fourth Amendment waiver as conditions of release. The Court should reach the same conclusion as *Sandoval* and reject that argument with respect to commonality for the Fourth Amendment claim.

Plaintiffs' other claims suffer from parallel commonality issues. Their constitutional privacy claims have the same individualized features as the Fourth Amendment claim considering all of the circumstances surrounding each criminal defendant's unique situation. *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994) ("The diverse and somewhat amorphous character of the privacy right necessarily requires that privacy interests be specifically identified and carefully compared with competing or countervailing privacy and nonprivacy interests in a 'balancing test.'"). As with the Fourth Amendment claim, that factual focus affects both the privacy interest and government interest sides of the constitutional balancing test, especially as the government interest may be heightened for protection of specific victims such as in domestic violence cases. *See id.* And even the extent of EM varies across Plaintiffs' putative class. For example, some defendants have successfully petitioned the criminal court to order SFSO to remove their EM devices for travel. Murphy Decl., Ex. D. The criminal court's discussion on the record of a search condition or sharing and use of EM data will likewise affect any due process or separation of powers claim against SFSO or the City. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) ("*Jennings*") ("'[D]ue process is flexible,' we have stressed repeatedly, and it 'calls for such procedural protections as the particular situation demands.'" (citation omitted)). For example, Garabato knew that the EM Program rules permitted sharing of his information among law enforcement agencies because one of his preliminary hearings involved a

discussion of the sharing of his EM data for law enforcement purposes . *See* Murphy Decl., Ex. G at 11:8-14, 12:5-25; *see also* Judson Decl. ¶ 3(c)-(d). Plaintiffs therefore fail to carry their burden to show commonality within their proposed class.

Class certification in the cases Plaintiffs cite was denied or else was not afflicted by the kinds of commonality issues described above. *Wal-Mart* held commonality was *not* satisfied because different putative class members had different workplace experiences relevant to their claims. *See Wal-Mart*, 564 U.S. at 359. So too, here, putative class members have different experiences in court, with counsel, and at SFSO's Community Programs Unit relevant to their claims. *Abudllah v. U.S. Security Associates*, 731 F.3d 952 (9th Cir. 2013), an employment case, affirmed a finding of commonality only after excluding alternative bases for a requirement that employees work through their meal breaks for lack of any evidence and isolating a single dispositive question applicable to all class members. *Id.* at 963. Plaintiffs cannot disregard differences across the class for the reasons above. *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998), included evidence of a blanket policy with respect to notice and very limited evidence of deviations from that policy. *Id.* at 1045. By analogy, the putative class might reflect commonality here if class members' public safety backgrounds and discussions in court and with counsel about search conditions and EM were identical or very nearly identical, which they are not. Finally, Plaintiffs cite the Wright & Miller Federal Practice and Procedure treatise, but the treatise accurately observes that "common questions [are] not found when the decision regarding the propriety of injunctive or declaratory relief turn[s] on a consideration of the individual circumstances of each class member." 7A Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1763 (4th ed. 2022). That is the case here, and the Court should therefore deny class certification.

## B.    Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The commonality and typicality inquiries "tend to merge." *Gen. Tel. Co.*, 457 U.S. at 158 n.13. Thus, the differences described above in Section III.A also demonstrate Plaintiffs have not met their burden with respect to typicality. In addition to the issues raised above with commonality, which also affect the typicality of Criminal Defendant Plaintiffs' claims compared to their putative

13

class, Criminal Defendant Plaintiffs' claims are atypical in at least two additional ways.

First, Criminal Defendant Plaintiffs' claims invite standing defenses stronger than those facing at least some of their putative class members. This is critical to the typicality analysis because "[t]he certification of a class is questionable where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or to a subclass." *Rolex Emps. Retirement Tr. v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991). Simon and Barber no longer have standing to pursue injunctive or declaratory relief regarding the four-way search condition to which they are no longer subject. *See* ECF No. 22-5 (Simon Decl.) ¶ 7; Murphy Decl., Ex. A (Minute Order in Barber's case); *Bayer*, 861 F.3d at 865, 868. They therefore cannot represent a class pursuing relief regarding the four-way search condition. *See Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."). With respect to their claimed right to destruction of their EM data, none of the Criminal Defendant Plaintiffs can serve as a class representative because none have had their GPS location data held beyond the conclusion of their underlying criminal case. Thus, they are not entitled to the destruction of their GPS data even on their own theory which seeks to prevent data retention after the conclusion of a criminal trial, are suffering no current or certainly impending injury, and therefore lack standing required to pursue the claim as a class representative. *See Bayer*, 861 F.3d 865, 868; *Hodgers–Durgin*, 199 F.3d at 1045.

Second, the typicality inquiry also includes ways in which proposed representative plaintiffs may have stronger claims than the class they seek to represent. For example, *Singh v. Google LLC*, No. 16-CV-03734-BLF, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022), denied certification of a class of advertisers based in part on a lack of typicality because the named plaintiff had "opted out of the arbitration clause to which many or most of the putative class is subject." *Id.* at *6. The named plaintiff had also "failed to show that his injury would be typical due to the varying levels of advertising sophistication in his class." *Id.* at *8. Here, Barber asserts he did not receive a copy of the EM Order. ECF No. 22-6 ¶ 7 ("I did not see a paper order from the judge ordering my release on EM."). Other putative class members very likely received a copy of the EM Order given that the order itself reflects a copy going to the defendant, ECF No. 22-2 at 15, avoiding what Plaintiffs appear to

believe is a notice issue regarding conditions accompanying EM. In a class action, the absent putative class members' "claims are being litigated, allowing [Defendants] to raise defenses that are unique to even absent class members." *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 962 (N.D. Cal. 2017) (granting a defendant's motion to deny certification in employment case); *compare Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141-42 (9th Cir. 2016) (cited by Plaintiffs but concluding the defendant had not articulated how any atypicality would affect class representative's claims). Thus, there are additional reasons Barber is not typical of the class he seeks to represent.

The *Sandoval* case, discussed above, held the plaintiffs had also failed to show typicality, rejecting a view like the one Plaintiffs' urge here. The plaintiffs in *Sandoval* relied "on the theory that because their class definitions d[id] not hinge on the circumstances surrounding the initial seizure and removal of a vehicle and thus, there [was] no need for a case-by-case consideration of the seizure for each vehicle under the community caretaking exception, [and] they ha[d] satisfied the typicality requirement. *Sandoval*, 2015 WL 4148261, at \*9. The court observed it had "rejected this argument in its discussion regarding commonality." *Id.* The plaintiffs had not shown their claims were typical because "whether a particular prolonged seizure is unreasonable under the Fourth Amendment depends on its duration." *Id.* So too, here, Plaintiffs urge the Court to ignore everything preceding criminal defendants' EM Program enrollment. The Court should reject that approach.

### C.    Numerosity

Plaintiffs can satisfy Rule 23(a)(1)'s numerosity requirement only by failing the requirements for commonality and typicality. Defendants agree that the class Plaintiffs present would satisfy the numerosity requirement. But Plaintiffs propose an overly broad class definition including individuals who are not entitled to relief even on Plaintiffs' theory, for example because the court specifically entered a four-way search condition (beyond the finding of a Fourth Amendment waiver) or discussed sharing of EM data. A more properly defined class would need to exclude criminal defendants whose hearing records show the court considered whether the four-way search condition should apply to them, or where the court put their Fourth Amendment waiver on the record or in the hearing minutes. It should also exclude criminal defendants whose defense attorney was aware of the EM Program Rules at the time their client agreed to participate in EM or any defendants who later petitioned the

15

criminal court to modify their terms of release. Using the proper and narrowed class definition that excludes these carve-outs, Plaintiffs have not shown their putative class is so numerous that certification is appropriate. Plaintiffs have provided no evidence about the size of a more limited class from which the Court could determine whether the class would meet the threshold numerosity requirement. It is not the Court's or Defendants' job to speculate about whether such a class would satisfy the standard. *Foster v. City of Oakland*, No. C 05-03110 MHP, 2007 WL 219796, at *5 (N.D. Cal. Jan. 29, 2007) ("Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement."); *Nguyen v. Kissinger*, 70 F.R.D. 656, 661 (N.D. Cal. 1976) (same); *see also, e.g.*, *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) (same, "even if such speculation is 'a bet worth making'").

### D.   Adequacy

Plaintiffs' argument regarding adequacy of the putative class representatives fails because it ignores a critical component of the Court's analysis: their candor. "The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010).

Proposed class representatives Bonilla and Barber have displayed a lack of candor to the Court thus far. For example, as to Bonilla, he presented a misleading declaration to the Court in support of his motion for a preliminary injunction. Plaintiffs originally filed their lawsuit in state court and applied ex parte for an order to show cause regarding a requested preliminary injunction. In support of that application, Bonilla submitted a declaration signed on August 14, 2022, declaring that he had participated in the EM Program since May without any violations. ECF No. 22-72 ¶ 18. While Bonilla had no notices of EM Program violation when the declaration was signed, Bonilla violated the terms of his EM nine days later on August 23, 2022. ECF No. 31-36; *see also* ECF No. 32-7 (police report regarding Bonilla threatening the victim and hitting her car in June, two days after being ordered onto EM and ordered to stay away from the victim as conditions of release). Bonilla submitted a modified declaration with the same August date, but containing an updated footer for the federal court action on

16

October 7, 2022 in support of Plaintiffs' motion for a preliminary injunction. ECF No. 22-7. The later declaration did not inform the Court of Bonilla's EM violation.

As to Barber, he misrepresented to his criminal defense counsel the circumstances of his enrollment in the EM Program including the requirements SFSO imposed on him as a condition of his enrollment. ECF No. 31-30. These concerns are a basis to deny class certification because "[a] named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

Additionally, as described above in Section III.C, the putative class representatives are not typical of the alleged class given their unique defenses and allegations thus far and their ability to serve as class representatives is further limited because they either are no longer enrolled in the EM Program or are still awaiting trial. These are further reasons to find the Criminal Defendant Plaintiffs are not adequate class representatives and to deny certification on that basis.

### E.     Appropriateness of Class-Wide Injunctive Relief

Even if Plaintiffs could satisfy the requirements of Rule 23(a) with a narrowed class definition, they fail to satisfy Rule 23(b)(2)'s standards for an injunctive or declaratory relief class. The "key to a [Rule 23(b)(2)] class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them," because "claims for *individualized* relief . . . do not satisfy the Rule." *Wal–Mart*, 564 U.S. at 360 (internal quotation omitted). Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id. Jennings* considered class certification in the context of an injunction requiring bail hearings. The Supreme Court observed—in directing reconsideration of Rule 23(b)(2) class certification—that because "some members of the certified class may not be entitled to bond hearings as a constitutional matter," "it may no longer be true that the complained-of conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." 138 S. Ct. at 852 (internal quotation marks and citation omitted). The overbreadth of the proposed class, discussed above, similarly here means that—unless, as Defendants have argued,

Plaintiffs' claims fail as to all EM Program participants—the challenged Program Rules cannot "be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.*

In addition to those previously discussed issues, which reflect variation in claims and defenses across the proposed class, the analysis of appropriate relief would also necessarily vary across the proposed class based on the remaining factors courts must consider in entering an injunction and therefore prevent entry of a uniform injunction. For example, as Defendants explained in the Opposition to the Motion for a Preliminary Injunction, special public interest and balance of equities issues would arise with entry of an injunction with respect to those charged with felony domestic violence and assault with a deadly weapon like Criminal Defendant Plaintiffs. ECF No. 31 at 23-25. The EM Program Rules help to avoid and detect the unfortunately common violations of stay-away orders in cases involving violence against family members. *Id.* at 24. On the other side of the spectrum, Plaintiffs posit that some individuals charged with very minor offenses are also placed on EM, though they have not identified any. Perhaps the public interest and equities counsel less strongly against an injunction affecting pretrial release conditions for those individuals.

Focusing just on late October 2022, incidents involving EM Program participants Oscar Cerrato and Oscar Centeno further highlight the individualized public interest and equities counseling against any injunction preventing the sharing of EM data across law enforcement agencies, retention of the data, and the accompanying search condition. In Cerrato's case, the ability of SFSO to share EM data with the Berkeley Police Department allowed that department to arrest Cerrato for a string of catalytic converter thefts including one in which the suspect fired a gun at a witness. After detaining Cerrato, detectives found a 9mm ghost gun loaded with 15 rounds of ammunition and an additional 46 9mm rounds of ammunition in Cerrato's recovered backpack. *See* Judson Decl. ¶ 3(b); *Police Arrest Suspected Berkeley Hills Catalytic Converter Thief*, KTVU (Nov. 3, 2022), https://www.ktvu.com/ news/police-arrest-suspected-berkeley-hills-catalytic-converter-thief. In Centeno's case, sharing EM data with SFPD allowed SFSO deputies and SFPD officers to track Centeno casing homes in San Francisco and arrest him for a home invasion robbery in Burlingame, CA, finding him in possession of burglary tools. Judson Decl. ¶ 3(a). If a constitutional limit on the retention period for EM data exists, it will vary by defendant. For example, defendants like Cerrato and Centeno who are alleged to have

18

committed crimes while on GPS monitoring do not have a colorable privacy claim for destruction of GPS data providing evidence of their commission of the crimes. *See also* Judson Decl., Ex. 3(c)-(d) (Michele Garabato); ECF No. 31-17 (Judson Decl. in Support of Opposition to Preliminary Injunction) ¶ 7 ("Many criminal defendants commit new crimes while wearing a GPS device.").

Plaintiffs' proposed class also fails to consider that, while class-wide injunctive relief will in many cases present an unmitigated benefit to putative class members, that is not true here. Some putative class members may not want the relief sought here because of the risk it will result in their remand into custody. *See* ECF No. 31-17 ¶¶ 4, 12, 14. In a Rule 23(b)(3) class action, class members receive notice and the opportunity to opt out if they do not wish to be bound by the class proceeding. But "[w]hen an action is certified under Rule 23(b)(2), . . . absent class members are not required to receive notice or to have the opportunity to opt-out of the suit." *Equal Emp. Opportunity Comm'n v. Gen. Tel. Co. of Nw.*, 599 F.2d 322, 334 (9th Cir. 1979), *aff'd*, 446 U.S. 318 (1980); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 627 n.28 (N.D. Cal. 1979) ("In response to certain dissidents wishing to exclude themselves from the action, there is no right to 'opt out' of a 23(b)(2) class action.").

The cases Plaintiffs cite in support of their having satisfied Rule 23(b)(2) do not assist them. They primarily rely on *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2009) ("*Hayes*"), which addressed certification of a class to seek bond hearings for immigration detainees. But while *Hayes* suggested that Rule 23(b)(2) could extend injunctive relief mandating bond hearings to some individuals categorically not entitled to release, *id.* at 1125, the relief Plaintiffs seek here is far more significant than that sought in *Hayes*. Plaintiffs *do not want* to ask the criminal court to clarify or modify the conditions of pretrial release. *See* ECF No. 33 at 20-23 (Plaintiffs' Opposition to Motion to Dismiss). They instead ask the Court to rule as a blanket matter that two Program Rules are unenforceable and SFSO must destroy data, ECF No. 1-1 at 23 (Prayer for Relief in Complaint). The analog in *Hayes* would be if the plaintiffs there had sought injunctive relief simply releasing them, rather than providing bond hearings. As one court has explained, in *Hayes*, "it did not matter whether some class members might be entitled to release while others might not be because what they sought was merely the uniform provision of a hearing. In contrast, Petitioners have not asked for a hearing of any sort. Instead, they seek immediate release." *Juarez v. Asher*, No. C20-0700JLR-MLP, 2020 WL 5746875,

19

at \*4 (W.D. Wash. Sept. 25, 2020) (citations omitted). Because Plaintiffs here seek the equivalent of "immediate release"—invalidation of Program Rules 5 and 13 and destruction of data—rather than a "bond hearing," *Hayes* does not support certification of a Rule 23(b)(2) class.

*Hayes* is also clearly irreconcilable with *Jennings* to the extent *Hayes* stands for the proposition that class members may receive injunctive relief to which they would not be individually entitled. *Jennings*, 138 S. Ct. at 852; *see also Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("In future cases of such clear irreconcilability, a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."). But the Court need not consider the continued viability of *Hayes*, given the more extreme character of the injunctive and declaratory relief sought here.

Plaintiffs' other cited cases are similarly inapplicable. *Gibson v. Local 40, Supercargoes & Checkers*, 543 F.2d 1259 (9th Cir. 1976), rejected the sole defense put forward distinguishing putative class members' claims after a trial and did not—because it predated *Wal-Mart*—consider the indivisibility of the proposed injunction (or even discuss the specifics of the relief sought at all). *Id.* at 1264. Despite all of this, *Gibson* held the class needed to be narrowed because of unique circumstances affecting some class members "that affect the nature of an effective presentation of their claims with respect to both liability and relief" and so supports Defendants' argument that the proposed class is overbroad. *Id.* Plaintiffs next cite *Hernandez v. County of Monterey*, 305 F.R.D. 132 (N.D. Cal. 2015), which considered a far more complete evidentiary picture on class certification than Plaintiffs present here. *Id.* at 151. The plaintiffs in *Hernandez* cited "thousands of pages of documents that they secured by investigation and from public records requests, expert reports by four neutral specialists in prison medical care and conditions of confinement retained by mutual agreement of the parties, two reports on conditions at the jail commissioned by the County in 2007 and 2011, two declarations from experts they retained and their own declarations." *Id.* at 141. Plaintiffs present nothing of the sort in this case, with most of the weight for class certification purposes resting on a single declaration that speaks to one attorney's experiences, which are inconsistent with the examples cited here and in Defendants' Opposition to the Motion for a Preliminary Injunction. *Compare* ECF

No. 22-4 (Kim Decl.), *with* ECF No. 31 (citing exhibits). Based on the substantial evidentiary record, *Hernandez* concluded the plaintiffs had shown that the challenged policies "constitute[d] shared grounds" for claims by "all inmates in the proposed classes." *Id.* at 164. For the reasons discussed above, Program Rules 5 and 13 do not "constitute shared grounds for" claims by all EM Program participants. *Id.* Plaintiffs last cite *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 687 (C.D. Cal. 2020). In addition to addressing different types of claims on a different evidentiary record than here, the Court of Appeals vacated the class certification in *Ahlman*—a development Plaintiffs do not acknowledge. *See Ahlman v. Barnes*, 20 F.4th 489, 495 (9th Cir. 2021) ("To the extent the provisional class certification was proper under Federal Rule of Civil Procedure 23, we vacate it because it 'depended on, and was in service of, its preliminary injunction.'"), *cert. denied*, 142 S. Ct. 2755 (2022).[1]

## IV.      Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.


Dated:  November 14, 2022                     Respectfully submitted,

                                              DAVID CHIU
                                              City Attorney
                                              MEREDITH B. OSBORN
                                              Chief Trial Deputy
                                              KAITLYN MURPHY
                                              ALEXANDER J. HOLTZMAN
                                              Deputy City Attorneys


                                              By:_____*/s/ Kaitlyn Murphy*_____
                                                    KAITLYN MURPHY

                                              Attorneys for Defendants
                                              CITY AND COUNTY OF SAN FRANCISCO, PAUL
                                              MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN
                                              FRANCISCO SHERIFF

---

[1] To the extent the Court certifies a class, Defendants do not object to appointment of the proposed counsel to represent the class.