# EXHIBIT C
# TO THE DECLARATION OF
# KAITLYN MURPHY

Court of Appeal, First Appellate District
Charles D. Johnson, Clerk/Executive Officer
Electronically RECEIVED on 5/3/2021 at 6:58:05 PM

Case 4:22-cv-05541-JST   Document 41-4   Filed 11/14/22   Page 2 of 135

Court of Appeal, First Appellate District
Charles D. Johnson, Clerk/Executive Officer
Electronically FILED on 5/3/2021 by R. Neeley, Deputy Clerk
CASE #: A162548, Div. 3

# In the Court of Appeal of the S

## First Appellate District, Division __

| | |
|---|---|
| In re Ryan Waer, | Writ No. |
| Petitioner, | Court No. 20210223 |
| on Habeas Corpus. | |

### Petition for Writ of Habeas Corpus
### Memorandum of Points and Authorities

### Following Order of Pretrial Release Conditions
### By The Hon. Judge Richard C. Darwin

### Next Court Date (Preliminary Hearing): May 27, 2021
### Department 9: (415) 551-0309

Manohar Raju
Public Defender
Matt Gonzalez
Chief Attorney
Kelsey Ryburn (SBN 314737)
Sujung Kim (SBN 176602)
Deputy Public Defenders
555 Seventh Street
San Francisco, California 94103
(415) 553-1671
kelsey.ryburn@sfgov.org
*sujung.kim@sfgov.org
Attorneys for Ryan Waer

# Issues Presented

1. ***Lent*'s reasonableness test: pretrial conditions and future criminality.**

   For release and probation conditions to be reasonable under the *Lent* test, the record must show evidence that the condition prevents future criminality. Here, Waer is charged with engaging in online illicit conversation with an imaginary underage girl, sending sexual photos and then going to meet her. Respondent court released Waer with a warrantless search condition of his person, home and vehicle. Are these release conditions reasonably related to preventing future criminality?

2. **Unconstitutional overbreadth doctrine.**

   A pretrial release condition, like a probation condition, is unconstitutionally overbroad if it impinges on constitutional rights and is not tailored carefully and reasonably related to the compelling state interest. Probation conditions that order unfettered searches of all devices and unlimited access to passwords to devices have been held to be unconstitutionally overbroad. Here, Waer was released with a warrantless search condition of all devices, an order that he open all devices using passcodes for law enforcement access and a total ban on the use of two leading social networking applications. Is such an order unconstitutionally overbroad?

3. **Unconstitutional conditions doctrine.**

   The U.S. Supreme Court's unconstitutional conditions doctrine, which prohibits the government from denying a benefit to a person that infringes his constitutionally protected rights, is violated when the government coerces a pretrial releasee to waive his Fourth Amendment rights in exchange for his freedom. Compelling the use of passcodes to unlock electronic devices implicates the Fifth Amendment protection against self-incrimination. Do respondent court's release conditions coerce waiver of Waer's Fourth and Fifth Amendment rights, in violation of the unconstitutional conditions doctrine?

## Certificate of Interested Entities of Persons
### (Cal. Rules of Court, Rule 8.488)

I certify under penalty of perjury I am an attorney licensed to practice law in the State of California (State Bar number 176602) and employed as an attorney for the San Francisco Public Defender's Office. In this capacity, I prepared this Petition for Writ of Mandate. I certify that I know of no interested entities or persons as defined in the California Rules of Court, Rule 8.488.

Dated: May 3, 2021

_____
Sujung Kim

# Table of Contents

Issues Presented ..................................................................2

Certificate of Interested Entities of Persons ....................................3

Table of Contents ...............................................................4

Petitioner's Exhibits (PE) ......................................................6

Table of Authorities ............................................................7

Petition for Writ of Habeas Corpus ............................................ 10

Verification ...................................................................... 14

Memorandum of Points and Authorities .................................. 15

1. Standard of review.......................................................... 15

2. The release condition authorizing a warrantless
   search of Waer's person home, vehicle is
   unreasonable under the Lent test.......................................... 16

3. The release conditions—a warrantless search of
   Waer's person, home and vehicle all devices, order
   that Waer to use passwords to open all devices and
   a total ban on two widely used social networking
   apps—are unconstitutionally overbroad..............................18

   A. Probation conditions that order unfettered
      Searches of all devices and unlimited access
      to passwords to devices have been held to be
      unconstitutionally overbroad.........................................19

   B. The release conditions here are unconstitutionally
      overbroad because they sweep in private, legal
      content and activities and ban protected speech. ...............21

4. The pretrial release conditions imposed on Waer
   violate the Fourth Amendment, the Fifth Amendment
   and the unconstitutional conditions doctrine. ......................23

   A. *Scott:* pretrial release conditions that demand
      the waiver of Fourth Amendment rights violate
      the unconstitutional conditions doctrine...........................24

   B. Compelling Waer to open his digital devices using
      passcodes and reveal all content violates his Fifth
      Amendment's protection against self-incrimination
      and the unconstitutional conditions doctrine.....................25

      (1) The act of inputting a password to unlock a device
          is a "testimonial communication" triggering the
          Fifth Amendment protection against self-incrimination…27

(A) U.S. Supreme Court precedent: the act of
producing documents is "testimonial"............................27

(B) State and federal courts hold that the act
of compelling passwords is "testimonial"........................29

(C) Compelled decryption of a hard drive held
to be testimonial, implicating the Fifth Amendment.........31

(2) Waer cannot be compelled to unlock his devices
using passcodes, since the state has not shown
it knows the devices contain illicit information.................32

Conclusion.................................................................33

Word Count Certificate.............................................35

# Petition Exhibits (PE)

**Petition Exhibit A**, Felony complaint in
*People v. Ryan Waer* (20210223)............................................................PE0001

**Petition Exhibit B**, People's Briefing Re: Conditions of
Release Related to Defendant's Charged Offenses................................PE0004

**Petition Exhibit C**, Opposition to Prosecution's Proposed
Release Conditions....................................................................................PE0029

**Petition Exhibit D**, Transcript of Proceedings
February 22, 2021......................................................................................PE0044

**Petition Exhibit E**, Transcript of Proceedings
March 1, 2021............................................................................................PE0056

**Petition Exhibit F**, Transcript of Proceedings
March 2, 2021............................................................................................PE0078

## Table of Authorities

**Federal Cases**                                                    **Page(s)**

*Carpenter v. U.S.*,
(2018) 138 S.Ct. 2206 .................................................................. 30

*Doe v. United States*,
(2011) 487 U.S. 201 ......................................................... 27, 28, 29

*Dolan v. City of* Tigard,
(1994) 512 U.S. 374 .................................................................. 24

*Fisher v. United States*,
(1976) 425 U.S. 391 ............................................................. 27, 28

*Hensley v. Municipal Court*,
(1973) 411 U.S. 345 ............................................................. 12, 15

*In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*,
(11th Cir. 2012) 670 F.3d 1335 ...................................... 27, 32, 33

*Kastigar v. United States*,
(1972) 406 U.S. 441 .................................................................. 27

*Koontz v. St. Johns River Water Management Dist.*,
(2013) 570 U.S. 595 .................................................................. 24

*Matter of Residence in Oakland, California*,
(N.D. Cal. 2019) 354 F.Supp.3d 1010 ................................... 30, 31

*Perry v. Sindermann*,
(1972) 408 U.S. 593, 597 ........................................................... 23

*Riley v. California*,
(2014) 573 U.S. 373 ............................................................. 21, 30

*Schmerber v. California*,
(1966) 384 U.S. 757 ............................................................. 28, 30

*Speiser v. Randall*,
(1958) 357 U.S. 513 .................................................................. 24

*U.S. v. Scott*,
(9th Cir. 2006) 450 F.3d 863 ..................................................... 25

*United States v. Greenfield*,
(2nd Cir. 2016) 831 F.3d 106 ..................................................... 28

*United States v. Heckenkamp*,
(9th Cir. 2007) 482 F.3d 1142 ............................................... 21, 25

*United States v. Hubbell*,
(2000) 530 U.S. 27 ............................................................... 29, 31

*United States v. Lifshitz*,
(2d Cir. 2004) 369 F.3d 173 ....................................................... 21

**State Cases**                                                    **Page(s)**

*In re Catalano,*
   (1981) 29 Cal.3d 1 ................................................................. 12, 15
*In re E.O.,*
   (2010) 188 Cal.App.4th 1149 .................................................. 19
*In re Humphrey,*
   (2021) 11 Cal.5th 135, 276 Cal.Rptr.3d 232 .............................. 24
*In re Malik J.,*
   (2015) 240 Cal.App.4th 896 ................................................ 19, 20
*In re McSherry,*
   (2003) 112 Cal.App.4th 856 .................................................. 15
*In re Ricardo P.,*
   (2019) 7 Cal.5th 1113 ........................................................ 17, 20
*In re Shaun R.,*
   (2010) 188 Cal.App.4th 1129 ............................................. 15, 19
*In re Sheena K.,*
   (2007) 40 Cal.4th 875 ....................................................... 15, 19
*In re York,*
   (1995) 9 Cal.4th 1133 ................................................... 15, 16, 17
*People v. Appleton,*
   (2016) 245 Cal.App.4th 717 ...................................... 15, 20, 21, 22
*People v. Christie,*
   (2001) 92 Cal.App.4th 1105 ................................................. 15
*People v. Lent,*
   (1975) 15 Cal.3d 481, fn. 1 .................................................. 16
*People v. Michael E.,*
   (2014) 230 Cal.App.4th 261 ................................................. 21
*People v. Nice,*
   (2016) 247 Cal.App.4th 928 .............................................. 19, 23
*People v. Perez,*
   (2009) 176 Cal.App.4th 380 .............................................. 19, 23
*Seo v. State,*
   (Ind. 2020) 148 N.E.3d 952 .............................................. 31, 32

**Statutes**                                                      **Page(s)**

U.S. Const. amend. V ................................................................. 26

**Rules**                                                         **Page(s)**

Cal. Rules of Court, Rule 8.488 ........................................................................ 3

**Other Authorities**

*Unconstitutional Conditions,*
   (1989) 102 Harv L.Rev. 1413, fn. 2 ............................................................. 24

## In the Court of Appeal of the State of California
## First Appellate District, Division __

| | |
|---|---|
| In re Ryan Waer, | Writ No. |
| Petitioner, | Court No. 20210223 |
| on Habeas Corpus. | |

### Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities

Petitioner, Ryan Waer, seeks a Writ of Habeas Corpus directing respondent court to vacate its March 2, 2021 ruling made by the Hon. Richard Darwin, Superior Court Judge, ordering pretrial release conditions, or in the alternative, an order to show cause why the relief should not be granted, and by verified petition alleges:

### 1.  Parties and Jurisdiction

Petitioner Waer is the defendant in the above-entitled action now pending in respondent court. The plaintiff in the above action, the People of the State of California, is named in this petition as the real party in interest. This matter is within the jurisdiction of the San Francisco Superior Court and the First District Court of Appeal. The parties have been served with a copy of this petition pursuant to Code of Civil Procedure section 1107.

### 2.  Statement of Facts

On February 22, 2021, Ryan Waer was arraigned on a complaint with the following felony charges: Count 1 - meeting minor for lewd purposes (Pen. Code, § 288.4(b)); Counts 2 and 3 - contact with minor for sexual offense (Pen. Code, § 288.3(a)); Count 4 - sending harmful matter to a minor (Pen. Code, § 288.2(a)(2)); and Count 5 - arranging a meeting with minor for lewd purposes

(Pen. Code, § 288.4(a)(1)). (A true and accurate copy of the complaint is marked and attached as Exhibit A, PE0001).

The charges stem from an undercover operation in which a police officer posed as a 14-year-old girl on online dating sites. Waer contacted the imaginary girl on two sites, WhatsApp and MeetMe, and for about 10 days the two engaged in online conversation, primarily on WhatsApp, that turned sexual. At one point, Waer sent two images of his penis. Waer attempted to meet the non-existent girl at a prearranged location in San Francisco, where he was arrested upon his arrival. (People's Briefing Re: Conditions of Release Related to Defendant's Charged Offenses is marked and attached as Exhibit B, at 3, PE0006; PE0019-PE0027.)

Waer, age 29, was born in San Jose, California and has spent his entire life in the San Francisco Bay Area. He currently resides within San Francisco and works as bike mechanic. Waer also attends the City College of San Francisco to become a mechanical engineer. Waer has no prior criminal history or failures to appear in court. (Opposition to Prosecution's Proposed Release Conditions is marked and attached as Exhibit C, at 3, PE0031.)

Waer was in custody at the time of arraignment. Real party requested that Waer be released on pre-trial monitoring by the San Francisco Sheriff's Department with the following conditions: a four-way search and seizure condition, which would encompass his person, place, vehicle, and all computers and media devices; that he provide access to any passwords associated with these media devices, including his computer; that he provide the password for all those devices under his control; and that he not be able to access or download any messenger applications on any of his devices. Waer objected to the release conditions. (Transcript of Proceedings of February 22, 2021 is marked and attached as Exhibit D, 4:1-9, PE0047.)

11

Over Waer's objection (Pet. Exh. D, 7:17-20, PE0050), respondent court ordered Waer released with a warrantless search clause of his home and vehicle, and asked the parties to submit legal briefing on the legality of a warrantless search of Waer's electronic devices and compelling Waer to provide passwords to all his devices. (Pet. Exh. D, 7:26-8:8, PE0050.)

Real party filed People's Briefing Re: Conditions of Release Related to Defendant's Charged Offenses. (Pet. Exh. B, PE0004.) Waer filed Opposition to Prosecution's Proposed Release Conditions. (Pet. Exh. C, PE0029.)

On March 1, 2021, the parties presented arguments to respondent court. (Transcript of Proceedings of March 1, 2021 is marked and attached as Exhibit E, PE0056.) The following day, after further argument from the parties, respondent court issued the following order setting forth release conditions on Waer: (1) warrantless search of his person, vehicle, residence, other areas under his direct control and his electronic devices; (2) upon request of law enforcement, immediately access and log in to those devices, phone, computer, hard drives, USB drives, other storage devices by whatever means necessary, a thumbprint, facial recognition, password, and login credentials and permit law enforcement to review and copy the contents; and (2) a total ban on the use of WhatsApp and MeetMe. (Transcript of Proceedings of March 2, 2021 is marked and attached as Exhibit F, 6:18-21; 7:22-8:17, PE0083-0085.) Waer objected to the release conditions. (Pet. Exh. F, 8:20-26, PE0085.)

Respondent court declined to order Waer to disclose passcodes to his devices, stating: "[H]aving reviewed the federal cases provided by the defendant it does appear that under certain circumstances requiring a defendant to turn over a login or password can implicate the defendant's

Fifth Amendment rights against self-incrimination." (Pet. Exh. F, 7:9-13, PE0084.)

Respondent court stated: "I find the conditions sought by the People here are permissible under York. The nature and seriousness of the charges clearly implicate public safety." The court found that, while the release conditions ordered were intrusive, they were justified in light of the "harm to potential underage victims." (Pet. Exh. F, 5:25-6:17, PE0082-PE0083.)

The case is set for preliminary hearing on May 27, 2021.

### 3. No other petition

Petitioner has made no other petitions for a writ relating to this matter.

### 4. No adequate remedy

Petitioner has no plain, speedy or adequate remedy at law except by extraordinary writ for the imposition of respondent court's unlawful pretrial release conditions. Habeas relief lies to review pretrial release conditions. (*In re Catalano* (1981) 29 Cal.3d 1, 8-9, citing *Hensley v. Municipal Court* (1973) 411 U.S. 345, 349-350.)

### 5. Prayer for Relief

Thus, petitioner asks:

A writ of habeas corpus be issued by this Court directing respondent court to vacate its pretrial release conditions order, or in the alternative, an order to show cause why the requested relief should not be granted.

Dated: May 3, 2021                    Respectfully submitted,

_____
Sujung Kim
Deputy Public Defender
Attorney for Petitioner

# Verification

State of California

San Francisco County

I, Kelsey Ryburn, declare:

I am an attorney at law licensed to practice in all the courts of California, and I am employed as a deputy public defender for the City and County of San Francisco.

In that capacity, I have reviewed the record of proceedings underlying the foregoing petition and I make this verification on behalf of Petitioner because the facts alleged are more within my knowledge than his.

I have read the foregoing petition and the attached exhibits or lodged with this Court, and I know the contents to be true based on my review of the record.

I declare under penalty of perjury that the above is true and correct and execute this verification on May 3, 2021, at San Francisco, California.

_____/s/_____
Kelsey Ryburn
Deputy Public Defender
Attorney for Petitioner

14

## Memorandum of Points and Authorities

### 1.  Standard of review.

A pretrial releasee may bring a writ of habeas corpus to review release conditions. (*In re Catalano* (1981) 29 Cal.3d 1 at 9 ["a person released on his own recognizance was under sufficient constructive custody to permit him to apply for habeas corpus]; see also *Hensley v. Municipal Court* (1973) 411 U.S. 345, 349-350.) The standard on review is whether the lower court abused its discretion. (*People v. Christie* (2001) 92 Cal.App.4th 1105, 1107.)

Challenges to the validity of pretrial release conditions and probation conditions are analyzed under an identical framework. (*In re York* (1995) 9 Cal.4th 1133, 1150-1151.) Accordingly, the general standard on review is whether the lower court abused its discretion. (*People v. Christie* (2001) 92 Cal.App.4th 1105, 1107.) But constitutional challenges to probation conditions are reviewed de novo. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723, citing *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Moreover, constitutional challenges to probation conditions as facially vague and overbroad present an asserted error that is a pure question of law, easily remediable on appeal by modification of the condition. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888 [citations omitted].) The Court may grant the writ without an evidentiary hearing if the established facts justify relief. (In re *McSherry* (2003) 112 Cal.App.4th 856, 859.) The Court may grant the writ without an evidentiary hearing if the established facts justify relief. (In re *McSherry* (2003) 112 Cal.App.4th 856, 859.)

Challenges to the validity of pretrial release conditions and probation conditions are analyzed under an identical framework. (*In re York* (1995) 9 Cal.4th 1133, 1150-1151.)

## 2. The release condition authorizing a warrantless search of Waer's person home, vehicle is unreasonable under the *Lent* test.

The California Supreme Court has designed two threshold tests to determine the validity of pretrial release conditions. The first tests pretrial release conditions under state law. In *In re York*, the Court established that pretrial release conditions imposed under the relevant state law, Penal Code section 1318, need to be "reasonable." (*In re York, supra,* 9 Cal.4th 1133 at 1145.) To define that standard, the Court adopted its holding in *People v. Lent* that a probation condition must be "reasonably relate[d] to the probationer's prior criminal conduct and aimed at deterring or discovering subsequent criminal offenses[.]"[1] (*Id.,* at 1150, citing *People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1.)

The Court in *Lent* created a three-part reasonableness test holding a probation condition valid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality [citations omitted]." (*People v. Lent, supra,* 15 Cal.3d at 486.)

*York* specifically addressed whether random drug testing and warrantless search conditions of pretrial release qualified as reasonable conditions under Penal Code section 1318. (Pen. Code, § 1318.) The Court rejected the argument of the defendants in that case that such conditions were invariably unconstitutional, and upheld them as reasonable in the circumstances of that case. (*Id.,* at 1146.) But it cautioned: "nothing in this opinion should be construed as providing approval of…warrantless search and seizure

---

[1] *York* analyzed challenges to pretrial release conditions and probation conditions under an identical framework. (*In re York, supra,* 9 Cal.4th at 1150.)

conditions in all cases wherein the defendant requests OR release. . . . [T]he reasonableness of a condition necessarily depends upon the relationship of the condition to the crime or crimes with which the defendant is charged and to the defendant's background, including his or her prior criminal conduct." (*Id.* at 1151, fn. 10.)

In *In re Ricardo P.*, the Court acknowledged that the appellate courts' interpretations of its holdings in *York* and *Lent* had effectively eliminated even *York*'s deferential reasonableness requirement for probation conditions. (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1127 ["endorsing the Court of Appeal's broad reading of *Olguin* would effectively eliminate the reasonableness requirement in *Lent*'s third prong, for almost any condition can be described as 'enhancing the effective supervision of a probationer.'"].) For that reason, the Court clarified that for a condition to be reasonably related to future criminality under *Lent*'s third prong, there must be evidence in the record of the criminality targeted by the condition. (*Id.* at 1116.)

Here, respondent court justifies the release conditions demanded of Waer as reasonable under *York*. But conditioning Waer's liberty on warrantless searches of his person, home and vehicle at any time is not reasonable under *York*, *Lent*, and *Ricardo P.*

First, those conditions have no relationship to the crimes of which Waer is accused of and, thus, fail *Lent*'s first prong. Waer is charged with having illicit conversations with an undercover officer posing as a girl and going to meet the imaginary girl. The substance of those accusations relate to digital conduct and the content of Waer's thoughts as he travelled to a public location. Neither can be ascertained by warrantless searches of his person, home, or vehicle. Thus, those conditions lack any relationship to the accusations and fail *Lent*'s first prong.

17

Second, searches of Waer's person, home and vehicle encompass and relate to conduct that is not itself criminal and, thus, fail *Lent*'s second prong. It is not illegal for Waer to reside in his home, travel in his vehicle, or have objects on his person. Such searches therefore interfere with Waer's ability to engage in legal conduct and fail *Lent*'s second prong.

Third, *Ricardo P.* held that probation conditions which are unrelated to facts in the record should not survive the test of *Lent*'s third prong. Here, no evidence exists in the record of any crime to justify warrantless searches of Waer's vehicle, home, and person. So, under *Ricardo P.*, such as release condition is not reasonably related to future criminality, and violates *Lent*'s third prong.  The crimes charged here involved Waer engaging in illicit online conversations, sending two photos of his penis and traveling to meet an underage girl. Requiring Waer to submit to warrantless searches of his vehicle, home, and person cannot prevent or detect crime that is unrelated to either. Thus, those conditions are not reasonably related to future criminality under *Ricardo P.* and fail *Lent*'s third prong.

As warrantless searches of Waer's vehicle, home, and person fail each prong *Lent*'s three-part test and are, therefore, unreasonable under *York* and Penal Code section 1318, those probation conditions must be stricken.

3. **The release conditions—a warrantless search of Waer's person, home and vehicle all devices, order that Waer to use passwords to open all devices and a total ban on two widely used social networking apps—are unconstitutionally overbroad.**

More than ten years after deciding *York*, the California Supreme Court established the second test formulated to ensure such conditions do not needlessly abridge probationers' constitutional rights. In *In re Sheena K.,* the Court held that a probation condition's sufficiency under state law would not immunize it against challenges based on the United States Constitution, and

18

that such conditions may be appealed as unconstitutionally overbroad or vague. (*In re Sheena K.*, *supra*, 40 Cal.4th 875 at 887.)

**A. Probation conditions that order unfettered searches of all devices and unlimited access to passwords to devices have been held to be unconstitutionally overbroad.**

A restriction is unconstitutionally overbroad if it "(1) 'impinges on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest.'" (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) Critically, if alternative conditions "are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used [citations omitted]." (*In re Shaun R., supra,* 188 Cal.App.4th 1129 at 1143.) In other words, narrow conditions should be used in place of "broad conditions that prevent otherwise lawful conduct and necessary activities." (*People v. Nice* (2016) 247 Cal.App.4th 928, 945, citing *People v. Perez* (2009) 176 Cal.App.4th 380, 382.)

California appellate courts have held probation conditions almost identical to Waer's release conditions here to be unconstitutionally overbroad. In *In re Malik J.*, for example, the trial court ordered a juvenile probationer to (1) provide passwords to all of his electronic devices, including cell phones and computers, all social media sites and notepads within his control, and (2) submit to warrantless searches of all his electronic devices at any time by any peace officer. (*In re Malik J.* (2015) 240 Cal.App.4th 896, 900.)

The Court of Appeal held both conditions were unconstitutionally overbroad. (*Id.* at 902.) First, the court struck down the probation condition that Malik J. furnish officers with his social media passwords under the California Supreme Court's unconstitutional overbreadth doctrine. (*Ibid.*) It reasoned that searching through remotely stored information, which "cannot

be considered in the probationer's possession nor entirely within his or her control," of other social media profiles accessible through Malik J.'s social media accounts "significantly encroaches on his and potentially third parties' constitutional rights of privacy and free speech." (*Ibid.*)

Second, the *Malik J.* court held that searches conducted under the trial court's warrantless electronics search condition must: 1) refrain from conducting a forensic analysis of the device using specialized equipment allowing for retrieval of deleted information not readily accessible to users of the device; and 2) disable the device's internet and cellular connections so that remotely stored information may not be accessed. (*Id.* at 904.)

Importantly, the California Supreme Court has held that probation conditions imposed on juveniles, such as in *Malik J.*, are reviewed with more deference than those imposed on adults. (*In re Ricardo P.*, (2019) 7 Cal.5th 1113, 1118.)

The *Appleton* decision also provides a useful analysis here. After Appleton met John Doe through an online dating site, Doe accused Appleton of forcing him to engage in oral copulation. Appleton eventually pleaded no contest to falsely imprisonment by means of deceit. (*People v. Appleton, supra*, 245 Cal.App.4th 717 at 719.) The trial court sentenced Appleton to probation and imposed a condition that his computers and electronic devices would be subject to warrantless search for illegal material. (*Ibid.*) Appleton challenged that condition as overbroad, vague, and unrelated to his offense. (*Ibid.*)

Although the Court of Appeal found the warrantless search condition sufficiently relevant to Appleton's offense, it held the condition was unconstitutionally overbroad. (*Id.*, at 727.)

First, the *Appleton* court affirmed that individuals retain a constitutionally protected expectation of privacy in the contents of their own

computers. (*Id.*, at 725, citing *People v. Michael E.* (2014) 230 Cal.App.4th 261, 276, *United States v. Heckenkamp* (9th Cir. 2007) 482 F.3d 1142, 1146 and *United States v. Lifshitz* (2d Cir. 2004) 369 F.3d 173, 190.) The court pointed out that the United States Supreme Court in the *Riley* case extended Fourth Amendment protections to searches of cell phones. (*Riley v. California* (2014) 573 U.S. 373, 393.)

The court adopted *Riley*'s reasoning recognizing the immense storage capacity of modern cell phones that allows users to carry large volumes of data. (*Ibid.*) The *Appleton* court warned that, unlike a typical search clause of a probationer's person, home or vehicle, a search of a person's mobile electronic devices could potentially expose a massive volume of documents or data—most smart phones today have at least 16 gigabytes of memory which can store millions of pages of text, thousands of pictures, or hundreds of videos—much of which would undoubtedly be legal and private. These could include, for example, medical records, financial records, personal diaries, and intimate correspondence with family and friends. (*Id.*, at 724-725.)

The *Appleton* court held that a warrantless search condition of Appleton's devices would "allow for searches of vast amounts of personal information unrelated to defendant's criminal conduct or his potential for future criminality" and was, therefore, unconstitutionally overbroad. (*Id.*, at 727.)

## B. The release conditions here are unconstitutionally overbroad because they sweep in private, legal content and activities and ban protected speech.

As in *Appleton* and *Malik J.*, conditioning Waer's release on broad authority to conduct warrantless searches through potentially millions of documents, pictures, and videos in his devices—all likely unrelated to his charges but highly private data protected by the Fourth Amendment—is unconstitutionally overbroad.

21

Waer is charged with chatting with an undercover detective posing as minor on two different online sites, sending two electronic photos of his genitals and attempting to meet the non-existent minor. He is not accused of possessing any pornography or other illegal material in his home, vehicle or in any electronic device. Yet, respondent court has authorized limitless searches of all digital content on devices. The state has not made a showing that any circumstance of Waer's case or history justifies a random, warrantless search of his home, person, vehicle or all his electronic devices, including storage devices. Thus, the warrantless search condition is overbroad under the California Supreme Court's overbreadth doctrine and must be stricken.

Respondent court also banned Waer from using two social media platforms, WhatsApp and MeetMe, on which Waer allegedly contacted and chatted with the undercover officer posing as an underage girl. WhatsApp is a digital messaging platform used monthly by two billion people. (Porter, *WhatsApp now has 2 billion users*, *The Verge* (Feb. 12, 2020), https://www.theverge.com/2020/2/12/21134652/whatsapp-2-billion-monthly-active-users-encryption-facebook.) MeetMe is also immensely popular social networking and dating site with over 500 million users, https://apps.apple.com/us/app/meetme-chat-meet-new-people-for-ipad/id541689313. Pet. Exh. B, PE0019.)

This wholesale ban from two highly popular social media platforms, among the world's largest forums accessed by billions of users worldwide, through which Waer has a right to communicate within under the First Amendment, is similarly overbroad and unnecessary to serve the government's purpose here. Far from narrowly tailored to prevent the proscribed conduct of communicating with minors online, this ban would

undoubtedly suppress completely legal speech, expression and activities, and represents "broad conditions that prevent otherwise lawful conduct and necessary activities." (*People v. Nice, supra*, 247 Cal.App.4th 928 at 945, citing *People v. Perez* (2009) 176 Cal.App.4th 380, 382.)

Here, the government has banned vastly more lawful conduct than necessary. Waer should not be denied his First Amendment right to use these applications, which allow him to communicate for many more purposes than merely illicit ones. A more narrow, reasonable restraint on Waer's First Amendment right to speak in a public forum would, for instance, disallow communication with minors on those platforms. A complete ban from all communication on WhatsApp and MeetMe, however, is grossly overbroad.

## 4. The pretrial release conditions imposed on Waer violate the Fourth Amendment, the Fifth Amendment and the unconstitutional conditions doctrine.

For more than 110 years, the United States Supreme Court has upheld the unconstitutional conditions doctrine, which states that "even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons," the government may not "deny a benefit to a person on a basis that infringes his constitutionally protected interests[.]" (*Perry v. Sindermann* (1972) 408 U.S. 593, 597; *See* Kathleen M. Sullivan, *Unconstitutional Conditions* (1989) 102 HARV L.REV. 1413, 1416, fn. 2.) In the Supreme Court's words, "the unconstitutional conditions doctrine vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up[.]" (*Koontz v. St. Johns River Water Management Dist.* (2013) 570 U.S. 595, 595-596.)

In its recent *Humphrey* decision, the California Supreme Court acknowledged that "those incarcerated pending trial—who have not yet been

convicted of a charged crime—unquestionably suffer a 'direct grievous loss' of freedom in addition to other potential injuries. […] Studies suggest that pretrial detention heightens the risk of losing a job, a home, and custody of a child [citations omitted]." (*In re Humphrey* (2021) 11 Cal.5th 135, 276 Cal.Rptr.3d 232, 241.) The Court concluded that "[w]hen people can obtain their release, they almost always do so: the disadvantages to remaining incarcerated pending resolution of criminal charges are immense and profound." (*Ibid.*)

The United States Supreme Court has found violations of the unconstitutional conditions doctrine where the government coercion involved conditioning a tax benefit on abstention from certain speech (*Speiser v. Randall* (1958) 357 U.S. 513, 515) and conditioning approval of a petitioner's application to expand her store on forfeiture of their right to just compensation for property taken for public use. (*Dolan v. City of* Tigard (1994) 512 U.S. 374, 385.) Here, the coercive benefit is not a tax exemption or approval of a land use permit. It is Waer's freedom—our most precious form of liberty. In exchange, the government demands not forfeiture of just compensation or abstention from narrow, proscribed speech, but Waer's waiver of some of the most fundamental constitutional rights guaranteed under First, Fourth, and Fifth Amendments. Respondent court demands the unlimited right to invade Waer's home, person, and digital life. This is an extreme and egregious violation of the unconstitutional conditions doctrine.

### A. *Scott:* pretrial release conditions that demand the waiver of Fourth Amendment rights violate the unconstitutional conditions doctrine.

In 2006, the Ninth Circuit Court of Appeal issued the *Scott* decision that addressed whether a pretrial release condition that coerced the waiver of the

24

Scott's Fourth Amendment rights violated the unconstitutional conditions doctrine. (*U.S. v. Scott* (9th Cir. 2006) 450 F.3d 863, 866-867.) The Ninth Circuit affirmed the district court's ruling, holding that warrantless searches, imposed as a condition of pretrial release, required a showing of probable cause under the Fourth Amendment, despite defendant's pre-release consent, and that the search in question could not be justified under the Fourth Amendment. (*Id.*, at 874-875.)

Scott held that conditioning a pretrial detainee's release on the waiver of his Fourth Amendment rights violated the U.S. Supreme Court's well-settled unconstitutional conditions doctrine. (*Id.*, at 865-868.) The court noted that the unconstitutional conditions doctrine was "especially important in the Fourth Amendment context." (*Id.,* at 867.) *Scott* concluded that a pretrial releasee's privacy and liberty interests are "far greater than a probationer's" (*id.*, at 874) and emphasized that pretrial releasees remain protected by the presumption of innocence. (*Id.*, at 873.)

*York* did not address unconstitutional conditions doctrine but *York* did not provide carte blanche for courts to impose warrantless search conditions in every case. (*Id.* at 1151, fn. 10.)

Here, where respondent court induced Waer to waive his Fourth Amendment rights by conditioning his freedom upon his agreement to a warrantless search of his person, home, vehicle and devices, that release condition violates the unconstitutional conditions doctrine, and is thus invalid.

**B. Compelling Waer to open his digital devices using passcodes and reveal all content violates his Fifth Amendment's protection against self-incrimination and the unconstitutional conditions doctrine.**

Respondent court conditioned Waer's pretrial release on allowing law enforcement to "immediately access and log in to those devices, phone, computer, hard drives, USB drives, other storage devices by whatever means necessary, a thumbprint, facial recognition, password, and login credentials...He must log in to those devices and permit law enforcement to inspect and copy those devices per the search term." (Pet. Exh. F, 8:6-8. PE0085.)

As argued above, respondent court violated the well-established U.S. Supreme Court's unconstitutional conditions doctrine by conditioning Waer's freedom on the waiver of his Fourth Amendment rights, Similarly, respondent court violated the doctrine when it exacted Waer's waiver of his Fifth Amendment right against self-incrimination by coercing him to use passcodes to make all devices accessible to law enforcement in exchange for release from custody.

The provision of the Fifth Amendment to the United State Constitution that "no person... shall be compelled in any criminal case to be a witness against himself," (U.S. Const. amend. V) "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might also be used." (*Kastigar v. United States* (1972) 406 U.S. 441, 445.)

The question presented here is: does respondent court's order for Waer to unlock his electronic devices with a password trigger his Fifth Amendment protection against self-incrimination?[2] A search revealed no published

---

[2] This petition does not address a related, but distinctly separate issue—not relevant here because respondent court specifically did not order it—that is, whether compelling someone to reveal a device passcode to the state is testimonial, implicating the Fifth Amendment.

California state cases on point. Upon a review of other state and federal cases on the issue, however, the answer is yes. And if respondent court conditioned Waer's release from custody by coercing him to waive his Fifth Amendment right against self-incrimination, that violates the unconstitutional conditions doctrine.

**(1) The act of inputting a password to unlock a device is a "testimonial communication" triggering the Fifth Amendment protection against self-incrimination**.

The proper initial inquiry is whether an act would require the compulsion of a *testimonial* communication that is incriminating. (*See Fisher v. United States* (1976) 425 U.S. 391, 409, emphasis added.) Testimony is not restricted to verbal or written communications. Acts that imply assertions of fact can constitute testimonial communication for the purposes of the Fifth Amendment. (*Doe v. United States* (2011) 487 U.S. 201, 208.) Specifically, a witness's "act of production itself could qualify as testimonial if conceding the existence, possession and control, and authenticity of the documents tended to incriminate them." (*In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011* (11th Cir. 2012) 670 F.3d 1335, 1343, citing *United States v. Fisher*, *supra*, 425 U.S. at 410.)

Certain acts, while incriminating, are not within the privilege, such as furnishing a blood sample, submitting to fingerprinting, providing a handwriting or voice exemplar, or standing in a lineup. (*Doe, supra*, 487 U.S. at 210.) Compulsion which makes a suspect or accused the source of real or physical evidence does not violate the Fifth Amendment. (*Schmerber v. California* (1966) 384 U.S. 757, 764.)

**(A)   U.S. Supreme Court precedent: the act of producing documents is "testimonial."**

In the 1976 *Fisher* case, the United States Supreme Court held that *the act of producing evidence* has communicative aspects separate from the documents' contents because the act of production "tacitly concedes" the documents' existence and, more importantly, that they are in the possession or control of the individual. (*Fisher, supra,* 425 U.S. at 410, emphasis added.)

*Fisher* also established the "foregone conclusion doctrine," which states that where the existence, location, and authenticity of the evidence is a foregone conclusion—and the witness "adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [documents]"—the Fifth Amendment does not protect the act of production. (*Id.,* at 411.) For the doctrine to apply, the government must show with "reasonable particularity" that when production was sought, it knew the evidence existed and was in the possession or control of the defendant. (*United States v. Greenfield* (2nd Cir. 2016) 831 F.3d 106, 116.) The foregone conclusion doctrine does not apply when the government cannot show prior knowledge of the existence or the whereabouts of the documents ultimately produced in response to a subpoena. (*United States v. Hubbell* (2000) 530 U.S. 27, 45.)

In the 2000 *Hubbell* case, the High Court reaffirmed *Fisher* by holding that production of potentially incriminating documents produced in response to a government subpoena in a tax evasion, mail and wire fraud case was testimonial because the government failed to show that it had any prior knowledge of the papers' existence or location. (*Hubbell, supra,* 530 U.S. at 43-44.) The Court in *Hubbell* defined "testimonial" as communication that "explicitly, or implicitly, relate a factual assertion or disclose information." (*Id.* at n. 19, citing *Doe v. United States, supra,* 487 U.S. at 209-210.)

In contrast, the Court held in the 2011 *Doe* case that signing a bank form to disclose bank accounts was not testimonial because the act of signing neither relied on Doe's "truth telling" to uncover evidence—the government would still need to do an investigation to determine if the accounts existed—nor made any implicit or explicit statement about the existence or control over any account. (*Doe, supra,* 487 U.S. at 205.)

Justice Stevens, dissenting in *Doe* case, used an apt analogy: signing a bank consent form was more like being "forced to surrender a key to a strongbox than being compelled to reveal the combination to a wall safe." (*Id.,* at 219.)

Using that analogy here, state and federal cases have held that compelling the use of passwords to open devices is more akin to providing the combination to a wall safe than surrendering the key to a strongbox.

### (B)    State and federal courts hold that the act of compelling passwords is "testimonial."

Two cases directly on point—a federal district court case and a state supreme court case—held that compelling the use of passwords to unlock devices qualified as testimonial, implicating the Fifth Amendment.

In 2019, the United States District Court for the Northern District of California held that compelling biometric features to unlock devices, which serves the same purpose as using a passcode—securing content—is testimonial, unlike submitting to fingerprinting or DNA swab, and triggers the Fifth Amendment's protection against self-incrimination. (*Matter of Residence in Oakland, California* (N.D. Cal. 2019) 354 F.Supp.3d 1010, 1015-1016.)

First, the court acknowledged that people do not waive their Fifth Amendment protections by using new technology (*Id.,* at 1014, citing

*Carpenter v. U.S.* (2018) 138 S.Ct. 2206, 2214) and that today's electronic devices are entitled to greater privacy protection than traditional storage devices, due to the massive amount of private information they hold. (*Id.*, at 1017, citing *Riley v. California, supra*, 573 U.S. at 385, 394.) The court then reasoned that the act of unlocking a device using a passcode or biometric feature concedes that the phone was in the possession and control of the suspect, and authenticates ownership or access to the phone and all of its digital contents, in contrast to the "physical evidence" produced by a fingerprint of DNA swab. (*Id.*, at 1016.) A biometric feature is analogous to the nonverbal, physiological responses elicited during a polygraph test, which are used to determine guilt or innocence, and are considered testimonial. (*Ibid.*; See *Schmerber v. California* (1966) 384 U.S. at 757, 764.)

Finally, the court found the foregone conclusion doctrine inapplicable Because smartphones contain large amounts of data, including GPS location data and sensitive records, the full contents of which cannot be anticipated by law enforcement, the government "inherently lacks the requisite prior knowledge of information and documents that could be obtained via a search of these unknown digital devices, such that it would not be a question of mere surrender." (*Id.*, at 1017-1018; See *Hubbell, supra*, 530 U.S. at 44-45, 120.) The court rejected the argument that compelling a suspect to provide a biometric feature to access documents and data is synonymous with producing documents pursuant to a subpoena. (*Id.*, at 1017.)

Mirroring the Northern District of California's decision in *In the Matter of a Residence in Oakland*, the Indiana Supreme Court came to a similar conclusion in the 2020 *Seo* case. Seo was arrested for stalking and harassment for placing calls and texts to the victim using an app or internet program to disguise her phone number. Police confiscated her iPhone and

secured a search warrant compelling Seo to unlock her phone. When Seo refused, invoking the Fifth Amendment, the court held her in contempt. (*Seo v. State* (Ind. 2020) 148 N.E.3d 952, 954-955.)

On appeal, the Indiana Supreme Court vacated the contempt order, holding that the act of unlocking a smartphone is testimonial, implicating the Fifth Amendment. The court ruled that the foregone conclusion doctrine should not be expanded to include the compelled production of an unlocked smart phone because "such an expansion (1) fails to account for the unique ubiquity and capacity of smartphones; (2) may prove unworkable; and (3) runs counter to U.S. Supreme Court precedent." (*Id.*, at 958-959.)

The *Seo* court noted that it was not the password that was the foregone conclusion, but the information that lies beyond the password. Because the state failed to demonstrate that it previously knew any particular file existed on the device or that it already knew Seo possessed the files, the act of unlocking the phone would provide the state with access to information that it did not already know. (*Id.*, at 958.) The court also stated that the foregone conclusion doctrine should not apply to smartphones at all because producing an unlocked smartphone is not the same as producing documents, reasoning that there is no limit as to what is produced (*ibid.*) and that the police would have instant access to all the owner's private information. As such, the court found that compelling Seo to unlock her iPhone for law enforcement officers would violate her Fifth Amendment right against self-incrimination. (*Id.*, at 962.)

**(C)   Compelled decryption of a hard drive held to be testimonial, implicating the Fifth Amendment.**

In 2011, the Eleventh Circuit Court of Appeal held that compelled decryption of the contents of a laptop and external hard drive implicated the

Fifth Amendment right against self-incrimination. (*In Re Grand Jury Subpoena Duces Tecum Dated March 25, 2011* (11th Cir. 2011) 670 F.3d 1335, 1337.) In a child pornography case against John Doe, the government issued a grand jury subpoena requiring Doe to produce unencrypted contents of a laptop and external hard drive, though the state admitted that it had no knowledge that the devices contained pornography or other illicit material. (*Id.*, at 1340.) The court rejected Doe's invocation of his Fifth Amendment rights against self-incrimination, held him in contempt and incarcerated him. (*Id.*, at 1338.)

On appeal, the Eleventh Circuit reversed, holding that the act of decryption and production of the contents of the hard drive sufficiently implicated the Fifth Amendment privileges. (*Id.*, at 1341.) The court determined that the decryption of hard drives was testimonial because decryption involved Doe using the contents of his mind and was tantamount to testimony of his knowledge of the existence and location of potentially incriminating files. (*Id.*, at 1346.) Further, the court concluded that the foregone conclusion doctrine did not apply, since "[N]othing in the record before us reveals that the Government knows whether any files exist and are located on the hard drives." (*Ibid.*)

**(2) Waer cannot be compelled to unlock his devices using passcodes, since the state has not shown it knows the devices contain illicit information**.

Under the authority of *Matter of Residence in Oakland*, *Seo* and *In re Grand Jury Subpoena Duces Tecum*, respondent court's order for Waer to unlock all his devices upon request of law enforcement violates his Fifth Amendment right against self-incrimination. The act of unlocking his devices using passcodes is testimonial because it would concede that the devices were in his possession and control, and authenticate ownership or access to devices

and all of its digital contents, potentially exposing unlimited material in the devices. Furthermore, the state cannot claim the foregone conclusion doctrine here because no showing has been made of previous knowledge that Waer's devices contain illicit material.

Respondent court's order for Waer to unlock his electronic devices runs afoul of the Fifth Amendment and thus should be stricken as unconstitutional.

## Conclusion

Respondent court's constitutionally overbroad release conditions cast too wide a net, without a showing why such intrusive measures are needed to prevent unknown future harm. The state has failed to show why ordering Waer to unlock all electronic devices, including storage devices, would lead to anything other than a fishing expedition. Finally, respondent court has forced Waer to make a "bargain with the devil," by exacting waivers of Waer's First, Fourth, and Fifth Amendment rights in exchange for his freedom and denying Waer his presumption of innocence before any evidence of guilt has been shown.

Respectfully, petitioner Waer asks this Court to issue a Writ of Habeas Corpus directing respondent court to vacate its order of pretrial release conditions subjecting Waer to a warrantless search of his person, home, vehicle and electronic devices, totally banning him from using the WhatsApp and MeetMe apps and compelling him to open his locked electronic devices for law enforcement to review and copy.

In the alternative, petition asks an order to show cause why the relief should not be granted.

Dated: May 3, 2021                    Respectfully submitted,

_____
Sujung Kim
Deputy Public Defender
Attorney for Petitioner

## Word-Count Certificate

I, Sujung Kim, declare and certify under penalty of perjury that I am an attorney licensed to practice law in the State of California (SBN 176602) and employed as a Deputy Public Defender for the City and County of San Francisco. I certify that the attached petition with memorandum of points and authorities is prepared in 13-point Century Schoolhouse Font and contains about 6560words, not including caption, index, tables, verification, or this certificate.

Dated: May 3, 2021

_____

Sujung Kim

# Petition Exhibit A

CHESA BOUDIN, SB# 284577
District Attorney
San Francisco District Attorney's Office
350 Rhode Island, Suite 400N
San Francisco, CA  94103

ATTORNEYS FOR THE PEOPLE

**FILED AND ENTERED/ENDORSED
SAN FRANCISCO COUNTY
SUPERIOR COURT
2/22/2021**

**CLERK OF COURT**

DocuSigned by:

*Michelle Calzaro*

D0A5C07DDDED4E2

**DEPUTY CLERK**

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO

| THE PEOPLE OF THE STATE OF CALIFORNIA<br>Plaintiff,<br><br>v.<br><br>RYAN WAER<br>Defendant. | FELONY COMPLAINT<br><br>CASE NUMBER:<br>21001863 |
| --- | --- |

The Undersigned, being sworn says, on information and belief, that:

**COUNT: I**

The said defendant, RYAN WAER, did in the City and County of San Francisco, State of California, on or about the **18th day of February, 2021**, commit the crime of MEETING MINOR FOR LEWD PURPOSES, to wit: Violating Section **288.4(b)** of the Penal Code, a Felony, in that the said defendant did willfully and unlawfully, and motivated by an unusual and abnormal sexual interest in children, arrange a meeting with a minor and person said defendant believed to be a minor, for the purpose of exposing the genitals and pubic and rectal area of said victim and defendant, and to engage in lewd and lascivious behavior, and did go to the arranged meeting place at and about the arranged time.

DocuSign Envelope ID: FEC060B5-E84C-4277-9I      7D75B5F01B

## COUNT: II

The said defendant, RYAN WAER, did in the City and County of San Francisco, State of California, on or about the **17th day of February, 2021**, commit the crime of CONTACT WITH MINOR FOR SEXUAL OFFENSE, to wit: Violating Section **288.3(a)** of the Penal Code, a Felony, in that the said defendant did willfully and unlawfully contact and communicate with a minor when said defendant knew and reasonably should have known that the victim was a minor, with the intent to commit an offense specified in Penal Code Section 207, 209, 261, 264.1 273a, 286, 287, 288, 288.2, 289, 311.1, 311.2, 311.4 and 311.11 involving said victim.

## COUNT: III

The said defendant, RYAN WAER, did in the City and County of San Francisco, State of California, on or about the **11th day of February, 2021**, commit the crime of CONTACT WITH MINOR FOR SEXUAL OFFENSE, to wit: Violating Section **288.3(a)** of the Penal Code, a Felony, in that the said defendant did willfully and unlawfully contact and communicate with a minor when said defendant knew and reasonably should have known that the victim was a minor, with the intent to commit an offense specified in Penal Code Section 207, 209, 261, 264.1 273a, 286, 287, 288, 288.2, 289, 311.1, 311.2, 311.4 and 311.11 involving said victim.

## COUNT: IV

The said defendant, RYAN WAER, did in the City and County of San Francisco, State of California, on or about the 11th day of February, 2021, commit the crime of SENDING HARMFUL MATTER OF TO A MINOR, to wit: Violating Section **288.2(a)(2)** of the Penal Code, a Felony, in that the said defendant, who knew, should have known, and believed that the victim was a minor, did unlawfully and knowingly distribute, send, cause to be sent, exhibit, and offer to distribute and exhibit by any means, including by physical delivery, telephone, electronic communication, and in person, harmful matter to the victim with the intent of arousing, appealing to and gratifying the lust and passions and sexual desire of said defendant and victim, and with the intent and for the purposes of engaging in sexual intercourse, sodomy, and oral copulation with said victim, and with the intent that either defendant or victim touch an intimate body part of the other.

## COUNT: V

The said defendant, RYAN WAER, did in the City and County of San Francisco, State of California, on or about the 11th day of February, 2021, commit the crime of ARRANGING A MEETING WITH MINOR FOR LEWD PURPOSES, to wit: Violating Section **288.4(a)(1)** of the Penal Code, a Misdemeanor, in that the said defendant did willfully and unlawfully, and motivated by an unusual and abnormal sexual interest in children, arrange a meeting with a minor and person said defendant believed to be a minor, for the purpose of exposing the genitals and pubic and rectal area of said victim and defendant, and to engage in lewd and lascivious behavior.

DocuSign Envelope ID: FEC060B5-E84C-4277-9    7D75B5F01B

Pursuant to Penal Code sections 1054 through 1054.7, the People request that, within fifteen (15) days, the defendant and/or his/her attorney disclose: (A) the names and addresses of persons, other than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements, of those persons including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial; (B) Any real evidence which the defendant intends to offer in evidence at the trial.  This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.

**MARSY'S LAW**

**Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2(a)(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else.  Note exceptions in California Penal Code § 1054.2(a)(2).**

I state, declare, verify and certify under the penalty of perjury that the foregoing is true and correct.  Executed in San Francisco, California on February 19, 2021.

kh/21001863

DocuSigned by:

*OFFICER IRENE MICHAUD*

L1206DA0B2ZD10C...

OFFICER IRENE MICHAUD
2/19/2021

3

# Petition

# Exhibit B

1  CHESA BOUDIN
   District Attorney
2  State Bar No. 284577
   MICHELE C. BRASS
3  Assistant District Attorney
   State Bar No. 173266
4  350 Rhode Island Street, Suite 400N
5  San Francisco, California 94103
   Telephone: (628) 652-4206
6  Email: michele.brass@sfgov.org
7  Fax: (628) 652-4161

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9                  **COUNTY OF SAN FRANCISCO**

10

11  PEOPLE OF THE STATE OF CALIFORNIA,          Court No. 21001863

12

13          Plaintiff,

                                                **PEOPLE'S BRIEFING RE:**
14      vs.                                     **CONDITIONS OF RELEASE**
                                                **RELATED TO DEFENDANT'S**
15  RYAN WAER,                                  **CHARGED OFFENSES**

16          Defendant.
                                                Date: March 1, 2021
17                                              Time: 9:00 am
                                                Dept:  9
18

19

20  TO THE HONORABLE JUDGE DARWIN OF THE SUPERIOR COURT, TO
    DEFENDANT RYAN WAER BY AND THROUGH HIS ATTORNEY, KELSEY
21  RYBURN:

22                          **INTRODUCTION**

23
         This matter comes before the Court in response to a request for briefing regarding legal
24
    authority and/or validity of release conditions proposed by the People as part of Mr. Waer's
25
    release from custody.  Specifically at issue is the People's request to impose a search condition
26
    that extends to Mr. Waer's electronics or social media applications, under the control of the
27
    defendant, and the necessity to provide his password(s) in order to potentially monitor such
28

                                            1

1   devices. Such conditions also include a search condition as to Mr. Waer's person, place and

2   vehicle. These conditions are directly related to the charges in this matter and to ensure public

3   safety. The defense objected to the search condition related to Mr. Waer's computer or media

4   devices based on certain case law that has ruled this condition unconstitutional. At the time, the

5   defense did not cite any legal authority or case law in support of their argument  The defense also

6

7   did not specify whether they assert Mr. Waer's rights would be violated by such conditions under

8   the Federal or State Constitution or the Due Process Clause.

9        As detailed below, a trial court possesses the inherent authority to impose conditions

10   associated with defendant's release from custody pursuant to CA Penal Code section 1381(a)(2).

11

12

13                          **STATEMENT OF THE CASE**

14        Defendant, Ryan Waer, is charged with one felony count of Penal Code section 288.4(b)

15   (Meeting with a Minor for Purposes of Engaging in Certain Lewd and Lascivious Behavior);

16   Two felony counts of Penal Code section 288.3(a) (Contact or Communication with a Minor

17   with Knowledge and Intent to Commit Specified Offenses); one felony count of Penal Code

18   section 288.2(a) (Sending Harmful Matter to a Minor by Electronic Mail, Internet or Commercial

19   Online Service); and one misdemeanor count of Penal Code section 288.4(a)(1) (Arrangement of

20   Meeting with a Minor for Purposes of Engaging in Certain Lewd and Lascivious Behavior.)

21

22   *Attached to this motion as supporting exhibits are the following:*

23

24   A.  SFPD Incident Report # 210111120; and
25   B.  Chronological of Investigation Report – Sgt. Servat.

26

27       / / /

28       / / /

2

## STATEMENT OF THE FACTS

On February 18, 2021, as a result of an undercover online investigation conducted by the SFPD Internet Crimes Against Children (ICAC) unit, it was determined that an individual, later identified as defendant Ryan Waer, would be responding to the area of Bay and Franklin Street for the purpose of meeting an underage fourteen (14) year old girl to engage in sexual conduct. During the investigation, SFPD discovered that defendant Waer had sent sexually explicit images of his penis to the minor through an internet chat platform with the application title of "Meetme" and also "WhatsApp."

Based on this investigation, the ICAC unit determined that defendant Waer would be meeting someone by the name of "Jess" at this location. At approximately 2:30 pm, the undercover officers observed an individual who matched the profile identified in the chat rooms as defendant Waer arrive and sit on the grass just north of Bay Street. After identifying themselves as police officers, Waer was taken into custody and provided a post-*Miranda* statement indicating that he arrived at that location to meet with a girl he had met online. He confirmed that he had sent her photos of his penis and that she informed him that she was fourteen (14) years old.

## ARGUMENT

I. **THE CALIFORNIA SUPREME COURT HAS CONCLUDED THAT A TRIAL COURT HAS THE INHERENT AUTHORITY TO IMPOSE RELEASE CONDITIONS RELATED TO PUBLIC SAFETY.**

A condition of release is permitted if there is a sufficient nexus between the condition imposed and the charges against the defendant. (*In re Webb* (2019) 7 Cal.5th 270.) Further, CA Penal Code section 1318 allows the Court to impose reasonable conditions when defendant is released on their own recognizance. (CA Penal Code section 1318(a)(2).) Specifically, a trial court may require that the defendant "promise to obey all reasonable conditions imposed by the

3

1    court or magistrate." (*See*; Penal Code section 1318(a)(2).)   This section states in full the

2    following:

> (a) The defendant shall not be released from custody under an own recognizance until the defendant files with the clerk of the court or other person authorized to accept bail a signed release agreement which includes:
>
> (1)   The defendant's promise to appear at all times and places, as ordered by the court or magistrate and as ordered by any court in which, or any magistrate before whom the charge is subsequently pending.
>
> (2)   The defendant's promise to **obey all reasonable conditions imposed by the court or magistrate.**
>
> (3)   The defendant's promise not to depart this state without leave of the court.
>
> (4)   Agreement by the defendant to waive extradition if the defendant fails to appear as required and is apprehended outside of the State of California.
>
> (5)   The acknowledgment of the defendant that he or she has been informed of the consequences and penalties applicable to violation of the conditions of release.
>
> *CA Penal Code section 1318.*

In sum, a judge may impose reasonable conditions so long as the conditions are not capricious and based on the specific charges attributed to that defendant that is before the court. (*In re Webb* (2019) 7 Cal.5th 270.)   Neither the Fourth Amendment of the Constitution nor Article I of the California Constitution prohibit conditions of release under Penal Code section 1318. (*In re York* (1995) 9 Cal.4th 1133 at 1144.)   The Court in *York* reasoned that it is imperative to look at the legislative history of CA Penal Code section 1318(a)(2) which indicated the following:

> …[W]e believe the legislative history of the 1988 amendment demonstrates that it was intended to make clear that a court or magistrate has the authority, in granting OR release, to require a defendant to promise to comply with *all* "reasonable conditions…

(*Id.* at 1145.)   Neither *York* nor § 1318 outline exclusions or inclusions as to available release

4

conditions, but rather creates a test by which the magistrate is to make an individualized

determination.  The court should ask whether the release condition is based on articulable facts

that are reasonably related to this particular defendant, the conduct alleged and the charges.

(*York* at 1145.)

In *York*, the CA Supreme Court determined that the Magistrate merely checked certain

boxes on a standard pre-release form without making an individualized determination as to the

reasonableness of the conditions in relation to the charges associated with each defendant.  (*York,*

*Supra* at 1138.)  However, the Supreme Court stated that a court may impose random drug

testing, warrantless searches and seizures during the period of release in appropriate

circumstances based on the charges against the defendant.  (*York, Supra* at 1138-39.)  The Court

further stated that a court or magistrate has the authority, in granting OR release, to require the

defendant to comply with all reasonable conditions even one's that implicate the defendant's

constitutional rights.  (*York, Supra* at 1139.)   Here, the request by the People is to impose

reasonable conditions directly related to the conduct charged in the Complaint.  After logging

into a social media application on a media device, engaging in several sexually explicit

conversations with "Jess," Mr. Waer then allegedly sent graphic photos to the acting minor and

subsequently drove to a location to meet at an arranged time.  There is a direct connection

between the search conditions requested and the conduct alleged in the Complaint.  There is

nothing capricious about the connection between the charges and the conditions requiring the

monitoring of the defendant's computer.

In *United States v. Collins*, the defendants were indicted on 15 counts of conspiracy to

cause damage to a protected computer by attacking PayPal's computer server in retaliation for

the company deleting WikiLeaks.org donation account.  (*United States v. Collins* (2012) U.S.

Northern Dist. of CA LEXIS 35980.)  When the defendants made their initial court appearance

for arraignment, the magistrate agreed to release each defendant with certain conditions

0008

1   including that the defendant (1) not participate in or accessing internet chat rooms; (2) not use or

2   access Twitter; (3) designate the computer or computers that would be accessible while on

3   release; (4) not delete any internet history; and (5) make available all computers for inspection

4   for Pre-Trial Services.  One year later, the parties appeared before the court to request

5   modifications of release.  The court found that based on the lapse of time and the lack of re-

6   offending, certain conditions could be modified, such as monitoring of only the "intentional"

7   deletion of internet history, but the court also stated that all of the conditions were directly

8   related to a necessary, legitimate government interest in protecting the public pending

9   defendant's trial.  (*Id.*)

10

11         Conversely, in *Gray v. Superior Court* (2005) 125 Cal.App.4th 629, a doctor was charged

12   with multiple criminal counts, including possession of controlled substances (Health & Safety

13   Code §§ 11153(a), 11350(a), 11375(b)(2)) and child pornography (Pen. Code, § 311.11), as well

14   as sexually exploiting a patient or former patient (Bus. & Prof. Code, § 729). (*Id* at 635.)  The

15   prosecution asked that "as a condition of release on bail that Dr. Gray's medical license be

16   suspended so that he will not be able to prescribe drugs or have access to any kind of patients at

17   all." (*Id* at 635–636.) The trial court agreed and ordered, as a condition of OR release that the

18   defendant not practice medicine and be stripped of his medical license. (*Id* at 636.)

19

20         The *Gray* court found that the court cannot justify depriving Gray of his medical license

21   without due process.  Although public safety is paramount, some measure of due process must be

22   given to a professional license holder before license suspension.  The court concluded that "[t]he

23   trial court significantly impaired Gray's freedom to pursue a private occupation without giving

24   him notice, an effective opportunity to confront the charges or witnesses against him, or a full

25   hearing, in violation of his due process rights." (*Id.* at 638.)

26

27         The *Gray* case is instructive because the court found that stripping a property interest,

28   such as a professional license, is distinguishable to other conditions of release because there is a

6

vested right in obtaining a medical license that cannot be taken without due process safeguards. (*Gray v. Superior Court* (2005) 125 Cal.App.4th at 638.) Moreover, the court in *Gray* reasoned that Penal Code section 23 requires that only the state agency that issued a professional license may remove or suspend the license *after* a hearing. (*See*; CA Penal Code section 23.)  It should be noted that an extensive case law search, related to the constitutionality of release conditions, revealed only instances of over-reaching when the condition involved the termination and/or suspension of a professional license. (*See also; Naidu v. Superior Court* (2018) 20 Cal.App.5th 300; Court affirmed the holding in *Gray* after a trial court suspended a defendant's business license.)  In the instant matter, the People are not asking for conditions that would strip any professional license or vested property interest from Mr. Waer.  There is no due process violation because the requested conditions would still allow Mr. Waer to work and in no way infringe on any professional license.  Moreover, the conditions are directly related to the charges and to ensure public safety.

## II.   THE PRETRIAL RELEASE CONDITIONS DO NOT VIOLATE STATE OR FEDERAL CONSTITUTIONAL LAW.

The court in *York* addressed whether such release conditions violated either the Fourth Amendment to the Federal Constitution or various constitutional rights to privacy and due process under the California Constitution.  It held that none of these Constitutional rights were violated or implicated in any way. (*In re York* (1995) 9 Cal.4th 1133 at 1148.)

First, in looking at a defendant's Fourth Amendment rights, the *York* court found that a criminal defendant has a different expectation of privacy than those not charged with any crime. (*Supra.* at 1149.)  If a defendant rejected OR conditions and remained in custody, he/she would arguably have no expectation of privacy and therefore could not challenge in custody searches or seizures.  The court analogized to a probationers' acceptance of probation terms in lieu of a state

7

1    prison sentence, citing prior case law that reiterates that probation is not a right, but a privilege.

2    (Citing *People v. Bravo* (1987) 43 Cal. 3d 600, 608.) The fact that the option of release over

3    incarceration is a much more desirable option does not in and of itself make the choice coerced

4    or involuntary. (*York* at 1150.)

5        In *York,* the petitioners argued that their due process rights were violated because they

6    may be treated differently than one released on bail.  However, this argument would also be

7    without merit under *York* and *In re Webb* (2019) 7 Cal. 5th 270.  In *Webb,* the Court added to its

8    holding in *York* that Courts could also impose conditions on criminal defendants who were

9    released in exchange of posting bail and that it had inherent authority to do so. (*Webb,* 7 Cal. 5th

10   270.) Read together, *York* and *Webb* establish that a Court has the authority to require someone

11   released on either OR or bail to submit to conditions in exchange for their release.[1]  *Webb* noted

12   that any condition must be "reasonable" and there must be "a sufficient nexus between the

13   condition and the protection of public safety".  (*In re Webb* at 278.)

14

15   III.  **THE CONDITION TO PROVIDE PASSWORD(S) IS REASONABLE AND LINKED
         DIRECTLY TO THE DEFENDANT AND HIS CHARGES.**

16       Here, the defense challenges the pre-trial release condition that defendant provide

17   passwords to any electronic devices.  This would render the search condition meaningless and

18   not provide a way to monitor the devices.  Without the passwords, there is essentially no search

19   condition.  If these devices were subsequently searched based on a belief that the defendant was

20   violating the terms of release, the court could then decide whether or not defendant should

21   remain out of custody pending trial, based on a public safety analysis.  Whether or not the results

22   of any monitoring would then be allowed to be used as evidence is a different assessment and

23   legal analysis.

---

[1] *Webb* also dealt with a search condition as a condition of bail, but the Supreme Court declined to rule specifically on this issue as it was moot as to the defendant.

8

As set forth in *Bell v. Wolfish* (1979) 441 U.S. 520, the United States Supreme Court has held that, "[T]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. ***But it has no application to a determination of the rights of a pretrial defendant during confinement before his trial has ever began.***" The Court further stated, "The presumption of innocence has never been applied to situations other than the trial itself. To apply it to the pretrial bond situation would make any conditions of release unconstitutional." (*Id* at 464-465.)

## CONCLUSION

Based on the above analysis and cited legal authorities, the People submit that the requested conditions, specific to the charges against Mr. Waer, are reasonable and necessary pursuant to Penal Code section 1318. In sum, courts have held that pre-trial release conditions, including searches of the defendant's car, home and/or computer do not infringe on the defendant's constitutional rights. A trial court has an inherent right to impose conditions that are directly related to the charged conduct.

Date:  February 24, 2021

Respectfully submitted,

Michele C. Brass
Assistant District Attorney

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Report Type: **Initial**

# San Francisco Police Department
# INCIDENT REPORT

**210111120**

## INCIDENT

| Incident Number | Occurrence From Date / Time | Occurrence To Date / Time | Reported Date / Time | CAD Number |
|---|---|---|---|---|
| 210-111-120 | 02/18/2021    14:20 | | 02/18/2021    14:49 | 210492034 |

**210111120**

| Type of incident |
|---|
| CHILD ABUSE, EXPLOITATION  15016   OBSCENE MATTER, DISTRIBUTION TO MINORS  14017 |

| Location of Occurrence: | At Intersection with/Premise Type | District |
|---|---|---|
| BAY ST | FRANKLIN ST / PARK | NORTHERN |

| Confidential Report? ☐ | Arrest Made? ☑ | Suspect Known? ☐ | Suspect Unknown? ☐ | Non-Suspect Incident? ☐ | Domestic Violence? ☐ | (Type of Weapon Used) | Use of Force? ☐ | Reporting Unit 5W106 |
|---|---|---|---|---|---|---|---|---|

| Location Sent / On View: | At Intersection with | Reporting District |
|---|---|---|
| 1503  NORTH POINT ST | | NORTHERN |

| Crime and Clearance Status 6 | Reported to Bureau | Name | Star | Date/ Time | Elder Victim ☐ | Gang Related? ☐ | Juvenile Subject? ☐ | Prejudice Based? ☐ |
|---|---|---|---|---|---|---|---|---|

| Have you reviewed the attached list of procedures required by Department General Order (DGO) 7.04? Yes |
|---|

## OFFICER DECLARATION

I declare under penalty of perjury, this report of __4__ pages is true and correct, based on my personal knowledge, or is based on information and belief following an investigation of the events and parties involved.

PROP 115 CERTIFIED          5 Years

| Reporting Officer | Star | Station | Watch | Date |
|---|---|---|---|---|
| SERVAT, CHRISTOPHER M | 285 | SVU - Juvenile ICAC | 0800-1800 | 02/18/21 16:42 |
| Reviewing Officer | Star | Station | Watch | Date |
| SERVAT, CHRISTOPHER M | 285 | SVU - Juvenile ICAC | 0800-1800 | 02/18/21 16:42 |
| OIC | Star | Station | Watch | Date |
| SERVAT, CHRISTOPHER M | 285 | SVU - Juvenile ICAC | 0800-1800 | 02/18/21 16:43 |

| Related Case -- | Related Case -- | Re-assigned to Copies to 5T300A | Assigned to 5T300A Add'l Copies | Assigned by CS 285 |
|---|---|---|---|---|

## REPORTEE 1

| Code R 1 | Name (Last, First Middle) SFPD, 285 | | Alias | Email |
|---|---|---|---|---|

| Day Phone (415) 734-3038 | Type Work | Home Address | City | State | Zip Code |
|---|---|---|---|---|---|
| Night Phone | Type | Work Address 850 BRYANT ST , APT# 500 | City SAN FRANCISCO | State CA | Zip Code - |

| DOB        /  Age | DOB Unk. ☐ | or age between and | Race | Sex | Height | Weight | Hair Color | Eye Color | ID Type   Jurisd.   ID No. |
|---|---|---|---|---|---|---|---|---|---|

| Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | Follow-up Form YES ☐ | Statement YES ☐ | Relationship to Subject |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language |
|---|---|---|

| Interpreter Needed ☐ | Language | Language Description(if Other) | Language Line Service/Interpreter ID# | Bilingual Ofc Star# |
|---|---|---|---|---|

WAE-000010

San Francisco Police Department

Report Type: **Initial**

**INCIDENT REPORT**

**210111120**

| B O O 1 K E D | Code | Name (Last, First Middle) | | Alias | | Email | |
|---|---|---|---|---|---|---|---|
| | B 1 | WAER, RYAN | | | | | |

**BOOKED 1**

| Code | Name (Last, First Middle) | Alias | Email |
|---|---|---|---|
| B 1 | WAER, RYAN | | |

| Day Phone | Type | Home Address | City | State | Zip Code |
|---|---|---|---|---|---|
| (415) 881-0866 | Cell | 1941 TAYLOR ST | SAN FRANCISCO | CA | - |

| Night Phone | Type | Work Address | City | State | Zip Code |
|---|---|---|---|---|---|
| | | | | | |

| DOB Unknown ☐ | Date of Birth 02/01/93 | Age 28 | or age between and | Race W | Sex M | Height 5'10 | Weight 180 | Hair Color BRO | Eye Color BLU |
|---|---|---|---|---|---|---|---|---|---|

| SFNO | J/D# (if Juvi) | ID Type/Jurisdiction/Number | ID Type/Jurisdiction/Number | ID Type/Jurisdiction/Number |
|---|---|---|---|---|
| | | DL CA ▮▮▮ | | |

| Booking Charge(s) | Booking Location |
|---|---|
| NW 288.4(B) PC / NW 288.3(A) PC / NW 288.2(A)(2)PC / 288.4(A)(1) PC | COUNTY JAIL #1 - 7TH STREET SHERIFF'S FACILITY |

| Warrant # | Court# | Action# | Dept# | Enroute to |
|---|---|---|---|---|
| | | | | |

| Warrant Violation(s) | Bail ($) |
|---|---|
| | |

| Citation# | Violation(s) | Appear Date/time | Location of Appearance |
|---|---|---|---|
| | | | |

| ☐ CA Form Booked Copy Attached | Mirandized: Star ☑ 285 | Date Time 02/18/2021 14:32 | CWB Check PFEIFER | Star 24 |
|---|---|---|---|---|

| Book/Cite Approval SGT. SERVAT | Star 285 | Mass Arrest Code | M X-Rays ☐ | School (if Juvenile) | Statement ☑ |
|---|---|---|---|---|---|

| Other Information: Citation/Warrant/Booking Charge(s)/Missing Person-Subject Description; Scars, Marks, Tattoos |
|---|
| LSW: BROWN PLAD SHIRT, BLACK JEANS |

| Interpreter Needed ☐ | Language | Language Description(if Other) | Language Line Service/Interpreter ID# | Bilingual Ofc Star# |
|---|---|---|---|---|

| P R O P E R T Y | E 1 | Code/No EVD 1 | Item Description IPHONE | | Brand APPLE | Model |
|---|---|---|---|---|---|---|

**PROPERTY E 1**

| Code/No | Item Description | | Brand | Model |
|---|---|---|---|---|
| EVD 1 | IPHONE | | APPLE | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity 1 | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) 285 | From Where (B) WAER'S REAR POCKET |
|---|---|

| Additional Description/Identifying Numbers |
|---|

**PROPERTY P 1**

| Code/No | Item Description | | Brand | Model |
|---|---|---|---|---|
| PFS 1 | KNIFE | | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity 1 | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) 285 | From Where (B) WAER |
|---|---|

| Additional Description/Identifying Numbers |
|---|

**PROPERTY P 2**

| Code/No | Item Description | | Brand | Model |
|---|---|---|---|---|
| PFS 2 | BICYCLE | | JAMIS | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity 1 | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) 1485 | From Where (B) WAER |
|---|---|

| Additional Description/Identifying Numbers |
|---|

**WAE-000011**

San Francisco Police Department

Report Type: **Initial**

**INCIDENT REPORT**

**210111120**

| P | | Code/No | Item Description | | | | Brand | | Model | |
| R | P | PFS 3 | SUSPECTED MARIUJJUANA | | | | | | | |
| O | 3 | Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | | Value |
| P | | | | | | | | 1 | | |
| E | | Seized by (Star) | | From Where | | | | | | |
| R | | 2353 | | (B) WAER'S BACKPACK | | | | | | |
| T | | Additional Description/Identifying Numbers | | | | | | | | |
| Y | | 9.1 grams in a plastic baggy | | | | | | | | |

**WAE-000012**

San Francisco Police Department

Report Type: **Initial**                    **INCIDENT REPORT**                    **210111120**

# NARRATIVE

SEE CASE FILE FOR FULL DETAILS.

As the result of an undercover online investigation conducted by the SFPD Internet Crimes Against Children (ICAC) unit, it was determined that an individual, later identified as (B) Ryan WAER, would be responding to the area of Bay Street and Franklyn Street for the purpose of meeting an underage fourteen (14) year old girl to engage in sexual conduct on today's date at 1400hrs.

During the investigation it was determined that WAER had sent sexually explicit images of his penis to the minor.

A briefing was held with the following individuals;

SGT. Hillard #2353, SGT. Letsch #1485, Off. Durkin #1515, and myself.

It should be noted that the above individuals were working in a plainclothes capacity, and driving an unmarked police vehicle.

None of the above investigators had BWC's equipment on their clothing due to the undercover nature/surveillance of the operation.

Off. Rodriguez #625 (US Park Police) was present as well.

At 1330hrs we took positions of surveillance in the area of Bay Street and Franklyn Street.

At approximately 1420hrs we observed an individual, who we recognized as (B) WAER sitting on the grass just north of Bay Street.  WAER was sitting with a backpack and (SAFE2) bicycle next to him.

We approached him on foot, displayed our department issued stars on our chests, identified ourselves as law enforcement, and detained WAER without incident.

A (E1) cellphone was seized from him.  He was later transported to Bay Street and Laguna Street for further investigation.

A taped audio/video interview was conducted by SGT. Letsch and me with WAER in our unmarked vehicle.  I read WAER his Miranda rights from my department issued Miranda card.  He understood his rights and provided us with a statement.  A synopsis of what he stated is as follows;

He stated that he came to meet a girl today who he had met online.  He stated that they discussed having sexual contact.  He confirmed that he sent photos of his penis to the girl.  He confirmed that the girl told him that she was fourteen (14) years old.  He stated that he knew what he was doing is wrong.

SEE TAPED INTERVIEW

WAER was then placed under arrest and booked at SF County Jail #1 by an SF Sheriff Wagon unit for NW 288.4(B) PC, NW 288.2(A)(2) PC, NW 288.3(a) PC, and 288.4(a)(1) PC.

Items (SAFE1-3) were seized from and booked for safekeeping.

All the listed evidence was secured in the SFPD ICAC office.

SEE CASE FILE FOR FULL DETAIL

**WAE-000013**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

## SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL OF INVESTIGATION                Page 1 of 9

| TYPE OF CASE | | CASE NO. | | VICTIM |
|---|---|---|---|---|
| ICAC | | 210111120 | | |
| DATE | | DETAIL | | INSPECTOR ASSIGNED |
| Monday, February 08, 2021 | | SVU ICAC | | SERVAT #285 |

| DATE | TIME | ACTIVITY |
|---|---|---|
| 02/04/21 | 1200 | I set up an undercover (UC) account on the social media site Meetme.<br><br>**Meetme** is the developer of a location-based social networking and dating application and website. Meetme was one of the first dating and mobile people discovery applications to emphasize generalized user location. Meetme is available on both iOS and Android operating systems.  Meetme reported that over 500 million connections were made using its app in 2013.<br><br>After registering a free account, Meetme users can customize their profile page, to which they can post a biography about themselves and their interests, post status updates, upload photos, and send and receive messages. Users can also see which other users have recently viewed their profile.<br><br>Meetme opened to users worldwide aged 13 and older and still maintains security measures for users under 18.  Users over 18 and the public cannot communicate or view the profiles of users under the age of 18.  However underage users can view the profiles of over 18 users and initiate communications with them as well.<br><br>Thought Meetme has many safety measures to protect children, many investigations have revealed that juveniles will just change their ages on their profiles, and many investigations have led to adults conducting sexual acts with juvenile minors through Meetme.<br><br>I have been assigned dozens cases of adults meeting juvenile minors through Meetme for the purposes of sexual contact.<br><br>For the undercover profile I utilized photos of a Cooperating Citizen (CC) when she was fourteen (14) years old.  The profile name is Jess and it stated that she is located in San Francisco. |
| 02/08/21 | 1000 | I received a message from a Meetme user with the username "Ryan".  His profile listed his age as twenty-eight (28) and stated he lived in San Francisco. His profile had a photo of an approximately thirty (30) year old white male.<br><br>An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>- **Hi Jess**<br>- Hi<br>- **Hows it going, are u really? Lol so many fake profiles on here but yours looks real**<br>- Im real.....lol are you???<br>- **Yea!  Are u really 19?** |

**WAE-000001**

## SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION    Page 2 of 9

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | - No…..that ok<br>- **Meaning u are younger**<br>- Yea<br>- **So under or at 18**<br>- Under<br>- **Well that's fine we can chat that's fursure, not sure if we should meet or ever have sex if that's y u are on here, but totally down to chat**<br>- oK cool, u have whatsapp<br>- **I do what is yours**<br><br>I then provided a previously created UC Whatsapp account phone number.<br><br>SEE FULL CHAT |
| 02/08/21 | 1700 | I received a message from Whatsapp user with a phone number of 415-881-0886.  His account profile matched the profile from the "Ryan" Meetme account and it had a username of "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>- **His Jess**<br>- Ryan?<br>- **Yes, so what are u doing on Skout?**<br><br>It should be noted that Skout and Meetme are chatting applications that are owned by the same company.  The apps merge profiles and users on both apps.<br><br>- Hey…..so im 14…just being honest up front<br>- **Damn that's so young**<br>- I guess lol<br>- **Y are interested in someone old like me**<br>- Who said I was 😊😊, I just get along better with older guys<br>- **That's understable I dated a woman in her 40s so I can see the attraction in seeking someone older.  But u are not a virgin are u**<br>- No im not<br>- **Well that makes this interesting**<br>- Lol whys that<br>- **It just messes more sense to me, idk if u are into me that way but idk**<br>- We'll see, so where u from/live<br>- **Lol im from sf, and u?**<br>- Me too<br>- **Good im over in north beach, what area are u in**<br>- I live in the Marina……with my mom<br>- **Damn so close** |

**SAN FRANCISCO POLICE DEPARTMENT**
**CHRONOLOGICAL REPORT OF INVESTIGATION**       Page 3 of 9

| DATE | TIME | ACTIVITY |
|------|------|----------|
|  |  | - Lol yea im in high school<br>We then talked about school.<br><br>- **So what do u seek with older guys?**<br>- Just maturity lol<br>- **Lol so u being treated like a woman instead of all the confusing things that going through a guys head at 14**<br>- Yup!<br>- **Lol ok this is making more sense now, I mean im shy but not about being sexual anymore, lol so u are horny?? Because I am**<br>- Lol maybe<br>- **What have u gotten to experience so far**<br>- I guess not a lot<br>- **Well tell me a bit**<br>- Ive had sex and oral but that's about it<br>- **Did u like the oral**<br>- It was ok, i don't think im good at it<br>- **It takes some practice, just like it takes some practice for a man to do it do a woman**<br>- Sooooo am I your type?<br>- **Im not sure I really haven't gonna to see u yet**<br><br>I then sent a photo of CC when she was fourteen (14) years old.<br><br>- 😍, id say u are my type for sure, beautiful, cant wait to see what the rest of u looks like<br>- Well maybe one day u can<br>- **Yeah I mean id like that.  Like I said I think we can talk about sex all we want but doing it at your age is another thing**<br>- K I feel u, don't wanna get u in trouble, but also tbh im not really into the online relationship thing either<br>- **Yeah I have a hard time saying no to someone so young because I can emphasize with them.  Lol well u know maube this can start by meeting u in the Marina for a few mins on the way to work**<br>- Ok cool<br><br>SEE FULL CHAT |
| 02/09/21 | 0830 | I sent a message to Whatsapp user "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>- Good morning<br>- **Good morning**<br>- Think about me last night?<br>- **Lol maybe a bit, it was fun, think about naughty stuff** |

SFPD 298 (10/76) *

WAE-000003

**SAN FRANCISCO POLICE DEPARTMENT**
**CHRONOLOGICAL REPORT OF INVESTIGATION**     Page 4 of 9

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | Later in the day I stated that I was doing homework.<br><br>SEE FULL CHAT |
| 02/10/21 | 0830 | I sent a message to Whatsapp user "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>-   Morning<br>- **Good morning sweetie**<br><br>We then talked about me being in high school.<br><br>SEE FULL CHAT |
| 02/11/21 | 0830 | I sent a message to Whatsapp user "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>-   Good morning<br><br>I sent a photo of CC when she was fourteen (14) years old.<br><br>- **Good morning 😍 ,u look pretty.  So do I get to meet u think this weekend on the way to work**<br>- Its easier for me on weekday cuz my mom doesn't work, I have to usually babysit on the weekends<br>- **Maybe tomorrow morning then?**<br>- Lol can't….Monday?<br>- **I could do that**<br>- Cool<br>- **Cant wait to meet u, sucks I gotta keep my hands off you**<br>- I wont stop u lol<br>- **I can actually get in trouble for this, but I cant really be the one to initiate**<br>- I c, want me to kiss u<br>- **Sure, id love to feel them**<br>- I want u to<br>- **Mmm that makes me feel good, lol I wonder what else u want me to feel**<br>- Lol u tell me<br>- **Maybe your boobs**<br>- Making me blush lol, want me to touch anything<br>- **If u want to grab my cock u are more than welcome, maybe it will cream for u, does it make u nervous**<br>- Nervous and excited, you excited?<br>- **Very much so, kinda wanna show u a picture** |

**SAN FRANCISCO POLICE DEPARTMENT**
**CHRONOLOGICAL REPORT OF INVESTIGATION**   Page 5 of 9

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | He then requested a nude which I stated I would not do.<br><br>**He then sent two (2) photos of an erect penis.**<br><br>- **I wonder if u will try sucking on It**<br>- Maybe I will<br><br>I then sent a photo of CC when she was fourteen (14) years old.<br><br>- **Wow so pretty**<br>- I deleted your pics already just don't wanna get caught with them<br>- **Smart girl lol, lol hopefully you delete this convo also**<br><br>He then discussed having sex with her and fingering her.<br><br>- **We still gotta find a place to do this, I think I have a place in mind, up on fort mason**<br>- Ok cool lol, I luv it up there, lots of places to be alone<br>- **U should wear a skirt or something easy to get around, u can just pull my cock out of the fly**<br><br>He then began asking if "Jess" masturbates.  He then described wanting to make her have an orgasm.<br><br>- **Either way gonna be such a fun Monday morning**<br>- My mom leaves at 10<br>- **That works we can do 10:15 somewhere in the Marina**<br>- Shit my mom might not have work, can you do Tuesday?<br>- **Tuesday can work as well**<br><br>We then talked about "Jess" doing homework.<br><br>SEE FULL CHAT |
| 02/12/21 | 1100 | No chats on this day |
| 02/13/21 | 1700 | I received a message from Whatsapp user "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>- **Hey there**<br>- Hey……whered you go?  Thought u ghosted on me<br>- **I did, I don't think we should meet**<br>- Ok<br>- **I think for a 14 year old I got too graphic in txt, if u were 17 turning 18 this year It may be a bit different.  But at 14 I feel like this is** |

## SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION    Page 6 of 9

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | **wrong.  And not wrong in the sense of two souls wanting to connect but wrong in the age sense.  Im sorry**<br>- Ok I get it<br>- **Its not really a choice I want to make but as a older person its one thing talking to u not playing**<br>- I feel u, too bad<br>- **I think I could meet with u but its not just gonna be chatting, no kissing no touch of each other, I own it to u to at least meet u on a friend level**<br>- Ok I still be down for that<br>- **Im stil down for our plan, please delete my photos, or enjoy them before u delete them either way lol**<br>- Lol I already deleted, but I enjoyed it anyways<br>- **So Tuesday we meet at fort mason**<br>- Cool<br>- **Im definitely not a predator but that show (to catch a predator) is why this scares the shit out of me**<br>- Im not trying to get u in trouble<br><br>SEE FULL CHAT |
| 02/14/21 | 0830 | I sent a message to Whatsapp user "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>- Morning<br>- **Good morning**<br><br>SEE FULL CHAT |
| 02/15/21 | 0815 | I received a message from Whatsapp user "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>- **Good morning**<br>- Morning<br><br>Later in the day several messages were sent.<br><br>- **Sorry look I said im down to be friends I just got too much to losse to make a dumb decision**<br>- I feel u, just friends is fun too<br>- **It is, it will be fun friendship I think, age doesn't really matter but u have so much to grow still, tats my problem with the law, I think if two humans want to connect they can**<br>- I agree<br><br>We then discussed meeting tomorrow afternoon. |

## SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION          Page 7 of 9

| DATE | TIME | ACTIVITY |
|---|---|---|
| | | SEE FULL CHAT |
| 02/16/21 | 0800 | No communication |
| 02/17/21 | 1500 | I received a message from Whatsapp user "Ryan".  An example of the messages are below.  For the purposes of the chron his messages are in bold;<br><br>- **Hey sorry about flaking yesterday I had an emergency I had to attend to, I hope we can reschedule, id ask if u wanna meet now but I think it's a bit late**<br>- I would totally be down today but im babysitting rn and tonight , I maube could meet tomorrow for sure or Friday afternoon<br>- **Ok**<br>- **Lol gosh I maybe should just trust u, like sexually trust u**<br>- Oh gotcha<br>- **Your gonna laugh but u know wat would help**<br><br>He then began asking for "Jess" to send a nude photo so he could trust which I stated I would send later in the day.<br><br>Later in the night I sent a photo of a nude adult female.<br><br>- **Yum! Do u like nipples being sucked on**<br>- Yes<br>- **That would be nice, I have been so horny the last couple of days, have u thought about anything u wanna do?**<br>- With you?<br>- **Yea**<br>- Kissing u<br>- **Oh yeah, what else**<br>- Touching u<br>- **I was hoping u would**<br><br>SEE FULL CHAT |
| 02/18/21 | 0800 | I conducted a records check of the Whatsapp phone number 415-881-0866 and found that it was associated with the following individual;<br><br>Ryan WAER<br>DOB: 02/01/1993<br>CA DL # ▮▮▮▮▮▮▮<br><br>WAER's DL photo matched the Skout and Whatsapp profile photos. |

## SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION <span>Page 8 of 9</span>

| DATE | TIME | ACTIVITY |
|---|---|---|
| 02/18/21 | 0830 | I sent a message to Whatsapp user "Ryan". An example of the messages are below. For the purposes of the chron his messages are in bold;<br><br>- Goodmorning<br>- **Goodmorning , so freaking horny today**<br>- Oh yea<br>- **Lol what do u want to do to me?**<br>- Kiss you everywhere<br>- **Today for sure?**<br>- What time today were u thinking<br><br>We then discussed meeting close to Fort mason around 1pm.<br><br>- **I think what ill do us rub one out now so its not so much of a mess with you**<br>- Lol ok<br><br>We then later discussed meeting closer to her place then going to Fort Mason.<br><br>He then texted at 1310hrs that he was leaving. Later he indicated that he was in grass near Bay Street and Franklyn Street.<br><br>SEE FULL CHAT |
| 02/18/21 | 1420 | WAER was taken into custody without incident.<br><br>SEE INCIDENT REPORT FOR FULL DETAILS<br><br>A (E1) iPhone was seized from WAER. I sent a message from the UC Whatsapp account and a message from "JESS" appeared on his iPhone screen. |
| 02/18/21 | 1432 | SGT. Letsch #1485 and I conducted a taped audio/video interview with WAER in an unmarked vehicle. I read WAER his Miranda rights from my department issued Miranda card. He understood his rights and provided us with a statement. A synopsis of what he stated is as follows;<br><br>He confirmed phone 415-881-0886 Is his phone number<br><br>He stated that he met a girl online and came to meet with her today.<br><br>He stated that they started chatting on Skout and then chatted on Whatsapp.<br><br>He confirmed that the girl told him she was underage and that he thinks she is sixteen (16) years old. |

## SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION    Page 9 of 9

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | He confirmed that he sent a photo of his penis to the girl. |
| | | He confirmed that the conversation got sexual and that he discussed giving her oral sex and engaging with other sexual conduct with her. |
| | | He confirmed me that he knew it is illegal to send photos of his penis to a minor and to meet a minor for sex. |
| | | He stated that he sees nothing wrong with an adult just meeting a minor if nothing sexual is involved. |
| | | He stated that he was just going to meet her today and that nothing was going to happen. |
| | | He knows what he did is wrong and he made a huge mistake. |
| | | He stated he would apologize the girl's parents if he could. |
| | | SEE TAPED INTERVIEW |
| 02/18/21 | 1500 | WAER was placed under arrest for NW 288.4(B) PC, NW 288.3(A) PC, NW 288.2(A)(2) PC, and 288.4(a)(1) PC, and booked at SF County Jail. |

1

## **DECLARATION OF PROOF OF SERVICE**

2

3    SUPERIOR COURT NO. 21001863

4        I, Michele C. Brass, state:

5        I am a citizen of the United States, over eighteen years of age, an employee of the

6    City and County of San Francisco and not a party to the within action; that my

7    business address is 350 Rhode Island, Suite 400N, San Francisco, CA 94103

8        On February 24, 2021, I served the attached: *People's Briefing on Conditions of*

9    *Release:*

10

11

| Office of the Public Defender | Private Counsel |
|---|---|
| Kelsey Ryburn | |

12

13

14

15

16    ❏ Placing said envelope in a box reserved for ***Public Defender discovery*** in the District
     Attorney's Office, the contents are picked up by an employee of the Public
17    Defender's Office on a daily basis.

18    ❏ Placing said envelope with the correct postage paid for collection by the ***United States
     Mail*** in the regular place for collection of mail.

19    ❏ I also ***called /spoke*** to the above attorney for the defendant on _____ and
20    informed her of the Petition and date for arraignment.

21    ☒ ***E-mailed*** this Brief to attorney for the defendant on/at , 2020

22

23        I declare under penalty of perjury that the foregoing is true and correct.

24    Executed on February 25, 2021 at San Francisco, CA.

25

26                                      Michele C. Brass
27                                      Assistant District Attorney

28

10

# Petition

# Exhibit C

Manohar Raju
Public Defender
City and County of San Francisco
Matt Gonzalez
Chief Attorney
Kelsey Ryburn, SBN 314737
Deputy Public Defender
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9652
Email: Kelsey.Ryburn@sfgov.org
Attorneys for RYAN THOMAS WAER

**Superior Court of California**
**San Francisco County**

People of the State of California,

        Plaintiff,

    vs.

**RYAN THOMAS WAER,**

        Defendant.

SCN: 0
Ltd. Juris. No.: 21001863

**Opposition to Prosecution's**
**Proposed Release Conditions**

Date:   March 1, 2021
Time:   9:00 AM
Dept:   M09

    To the District Attorney for the City and County of San Francisco and to the Honorable Judge Darwin of the Superior Court:

    This matter comes before this court in response to the prosecution's request to impose conditions of release that would violate the defendant, Ryan Waer's, First, Fourth, Fifth, Sixth, and Fourteenth Amendment Rights.

- 1 -

**Procedural History**

On February 22, 2021, Ryan Waer was arraigned on a felony complaint with the following charges:

- Count I: Meeting Minor for Lewd Purposes (Penal Code § 288.4(b)), a Felony;
- Count II: Contact with Minor For Sexual Offense (Penal Code § 288.3(a)), a Felony;
- Count III: Contact with Minor for Sexual Offense (Penal Code § 288.3(a)), a Felony;
- Count IV: Sending Harmful Matter to a Minor (Penal Code § 288.2(a)(2)), a Felony; and
- Count V: Arranging a Meeting with Minor for Lewd Purposes (Penal Code § 288.4(a)(1)), a Felony.

Waer was in custody at the time of arraignment. The prosecution requested that Waer be placed on pre-trial monitoring by the San Francisco Sheriff's Department with the following conditions:

- Waer be subject to a search condition that included Waer's person, home, vehicle, and electronic devices, including social media applications;
- Waer be ordered to provide the government with his passwords for his electronic devices;
- Waer submit to continued contact with law enforcement for the purposes of monitoring his electronic devices;
- Waer be ordered to not use or be allowed to access any messaging applications on his electronic devices; and
- Waer be ordered not to loiter at schools, parks, or camps where minor children reside.

The prosecution requested the release conditions without presenting any specific facts regarding Waer that would warrant the requested conditions. Rather, she asserted that other judges routinely impose these conditions for anyone accused of the crimes for which Waer stands accused.

Defense counsel objected on the following Constitutional grounds: Fourth, Fifth, and Sixth Amendments to the U.S. Constitution. At this time, counsel also objects on First and Fourteenth Amendment grounds.

1

**Facts about Ryan Waer**

2      Ryan Waer was born in San Jose, California and has spent his entire life in

3   the San Francisco Bay Area. Waer is 29 years old and currently resides within

4   San Francisco and works as bike mechanic. Waer is attending the City College

5   of San Francisco and is working towards becoming a mechanical engineer.

6   Waer has no criminal history and no prior failures to appear

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Proposed Conditions of Release
People v. RYAN THOMAS WAER / Court No. 21001863
0031

## Arguments and Authorities

**1. The warrantless search condition violates Waer's 4th Amendment rights as applied to the State of California by and through the Due Process Clause of the 14th Amendment.**

The search and seizure condition herein sought is warrantless search of all personal electronic devices.

The text of the 4th Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The 4th Amendment has been affirmatively held by the U.S. Supreme Court to apply to the states.[1] Federal courts have consistently held that there is an expectation of privacy in personal electronic devices such as phones sufficient to invoke the protections of the 4th Amendment.[2]

The seminal California case allowing courts to impose a waiver of defendants' Fourth Amendment rights as a condition of pre-trial release is *In re York* (1995) 9 Cal. 4th 1133, 1149. However, in 2006 the Ninth Circuit held that conditions of pre-trial release requiring a defendant to waive 4th Amendment protections are an invalid condition of pretrial release.[3] In footnote 1 of the *Scott* opinion the court stated,

---

[1] *Elkins v. U.S.*, 364 U.S. 206, 213 (1960) *citing: Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949); *also citing: Stefaneli v. Minard*, 342 U.S. 117, 119 (1951); *also citing Irvine v. California*, 347 UI

[2] *See Riley v. California*, 573 U.S. 373 (finding a reasonable expectation of privacy in call log data contained on a phone); *see also U.S. v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007) (holding that there is a legitimate, objectively reasonable expectation of privacy in a personal computer); *citing U.S. v. Buckner*, 473 F.3d 551, 554n.2 (4th Cir. 2007) (recognizing a reasonable expectation of privacy in password-protected computer files)

[3] *U.S. v. Scott*, 450 F.3d 863, 868, 875 (9th Cir., 2006) (holding that one who has been released on pre-trial bail does not lose his or her Fourth Amendment protections). *See also U.S. v.*

- 4 -

The dissent points to only two states whose supreme courts have addressed this issue:  Maine and California [ME citation omitted] (*In re York,* 9 Cal.4th 1133, 40 Cal.Rptr.2d 308, 892 P.2d 804 (1995).  It is unclear whether those cases would come out the same way today, as both were decided before *United States v. Knights,* 534 U.S. 112, 122 S.Ct 587, 151 L.Ed.2d 1281, 149 L.Ed.2d 205 (2001)

California state courts are bound by United States Supreme Court decisions regarding constitution laws, but are not bound by lower federal court decisions, even on federal questions.  "However, they are persuasive and entitled to great weight."[4]

A. The Ninth Circuit's *Scott* Analysis:

Raymond Lee Scott was arrested in Nevada on state charges of drug possession.  In order to qualify for release from custody, Scott was required to sign a form consenting to a standard list of pretrial release conditions, including random drug testing and a search of his home for drugs by any peace officer, at any time, with or without a warrant.[5]

Based on an informant's tip, state police officers went to Scott's home and drug tested him.  The test was positive for methamphetamine.  Based on the positive test, Scott was arrested and his home was searched.  An unregistered shotgun was found.  Scott was subsequently indicted for unlawful possession of an unregistered shotgun.  Scott brought a motion to suppress both the shotgun and his statements to police regarding the shotgun.  Scott's suppression motion was granted and the government appealed.[6]

---

*Gardner,* 523 F. Supp. 2d 1025, 1034 (Cal. N. Dist., 2007) (holding that defendants on pretrial release do not have reduced expectations of privacy like probationers).

[4] *People v. Bradley* (1969) 1 Cal.3d 80, 86.

[5] *U.S. v. Scott* at 865.

[6] *Id.,* at 865.

The *Scott* court first examined whether the drug test and search of Scott's home were valid because Scott consented to them.[7] In finding that they were not, the court pointed to the "unconstitutional conditions doctrine."[8] The court stated that the doctrine "limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary."[9] This is because the law does not give "the government free rein to grant conditional benefits by attaching strings strategically, striking lopsided deals and gradually eroding constitutional protections."[10] The court noted that the unconstitutional conditions doctrine was "especially important in the Fourth Amendment context."[11]

The court addressed the dissent's argument that Fourth Amendment rights may be validly waived. The court stated, "[n]o one disputes that Fourth Amendment rights can be waived. [citations omitted] The question here is whether the government can *induce* Scott to waive his Fourth Amendment rights by conditioning pretrial release on such a waiver."[12] "While government may sometimes condition benefits on waiver of Fourth Amendment rights . . . its power to do so is not unlimited."[13] The court further noted,

> [U]nder the Excessive Bail Clause . . . "the Government's proposed conditions of release or detention [must] not be 'excessive' in light of the perceived evil." [citations omitted] There may thus be cases where the risk of flight is so slight that any amount of bail is excessive; release on one's own recognizance would then be

---

[7] *Id.*

[8] *Id.*, at 866.

[9] *Id.*

[10] *Id.*

[11] *Id.*, at 867.

[12] *Id*, at footnote 4.

[13] *Id.*, at 867-868.

constitutionally required, which could further limit the government's discretion to fashion conditions of release.[14]

The court then addressed the government's "special needs" arguments. The "special needs" doctrine allows for searches on less than probable cause, even sometimes suspicionless seizures.[15] However, under the special needs doctrine, the needs must be "beyond the normal need for law enforcement."[16] The government's proffered "special needs," for the imposed conditions of pretrial release on Scott were (1) protecting the community from criminal defendants released pending trial and (2) ensuring that defendants show up at trial."[17]

The *Scott* court dismissed number one out of hand, noting, "[c]rime prevention is a quintessential general law enforcement purpose and therefore is the exact opposite of a special need."[18] Having eliminated the first justification for the imposed conditions, the court then had to assume that the primary purpose of the imposed conditions was to ensure attendance in court.[19]

The court noted that the connection between drug use and non-appearance at trial was tenuous.[20] The court also noted that the government had produced no evidence to show that Scott was particularly likely to engage in future drug use that would decrease his likelihood of appearing at trial.[21] It stated that the government may not rely on the special needs doctrine based

---

[14] *Id.*, at footnote 5.

[15] *Id.*, at 868.

[16] *Id.*.

[17] *Id.*, at 869

[18] *Id.*, at 870.

[19] *Id.*

[20] *Id.*

[21] Id.

- 7 -

only on "hypothetical" hazards that are unsupported by any concrete evidence, specific to the defendant.[22]

> The government in this case has relied on nothing more than a generalized need to protect the community and a blanket assertion that drug testing is needed to ensure Scott's appearance at trial. Both are insufficient. We thus cannot validate Scott's search under the special needs doctrine.[23]

The *Scott* court stated that "pretrial releasees are ordinary people who have been accused of a crime but ***are presumed innocent*** . . . People released pending trial . . . have suffered no judicial abridgment of their constitutional rights."[24]

The crux of this opinion bears repeating verbatim:

> [T]he assumption that Scott was more likely to commit crimes than other members of the public, without an individualized determination to that effect, is contradicted by the presumption of innocence: That an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody. Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt. . . [No] case authorizes detaining someone in jail while awaiting trial, or the imposition of special bail conditions based merely on the fact of arrest for a particular crime.[25] . . .The arrest alone did not establish defendant's dangerousness . . .It follows that if a defendant is to be released subject to bail conditions that will help protect the community from the risk of crimes he might commit while on bail, the conditions must be justified by a showing that defendant poses a heightened risk of misbehaving while on bail. The government cannot, as it is trying to do in this case, short-circuit the process

---

[22] *Id.*

[23] *Id.*, at 872.

[24] *Id.*, at 871.  Emphasis added.

[25] *Id.*, at 874.

by claiming that the arrest itself is sufficient to establish that the conditions are required.[26]

The court concluded that the search of Scott and his home did "not pass constitutional muster" based on either consent, special needs, or the totality of the circumstances.[27]

The proposed conditions of release on Waer quite frankly, are exponentially more problematic than those in *Scott*: San Francisco County uses an algorithm to score the potential of an arrested individual to recidivate or fail to appear in court.[28] Only those who score the lowest possible on each scale are released on their own recognizance, without conditions, prior to arraignment.

Further, in this case, Waer, through counsel, immediately objected to the imposition of the conditions on constitutional grounds. Waer did not sign a consent form, nor affirmatively agree to a waiver of his constitutional rights.

In addition, this court did not require the prosecutor to provide any specific facts regarding Waer (and, as pointed out above, the charges themselves are never a permissible, constitutionally valid reason to impose a waiver of constitutional rights pending trial) that would show, by clear and convincing evidence, that Waer was likely to commit crimes while on release, posed a public safety risk, or was likely to abscond or fail to appear in court. This court, to its discredit, imposed the conditions based on the prosecution's statement that 1) The crime is repugnant and 2) Other judges routinely impose these conditions on anyone charged with similar offenses.

---

[26] *Id.*

[27] *Id.*

[28] The defendant does not concede to the appropriateness of such methods, in so far as they, to, do not provide actual evidence or specifics (other than prior convictions and failures to appear) regarding an individual defendant.

No evidence regarding Waer, rather than folks in general charged with identical crimes, was presented to prove that Waer posed a public safety risk or would fail to appear in court.

## 2. The bail condition prohibiting the use of "messaging applications" is an unconstitutional prior restraint of free speech.

The prosecution is requesting that Waer be ordered not to use messaging applications on devices that connect to the internet. The government has not provided any case law or authority that would permit the court to bar Waer from using a messaging application on his electronic devices. Without any existing case law or authority that would permit the government to prevent Waer from engaging in his 1st Amendment right and communicating with counsel, how is Waer or his lawyer meant to figure out the answers to these questions? It cannot be done. This prohibition would be among the most overbroad legal commands to ever escape a judge's pen.

## 3. The bail condition requiring Waer to provide passwords violates his privilege against self-incrimination, his right to counsel and his right to privacy.

Fifth Amendment jurisprudence includes not only self-incriminating testimony in court, but also testimonial evidence produced to law enforcement for the purpose of being used in court against the defendant.[29] The scope of the privilege against self-incrimination is wide and deep and covers not only outright admissions of criminal culpability, but anything which could lead to evidence of a crime.[30] The touchstone of the privilege against self-incrimination is a defendant should not be compelled to disclose the contents of his/her own

---

[29] See *Miranda v. Arizona*, 384 U.S. 436, 476 (1966) and *Rhode Island v. Innis*, 446 U.S. 291 (1980) (holding that the privilege against self-incrimination protects an accused from being compelled to incriminate himself in any manner, and does not distinguish degrees of incrimination).

[30] *Kastigar v. U.S.*, 406 U.S. 441 (1972) (holding that The Fifth Amendment privilege against self-incrimination protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.)

mind.[31] Criminal defendants are often doubly protected from such questioning once they have been appointed counsel because such requests violate the right to counsel as recognized in the *Massiah* line of cases.[32] For such questioning to be compelled by a court order does not cure this defect in any way. Indeed, the core of the privilege against self-incrimination is precisely created to prevent a situation in which the defendant is ordered by a court to self-incriminate. That such an order would be enforceable by incarceration through revocation of release rather than incarceration by a finding of contempt makes little practical difference.

Here, an order compelling the defendant to produce passwords to law enforcement, outside the presence of his appointed counsel, is obviously intended to aid law enforcement in their search for incriminating evidence against Waer. If similar prosecutions are of any indication, they are not only hoping to find contraband or other incriminating evidence, but also metadata and anything that would help them to prove guilt. Giving a password to gain access to electronic communications and metadata would be incriminating, and therefore protected by the privilege against self-incrimination. Such information would also be protected by the right to counsel since Waer has been appointed counsel.

A. The password condition would violate Waer's right to be free of unreasonable and unwarranted search.

To compel Waer to provide passwords to law enforcement would have the same 4th Amendment effect as the police forcing them open. It would require a warrant which complies with the requirements imposed by the 4th Amendment, already covered above under the search and seizure condition: probable cause,

---

[31] *Doe v. U.S.*, 487 U.S. 201, 210-211 (1988) (stating that it is the "extortion of information from the accused," the attempt to force him "to disclose the contents of his own mind," that implicates the Self-Incrimination Clause).

[32] 377 U.S. 201 (1964).

particularity in time, space and description, and a basis in sworn testimony. As with the search and seizure condition, none of these conditions are met even to the point that an officer could rely on them in good faith. Thus, this release condition also violates Waer's 4th Amendment rights for the same reason that the search and seizure condition does.

Courts have addressed these issues by holding that probation conditions requiring supplying passwords is in violation of the 4th Amendment as being overbroad.[33] The basic argument is that since devices tend to hold so much information about a person from so many different sources, the act of providing a password is in effect a statement of incredible breadth and depth across a wide variety of issues. The *Valdivia* court referred the words of Justice Learned Hand that there is a difference between searching a man's pockets and ransacking his house, and then pointed out that in the age of smartphones, the contents of a pocket can be much broader than the contents of a house.[34]

B. The password condition is unworkable.

Part of the reason that the privilege against self-incrimination is so deeply enshrined in the American system is that it is so naturally enforced. If a person simply chooses not to speak, there is little that can be humanely done to force them to. Similarly, if a person's should claim a failure of memory, how would anyone prove whether it were genuine?

This court's password condition in the order to be modified is not only illegal; it is entirely unworkable. Who, in modern society has never forgotten a password? If Waer should claim that he does not remember a password, or that he never had one because the device law enforcement presents him with was

---

[33] *People v. Gregor* (unpublished), 2018 Cal. App. Unpub. LEXIS 3306 *citing People v. Valdivia*, 16 Cal. App. 5th 1130, 1142 (2017) (finding a password surrender probation condition overbroad); *also citing People v. Appleton*, 245 Cal. App. 4th 717, 724 (2016) (same).

[34] *People v. Valdivia*, 16 Cal. App. 5th 1130, 1144 (3rd Dist., 2017).

1   not his, how will the court know whether he is telling the truth? If law

2   enforcement wants Waer to go back to jail, all they have to do is present Waer

3   with a locked device found somewhere near his belongings that he never

4   owned, and then insist that Waer is lying when he says he does not have the

5   password. The court would never know the difference. Alternately, if Waer were

6   to simply claim that he had forgotten all of his passwords at the same time, the

7   court could never figure out which he had genuinely forgotten and which he

8   had not so as to determine with particularity how he had violated the court's

9   order. Thus, this condition is not merely unconstitutional for a wide variety of

10  reasons; it would be completely unenforceable even if Waer had no

11  constitutional rights.

1

## Conclusion

2

3      The proposed search and seizure condition plainly violate Waer 4th

4   rights. The restriction from accessing all messaging applications condition

5   plainly violates Waer's 1st and 6th Amendment rights. The password condition

6   plainly violates Waer's 4th, 5th and 6th Amendment rights, and all three violate

7   his right to privacy under the 14th Amendment. These blanket conditions,

8   unsupported by sworn testimony or evidence are directly opposed to the

9   traditions and values of American law. This court should strike these

10  conditions immediately.

11

12

13  Dated: February 26, 2021                    Respectfully submitted,

14

15

16                                              Kelsey Ryburn
                                                Deputy Public Defender
17                                              Attorney for RYAN THOMAS WAER

18

19

20

21

22

23

24

25

26

27

28

1

**Proof of Service**

2     I say:

3     I am over eighteen and not a party to this action. My business address is

4 555 Seventh Street, San Francisco, California 94103.

5     I caused to be filed and served the attached document on

6            Assistant District Attorney Michelle Brass

7            San Francisco District Attorney
           350 Rhode Island Street

8            North Building, Suite 400N
           San Francisco, CA 94103

9

    I declare under penalty of perjury that the foregoing is true and correct.

10

    Executed on February 26, 2021 in San Francisco, California.

11

12

13                 _____

14

                Kelsey Ryburn

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

# Petition

# Exhibit D

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2          IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

 3             HONORABLE RICHARD DARWIN, JUDGE PRESIDING

 4                        DEPARTMENT NO. 9

 5                          ---O0O---

 6

 7  THE PEOPLE OF THE                    )
    STATE OF CALIFORNIA,                 )
 8                    PLAINTIFF,         )
                                         )
 9  VS.                                  )COURT NO. 21001863
                                         )
10  RYAN WAER,                           )
                                         )
11                    DEFENDANT.         )
                                         )
12  _____)

13

14             REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                     FEBRUARY 22, 2021

16

17

18  A P P E A R A N C E S:

19

20  FOR THE PEOPLE:    HON. CHESA BOUDIN DISTRICT ATTORNEY
                        350 RHODE ISLAND STREET
21                      NORTH BUILDING, SUITE 400N
                        SAN FRANCISCO, CA 94103
22                      BY:  MICHELLE BRASS
                        ASST. DISTRICT ATTORNEY
23

24  FOR THE DEFENDANT:  HON. MANOHAR RAJU, PUBLIC DEFENDER
                         555 SEVENTH STREET, SUITE 205
25                       SAN FRANCISCO, CA 94103
                         BY:  KELSEY RYBURN
26                       DEPUTY PUBLIC DEFENDER

27

28  REPORTED BY:
    JOANN M. PRIOR, CSR 9129 OFFICIAL COURT REPORTER
```

**CERTIFIED TRANSCRIPT**

Superior Court of the State of California
City and County of San Francisco
04-27-2021 1:29PM
0044

```
 1  FEBRUARY 22, 2021

 2                    P R O C E E D I N G S

 3                        ---OOO---

 4      THE COURT:  Line 603, Ryan Waer, W-a-e-r.  Appearances,

 5  first by the People.

 6      MS. BRASS:  Michelle Brass appearing on behalf of the People

 7  via Zoom.

 8      MS. RYBURN:  Kelsey Ryburn from the Public Defender's office

 9  requesting appointment in this matter, Your Honor.

10      THE COURT:  All right.

11      Is your name Ryan Waer?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  That is your true and correct name?

14      THE DEFENDANT:  Yes, sir.

15      THE COURT:  Can you afford to hire a lawyer to represent you

16  in this case?

17      THE DEFENDANT:  No.

18      THE COURT:  Okay.

19      Would you like the Court to appoint a lawyer to represent

20  you?

21      THE DEFENDANT:  Yes.

22      THE COURT:  Okay.  I find you are eligible for

23  court-appointed counsel.  I do want to let you know at the end

24  of the case you may be responsible for some or all of the costs

25  of that representation if the court finds you have the ability

26  to pay.

27      Do you understand?

28      THE DEFENDANT:  I do.
```

Superior Court of the State of California
City and County of San Francisco                    04-27-2021 1:29PM
                                                          0045

1    THE COURT:  Okay.  All right.

2    Ms. Ryburn, will you accept appointment?

3    MS. RYBURN:  I do, Your Honor.

4    At this time, we waive instruction and arraignment.  Enter

5 pleas of not guilty.  Deny any and all allegations, enhancements

6 and priors.  Reserve the right to demur.

7    For the record, I want to note that I did not receive a RAP

8 sheet in this case; however, prior to the calling of the case I

9 asked the District Attorney to confirm that Mr. Waer has no

10 prior arrests or convictions and she represented to me that was

11 the case.

12    MS. BRASS:  That is correct.  As far as San Francisco, I do

13 not show that he has any prior convictions or arrests, so

14 counsel is correct.

15    MS. RYBURN:  I request a copy of the RAP sheet if anybody

16 can provide it to me promptly.

17    MS. BRASS:  Absolutely.

18    THE COURT:  So what are the People asking for, if anything,

19 in terms of conditions of release?  I did not see a detention

20 motion.

21    MS. BRASS:  We did not file a detention motion and we are

22 not seeking detention, but if the Court is inclined to release

23 we would ask that there be some type of monitoring, and that

24 would be ankle monitoring, possible check-in's with ACM, and

25 also certain conditions that I can lay out, if the Court is

26 ready for that --

27    THE COURT:  Yes.  Go ahead.

28    MS. BRASS:  -- particular to this case.

Superior Court of the State of California
City and County of San Francisco                04-27-2021 1:29PM
0046

1    So we would ask for search and seizure condition.  That

2  would be a four-way search and seizure condition, which would

3  encompass his person, place, vehicle, and all computers and

4  media devices.  With also access to any passwords associated

5  with these media devices, including his computer.

6    We would also ask that at all times the defendant would

7  provide the password for all those devices under his control.

8  He would also not be able to access or download any messenger

9  applications on any of his devices.

10    And then, lastly, we would ask that the defendant not be

11  able to loiter in places where there would be any minors, and

12  that would be schools, parks or, I suppose, camps -- any camps.

13    THE COURT:  No schools, parks or camps.  Is that what you

14  said?

15    MS. BRASS:  Correct.

16    THE COURT:  Ms. Ryburn.

17    MS. RYBURN:  Your Honor, I object to the majority of what

18  the People are requesting on multiple grounds.

19    The PSA in this case recommends OR minimum, so defense

20  request is that Mr. Waer be released OR.

21    THE COURT:  Let's focus on what the charges are.

22    MS. RYBURN:  I understand that.

23    THE COURT:  It's pretty -- this is a serious, serious charge

24  about making efforts to try and contact a 14-year old girl to

25  engage in sexual relations and sending graphic photos to what

26  the defendant believed was a 14-year old girl.  So let's focus

27  on that and how we're going to ensure public safety here if

28  there is going to be release.

Superior Court of the State of California
City and County of San Francisco                    04-27-2021 1:29PM
                                                    0047

 1    MS. RYBURN:  So what I was saying, Your Honor, is the People
 2  are agreeing to release, so we're requesting the OR release.
 3  We'll submit on the issue of electronic monitoring.
 4    Mr. Waer was born here in the San Francisco Bay Area.  He
 5  went to Terra Nova High School in Pacifica.  He works here in
 6  San Francisco.  He has a job.  During the time he's been
 7  detained prior to his arraignment his father ensured that his
 8  job is waiting for him.  He works at the -- I want to make sure
 9  I have it right -- The Roaring Mouse Cycles.  It's a bike shop.
10  Currently attending CCSF and pursuing a BS in mechanical
11  engineering.
12    So I would request -- we submit on the issue of electronic
13  monitoring; however, I am objecting to the People's requests
14  regarding the search conditions, compelling of password
15  information under the Fourth, Fifth and Sixth Amendment.
16    We're objecting to -- first of all, the legislative body has
17  outlined the specific requirements needed in order to gain
18  access to someone's personal cell phone and computer.  That's
19  outlined in CalECPA and request the Court honor and follow the
20  intent of the legislature on this issue.
21    There is no case law that would permit the defendant to be
22  compelled to waive his Fifth Amendment and implicate the Sixth
23  Amendment by asking the defendant to talk to the police and to
24  have continual contact with the police after he has been
25  appointed an attorney.
26    So I object to any compelling of any password information
27  and any requirements that Mr. Waer be compelled to allow and be
28  forced to communicate with law enforcement now that he has

Superior Court of the State of California
City and County of San Francisco                          04-27-2021 1:29PM
                                                                   0048

1  counsel.

2      We would submit on the loitering requirement -- on the

3  loiter restriction regarding loitering.  We submit on that, but

4  object to the compelling of any passwords.  This is an issue of

5  first impression before the Court.  It is being heavily

6  litigated.

7      MS. BRASS:  Your Honor, I would just like to interject and

8  maybe we can streamline this.

9      I believe what defense counsel is discussing we are talking

10  about conditions of release.  I believe she is discussing case

11  law regarding a defendant prior to being charged submitting to

12  those requirements.  This is specific as to a condition of

13  release.  And I don't believe that we're asking that he be

14  communicating daily with the police.  That's not what the -- one

15  of the conditions are.  And based on public safety and charges

16  in this case, these are not -- these requests are not out of

17  what should be asked of if there is going to be a release.

18      THE COURT:  Okay.

19      Go ahead, Ms. Ryburn.

20      MS. RYBURN:  Thank you, Your Honor.

21      Case after case after case coming out of the federal court

22  state you cannot compel a criminal defendant to provide

23  passwords.  So the People are requesting the Court to do

24  something that is being continually held as unconstitutional.

25      So at this time, again, defense would request that this

26  Court -- we would object to any forced compelling of password

27  information, and doing so this Court implicates Mr. Waer's Fifth

28  Amendment rights and his Sixth Amendment rights.

Superior Court of the State of California
City and County of San Francisco                          04-27-2021 1:29PM
0049

1    THE COURT:  Okay.  Here is what I'm going to do.  I will

2  release the defendant ACM with GPS monitoring and search

3  condition with respect to his person, residence, and vehicle.

4    I am going to set this for briefing on the issue of whether

5  I can include, because I'm inclined to and I want to see what

6  the law says, to include a search condition that includes the

7  defendant's electronic computers and whether that specifically

8  would include the requirement that the defendant upon search of

9  his electronics computers, phones, devices provide the search by

10  law enforcement with his password.

11    So we will talk about a schedule for that in a second, but

12  for now let me just fill this out.

13    MS. BRASS:  So at this point, then, we would be objecting to

14  his release unless these conditions are met.  And counsel is

15  referring to cases prior to somebody being arrested.  That is --

16  okay.  You are.  And so unless you want to provide specific

17  cases that you're referencing, I believe that you are discussing

18  case law that is talking about if a defendant is arrested and

19  questioned.  That is specific to what you're referencing, not as

20  a term of release once they have been arrested and charged.

21  There is a different criteria.

22    So I'm agreeing that, counsel, if you are arrested and

23  questioned about certain things that is what the cases that

24  you're referencing, not as a term or condition of release once

25  you have been arrested.

26    THE COURT:  I would like to get a better sense of what the

27  state of the law is on this particular issue.  So I'd like to --

28  he will be released GPS.  No loitering at schools, parks, or

Superior Court of the State of California
City and County of San Francisco                    04-27-2021 1:29PM
0050

1   camps that have children.

2       And with respect to a search of his person, he can be

3   searched without a warrant as a condition of release, his home,

4   his vehicle.  But the issue whether they there could be a search

5   of electronics that requires him to provide passwords, I will

6   set a briefing schedule.  I am inclined to grant that request,

7   but I want to have some certainty about the legality of it and

8   we will set a briefing schedule right now.

9       MS. RYBURN:  Thank you, Your Honor.

10      I understand from Mr. Beckerman there is a detention motion

11  being filed in another one of my cases that should be on for

12  Friday, so I would request just because that's going to be

13  heavily litigated, so that's on Thursday, could we come back

14  maybe then for briefing on -- let me check my schedule.  Does

15  March 8th work for the Court?

16      THE COURT:  For this issue I would like to get it briefed a

17  little faster than that.  It's an important condition.

18      MS. RYBURN:  I understand that, Your Honor.  I just want to

19  make sure I have the ability to fully brief it and People have

20  an opportunity to respond.

21      I just received the People's request on the detention motion

22  that's going to take up probably the next two days.  If I can

23  have something filed by next week and be ready for argument on

24  the 8th.

25      MS. BRASS:  Your Honor, we are going to ask for a date

26  earlier than that.  I don't -- I can just file my own briefing

27  so I am going to ask for, let's say March 1st.

28      THE COURT:  I want to come back faster than that.  So you

Superior Court of the State of California
City and County of San Francisco                         04-27-2021 1:29PM
                                                                    0051

1  raised this objection.  I am essentially inviting the People to

2  submit a brief that gives me their position on legality of this

3  particular search condition and to have that -- can you have

4  that filed, Ms. Brass, by this Thursday the 25th?  That gives

5  Ms. Ryburn a chance to take a look at it and respond by Monday.

6      MS. BRASS:  I will be able to do that, yes.

7      THE COURT:  That's what we'll do.  We will be back here

8  Monday the 1st for hearing on that last condition of release.

9  He is going to be released on conditions I mentioned already, I

10  will make decision about whether to add that additional

11  condition, an additional search condition on Monday, I am asking

12  defense to file their brief on that issue by Thursday and we'll

13  have a hearing on Monday the 1st.

14      With respect to the timing, this strikes me, Ms. Brass, as a

15  longer cause prelim given the nature of the charges and number

16  of counts.  Would you agree?

17      MS. BRASS:  I don't believe it will, actually.  I think it's

18  actually fairly straight forward.

19      THE COURT:  How many witnesses?

20      MS. BRASS:  With one officer.

21      THE COURT:  One officer?

22      MS. BRASS:  Yeah.

23      THE COURT:  All right.

24      The defendant is entitled to a preliminary hearing within

25  60 days.  60th day from today is April 21st.  I find good cause

26  to extend the ten court days prelim under 859(b) to 30 court

27  days.  The 30th court day is April 6th.  In light of the

28  judicial council's March 30th, 2020 emergency order, the safety

Superior Court of the State of California
City and County of San Francisco                    04-27-2021 1:29PM
0052

 1  measures that remain in place in the city and impacts on court

 2  operations and court personnel.

 3      Hour and a half or so, Ms. Brass?

 4      MS. BRASS:  Sure.  That should be plenty of time.

 5      THE COURT:  All right.

 6      MS. RYBURN:  Your Honor, we are proceeding on a no time

 7  waived basis.  We object to any continuance beyond the 10th

 8  day.

 9      THE COURT:  Okay.

10      Are you asking for Monday?  You are objecting for the record

11  and I will overrule it.  Shall we make it March 22nd?

12      MS. RYBURN:  If the Court schedules it, then I will be

13  there.

14      THE COURT:  Ms. Brass, do you have a preference on

15  scheduling?  Mondays are your dates?

16      MS. RYBURN:  Mondays are my days.

17      MS. BRASS:  Was the Court suggesting March 22nd?

18      THE COURT:  Yes.

19      MS. BRASS:  That's fine.

20      THE COURT:  Okay.  Thank you.  That will be the date.  Hour

21  and a half prelim?

22      MS. BRASS:  Your Honor.  Sorry.  I think I might have not

23  heard the beginning part of your order as far as conditions of

24  release.  He is going to be on ankle monitoring.  Was that one

25  of the conditions?

26      THE COURT:  Yes.

27      MS. BRASS:  Okay.  Thank you.

28      MS. RYBURN:  Your Honor, release and report?

Superior Court of the State of California
City and County of San Francisco                    04-27-2021 1:29PM
0053

1  THE COURT:  Correct.

2  MS. RYBURN:  Thank you.

3      (Proceedings were concluded.)

4                    ---o0o---

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Superior Court of the State of California
City and County of San Francisco                    04-27-2021 1:29PM
0054

```
 1  STATE OF CALIFORNIA              )
                                    ) SS.
 2                                  )
    CITY AND COUNTY OF SAN FRANCISCO)
 3

 4

 5                    REPORTER'S CERTIFICATE

 6       I, JOANN M. PRIOR, AN OFFICIAL REPORTER OF THE SUPERIOR

 7  COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF

 8  CALIFORNIA, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND

 9  CORRECT STATEMENT OF THE TESTIMONY AND PROCEEDINGS HAD IN THE

10  WITHIN-ENTITLED MATTER AND THAT THE SAME IS A FULL, TRUE AND

11  CORRECT TRANSCRIPTION OF THE SHORTHAND NOTES AS TAKEN BY ME IN

12  SAID MATTER.

13       DATED:   AT SAN FRANCISCO, CALIFORNIA, THIS 27th

14  DAY OF April, 2021.

15

16                             JoAnn M. Prior
17                             _____

18                             JOANN M. PRIOR, CSR 9129

19

20

21

22

23

24

25

26

27

28
```

Superior Court of the State of California
City and County of San Francisco                    04-27-2021 1:29PM
                                                            0055

# Petition Exhibit E

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

--oOo--

THE PEOPLE OF THE              )
STATE OF CALIFORNIA,           )
                              )  Court No. 21001863
                Plaintiff,     )
                              )     Pages 1 - 22
vs.                            )
                              )     **C O P Y**
RYAN WAER,                     )
                              )
                Defendant.     )
_____)

**REPORTER'S TRANSCRIPT OF**

**PROCEEDINGS**

Monday, March 1, 2021

BEFORE:  THE HONORABLE RICHARD C. DARWIN, JUDGE

Department 9, San Francisco, California

--oOo--

Reported by:          KERI L. CRITTENTON, CSR NO. 6914

2

```
 1                          Appearances
                            Page 1 of 1
 2                           --oOo--

 3

 4
      For the People:
 5
            Chesa Boudin, District Attorney
 6          350 Rhode Island Street
            North Building, Suite 400N
 7          San Francisco, California 94103
            By:  MICHELE BRASS, Assistant District Attorney
 8

 9    For the Defendant RYAN WAER:

10          Manohar Ragu, Public Defender
            555 Seventh Street - Suite 205
11          San Francisco, California 94103
            By:  KELSEY RYBURN, Assistant Public Defender
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1              MARCH 1, 2021 - MORNING SESSION
 2                        --oOo--
 3          The above-entitled matter came on this day for
 4    Motion before Honorable RICHARD C. DARWIN, Judge of the
 5    Superior Court.
 6          The People were represented by MICHELE BRASS,
 7    Deputy District Attorney of San Francisco.
 8          The Defendant, RYAN WAER, was present and
 9    represented by KELSEY RYBURN, Deputy Public Defender of
10    San Francisco.
11          KERI L. CRITTENTON, C.S.R., Official Court
12    Reporter, was present and acting.
13          The following proceedings were had:
14               P R O C E E D I N G S
15                        --oOo--
16          THE COURT:  Let's go on the record on line 11,
17    Ryan Waer, W-a-e-r.
18          Can we have appearances, please, first by the
19    People?
20          MS. BRASS:  Yes.  Good morning, your Honor.
21    Michele Brass on behalf of the People.
22          MS. RYBURN:  Kelsey Ryburn for Ryan Waer, who's
23    present here today, your Honor, out of custody being
24    supported by his father, Ron, who's present here today in
25    the courtroom, who just raised his hand.
26          THE COURT:  Good morning.
27          Okay.  We are on the calendar for one issue.
28    We've already got a prelim scheduled on March 18th.  The
```

1    issue here is whether the Court can order as a condition
2    of release a warrantless search condition.   That includes
3    the requirement that the defendant provide passwords for
4    any accounts and devices that require login credentials to
5    effectuate those searches.
6                  As I understand it, the People are asking for
7    these, and so, Ms. Brass, I'll let you go first.
8                  I have read both briefs.
9                  MS. BRASS:   Okay.
10                 THE COURT:   I read those this morning, and I'm
11   familiar with the issues, but I'm happy to hear from you
12   if there's any particular point you'd like to emphasize or
13   draw my attention to, and then I'll let Ms. Ryburn
14   respond.
15                 MS. BRASS:   Sure.
16                 So, your Honor, I just wanted to streamline a few
17   things.   I wanted to make sure the Court -- what the
18   People had asked for was to be able to monitor computers,
19   certain chat rooms that were at issue with the pending
20   charges, and so I just wanted to be clear it wasn't just
21   the passwords.   Obviously without the password any of
22   those searches would be meaningless, so I think the
23   password is sort of a subset of what the initial request
24   was.
25                 And so in light of that I believe there was an
26   issue that was raised by the defense regarding First
27   Amendment rights in relation to not being able to use
28   messaging apps, and what the People were asking for was

5

1    not an inability to be able to text, because I believe the

2    defense was saying they wouldn't then be able to

3    communicate with their client, and I think that's a pretty

4    extreme stretch there.  We were asking for specific --

5              THE COURT:  I'm going to back up for a second

6    because I want to make sure we're all on the same page --

7              MS. BRASS:  Sure.

8              THE COURT:  -- about what specifically -- I

9    ordered some conditions of release already, and I don't

10   have them present in mind --

11             MS. BRASS:  Correct.

12             THE COURT:  -- but what were the ones that I

13   deferred on pending this briefing from your understanding,

14   and if Ms. Ryburn disagrees, she can say.

15             Tell me what you think is at issue here today.

16             MS. BRASS:  So my -- we had asked for a four-way

17   search condition.  It was person, place, vehicle, and then

18   we'd also asked for media devices that were under his

19   control, and that was in direct connection to the charges

20   in this case, which the Court did address at the time the

21   facts of this case, and the issue that was raised by the

22   defense was that was an unconstitutional request.

23             THE COURT:  Which one?

24             MS. BRASS:  Any search of a computer and any

25   media device under his control.

26             In addition to that, any -- relaying any type of

27   password was also unconstitutional and so -- I mean, I can

28   address why that is not unconstitutional or -- I don't

6

```
 1    know if the Court wants to then make sure we're all on the
 2    same page.
 3              THE COURT:  Let me just hear from Ms. Ryburn.
 4              Do you agree those are the conditions of release
 5    that are still at issue here?
 6              MS. RYBURN:  No, your Honor.
 7              So at arraignment the People asked for the
 8    following conditions:
 9              One, that Mr. Waer be subject to a search
10    condition including his person, home, vehicle, electronic
11    devices including social media applications; two, he be
12    ordered to provide the government with his password for
13    his electronic devices; three, that Waer submit to
14    continued contact with law enforcement for the purposes of
15    monitoring electronic devices; four, Waer be ordered not
16    to use or be allowed to access any messaging applications
17    on his electronic devices, and, five, Waer be ordered not
18    to loiter at schools, parks, or campuses where minor
19    children reside.
20              As I laid out in my motion, your Honor, we
21    submitted on the issue of the loitering and on the issue
22    of electronic monitoring.
23              THE COURT:  As in GPS?
24              MS. RYBURN:  Yes.  That was when we initiated
25    argument on this.  The Court made it very clear that the
26    Court was not going to consider anything other than
27    electronic monitoring.  We submitted on that along with
28    the loitering order but then objected on the search
```

1    conditions, not only the four-way search condition of
2    person, home, vehicle, electronic devices, the compelling
3    of passwords, the continued contact with law enforcement
4    for purposes of monitoring and for any -- a ban on any and
5    all messaging applications, so those are the issues.
6           So if the People are now limiting their request
7    to just the four-way search condition of person, place --
8    person, home, vehicle, devices, and compelling passwords,
9    that's a different issue so --
10          THE COURT:  Let me hear from them.
11          MS. BRASS:  So that was what the request was.
12          I believe that this motion -- because there are
13   statements in this motion that, I believe, are coming from
14   a different brief, because it's saying that I commented on
15   the defendant's behavior as being repugnant.  I never said
16   any of those statements, and we can pull the transcript
17   from that, and that I was -- and that the Court made
18   comments about his behavior.  That never occurred and so
19   I'm not sure if this brief is from -- is a boilerplate
20   brief and just the statement of facts was misworded, but
21   this is clearly not what was at issue on the date that he
22   was arraigned.
23          And it says that we never addressed any of the
24   facts of the case when the Court was deciding whether or
25   not to issue certain conditions.  That, again, is untrue.
26   The Court specifically stated what had occurred in this
27   case and what the conduct was and why it was -- it would
28   be necessary possibly to be monitoring certain platforms

```
 1   and applications and so those statements are just --
 2   they're untrue, which are in this brief, and so --
 3           THE COURT:  And help me understand.  Most of
 4   these conditions of release are familiar to me.  I've
 5   ordered them before accept the one about the continuing
 6   contact with law enforcement for purposes of monitoring
 7   devices.
 8           What do you understand that to be?
 9           MS. BRASS:  I don't know what that is.
10           THE COURT:  You're not asking for that?
11           MS. BRASS:  No.  So, again, that's why I'm not
12   sure where these statements are coming from.
13           THE COURT:  And let me simplify this, I think,
14   for everybody.
15           Here's what I am considering.  A search condition
16   of person, vehicle, residence, and including electronic
17   devices, so phone, computer, to -- an order that would
18   compel the defendant to provide login material -- login
19   information and passwords, to permit those searches to
20   take place.
21           Are you asking, also, for a ban on the use of
22   social media, or what was that last one?
23           MS. BRASS:  So it's to the certain apps that were
24   used to communicate in this case, and so we can be
25   specific as to what those apps are.
26           THE COURT:  That would be helpful.
27           So it would include the search -- the additional
28   component of that search, which is provide login
```

1   credentials and passwords, and then a ban on use of

2   certain social media apps, right?

3         MS. BRASS:  That's correct, your Honor.

4         THE COURT:  And those specified social media apps

5   are which?

6         MS. BRASS:  So one is WhatsApp, and it's just

7   like it sounds, and the other is MeetMe.

8         THE COURT:  Okay.  So let's limit the argument

9   then on those three things, the four-way search, person,

10  vehicle, residence, and electronics, which includes

11  computers and phone, the order compelling the defendant to

12  provide upon request by law enforcement login credentials

13  to permit them to examine the contents of those electronic

14  devices and systems, and then the ban on the use of

15  WhatsApp and MeetMe.

16        So with those as the conditions at issue here

17  today, Ms. Brass, go ahead and tell me why you believe

18  they're authorized in California as conditions of release

19  in this case in particular.

20        MS. BRASS:  So, your Honor, as I addressed in my

21  brief, Penal Code Section 1381 subsection (a) subsection

22  (2) does allow for reasonable conditions when a defendant

23  is released and those conditions -- the test for that was

24  laid out in the York case and what -- the test basis is

25  whether or not there is a direct connection between the

26  conduct that is alleged and what those conditions might

27  be, and it cannot be capricious, and it cannot be

28  something that is just completely random in relation, and

1    I think that what was addressed in the York case was that

2    the Court had gone through sort of a preprinted release

3    form and checked all the boxes without at all looking at

4    the facts of the case, and so what the Court decided in

5    York was that when a judge is deciding what those

6    conditions should be under 1381, they must be in direct

7    connection to the conduct, and so that is the legal

8    authority in issuing certain conditions, and I think that

9    the case law is pretty clear that when there is no

10   connection, then it should not be allowed, and that is an

11   overstep by the government.

12          But I think that what was at issue at the

13   arraignment, and what continues to be an issue now, is

14   sort of a disconnect between the defense and what our

15   position is in regards to these conditions.

16          All of the case law cited by the defense is in

17   terms of a motion to suppress.  That is a separate legal

18   issue.

19          So, for example, if there is a violation of any

20   of the conditions and there's information or evidence

21   obtained as a result of that violation, that evidence is

22   only used in terms of deciding whether or not the

23   defendant should remain out of custody or if there should

24   be additional terms.  That does not mean that that

25   evidence can be used to incriminate the defendant or used

26   in subsequent criminal proceedings, and so that would be

27   an entirely different hearing.  That would be a motion to

28   suppress that I have no doubt the defense would bring.

1          THE COURT:  But there was a very -- there was

2     another important legal theory that was raised by the

3     defense, and that was premised on a recent Ninth Circuit

4     case -- a Ninth Circuit case out of Nevada that addressed

5     conditions of release and whether those can include, as a

6     condition of release, the defendant give up certain Fourth

7     Amendment rights, constitutional rights, and that was

8     another prong of their argument that I think you need to

9     address.

10          MS. BRASS:  So, again, that was U.S. v. Scott

11     that the defense based their briefing on, and that is a

12     motion to suppress case.  In fact, in that case they did

13     not say that the conditions themselves were

14     unconstitutional.

15          What they were saying is that any of the

16     evidence, there was no probable cause to then -- what they

17     did -- I believe the defendant had consented to random

18     urine testing, so they did go ahead based on a tip from an

19     informant and conduct a urine test.  Based on that, they

20     went in and searched his home and so what the Court found

21     was there was no direct connection -- and this is, again,

22     when they were arguing the motion to suppress, whether or

23     not evidence of finding an illegal shotgun should then be

24     allowed in a criminal proceeding.

25          THE COURT:  That's the procedural context in

26     which it was raised --

27          MS. BRASS:  Correct.

28          THE COURT:  -- but did they address whether they

1    had an original order or -- or a condition of release was

2    constitutional or not?

3              MS. BRASS:  No.  The conditions -- they

4    specifically did not state that those conditions were

5    unconstitutional.

6              They did also mention that in this case tests --

7    when a Court does go through and issue certain conditions,

8    it should have a direct relation to either flight or

9    public safety and the Court did opine that in regards

10   to -- collecting a urine test for somebody who had been in

11   possession of drugs might not be something that would

12   assist a Court in determining whether or not that person

13   was a flight risk or if it was a problem to the public.

14   That sort of -- there was no victim involved, so to say,

15   in that case, so the Court did opine that that probably

16   was a stretch of a condition, to require something so

17   intrusive as a urine test when that really would not have

18   any bearing on a public safety issue.

19             And I think that we can distinguish that from a

20   situation from somebody who's involved in a DUI and they

21   are out in the public and -- so testing them for whether

22   or not they have alcohol in their blood is a public safety

23   issue but -- versus somebody who is publicly intoxicated

24   so I think that's sort of a distinguishing factor there.

25             THE COURT:  Okay.

26             MS. BRASS:  And I do -- I do think that the Court

27   does need to assess the conduct that is charged in

28   relation to the conditions.

1          I'm not asking for blanket conditions overall.

2     These are very specific to what occurred in this case, and

3     the Court's aware of the facts of this case, so I won't

4     rehash that, but I do think that there is a direct nexus

5     here, and I think the way to distinguish the Scott case is

6     by the fact that it procedurally is not on point.

7          THE COURT:  Okay.

8          All right.  Ms. Ryburn.

9          MS. RYBURN:  So, your Honor, to begin with, first

10    and foremost, the issues in this case as I raised in my

11    motion regard whether or not these conditions of pretrial

12    release can be imposed on Mr. Waer and I start with -- I

13    think the People in their motion missed the thrust of the

14    defense's argument, so I'm going to break it into two

15    parts.

16         So the People's arguments are -- in summary, in

17    the old days York was the law regarding conditions of

18    release.  In the new post Humphrey days the law of

19    detention versus release, Webb is the law regarding the

20    Court's power to impose conditions, and boiled down the

21    rule from York and Webb is that the condition has to be

22    linked to the charges in some way.

23         Now, as I already laid out in my motion here, we

24    have a person, Mr. Waer, who has absolutely no record, no

25    indication that he's a flight risk, and no indication that

26    these conditions -- the People haven't asserted how these

27    conditions are related to ensuring public safety other

28    than they want to just monitor Mr. Waer, which isn't

1   appropriate.

2          The Scott case, which I rely on, states that the

3   conditions of pretrial release requiring a defendant to

4   waive the Fourth Amendment protections are invalid

5   conditions of pretrial release.  And the Scott analysis is

6   incredibly detailed.  It goes point by point.

7          The York case is a 1995 case.  Scott is a 2006

8   case, and there is really no, your Honor, California law

9   on this particularized issue about compelling search

10  warrants -- excuse me, compelling passwords, so I want to

11  first break this up to the tension between York and Webb

12  versus Scott.

13         So Scott breaks down that under the

14  unconstitutional conditions doctrine the government's

15  ability to exact waivers of rights as conditions of

16  benefit, even when those benefits is fully discretionary,

17  is limited.  Law does not grant the government free reign

18  to grant conditional benefits by attaching strings

19  strategically, striking lopsided deals, and eroding

20  constitutional protections.

21         And Scott specifically addressed the argument

22  that -- with Scott the government asserted that the

23  defendant in that case was more likely to commit crimes

24  than other members of society and specifically held that

25  without any form of individualized determination to that

26  effect that that entire line of argument is contradicted

27  by the presumption of innocence, which comes back to the

28  public safety, I think, prong of the government's argument

1 | that this monitoring needs to occur because Mr. Waer, by
2 | nature of being charged with these crimes, which in their
3 | nature, as I point out in my motion, are repugnant.
4 | That's -- the assertion is due to the nature of these
5 | offenses he needs to be monitored because he's more likely
6 | to offend again.  That line of argument is struck down by
7 | Scott because it runs directly up against the presumption
8 | of innocence
9 |         Now, prohibit -- I'm going to turn now -- so
10 | that's the tension of the first issue, is whether or not
11 | the Court has the ability to issue a warrantless search
12 | condition as a condition of pretrial release.  That's the
13 | tension between Scott and York and Webb, so that's that
14 | first issue.
15 |         Then I want to just quickly sidestep into the
16 | First Amendment issue, and then I'm going to go back into
17 | the issue the government hasn't addressed, which is the
18 | compelling, and where the search condition runs into the
19 | Fifth and Sixth and Fourteenth Amendment.
20 |         So prohibiting Mr. Waer from using messenger apps
21 | implicates his First Amendment right to conduct himself
22 | and to exchange ideas and to express himself in any way,
23 | and no authority has been presented by the government to
24 | exclude Mr. Waer from accessing social media applications
25 | at all.  There's no authority that has been presented that
26 | would allow the government to blanketly prohibit a member
27 | of society from engaging in social discourse through a
28 | messaging app.  That hasn't been provided.

1        That also interferes with Mr. Wear's ability to
2   communicate with his counsel through messaging apps.  As
3   the Court is aware, due to COVID-19, we are limited in our
4   ability to conduct in-person communications, and we often
5   communicate over our cell phones through various messaging
6   apps.  Google Voice, Facebook, Instagram, WhatsApp, these
7   are all commonly used and utilized to communicate, and a
8   restriction on a messaging app directly implicates and
9   affects Mr. Wear's ability to communicate with his
10  counsel.
11        So, again, no authority has been presented by the
12  government on those points in particular, just requesting
13  a blanket prohibition.
14        I turn now to the Fourth -- the warrantless
15  search condition and specifically compelling Mr. Waer to
16  produce his passwords.
17        Now, I informed Ms. Brass this morning, as I let
18  the Court know on Friday when I filed, due to the short
19  turnaround I would be having more authority for argument
20  today.  I have more authority, so I will go slowly on the
21  points.
22        I asked Ms. Brass if she wanted that authority
23  this morning before we argued things to give her time to
24  review it.  She said "let's just argue," so I want to make
25  sure that's clear.  If Ms. Brass needs more time, that's
26  fine, but I'm going to lay out my points.
27        So on the issue of whether or not the compelling
28  of a password implicates the Fifth Amendment right, the

```
 1   Sixth Amendment right, and the Fourteenth Amendment right,
 2   there's no California case law directly on this issue.
 3   However, this issue is currently before the Federal Court,
 4   and several other Courts have found that compelling a
 5   person to reveal their passwords for an electronic device
 6   violates the Fifth Amendment.
 7          The Fifth Amendment provides that no person shall
 8   be compelled in any criminal case to be a witness against
 9   themselves.  The right against self-incrimination applies
10   when the person is compelled to make testimonial
11   communication that is incriminating.  If an individual is
12   compelled to disclose the contents of his own mind, such
13   disclosure implicates the Fifth.
14          Now the Eleventh Circuit held in In Re Grand Jury
15   Subpoena Duces Tecum, and I can provide that citation,
16   that -- In Re Grand Jury Subpoena Duces Tecum dated March
17   25th, 2011, 670 F.3d 1335, 1337.  That's an Eleventh
18   Circuit case -- that the Fifth Amendment in --
19   specifically in a child pornography case, the government
20   issued an individual grand jury subpoena requiring the
21   production of unencrypted contents of a laptop and
22   external hard drive.  The person invoked their Fifth
23   Amendment rights against self-incrimination and was held
24   in contempt.
25          On appeal the Eleventh Circuit reversed, holding
26   that the act of decryption and production of the contents
27   of the hard drive sufficiently implicated the Fifth
28   Amendment privileges.  The Court determined that the
```

1    decryption of hard drives was testimonial within the

2    meaning of the Fifth because of the required -- the use of

3    contents of the appellant's mind and was tantamount to

4    testimony of the appellant's knowledge of the existence

5    and location of potentially incriminating files.

6           Additionally, other Courts have held that

7    requiring a person to reveal a passcode that would allow

8    the government to perform decryption or search their

9    device would require testimonial communication, violates

10   the Fifth Amendment, and I can go case by case.

11          MS. BRASS:  And, your Honor, I can concede that

12   these correct in all of that law, so I think we're sort of

13   wasting everyone's time.  She's correct.  That's all

14   right.  I have no -- she's doing a Riley analysis, which

15   is not relevant to conditions based on release.  This is

16   specific as to if that evidence can come in in a criminal

17   proceeding.  That's a completely separate analysis so I

18   just don't want to --

19          I'm sorry to interrupt you, but I just don't want

20   to go through a Riley versus California U.S. Supreme Court

21   analysis.  These cases all stem from that, and, again, I

22   think that is the root of the -- why we're disagreeing

23   here and it's not -- it's an incorrect analysis because

24   all of these cases she's citing, and I'm familiar with

25   these cases, are in regard to when the prosecution then

26   brings --

27          THE COURT:  Got it.

28          MS. BRASS:  -- separate charges.

```
1            THE COURT:  Okay.  I understand.
2            MS. BRASS:  Okay.
3            THE COURT:  I understand the distinction you're
4     drawing.
5            MS. BRASS:  So I will concede that her case law
6     is all on point as to that issue, but that's not the issue
7     before the Court.
8            THE COURT:  And I assume you disagree with that,
9     and tell me why.
10           MS. RYBURN:  I disagree with that, your Honor,
11    because any requirement that Mr. Waer be compelled to
12    incriminate himself is not something the Court can order
13    him to do.  That's the purpose of the Fifth Amendment.
14    The government doesn't get to say incriminate yourself,
15    and we'll talk about how you incriminated yourself later.
16    The government doesn't get to have Mr. Waer waive his
17    constitutional rights and implicate his constitutional
18    rights and then down the road discuss it.  That would be,
19    for example, your Honor, asking every defendant in a
20    criminal arraignment to come out and say I'm guilty, but
21    don't worry, we won't use that against you later.
22           That argument doesn't hold water, and the purpose
23    of this, your Honor, and the case law I'm going through,
24    is this issue on point, which is as conditions of release
25    can the government ask the Court to require a criminal
26    defendant to waive his right against self-incrimination
27    and that is not --
28           THE COURT:  I think I get your point.
```

```
 1              So tell me -- because I do have to wrap this up.
 2      Give me a couple cites of cases you believe --
 3      particularly with respect to the password that you believe
 4      support your position on the provision of a password as a
 5      violation of Fifth Amendment.  I'm going to read those,
 6      and I'm going to take it under submission and come back
 7      either tomorrow or Wednesday, whatever works better, and
 8      I'll give you my ruling.
 9              MS. RYBURN:  Your Honor, my question is -- I can
10      e-mail these to the Court.  Would that be easier?  Because
11      I can read them all right now, or I can run them back to
12      my office and put them all in an e-mail.
13              What would be better for the Court just for --
14      time wise?
15              MS. BRASS:  Probably e-mail.
16              MS. RYBURN:  That's what I was going to say.
17      That's why I offered this to Ms. Brass this morning.  I
18      can put it all in an e-mail this morning, your Honor.
19              THE COURT:  That would be better.
20              MS. BRASS:  Just so I can address -- the Scott
21      case was then overruled by a Ninth Circuit Court case,
22      United States versus Pool, and they found that DNA testing
23      was not unreasonable given the charges in the case.
24              And, also, as far as the self-incrimination, that
25      is irrelevant on pretrial release conditions.
26              THE COURT:  Yeah, I understand.
27              MS. BRASS:  There's case law on that.
28              THE COURT:  I got your point.  I definitely
```

1  understand your argument on this.

2           I understand yours, and I have to figure out

3  which is the correct one, so that's why I want to read

4  your cases, Ms. Ryburn, and I understand the People's

5  position.

6           If you send me that e-mail this morning --

7           MS. RYBURN:  I'll run back, your Honor.

8           THE COURT:  -- just a couple cites --

9           MS. RYBURN:  Sure.

10          THE COURT:  -- and I'll read those, and we'll

11  come back tomorrow morning.

12          Is tomorrow morning okay?  You can appear by

13  Zoom.

14          MS. RYBURN:  Does tomorrow work?

15          THE DEFENDANT:  Yeah.

16          MS. RYBURN:  Okay.  Tomorrow works.

17          THE COURT:  Tomorrow morning at 9:00 a.m. not for

18  further argument but for me to explain to you what my

19  decision is and why.

20          MS. RYBURN:  Understood.

21          MS. BRASS:  Thank you.

22          (Whereupon, the proceedings concluded.)

23                      --oOo--

24

25

26

27

28

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER

 2    STATE OF CALIFORNIA            )
                                     ) ss.
 3    COUNTY OF SAN FRANCISCO        )

 4          I, KERI L. CRITTENTON, do hereby certify that I am

 5    a Certified Shorthand Reporter, and that at the time and

 6    place shown I recorded verbatim in shorthand writing the

 7    proceedings in the following described action completely

 8    and correctly to the best of my skill and ability:

 9
                  COURT:          IN THE SUPERIOR COURT OF
10                                THE STATE OF CALIFORNIA
                                  COUNTY OF SAN FRANCISCO
11
                  JUDGE:          RICHARD C. DARWIN
12                                Department 9

13      ACTION NUMBER:          21001863

14      ACTION TITLE:           THE PEOPLE OF THE STATE OF
                                CALIFORNIA, Plaintiff,
15
                                vs.
16
                                RYAN WAER,
17                              Defendant.

18          DATE:             March 1, 2021

19          I further certify that my shorthand notes have
      been transcribed into typewriting, and that the preceding
20    pages, 1 through 22, inclusive, constitute an accurate and
      complete transcript of all my shorthand writing for the
21    dates specified.
            Further, in said capacity, I have adhered to the
22    Code of Civil Procedure Section 237(a)(2), First District
      Court of Appeal Miscellaneous Order 96-02 by sealing,
23    through redaction, of all references to juror-identifying
      information, including but not limited to names, addresses
24    and telephone numbers.

25    DATED:  March 16, 2021      Keri L. Crittenton

26

27                              _____
                                KERI L. CRITTENTON, CSR NO. 6914
28                              OFFICIAL COURT REPORTER
```

# Petition Exhibit F

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2         IN AND FOR THE COUNTY OF SAN FRANCISCO

3                   --oOo--

4                                    )
5    THE PEOPLE OF THE               )
     STATE OF CALIFORNIA,            )
6                                    )   Court No. 21001863
                    Plaintiff,       )
7                                    )
     vs.                             )      Pages 1 - 14
8                                    )
     RYAN WAER,                      )      **C O P Y**
9                                    )
                    Defendant.       )
10   _____  )

11

12

13              **REPORTER'S TRANSCRIPT OF**

14                  **PROCEEDINGS**

15

16            Tuesday, March 2, 2021

17     BEFORE:  THE HONORABLE RICHARD C. DARWIN, JUDGE

18        Department 9, San Francisco, California

19                   --oOo--

20

21

22

23

24

25

26

27

28   Reported by:         KERI L. CRITTENTON, CSR NO. 6914

2

```
 1                          Appearances
                          Page 1 of 1
 2                           --oOo--

 3

 4
      For the People:
 5
           Chesa Boudin, District Attorney
 6         350 Rhode Island Street
           North Building, Suite 400N
 7         San Francisco, California 94103
           By:  MICHELE BRASS, Assistant District Attorney
 8

 9    For the Defendant RYAN WAER:

10         Manohar Ragu, Public Defender
           555 Seventh Street - Suite 205
11         San Francisco, California 94103
           By:  KELSEY RYBURN, Assistant Public Defender
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1              MARCH 2, 2021 - MORNING SESSION
 2                       --oOo--
 3          The above-entitled matter came on this day for
 4   Ruling before Honorable RICHARD C. DARWIN, Judge of the
 5   Superior Court.
 6          The People were represented by MICHELE BRASS,
 7   Deputy District Attorney of San Francisco.
 8          The Defendant, RYAN WAER, was present and
 9   represented by KELSEY RYBURN, Deputy Public Defender of
10   San Francisco.
11          KERI L. CRITTENTON, C.S.R., Official Court
12   Reporter, was present and acting.
13          The following proceedings were had:
14                P R O C E E D I N G S
15                       --oOo--
16          THE COURT:  This is line 500 on the morning
17   calendar.  We're on the record.
18          Can I have an appearance by the People, please?
19          MS. BRASS:  Yes.  Michelle Brass on behalf of the
20   People appearing remotely.
21          THE COURT:  Can I have an appearance by --
22          MS. RYBURN:  Kelsey Ryburn --
23          THE COURT:  Go ahead.
24          MS. RYBURN:  Kelsey Ryburn for Mr. Waer, who is
25   personally present in the courtroom, appearing remotely.
26          THE COURT:  All right.  Both counsel are, I
27   think -- as they noted are appearing by Zoom.  Mr. Waer is
28   present personally.
```

1          We continued this yesterday after arguments.  I'm
2     ready to rule.
3          I've considered the briefs that were submitted by
4     both sides.  I've considered the oral arguments that were
5     presented yesterday.  I read and considered the cases sent
6     to the Court by defense counsel, Ms. Ryburn.
7          Thank you.
8          I've considered the brief e-mailed response from
9     the People.
10          At this point in time I feel like I have a pretty
11     good understanding of what the issues are and the
12     following is my ruling.
13          MS. RYBURN:  Your Honor, I was interrupted in my
14     argument yesterday.  I'd like to finish my few points and
15     address the filing that the -- the e-mail the People sent.
16     I just need to make my record.
17          THE COURT:  Hold on.  At this point I don't find
18     that any further argument is going to help elucidate the
19     issues.  I did consider the cases that you sent, and I
20     don't think I need the additional argument, so I'm going
21     to decline that request.
22          Also, in the interest of time -- we have a busy
23     calendar, and I do need to keep going, so I appreciate you
24     want to make your argument, but at this point I'm going to
25     overrule.
26          MS. RYBURN:  Your Honor, I need to make my
27     record.
28          THE COURT:  You can make your record that you

```
1   wanted to make the argument.  You have made your record.
2   You elucidated all these issues yesterday.  I'm going to
3   rule at this point.  I know you want to argue again.  I'm
4   saying, "No, thank you."  The Court does not need further
5   argument.
6          Let me proceed.  California law unequivocally
7   permits Courts to impose conditions of OR release that
8   implicate the constitutional rights of a defendant, and
9   that's in re: York, and that makes it quite plain.  I'm
10  going to quote briefly from in re: York.
11         Quote, "We reject petitioner's contention and
12  conclude that Penal Code Section 1318 authorizes the
13  imposition of conditions that may implicate a defendant's
14  constitutional rights," closed quote, provided those
15  conditions are reasonable under the  circumstances and are
16  not capricious and that is good law binding on this Court.
17         The reasonableness of an OR release condition
18  depends upon the intrusiveness of the State conduct and
19  the strength of the State's interest in imposing the
20  restrictions under the circumstances.
21         That's also according to York.  Again, that's
22  9 Cal.4th 1133.  The spot cite for that last quote was
23  1150.
24         Here -- just in terms of whether they're
25  permissible, I find the conditions sought by the People
26  here are permissible under York.  The nature and
27  seriousness of the charges clearly implicate public
28  safety.
```

1          The defendant is charged with -- again, according

2    to the incident report, as admitted under Miranda, after

3    being Mirandized, that he was attempting to meet up with a

4    14-year-old for purposes of engaging in sexual acts.  It's

5    beyond dispute that such acts threaten the safety of the

6    public, particularly the population of underage children,

7    and it's beyond dispute in this Court's view that the

8    government has a strong interest in prohibiting such and

9    preventing such conduct, so the conditions sought, which

10   are warrantless search of his person, residence, vehicle,

11   and electronic devices including phones, computers, hard

12   drives, and other storage devices, is certainly reasonably

13   related to that State interest and while I will -- I will

14   concede that the particular request is intrusive, the

15   Court finds that condition is warranted by the interest in

16   preventing other potential underage -- harm to other

17   potential underage victims.

18          There is also a request for a ban on the use of

19   WhatsApp and MeetMe, two specific messaging applications.

20   I believe that's also reasonable under the circumstances

21   for the same reasons as previously stated.

22          Defense does argue that the ban on using those

23   specific messaging apps is improper because it constitutes

24   a First Amendment violation.  The Court doesn't agree.

25   The Court -- York makes plain that conditions of release

26   may implicate constitutional rights in the first place,

27   and the Court finds that the prohibition is reasonable

28   under the circumstances and doesn't prohibit the defendant

7

```
 1   from continuing to express himself on other media
 2   platforms provided that the speech is protected,
 3   noncriminal speech, and I also find that prohibiting his
 4   use of just those two apps doesn't meaningfully detract
 5   from his ability to communicate with counsel.  He may
 6   still continue to communicate with counsel by a wide
 7   variety of methods including phone, Zoom, video, FaceTime,
 8   and in-person meetings.
 9          Having reviewed the federal cases provided by the
10   defendant it does appear that under certain circumstances
11   requiring a defendant to turn over a login or password can
12   implicate the defendant's Fifth Amendment rights against
13   self-incrimination.
14          In the Court's view the act of providing a
15   password is not testimonial in that it does not call upon
16   the defendant to make use of the contents of his mind any
17   more than being asked to turn over the key to a lock.
18   However, in an abundance of caution the condition of
19   release will not require the defendant to turn over his
20   login credentials and passwords.  I will instead require
21   the defendant to do the following:
22          As previously mentioned, he's subject to a search
23   condition, which means at any time of the day or night,
24   with or without his consent, with or without a warrant,
25   with or without reasonable suspicion or probable cause he,
26   his vehicle, his residence, his person, and other areas
27   under his direct control and his electronic devices are
28   subject to search.
```

```
 1           The defendant must at the request of law
 2   enforcement when it comes to the electronic devices
 3   immediately access and log in to those devices, phone,
 4   computer, hard drives, USB drives, other storage devices
 5   by whatever means necessary, a thumbprint, facial
 6   recognition, password, and login credentials.  He must log
 7   in to those devices and permit law enforcement to inspect
 8   and copy those devices per the search term.
 9           So he won't to have give those passwords and
10   credentials to law enforcement, but he must on their
11   request, if and when they come to him and ask for it, log
12   in to those devices and allow them to review the contents
13   and, if necessary, copy them.
14           So those will be the terms and conditions of
15   release.  I don't believe there are any additional terms
16   that were being requested, so those will be in addition to
17   the previously ordered conditions of release.
18           MS. RYBURN:  Your Honor --
19           THE COURT:  Yes.
20           MS. RYBURN:  -- we would object to the defendant,
21   Mr. Waer, being -- at the request of law enforcement be
22   forced to unlock his devices.  We're objecting under the
23   Fourth, Fifth, and Sixth Amendment along with the
24   Fourteenth.  We assert that, again, your Honor, this is a
25   work-around that implicates, again, the Fifth Amendment
26   right, and we would object to it.
27           THE COURT:  Okay.  Your objections are noted.  I
28   do overrule them based on the reasoning and case law that
```

1    I just explained.

2            MS. RYBURN:  And, your Honor, we would request a

3    stay of criminal proceedings and 30-day stay of that order

4    so we may take an emergency writ.

5            THE COURT:  All right.  Any objection by the

6    People?

7            MS. BRASS:  No objection.

8            THE COURT:  Okay.  All right.  Further

9    proceedings are stayed pending an emergency writ by the

10   defense.

11           MS. BRASS:  So, your Honor, just logistically

12   there is -- then at this point the defense would need to

13   waive the 10/30 because we have a prelim date set already

14   because counsel --

15           THE COURT:  Right.  I do think unless someone can

16   show me authority otherwise that the 30th day deadline

17   doesn't -- isn't tolled while there's an emergency writ

18   pending, unless someone can tell me that there is.  Then

19   we'd need a waiver of the 30-day -- 30 and 60-day.

20           MS. RYBURN:  Your Honor, I don't believe there's

21   authority on that issue.  I will look into that but I

22   don't believe time is affected by the issue -- the request

23   for a writ.  We're asking that the order regarding these

24   conditions be stayed.

25           THE COURT:  Oh, the order regarding these

26   conditions?

27           MS. RYBURN:  Yeah, for the purposes of taking a

28   writ on that issue.  So that doesn't affect time as it

1   pertains to the case.

2           THE COURT:  Gotcha.

3           MS. BRASS:  Okay.  So just so I'm clear, counsel

4   is asking for criminal proceedings just in regards to the

5   conditions be stayed but not the --

6           THE COURT:  That's my understanding.  She's

7   saying she wants me to stay the OR condition of release

8   that I just -- that I just ruled on while they take a

9   writ --

10          MS. BRASS:  Okay.

11          THE COURT:  -- but the proceedings would continue

12  otherwise.

13          What's the People's --

14          MS. BRASS:  Right.

15          THE COURT:  -- position on that?

16          MS. BRASS:  Right.  Procedurally I'm not sure

17  that is something that is doable because obviously the

18  People have requested these conditions, and so we would

19  object to a stay regarding the imposition of those

20  conditions, or we would ask for the Court to reconsider

21  the detention issue.

22          THE COURT:  Right.  I'm going to -- having now --

23  now that the issue has been clarified, I'm not going to

24  stay the impact of -- or stay the effectiveness of that

25  order by filing a writ.  I think you can seek that sort of

26  stay, but at this point in time it's going to remain in

27  effect and -- for the reasons of the public safety issues

28  that I've just addressed.

1    MS. RYBURN:  So, your Honor, I need to make my

2    record very -- for purposes of appellate issues.

3    So we have requested the Court stay this order

4    for 30 days so we can litigate this issue with the

5    Appellate Courts.  The Court is denying that request.

6    THE COURT:  Correct.

7    MS. RYBURN:  That now puts Mr. Waer in the

8    position where he must either comply with the Court order

9    or implicate his Fifth Amendment rights, so any

10   cooperation with law enforcement moving forward as it

11   regards to being in compliance with a Court order -- this

12   is not a voluntary assent or agreement by Mr. Waer in any

13   way to waive his Fifth Amendment rights, to waive his

14   constitutional rights, his Fourth Amendment rights, or his

15   Sixth Amendment rights in any way, but merely is assent to

16   the Court order, so this is not a voluntary waiver of any

17   constitutional rights.

18   This record needs to be made clear for the

19   purposes of appellate issues, so if the government argues

20   that the point is moot because Mr. Waer is being compelled

21   by this Court, that issue will not be waived.

22   THE COURT:  Okay.

23   MS. RYBURN:  Furthermore, any and all contact

24   that will be made or attempted to be made by law

25   enforcement with my client must under Massiah be made

26   through me, so if law enforcement moving forward has any

27   belief, reason, or attempt to search Mr. Waer or attempt

28   to contact him for the purposes of searching his

1   electronic devices, that contact needs to be coordinated

2   through me under Massiah.  Any other contact will be in

3   direct violation of Mr. Waer's Sixth amendment rights.

4         So, again, we are not waiving or assenting to

5   these orders.  Mr. Waer will be in compliance with the

6   Court orders because he's being ordered to do this but is

7   not to be seen as a voluntary assent or a waiver of any of

8   his constitutional rights because the Court is now hinging

9   Mr. Waer's status pretrial of out of custody on his

10  waiving -- implicating -- potentially implicating his

11  Fifth Amendment rights.

12        THE COURT:  You've made your record.  I disagree,

13  and you stated what you needed to state.

14        Do the People want to make any additional record

15  before we conclude the matter?

16        MS. BRASS:  Just a few points.

17        Is counsel also objecting to the other search

18  conditions?  Because it sounds like this is just picking

19  apart certain conditions and saying they're

20  unconstitutional and so obviously conditions of release

21  are something that the defense -- the defendant decides

22  whether or not they do want to accept in lieu of remaining

23  in custody, so maybe that's where we need to go at this

24  point, is readdress detention.  Because it sounds like the

25  defense is stating certain things are unconstitutional but

26  the other search requirements are not, and so I just want

27  to be clear on the record that counsel is objecting just

28  to the search of a computer and those applications that

1  the Court discussed.

2          MS. RYBURN:  I maintain an objection to all of

3  the search conditions that are being imposed on my client,

4  are outlined in my papers.  The Court has ruled against

5  me.  I'm making my record for appellate purposes.

6          THE COURT:  Okay.  All right.  You've made the

7  record.

8          My ruling stands.  I've considered this a great

9  deal.  I've considered the authorities, and I'm going to

10  stick with my ruling as I relayed here on the record.

11          So we will confirm the next date in this case,

12  which is March 22nd, for preliminary hearing in this

13  department.

14          MS. BRASS:  Thank you, your Honor.

15          THE COURT:  Thank you.

16          (Whereupon, the proceedings concluded.)

17                      --oOo--

18

19

20

21

22

23

24

25

26

27

28

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER
 2    STATE OF CALIFORNIA          )
                                   ) ss.
 3    COUNTY OF SAN FRANCISCO       )
 4         I, KERI L. CRITTENTON, do hereby certify that I am
 5    a Certified Shorthand Reporter, and that at the time and
 6    place shown I recorded verbatim in shorthand writing the
 7    proceedings in the following described action completely
 8    and correctly to the best of my skill and ability:
 9
              COURT:         IN THE SUPERIOR COURT OF
10                           THE STATE OF CALIFORNIA
                             COUNTY OF SAN FRANCISCO
11
              JUDGE:         RICHARD C. DARWIN
12                           Department 9
13     ACTION NUMBER:        21001863
14      ACTION TITLE:        THE PEOPLE OF THE STATE OF
                             CALIFORNIA, Plaintiff,
15
                             vs.
16
                             RYAN WAER,
17                           Defendant.
18         DATE:            March 2, 2021
19         I further certify that my shorthand notes have
      been transcribed into typewriting, and that the preceding
20    pages, 1 through 14, inclusive, constitute an accurate and
      complete transcript of all my shorthand writing for the
21    dates specified.
           Further, in said capacity, I have adhered to the
22    Code of Civil Procedure Section 237(a)(2), First District
      Court of Appeal Miscellaneous Order 96-02 by sealing,
23    through redaction, of all references to juror-identifying
      information, including but not limited to names, addresses
24    and telephone numbers.
25    DATED:  March 23, 2021          Keri L. Crittenton
26
                              _____
27                            KERI L. CRITTENTON, CSR NO. 6914
                              OFFICIAL COURT REPORTER
28
```

| STATE OF CALIFORNIA<br>California Court of Appeal, First Appellate District | **PROOF OF SERVICE**<br><br>**STATE OF CALIFORNIA**<br>California Court of Appeal, First Appellate District |
|---|---|

Case Name: **In re Ryan Waer**

Case Number: **TEMP-CP19WHN5**

Lower Court Case Number:

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My email address used to e-serve: **sujung.kim@sfgov.org**

3. I served by email a copy of the following document(s) indicated below:

Title(s) of papers e-served:

| Filing Type | Document Title |
|---|---|
| ISI_CASE_INIT_FORM_DT | Case Initiation Form |
| PETITION - PETITION FOR A WRIT OF HABEAS CORPUS | Waer writ of habeas petition |
| PROOF OF SERVICE - PROOF OF SERVICE | Waer writ POS |

Service Recipients:

| Person Served | Email Address | Type | Date / Time |
|---|---|---|---|
| Kelsey Ryburn | kelsey.ryburn@sfgov.org | e-Serve | 5/3/2021 6:58:05 PM |
| San Francisco District Attorney | sfda.writappservice@sfgov.org | e-Serve | 5/3/2021 6:58:05 PM |
| Attorney General of the State of California | sfagdocketing@doj.ca.gov | e-Serve | 5/3/2021 6:58:05 PM |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

5/3/2021
Date

/s/Sujung Kim
_____
Signature

Kim, Sujung (176602)
_____
Last Name, First Name (PNum)

San Francisco Public Defender
_____
Law Firm