# EXHIBIT F
# TO THE DECLARATION OF
# KAITLYN MURPHY

1     SUPERIOR COURT OF CALIFORNIA

2     COUNTY OF SAN FRANCISCO

3     BEFORE THE HONORABLE A. MARISA CHUN, JUDGE PRESIDING

4     DEPARTMENT 9

5     ---oOo---

6  PEOPLE OF THE STATE OF CALIFORNIA,)
                                     )
7          Plaintiff,               )   Court No. CRI-22009575
                                     )
8          vs.                      )
                                     )   **MOTION TO DETAIN**
9  ARMANDO AGUILAR-SEVILLAS,         )
                                     )   Pages 1 - 21
10         Defendant.               )
   _____ )

11

12

13        **Reporter's Transcript of Proceedings**

14        Friday, September 9, 2022

15

16

17  **APPEARANCES OF COUNSEL:**

18        For the People:

19            Brooke Jenkins - District Attorney
              350 Rhode Island Street
20            North Building, Suite 400N
              San Francisco, California 94103
21            BY:  **ALLISON MACBETH**, Assistant District Attorney

22

23        For Defendant:

24            Manohar Raju, Public Defender
              555 Seventh Street - Suite 205
25            San Francisco, California  94103
              BY:  **SUJUNG KIM**, Deputy Public Defender

26

27

28  Reported By:  Jacqueline Chan, CSR No. 10276

# I N D E X

**SESSIONS**

PROCEEDINGS                                         PAGE

Friday – September 9, 2022

    MORNING SESSION                                  3

```
1    SEPTEMBER 9, 2022

2                    P-R-O-C-E-E-D-I-N-G-S

3                        ---oOo---

4                    (MORNING SESSION)

5                    CARLA CUEVAS,

6    official court interpreter for the defendant, translated

7    from the English language into Spanish, and from Spanish

8    into English, as follows:

9        THE COURT:  Let's call line 24, People versus Armando

10   Aguilar-Sevillas.

11       Appearances, please.

12       MS. MACBETH:  Good morning, Your Honor.  Allison

13   Macbeth for the People.

14       MS. KIM:  Good morning, Your Honor.  Sujung Kim, deputy

15   public defender, specially appearing for the attorney of

16   record, Jonathan Fellner, on behalf of Mr.

17   Aguilar-Sevillas.

18       THE INTERPRETER:  The Spanish interpreter is Carla

19   Cuevas, Certification No. 301346, with an oath on file.

20       THE COURT:  Thank you.

21       So good morning, Counsel.

22       And good morning, Mr. Aguilar-Sevillas.

23       So I've reviewed -- we're on today for a motion to

24   detain without bail and an ACM report.  I did review the

25   papers and, you know, the Court's inclination is to deny

26   the motion to detain and to impose release conditions of

27   home detention, electronic monitor, ACM, 1035 search

28   conditions, and a stay away order.
```

4

```
1        In case it isn't clear, also that he be ordered to obey
2   all laws and not to possess or engage in any sales of
3   controlled substances, illegal narcotics.
4        So what I was saying was is that I'm happy to hear from
5   both sides.  I have a few questions, but that's my
6   tentative thinking.  And, you know, just for the record, I
7   will note since the People are probably not aware of this,
8   the Court received I believe yesterday or the day before an
9   application to have the public defender's office file a
10  brief that exceeded the local rules 15 page limit.  The
11  Court denied that request and the public defender's office
12  renewed that request and so I granted it, but I granted it
13  with the understanding that this would be the only time
14  that I would grant such a request.  I do think that a lot
15  of the material in the public defender's papers, you know,
16  could be more concise.  And it's just very difficult given
17  that we have 50 matters a day to have lengthy briefs.  So I
18  just wanted to make sure that everybody was on notice that,
19  you know, the Court really appreciates brevity in terms of
20  the briefs.
21       So why don't I start with Ms. Macbeth since it's the
22  People who are filing this motion to detain.  And I
23  guess -- you know, let me ask you a few questions.  But one
24  question that I had was -- I mean I personally don't think
25  that I need to decide whether Article 1 controls or Article
26  28 controls, but I would be interested in hearing from the
27  People as to your theory as to how the Court would hold Mr.
28  Aguilar-Sevillas without bail given the offense that is at
```

1    issue in this complaint.

2       I mean what is your theory under Section 28?  And you

3    know what, let me just ask you just a few more questions

4    just so that -- because we have a lot of matters that we

5    need to get through.

6       And then I think the other question that I had was in

7    terms of -- if you could address the defense's statement

8    that the weight that was provided in the chart for the

9    fentanyl doesn't actually reflect pure fentanyl, that there

10    are cutting agents.  There's obviously packaging material.

11    And assuming that the Court needs to find, you know, clear

12    and convincing evidence for findings, you know, if you

13    could address that as well, but those are my primary

14    questions.

15       **MS. MACBETH:**  As to -- I believe the Court's first

16    question is essentially the viability of Article 1, Section

17    28.  And this question has not been addressed or resolved

18    by the Court either in *Humphrey* or in the pending case in

19    the Court of Appeal cited by the defense.  But because of

20    the history and the language and the presumption in favor

21    of the initiatives, it does -- the conclusion is that

22    Article 1, Section 28 is operative contrary to the defense

23    arguments.

24       I did review -- I was not aware of the seeking of the

25    order to file a brief in excess of 15 pages.  I did review

26    the defense brief and I agree with the Court's conclusion

27    there that there are rules that need to be followed, but I

28    did review it.  And I think that the argument that Article

1    1, Section 28 is inoperative in its entirety.  It fails to

2    address or recognize the fundamental presumptions in favor

3    of the People's initiative power.

4        **THE COURT:**  So -- and if I can just focus you a little

5    bit.  So I mean my presumption given that the Supreme Court

6    has pointedly declined to resolve this issue which it

7    requested briefing on in the in re *Humphrey* case, as I know

8    that you know, Ms. Macbeth.  My presumption is is the

9    Court's obligation is to reconcile and to harmonize both of

10   them.

11       **MS. MACBETH:**  I agree.

12       **THE COURT:**  And, in fact, certainly there are aspects

13   of Section 28 subdivision (f)(3) that this Court complies

14   with all the time in terms of victims rights, et cetera.  I

15   guess my real question is, under Section 28(f)(3), where is

16   it that the People believe that the Court can detain

17   without bail a defendant who has been charged with an

18   offense that doesn't fall under one of the three classes of

19   felonies that are set forth in Section 12?

20       **MS. MACBETH:**  Well, Article 1, Section 28, it is -- I

21   agree that it does not list out the factors of the three

22   different types of cases; however, it plainly states that a

23   person -- the Court can set, reduce or deny bail, and the

24   Court must consider public safety and the victims safety as

25   the primary considerations.  That provides the Court the

26   guidance.

27       And using the Article 1, Section 12 and the facts of --

28   I think that the way that Article 1, Section 28 operates is

1    that the Court must find that there's sufficient evidence

2    for a hypothetical verdict of guilt.  That there's

3    sufficient -- clear and convincing evidence of a

4    substantial likelihood that the defendant, if released,

5    would endanger victim or public safety.  And three, and

6    this is from *Harris*, in re *Harris*, which is currently under

7    review in the California Supreme Court, that clear and

8    convincing evidence that no less restrictive alternative is

9    sufficient to protect public safety.

10        And so it is the same analysis that you have under

11   Article 1, Section 12, but Article 1, Section 28 gives the

12   Court the discretion to consider in those cases.  We are

13   just applying it here to a case, a felony case.  And

14   otherwise what that would do if the Court does not -- let

15   me step back.

16        The Court does have the obligation even though there is

17   not a decision on this, but the courts are obligated to

18   reconcile as the Court mentioned the two provisions, but

19   the Court must also give the authority to the People's

20   right and the power of the People to amend the

21   constitution, and that's what they did with Proposition 9.

22        **THE COURT:**  Okay.  So I guess -- and I think maybe I'm

23   not being clear enough.  So if I reconcile the two

24   sections, then wouldn't I be applying Section 28 to the

25   three classes of felonies that are set forth under

26   Section 12 as being felonies for which one can detain

27   without bail a defendant?  And I'm playing devil's advocate

28   here.  I'm not necessarily saying that that's what the

1  Court believes, but I think that would be the defense's

2  argument.

3      So do you see in Section 28(f)(3) authority for the

4  Court to detain somebody without bail if they've committed

5  a felony that isn't a violent offense, or a sexual offense,

6  or one involving a threat and great bodily harm?

7      **MS. MACBETH:**  Yes.  What Section 28 did was expand that

8  authority of the Court to deny, but it didn't do it -- it's

9  not something that is so expansive.  The Court must still

10 abide by those constitutional and due process requirements

11 where the Court must find substantial evidence of a

12 hypothetical verdict of guilt, and that comes from in re

13 *white*.  That was Article 1, Section 12.  And then -- but

14 that's how the Court can harmonize the two and give that

15 authority to Article 1, Section 28 without undermining the

16 broad reform that the People had sought in enacting

17 Proposition 20 or, excuse me, Proposition 9.

18      **THE COURT:**  Okay.  And then what about the question

19 about the purity of the fentanyl?

20      **MS. MACBETH:**  Your Honor, as to that, we have -- what

21 we have here is a case where the defendant -- when the

22 officers searched him, it wasn't just a bulk testing of the

23 materials, it was 19 different baggies.  And each of those

24 baggies had a presumptive positive test of fentanyl result,

25 and that's reflected in the pictures that were given to the

26 Court.

27      And to put that into perspective, you know, we all know

28 that there is an alarming -- an emergency here in San

1    Francisco where just in the last month alone, 81 percent of

2    overdose deaths in San Francisco were because of fentanyl.

3         And by being in the Tenderloin and possessing this

4    amount -- to put this into perspective, Your Honor, the

5    Court has the photographs.  And here -- and this is one of

6    the photographs.  And what I have in my hand is a piece

7    of -- it's a photograph and it look like different colors

8    and different bags and on it is a listing where it has

9    orange, blue, purple, and the abbreviation fentanyl.

10        Now, we don't dispute, and we recognize as we did in

11   our papers that the lethality of fentanyl does depend on

12   the person's body size, et cetera, their tolerance past

13   usage.  But just as a demonstrative type of showing, what I

14   have here I've shown to counsel.  This is a photograph of a

15   penny.  This is from the DEA website.  That much -- those

16   two milligrams are sufficient to be lethal.

17        **MS. KIM:**  Your Honor, I object to counsel introducing

18   any exhibits or evidence that have not been previously

19   filed or --

20        **THE INTERPRETER:**  I'm so sorry.  The interpreter can't

21   hear.

22        **THE COURT:**  Can you speak to the mike, please.

23        **MS. KIM:**  Yes.  I object to counsel introducing any

24   exhibits or evidence without first being sworn or being

25   subject to cross-examination as far as authentication, as

26   far as the credibility of the evidence being introduced.

27        **MS. MACBETH:**  Your Honor, I would note that we did cite

28   to the DEA website.  This is -- the People are entitled to

1  make a proffer of evidence.  I did provide counsel.  This
2  is simply to show the Court that this is just
3  two milligrams and comparing that to a common item like a
4  penny.
5  **THE COURT:**  Okay.  So I'll sustain the objection.  I
6  think that -- I mean I think that it's not really necessary
7  for the Court to consider the exhibit, but certainly if you
8  want to file something supplemental and it's served on
9  defendant.  I mean I just want both sides to follow the
10  rules.  And I think speaking of rules, I mean if there are
11  going to be any other ex parte applications in the future,
12  please do serve your opposing counsel as soon as possible.
13  At least in the civil courts here we're required to serve
14  opposing counsel about ex parte applications.
15  **MS. MACBETH:**  And, Your Honor, I did provide Ms. Kim
16  with a copy of the item I'm showing the Court.  I gave it
17  to her this morning.
18  **THE COURT:**  Thank you.
19  **MS. MACBETH:**  But all of this basically underscores
20  comparing -- the 19 baggies underscores the tremendous risk
21  and the photographs that were presented to the Court.
22  There was literally a large Kleenex box filled with the
23  items.  This is not an all fentanyl, but it underscores the
24  risk and the enormous public safety risk that the defendant
25  poses to the public.  And what's more is the defendant
26  already has another open felony narcotics case.  And, yes,
27  that is not fentanyl, but that also shows that the -- you
28  know, the less restrictive alternatives are not sufficient

1    to protect public safety.  And on this, Your Honor, we'd

2    ask the Court to detain without bail because there is

3    sufficient evidence to support a hypothetical verdict of

4    guilt based -- and also because there's a clear and

5    convincing evidence that the defendant's conduct poses a

6    enduring threat to public safety, and that clear and

7    convincing evidence shows that there are no less

8    restrictive alternatives that will protect public safety.

9        **THE COURT:**  And are you saying that there's a case that

10   sets forth these three conditions?  See, I didn't see that

11   when I read 28(f)(3).

12       **MS. MACBETH:**  Your Honor, as we noted, it's on page --

13   there is no case directly on point.  But on page 12 of our

14   briefing we cite to Article 1, Section 12 on page 12.

15   Article 1, Section 12 -- Section 28, *White*, W-H-I-T-E,

16   that's 95 Cal. 5th, 455; *Humphrey*, 11 Cal. 5th at --

17       **THE COURT:**  I think it's 135.

18       **MS. MACBETH:**  135.  Thank you, Your Honor.  And then

19   *Harris*, and that's another decision.  That's common

20   spelling, H-A-R-R-I-S.

21       **THE COURT:**  Okay.  Thank you.

22       Ms. Kim, briefly, do you have any comments or further

23   argument that you want to make?

24       **MS. KIM:**  Well, I think that counsel's not denying the

25   fact that Section 12 applies here.  And the Court has to --

26   even harmonizing the two provisions, has to make findings

27   under Section 12 to detain without bail.  And in this case,

28   as the Court says -- mentioned in the interim ruling, this

1    case does not qualify under the exceptions to Section 12.

2        **THE COURT:**  Well, I think her argument is that it does

3    qualify under Article 1, Section 28.  I don't think they're

4    maintaining that this offense needs to be a Section 12

5    offense.  So they're saying that Section 28 gives this

6    Court authority to detain him without bail on a serious

7    felony offense that threatens the lives and health of so

8    many San Franciscans.

9        **MS. KIM:**  But if the Court takes that position, the

10   Court is basically bypassing Section 12 and there is no

11   authority to do that.  Section 12 is still the prevailing

12   provision that governs pretrial detentions.  And I'm not

13   going to go into the details of why Proposition 9 did not

14   abrogate Section 12.

15       **THE COURT:**  Yeah.  And I don't think I need to decide.

16   Like I said, because my -- you know, my tentative is to

17   deny the motion and to have Mr. Aguilar be on home

18   detention, electronic monitor, and all the other conditions

19   that I noted, and part of that is because -- I -- I am

20   very, very, very concerned about this defendant's conduct.

21   He was here before me in May and it turns out that the

22   reason why he didn't have a criminal record at that time is

23   because he had come to this country in April, and only

24   three months -- two or three months after this court, you

25   know, released him on certain conditions including a stay

26   away order which he did violate.  You know, he's back with

27   hundreds and hundreds of grams of fentanyl, suspected

28   fentanyl.

1    The stay away order required that he stay away from --
2   I think it was Eddy and Polk Street or Olive and Polk
3   Street, and he was found on Eddy and Polk Street.  That is
4   within the 150 parameter.  So he has obviously demonstrated
5   an inability to comply with this Court's orders.

6    And the only reason why I'm not granting the motion to
7   detain without bail is I've given him one opportunity in
8   May.  And I see an obligation to try a less restrictive set
9   of conditions to see if he will stop engaging in drug
10  sales, but I mean he needs to understand, and part of my
11  concern is that, unfortunately, we have had a situation
12  where serious narcotics, felony drug cases, have been
13  disposed of with very little consequences due to -- due to
14  reasons the Court, you know, is not fully understanding.
15  And I think that it's very important that Mr.
16  Aguilar-Sevillas understand that the People are seeking to
17  detain defendants without bail for this type of narcotics
18  trafficking, which is more consistent with what other
19  jurisdictions in this country often does.  And, if
20  anything, I think that the People's brief did not capture
21  the full lethality and danger of fentanyl to the public.

22   Unfortunately, in our dependency court, we see cases
23  all the time where parents lose their rights, parental
24  rights, to their children because they are incapable of
25  caring for them because of fentanyl addiction.  We have
26  cases where children are saving their parents' lives
27  because the parent has inadvertently overdosed on fentanyl.
28  The damage that the fentanyl crisis and what these

1  defendants are doing really cannot be, you know, fully

2  captured I think, you know, in these papers.  And I'm just

3  not -- so I just want to give him one more opportunity, but

4  I want him to be aware that this Court, you know, certainly

5  reserves the right to detain him without bail if he comes

6  back in two or three months again.  I think -- you know, I

7  just don't understand why somebody would violate this

8  Court's orders so quickly and in so egregious a manner

9  after this Court had granted him the opportunity to be

10  released.

11      **MS. KIM:**  So I'll just make two quick points then --

12      **THE COURT:**  Sure.

13      **MS. KIM:**  -- given the Court's remarks.  I don't

14  believe that People have met their burden to prove by clear

15  and convincing evidence that releasing him -- there will be

16  a substantial likelihood that releasing him would lead to

17  great bodily injury.  I also think that, as the Court said,

18  we haven't tried less restrictive alternatives.  The Court

19  did release him on a stay away order, but as the Court

20  mentioned, there are other alternatives that haven't been

21  tried that I think that would ensure that he -- the

22  protection of public safety and that he comes back to court

23  and so --

24      **THE COURT:**  And it's not coming back to court that I'm

25  most concerned about.

26      **MS. KIM:**  Right, public safety.

27      **THE COURT:**  It's public safety.  So the great bodily

28  injury, you know, I actually think that the People can, in

1  fact, establish that.  And it's really the public and
2  victim safety that I'm concerned about so...
3      **MS. KIM:**  I think I'm -- I think the lethality argument
4  is speculative at best.  And I'm not downplaying the
5  dangers of fentanyl to the public at all, but the way that
6  the police determine the presence of fentanyl is they just
7  use a screening test, which means that fentanyl is present
8  in the substance or the mixture, but there's no way to tell
9  the purity or the concentration of a certain mixture.  And
10  so --
11      **THE COURT:**  I mean but, Ms. Kim, we're talking about
12  over 500 grams of fentanyl or suspected fentanyl.  Even if
13  you assume that there's some percentage of cutting agents,
14  I don't think that there's any doubt that this is an amount
15  that is shocking to the conscience and very lethal and very
16  deadly to many San Franciscans.
17      I understand and I agree with your argument that this
18  is not -- it's not going to be pure fentanyl in terms of
19  the 500 and some odd grams that were located on --
20      **MS. KIM:**  Yes.  And to assume that this --
21      **THE COURT:**  -- the defendant.
22      **MS. KIM:**  -- is going to kill people, and the
23  prosecution, you know, stated it's going to kill over
24  230,000 people, I think that kind of claim is outrageous
25  and not supported, and it's really irresponsible, actually,
26  to make such an inflammatory statement.
27      **THE COURT:**  Well, maybe they need to do a better job of
28  linking the deaths to this particular person.  One thing I

1  noticed was the three individuals who Mr. Aguilar-Sevillas

2  allegedly sold to were not arrested, and that sort of

3  information would be helpful because, obviously, if you

4  show a causation link in terms if those individuals die or

5  overdose, that would obviously be helpful and I think would

6  address Ms. Kim's argument.

7       Anything else?

8  **MS. KIM:**  No, Your Honor.

9  **THE COURT:**  Submitted?

10  **MS. MACBETH:**  Yes, Your Honor.

11  **THE COURT:**  Submitted?

12  **MS. KIM:**  Submitted.

13  **THE COURT:**  Okay.  So the Court is adopting its

14  tentative.  I'm denying the People's motion to detain.  I

15  don't believe it is necessary for the Court to decide

16  whether Section 12 of Article 1 of the California

17  constitution or Section 28(f)(3) of the California

18  constitution operate here with regards to pretrial release

19  conditions.  The Court sees its obligation as to harmonize

20  the two at this time given the lack of guidance from the

21  Supreme Court.

22       The Court finds that it is possible that less

23  restrictive conditions might protect public or victim

24  safety.  I reached such a conclusion with some hesitation

25  in light of the fact that this defendant was before this

26  Court on a multi substance abuse -- or, I'm sorry, a multi

27  narcotics felony drug trafficking case just two or three

28  months ago; however, I am willing to give Mr.

1    Aguilar-Sevillas one last opportunity to avoid being

2    detained.  And so I will order that he be released on home

3    detention, electronic monitor, ACM, 1035 search condition.

4         Mr. Aguilar-Sevillas, a 1035 search condition means

5    that you must subject your person, your residence, your

6    vehicle, and any other property or area under your control

7    to a search by any peace, police, or probation officer, at

8    any time of the day or night, with or without your consent,

9    with or without a warrant, and with or without reasonable

10   suspicion or probable cause.  That is to enforce the stay

11   away order as well as the Court's order that you obey all

12   laws.

13        In case there's any ambiguity, that means you cannot

14   possess or sell illegal narcotics.

15        Are there any services that might be helpful to the

16   defendant, Ms. Kim?

17        **MS. KIM:**  Yes.

18        **THE COURT:**  For ACM?

19        **MS. KIM:**  Yes.  He needs help finding employment.

20        **THE COURT:**  Okay.  I will make a note on that.

21        **MS. MACBETH:**  Your Honor, I filled out a stay away

22   order for the Court.  I'd also ask that the Court admonish

23   the defendant to not possess any narcotics or controlled

24   substances without a lawful prescription and that he must

25   obey all laws.

26        **THE COURT:**  And I believe I did say that but I'll

27   repeat it.

28        **MS. MACBETH:**  Okay.

1    **THE COURT:**  You must obey all laws.

2      You must not possess any narcotics or controlled

3    substances.  No fentanyl.  No heroin.  No cocaine.  You

4    cannot possess any drugs unless you have a prescription for

5    those drugs.

6      And you must comply with the stay away order.

7      Oh, I need to sign it.

8    **MS. KIM:**  May I just take a look at it?

9    **THE COURT:**  Oh, sure.

10   **MS. KIM:**  Thank you.

11   **THE COURT:**  Thank you.

12     And you must comply with the stay away order.  You must

13   stay at least 150 yards away from 750 Eddy Street in San

14   Francisco, California.  Please do comply with this order.

15   That's about -- I would say about two city blocks from --

16   on each way from this location.  If you violate this order,

17   it can lead to new criminal charges.

18     It's really important that you comply with this order

19   because you violated the prior stay away order that I

20   issued to you in May when you were here last.

21     Can we get this served, please.

22     And Mr. Aguilar-Sevillas --

23   **THE INTERPRETER:**  Your Honor, could you please repeat

24   the address for the interpreter?

25   **THE COURT:**  It's 750 Eddy Street, San Francisco.

26     And please be aware that the People are seeking to

27   detain you without bail.  And if you violate any of this

28   Court's orders or engage in possessing drugs or selling

1    drugs, the Court may grant that motion on the next time.

2    So please do comply with the Court's orders.

3        And I would really encourage the People and the public

4    defender's office to try to work to help prevent some of

5    these drug cases.

6        And if the People are going to be filing more and more

7    of these motions to detain for these felony drug cases, you

8    may want to let the lawyers of the defendants who have drug

9    cases pending know because, you know, this is something

10   which is new.  And you may want to let people in the

11   Tenderloin who are engaging in drug dealing activities know

12   as well through their counsel.  But I just think that --

13   I'm hoping that you all can work on trying to prevent the

14   problem in addition to trying to prosecute these incidents

15   when they happen.

16       **MS. MACBETH:**  Thank you, Your Honor.

17       Your Honor, I'm providing a copy -- two copies to

18   defense counsel, one for counsel and one for the client,

19   and that has been accepted by Ms. Kim.

20       **THE COURT:**  Thank you.

21       **MS. MACBETH:**  Your Honor, I don't know what the future

22   dates are.

23       **THE COURT:**  So for Mr. Aguilar-Sevillas, he has a

24   preliminary hearing on September 13th at 9:00 a.m. in

25   Department 9.  I'm confirming that.

26       And defendant is ordered present.

27       **MS. MACBETH:**  Thank you, Your Honor.

28       **THE COURT:**  So we're off the record.

(Whereupon, the proceedings were concluded.)

---o0o---

```
1  State of California              )
                                    )
2  County of San Francisco          )

3

4

5      I, Jacqueline K. Chan, Official Reporter for the

6  Superior Court of California, County of San Francisco, do

7  hereby certify:

8      That I was present at the time of the above

9  proceedings;

10     That I took down in machine shorthand notes all

11 proceedings had and testimony given;

12     That I thereafter transcribed said shorthand notes with

13 the aid of a computer;

14     That the above and foregoing is a full, true, and

15 correct transcription of said shorthand notes, and a full,

16 true and correct transcript of all proceedings had and

17 testimony taken;

18     That I am not a party to the action or related to a

19 party or counsel;

20     That I have no financial or other interest in the

21 outcome of the action.

22

23

24 Dated:  September 30, 2022

25

26 _____

27 JACQUELINE K. CHAN, CSR No. 10276

28
```