Shilpi Agarwal, State Bar No. 270749
Avram D. Frey, State Bar No. 347885
Emi Young, State Bar No. 311238
Hannah Kieschnick, State Bar No. 319011
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
Email: sagarwal@aclunc.org
afrey@aclunc.org
eyoung@aclunc.org
hkieschnick@aclunc.org

JUSTINA SESSIONS, State Bar No. 270914
JOHN P. FLYNN, State Bar No. 141094
COLLEEN BAL, State Bar No. 167637
MALAVIKA F. LOBO, State Bar No. 317635
ANA ALICIA SONTAG, State Bar No. 340602
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2000
Email: jsessions@wsgr.com
jflynn@wsgr.com
cbal@wsgr.com
mlobo@wsgr.com
asontag@wsgr.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, individually and on behalf of all others similarly situated, DIANA BLOCK, an individual, and COMMUNITY RESOURCE INITIATIVE, an organization,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>Defendants. | CASE NO.: 4:22-cv-05541-JST<br><br>(San Francisco County Superior Court, Case No.: CGC-22-601686)<br><br>**PLAINTIFFS' SUPPLEMENTAL REPLY**<br><br>Honorable Jon S. Tigar<br>Courtroom 6, 2nd Floor<br>Hearing Date: February 2, 2023<br>Trial Date: Not set |

The San Francisco Sheriff's Office ("SFSO" or "Sheriff") has implemented several changes, and pledges others, in an effort to moot injunctive relief in this matter. After a February 2, 2023, hearing—at which the Court advised Defendants to prepare for an injunction against Sheriff's ("EM") Program Rules 5 (four-way search condition) and 13 (indefinite GPS location data retention and sharing)—it appears the SFSO pressed the San Francisco Superior Court to incorporate portions of Rules 5 and 13 within the court's form EM order and advisals.[1] Now, responding to Plaintiffs' argument that the court's new order and admonishment still fail to cover the privacy intrusions inherent in those rules, the SFSO details additional revisions to its policies, including some yet to be implemented. *See* Decl. of Undersheriff Johnson ("Johnson Decl."), ECF No. 57-1 ¶¶ 6-7. These piecemeal responses to the present litigation do not lessen the need for preliminary relief.

*First*, the SFSO's newly pleaded, voluntary cessation of challenged practices is not a permanent remedy. And in any event, its various correctives do not align with the Superior Court's order. For individuals released on EM both before and after the various changes to EM policy, the Sheriff continues to infringe on protected privacy interests in violation of constitutional rights.

*Second*, Plaintiffs may maintain this action. The fact that Plaintiffs themselves are no longer on EM, and were subjected to the court and Sheriff's prior EM policies, does not preclude Plaintiffs' representation of all individuals released on EM pretrial.

*Third*, a preliminary injunction remains necessary to prevent irreparable harm. The Sheriff's counterargument—that the number of people released under the prior system is declining—is irrelevant. It is also underinclusive as the Sheriff fails to account for harms to those released on EM in the future.

---

[1] *See* Declaration of Sujung Kim at ¶ 3, filed concurrently herewith; Arraignment Hear'g Tr. in *People v. Watkins*, Court No. CRI 23006396 (May 3, 2023) (Kim Decl. Ex. A), at 5:12-16 (Court: "To be clear: it's a new sheriff's policy. It's not the Court that's imposing the 1035 [four-way search condition] . . . . [T]hey're requiring the 1035 on every case on GPS . . . ."); *id.* at 5:27-6:5 (Court: "It's precisely because, I think, of the ACLU litigation I'm advising her now. . . . [T]hose are the conditions of the sheriff's program. It's the only way . . . that the sheriffs will accept anybody into their program, is if they're going to be under 1035; otherwise, they're not offering it.").

*Finally*, the SFSO's renewed argument for abstention is meritless. For these reasons, as well as those previously stated, *see* ECF No. 33, this Court should issue a preliminary injunction.

I. **RULES 5 AND 13 REMAIN SUBSTANTIALLY UNAUTHORIZED.**

The Sheriff's Response alleges for the first time that the SFSO "will" (1) alter its program rules and notation for EM releasees in the California Law Enforcement Telecommunications System ("CLETS") to match the scope of the four-way search now ordered by the superior court pursuant to its revised form EM order and advisals, and (2) limit sharing of continuous GPS location data to those currently on EM or for whom a warrant has issued for EM noncompliance. Johnson Decl. ¶¶ 6-7. As a threshold matter, the Court must "beware of efforts to defeat injunctive relief by protestations of repentance and reform . . . ." *See United States v. W. T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953). Defendants bear a "heavy burden" to establish "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Several factors here weigh against such a finding. Those include: the unknown process by which the SFSO's proffered changes were and will be enacted; the absence of any formal process for such decisions; the ever-evolving nature of the Sheriff's promised reforms in response to briefs filed in this case; and the Sheriff's discretion to abandon or reverse its new EM policies at will. *See Bell v. City of Boise*, 709 F.3d 890, 900-01 (9th Cir. 2013). Nor may the SFSO argue that its new EM policy is permanent because it is compelled by the superior court's new EM order, given that the Sheriff has "consistently urged the validity" of Program Rules 5 and 13 no matter the content of the court's order or advisals. *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 43 (1944); *Rogers v. Colo. Dep't of Corr.*, 2019 WL 4464036, at *8 (D. Colo. Sept. 18, 2019). Accordingly, the Court should not credit the Sheriff's proffered policy revisions and should consider only the changes actually implemented by the superior court. As discussed in Plaintiffs' underlying Opposition, ECF No. 54, those changes do not diminish the need for a preliminary injunction.

But even crediting the Sheriff's further changes to its EM policy, Plaintiffs' requested relief remains proper, as EM releasees will continue to suffer privacy intrusions authorized by

1  the Sheriff alone. For those released prior to May 8, 2023, when the Superior Court first instituted
2  changes to its EM order, the privacy intrusions imposed unilaterally by the Sheriff, without any
3  authorizing court order, are largely unchanged. The effect of Rule 5 is the same, with releasees
4  subject to a four-way search by any member of law enforcement at any time. *See* ECF 1-1
5  ("Complaint") ¶¶ 18-25. And while the Sheriff proposes a limitation on Rule 13—sharing
6  continuous GPS location data only for those currently on EM or for whom a warrant has issued
7  for EM noncompliance, Johnson Decl. ¶ 7—significant privacy intrusions remain. The Sheriff's
8  new policy will continue to allow indefinite retention of an individual's GPS data regardless of
9  their EM status, and without superior court authorization. And the Sheriff admits that *all*
10 releasees, whether or not on EM or subject to a warrant, may have their GPS location data shared
11 in perpetuity pursuant to a "Location Request[]" for those "present within a limited area at a
12 certain time." Johnson Decl. ¶ 8. This expansive sharing, too, is not authorized by the superior
13 court.

14      For individuals released on EM after implementation of the superior court and SFSO's
15 revisions, the same elements of Rule 13 are also imposed by the Sheriff alone. Limitless data
16 retention is not countenanced by the court's new form EM order, *see* Johnson Decl. Ex. A (data
17 "tracked and recorded"), or admonishment, *see* Johnson Decl. Ex. B (data "recorded" and
18 "maintained"), making the Sheriff's indefinite retention of such data unauthorized. And the
19 court's admonishment contemplates GPS data-sharing only "until the case is fully adjudicated,"
20 Johnson Decl. Ex. B, while the Sheriff proposes to share data pursuant to a location request in
21 perpetuity, Johnson Decl. ¶ 8.

22      These components of Rules 5 and 13 represent serious intrusions on personal privacy
23 under established law. *See* ECF No. 22 at 11, 14-15. EM releasees are not a diminished class
24 whom the Sheriff is free to surveil or harass at will—they are entitled to the same robust
25 constitutional protections as other civilians presumed innocent. Thus, even crediting the Sheriff's
26 promised policy revisions, because the SFSO persists in intruding on the privacy of EM releasees
27 absent court authorization, the Court should issue the requested preliminary injunction.
28

## II. PLAINTIFFS MAY PROPERLY REPRESENT THE CLASS OF PRETRIAL EM RELEASEES.

Named Plaintiffs are no longer on EM, but they satisfy the well-recognized mootness[2] exception for "inherently transitory" class claims, and they are appropriate class representatives notwithstanding changes to the superior court and Sheriff's EM policies. *See* ECF No. 42. First, where individuals present claims so "inherently transitory that the trial court w[ould] not have even enough time to rule on a motion for class certification," such a motion is deemed to relate back to the complaint. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); *accord Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (citation omitted). The critical question is whether the duration of the challenged conditions is so short that ordinary application of the mootness doctrine would frustrate resolution on the merits. *See Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997). Here, Plaintiffs challenge pretrial constraints on their liberty, a species of claim repeatedly held to be "inherently transitory" in light of the potentially short duration of pretrial conditions. *See*, *e.g.*, *McLaughlin*, 500 U.S. at 52; *e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) ("It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class.").

Defendants cite *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018), to argue that the inherently transitory exception requires that "there . . . always be some group . . . subject to the challenged practice," a standard Defendants claim that Plaintiffs cannot satisfy "given the shrinking number of criminal defendants on EM based on the previous version of the Superior Court's order . . . ." ECF No. 57 at 7. But *Sanchez-Gomez* held the inherently transitory exception inapplicable because the plaintiffs there did not seek to certify a class, 138 S. Ct. at 1539, distinguishing this case and making the Sheriff's citation dicta. In any event, there is no requirement that a challenged condition continue indefinitely. What matters is that the challenged practice is of short duration and applicable to all who are similarly situated, such that strict application of the mootness doctrine would entail a "constantly changing putative

---

[2] Named Plaintiffs' claims are only arguably moot as to Rule 5; they remain subject to the limitless data retention and sharing provisions of Rule 13.

class . . . ." *Kirkland*, 118 F.3d at 670. Plaintiffs in this matter have alleged that several hundred individuals are on EM pretrial in San Francisco at any given time, and that pretrial EM can last months, or even years. Complaint ¶ 64. There will be numerous individuals with analogous claims to Plaintiffs for many months at least, and the inherently transitory exception applies.

Second, the named Plaintiffs may properly represent all individuals released on EM, both before and after the court and SFSO's collective changes. Plaintiffs seek certification of a class on the basis that the Sheriff "has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). As to all EM releases, the Sheriff has intruded on personal privacy unilaterally in violation of the Separation of Powers, the prohibition on unreasonable search and seizure, and California's constitutional right to privacy. The legal theory supporting each constitutional claim is identical as between those released before and after the relevant changes, as is the requested injunction—an order invalidating any intrusions on the protected privacy interests of EM releasees by the SFSO, without a need to examine or alter any individualized conditions imposed by the superior court. The only difference is that individuals ordered released under the new EM order and policies will suffer a subset of the constitutional harms inflicted by the Sheriff under the old ones. But this does not undermine any factor pertinent to the class certification analysis. Thus, in *Castillo v. Bank of America, NA*, 980 F.3d 723, 729-30 (9th Cir. 2020), the plaintiff challenged an earlier pay policy than the one in effect for other putative class members, yet the Ninth Circuit held that commonality and typicality were satisfied because the named plaintiff's claims were "reasonably co-extensive" with those challenging the later policy, both arose "from the same alleged[] [illegality]," and "a common question remain[ed] . . . ." So, too, here: Plaintiffs' claims are reasonably coextensive with those of recent EM releasees, they arise from the same overreach by the Sheriff, and common questions remain under several constitutional theories. As a result, and for the reasons identified in Plaintiffs' Motion for Class Certification, ECF No. 30, Plaintiffs are proper

representatives of a Rule 23(b)(2) class.[3]

## III. A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT IRREPARABLE HARM.

The Sheriff argues that "any urgency for interim injunctive relief is . . . lessened by the shrinking number of criminal defendants participating in the EM Program based on the Superior Court's previous EM Program Order." ECF No. 57 at 1. But for those released under the prior EM order, the Sheriff's intrusions on protected privacy rights are no less harmful because the superior court and SFSO have adopted different procedures for *other* releasees. As noted, *supra*, hundreds of individuals will likely be subject to the Sheriff's unlawful surveillance under Rules 5 and 13 for months or even years to come. Their detailed location data will continue to be stored indefinitely. Further, the Sheriff ignores that EM releasees in the future will yet be subjected to unauthorized surveillance by the Sheriff in the form of indefinite data retention and data-sharing responsive to location requests. Contrary to Defendants' claim, the Sheriff's gradual shift towards violating the privacy of EM releasees less comprehensively is not a basis for discounting irreparable harm.

## IV. ABSTENTION REMAINS IMPROPER.

Finally, Defendants seize upon the superior court's new form EM order and admonishment to renew their pitch for abstention, arguing, "[a]s reflected by the May 2023 revisions, the Superior Court sets its EM Program Order and admonitions," and "[t]he court should not interfere with this state criminal court process . . . ." ECF No. 57 at 7. This is sophistry. The superior court's recent creation of a form order and admonishment that incorporate elements of Rules 5 and 13 is no evidence of the court's imposition of broader rules *previously*, when the court's form EM order and advisals contained no such references whatsoever. Indeed, the evidence suggests that those rules are purely of the Sheriff's invention. As previously noted, Plaintiffs' challenge is to the Sheriff's unilateral infringements on

---

[3] In the alternative, the Court may designate subclasses and provide Plaintiffs an opportunity to identify representatives for the subclass of individuals released on EM under the Superior Court and Sheriff's revised EM policies and procedures. *See Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1073-74 (N.D. Cal. 2005).

personal privacy. *See* ECF No. 33 at 21-23. Under these circumstances, abstention is improper. *See Arevalo v. Hennessey*, 882 F.3d 763, 766 (9th Cir. 2018).

* * * * *

For the foregoing reasons, Plaintiffs ask this Court to issue a preliminary injunction against the SFSO's unconstitutional infringement on the privacy rights of pretrial EM releasees absent authorization from the superior court.

Respectfully submitted,

Dated: May 26, 2023

By: _____

Avram D. Frey (MJP 804789)
afrey@aclunc.org (*Admitted Pro Hac Vice*)
Shilpi Agarwal (SBN 270749)
sagarwal@aclunc.org
Emi Young (SBN 311238)
eyoung@aclunc.org
Hannah Kieschnick (SBN 319011)
hkieschnick@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478

JUSTINA SESSIONS, State Bar No. 270914
JOHN P. FLYNN, State Bar No. 141094
COLLEEN BAL, State Bar No. 167637
MALAVIKA F. LOBO, State Bar No. 317635
ANA ALICIA SONTAG, State Bar No. 340602
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2000

*Attorneys for Plaintiffs
Joshua Simon, David Barber, Josue Bonilla, Diana Block, and Community Resource Initiative*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Justina Sessions, am the ECF User whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that all signatories have concurred in this filing.

Dated: May 26, 2023                                    /s/ *Justina Sessions*
                                                                         Justina Sessions