DAVID CHIU, State Bar #189542
City Attorney
JAMES F. HANNAWALT, State Bar #139657
Acting Chief Trial Deputy
ALEXANDER J. HOLTZMAN, State Bar #311813
JOSE A. ZELIDON-ZEPEDA, State Bar #227108
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone: (415) 554-3999 [Holtzman]
Telephone: (415) 355-3312 [Zelidon-Zepeda]
Facsimile:      (415) 554-3837
Email: alexander.holtzman@sfcityatty.org
Email: jose.zelidon-zepeda@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
AND PAUL MIYAMOTO, IN HIS OFFICIAL
CAPACITY AS SAN FRANCISCO SHERIFF

SHILPI AGARWAL (SBN 270749)
AVRAM D. FREY (SBN 347885)
EMI YOUNG (SBN 311238)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
Email: sagarwal@aclunc.org
afrey@aclunc.org
eyoung@aclunc.org

Justina Sessions, State Bar No. 270914
Eunice Leong, State Bar No. 320499
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com
eunice.leong@freshfields.com

Attorneys for Plaintiffs
JOSHUA SIMON, DAVID BARBER, JOSUE
BONILLA, DIANA BLOCK, AND
COMMUNITY RESOURCE INITIATIVE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, DIANA BLOCK, AN INDIVIDUAL AND COMMUNITY RESOURCE INITIATIVE, AN ORGANIZATION,<br><br>       Plaintiffs,<br><br>       vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>       Defendants. | Case No. 4:22-cv-05541 JST<br><br>**JOINT SUPPLEMENTAL BRIEF RE FACTUAL DEVELOPMENTS IN RESPONSE TO THE COURT'S MINUTE ORDER (ECF NO. 70)**<br><br>Trial Date:          Not Set |

1

1    Plaintiffs Joshua Simon, David Barber, Josue Bonilla, Diana Block, and Community Resource

2  Initiative ("Plaintiffs") and Defendants the City and County of San Francisco and San Francisco

3  Sheriff Paul Miyamoto ("Defendants") respectfully submit the following joint supplemental brief in

4  response to the Court's Minute Order, ECF No. 70.[1]

5  **I.      BACKGROUND**

6    Since the parties' briefing on the Motion for a Preliminary Injunction, Motion for Class

7  Certification, and Motion to Dismiss,[2] several developments have occurred that may affect the Court's

8  analysis of these motions.

9    On May 3, 2023, Defendants submitted the Administrative Motion for Leave to File the

10  Declaration of Undersheriff Katherine Johnson on the Superior Court's Revision to the Pretrial

11  Electronic Monitoring Program Order in Opposition to Plaintiffs' Motion for Preliminary Injunction.

12  ECF No. 53. Undersheriff Johnson's declaration explained that the Superior Court of the State of

13  California, County of San Francisco, had revised the order entered by criminal courts in releasing

14  pretrial criminal defendants from custody subject to participation in the Pretrial Electronic Monitoring

15  ("PTEM") Program and the admonition provided to these criminal defendants by the Superior Court.

16  ECF No. 53-1. The declaration attached copies of the revised EM Program Order and admonitions.

17  ECF Nos. 53-2, 53-3. Plaintiffs filed an opposition to the administrative motion. ECF No. 54. The

18  Court granted the administrative motion and invited additional briefing from the parties. ECF No. 56.

19  In connection with their Response to the Court's Order Requesting Supplemental Briefing, ECF No.

20  57, Defendants filed a declaration from Undersheriff Johnson. ECF No. 57-1. This declaration

21  explained that (1) the Superior Court had begun using the revised EM Program Order and admonitions

22  for criminal defendants released from custody subject to participation in the PTEM Program during

23  the week of May 8, 2023; (2) the Superior Court had implemented limited further revisions to the EM

24  Program Order on or about May 16, 2023, to remove a signature line for the defendant's counsel at the

25  request of the Public Defender's Office while still including a signature line for the criminal

26    [1] The parties conferred on September 26, 2023, and agreed on guidelines for this joint brief.

27    [2] *See* ECF Nos. 22 (and attachments), 24, 25 (and attachments), 30 (and attachments), 31 (and
   attachments), 32 (and attachments), 33, 34 (and attachments), 39 (and attachments), 40 (and
28  attachment), 41 (and attachments), 42.

JOINT SUPPLEMENTAL BRIEF                                          n:\lit\li2023\230184\01710028.docx
Case No. 22-cv-05541 JST

1    defendant; (3) the San Francisco Sheriff's Office ("SFSO") was using an updated CLETS entry for

2    PTEM Program participants to match  the substance of the Superior Court's new order with respect to

3    a search condition; (4) the SFSO planned to implement a new version of the PTEM Program Rules to

4    reflect the different scopes of search conditions entered by the Superior Court; (4) the SFSO would

5    formalize a revised policy to limit provision of GPS data in response to an Electronic Monitoring

6    Location Request; (5) the SFSO also received Electronic Monitoring Location Requests from other

7    law enforcement agencies to identify PTEM Program participants, if any, who were present within a

8    limited area at a certain time and past PTEM Program participants might sometimes be identified in

9    resulting reports; and (6) Plaintiffs Joshua Simon, David Barber, and Josue Bonilla were all no longer

10   PTEM Program participants. *Id.*; ECF No. 57-2. With their Supplemental Reply, ECF No. 58,

11   Plaintiffs submitted a declaration from Deputy Public Defender Sujung Kim. ECF No. 58-1. This

12   declaration (1) identified outreach from the San Francisco County Superior Court CEO to the Public

13   Defender's Office and (2) attached a transcript from a hearing involving the revised EM Program

14   Order and admonitions. *Id.*; ECF No. 58-2.

15          At the Case Management Conference on September 19, 2023, the Court inquired as to whether

16   the planned changes outlined in Undersheriff Johnson's May 19 Declaration had been implemented.

17   Counsel for Defendants answered that they had in significant part, and the Court directed Defendants

18   to file a declaration setting forth these additional factual developments on the record. After discussion

19   with the parties regarding how to address these new factual allegations, the Court directed the parties

20   to file a joint brief discussing the effect of any new facts on the legal issues in the case. ECF No. 70.

21   On September 26, 2023, after conferring with Plaintiffs, Defendants filed the Declaration of

22   Undersheriff Katherine Johnson Regarding Developments in Response to the Court's Minute Order.

23   ECF No. 71. This declaration explained that (1) as of September 15, 2023, SFSO records showed that

24   90 PTEM Program participants had not yet been re-admonished and issued the revised EM Program

25   Order by the Superior Court; (2) the size of this group had diminished by more than two-thirds since

26   the Superior Court's implementation of its revised admonitions and EM Program Order in May 2023

27   and was expected to continue to diminish; (3) the SFSO remained in communication with the Superior

28   Court about re-admonishment and issuance of the revised EM Program Order to those issued the

JOINT SUPPLEMENTAL BRIEF
Case No. 22-cv-05541 JST

n:\lit\li2023\230184\01710028.docx

earlier version of the EM Program Order; (4) the updated PTEM Program Rules were in place as anticipated and attached to the declaration; (5) all current PTEM Program participants had initialed and signed the updated PTEM Program Rules; (6) the updated policy about location data sharing was in place as anticipated and attached to the declaration; and (7) Plaintiff Joshua Simon had been released from custody on new charges subject to participation in the PTEM Program and had received the superior court's new admonishment and order and signed the SFSO new PTEM Program Rules. ECF No. 71 (and attachments). On October 2, 2023, Defendants filed the Supplemental Declaration of Undersheriff Katherine Johnson Regarding Developments in Response to the Court's Minute Order, with Plaintiffs' consent, providing additional information in response to questions from Plaintiffs about the information in Undersheriff Johnson's previous declaration. ECF No. 72. The declaration expanded on Undersheriff Johnson's foundation to relay the information included in her declarations. *Id.*

## II.      DEFENDANTS' DISCUSSION

The factual developments over the last several months further support denial of Plaintiffs' Motions for a Preliminary Injunction and Class Certification. For PTEM Program participants like named Plaintiff Simon who have signed the Superior Court's revised EM Program Order and received the updated admonitions, no injunction is appropriate. Plaintiffs' challenge to the four-way search condition is moot given that Plaintiffs are no longer and will never again be subject to what they argue was an unauthorized search condition. These developments also weigh against an injunction even for PTEM Program participants who have not yet received (or left the PTEM Program before implementation of) the Superior Court's updated procedures. Finally, the developments undermine certification of Plaintiffs' proposed class including because Plaintiffs seek injunctions unavailable to Simon and other proposed class members. The Court should therefore deny the Motions for a Preliminary Injunction and Class Certification.

### A.      Factual Developments Reinforce That No Relief Is Appropriate for PTEM Program Participants Under the Superior Court's Revised Procedures.

Irrespective of the constitutionality of the earlier procedures addressed in the parties' briefing on the pending motions, the injunctions Plaintiffs seek are not appropriate for criminal defendants who

4

1    have participated in the Superior Court's revised process since May 2023. This includes defendants

2    initially released based on the previous EM Program Order and later issued the revised order and

3    includes defendants like Simon released since implementation of the revised order. *See* ECF No. 57.

4         Plaintiffs "seek an injunction enjoining Defendants . . . from imposing the four-way search and

5    data sharing conditions described in EM Program Rules 5 and 13" and requiring Defendants to

6    expunge GPS data after a PTEM Program participant's case concludes. ECF No. 67 at 9. The current

7    EM Program Order and admonitions authorize each challenged aspect of the PTEM Program,

8    addressing the four-way search condition, the data sharing condition, and the SFSO's retention of GPS

9    location data. ECF No. 57-2 (describing the four-way search conditions and requiring the defendant's

10   signed agreement "to enroll in the electronic monitoring program, follow the program rules, and have

11   their movement tracked and recorded by the SFSO"); ECF No. 53-3 (admonishing the defendant about

12   the search condition, that GPS location "information will be preserved and maintained," and that "GPS

13   location dat[a] can be shared with law enforcement agencies"). These provisions contradict Plaintiffs'

14   unsupported assertion that "no element of the Superior Court's new admonishment or form EM order

15   purports to authorize indefinite data retention or sharing of location data." Meanwhile, the SFSO has

16   aligned its Program Rules and policies with the Superior Court's revised EM Program Order and

17   admonitions, including by memorializing different potential search conditions and formalizing a

18   policy limiting the sharing of location data. ECF No. 71 ¶¶ 4-5, 71-1, 71-2.[3]

19        The process Simon went through when he agreed to participate in the PTEM Program in

20   August 2023 illustrates why he and putative class members like him lack claims for the relief Plaintiffs

21   seek. In May 2023, while released on his own recognizance in his other criminal cases, Simon was

22   arrested on new charges including felony domestic violence and assault with force likely to produce

23

24        [3] Plaintiffs did not argue in the pre-filing version of this brief exchanged with Defendants that
     the voluntary cessation doctrine allows potential class members to pursue claims. To the extent
25   Plaintiffs have not abandoned this theory raised in their Supplemental Reply, ECF No. 58 at 3, the
     argument fails including because the potential viability of claims largely turns on the timing of PTEM
26   Program participation unrelated to this case, relevant changes were made by the Superior Court—not a
     party, and the revised criminal court process means Plaintiffs' claims do not apply throughout
27   participation in the PTEM Program rather than the alleged injury depending on a changeable policy.
     That is not true for the cases Plaintiffs cited in the Supplemental Reply, all of which turned on the
28   defendants' potentially temporary changes. *Cf. Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (en
     banc) (declining to apply voluntary cessation doctrine), *cert. denied*, 143 S. Ct. 854 (2023).

JOINT SUPPLEMENTAL BRIEF                                    n:\lit\li2023\230184\01710028.docx
Case No. 22-cv-05541 JST

1 great bodily injury. ECF No. 71 ¶ 6. From May through August, the criminal court ordered Simon

2 detained because no release conditions could adequately protect the public and promote his appearance

3 in court. *Id.*; Cal. Penal Code § 1320.18. In late August, the criminal court released Simon from

4 custody subject to conditions including participation in the PTEM Program and home detention. ECF

5 No. 71 ¶ 6. The court determined that the condition allowing a warrantless search by any peace officer

6 was appropriate. ECF Nos. 71-4. Simon was admonished by the court and acknowledged his

7 acceptance of the terms of the PTEM Program including the four-way search condition. ECF Nos. 71-

8 3, 71-4. He then initialed and signed the Program Rules and signed the Participant Contract, again

9 agreeing to the conditions he challenges here. ECF Nos. 71-5, 71-6.

10         An injunction is likewise not appropriate to prevent a specific situation of data sharing

11 Plaintiffs argue falls outside the court's revised admonition, given the highly speculative nature of that

12 asserted injury. Plaintiffs suggest PTEM Program participants could be injured by having their

13 historical location data shared after their criminal cases conclude, in response to a law enforcement

14 request about a specific location and time rather than an individual—what Plaintiffs call "location

15 data" sharing. But Plaintiffs have no standing to bring such a challenge, lacking evidence they have

16 ever had any GPS information from their participation in the PTEM Program shared with other law

17 enforcement agencies, to say nothing of this specific type of request through which their information

18 might possibly be shared after their criminal cases have concluded. *See* ECF No. 31-7 ¶ 16 (finding no

19 record of law enforcement sharing of Plaintiffs' GPS data); ECF No. 1-1 (not alleging any sharing of

20 Plaintiffs' GPS data).[4] For Plaintiffs to sustain the alleged injury of their data being shared after their

21 cases have concluded, (1) a different DOJ-certified law enforcement agency would need to execute the

22 Location Request Form to ask the SFSO to identify individuals at (2) a specific location—likely a

23 crime scene—where a Plaintiff happened to be located at (3) a time when the Plaintiff was

24 participating in the PTEM Program—despite (4) Plaintiffs' cases having concluded by the time of the

25 request—and (5) certify, among other things, that the request was made as part of an active criminal

26         [4] At the time of exchanging final draft discussions sections of this brief, Plaintiffs for the first

27 time shared the accompanying declaration and exhibit with Defendants. Defendants object and, if appropriate, would submit further evidence and response. As just one example, Plaintiffs' exhibit

28 reinforces the absence of evidence of any law enforcement sharing of Plaintiffs' location data.

JOINT SUPPLEMENTAL BRIEF
Case No. 22-cv-05541 JST

n:\lit\li2023\230184\01710028.docx

1   investigation. Having *never* had their data shared with another law enforcement agency, Plaintiffs have

2   not shown that the alleged injury here is sufficiently imminent and substantial to support an injunction.

3   *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) (recognizing "speculative chain of

4   possibilities" involving other parties did not establish that the alleged injury was "certainly

5   impending"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (rejecting standing to seek

6   injunctive relief despite a past allegedly unconstitutional use of force on top of the plaintiff's

7   expressions of concern and anticipation similar to those Plaintiffs include in their declarations);

8   *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (en banc) (finding no standing for

9   injunctive relief despite each plaintiff alleging a previous, illegal stop); *Grayson v. Cnty. of Marin*, No.

10  14-CV-05225-JST, 2015 WL 2452808, at *3 (N.D. Cal. May 21, 2015) ("Grayson has not alleged any

11  facts demonstrating that he is likely to be injured in the future . . . by the County's [relevant]

12  policies"). Plaintiffs can only speculate that they will be allegedly harmed by sharing of location data.

13  It does not suffice for standing purposes that Plaintiffs might have had standing to challenge other

14  aspects of the PTEM Program; they must demonstrate standing separately as to the request to enjoin

15  data sharing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (holding that standing to

16  seek injunction as to one project did not create standing for injunctions on other projects); *Mayfield v.*

17  *United States*, 599 F.3d 964, 969 (9th Cir. 2010) (holding no standing for remaining requested relief

18  after agreement on other issues); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1218

19  (N.D. Cal. 2014) (holding plaintiff lacked standing as to one of two forms of injunctive relief

20  requested). None of the injunctions Plaintiffs seek therefore apply to Simon or others like him who

21  have received the revised EM Program Order and admonitions from the Superior Court.

22          **B.      Plaintiffs' Request for a Preliminary Injunction on the Search Condition is Moot.**

23          The shrinking group of current PTEM Program participants not yet re-admonished by the

24  Superior Court or issued the revised EM Program Order should similarly not receive an injunction

25  against the search condition because Plaintiffs' challenge to the condition is moot. *See* ECF No. 71

26  ¶ 3. Simon, Barber, and Bonilla all left the PTEM Program at least six months ago. ECF Nos. 57 ¶ 9,

27  71 ¶ 9. Simon then signed the revised EM Program Order and acknowledged the court's admonitions

28  about the search condition in rejoining the PTEM Program. ECF Nos. 71 ¶¶ 6-7, 71-3, 71-4. These

7

1    events reinforce the arguments supporting mootness in Defendants' Response to the Court's Order

2    Requesting Supplemental Briefing. ECF No. 57 at 7-8; *Slayman v. FedEx Ground Package Sys., Inc.*,

3    765 F.3d 1033, 1048 (9th Cir. 2014) ("[W]here, as here, the plaintiff's claim becomes moot before the

4    district court certifies the class, the class action normally also becomes moot.").

5         Contrary to Plaintiffs' arguments, their search condition claims do not satisfy the mootness

6    exception for inherently transitory claims because "the constant existence of a class of persons

7    suffering the deprivation is [not] certain" here. *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975); *see*

8    *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018) (explaining *Gerstein* exception to

9    mootness turned on the fact "it was certain that there would always be some group of detainees subject

10   to the challenged practice"); *see also Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1246

11   (9th Cir. 2013) (describing weight "greater than ordinary judicial dicta" the Ninth Circuit gives to

12   Supreme Court dicta, were the *Sanchez-Gomez* statement dicta as Plaintiffs have argued). With re-

13   issued current EM Program Orders, the number of people involved is shrinking to zero, with no new

14   individuals added. *See* ECF No. 71 ¶ 3. Plaintiffs cite *County of Riverside v. McLaughlin*, 500 U.S. 44

15   (1991), but in that case—as in *Gerstein*—there would continue to be a group subject to the challenged

16   wrongdoing. *Id.* at 47 (explaining new arrestees were subject to the ongoing, challenged policy); *see*

17   *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) (describing *McLaughlin* as extending

18   the "relation-back doctrine" only to cases where it is "'certain that other persons similarly situated'

19   will continue to be subject to the challenged conduct); *see also Wade v. Kirkland*, 118 F.3d 667, 670

20   (9th Cir. 1997) (cited by Plaintiffs in Supplemental Reply and tying the inherently transitory exception

21   to the "constantly changing putative class that will become subject to these allegedly unconstitutional

22   conditions"). Plaintiffs also cite *Sosna v. Iowa*, 419 U.S. 393 (1975), but the named plaintiff's claim

23   there became moot *after* the court certified a class. *Id.* at 399 ("When the District Court certified the

24   propriety of the class action, the class of unnamed persons described in the certification acquired a

25   legal status separate from the interest asserted by appellant."). The Court should therefore deny the

26   Preliminary Injunction Motion as moot as to the four-way search condition.

27   **C.     Factual Developments Weigh Against Entry of a Preliminary Injunction.**

28        To the extent some potential relief remains applicable to some past or present PTEM Program

8

1  participants, the transitions in the Superior Court process and SFSO rules and policies weigh against

2  entry of a preliminary injunction in several respects:

3      *First*, Simon's new felony domestic violence charges and circumstances of re-release, for

4  crimes allegedly committed while released on other domestic violence charges, further support the

5  public and government interests in the challenged conditions and oppose entry of a preliminary

6  injunction. *See* ECF No. 31 at 22-24, 26-28. Absent the PTEM Program and associated conditions, the

7  court would likely have required Simon to remain in custody. ECF No. 71 ¶¶ 6-8.

8      *Second*, the need to parse who in the proposed class can potentially receive relief Plaintiffs

9  seek shows they are unlikely to prevail in this facial challenge. Plaintiffs brought a solely facial

10  challenge—seeking to invalidate PTEM conditions for everyone on PTEM. ECF No. 39 at 19-20

11  ("Named Plaintiffs bring facial challenges to the Sheriff's EM Program Rules 5 and 13"). To succeed,

12  they need to show the conditions they challenge are inappropriate for every person subject to those

13  conditions. *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (en banc) (affirming denial of

14  preliminary injunction). As explained above, the injunctions they seek clearly do not apply to a

15  significant portion of their proposed class. Plaintiffs are thus unlikely to prevail on their claims.

16      *Third*, Ms. Kim confirmed in her declaration that the Superior Court contacted the Public

17  Defender's Office about implementing the revised procedures. ECF No. 58-1 ¶ 2. This engagement,

18  along with the issuance of EM Program Orders and re-admonishment by the criminal courts of PTEM

19  Program participants, support that this civil putative class action is not an appropriate vehicle for

20  Plaintiffs' claims. *See* ECF No. 57 at 8. The claims needed to be raised with the state criminal courts

21  to avoid an intrusion into their work. *See Hodgers-Durgin*, 199 F.3d at 1042 ("The Supreme Court has

22  repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should

23  not enjoin a state to conduct its business in a particular way.").

24      *Fourth*, Simon agreed to allow the SFSO to retain and share his PTEM location data with other

25  law enforcement agencies for law enforcement purposes, despite knowing about these terms before

26  seeking release to the PTEM Program. *See, e.g.*, ECF Nos. 71-5, 71-6. Plaintiffs appear to contend this

27  agreement is invalid and unenforceable because it constitutes an "unconstitutional condition." ECF

28  No. 22 at 14-15. But no decision cited by Plaintiffs or identified by Defendants has applied a doctrine

9

1    of unconstitutional conditions to invalidate the use or retention of lawfully collected information. *Cf.*

2    *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 992 (9th Cir. 2023) (holding that "the retention

3    of records alone does not constitute a concrete injury," even when those records were allegedly

4    obtained illegally). This Court should not be the first to so conclude.

5    **D.      Factual Developments Reinforce the Bases to Deny Class Certification.**

6    The factual developments described above also highlight why the Court should deny the

7    Motion for Class Certification. Plaintiffs seek to certify an injunctive relief class of all past, present,

8    and future PTEM Program participants. ECF No. 30 at 2. They have the burden to prove their

9    proposed class satisfies the requirements of numerosity, commonality, typicality, and adequacy and to

10   show that "final injunctive relief . . . is appropriate respecting the class as a whole." Fed R. Civ. P. 23;

11   *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (holding plaintiffs "must

12   actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23").

13   In addition to the reasons described in Defendants' Opposition to Plaintiffs' Motion for Class

14   Certification, ECF No. 41, Plaintiffs additionally fall short of their burden now because some proposed

15   class members have received the Superior Court's revised admonitions and EM Program Order while

16   others have not. Importantly, no named Plaintiff can represent a class or subclass challenging the

17   search condition for current PTEM Program participants not yet re-admonished or issued the revised

18   EM Program Order. Simon has gone through the Superior Court's revamped process and consented in

19   both Superior Court and at the SFSO to the conditions he challenges in this case. Bonilla and Barber,

20   meanwhile, are not part of the PTEM Program and would be subject to the updated procedures if they

21   were released from custody again subject to participation in the PTEM Program. In suggesting the

22   Court may nonetheless certify a class including individuals admonished and issued the EM Program

23   Order after May 8, Plaintiffs cite authorities explaining that a class may include individuals who

24   suffered more or less of the *same* alleged injury, not *distinct* injuries as here. *See Castillo v. Bank of

25   Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (holding "alleged defect . . . was 'equally applicable to all

26   Class Members,'" which is not true here, and nonetheless rejecting certification); *Gray v. Golden Gate

27   Nat'l Recreational Area*, 279 F.R.D. 501, 509 (N.D. Cal. 2011) (explaining "the class representative

28   'must be part of the class and possess the same interest and *suffer the same injury* as the class

10

1   members'" (citation omitted) (emphasis added)); Karen L. Stevenson & James E. Fitzgerald, Federal

2   Civil Procedure Before Trial (Nat'l Ed.) ¶ 10:293 (Rutter Grp. 2023) (titled "Injuries differing in

3   amount" and citing cases involving class members subject to differing amounts of the same injury).

4   　　　Plaintiffs also do not show "'the indivisible nature of the injunctive or declaratory remedy

5   warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to

6   all of the class members or as to none of them,'" which is the "key" to a Rule 23(b)(2) class. *Wal-Mart*

7   *Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citation omitted). "[F]inal injunctive relief is [not]

8   appropriate respecting the class as a whole" given the distinctions discussed here and in Defendants'

9   opposition to class certification. Fed. R. Civ. P. 23(b)(2); *see Jennings v. Rodriguez*, 138 S. Ct. 830,

10  852 (2018) (directing reconsideration of 23(b)(2) certification because "some members of the certified

11  class may not be entitled to bond hearings as a constitutional matter"). To the extent an injunction is

12  appropriate as to Simon, Barber, or Bonilla (and it is not), it cannot extend to the proposed class.

13  　　**E.　　Conclusion**

14  　　　For the above reasons and those in the previous briefing and evidence, Defendants respectfully

15  request that the Court deny the Motion for a Preliminary Injunction and Motion for Class Certification.

16  **III.　　PLAINTIFFS' DISCUSSION**

17  　　　Defendants' factual submission confirms the need for Plaintiffs' requested relief. Undersheriff

18  Kathryn Johnson's recent declaration (ECF 71) makes clear that: (a) all individuals released pre-trial

19  on EM retain constitutional claims against the Sheriff; (b) Plaintiffs' individual claims are either not

20  moot or subject to an exception; (c) a class action is appropriate; and (d) the putative class will suffer

21  irreparable harm absent injunctive relief.

22  　　(a) *All Individuals Released Pretrial on EM Retain Claims Pleaded by Plaintiffs*.

23  　　　Plaintiffs allege that the Sheriff violates the rights of pretrial EM releasees by imposing blanket

24  conditions of release absent authorization from the Superior Court. Specifically, the Sheriff's

25  application of a four-way search clause and indefinite retention and sharing of releasees' GPS data

26  violates the rights of releasees under the Separation of Powers Clause, California's right to privacy,

27  against unreasonable search and seizure, and without due process. The Superior Court and Sheriff

28  amended their EM policies effective May 8, 2023, such that different policies apply to pre- and post-

11

n:\lit\li2023\230184\01710028.docx

1    May 8 releasees. (ECF No. 71 at ¶¶ 3–4). But all EM releasees, both pre- and post-May 8, retain the

2    constitutional claims pleaded by Plaintiffs.

3         With regard to pre-May 8 releasees, 90 individuals have not been "re-admonished" by the

4    Superior Court. (ECF No. 71 at ¶ 3.) These individuals were released under the procedures described

5    in the Complaint, without the Superior Court authorizing the four-way search clause and data retention

6    and sharing conditions. (*See* ECF No. 1-1 at ¶¶ 13–21.) Accordingly, there is no change to the

7    conditions authorized by the Superior Court in these cases.

8         The Sheriff's Office has required these 90 individuals to sign new program rules (ECF No. 71-

9    1), but the new rules do not significantly diminish the privacy intrusions inherent in the former rules.

10   New Program Rule 5 provides that the Sheriff's deputies, or "any peace officer acting on behalf of and

11   with the express permission of San Francisco Sheriff sworn staff," may conduct a four-way search at

12   any time, without any degree of articulable suspicion. (*Id.*) This differs from the former Program Rule

13   5 only insofar as members of the San Francisco Police Department will now need to call the Sheriff's

14   Office and ask permission before searching releasees without probable cause. This is not a distinction

15   of constitutional significance—the new rule does not require law enforcement to show articulable

16   suspicion, and the Sheriff is not a neutral magistrate. *See U.S. v. Scott*, 450 F.3d 863, 866–67, 872–74

17   (9th Cir. 2006). Regardless, new Program Rule 5 undoubtedly purports to authorize a four-way search

18   by any member of the Sheriff's Office, and in the case of 90 pre-May 8 releasees, it does so absent

19   authorization by the Superior Court. Thus, for this subgroup of releasees, the claims relative to

20   Program Rule 5 are effectively unchanged.

21        Further, the claims of pre-May 8 releasees relative to former Program Rule 13—now new

22   Program Rule 11 (ECF No. 71-1 at 3)—are narrowed but nevertheless remain valid. Undersheriff

23   Johnson declares that the Sheriff may share, without a warrant or articulable suspicion, either (1) the

24   continuous movements of an EM release ("individual data"), or (2) the movements of all individuals

25   on EM within a particular area ("location data"). (ECF No. 57-1 at ¶¶ 7–8; ECF No. 71 at ¶ 5). In

26   response to this litigation, the Sheriff limited the duration of individual data sharing. But location data

27   sharing, the Sheriff admits, may continue indefinitely. (ECF No. 57-1 at ¶¶ 7–8; ECF No. 71 at ¶ 5;

28   *see also* ECF No. 71-2 at 22.)

12

1    Moreover, the Sheriff's new policies do not alter its data retention policies, meaning that the

2  Sheriff retains releasee data indefinitely—a distinct privacy intrusion, particularly if the Sheriff retains

3  the discretion to revert to broader sharing policies. Defendants argue that indefinite retention is

4  authorized because the new admonishment states that releasee location data will be "preserved and

5  maintained." (ECF No. 53-3). But releasees would not reasonably interpret this to mean that their data

6  would be retained *indefinitely*. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) ("[T]he scope of . . .

7  consent under the Fourth Amendment is . . . 'what would the typical reasonable person have

8  understood by the exchange[.]'"). To the contrary, releasees would reasonably expect retention for the

9  duration of their case at the longest—particularly since the admonishment limits data-sharing to that

10  period. Thus, the Sheriff continues to unilaterally impose a four-way search clause and data retention

11  and sharing for pre-May 8 releasees, and these individuals have all constitutional claims pleaded in the

12  Complaint.

13    Post-May 8 releasees have constitutional claims regarding data retention and sharing, only. The

14  Superior Court's new form EM order imposes a four-way search condition that is consistent with new

15  Sheriff's Program Rule 5. (*Compare* ECF No. 71-4 at 2, *with* ECF No. 71-5.) But the Superior Court's

16  new admonishment and form EM order do not authorize indefinite data retention or sharing of location

17  data. (*See generally* ECF Nos. 53-2, -3). Thus, the same privacy intrusions that apply to pre-May 8

18  releasees relative to former Program Rule 13—indefinite retention and sharing of location data—also

19  apply to post-May 8 releasees via new Program Rule 11.

20    Defendants do not deny that the Sheriff continues to impose privacy intrusions unilaterally—

21  they concede that 90 individuals remain subject to four-way searches, and that the Sheriff will share

22  location data of past and current EM participants in perpetuity, all without Superior Court

23  authorization. Instead, Defendants argue that named Plaintiffs lack standing against these

24  unconstitutional practices because their claims relative to four-way searches and location data sharing

25  are allegedly moot and "speculative," respectively. For reasons discussed in the next section, mootness

26  does not prevent Plaintiffs from challenging the four-way search condition.

27    Nor are Plaintiffs' claims speculative. First, indefinite retention of Plaintiffs' location data—a

28  distinct privacy intrusion—is ongoing. And Defendants admit that they are engaged in location data

13

1    sharing. *See* Frey Decl., Ex. A at 6–7 (refusing to disclose the extent of location data sharing prior to

2    class certification). Location data sharing thus presents a "risk of real harm" sufficient to confer

3    standing on named Plaintiffs and all class members. *TransUnion LLC v. Ramirez* 141 S.Ct. 2190, 2210

4    (2021) (citation and quotation marks omitted); *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 434

5    (N.D. Cal. 2017) (plaintiff has standing to bring pre-enforcement challenge where "the government

6    conduct poses a real and immediate threat" to plaintiff's Fourth Amendment rights) (citation omitted).

7    That this harm will not ultimately befall all pretrial EM releasees is immaterial, as "even a well-

8    defined class may inevitably contain some individuals who have suffered no harm as a result of a

9    defendant's unlawful conduct." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir.

10   2016).  Defendants' citation to *Grayson v. Cnty. of Marin* actually supports Plaintiffs' argument—

11   *Grayson* found no risk of future harm because there was no evidence of "ongoing illegal conduct,"

12   while the opposite is true here. No. 14-CV-05225-JST, 2015 WL 2452808, at *2 (N.D. Cal. May 21,

13   2015).

14          In sum, though changed factual circumstances have reduced the unauthorized privacy

15   intrusions imposed on pretrial EM-releasees—minimally in the case of 90 pre-May releasees, and

16   more so for post-May 8 releasees—*all persons* on EM in San Francisco continue to suffer meaningful

17   rights violations by the Sheriff. Thus, the Sheriff's continuing, unauthorized surveillance violates the

18   constitutional rights of releasees in the same ways, and for the same reasons, alleged in Plaintiffs'

19   Motion for Preliminary Injunction. (*See* ECF No. 22 at 6–16.)

20       *(b) Plaintiffs' Individual Claims Are Not Moot or Are Subject to a Mootness Exception.*

21          All three named Plaintiffs have live claims and may otherwise continue this action under the

22   "inherently transitory" exception to mootness. Preliminarily, the GPS data of all named Plaintiffs

23   remains subject to indefinite retention and location data sharing, so Plaintiffs' challenges to these

24   practices are live. As for the claims of pre-May 8 releasees against Program Rule 5, while named

25   Plaintiffs' claims are technically moot, this is a paradigmatic case for application of the "inherently

26   transitory" exception to mootness. (*See* ECF No. 58 at 4.) Because Plaintiffs bring a putative class

27   action challenging a pretrial condition that is by its nature too short to allow resolution on the merits,

28   the mootness doctrine does not apply. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)

14

1    (challenge to extended detention following warrantless arrest was not moot though named plaintiffs

2    were released prior to class certification); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (reaching

3    the merits despite resolution of named plaintiffs' cases because, "Pretrial detention is by nature

4    temporary, and it is most unlikely that any given individual could have his constitutional claim

5    decided . . . before he is either released or convicted. The individual could nonetheless suffer repeated

6    deprivations, and it is certain that other persons similarly situated will be detained under the allegedly

7    unconstitutional procedures."). The Court should apply the "inherently transitory" exception here, and

8    Plaintiffs should be permitted to maintain this action.

9         Defendants argue that it is not "certain" that someone will always be subject to a four-way search

10   unauthorized by the Superior Court, since the number of people subject to such unconstitutional

11   conduct is down to 90 and may eventually reduce to zero. Defendants misinterpret the law. What must

12   be "certain" is "'that other persons similarly situated' will have the same complaint." *Pitts v. Terrible*

13   *Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (quoting *Gerstein*, 420 U.S. 110 n.11). That is so

14   here—90 individuals like named Plaintiffs who were placed on EM prior to May 8 and have not been

15   "re-admonished" are subject to an unlawful four-way search under Program Rule 5. There is no legal

16   support for Defendants' proffered proposition that an unconstitutional harm must continue unabated

17   for all time to permit application of the "inherently transitory" exception. That is particularly so

18   because there is always the possibility that a government actor could "suddenly have a change of

19   heart," such that a contrary rule would permit agencies to avoid liability by changing tacks "citing

20   *policy*, rather than *legal*, grounds." *See Immigrant Defenders Law Ctr. v. Mayorkas*, 2023 WL

21   3149243, at *43 (C.D. Cal. Mar. 15, 2023) In other words, the "inherently transitory" doctrine has

22   developed to foreclose exactly the sort of gamesmanship that Defendants attempt here.

23        (c) ***Class Certification Is Appropriate and Plaintiffs Are Proper Class Representatives***.

24        Class certification is appropriate despite changes to the Superior Court and Sheriff's EM

25   policies. First, the 90 individuals released before May 8 who have not been "re-admonished" by the

26   Superior Court are sufficient to satisfy numerosity, and class certification as to these releasees is

27   proper for the reasons stated in Plaintiffs' Motion for Class Certification. (*See* ECF No. 30). But the

28   class properly includes those released or "re-admonished" after May 8, as well, because these

JOINT SUPPLEMENTAL BRIEF
Case No. 22-cv-05541 JST

n:\lit\li2023\230184\01710028.docx

1   releasees continue to suffer a subset of the constitutional violations imposed on earlier releasees. It is

2   well established that commonality and typicality are satisfied under these circumstances, as "a

3   plaintiff's claims may be typical although other members of the class suffered less or more injury."

4   William W. Schwarzer, *et al., Federal Civil Procedure Before Trial,* § 10:293 (Rutter Group 2009);

5   *see Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 509 (N.D. Cal. 2011) (noting that,

6   "[t]ypicality and commonality requirements are similar and tend to merge," and "[the fact that] injuries

7   may differ in amount does not defeat typicality") (citation and quotation marks omitted). What matters

8   for class certification purposes is that all EM releasees share the same constitutional claims resulting

9   from the same illegality—the Sheriff's usurpation of the Superior Court's authority to impose

10  conditions of release that infringe on privacy interests. *See Castillo v. Bank of America, NA*, 980 F.3d

11  723, 729–30 (9th Cir. 2020) (authorizing certification of a single class though plaintiffs challenged an

12  earlier policy because both arose "from the same alleged[] [illegality]," and "a common question

13  remain[ed]").[5]

14          Further, named Plaintiffs may properly represent the class of individuals released pretrial on

15  EM, both before and after May 8. All named Plaintiffs were originally ordered released on EM prior to

16  May 8 and therefore share the precise claims of pre-May 8 releasees with respect to data retention and

17  location data sharing. And Plaintiff Joshua Simon is now on EM pursuant to the post-May 8 policy

18  changes, so he may represent the precise claims of post-May 8 releasees. The only question is whether

19  named Plaintiffs may adequately represent the claims of pre-May 8 releasees relative to the four-way

20  search clause to which they are no longer subject. Under established law, they may, as named

21  Plaintiffs have no interests adverse to pre-May 8 releasees subject to a four-way search clause, "the

22  interests of that class have been competently urged at each level of the proceeding," *Sosna v. Iowa*,

23  419 U.S. 393, 402 n.11, 403 (1975), and there is "[n]othing in the record [that] suggests that

24  [Plaintiffs] would not vigorously pursue injunctive relief on behalf of the entire class," *Ellis v. Costco*

25  *Wholesale Corp*, 657 F.3d 970, 985–86 (9th Cir. 2011). Accordingly, Plaintiffs satisfy the

26  requirements for class certification.

27

---

28          [5] Plaintiffs would be amenable to subclasses composed of pre- and post-May 8 releasees, respectively, if the Court considers that more efficient in its discretion.

16

JOINT SUPPLEMENTAL BRIEF                                               n:\lit\li2023\230184\01710028.docx
Case No. 22-cv-05541 JST

1    Defendants argue that named Plaintiffs cannot represent the class because their claims are

2    allegedly moot, and further, that differences between class members make common relief

3    inappropriate for the entire class. But "the Supreme Court's 'flexible' approach to mootness does not

4    place a formalistic emphasis on the precise timing of when a district court decides a class certification

5    motion in relation to when a named plaintiff's individual claim allegedly becomes moot." *Immigrant*

6    *Defenders Law Ctr.*, 2023 WL 3149243, at \*44. When a district court cannot reasonably rule on a

7    motion for class certification before the claims of named plaintiffs have become moot, class

8    certification relates back to the filing of the complaint. *See Sosna*, 419 U.S. at 402 n.11, 403. Further,

9    contrary to Defendants' assertion, a single form of injunctive relief is appropriate as to all class

10   members: an order prohibiting the Sheriff from intruding on the privacy of pretrial EM releasees in

11   ways not authorized by the Superior Court. Should this Court determine that enforcement of that order

12   with respect to particular class members would benefit from segregating the 90 pre-May 8 releasees

13   who have not been "re-admonished" from the remainder, subclasses are an appropriate resolution.

14   (d) ***Injunctive Relief Is Necessary to Prevent Irreparable Harm***.

15   Finally, Undersheriff Johnson's Declaration shows the scale of harm that will result absent

16   injunctive relief: 90 people will remain subject to the indignity and anxiety of a four-way search clause

17   executable at any time, without judicial authorization or oversight, and hundreds more will have their

18   GPS data retained and potentially shared pursuant to a location data request for many years into the

19   future. These are significant intrusions on personal privacy, and the Sheriff has no countervailing

20   interest in imposing surveillance conditions that were not deemed necessary by the Superior Court. A

21   preliminary injunction is accordingly necessary to protect the rights of pre-trial EM releasees and

22   make clear that the Sheriff's operation of the Superior Court's EM program is not an opportunity to

23   conduct general criminal law investigations in the Sheriff's own interest.

24   Defendants present a series of confused arguments against injunctive relief, but none is

25   availing. First, Defendants gratuitously raise Plaintiff Simon's recent criminal charge and state that,

26   but for the Sheriff's pre-trial EM program, Simon would have been detained. This is rank speculation,

27   but it is also irrelevant: that Simon and others might accede to the Sheriff's program, notwithstanding

28   its unconstitutional conditions, to avoid detention (a truism on which the "unconstitutional conditions"

17

1  doctrine is founded, *see Scott*, 450 F.3d at 866) is not a basis to maintain unauthorized and invasive

2  practices such as indefinite data retention and sharing.

3        Second, Defendants argue based on *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014),

4  that Plaintiffs cannot show that all class members suffer from unconstitutional conduct. This is

5  incorrect on the facts and the law. All EM releasees are entitled to an individualized determination of

6  necessity by the Superior Court prior to imposition of any privacy intrusion while on pretrial release.

7  All putative class members thus suffer unconstitutional harm in the Sheriff's unilateral imposition of

8  such conditions. That Plaintiffs and class members may suffer different types and degrees of harm is

9  no obstacle to relief for the reasons previously noted.

10        Third, Defendants cite to the Superior Court's notification to the San Francisco Public

11  Defender's Office of the May 8 policy change to rehash their claim that this Court should abstain. It is

12  unclear what Defendants think this notification evidences, but their abstention arguments are without

13  merit, as the Court has repeatedly intimated. (*See* ECF No. 33 at 20–23.)

14        Fourth, and finally, Defendants make a convoluted argument that Plaintiff Simon consented to

15  the new Program Rules, and the unconstitutional conditions doctrine cannot apply because the Sheriff

16  only seeks to retain lawfully collected information. How this argument relates to the propriety of

17  injunctive relief is unclear, but the whole point of this case is that the information retained and shared

18  by the Sheriff is done in breach of the rights against unreasonable search and seizure and California's

19  constitutional right to privacy (*see* ECF No. 22 at 9–16), which is precisely when the unconstitutional

20  conditions doctrine applies.

21

22

23

24

25

26

27

28

JOINT SUPPLEMENTAL BRIEF
Case No. 22-cv-05541 JST

n:\lit\li2023\230184\01710028.docx

1    For the foregoing reasons, and as detailed in Plaintiffs' prior pleadings (*see* ECF Nos. 22, 30,

2  33, 39, 54, 58), Plaintiffs ask the Court to certify a class and grant preliminary injunctive relief.

3

4  Dated:  October 6, 2023

5                                               DAVID CHIU
                                                 City Attorney
6                                               JAMES F. HANNAWALT
                                                 Acting Chief Trial Deputy
7                                               ALEXANDER J. HOLTZMAN
                                                 JOSE A. ZELIDON-ZEPEDA
8                                               Deputy City Attorneys

9

10                                      By:    */s/ Alexander J. Holtzman*
                                                 ALEXANDER J. HOLTZMAN
11                                              JOSE A. ZELIDON-ZEPEDA

12                                              Attorneys for Defendants
                                                 CITY AND COUNTY OF SAN FRANCISCO, PAUL
13                                              MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN
                                                 FRANCISCO SHERIFF
14

15                                      By:    */s/ Avram D. Frey*
                                                 AVRAM D. FREY
16

17                                              Attorney for Plaintiffs
                                                 JOSHUA SIMON, DAVID BARBER, JOSUE
18                                              BONILLA, DIANA BLOCK, AND COMMUNITY
                                                 RESOURCE INITIATIVE
19

20                        **FILER'S ATTESTATION**

21        Pursuant to Civil Local Rule 5-1(h)(3), I attest that each of the other signatories have concurred

22  in the filing of this document.

23                                      By:    */s/ Alexander J. Holtzman*
                                                 ALEXANDER J. HOLTZMAN
24

25

26

27

28

19

JOINT SUPPLEMENTAL BRIEF                                                    n:\lit\li2023\230184\01710028.docx
Case No. 22-cv-05541 JST