UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSHUA SIMON, et al.,

        Plaintiffs,

    v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

        Defendants.

Case No. 22-cv-05541-JST

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, GRANTING MOTION FOR CLASS CERTIFICATION, AND GRANTING MOTION FOR PRELIMINARY INJUNCTION**

Re: ECF Nos. 22, 24, 30

      Before the Court are Defendants' motion to dismiss, ECF No. 24, and Plaintiffs' motions for preliminary injunction and class certification, ECF Nos. 22, 30. The Court will deny Defendants' motion to dismiss but will remand Taxpayer Plaintiffs' claim to state court. The Court will grant Plaintiffs' motion for class certification and motion for preliminary injunction.

## I.    BACKGROUND

      Plaintiffs bring this action against the City and County of San Francisco (the "County") and against Paul Miyamoto in his official capacity as San Francisco Sheriff. ECF No. 1-1 ¶¶ 11–12.[1] The San Francisco Sheriff Office's ("Sheriff" or "SFSO") administers the electronic monitoring ("EM") of criminal defendants on pretrial release. *Id.* ¶ 1. Plaintiffs allege that the SFSO exceeds its authority by imposing EM conditions that violate the United States and California State Constitutions. *Id.* ¶¶ 1–2, 69–97.

      Plaintiffs comprise two categories of individuals: (1) criminal defendants Joshua Simon, David Barber, and Josue Bonilla ("Named Plaintiffs"), who bring the action on behalf of

---

[1] For the purpose of resolving Defendants' motion to dismiss, the Court accepts as true the allegations in the complaint, ECF No. 1-1. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

United States District Court
Northern District of California

themselves and a putative class of all individuals charged with a crime and "released pretrial on EM who were or will be required to agree to the Sheriff's EM Program Rules for Pre-Sentenced Individuals and the EM Program Participant Contract" (together with Named Plaintiffs, the "Criminal Defendant Plaintiffs"), *id.* ¶ 62; and (2) one natural person and one nonprofit corporation who are San Francisco taxpayers ("Taxpayer Plaintiffs"), *id.* ¶¶ 9–10.

### A. Pretrial Release Determinations in San Francisco

After an individual taken into custody is booked into one of the San Francisco County jails, the San Francisco Pretrial Diversion Project performs a "public safety assessment." *Id.* ¶¶ 13–14. The assessment includes a recommendation of either continued custody or pretrial release under one of three levels of supervision, which range from release on the individual's own recognizance to "assertive case management." *Id.* ¶ 14. Next, a San Francisco Superior Court ("Superior Court") judge, after considering the public safety assessment and relevant information from the parties, makes a release determination. *See id.* ¶ 15. If the judge orders pretrial release, she may impose specific conditions on release, such as submission to warrantless searches or participation in programming. *Id.* ¶ 16. When imposing these conditions, "the judge makes individualized findings on the record to substantiate the reasonableness of the conditions imposed in the particular case." *Id.* Under any level of supervision, the judge may also require the defendant to participate in EM "for the limited purposes of ensuring future court appearances and protecting public safety." *Id.* ¶ 17.

### B. Electronic Monitoring Program

#### 1. Plaintiffs' Original Allegations[2]

The SFSO oversees the pretrial EM program pursuant to Superior Court order. *Id.* at 91. The SFSO has promulgated its own rules governing the program ("Program Rules"). *Id.* ¶ 1. Plaintiffs challenge the constitutionality of Program Rules 5 and 13,[3] which are discussed in detail

---

[2] While this case has been pending, the Superior Court has altered its EM procedures, and the Sheriff has revised some EM Program Rules and other relevant policies. In this section, the Court describes the landscape as alleged by Plaintiffs at the time of filing. Factual developments since filing are discussed in the following section.

[3] Plaintiffs' complaint and both parties' other filings often refer to Program Rule 5, which was the search condition challenged at the time of filing, and Program Rule 13, which was the data sharing

below, as well as the indefinite retention of EM participants' location data.

The Superior Court orders EM at a hearing during which it typically "does not mention or discuss" the Sheriff's Program Rules or "make any individualized determination concerning the reasonableness of any conditions imposed by the Sheriff's . . . Program Rules as applied to the individual at bar." *Id.* ¶ 18. After the hearing, the Superior Court issues a standard form order requiring the individual released on EM to "obey all orders given by any [SFSO] employee(s) or contract service provider(s) and live within 50 driving miles of the Sheriff's Electronic Monitoring office." *Id.* ¶ 19. The order "lists other 'court-ordered conditions' that the Court may check off in its discretion, such as mandatory drug testing and not possessing weapons." *Id.* The order also states that "the Court indicates that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by the Court." *Id.* The form order does not reproduce or describe the content of any of the Sheriff's Program Rules, including the specific Rules that Plaintiffs challenge. *Id.* "Individuals released on EM are not required or even requested to review, initial, or sign the Court's EM form order." *Id.* ¶ 20. The Superior Court also "does not, in connection with imposing EM, elicit a general waiver of Fourth Amendment rights on the record." *Id.* ¶ 18. "[T]here is no record evidence that the [Superior] Court itself is aware of—let alone has approved—the content of the Sheriff's EM Program Rules." *Id.*

Individuals released on EM enroll in the program at the office of the Sheriff's private contractor, Sentinel Offender Services, LLC ("Sentinel"), where they are fitted with an ankle monitor. *Id.* ¶ 22. During enrollment at Sentinel's office, releasees are informed for the first time of the Sheriff's Program Rules, including Rules 5 and 13. *Id.* ¶ 23. Agreement to the Program Rules is mandatory for participation in the EM program. *Id.* ¶ 24. The enrollees are permitted to review the Program Rules but are not provided access to counsel. *Id.* Enrollees "understand from

---

policy challenged at the time of filing. Revisions to the text of the Program Rules have altered Rule 5 and moved the data sharing provision from Rule 13 to Rule 11. To avoid confusion, the Court will refer to the Program Rules by that general title throughout the discussion portion of its Order, with the understanding that Plaintiffs' claims pertain to the search and data sharing conditions regardless of which rule numbers correspond to those conditions in any edition of the Rules.

the circumstances that they must initial, sign, and date the Program Rules or face return to jail." *Id.* In addition to the Program Rules, the enrollees "must also separately initial, acknowledge, and agree to rules contained in a 'San Francisco Sheriff's Dept. Electronic Monitoring Program Participant Contract: Pre-Sentenced Individuals'" (the "Program Contract"). *Id.* ¶ 27. The Program Contract "contains provisions substantively equivalent to Program Rules 5 and 13." *Id.* ¶¶ 27–29.

At the time that Plaintiffs filed this action in September 2022 and until the May 2023 changes discussed below, Program Rule 5 stated, "I shall submit to a search of my person, residence, automobile or property by any peace officer at any time." *Id.* ¶ 25. This type of broad search condition is commonly known as a "four-way search clause." *Id.* ¶ 1; *see also, e.g.*, *United States v. Cole*, 445 F. Supp. 3d 484, 486 (N.D. Cal. 2020).

Upon a releasee's enrollment in EM, the Sheriff updates the California Law Enforcement Telecommunications System ("CLETS") to indicate to all members of California law enforcement that EM participants are subject to a four-way search condition. *Id.* ¶ 42. As a result, when a law enforcement officer encounters a pretrial releasee subject to EM, "CLETS notifies the officer of the four-way search condition, purportedly authorizing search of the individual's person, residence, property, and automobile without a warrant or any degree of articulable suspicion." *Id.* "Neither law enforcement officers nor releasees are required to report" the performance of such searches. *Id.* ¶ 43.

EM also collects GPS location data from each participant. "An ankle monitor that is charged and functioning gives the Sheriff and Sentinel continuous GPS location coordinates, 24 hours a day, seven days a week, for the duration of an individual's participation in the EM Program." *Id.* ¶ 50. This information is "saved and stored on Sentinel's servers, permitting historical tracking as well." *Id.* The retention or destruction of the GPS location data collected from [EM] releasees is governed by Sentinel's contract, which "does not address what happens to an EM participant's data once their participation in the program has ceased." *Id.* ¶ 53. Under the contract, "unless or until Sentinel's contract is terminated, Sentinel has the authority to retain the complete GPS location data" of all participants, "regardless of whether their participation has

ceased or their case closed." *Id.* Sentinel's contract "has been operational since August 1, 2019." *Id.*

Program Rule 13 provides, "I acknowledge that my EM data may be shared with other criminal justice partners." *Id.* ¶ 26. Accordingly, the Sheriff may share the GPS location data collected from EM participants with any other law enforcement agency. A law enforcement agency requests this data by submitting an "Electronic Monitoring Location Request" to the Sheriff. *Id.* ¶ 54. On the form, the requesting agency is asked to "represent that [it is] requesting this information as part of a current criminal investigation." *Id.* (internal quotation marks omitted). The form does not require the requesting agency to obtain a warrant or to base its request on articulable suspicion. *Id.* The number of these GPS location data requests has increased each year: "in 2019, the Sheriff shared the GPS location data of four individuals with other law enforcement agencies; in 2020, the number increased to 41; and in 2021, it swelled to 179." *Id.* ¶ 55.

### 2.   Subsequent Modifications to EM

On May 3, 2023, Defendants sought leave to file a declaration from SFSO Undersheriff Katherine Johnson notifying the Court of revisions to the form order and procedures that the Superior Court uses to release pretrial criminal defendants on EM. ECF No. 53 at 2. The declaration explained that the Superior Court had discussed the revisions with SFSO and stated that SFSO planned to make corresponding changes to its own forms and procedures. ECF No. 53-1 ¶¶ 3–9. Plaintiffs opposed the motion on the basis that Defendants mischaracterized the changes' impact on Plaintiffs' claims. ECF No. 54 at 3–5. The Court granted Defendants leave to file the declaration, ECF No. 55, and requested supplemental briefing on the revisions to the EM Program and the relevant Superior Court order and procedures, ECF No. 56.

In their responsive brief, Defendants argued that Plaintiffs lacked standing and could no longer represent the putative class and that, in any event, the program changes had rendered Plaintiffs' claims moot. ECF No. 57 at 4–8. Defendants also submitted another declaration from Undersheriff Johnson containing an update on the implementation of SFSO's previously planned changes to the EM procedures and describing additional developments. ECF No. 57-1. In

particular, the declaration stated that (1) the Superior Court had begun to use its revised order and admonishment as of May 8, 2023; (2) the Superior Court had removed the signature line for defense counsel on the new form order at the request of the Public Defender's Office; (3) the SFSO was using a revised CLETS text entry reflecting changes in the Superior Court's order regarding the four-way search condition; (4) the SFSO planned to implement new Program Rules corresponding to the different search condition options on the Court's form order; (5) the SFSO planned to change its policy to limit the instances in which it would provide GPS data upon request; (6) none of the three Named Plaintiffs remained active EM participants.  ECF Nos. 57 at 3–5, 57-1 ¶¶ 3–9.  Johnson specified that Plaintiff Simon's participation in EM ended on September 21, 2022; Plaintiff Barber's participation ended on October 31, 2022; and Plaintiff Bonilla's participation ended on March 23, 2023.  ECF No. 57-1 ¶ 9.

Plaintiffs responded that the changes had not mooted their claims under the doctrines pertaining to inherently transitory putative class claims and voluntary cessation, as well as because the indefinite sharing and retention of proposed class members' data continued.  ECF No. 58 at 2– 5.  Plaintiffs submitted a declaration from Deputy Public Defender Sujung Kim, ECF No. 58-1, and a transcript from a Superior Court custody determination proceeding held on May 3, 2023, ECF No. 58-2.  During that hearing, the Superior Court ordered home detention using the new form order, which contained a non-optional four-way search clause.  ECF No. 58-2 at 5–6.  When defense counsel objected to the imposition of the four-way search clause based on the facts of her client's case, the court stated, "To be clear, [the four-way search condition] is a new Sheriff's policy.  It's not the Court that's imposing the [condition] . . . they're requiring [this search condition] on every case on GPS, SCRAM, or home detention.  It's on the form itself . . . ." *Id.* at 6.  After attributing the policy to "ACLU litigation," apparently referring to this case, the court reiterated that the search condition was "the only way . . . that the [S]heriffs will accept anybody into their program . . . ." *Id.* at 6.

After a case management conference on September 16, 2023, the Court directed Defendants to file a supplemental declaration advising whether SFSO had implemented its planned changes.  ECF No. 70.  The Court also ordered the parties to file a joint brief addressing

6

the impact of factual developments on the legal issues in the case.  *Id.*

Defendants filed two responsive supplemental declarations from Undersheriff Johnson. ECF Nos. 71, 72.  The first, filed on September 26, 2023, provided updates on SFSO's revisions to the Program Rules and related policies.  ECF No. 71.  Johnson stated that SFSO had updated the Program Rules search condition to correspond to the Superior Court's revised form order, *id.* ¶ 4, and revised its internal data sharing policy to state that SFSO would provide individuals' location data to other law enforcement agencies upon request only for current EM participants or past participants "who are criminal defendants with a current matter pending" or "are on active warrant status for the current matter," *id.* ¶ 5.  She also advised that Plaintiff Simon, having been arrested on new charges, was re-enrolled in pretrial release EM on August 25, 2023, under the revised procedures and Rules.  *Id.* ¶¶ 6–7.  The second declaration, filed on October 2, 2023, elaborated on the records kept by the SFSO and Undersheriff Johnson's basis for her testimony about the changes to the EM program.  ECF No. 72 ¶¶ 3–4.

On October 6, 2023, the parties filed a joint supplemental brief addressing recent factual developments.  ECF No. 73.  In this latest brief, the parties reaffirmed that Plaintiff Simon was re-enrolled in EM pursuant to a new arrest and remained an EM participant under the revised terms of the program.  *Id.* at 4.  Defendants continued to assert that Named Plaintiffs may not represent a class because their personal claims have expired; that intervening program changes have rendered moot all claims related to the search condition; and that such changes bolster the case against class certification and injunctive relief for Plaintiffs' remaining claims.  *Id.* at 4–11.  Plaintiffs maintained that their fundamental claims remain live because the Sheriff continues to unlawfully exceed his authority by imposing and enforcing the Program Rules on a universal basis, *id.* at 11–12, and that their claims are not moot—and class certification is appropriate—under the inherently transitory exception to the mootness doctrine, *id.* at 15–16.  Regarding the search-condition issue, Plaintiffs focused on the ninety remaining proposed class members subject to the Sheriff's original, unilateral four-way search condition, who they argued maintain live claims regarding the original rules.  *Id.* at 12.  Plaintiffs also highlighted that no factual developments have mitigated the harm stemming from SFSO's data sharing and retention policies.  *Id.* at 13–14.

On January 2, 2024, Defendants submitted an attorney declaration containing further factual updates.  ECF 74-1.  The declaration advised the Court that Plaintiff Simon is no longer on EM following the revocation of his pretrial release on December 7, 2023.  *Id.* ¶ 2.  Defendants also corrected their past contention that they had never shared Named Plaintiffs' location information with another law enforcement agency pursuant to an information request; in fact, SFSO shared Plaintiff Bonilla's location information with law enforcement in December 2022 "in connection with a request for location data about a different individual."  *Id.* ¶ 3.

### C.    Procedural History

On September 8, 2022, Plaintiffs filed this action in state Superior Court, claiming that the SFSO Program Rules violate the proposed class's (1) right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and Article I, section 13 of the California Constitution; (2) right to privacy under Article I, section 1 of the California Constitution; and (3) right to due process under the Fourteenth Amendment of the United States Constitution and Article I, section 7 of the California Constitution.  Plaintiffs also claim that the Rules violate the separation of powers required by Article III, section 3 of the California Constitution and bring a taxpayer action to prevent illegal expenditure of funds pursuant to California Code of Civil Procedure § 526A.  Plaintiffs seek declaratory and injunctive relief to enjoin the Sheriff from imposing or enforcing Program Rules 5 and 13.  *See* ECF No. 1-1 ¶ 3.  Defendants removed the action to this federal district court on September 28, 2022.  ECF No. 1.

Following removal, Plaintiffs moved this Court for a preliminary injunction prohibiting Defendants from imposing or enforcing the challenged EM Program Rules.  ECF No. 22 at 23.  Defendants filed a motion to dismiss the complaint for failure to state a claim.  ECF No. 24.  Plaintiffs have since also filed a motion for class certification.  ECF No. 30.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.  The Court also has an inherent duty to satisfy itself of its ongoing subject-matter jurisdiction throughout the litigation.  *See R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1220–21 (9th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)).  Accordingly, the Court addresses threshold jurisdictional

issues before examining the merits of the parties' motions.

**A.     Standing[4]**

To invoke the jurisdiction of a federal court, Plaintiffs must demonstrate standing, which consists of the "irreducible constitutional minimum" of (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing is evaluated based on "the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 569 n.4); *accord, e.g.*, *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017); *Woltkamp v. Los Rios Classified Emp. Ass'n*, 539 F. Supp. 3d 1058, 1065 (E.D. Cal. 2021).

A court evaluating standing at the pleading stage must "accept as true all material allegations," "construe the complaint in favor of the complaining party," and "determine whether the plaintiffs have clearly alleged facts demonstrating each element of standing." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020) (citations and internal quotation marks omitted). At this stage, therefore, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Skaff*, 506 F.3d at 838 (citing *Lujan*, 504 U.S. at 561). "[W]hile the proof required to establish standing increases as the suit proceeds . . . the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) (emphasis and ellipsis in original) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

To show an injury in fact, Plaintiffs must "ha[ve] sustained or [be] immediately in danger of sustaining some direct injury" as the result of the conduct that they challenge, "and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (internal quotations and citation omitted). Plaintiffs

---

[4] The Court addresses Taxpayer Plaintiffs' Article III standing separately in its analysis of Defendants' motion to dismiss.

United States District Court
Northern District of California

allege that the Sheriff's imposition of the EM Program Rules exposes Criminal Defendant Plaintiffs to unlimited suspicionless searches and the perpetual retention and sharing of their location data in violation of the United States and California State Constitutions.  ECF No. 1-1 ¶¶ 42–57.  Named Plaintiffs were enrolled in EM when they filed their complaint, *id.* ¶¶ 6–8, and, like all members of the proposed class, they were subject to the Program Rules throughout their enrollment, *see id.* ¶ 62.  The alleged injury was actual and ongoing at the time that the complaint was filed.  This case is therefore distinct from cases involving past conduct that ended before the filing of a complaint, requiring the plaintiffs to establish the likelihood of repetition to bring a claim for injunctive relief.  *See, e.g.*, *Lyons*, 461 U.S. at 102–03; *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042–44 (9th Cir. 1999) (en banc).  Under the "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed," *Lujan*, 504 U.S. at 569 n.4, Plaintiffs have demonstrated the "requisite personal interest" to vest this Court with jurisdiction, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000) (citation omitted).  Their injury is directly traceable to Defendants' conduct because Defendants issued the Program Rules and implement the EM program.  *See, e.g.*, ECF No. 1-1 at 91–92.  Finally, because Plaintiffs seek an injunction against the imposition and enforcement of the Program Rules that they claim infringe their constitutional rights, a favorable decision would likely redress the injury.  *See id.* at 24.

### B.    Mootness

Although Plaintiffs had standing at the time of filing, a live case or controversy must exist throughout the litigation for this Court to maintain jurisdiction.  *Flint v. Dennison*, 488 F.3d 816, 823 (9th Cir. 2007) ("A case that has lost its character as a present, live controversy is moot and no longer presents a case or controversy amenable to federal court adjudication." (internal quotation marks omitted)); *see Friends of the Earth, Inc.*, 528 U.S. at 180 (explaining that the mootness doctrine derives from the requirement of an Article III case or controversy).

"Mootness, however, is a flexible justiciability doctrine" with well-established exceptions.  *Flint*, 488 F.3d at 823; *accord U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980) (explaining that the Supreme Court's "cases demonstrate the flexible character of the Art. III

1    mootness doctrine").  "The question is not whether the precise relief sought at the time the case

2    was filed is still available, but whether there can be any effective relief."  *Bayer v. Neiman Marcus*

3    *Grp.*, 861 F.3d 853, 862 (9th Cir. 2017) (internal quotations and citation omitted); *cf. Ecological*

4    *Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000) ("The district court retained

5    subject matter jurisdiction in this case whether or not the alleged violations persist throughout the

6    duration of the litigation, because [Plaintiffs] alleged violations . . . that were ongoing at the time

7    the complaint was filed.").

8            Here, two categories of factual developments call into question the existence of a live

9    controversy as to Named Plaintiffs.  The first is Named Plaintiffs' release from EM; the second is

10   the changes to the EM Program.  The Court addresses each in turn.

11                   **1.       Named Plaintiffs' EM Status**

12           Defendants assert that Named Plaintiffs cannot represent the proposed class because their

13   pretrial release on EM has ended since they filed their complaint, mooting their challenge to the

14   search condition in the Program Rules.  ECF No. 57 at 4; ECF No. 73 at 7–8, 10.  Although

15   Plaintiff Simon re-entered the EM program and was a participant at the time of the briefing on

16   these issues, Defendants argue that his claim is nonetheless moot because his second EM

17   enrollment was governed by revised procedures and Program Rules.  ECF No. 73 at 7.

18           Plaintiffs contend that the case falls within the "inherently transitory" exception to

19   mootness, *id.* at 14–15, which encompasses claims that are "so inherently transitory that the trial

20   court will not have even enough time to rule on a motion for class certification before the

21   proposed representative's individual interest expires."  *County of Riverside v. McLaughlin*, 500

22   U.S. 44, 52 (1991) (internal quotation marks and citation omitted); *see Genesis Healthcare Corp.*

23   *v. Symczyk*, 569 U.S. 66, 76 (2013) ("The 'inherently transitory' rationale was developed to

24   address circumstances in which . . . no plaintiff possessed a personal stake in the suit long enough

25   for litigation to run its course.").

26           When determining whether a putative class action is inherently transitory, "the district

27   court must look at the claims of the class as a whole, as opposed to [a named plaintiff's] individual

28   claims for relief."  *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).  Named Plaintiffs as

individuals "need not be subjected to the same action again" for the inherently transitory exception to apply. *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020); *cf. Demery v. Arpaio*, 378 F.3d 1020, 1026–27 (9th Cir. 2004) (concluding, in the context of individual claims, that pretrial detention was sufficiently capable of repetition and that the action was not moot after plaintiffs were convicted). This rule recognizes that "[a]n inherently transitory claim will certainly repeat *as to the class*, either because '[t]he individual could nonetheless suffer repeated [harm]' or because 'it is certain that other persons similarly situated' will have the same complaint." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (emphasis added) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).

"[E]ven if the district court has not yet addressed the class certification issue, mooting the putative class representative's claims will not necessarily moot the class action." *Pitts*, 653 F.3d at 1090; *see, e.g.*, *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (holding that a class claim for injunctive relief was not moot despite the "expiration of [named plaintiff's] personal stake in injunctive relief" before the district court certified the class). Accordingly, even assuming that Named Plaintiffs' claims have become moot, that fact "does not deprive [the court] of jurisdiction" if their claims are "transitory enough to elude review." *Nielsen v. Preap*, 139 S. Ct. 954, 963 (2019) (citing *County of Riverside*, 500 U.S. at 52). Rather, "[i]n such cases, the relation back doctrine is properly invoked to preserve the merits of the case for judicial resolution." *County of Riverside*, 500 U.S. at 52 (internal quotation marks omitted).[5]

Claims regarding court or Sheriffs' supervision during the pretrial period are the epitome of inherently transitory claims. *See, e.g.*, *Gerstein*, 420 U.S. at 110 n.11; *Geraghty*, 445 U.S. at 399; *see also Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010) (holding that a challenge to an expired agreement that had a three-year term was not moot because three years was "too short to allow for full judicial review"). The parties do not dispute that new individuals will continue to be enrolled in EM or that all enrolled individuals are subject to the

---

[5] Defendants' reliance on *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018), to support the contrary position is inapt because that case involved individual claims, not putative class claims, *see id.* at 1538–39.

SFSO Program Rules.  The Court therefore finds that the period of pretrial release on EM is inherently transitory.  As a result, "the action qualifies for an exception to mootness even if there is no indication that [named plaintiffs] or other current class members may again be subject to the acts that gave rise to the claims."  *Wade*, 118 F.3d at 670.

The Court observes that at least some current proposed class members continue to experience the ongoing injury alleged in the complaint.  Approximately ninety individuals remain enrolled in pretrial EM under the same terms that governed Named Plaintiffs' EM at the time that they filed this action.  ECF No. 71 ¶ 3; *see* ECF No. 73 at 12–15.  The challenged Program Rule regarding indefinite GPS data sharing also extends the injury beyond proposed class members' periods of participation in the EM program.  Although the inherently transitory exception applies and itself suffices to overcome mootness, these factors bolster the Court's determination that this matter remains appropriate for adjudication on the merits.  The expiration of Named Plaintiffs' original periods of pretrial release thus neither moots the case nor renders them unable to represent the proposed class.

### 2.    Changes to EM Procedures and the Program Rules

Defendants also assert that this action is moot, either entirely or with respect to the search condition claims, due to the May 2023 revisions to aspects of the EM program and the substance of the Program Rules.  ECF No. 57 at 4–7; ECF No. 73 at 7–8.  The Superior Court and the Sheriff made these changes approximately eight months after the commencement of this action.  *See* ECF No. 53-1 ¶¶ 4–9.  The Participant Contract, which appears to have been updated most recently in 2019, does not reflect the revisions to the Program Rules.  *See* ECF No. 71-6 (Participant Contract signed by Plaintiff Simon in August 2023).  As the Court has noted, approximately ninety current members of the proposed class remain subject to the same EM conditions that Plaintiffs originally challenged.  ECF No. 71 ¶ 3.  Defendants, however, note that this group is subject to attrition as individuals either leave the EM program or are "re-admonished" under new procedures.  ECF No. 73 at 7.  Based on this attrition and an assumption that all future members of the proposed class will be subject to the May 2023 version of the procedures and substantive rules, Defendants argue that the policy changes mean that Plaintiffs' alleged injury will not recur as to the class.  *See*

*id.* at 10.  That the injury might cease in the future, however, does not eliminate the ongoing injury in the present.

Furthermore, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case unless it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. Vilsack*, 6 F.4th 983, 991 (9th Cir. 2021) (quoting *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018)) (ellipses and internal citations and quotations omitted).  Because the Sheriff's internal policy changes are "not reflected in statutory changes or even in changes in ordinances or regulations," the Sheriff could abandon them with relative ease.  *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014).  Rather than creating a "definitive test," the Ninth Circuit has identified several factors that courts should consider in such cases.  *Id.*, *see Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) (describing these factors as a "loose framework").  On the balance of these considerations, the Sheriff has not carried its burden to establish mootness here.  The revised Rules are not "unequivocal in tone," they do not "address[] all of the objectionable measures" that Plaintiffs identified, and the record suggests that this litigation was "the catalyst" for the changes. *Rosebrock*, 745 F.3d at 972 (quoting *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000)) (internal quotation marks omitted).  The Sheriff also continues to defend the legality of the original Program Rules in this litigation.  *Cf. Brach v. Newsom*, 38 F.4th 6, 13 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 854 (2023) (*Brach II*) (describing the government's renouncement of any intention to reinstate the challenged policy as the "most important[]" factor in its analysis); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.*, 6 F.4th at 991 ("It must be absolutely clear to the court, considering the procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practices, that the activity complained of will not reoccur." (internal quotation marks and citation omitted)).  On this record, the government has not met its "heavy burden" under the "stringent" standard for mootness after voluntary cessation.  *Rosebrock*, 745 F.3d at 971 (internal quotation marks omitted); *cf., e.g.*,

*Brach II*, 38 F.4th at 15 (holding that the state government had shown that school closures were not likely to recur because the state "ha[d] renounced any intention of closing its schools again, the school closure orders were temporary measures designed to expire by their own terms, and the schools have been operating in-person for a year").  Moreover, if the defendants sincerely intend not to resume applying the prior Rules, "the injunction harms them little; if they do, it gives [the class] substantial protection."  *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135–36 (9th Cir. 1986).  These considerations reinforce the Court's determination that a live controversy remains.

The Court therefore finds that the inherently transitory nature of Plaintiffs' claims permits Named Plaintiffs to represent the class regardless of the expiration of their individual claims and that the revisions to certain EM procedures and Program Rules do not negate the existence of a live controversy.

## III.    MOTION TO DISMISS

### A.    Requests for Judicial Notice

The Court first addresses Defendants' unopposed requests for judicial notice of documents in support of their motion to dismiss and Plaintiffs' unopposed request for judicial notice of documents in support of their opposition.  ECF Nos. 25, 34; *see* Fed. R. Evid. 201(b).

Defendants request judicial notice of (1) "the California Superior Court, County of San Francisco's [summary sheets] of the charges pending" against Criminal Defendant Plaintiffs, available on San Francisco Superior Court's website; (2) minutes from hearings in *People v. Barber*, No. CRI-21007774 (S.F. Super. Ct.); and (3) minute order in *People v. Barber*, No. CRI-21007774 (S.F. Super. Ct.).  ECF No. 25.  Plaintiffs request judicial notice of transcripts of release hearings conducted in *People v. Simon*, No. CRI- 22004986 (S.F. Super. Ct.); *People v. Barber*, No. CRI-21007774 (S.F. Super. Ct.); and *People v. Bonilla*, No. CRI-22005221 (S.F. Super. Ct.).  ECF No. 34.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) . . . ."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  An exception allows a court to consider "matters of public

record without converting a motion to dismiss into a motion for summary judgment.  But a court cannot take notice of disputed facts contained in such public records."  *Id.* at 999 (internal citation omitted).  Accordingly, the Court grants the parties' requests for judicial notice of each document but limits "the judicially noticed fact in each instance . . . to the existence of the document, not the truth of the matters asserted in the documents."  *Salas v. Gomez*, 2016 WL 3971206, at *5 (N.D. Cal. July 25, 2016).

### B.    Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff must plead "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable."  *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).  In assessing plausibility, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Knievel*, 393 F.3d at 1072.

### C.    Discussion

Plaintiffs allege that the Program Rules violate (1) their federal and (2) their state constitutional rights to be free from unreasonable searches and seizures, U.S. Const. amend. IV; Cal. Const. art. I, § 13; (3) their state constitutional right of privacy, Cal. Const. art. I, § 1; (4) the separation of powers under the California State Constitution, Cal. Const. art. III, § 3; and (5) their federal and (6) their state constitutional due process rights, U.S. Const. amend XIV; Cal. Const. art. I, § 7.  ECF No. 1-1 ¶¶ 69–89.  In addition, the Taxpayer Plaintiffs bring claims to prevent the illegal expenditure of funds, Cal. Code of Civ. Proc. § 526A.  ECF No. 1-1 ¶¶ 90–94. Finally, Plaintiffs' complaint includes a claim for declaratory relief under the California Declaratory

United States District Court
Northern District of California

16

Judgment Act, Cal. Code of Civil Proc. § 1060 *et seq.*  ECF No. 1-1 ¶¶ 95–97.

### 1.    Taxpayer Plaintiffs Lack Article III Standing

Defendants argue that the Court must dismiss Taxpayer Plaintiffs because they lack statutory and Article III standing.  Plaintiffs concede that the Taxpayer Plaintiffs lack Article III standing and ask the Court to remand their claim to the state court.  ECF No. 33 at 31.

Under 28 U.S.C. § 1447(c), a "'district court generally must remand the case to state court, rather than dismiss it' where there is 'failure of federal subject-matter jurisdiction,' including lack of Article III standing."  ECF No. 33 at 30–31 (quoting *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (emphasis omitted)).  This remand requirement, however, applies when "a federal court lacks subject matter jurisdiction over [an entire] case, and not simply over one claim within a case."  *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 392 (1998) (internal quotation marks omitted).

Partial remand is sometimes appropriate even when it is not required.  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1007 (9th Cir. 2001) ("A case that is properly removed in its entirety may nonetheless be effectively split up when it is subsequently determined that some claims cannot be adjudicated in federal court.").  One such situation is where dismissal would result in "[t]he preclusion of valid state-law claims initially brought in timely manner in state court," a result that the Supreme Court has held "undermines the State's interest in enforcing its law."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352 (1988).  The Court will therefore remand the Taxpayer Plaintiffs' claim, *see* ECF No. 1-1 ¶¶ 90–91, to the San Francisco Superior Court.

### 2.    The City and County of San Francisco Is A Proper Defendant

Defendants argue that the County must be dismissed as a Defendant because "the Sheriff acts as an agent of the state criminal court for purposes of implementing the court's orders regarding conditions of pretrial release in the context of the EM program."  ECF No. 24 at 28.  Defendants assert that "Plaintiffs' concern is whether the Sheriff exceeded his authority as a state actor, not whether such authority exists in the first instance."  *Id.* (citing ECF No. 1-1 ¶ 1).  Plaintiffs respond that the Sheriff is not acting as the state criminal court's agent because the Sheriff "(1) unilaterally impos[es] his own privacy-intrusive rules upon EM releasees in San

United States District Court
Northern District of California

Francisco, and then (2) implement[s] those rules for general investigatory purposes." ECF No. 33 at 29–30.

To determine whether the Sheriff is acting "for the State or for the county when they act in a law enforcement capacity," *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997), the Court must "conduct a case-by-case analysis focusing on state law and a sheriff's actions at issue." *Buffin v. City & County of San Francisco*, 2016 WL 6025486, at *3 (N.D. Cal. Oct. 14, 2016) (citing *McMillan*, 520 U.S. at 785–86). The court's "inquiry is guided by two principles": (1) "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue"; and (2) "the definition of the official's functions under relevant state law." *McMillan*, 520 U.S. at 785–86.

The Ninth Circuit has determined that under California state law, sheriffs are "tied to the [c]ounty in [their] political, administrative, and fiscal capacities." *Streit v. County of Los Angeles*, 236 F.3d 552, 561–62 (9th Cir. 2001) (holding that the sheriff constituted a county official when administering its own release policy in county jail); *see also Cortez v. County of Los Angeles*, 294 F.3d 1186, 1187–89 (9th Cir. 2002) (holding that a California sheriff "acts as the final policy maker for the [c]ounty . . . in establishing and implementing policies and procedures for the safekeeping of inmates in the county jail" and that "the [c]ounty is subject to § 1983 liability for the [s]heriff's actions taken [] pursuant to his role as administrator of the county jail").

Notwithstanding this authority, Defendants argue that the Sheriff is a state actor in the context of Plaintiffs' claims because "[t]erms of bail and other conditions of pre-trial release are determined by superior courts . . . under California law" and "[t]he sheriff undertakes the duty of implementing the Superior Court's release order on behalf of the court." ECF No. 24 at 28 (internal quotation marks and citation omitted). This argument is unpersuasive because Plaintiffs are not challenging the court-ordered conditions of pretrial release. Rather, the complaint alleges that the Sheriff's Program Rules are "new constitutionally burdensome conditions that are entirely of [the Sheriff's] own making." ECF No. 33 at 30. Because the Program Rules are the Sheriff's own administrative policy, they are analogous to the sheriff's internal policy at issue in *Streit*. *See* 236 F.3d at 564. The Court therefore finds that the Sheriff is a county actor in this context and

denies Defendants' motion to dismiss the County as a Defendant.

### 3.     This Action Is an Appropriate Vehicle for Plaintiffs' Claims

At the outset of their motion to dismiss, Defendants dispute the Court's authority to hear this action and the suitability of a civil suit as a vehicle for Plaintiffs' claims. They argue that "the appropriate path to resolve Plaintiffs' claims would be for those subject to the challenged conditions to seek modification or clarification of their pretrial release conditions from the state criminal court," ECF No. 24 at 17, and that this Court is without the "legal authority" to adjudicate Plaintiffs' claims, *id.* at 18. These arguments preview fundamental misunderstandings about the nature of Plaintiffs' claims that recur throughout Defendants' briefing.

Defendants first mischaracterize this action as a request for this Court to encroach on concurrent state court proceedings. *See id.* ("Courts therefore decline to grant relief requiring an ongoing intrusion in the administration of state judicial systems as would occur if Plaintiffs can proceed in seeking their requested injunctive and declaratory relief.").[6] Defendants argue that this Court should abstain from ruling on constitutional issues that may be resolved in those earlier-begun state proceedings. *Id.*; ECF No. 40 at 11–12. But this case is unrelated to the merits of Criminal Defendant Plaintiffs' criminal cases or any other state court ruling. *See Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018). Plaintiffs challenge only the Sheriff's actions and policies that they allege are unauthorized by court order. This proceeding will not affect the prosecution of their criminal charges. As a result, the concerns underlying *Younger* abstention are not present.

Defendants also dispute Plaintiffs' ability to challenge their conditions of pretrial release in this civil action. ECF No. 24 at 23–24. Defendants propose two alternative vehicles for these claims, neither of which is apposite. *See id.* A habeas petition is unsuitable because Plaintiffs do not challenge the result of their custody determination; rather, they challenge the conditions of

---

[6]Although Defendants do not cite *Younger v. Harris*, 401 U.S. 37 (1971), it is clear they are invoking it. For example, they cite *Alaska Pretrial Detainees for End of Unwarranted Courtroom Shackling v. Johnson*, 2018 WL 2144345, at *2 (D. Alaska May 9, 2018), which in turn relies on *Younger*.

United States District Court
Northern District of California

1    their pretrial release.  *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("[A] [section] 1983

2    action is a proper remedy for . . . a constitutional challenge to the conditions [of confinement].").

3    Nor must Plaintiffs exhaust these claims in their individual state criminal court proceedings before

4    seeking classwide relief or maintaining an action in federal court.  *See* ECF No. 40 at 9–10.

5    Defendants' contrary argument again distorts Plaintiffs' claims as a challenge to court-ordered

6    release conditions.  As discussed above, Plaintiffs challenge the Sheriff-created Program Rules,

7    not court-ordered conditions.

### 4.    Plaintiffs Have Adequately Pleaded Their Claims

9           Defendants next argue that each of Plaintiffs' claims is insufficiently pleaded.  ECF No. 24

10   at 19–28.  The Court may grant a motion to dismiss for failure to state a claim "only where there is

11   no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

12   theory."  *Shroyer v. New Cingular Wireless Servs.*, Inc., 622 F.3d 1035, 1041 (9th Cir. 2010)

13   (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (internal quotation marks omitted)).

14   For the reasons set forth below, the Court concludes that Plaintiffs' complaint states plausible

15   legal claims.

### a.    Due Process

17          Defendants first dispute the sufficiency of Plaintiffs' allegations that the Program Rules

18   violate their due process rights.[7]  ECF No. 24 at 19–22.  Defendants do not contest that Criminal

19   Defendant Plaintiffs are entitled to procedural due process before the imposition of conditions that

20   impinge on their liberty interests or that the challenged Program Rules constitute such conditions.

21   Rather, Defendants argue that the Superior Court's "individualized finding of the necessity of, and

22   consent to, a Fourth Amendment waiver in ordering" EM satisfies due process with respect to the

23   Sheriff's Program Rules.  ECF No. 40 at 18; *accord id.* at 13.  Defendants also note that Criminal

24   Defendant Plaintiffs agree to the Program Rules during enrollment.  *Id.* at 18.

25          There are two problems with these arguments.  The first is that Defendants continue to

26

27   _____

     [7] Because Plaintiffs assert a claim for procedural due process, the Court does not consider
28   Defendants' arguments that Plaintiffs fail to sufficiently allege a substantive due process violation.
     *See* ECF No. 24 at 19–20.

United States District Court
Northern District of California

conflate the Superior Court's order imposing EM with the Sheriff-created Program Rules. Plaintiffs are challenging the latter but not the former.  They allege that the Sheriff develops the Program Rules without the oversight or approval of the Superior Court.  ECF No. 1-1 ¶ 18.  The Superior Court's imposition of EM is separate from the imposition of the Rules, as evidenced by the fact that the EM Program has continued across different versions of the Rules even since the inception of this litigation.

The Court is also unpersuaded that the Superior Court's notation that a criminal defendant has waived his Fourth Amendment rights by participating in EM is equivalent to a finding that a particular search condition or data sharing policy is necessary in an individual case.  The Sheriff imposes the same data policies and default search condition across all cases.  *E.g.*, *id.* ¶¶ 70–71, 74–75, 79.  Although the Superior Court now provides criminal defendants with relatively more detail when imposing EM, that information still amounts to a description of Rules imposed on a blanket basis by the Sheriff.  *See* ECF No. 53-3.  Nor does the addition of a checkbox giving the court the option between a default four-way search condition or a heightened version constitute an individualized finding about the conditions necessary in a particular case.  *Cf. United States v. Scott*, 450 F.3d 863, 865 (9th Cir. 2006).  Tellingly, there is no mechanism available to the Superior Court that would allow its judges to impose EM without also imposing the Program Rules.  *See, e.g.*, ECF No. 1-1 ¶ 24.  This, by definition, extinguishes judicial discretion and the possibility of true individualized judicial review.

Finally, as discussed below in the context of Plaintiffs' right to freedom from unreasonable searches, consent to the Program Rules at the time of enrollment in EM does not foreclose Plaintiffs' constitutional claims.  Accordingly, Plaintiffs have plausibly alleged that the Sheriff's Program Rules are imposed without individualized findings by a neutral decisionmaker in violation of their procedural due process rights.

### b. Freedom from Unreasonable Searches and Right to Privacy

Defendants next argue that the challenged search condition and data policies in the Program Rules are constitutional as a matter of law.  ECF No. 24 at 22–27.  Defendants' arguments targeting the search condition claim focus on several factors that might diminish

criminal defendants' expectation of privacy in the context of pretrial EM.  *Id.* at 22–25.

Defendants also mount prudential challenges to the claims related to data sharing.  *Id.* at 25–27.

These arguments largely attack the merits of Plaintiffs' contentions rather than whether their

factual allegations are sufficient to state a claim.

"The touchstone of Fourth Amendment analysis is whether a person has a constitutionally

protected reasonable expectation of privacy."  *California v. Ciraolo*, 476 U.S. 207, 211 (1986)

(internal quotation marks omitted); *see also Sanchez v. County of San Diego*, 464 F.3d 916, 928–

29 (9th Cir. 2006) ("[T]he right to be free from unreasonable searches under Art. I § 13 of the

California Constitution parallels the Fourth Amendment inquiry into the reasonableness of a

search.").  Courts examining unreasonable search claims must balance "the degree to which [the

search] intrudes upon an individual's privacy" against "the degree to which it is needed to promote

legitimate governmental interests."  *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (citing

*Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).  The California constitutional right to privacy

requires a similar reasonableness analysis.  *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1,

35–37 (1994) (listing the elements required for a violation of the right to privacy as (1) "the

identification of a specific, legally protected privacy interest"; (2) "a reasonable expectation of

privacy on the plaintiff's part"; and (3) a "[s]erious invasion of [the] privacy interest").

Defendants first argue that pretrial releasees' reasonable expectation of privacy is

diminished because they consent to the challenged Program Rules multiple times before and

during enrollment in EM.  ECF Nos. 24 at 22–23, 40 at 14–15.  Defendants contend that when

these diminished privacy interests are weighed against the government's interests, the challenged

Program Rules necessarily constitute reasonable searches.

Plaintiffs invoke the unconstitutional conditions doctrine in response.  ECF No. 33 at 11–

12 (citing *Scott*, 450 F.3d at 865–68).  "The doctrine of unconstitutional conditions provides that

the Government cannot condition the receipt of a government benefit on waiver of a

constitutionally protected right."  *La. Pac. Corp. v. Beazer Materials & Servs., Inc.*, 842 F. Supp.

1243, 1248 (E.D. Cal. 1994).  Nor may the government "deny a benefit to a person because he

exercises a constitutional right."  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604

1   (2013) (quoting *Regan v. Tax'n with Representation of Wash.,* 461 U.S. 540, 545 (1983)). The

2   doctrine "functions to insure that the Government may not indirectly accomplish a restriction on

3   constitutional rights which it is powerless to decree directly." *La. Pac. Corp.*, 842 F. Supp. at

4   1248 (citing *Perry v. Sindermann,* 408 U.S. 593 (1972)).

5          *Scott* is instructive.  In that case, the Ninth Circuit invalidated a scheme where "in order to

6   qualify for [pretrial] release, [the criminal defendant] was required to sign a form stating that he

7   agreed to comply with certain conditions," including a four-way search condition.  *Id.* at 865.  The

8   criminal court in *Scott* checked a box imposing the condition but made no individualized findings

9   regarding its necessity.  *Id.*  The Ninth Circuit concluded that "Scott's assent to his release

10  conditions does not by itself make an otherwise unreasonable search reasonable" and that "to the

11  extent his assent decreased his reasonable expectation of privacy . . . the decrease was insufficient

12  to eliminate his expectation of privacy in his home."  *Id.* at 871–72.  Similarly here, the fact of

13  Plaintiffs' consent by itself is insufficient to overcome a lack of an individualized judicial finding

14  that the challenged conditions are necessary.

15         Finally, Defendants assert that the court's imposition of EM diminishes Plaintiffs'

16  reasonable expectation of privacy, a contention that overlaps with their arguments regarding

17  waiver.  The record before this Court indicates that the court order does not detail the infringement

18  on criminal defendants' privacy at stake.  *See* ECF No. 53-3 (revised admonishment script stating

19  that EM participants' movements "will be preserved and maintained" and "can be shared with law

20  enforcement agencies for criminal investigations during the pendency of the case and until the

21  case is fully adjudicated").  Accordingly, Plaintiffs plausibly allege that the Sheriff imposed

22  intrusive search and data sharing conditions without Plaintiffs' voluntary and knowing consent.

23  *See United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016) (holding that criminal defendants'

24  reasonable expectation of privacy was not diminished with respect to conditions about which they

25  were not "unambiguously informed" (internal quotation marks and citation omitted)).

26         With respect to the Sheriff's policies on data retention and sharing, Defendants

27  additionally contend that the Court should dismiss Plaintiffs' claims because the sharing and

28  retention of information about arrestees "raise no cognizable constitutional issues" and "are issues

23

of policy best addressed through legislation." ECF No. 24 at 25 (citing *People v. Buza*, 4 Cal. 5th 658, 680 (2018)). Not only are Defendants' authorities distinguishable—*Buza*, for example, did not deal with location information at all—but the Supreme Court has held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information (CSLI)]." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). Indeed, *Carpenter* held that a week's worth of historical CSLI obtained from defendant's wireless carrier pursuant to an order issued under the Stored Communications Act (SCA) was the product of a "search"; that a court order obtained under the SCA to acquire the defendant's CSLI data was a search, *id.* at 2221; that the Government's access to 127 days of historical CSLI invaded the defendant's reasonable expectation of privacy, *id.* at 2217; and that the Government must generally obtain a search warrant supported by probable cause before acquiring CSLI from a wireless carrier, *id.* at 2221. Notably, Plaintiffs cite *Carpenter* in opposition to Defendants' motion to dismiss, but Defendants do not address it in reply. The case is dispositive of Defendants' argument.

Defendants argue that searches under the Program Rules are necessarily reasonable because they "further[] significant government (and public) interests." *See* ECF No. 24 at 24–26. This argument is also unavailing. As the Ninth Circuit made clear in *Scott*, while the government may have "an enhanced interest in surveillance and control" with regard to probationers, that is because "the very assumption of probation is that the probationer is more likely than the ordinary citizen to violate the law." *Scott*, 450 F.3d at 873 (internal quotation marks, citations, and ellipsis omitted). That assumption does not apply to defendants on pretrial release, such as Plaintiffs here:

> [T]he assumption that [Plaintiffs are] more likely to commit crimes than other members of the public, without an individualized determination to that effect, is contradicted by the presumption of innocence: [t]hat an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody. [Plaintiffs are], after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt.

*Id.* at 874.

In sum, Defendants' arguments for Plaintiffs' diminished reasonable expectation of

1    privacy are relevant to the merits of the constitutional analysis, but they do not foreclose

2    Plaintiffs' claims.  Plaintiffs have adequately pleaded their challenge to the Program Rules for

3    violation of the federal and state constitutional rights to be free from unreasonable searches and

4    the state constitutional right to privacy.

**c.**     **Separation of Powers**

Defendants devote only a few short sentences attacking Plaintiffs' claim for violation of

the separation of powers, arguing that "[t]he EM Program Rules explain rather than expand the

criminal court's broad order."  ECF No. 24 at 28.  The argument is simply wrong on the facts.  As

Plaintiffs state, the Sheriff is "not merely explaining conditions of release ordered by the Court; he

is instead creating from whole cloth conditions that intrude upon the releasee's constitutional

rights."  ECF No. 33 at 23; *see* ECF No. 1-1 ¶¶ 81–82.  The record substantiates this

characterization.  *Compare* ECF No. 1-1 at 27 (original court form order), *and* ECF No. 57-2

(revised court form order), *with* ECF No. 1-1 at 29–30 (original Program Rules), *and* ECF No. 71-

1 (revised Program Rules).  Taking Plaintiffs' allegations as true and drawing all necessary

inferences in their favor, *see Knievel*, 393 F.3d at 1072, the Court finds that Plaintiffs have

adequately stated a claim for the violation of the separation of powers required by the California

State Constitution.

**IV.**     **MOTION FOR CLASS CERTIFICATION**

    **A.**     **Legal Standard and Subclasses**

Plaintiffs ask this Court to certify a proposed class of "(a)ll individuals who have in the

past been, are currently, or will in the future, be subject to the Sheriff's Electronic Monitoring

Program Rules [for] Pre-Sentenced Participants and/or San Francisco Sheriff's Dept. Electronic

Monitoring Program Participant Contract: Pre-Sentenced Individuals."  ECF No. 30 at 6.

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  "Rule

23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy of representation."  *Cottle v. Plaid Inc.*, 340 F.R.D.

356, 370 (N.D. Cal. 2021) (citing Fed. R. Civ. P. 23(a)(1)–(4)).  In addition, the proposed class

must satisfy one of the three requirements set forth in Rule 23(b).  *LaCasse v. Washington Mut.,*

25

United States District Court
Northern District of California

1   *Inc.*, 198 F. Supp. 2d 1255, 1260 (W.D. Wash. 2002).  Plaintiffs seek certification under Rule

2   23(b)(2), which allows a class to seek injunctive and declaratory relief when "the party opposing

3   the class has acted or refused to act on grounds that apply generally to the class . . . ."  Fed. R. Civ.

4   P. 23(b)(2).

5          Courts "must take the substantive allegations of the complaint as true" but "need not

6   accept conclusory or generic allegations regarding the suitability of the litigation for resolution

7   through class action."  *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 335 (N.D. Cal.

8   2010) (citations omitted).  The analysis of the plaintiff's class certification motion "will entail

9   some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart Stores, Inc. v. Dukes*,

10  564 U.S. 338, 351 (2011).  However, "[m]erits questions may be considered to the extent—but

11  only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for

12  class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466

13  (2013).  "'[W]hether class members could actually prevail on the merits of their claims' is not a

14  proper inquiry in determining the preliminary question 'whether common questions exist.'"

15  *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (alteration in

16  original) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

17         "When appropriate, a class may be divided into subclasses that are each treated as a class

18  under [Rule 23]."  Fed. R. Civ. P. 23(c)(5).  The ability to create subclasses "is particularly helpful

19  in enabling courts to restructure complex cases to meet the other requirements for maintaining a

20  class action."  7AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Robert Klonoff,

21  *Federal Practice & Procedure* § 1790 (3d ed. 2005).  "A court may divide a class into subclasses

22  on motion of either party, or *sua sponte.*"  *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1072

23  (N.D. Cal. 2005) (citation omitted).  Although Plaintiffs did not originally propose the creation of

24  subclasses, they endorse the potential benefit of that approach in their supplemental briefing.  ECF

25  No. 73 at 16 n.5; *cf. In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 2010 WL

26  5387793, at *5 (N.D. Cal. Dec. 22, 2010) (creating sua sponte and certifying a nationwide

27  subclass where "[p]laintiffs indicated that this would be a satisfactory action for the Court to

28  take").  Accordingly, given the changes to the Program Rules and related policies in

1    approximately May 2023, this Court considers whether subclasses corresponding to (1) the

2    original rules and (2) the revised rules would contribute positively to the management of the

3    litigation.

4         This Court finds that the change in the Program Rules following the commencement of this

5    litigation weighs in favor of dividing the proposed class into two subclasses.  *See Santillan*, 388 F.

6    Supp. 2d at 1073–74 (dividing class into two subclasses based on the date of regulatory changes

7    that occurred during the litigation).  As in *Santillan*, the changes to the challenged policy are likely

8    to bear on the parties' merits arguments regarding the difference between the Program Rules and

9    the Superior Court order imposing EM.  *See id.*

10        The first subclass, which the Court terms the "original rules subclass," consists of all

11   individuals who have in the past been, are currently, or will in the future be subject to the versions

12   of the Program Rules and Participant Contract that were in place at the time that Plaintiffs filed

13   this action, prior to the May 2023 revisions.  *See* ECF No. 1-1 at 29–30, 32–36.  The second

14   subclass, the "revised rules subclass," consists of all individuals who have in the past been, are

15   currently, or will in the future be subject to the revised version of the Program Rules that was put

16   into place following the May 2023 changes.  *See* ECF No. 71-1.  As the Court has noted, the

17   record suggests that EM participants continue to sign the original Participant Contract

18   notwithstanding changes to the Program Rules.  *Compare* ECF No. 1-1 at 32–36 (original

19   Participant Contract), *with* ECF No. 71-6 (Participant Contract signed by Plaintiff Simon in

20   August 2023).[8]

21        "[E]ach subclass must independently meet the requirements of Rule 23 for the maintenance

22   of a class action."  *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 562 (N.D. Cal. 2015)

23   (internal quotation marks omitted) (quoting *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d

24   1000, 1005 (9th Cir. 1981)).  Although there are factual differences between the subclasses

25   identified above, their claims are legally identical.  Accordingly, the Court analyzes the Rule 23

26

27   _____

28   [8] Should Defendants again revise the Program Rules or Participant Contract during the litigation, the Court will consider whether to add to or modify the subclasses (or take other steps) as appropriate.

factors for both subclasses together, noting separate considerations where relevant.  *See Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 326–27 (E.D. Cal. 2018) (noting that separate analysis of subclasses is not required where subclasses are based on causes of action involving substantially similar claims (citing *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 589 n.14 (W.D. Tex. 2006)).

**B.    Discussion**

**1.    Rule 23(a)**

**a.    Numerosity**

A class may be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Although the numerosity requirement is not tied to a strict numerical threshold, trial courts have generally found that classes of at least 40 members satisfy the requirement."  *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 272 (S.D. Cal. 2023) (citations omitted); *see also Ochinero v. Ladera Lending, Inc.*, 2021 WL 2295519, at *9 (C.D. Cal. Feb. 26, 2021) ("Typically, courts have found that the numerosity requirement is satisfied when the proposed class includes at least forty members.").

Because all individuals on pretrial EM are subject to the Program Rules and Participant Contract, the number of proposed class members is equal to the number of EM participants, with new participants vesting as they enroll in the program.  *See* ECF No. 30 at 14–15.  Based on records from SFSO, Plaintiffs represent that the approximate number of proposed class members is more than 3,000 individuals.  *Id.*  Defendants agree that Plaintiffs' proposed class would satisfy the numerosity requirement.  ECF No. 41 at 20–21.

Each of the Court's identified subclasses must also satisfy the numerosity requirement. *See Betts*, 659 F.2d at 1005.  The original rules subclass consists of approximately ninety individuals.  ECF No. 71 ¶ 3.  The revised rules subclass is determinable based on the number of participants enrolled in EM since the Sheriff implemented the May 2023 revisions to the program, which the record suggests is more than 1,000 persons per year.  ECF No. 22-2 at 7–13.  The numerosity requirement is therefore satisfied.

/ / /

### b.      Commonality

Class certification also requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  The Court "is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) (emphasis in original); *see also Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (explaining that Rule 23(a) requires "a common contention capable of classwide resolution—not that there is a common contention that will be answered, on the merits, in favor of the class" (internal quotation omitted)).

Plaintiffs argue that they satisfy the commonality requirement because the putative class members are all subject to the Sheriff's EM Program Rules and Participant Contract; experience the same constitutional violations; and seek declaratory and injunctive relief against the imposition or enforcement of the challenged Program Rules.  ECF No. 30 at 15.  Defendants respond that Plaintiffs' proposed class lacks commonality because their claims that the release conditions are unconstitutional depend on an individualized "analysis that considers the facts of each criminal defendant's unique situation."  ECF No. 41 at 13.  Defendants assert, for example, that the severity of a proposed class member's criminal charges and whether proposed class members received information about the Program Rules when the court ordered EM vary widely, requiring case-by-case review to determine class membership.  *Id.* at 14.

These objections to commonality are misplaced.  Plaintiffs are not contesting any individualized determination or court order.  Rather, Plaintiffs challenge the Sheriff's imposition of conditions in the Program Rules, the fact that the Sheriff imposes them on a universal basis, and the lack of an individualized assessment by a neutral decisionmaker finding that they are necessary.  These process concerns attach in every case regardless of the severity of any individual

defendant's criminal charges or history.  In a nutshell, the Sheriff's imposition and enforcement of the Program Rules "is either constitutional or it is not."  ECF No. 30 at 16.  As the Ninth Circuit made clear in *Parsons v. Ryan*, an inquiry into the lawfulness of uniform policies "does not require [the Court] to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination."  754 F.3d 657, 678 (9th Cir. 2014); *accord id.* at 678–79 (affirming class certification and commonality where plaintiffs alleged uniform policies and practices in state corrections facilities that exposed all class members to "a substantial risk of harm").  That a constitutionally adequate process would yield different results for different class members is irrelevant.  *Cf. Zepeda Rivas v. Jennings*, 2020 WL 2059848, at *1 (N.D. Cal. Apr. 29, 2020) (provisionally certifying class of all detained individuals at two facilities alleging violation of due process rights despite the likelihood that "some people would need to be released" while others would not).  What matters is the process that the Sheriff is using now.

In any event, because the Sheriff applies the Program Rules to the class in its entirety, the common questions that result from Plaintiffs' challenge to the Sheriff's action and the Rules' validity are capable of classwide resolution.  *Parsons*, 754 F.3d at 676.  Their constitutional claims generate at least four questions common to the proposed class with respect to the Program Rules scheme: (1) whether the challenged Program Rules violate the separation of powers because only a court has the authority to impose such conditions on persons released pretrial; (2) whether the Sheriff's imposition of those rules also violates due process by not requiring an individualized assessment by a neutral decisionmaker as to whether these conditions are appropriate; (3) whether the long-term retention and sharing of class members' private GPS data violates proposed class members' right to be free from unreasonable searches and right to privacy because there has been no individualized determination that the invasion of privacy is justified; and (4) whether the Sheriff's blanket imposition of a four-way search clause violates those same rights.

The original rules subclass presents all these common questions for resolution.  The revised rules subclass, whose court-ordered release conditions correspond more closely to the Program Rules following the Sheriff's revisions, present at least the first, second, and third

United States District Court
Northern District of California

1    common questions enumerated above.  Because even "a single significant" common question is

2    enough, both subclasses therefore satisfy the commonality requirement.  *See Abdullah v. U.S. Sec.*

3    *Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and citation omitted).

4                              **c.      Typicality**

5           Rule 23(a)(3) requires "the claims or defenses of the representative parties" to be "typical

6    of the claims or defenses of the class."  "Measures of typicality include 'whether other members

7    have the same or similar injury, whether the action is based on conduct which is not unique to the

8    named plaintiffs, and whether other class members have been injured by the same course of

9    conduct.'"  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon*

10   *v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

11          Plaintiffs assert that Named Plaintiffs' claims are typical of the class because each Named

12   Plaintiff was previously released pretrial on EM, and all their claims arise from the Sheriff's

13   imposition and enforcement of the Program Rules.  "Because the Sheriff requires all individuals

14   released pretrial on EM to sign the Program Rules and Participant Contract," all proposed class

15   members are likewise subject to those rules and experience the resulting constitutional violations

16   that Plaintiffs allege.  ECF No. 30 at 16.

17          Defendants contest typicality for two main reasons.  First, they assert that Named Plaintiffs

18   Simon and Barber "no longer have standing" to pursue the action.  ECF No. 41 at 19.  As the

19   Court has already explained, Named Plaintiffs continue to be eligible class representatives because

20   their claims are inherently transitory.

21          Second, Defendants assert that Named Plaintiffs "may have stronger claims than the class

22   they seek to represent."  *Id.*  They reason that proposed class members, including the named

23   plaintiffs, received differing amounts of information about EM, undercutting in some cases the

24   argument that Plaintiffs received inadequate notice of the EM conditions.  *Id.*  This argument falls

25   flat for two reasons.  First, Plaintiffs' assertion is that under the unconstitutional conditions

26   doctrine, no amount of notice would make consent valid in this scenario.  ECF No. 42 at 10–11.

27   Second, the reasonableness of any one defendant's conditions of release is not at issue in this case,

28   which challenges the Sheriff's blanket imposition of conditions of release via the Program Rules.

United States District Court
Northern District of California

*See, e.g.*, *id.* at 8–10.

Nor does the creation of subclasses interfere with typicality because at least one Named Plaintiff has claims typical of each subclass.  Plaintiffs Bonilla and Barber's claims are typical of the original rules subclass because they were subject to EM under the pre-May 2023 version of the Program Rules in place at the time that they filed their complaint.  ECF No. 1-1 ¶¶ 7–8.  Plaintiff Simon's claims are typical of both the original rules subclass and the revised rules subclass: he was subject to the original version of the rules at the time that the complaint was filed, *id.* at ¶ 6, and he subsequently exited and re-entered the EM pretrial release program under the revised version of Program Rules, ECF No. 71 ¶¶ 6–8.  The later revocation of Simon's pretrial release, *see* ECF No. 74-1, does not defeat typicality for the revised rules subclass because the subclass definition encompasses individuals who have been subject to the revised rules in the past, not only current participants.  The typicality requirement is satisfied.

### d.    Adequacy

Rule 23(a)(4) provides that Named Plaintiffs must "fairly and adequately protect the interests of the class."  Courts consider two questions to determine adequacy: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Mulderigg v. Amyris, Inc.*, 340 F.R.D. 575, 581 (N.D. Cal. 2021) (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)).

Defendants attack the adequacy of named plaintiffs Bonilla and Barber based on alleged misrepresentations in declarations that Bonilla filed with the Court and Barber's alleged failure to disclose the requirements that the Superior Court imposed on him as a condition of EM.  ECF No. 41.  Defendants are correct that "[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (alteration in original) (quoting *Searcy v. eFunds Corp.*, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010) (internal quotation marks omitted)).  However, "[c]redibility problems do not automatically render a proposed class representative inadequate."

United States District Court
Northern District of California

*Harris*, 753 F. Supp. 2d at 1015. (alteration in original) (internal quotation marks and citation omitted).  "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Id.* (quoting *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 177 (S.D.N.Y.2008) (internal quotation marks omitted)).  The omissions that Defendants identify in Bonilla and Barber's communications with the Court and counsel do not rise to this high level.  The Court finds that Named Plaintiffs Simon, Barber, and Bonilla will fairly and adequately protect the interests of the class.

### 2.   Rule 23(b)(2)

Rule 23(b)(2) authorizes class certification in cases where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  "The key" to comporting with Rule 23(b)(2) is "the indivisible nature of the injunctive or declaratory remedy" such that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2557 (internal quotation marks and citation omitted).  "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *see also Hernandez v. County of Monterey*, 305 F.R.D. 132, 151 (N.D. Cal. 2015) ("Rule 23(b)(2) is almost automatically satisfied in actions primarily seeking injunctive relief." (internal quotation marks and citation omitted)).

Defendants argue that differences among proposed class members, such as the nature of their criminal charges, preclude certification of a Rule 23(b)(2) class in this case.  ECF No. 41 at 23.  Defendants ignore that any changes to the Program Rules would apply to all class members equally, regardless of their individual circumstances.  This "dogged focus on the factual differences among the class members" overlooks the function of Rule 23(b)(2) as "the proper vehicle for challenging a common policy."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (internal quotation marks and citation omitted).  Individual injunctions would not be required for

1    relief; therefore, each subclass satisfies the requirements for certification under Rule 23(b)(2).  *See*

2    *id.*

3          Defendants also argue both that the requested injunction would result in EM participants

4    being remanded to custody and that it amounts to seeking the "immediate release" of detained

5    individuals.  ECF No. 41 at 24–25.  The argument is ungrounded in fact.  If the Court issues the

6    requested injunction, it will not be ordering anyone's release or remand.  And to the extent that

7    Defendants are suggesting that without an unconstitutional policy, their only choice is to remand

8    every pretrial detainee, the Court rejects the premise.  That has never been the County's practice.

9    In any event, Plaintiffs' challenge is only to the Program Rules, not pretrial EM, which the

10   Superior Court may continue to impose.  *See* ECF No. 42 at 13 ("Plaintiffs are not asking this

11   Court to enjoin any Superior Court's imposition of EM or determination of EM conditions—just

12   the Sheriff's extra-judicial imposition of *additional* conditions." (emphasis in original)).

### 3.    Rule 23(g)

14         Plaintiffs' counsel seek appointment as class counsel pursuant to Rule 23(g) of the Federal

15   Rules of Civil Procedure.  Rule 23(g) provides, *inter alia*, that courts must consider the following

16   factors in appointing class counsel:

> (i) the work counsel has done in identifying or investigating
> potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the
> class[.]

21   Fed. R. Civ. P. 23(g).

22         Here, the Court is satisfied that the ACLU Foundation of Northern California ("ACLU

23   NorCal") and Freshfields Bruckhaus Deringer US LLP ("Freshfields")[9] meet the criteria of Rule

24   23(g) and should serve as class counsel.  ACLU NorCal has a long record of successful civil rights

25   and public interest litigation, and Freshfields is one of the country's preeminent litigation firms.

26   Together, counsel researched, prepared, and filed this action; successfully prosecuted motions for

27

28   ──────────────
     [9] The Freshfields lawyers representing Plaintiffs were previously affiliated with Wilson Sonsini
     Goodrich & Rosati P.C.

United States District Court
Northern District of California

1    class certification and preliminary injunction; and successfully opposed Defendants' motion to

2    dismiss.  It is plain from these actions that counsel possess both a deep knowledge of the

3    applicable law and the resources necessary to vigorously represent the class.  Defendants do not

4    oppose appointment of these attorneys to serve as class counsel.  ECF No. 41 at 26 n.1.

5    Accordingly, the Court appoints ACLU NorCal and Freshfields as class counsel in this action.

6           In sum, because the Plaintiffs' proposed class fulfills the requirements of Rule 23(a) and

7    Rule 23(b)(2), the Court grants the motion for class certification.  ECF No. 30.  For ease of

8    administration, the Court divides the class into (1) the original rules subclass; and (2) the revised

9    rules subclass.

10   **V.      MOTION FOR PRELIMINARY INJUNCTION**

11          Plaintiffs seek a preliminary injunction prohibiting the Sheriff from imposing and

12   enforcing the search condition and the data policy found in the Program Rules.  ECF No. 22.

13          **A.      Legal Standard**

14          A plaintiff seeking a preliminary injunction must show a likelihood of success on the

15   merits, likelihood of "irreparable harm in the absence of preliminary relief," that the balance of

16   equities tips in the plaintiff's favor, and that an injunction is in the public interest.  *Recycle for*

17   *Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (citing *Winter v. Nat. Res. Def.*

18   *Council, Inc.*, 555 U.S. 7, 20 (2008)).  "[A] stronger showing of one element may offset a weaker

19   showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

20          To obtain a preliminary injunction, Plaintiffs need not prove their claim; they only must

21   show that they are likely to succeed on the merits.  *See Winter*, 555 U.S. at 20.  Courts analyzing

22   this factor have described it variably as a "reasonable probability," "fair prospect," "substantial

23   case on the merits," and raising "serious legal questions."  *Lair v. Bullock*, 697 F.3d 1200, 1204

24   (9th Cir. 2012) (internal quotation marks and citation omitted).  "These formulations are largely

25   interchangeable and indicate that, at a minimum, a petitioner must show that there is a substantial

26   case for relief on the merits."  *Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC*,

27   2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) (internal quotation marks and citation

28   omitted).

United States District Court
Northern District of California

Next, a party seeking a preliminary injunction must demonstrate that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Jackson v. City of San Francisco*, 746 F.3d 953, 958 (9th Cir. 2014). "[T]he deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted).

Finally, Plaintiffs must show that, after balancing the interests of the parties, an injunction "would do more good than harm . . . ." *All. For the Wild Rockies*, 632 F.3d at 1133 (citation omitted). Where, as here, the government is a party, the balance of equities factor merges with the public interest consideration. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

B.      **Discussion**

1.      **Likelihood of Success on the Merits**

a.      **Separation of Powers**

Article III, section 3 of the California State Constitution provides that "[t]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." Cal. Const. art. III, § 3. The separation of powers thus "limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch." *Carmel Valley Fire Prot. Dist. v. State*, 25 Cal. 4th 287, 297 (2001) (citations omitted). Because "the three branches of government are interdependent," however, "actions of one branch that may 'significantly affect those of another branch'" are permissible. *Id.* at 298 (quoting *Superior Ct. v. County of Mendocino*, 13 Cal. 4th 45, 52 (1996)). A governmental branch violates the separation of powers if its actions "would defeat or materially impair [another branch's] inherent power." *Carmel Valley Fire Prot. Dist.*, 25 Cal. 4th at 298.

The crux of the parties' dispute is whether the Sheriff may validly create and impose the Program Rules pursuant to the Superior Court's delegation of authority, as Defendants contend, or whether imposing conditions of pretrial release is a fundamentally judicial function under California law, as Plaintiffs argue. *See In re York*, 9 Cal. 4th 1133, 1149–50 (1995); *In re*

United States District Court
Northern District of California

*Humphrey*, 11 Cal. 5th 135, 156 (2021); *People v. Cervantes*, 154 Cal. App. 3d 353, 358 (1984).

In support of their position, Defendants cite cases that have approved courts' delegation of responsibilities to executive officers. *See* ECF No. 31 at 18. These cases are distinguishable in that they pertain to the supervised release of convicted defendants rather than pretrial releasees. Nonetheless, some of the cases are instructive. For example, a court may include a mechanism permitting an activity with the "prior approval of the probation officer" to create "the flexibility to allow for some exceptions" where the court orders an otherwise "total ban" on that activity. *United States v. Wells*, 29 F.4th 580, 593 (9th Cir. 2022) (holding that a court-ordered condition prohibiting access to the internet during supervised release except with a probation officer's approval was a constitutional delegation). A court may also delegate to probation officers or other executive officers the authority to instruct individuals convicted of sex offenses about the steps they must take to comply with statutory registration requirements. *United States v. Dailey*, 941 F.3d 1183, 1194–95 (9th Cir. 2019).[10]

Unlike in those cases, the Program Rules do not represent the practical implementation or enforcement of conditions that the court *itself* ordered as conditions of pretrial release. The Sheriff creates the Program Rules "from whole cloth," ECF No. 33 at 23, subject to no outer bounds or specific directives given the broad language of the Superior Court's order that releasees must "obey all orders and rules" that Defendants issue. ECF No. 57-2. Plaintiffs have shown that this arrangement likely has resulted in the Sheriff impermissibly imposing its own intrusive conditions of release upon class members on a blanket basis without individualized assessment of their necessity by a neutral decisionmaker. *See United States v. Stephens*, 424 F.3d 876, 880–81 (9th Cir. 2005).

Moreover, not only do Defendants likely lack the authority to set pretrial release conditions beyond those ordered by the court, but the record also suggests that Defendants' process disabled the Superior Court from making individualized determinations of the appropriate conditions of

---

[10] Other cases upon which Defendants rely are outdated; for example, in *United States v. Duff*, 831 F.2d 176, 178–79 (9th Cir. 1987), the court held that the now-repealed Federal Probation Act, 18 U.S.C. § 3655 (1982), gave a probation officer authority to require an individual on probation to submit to urinalysis to test for illegal drug use.

United States District Court
Northern District of California

release.  Plaintiffs have submitted evidence that at least some judges on the Superior Court understand that they can only place an individual on EM if that individual accepts the current default search condition contained on the form court order and in the revised Program Rules.  *See* ECF No. 58-2 at 5–6.  This evidence increases the likelihood that Plaintiffs will be able to show that Defendants exercise an impermissible degree of control over the judicial function of setting conditions of pretrial release.  *See In re York*, 9 Cal. 4th at 1150–51 & n.10 (describing the judicial analysis required for imposing conditions of release that implicate constitutional rights).

### b. Freedom from Unreasonable Searches

Plaintiffs contend that the Program Rules subject Plaintiffs to unreasonable searches without an individualized determination of probable cause.  In their opposition, Defendants argue that Plaintiffs consented to these searches by waiving their Fourth Amendment rights and agreeing to the Program Rules as part of the enrollment process.  ECF No. 20–21.  Defendants also argue that pretrial releasees have a diminished expectation of privacy and that specific aspects of Named Plaintiffs' individual cases justify a four-way search condition.  ECF No. 31 at 22–24.  As set forth above, these arguments are insufficient to establish that Plaintiffs have waived their right to an individual determination by a judicial officer of the reasonableness of a search under the totality of circumstances.  *Scott*, 450 F.3d at 866–67; *see also In re York*, 9 Cal. 4th at 1151 n.10 (explaining that a court must assess "the reasonableness of a condition" imposed during pretrial detention based on individualized factors).  That Plaintiffs may have given their consent is not dispositive because the unconstitutional conditions doctrine "limits the government's ability to extract waivers of rights as a condition of benefits" to stem the erosion of constitutional protections.  *Scott*, 450 F.3d at 866–67.

The Court concludes that Plaintiffs will likely succeed on their arguments that a court must determine the necessity of conditions such as four-way searches that infringe on the Fourth Amendment.  *Id.* at 865–68; *see also In re York*, 9 Cal. 4th at 1150–51 & n.10.  Data sharing and retention raise similar constitutional concerns.  *See Carpenter*, 138 S. Ct. at 2216–18.  Plaintiffs have shown a likelihood of success on their claim that the challenged Program Rules "purport to broadly authorize enormous intrusions on protected privacy interests in every case, for every EM

releasee, without any individualized determination of reasonableness by a court."  ECF No. 22 at

16.

### c.   Right to Privacy

To make out a claim of invasion of privacy under Article I, section 1 of the California State

Constitution, Plaintiffs have the initial burden of showing (1) a legally protected privacy interest,

(2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of

privacy.  *See Hill*, 7 Cal. 4th at 35–37.  A showing of a "genuine, nontrivial invasion of a

protected privacy interest" shifts the burden to the government to provide "justification for the

conduct in question," *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997).  Courts then must

weigh the severity of the intrusion against the legitimate government interests at issue.  *Id.* at 893–

94.

Plaintiffs argue that they have a privacy interest in their aggregate location data and that

the legitimate government interests at in pretrial release EM are "to assure future court

appearances and compliance with the court-ordered conditions of release . . . ."  ECF No. 22 at 19.

Use of Plaintiffs' sensitive location data for purposes unrelated to those goals likely contravenes

their reasonable expectations regarding the use of that data.  *See id.* at 19–21.  Defendants argue

that they use class members' GPS data "to investigate and solve crimes," ECF No. 31 at 9, but that

is not a sufficient interest to dispense with an individualized determination of probable cause as to

pretrial releasees:

> The arrest alone did not establish defendant's dangerousness; it
> merely triggered the ability to hold a hearing during which such a
> determination might be made.  It follows that if a defendant is to be
> released subject to bail conditions that will help protect the
> community from the risk of crimes he might commit while on bail,
> the conditions must be justified by a showing that defendant poses a
> heightened risk of misbehaving while on bail.  The government
> cannot, as it is trying to do in this case, short-circuit the process by
> claiming that the arrest itself is sufficient to establish that the
> conditions are required.

*Scott*, 450 F.3d at 874.  Thus, Plaintiffs will likely succeed in showing that their privacy interests

outweigh this general government objective.

/ / /

United States District Court
Northern District of California

### 2.     Irreparable Harm

Because Plaintiffs have shown a likelihood of success on their claims that the Program Rules violate their constitutional rights, they have established the likelihood of irreparable harm. *See Melendres*, 695 F.3d at 1002.  Plaintiffs also articulate "tangible harms" including "vulnerab[ility] to harassment, needless intrusions on their privacy," "further criminal legal system involvement with its attendant consequences," and "feelings of exposure, violation, and anxiety." ECF No. 22 at 22.

Defendants contend that a delay in challenging the Program Rules undermines Plaintiffs' claim of harm because the Program Rules were in place for years prior to Plaintiffs' challenge. ECF No. 31 at 28–29.  Named Plaintiffs filed their complaint between three and eleven months after they were respectively placed on EM and became subject to the Program Rules.  *See* ECF No. 1-1 ¶¶ 6–8.  There has been no undue delay.

Finally, Defendants argue in their opposition brief that Plaintiffs have not shown that they will likely suffer irreparable harm because none of the Named Plaintiffs' data has yet been shared with law enforcement.  ECF No. 31 at 29.  Defendants have since corrected that representation; their most recent supplemental declaration explains that SFSO shared Plaintiff Bonilla's location information with law enforcement in December 2022 "in connection with a request for location data about a different individual."  *Id.*  The Court finds that there would be a likelihood of irreparable harm regardless of whether Defendants have shared Named Plaintiffs data because the issue is whether the Sheriff's Office has given itself the *right* to share that data.  Moreover, the risk of data sharing is concrete:  not only has SFSO shared Plaintiff Bonilla's data, ECF No. 74-1, but the record also reflects that  SFSO received 4 requests from other law enforcement agencies for GPS location data in 2019, 41 requests in 2020, and 179 requests in 2021.  ECF No. 22-1 ¶ 12; ECF No. 22-2 at 11.  Given that SFSO "responds to all of the requests from other law enforcement agencies who fill out [its request] form properly," *see* ECF No. 22-2 at 11, there is a "real and immediate threat" of constitutional injury sufficient to show irreparable harm.  *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 434 (N.D. Cal. 2017).

/ / /

### 3.      Balance of Equities and Public Interest

Finally, the Court must balance the equities of the parties and consider the public interest to determine whether an injunction is appropriate.  Plaintiffs have shown that absent an injunction, they will likely experience ongoing violations of their rights to freedom from unreasonable searches, privacy, due process, and separation of powers.  This "likelihood of succeeding on the merits . . . tips the public interest sharply in [Plaintiffs'] favor because it is "always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

\*    \*    \*    \*

For the foregoing reasons, Defendants' motion to dismiss is DENIED.  The seventh cause of action in Plaintiffs' complaint, ECF No. 1-1 ¶¶ 90–94, is REMANDED to the San Francisco Superior Court.  Plaintiffs' motion for class certification is GRANTED.  Plaintiffs' motion for a preliminary injunction is GRANTED.

It is therefore ORDERED that Defendants and Defendants' successors-in-interest, agents, principals, officers, servants, employees, and attorneys, and those persons or parties in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are preliminarily enjoined from imposing and enforcing, as to the original rules subclass, the Sheriff's EM Program Rules' four-way search condition (Rule 5) and data sharing provision (Rule 13); and as to the revised rules subclass, from imposing or enforcing any search condition broader than that stated in each class member's Superior Court order and from imposing and enforcing the Program Rules' data sharing provision (Rule 11).

Defendants shall (1) within 14 days of the date of this order, cease the enforcement of the specified Rules; and (2) within 35 days from the date of this order, file with the Court and serve on Plaintiffs a report in writing and under oath setting forth in detail the manner and form in which

/ / /

/ / /

/ / /

1    Defendants have complied with the preliminary injunction.  This injunction shall remain in effect

2    until the entry of final judgment in this action or until further order of this Court.

3         **IT IS SO ORDERED.**

4    Dated: February 13, 2024



5                                            _____

6                                            JON S. TIGAR
                                            United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California