1 DAVID CHIU, State Bar #189542
City Attorney
2 JAMES F. HANNAWALT, State Bar #139657
Acting Chief Trial Deputy
3 ALEXANDER J. HOLTZMAN, State Bar #311813
JOSE A. ZELIDON-ZEPEDA, State Bar #227108
4 Deputy City Attorneys
Fox Plaza
5 1390 Market Street, 6th Floor
San Francisco, California 94102-5408
6 Telephone:      (415) 554-3999 [Holtzman]
Telephone:      (415) 355-3312 [Zelidon-Zepeda]
7 Facsimile:      (415) 554-3837
Email:           alexander.holtzman@sfcityatty.org
8 Email:           jose.zelidon-zepeda@sfcityatty.org

9 Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
10 AND PAUL MIYAMOTO, IN HIS OFFICIAL
CAPACITY AS SAN FRANCISCO SHERIFF

11

12                     UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                           OAKLAND DIVISION

15

16 JOSHUA SIMON, DAVID BARBER, AND          Case No. 4:22-cv-05541-JST
JOSUE BONILLA, INDIVIDUALLY AND
17 ON BEHALF OF ALL OTHERS                   **DEFENDANTS' NOTICE OF MOTION TO**
SIMILARLY SITUATED, DIANA BLOCK,          **MODIFY OR STAY IN PART PRELIMINARY**
18 AN INDIVIDUAL AND COMMUNITY              **INJUNCTION AND MEMORANDUM OF**
RESOURCE INITIATIVE, AN                   **POINTS AND AUTHORITIES**
19 ORGANIZATION,

20        Plaintiffs,                       Judge:              Honorable Jon S. Tigar
                                           Courtroom:          Courtroom 6, 2nd Floor
21        vs.                              Hearing Date:       March 21, 2024 (Pending
                                                               Motion to Shorten Time)
22 CITY AND COUNTY OF SAN                   Time:               2:00 p.m.
FRANCISCO, PAUL MIYAMOTO, IN HIS
23 OFFICIAL CAPACITY AS SAN                 Date Action Filed:  September 8, 2022
FRANCISCO SHERIFF,                        Trial Date:         Not Set
24
        Defendants.
25

26

27

28

1

## **TABLE OF CONTENTS**

2  TABLE OF CONTENTS.................................................................................................ii

3  TABLE OF AUTHORITIES .........................................................................................iii

4  NOTICE OF MOTION AND MOTION TO MODIFY OR STAY IN PART .............................1

   MEMORANDUM OF POINTS AND AUTHORITIES .......................................................3
5
        I.      Introduction...........................................................................................3
6
        II.     Facts and Procedural History ...............................................................4
7
                A.     Pretrial Electronic Monitoring Program ....................................4
8
                B.     Relevant Filings, Hearing, and Post-Hearing Developments ....................5
9
                C.     Preliminary Injunction Order.....................................................7

        III.    Legal Standard .......................................................................................8
10
        IV.     Argument ...............................................................................................9
11
                A.     The Court Should Stay Its Injunction Against Sharing of GPS Location
12                     Data with Other Law Enforcement Agencies or Modify the Injunction to
                       Allow Sharing Under the Superior Court's Revised Admonitions..............9
13
                       1.     The Court Should Stay This Aspect of the Injunction Pending
14                            Appeal. .........................................................................10

15                            a.     Defendants have a strong likelihood of success on the
                                     merits...............................................................10
16
                              b.     A stay will not substantially injure class members............13
17
                              c.     The SFSO will be irreparably harmed in its public
18                                   protection mission absent a stay and the public interest
                                     strongly supports a stay pending appeal. ..........................14
19
                       2.     Alternatively, the Court Should Modify the Injunction to
20                            Account for the Admonition Including Based on Simon's August
                              2023 Superior Court Admonition. ................................15

21              B.     The Court Should Extend by Two Weeks the Time to Cease
                       Enforcement of the Warrantless Search Condition as to the 37
22                     Remaining Affected Individuals..............................................16

        V.      Conclusion ...........................................................................................19
23
24

25

26

27

28

ii

Defs' Motion to Modify or Stay in Part Preliminary Injunction                    n:\lit\li2024\230184\01737472.docx
Case No. 22-cv-05541-JST

## TABLE OF AUTHORITIES

**State Cases**

*Carmel Valley Fire Prot. Dist. v. State*
   25 Cal. 4th 287 (2001) ...................................................................................13

*Hill v. Nat'l Collegiate Athletic Assn.*
   7 Cal. 4th 1 ....................................................................................................12

*Humphrey*
   11 Cal. 5th 135 (2021) ...............................................................................4, 14

*In re York*
   9 Cal. 4th 1133 ..............................................................................................12

*Mathews v. Becerra*
   8 Cal. 5th 756 (2019) .....................................................................................12

*People v. Buza*
   4 Cal. 5th 658 (2018) ................................................................................11, 12

*People v. Joshua Isiah Simon*
   S.F. Super. Ct. Case Nos. CRI-22004986, 22015590, 23007617........................16

*People v. McInnis*
   6 Cal. 3d 821 (1972) .......................................................................................11

**State Statutes & Codes**

California Penal Code § 1275(a)(1) ........................................................................4

**Federal Cases**

*A&M Recs., Inc. v. Napster, Inc.*
   284 F.3d 1091 (9th Cir. 2002) ..........................................................................8

*Apple, Inc. v. Samsung Elecs. Co.*
   2012 WL 3536800 (N.D. Cal. Aug. 15, 2012) ...................................................9

*Carpenter v. United States*
   138 S. Ct. 2206 (2018)...............................................................................12, 13

*CTIA-The Wireless Ass'n v. City of Berkeley*
   158 F. Supp. 3d 897 (N.D. Cal. 2016) ...............................................................8

*CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*
   617 F. Supp. 2d 1051 (E.D. Cal. 2009) ..............................................................8

*Haskell v. Brown*
   317 F. Supp. 3d 1095 (N.D. Cal. 2018) ............................................................11

*Hilton v. Braunskill*
  481 U.S. 770 (1987)......................................................................................................8, 9, 18

*L.A. Cnty. Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992) ...................................................................................16

*Nat. Res. Def. Council, Inc. v. Winter*
  502 F.3d 859 (9th Cir. 2007) ...........................................................................8, 13, 19

*Protect Our Water v. Flowers*
  377 F. Supp. 2d 882 (E.D. Cal. 2004) ...............................................................8, 12

*Senne v. Kansas City Royals Baseball Corp.*
  2017 WL 5973487 (N.D. Cal. May 5, 2017)...............................................................13

*Standard Havens Prod., Inc. v. Gencor Indus., Inc.*
  897 F.2d 511 (Fed. Cir. 1990) .........................................................................................9

*Stop H-3 Ass'n v. Volpe*
  353 F. Supp. 14 (D. Hawaii 1972) .............................................................................12

*Tracy Rifle & Pistol LLC v. Harris*
  118 F. Supp. 3d 1182 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016)....................15

*United States v. Scott*
  450 F.3d 863 (9th Cir. 2006) .........................................................................................13

*Winter v. Natural Res. Def. Council, Inc.*
  555 U.S. 7 (2008)...........................................................................................................16

## Constitutional Provisions

California Constitution § 12.............................................................................................4

California Constitution § 28(b)(3) ................................................................................4

California Constitution § 28(f)(3) ................................................................................4

## Other Authorities

S.F. Charter § 4.127 .......................................................................................................11

1

**NOTICE OF MOTION AND MOTION TO MODIFY OR STAY IN PART**

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE THAT, on March 21, 2024, at 2:00 p.m., or sooner as ordered by the

4    Court in response to Defendants' Administrative Motion to Shorten Time On Motion to Modify or

5    Stay in Part Preliminary Injunction, or as soon thereafter as this matter may be heard in the United

6    States District Court for the Northern District of California, 1301 Clay Street, 2nd Floor, Courtroom 6,

7    before the Honorable Jon S. Tigar, Defendants City and County of San Francisco and Sheriff Paul

8    Miyamoto in his official capacity as San Francisco Sheriff ("Defendants") will and hereby do move

9    this Court for an order modifying or staying a portion of the preliminary injunction entered in its Order

10   Granting in Part and Denying in Part Defendants' Motion to Dismiss, Granting Motion for Class

11   Certification, and Granting Motion for Preliminary Injunction, ECF No. 77. Specifically, Defendants

12   request that the Court (1) modify or stay pending appeal the injunction against sharing GPS location

13   data with other law enforcement agencies for members of the revised rules subclass; and (2) modify to

14   extend the deadline or stay the injunction against the four-way search condition for two additional

15   weeks (until March 12, 2024) as to the approximately 37 Pretrial Electronic Monitoring Program

16   participants who have not yet been issued the revised EM Program Order by the Superior Court.

17   The motion is based on the notice of motion and motion, the memorandum of points and

18   authorities in support, the Declaration of Undersheriff Katherine Johnson; and the Declaration of

19   Alexander J. Holtzman; the briefing, evidence, and hearing on Plaintiffs' Motion for a Preliminary

20   Injunction and Motion for Class Certification; the declarations, papers, and other evidence submitted

21   in this case; and any other matters the Court deems appropriate.

22   Defendants also respectfully request that the Court expedite consideration of this motion by

23   granting Defendants' Administrative Motion to Shorten Time on Motion to Modify or Stay in Part

24   Preliminary Injunction. To avoid harms to class members, the San Francisco Sheriff's Office

25   ("SFSO"), and the public, Defendants respectfully ask the Court to grant the requested extension of

26   time as to the injunction against the four-way search condition by February 22, 2024 and as to the stay

27   or modification of the injunction against sharing of location data by February 26, 2024.

28

1    Dated:  February 16, 2024                    Respectfully Submitted.

2                                                 DAVID CHIU
                                                  City Attorney
3                                                 JAMES F. HANNAWALT
                                                  Acting Chief Trial Deputy
4                                                 ALEXANDER J. HOLTZMAN
                                                  JOSE A. ZELIDON-ZEPEDA
5                                                 Deputy City Attorneys

6
                                            By:_____*/s/ Alexander J. Holtzman*_____
7                                                 ALEXANDER J. HOLTZMAN

8                                                 Attorneys for Defendants
                                                  CITY AND COUNTY OF SAN FRANCISCO, PAUL
9                                                 MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN
                                                  FRANCISCO SHERIFF
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                  2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

Three days ago, the Court entered a preliminary injunction against Defendants the City and County of San Francisco and Sheriff Paul Miyamoto in his official capacity as San Francisco Sheriff ("Defendants"). ECF No. 77. This injunction enjoins two rules of the Pretrial Electronic Monitoring ("PTEM") Program that the San Francisco Sheriff's Office ("SFSO") administers on behalf of the San Francisco Superior Court. The Court gave the SFSO two weeks to implement all changes necessary to comply with its order. Defendants request that the Court modify or stay its preliminary injunction in two limited respects to promote an orderly implementation of the Court's order, public safety, and respect for orders and admonitions entered by the San Francisco Superior Court regarding individuals it releases pretrial:

*First*, Defendants ask the Court to stay pending appeal or modify its injunction that will prohibit the SFSO from sharing validly collected GPS location data for PTEM Program participants with other law enforcement agencies (including the San Francisco Police Department) in active criminal investigations for PTEM Program participants subject to the revised electronic monitoring Superior Court admonitions. The Superior Court's revised admonitions specifically reflect the court's intention and PTEM Program participants' agreement to allow this data sharing as a condition of participation in the PTEM Program. This aspect of the Court's injunction endangers the public by handicapping the ability of the SFSO to share information in fast-moving criminal investigations as demonstrated by the many examples Defendants filed with the briefing on the motions for a preliminary injunction and class certification. For multiple reasons, including those related to structural aspects of this case as framed by Plaintiffs, substantive law on Plaintiffs' data sharing claims, and evidence supporting this condition, including revisions to the Superior Court admonitions and SFSO policies, Defendants believe they have meritorious grounds for appeal of the data sharing injunction as applied to those class members subject to the revised admonitions.  The Court should alternatively modify this aspect of its injunction to exclude from its data sharing injunction those placed on the PTEM Program since the Superior Court revised its admonitions in light of the transcript

Defs' Motion to Modify or Stay in Part Preliminary Injunction
Case No. 22-cv-05541-JST

n:\lit\li2024\230184\01737472.docx

1  of the revised admonitions colloquy in Plaintiff Simon's criminal cases reflecting the court's clear

2  entry of the data sharing condition in addition to Simon's knowing acceptance of that condition.

3  *Second*, Defendants ask the Court modify or stay the injunction to allow the SFSO two

4  additional weeks—until March 12—to address the impact of the Court's injunction against the

5  warrantless search condition for PTEM Program participants who have not yet received the Superior

6  Court's revised EM Order in a manner that minimizes disruption for those PTEM Program participants

7  and the Superior Court while maintaining public safety.

8  **II.    Facts and Procedural History**[1]
   **A.    Pretrial Electronic Monitoring Program**

9

10  Judges on the Superior Court determine the level of restrictions on a criminal defendant

11  awaiting trial in light of all the relevant circumstances. ECF No. 1-1 ("Compl.") ¶ 2. "When making

12  any bail determination, a superior court must undertake an individualized consideration of the relevant

13  factors. These factors include the protection of the public as well as the victim, the seriousness of the

14  charged offense, the arrestee's previous criminal record and history of compliance with court orders,

15  and the likelihood that the arrestee will appear at future court proceedings." *In re Humphrey*, 11

16  Cal. 5th 135, 152 (2021) (citing Cal. Const., art. I §§ 12, 28(b)(3), 28(f)(3); Cal. Penal Code §

17  1275(a)(1)). The Superior Court remands some defendants into custody, releases others on their own

18  recognizance ("OR"), and releases still others with conditions. The court can order a defendant to

19  participate in the PTEM Program as a condition of release. Compl. ¶ 17. When it does, the SFSO

20  administers the PTEM Program. *Id.* ¶ 12; *id.*, Ex. A. In releasing a defendant contingent on

21  participation in the PTEM Program, the Superior Court issues an EM Order. *Id.* ¶ 19. Both before and

22  after the revisions to the EM Order described below, the EM Order has stated that "the Court indicates

23  that the defendant has waived their 4th Amendment rights and understands the restrictions ordered by

24  the Court." ECF No. 22-2 at 15 (EM Order template when case was filed); ECF No. 57-2 (May 2023

25  updated EM Order template). PTEM Program participants also initial Program Rules and sign a

26
27  _____
   [1] Defendants provide an abbreviated account of the relevant background here for this expedited motion to stay in light of the Court's familiarity with the full factual record reflected in the filings on the preliminary injunction and class certification motions and the parties' briefing on post-hearing developments and without waiver of any aspect of that record.

28

4

Participant Contract before enrolling in the program. Program participants are frequently placed on the PTEM Program multiple times by the Superior Court and will agree to the Program Rules and Participant Contract each time. *See, e.g.*, ECF No. 71-3–71-6 (Plaintiff Simon's August 2023 minute order, EM Order, initialed and signed Program Rules, and signed Program Contract).

Criminal defendants released from custody contingent on participation in the PTEM Program have frequently been charged with the most serious offenses. Plaintiffs Joshua Simon, David Barber, and Josue Bonilla were all released from custody contingent on PTEM Program participation while facing multiple felony charges including domestic violence. ECF Nos. 31-2, 31-4, 31-7 (minute orders listing charges against Plaintiffs). At the time he filed this case, Simon was charged with felony counts of domestic violence, assault with a deadly weapon, and vandalism. ECF No. 31-2. In May 2023, after the Superior Court modified Simon's release conditions and his release from custody was no longer conditioned on participation in the PTEM Program, Simon was arrested in connection with several new charges including felony domestic violence and assault with force likely to produce great bodily injury. ECF No. 71-3. He was also charged in yet another new case with misdemeanor battery and contempt of court. *Id.* He was then released from custody by the Superior Court contingent on participation in the PTEM Program on August 25, 2023, subject to the revised Superior Court admonitions. *Id.* On December 7, 2023, he was remanded into custody based on his 36 program violations in the intervening less than four months, including a stay away violation. ECF No. 74-2.

### B.    Relevant Filings, Hearing, and Post-Hearing Developments

On October 7, 2022, Plaintiffs filed a Motion for a Preliminary Injunction seeking to enjoin the imposition and enforcement of PTEM Program Rules 5 (search condition) and 13 (now 11) (location data sharing). ECF No. 22. Defendants filed a Motion to Dismiss on October 17, 2022. ECF No. 24. On October 28, 2022, Defendants filed their Opposition to the Motion for a Preliminary Injunction. ECF No. 31; ECF Nos. 31-1–31-36. On the same day that Defendants' Opposition to the preliminary injunction motion was due and was filed—October 28, 2022, Plaintiffs filed a Motion for Class Certification. ECF No. 30, which Defendants opposed. ECF Nos. 41–41-14. The Court held a hearing on the three pending motions on February 2, 2023. ECF Nos. 48.

While these motions were pending, relevant developments occurred with the PTEM Program. Starting on May 8, 2023, the Superior Court began using a revised EM Program Order. The revised order makes explicit that, as part of criminal defendants' waiver of their Fourth Amendment rights at the hearing, the Superior Court has imposed a warrantless search condition and describes the effect of that waiver. The order states in bold: "Defendant shall submit to a search of their person, vehicle, property and home at anytime by SFSO sworn staff or any peace officer acting on behalf of and with the express permission of the SFSO." ECF No. 57-2. It includes an option for the Superior Court to require as a condition of release that the criminal defendant "submit to a warrantless search by any peace officer at anytime." *Id.* This broader search condition is not imposed in every case. ECF No. 57-1 ¶ 5. The revised order also includes a signature line for the defendant stating: "By signing here, the defendant agrees to enroll in the electronic monitoring program, follow the program rules, and have their movement tracked and recorded by the SFSO." ECF No. 57-2.

The Superior Court's revised oral admonitions inform criminal defendants that by participating in the EM Program they are agreeing that their "person, residence, automobile, and any property under [their] custody or control can be searched by any San Francisco Sheriff's Department peace officer any time of the day or night, with or without a warrant, with or without [their] consent, and with or without reasonable suspicion or probable cause," or a broader admonition in cases with the broader search condition, that their "movements while on EM will be continuously tracked and recorded, and that information will be preserved and maintained," and that their "GPS location dat[a] can be shared with law enforcement agencies for criminal investigations during the pendency of the case." ECF No. 53-3. Before entering the EM Program Order, the court asks the defendant three questions: "Do you understand the admonishment I have just read to you? Have you had the opportunity to consult with your attorney about these conditions? Do you agree to these conditions?" *Id.*

Following these revisions by the Superior Court, the SFSO made conforming revisions to its program rules and policy regarding sharing of GPS location data. *See* ECF Nos. 71-1, 71-2.

### C.     Preliminary Injunction Order

On February 13, 2024, the Court issued a consolidated order on the three pending motions. ECF No. 77. As relevant here, the Court certified two subclasses. It certified an "original rules subclass," of "all individuals who have in the past been, are currently, or will in the future be subject to the versions of the Program Rules and Participant Contract that were in place at the time that Plaintiffs filed this action, prior to the May 2023 revisions." ECF No. 77 at 27. And it certified a "revised rules subclass," of "all individuals who have in the past been, are currently, or will in the future be subject to the revised version of the Program Rules that was put into place following the May 2023 changes." *Id*. The Court also granted Plaintiffs' request for a preliminary injunction as to the certified subclasses. The Court "preliminarily enjoined [Defendants] from imposing and enforcing, as to the original rules subclass, the Sheriff's EM Program Rules' four-way search condition (Rule 5) and data sharing provision (Rule 13)." *Id.* at 41. As to the revised rules subclass, the Court preliminarily enjoined Defendants "from imposing or enforcing any search condition broader than that stated in each class member's Superior Court order and from imposing and enforcing the Program Rules' data sharing provision (Rule 11)." *Id.* The Court directed Defendants to cease enforcement of the specified rules within 14 days of its order—by February 27, 2024. *Id.*

As relevant to this motion, as of February 15, 2024, there were 37 PTEM Program participants whose warrantless search conditions cannot be enforced beginning on February 27, 2024 under the Court's order. (*See* Declaration of Undersheriff Katherine Johnson in Support of Defendants' Motion to Modify or Stay in Part Preliminary Injunction ("Johnson Decl.") ¶ 3.) These are individuals who the Superior Court ordered to participate in the PTEM Program as a condition of their pretrial release under the original EM Order, but who have not yet returned to the Superior Court and received a hearing subject to the revised EM Order. The injunction as to sharing of location data with other law enforcement agencies—including SFPD—affects all PTEM Program participants regardless of whether they are in the original rules subclass or the revised rules subclass. ECF No. 77 at 41.

Defendants plan to appeal at least a portion of the preliminary injunction. *See* Declaration of Alexander J. Holtzman in Support of Defendants' Motion to Modify or Stay ("Holtzman Decl.") ¶ 4.

### III.    Legal Standard

The following standard applies to a request to modify a preliminary injunction: "A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002).

The following standard applies to a request for a stay pending appeal: A court should stay an injunction when a combination of the following four factors weigh in favor of the moving party: (1) whether the moving party has made a strong showing of likelihood of success on the merits; (2) whether the moving party "will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) whether the public interest supports a stay. *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). "[E]ven 'failing' a strong likelihood of success on the merits, the party seeking a stay may be entitled to prevail if it can demonstrate a 'substantial case on the merits' and the second and fourth factors militate in its favor." *Nat. Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 863 (9th Cir. 2007).

"Several courts have observed that the 'success on the merits factor cannot be rigidly applied,' because if it were, an injunction [pending appeal] would seldom, if ever, be granted 'because the district court would have to conclude that it was probably incorrect in its determination on the merits.'" *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (citations omitted). Instead, district courts properly "stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Id.* (citation omitted). Courts assess the "irreparably injured" and "likelihood-of-success" factors on a sliding scale, and "relief may be appropriate where the likelihood of success is such that serious questions going to the merits are raised and the balance of hardships tips sharply in the stay applicant's favor. *CTIA-The Wireless Ass'n v. City of Berkeley*, 158 F. Supp. 3d 897, 900 (N.D. Cal. 2016); *see also CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 617 F. Supp. 2d 1051, 1085 (E.D. Cal. 2009) (party moving for a stay pending appeal "must show that the balance of hardships tips decidedly in its favor and that the public interest is better served by issuance of a stay."). "Deciding whether to grant a stay of an order pending an appeal is an equitable inquiry. Each factor in

the analysis need not be given equal weight." *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3536800, at *1 (N.D. Cal. Aug. 15, 2012); *Hilton,* 481 U.S. at 777 ("Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."). Courts "adopt[] a flexible approach" in analyzing these factors "in the context of preliminary injunctions." *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir. 1990).

## IV.    Argument

The Court should grant Defendants' motion because new facts support modification consistent with the Court's preliminary injunction order and, alternatively, because all of the factors for the requested stays are met.

### A.    The Court Should Stay Its Injunction Against Sharing of GPS Location Data with Other Law Enforcement Agencies or Modify the Injunction to Allow Sharing Under the Superior Court's Revised Admonitions.

Whatever concerns Plaintiffs might have raised about the sharing of GPS location data under the original admonitions was definitively resolved by the Superior Court's revisions, which added the statement: "Your GPS location dat[a] can be shared with law enforcement agencies for criminal investigations during the pendency of the case and until the case is fully adjudicated." ECF No. 53-3; *see* ECF No. 73 at 5–6; ECF No. 57 at 5–6. The Court's order notes this revision but declines to give it effect, in that data sharing is barred for original rules subclass members and revised rules subclass members alike. ECF No. 77 at 23, 41. This is in contrast to the Court's injunction regarding the four-way search term, where the Court limited the injunction of the revised rules subclass members to those where the four-way search condition was "broader than that stated in each class member's Superior Court order." *Id.* at 41. Meanwhile, a loss by the SFSO of the ability to share GPS location data with other law enforcement agencies will undermine public safety and accountability of PTEM Program participants. Whether viewed under the rubric of a stay pending appeal or a modification to reflect the effect of the Superior Court's revised admonitions, the Court should grant the request for a stay or modification of its injunction prohibiting the SFSO from sharing validly collected GPS location data for PTEM Program participants with other law enforcement agencies in active criminal investigations

for PTEM Program participants subject to the revised admonitions. Practically, this includes all current PTEM Program participants except for the 37 discussed in Part B below.

1. **The Court Should Stay This Aspect of the Injunction Pending Appeal.**

The Court should stay its injunction preventing sharing of GPS data with law enforcement agencies in criminal investigations for the revised rules subclass where the Superior Court's admonition states: "GPS location dat[a] can be shared with law enforcement agencies for criminal investigations during the pendency of the case and until the case is fully adjudicated." ECF No. 53-3.

a. **Defendants have a strong likelihood of success on the merits.**

Defendants have at least three independent bases to prevail in challenging the injunction against sharing of GPS location data, at least collectively providing a strong likelihood of success on the merits. First, Defendants may prevail on their argument that class members needed to challenge the data sharing condition in the Superior Court. ECF No. 31 at 7–9. This argument is especially powerful as to those who received the revised admonitions—which is the subject of this stay request—because these individuals are clearly seeking to nullify the Superior Court's admonition that their "location dat[a] can be shared with law enforcement agencies for criminal investigations during the pendency of the case and until the case is fully adjudicated." ECF No. 53-3.

Second, Defendants are likely to prevail on their argument that Plaintiffs lack standing to sue about location data sharing. Plaintiffs presented no evidence their location data was shared (except for a request from Plaintiff Barber's attorney related to him) before Plaintiffs filed this lawsuit. *Cf.* ECF No. 31 at 3.

Third, Defendants are likely to prevail on their arguments regarding the propriety of the location data sharing condition. ECF No. 31 at 18–21. The Court based its preliminary injunction analysis of likelihood of Plaintiffs prevailing on the merits on their separation of powers, Fourth Amendment, and right to privacy claims. ECF No. 76 at 36–39. As to Plaintiffs' Fourth Amendment and right to privacy claims, whether there is an independent privacy interest against the sharing of location information that has been validly and knowingly collected by law enforcement as part of a pretrial supervision program is at least a close question. This is especially true, again, for the revised

rules subclass because the Superior Court's revisions to its admonitions make clear that the court intends to allow sharing of their location data for the law enforcement purposes described. ECF No. 53-3.

Defendants can also present robust evidence about the government interests in emergency law enforcement use of GPS location data for PTEM Program participants in connection with the class members' claims. *See, e.g.*, ECF Nos. 31-17 ¶ 10; ECF No. 41-9 ¶ 3. For example, Lt. Philip Judson filed a declaration in opposition to the motion for a preliminary injunction recounting how GPS location data was used to apprehend Lorenzo Grant after he violently robbed a 7-11 store in South San Francisco. ECF No. 31-17 ¶ 10(a). The same holds true with respect to evidence Lt. Judson provided as to, for example, the arrests of Joseph Atchan for burglaries, *id.* ¶ 10(b); Erin Romero for child kidnapping, *id.* ¶ 10(c); Damanuel Hightower for burglaries, *id.* ¶ 10(d); and Greg Morton who was caught with a gun after involvement in a homicide, *id.* ¶ 10(e). As Lt. Judson explained in his declaration, "[l]aw enforcement typically shares data for legitimate law enforcement purposes across agencies and jurisdictions." *Id.* ¶ 11. "In [his] experience, a limitation on law enforcement sharing of data outside of the agency, like the one" requested by Plaintiffs and now entered by the Court is "unprecedented." *Id.* Even if Plaintiffs could point to a similar injunction elsewhere, and they have not, the injunction here is especially problematic in preventing the SFSO from sharing location data with the San Francisco Police Department given the departments' distinct roles in the same consolidated city and county and reliance on each other. S.F. Charter §§ 4.127, 6.105; ECF No. 31-17 ¶ 6.

A court could reasonably agree with Defendants' position that location data is analogous with respect to privacy interests to—or even less sensitive than—the DNA records and samples in *Haskell v. Brown*, 317 F. Supp. 3d 1095, 1110 (N.D. Cal. 2018), and *People v. Buza*, 4 Cal. 5th 658, 680 (2018), or the mugshots in *People v. McInnis*, 6 Cal. 3d 821 (1972). The Court in its preliminary injunction order concluded that the California Supreme Court's decision in *Buza*, 4 Cal. 5th at 658, is distinguishable because it "did not deal with location information at all." ECF No. 77 at 24. But *Buza* involved a challenge to a state law requiring individuals who were arrested for a felony offense to

provide a DNA specimen, and thus dealt with information far more sensitive and potentially intrusive than the historical location information at issue here. Indeed, a dissenting opinion highlighted that "the use of that sample to create and store a DNA profile gives the government long-term access to the subject's genetic code—some of the most personal information imaginable." *Buza*, 4 Cal. 5th at 712 (Cuéllar, J., dissenting).

A court could also reasonably give greater weight to Plaintiffs' repeated consents to collection and sharing of their GPS location data during their time as PTEM Program participants than the Court did in its order. ECF No. 31 at 18-19; *In re York*, 9 Cal. 4th 1133, 1149; *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26. Under *Hill*, 7 Cal. 4th at 1, "the plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *Id.* at 26. Plaintiffs here repeatedly consented to GPS data collection and sharing prior to their enrollment in the EM program. Nor can Plaintiffs establish an "objective entitlement" to non-sharing of location data. As the case law demonstrates, pretrial defendants have a sharply limited expectation of privacy. *In re York*, 9 Cal. 4th 1133, 1149 (Cal. 1995) (rejecting "the flawed premise" defendant "has the same reasonable expectation of privacy as that enjoyed by persons not charged with any crime"); *compare Mathews v. Becerra*, 8 Cal. 5th 756, 770 (2019) (addressing privacy expectations of ordinary citizens not on pretrial release). Defendants are mindful that the Court in its order concluded that these authorities are inapposite. ECF No. 77 at 23–25; *id.* at 39.  But these issues raise "admittedly difficult legal question[s]," warranting a stay of the injunction. *Protect Our Water*, 377 F. Supp. 2d at 884; *see also Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 16 (D. Hawaii 1972) ("A stay is frequently issued where the trial court is charting new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review.").

Meanwhile, a court could reasonably determine that *Carpenter v. United States*, 138 S. Ct. 2206 (2018), involves individuals meaningfully differently situated with respect to their location data than class members because the individuals in *Carpenter* did not agree to collection (or sharing) of their location data as a condition of pretrial release from custody. *See, e.g.*, ECF No. 24 at 18; ECF

No. 31 at 19. *Carpenter* concluded that the third-party doctrine did not negate the criminal defendant's privacy interests, and took pains to emphasize that its holding was "a narrow one." 138 S. Ct. at 2220.

And a court could reasonably conclude that *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006), involved less individualized findings at an earlier stage in the criminal case than the Superior Court's orders at issue in this case or does not affect the analysis of location data sharing (rather than the arguably more intrusive four-way search condition).

Similarly, as to separation of powers, a court could reasonably agree with Defendants that this doctrine does not support a preliminary injunction. As to separation of powers, Defendants could convince a court that it has not "defeat[ed] or materially impair[ed] [the judiciary's] inherent power" by sharing GPS location data given the revised admonition. *Carmel Valley Fire Prot. Dist. v. State*, 25 Cal. 4th 287, 298 (2001). A court could have a different view about the relationship between the Superior Court and SFSO, more consistent with Defendants' description. *Compare* ECF No. 31 at 2, 7–9, *with* ECF No. 76 at 37–38.

At least when these arguments are viewed collectively, Defendants have a strong likelihood of success as to the SFSO's ability to share location data from PTEM Program participants subject to the Superior Court's revised admonitions with other law enforcement agencies for law enforcement purposes. Defendants necessarily therefore also satisfy the lesser standard of a "'substantial case on the merits,' and the second and fourth factors [(discussed below in subpart c.)] militate in [their] favor." *Nat. Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 863 (9th Cir. 2007); *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2017 WL 5973487, at *3 (N.D. Cal. May 5, 2017) ("[T]he first factor, a 'strong showing' on the merits, does not require that a party seeking a stay must demonstrate that it is more likely than not to prevail on its appeal. Instead, so long as other factors support a stay, it is enough that there are 'serious questions going to the merits.'" (citation omitted)).

**b.     A stay will not substantially injure class members.**

Meanwhile, a stay will not substantially injure members of the class. They are, again, subject to the Superior Court's admonition that their location data may be shared. ECF No. 53-3. Sharing of class members' data—when it occurs—will be more circumscribed than it was for the many years over

Defs' Motion to Modify or Stay in Part Preliminary Injunction
Case No. 22-cv-05541-JST

n:\lit\li2024\230184\01737472.docx

which Plaintiffs allege the Program Rules have contained location data sharing provisions. Compl.

¶ 53; ECF No. 71 ¶ 5. Meanwhile, class members will remain able to seek modification of the location

data sharing condition (or any other aspect of the PTEM Program) from the Superior Court.

    **c.**  **The SFSO will be irreparably harmed in its public protection mission absent a stay and the public interest strongly supports a stay pending appeal.**

  The SFSO's and public interests also support entry of a stay pending appeal.  Those interests

include the public protection and justice benefits of sharing of location data information limited

consistent with the SFSO's policy filed in this case, ECF No. 71-2, to sharing with law enforcement

agencies engaged in an active criminal investigation. By law, the criminal court in each class

member's case already individually weighed, at the time of each individual class member's

arraignment, factors including "the protection of the public as well as the victim, the seriousness of the

charged offense, the arrestee's previous criminal record and history of compliance with court orders,

and the likelihood that the arrestee will appear at future court proceedings."  *In re Humphrey*, 11

Cal. 5th at 152. The result of that assessment was the court's order that the class members could be

released only after waiving their Fourth Amendment rights, agreeing to follow SFSO's instructions as

part of the PTEM Program, and specifically agreeing to sharing of their location data with other law

enforcement agencies. Their determinations were well-founded. As outlined above, GPS location data

from the PTEM Program has been used to stop crimes in progress and catch individuals who have

committed crimes. ECF No. 31-17 ¶¶ 10; ECF No. 41-9 ¶¶ 7, 9–10. The fast pace of events in these

incidents makes clear the lack of feasibility in obtaining a warrant to allow for cooperation among the

law enforcement agencies involved in each incident as the Court's order would require. *See id.* The

SFSO faces a corresponding irreparable harm to its public protection mission if it is unable to share

location data in this way. *See* ECF No. 31-17 ¶ 11 (describing as "unprecedented" this kind of

limitation "on law enforcement sharing of data outside of the agency"). That Plaintiffs have identified

no similar injunction entered elsewhere is informative.

  A lack of a stay on sharing of location data with other law enforcement agencies for criminal

investigations would also reduce the safety protections that the PTEM Program provides to victims of

violence. Victims—including domestic violence victims in cases like those involving Plaintiffs Simon, Barber, and Bonilla—rely on the Program Rules including the SFSO's ability to share location data as an important deterrent against PTEM Program releasees violating stay-away orders. A government-sponsored report found that "[m]ore than two-thirds of restraining orders obtained by women against intimates who raped or stalked them were violated." Patricia Tjaden & Nancy Thoennes, U.S. Dep't of Justice, *Extent, Nature, and Consequences of Intimate Partner Violence: Findings from The National Violence Against Women Survey* 53 (2000), https://www.ojp.gov/pdffiles1/nij/181867.pdf. "GPS programs can provide victims peace of mind and relief from harassment and abuse, such that the resumption of a normal life seems more tenable." Edna Erez, et al., *GPS Monitoring Technologies & Domestic Violence: An Evaluation Study* at xvii (June 2012), https://www.ojp.gov/pdffiles1/nij/grants/238910.pdf. "GPS technologies have an impact in the short term (during the pretrial period): GPS is effective in preventing defendants from (physically) contacting victims, suggesting that GPS 'puts teeth' into restraining orders." *Id.* at xvi. "Many women found that GPS surveillance allowed them to reestablish a sense of control over their own lives. Victims felt safer in their own homes and the constant fear with which they were accustomed began to dissipate." Ashley Rhodes, *Strenghtening the Guard: the Use of GPS Surveillance to Enforce Domestic Violence Orders*, 2 Tenn. J. of Race, Gender, and Soc. Just. 129, 142, https://ir.law.utk.edu/cgi/viewcontent.cgi?article=1031&context=rgsj *Id.* at 18. These concerns strongly support a stay. *See Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016) ("The costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave. These costs would affect members of the public, and they would affect the Government which is tasked with managing handgun violence.").

      **2.**      **Alternatively, the Court Should Modify the Injunction to Account for the Admonition Including Based on Simon's August 2023 Superior Court Admonition.**

      If the Court is inclined against granting a stay pending appeal, it should modify the injunction to account for the admonition provided by the Superior Court. For the reasons identified above, no injunction is appropriate against the SFSO's ability to share location data consistent with its policy

1    following the Superior Court's revised admonitions. *See Winter v. Natural Res. Def. Council, Inc.*, 555

2    U.S. 7, 24 (2008).

3            Defendants have attached as Exhibit A to the Holtzman Declaration a transcript from a hearing

4    in *People v. Joshua Isiah Simon*, S.F. Super. Ct. Case Nos. CRI-22004986, 22015590, 23007617, at

5    which Plaintiff Simon was released from custody to mental health diversion conditional, in part, on

6    participation in the PTEM Program. The Superior Court discussed with Simon the warrantless search

7    condition and location data sharing condition. As to location data sharing, the Superior Court informed

8    Simon that his "GPS location data can be shared with law enforcement agencies." Holtzman Decl.,

9    Ex. A at 14:11–12. The Superior Court then asked Simon, "Are you agreeable to those terms?" *Id.* at

10   14:16. Simon responded, "Yes, sir."  *Id.* at 14:17. This colloquy impacts at least two relevant aspects

11   of the Court's preliminary injunction order. First, it reinforces that the Superior Court intends to order

12   as a condition of release that the SFSO can share GPS location data with law enforcement agencies.

13   Any recourse Plaintiffs have with respect to this condition is even more clearly with the Superior

14   Court, not the SFSO. *See L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992); ECF No. 31 at

15   7–9 (citing authorities). Second, given Simon's filing of this lawsuit and previous participation in the

16   PTEM Program, there can be no doubt about his knowledge about the scope of the privacy intrusion

17   involved with participation in the program.  *Compare* ECF No. 76 at 23 (quoting the admonishment

18   and expressing apparent concern that it "does not detail the infringement on criminal defendants'

19   privacy at stake" for purposes of Plaintiffs' reasonable expectations of privacy).

20           Accordingly, Defendants respectfully suggest modification of the preliminary injunction to

21   allow sharing of GPS location data for PTEM Program participants subject to the revised admonition

22   with other law enforcement agencies for criminal investigations.

23       **B.    The Court Should Extend by Two Weeks the Time to Cease Enforcement of the
                 Warrantless Search Condition as to the 37 Remaining Affected Individuals.**

24

25           Defendants also seek an additional 14 days to implement the Court's injunction regarding the

26   warrantless search condition (Rule 5) for the benefit of the approximately 37 affected class members.

27   Rather than increasing the freedoms afforded to class members by allowing them to stay in the PTEM

28   Program without a warrantless search condition, the injunction will require the SFSO to reduce the

                                                        16

freedoms afforded to this group by presenting affidavit warrants to the Superior Court, for the court to decide if a warrant shall be issued to detain these individuals until the court has the capacity to hold a hearing to provide them with updated EM Orders and admonitions or to make another appropriate determination regarding their pretrial release status.

The need to take this step to meet the existing 14-day deadline is due to the overwhelming importance of the warrantless search condition to the ability of the SFSO to monitor PTEM Program participants—individuals the Superior Court has already determined cannot be released consistent with public safety, unless they are participating in the PTEM Program. The SFSO cannot implement the PTEM Program consistent with its public protection mandate without the warrantless search condition. Johnson Decl. ¶ 4. As the SFSO explained in opposition to the motion for a preliminary injunction, it "cannot effectively monitor PTEM participants and enforce court orders if officers must develop probable cause to do so." ECF No. 31-17 ¶ 14. "In addition to helping SFSO and other law enforcement agencies with typical law enforcement activities like preventing crimes, PTEM participants' Fourth Amendment waiver in court and the warrantless search condition in the Program Rules address needs specific to PTEM, including detecting tampering with EM equipment, addressing violations of the EM Program Rules, enforcing stay-away orders" as relevant to at least two of the named plaintiffs, who violated stay away orders while on the PTEM Program, "promoting attendance at court hearings, promoting compliance with court-ordered special conditions (e.g. no firearms, no alcohol, or no drugs) and treatment programs ordered by the court, and conducting home assessments for EM home confinement." *Id.* ¶ 15.

For any PTEM Program participants who have not yet been issued a revised EM Order by approximately four days before the injunction comes into effect—February 23, 2024, under the current schedule—the SFSO will need to present affidavit warrants to the Superior Court. Johnson Decl. ¶ 5. The Superior Court will then decide if a warrant shall be issued. *Id.* Following an arrest, the individuals would remain in custody until a hearing can be held at which the Superior Court can release the individual OR, release them subject to participation in the PTEM Program using the revised EM Order and admonitions, or detain them pending trial. The Superior Court has already

Defs' Motion to Modify or Stay in Part Preliminary Injunction
Case No. 22-cv-05541-JST

n:\lit\li2024\230184\01737472.docx

determined these individuals could not be out of custody without participation in the PTEM Program, which the SFSO understands to include the Program Rules. This concern is not new. Defendants raised it months ago in opposing Plaintiffs' request for a preliminary injunction. ECF No. 31 at 23 ("Plaintiffs also face the possibility that an injunction would lead to more criminal defendants being remanded into custody, resulting in additional liberty restrictions.").

Affidavit warrants will become necessary under the existing 14-day deadline because bringing a PTEM Program participant into custody is the only way for the SFSO to ensure that the participant will get an immediate hearing date in Superior Court, where the Court can either provide the updated PTEM Program admonishment or make some other determination regarding the defendant's pretrial release status. Otherwise, the SFSO has no independent ability to set a Superior Court hearing date. *See* ECF No. 71. To hopefully avoid the need for warrants, the SFSO is working with the Superior Court and District Attorney's Office to try to expedite the pace with which these individuals receive a Superior Court hearing regarding an updated EM Order. Johnson Decl. ¶ 6. The SFSO believes the Superior Court could complete the hearing process for at least a majority of these class members with two additional weeks. *Id.* ¶ 7.

There are 37 approximately individuals who have not yet been before the Superior Court for issuance of the revised EM Order and admonitions. Johnson Decl. *Id.* ¶ 3. As the Court is aware, the SFSO has worked with the Superior Court on re-admonishment of PTEM Program participants since that court's implementation of the revised EM Order and admonitions. ECF No. 71 ¶ 3. The number of individuals participating in the PTEM Program based on the Superior Court's previous version of the EM Order has steadily shrunk as individuals receive the revised EM Order and admonitions at a subsequent hearing or leave the PTEM Program and new PTEM Program participants receive the revised order and admonitions. *Compare* ECF No. 71 (reflecting more than 300 individuals subject to the previous EM Order as of May 2023 and 90 as of September 15, 2023).

Based on these facts, the standards for a modification or stay are satisfied. *See Hilton*, 481 U.S. at 776. A four-week period for compliance with this aspect of the preliminary injunction order is appropriate given the above circumstances. Defendants have a strong likelihood of success (or at least

Defs' Motion to Modify or Stay in Part Preliminary Injunction          n:\lit\li2024\230184\01737472.docx
Case No. 22-cv-05541-JST

1  a substantial case on the merits) in showing that an additional two weeks to comply in an orderly

2  fashion reflects an appropriate exercise of the Court's discretion in light of the balance of factors for

3  the preliminary injunction even if the Court gives no credence to the arguments and evidence

4  presented in opposition to the preliminary injunction. *See Nat. Res. Def. Council, Inc.*, 502 F.3d at 863.

5  Defendants will be irreparably injured by being placed in the position of needing to present affidavit

6  warrants to the Superior Court on an expedited schedule, rather than being able to attempt to address

7  the Court's order through cooperative efforts, which harm Defendants seek to avoid through this

8  request. And critically, the requested brief extension benefits the approximately 37 PTEM Program

9  participants who have not yet received a revised EM Order. The modification or stay will have no

10  impact on the remaining class members. And the public interest likewise strongly supports a stay to

11  avoid—to the extent possible through coordination with the SFSO's criminal justice partners—the

12  disruption that would result from the SFSO suddenly losing the ability to supervise these individuals

13  adequately. The Court should therefore delay enforcement of this aspect of its injunction until March

14  12, 2024. And the Court should grant the concurrently filed Administrative Motion to Shorten Time so

15  it may grant the relief requested here.

16  **V.     Conclusion**

17        For the above reasons, the Court should (1) stay pending appeal its injunction to allow for

18  sharing of GPS location information with other law enforcement agencies in active criminal

19  investigations for PTEM Program participants who are subject to the revised admonitions, or

20  alternatively, modify its injunction with respect to Program Rule 11 to account for the admonitions;

21  and (2) modify or stay its injunction to allow for enforcement of the warrantless search condition as to

22  individuals who have not yet received a revised EM Order until March 12, 2024.

23

24

25

26

27

28

1

Dated:  February 16, 2024                    Respectfully Submitted.

2

DAVID CHIU
City Attorney

3

JAMES F. HANNAWALT
Acting Chief Trial Deputy

4

ALEXANDER J. HOLTZMAN
JOSE A. ZELIDON-ZEPEDA

5

Deputy City Attorneys

6

7

By: */s/ Alexander J. Holtzman*
ALEXANDER J. HOLTZMAN

8

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, PAUL

9

MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN
FRANCISCO SHERIFF

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs' Motion to Modify or Stay in Part Preliminary Injunction                    n:\lit\li2024\230184\01737472.docx
Case No. 22-cv-05541-JST