DAVID CHIU, State Bar #189542
City Attorney
JAMES F. HANNAWALT, State Bar #139657
Acting Chief Trial Deputy
ALEXANDER J. HOLTZMAN, State Bar #311813
JOSE A. ZELIDON-ZEPEDA, State Bar #227108
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:  (415) 554-3999 [Holtzman]
Telephone:  (415) 355-3312 [Zelidon-Zepeda]
Facsimile:  (415) 554-3837
Email:  alexander.holtzman@sfcityatty.org
Email:  jose.zelidon-zepeda@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
AND PAUL MIYAMOTO, IN HIS OFFICIAL
CAPACITY AS SAN FRANCISCO SHERIFF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, DIANA BLOCK, AN INDIVIDUAL AND COMMUNITY RESOURCE INITIATIVE, AN ORGANIZATION,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>        Defendants. | Case No. 4:22-cv-05541-JST<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO MODIFY OR STAY IN PART PRELIMINARY INJUNCTION**<br><br>Judge:          Honorable Jon S. Tigar<br>Courtroom:  Courtroom 6, 2nd Floor<br><br>Date Action Filed:  September 8, 2022<br>Trial Date:              Not Set |

## I. Introduction

The San Francisco Sheriff's Office ("SFSO") administers the Pretrial Electronic Monitoring ("PTEM") Program for the Superior Court. This Program serves as an alternative to custody for the Superior Court when considering the conditions of pretrial supervision for criminal defendants who a judge has determined based on "individualized consideration of . . . protection of the public as well as the victim, the seriousness of the charged offense, the arrestee's previous criminal record and history of compliance with court orders, and the likelihood that the arrestee will appear at future court proceedings" cannot be released back into the community without participation in the Program. *In re Humphrey*, 11 Cal. 5th 135, 152 (2021). The Court issued an injunction against the Sheriff and City, directing changes in how the Sheriff operates the Program. This injunction powerfully impacts the public, PTEM Program participants, orders of the Superior Court, and the SFSO. and Defendants have requested that the injunction be modified or stayed in part. Plaintiffs oppose this request, but their Opposition does not meaningfully engage with the context of their case, and instead significantly misrepresents Defendants' request.

*First*, as to the injunction against sharing of GPS location data, Defendants asked the Court to modify or stay pending appeal the portion of its injunction that will prohibit the SFSO from sharing validly collected GPS location data for PTEM Program participants with other law enforcement agencies (including the San Francisco Police Department) in active criminal investigations for Program participants subject to the revised Superior Court admonitions. The Opposition does not rebut Defendants' strong showings on their likelihood of prevailing on appeal, the lack of injury to class members, or the harm to the public and SFSO from this aspect of the injunction. A modification of the injunction is appropriate in the alternative to account for the evidence of Simon's specific admonition.

*Second*, as to the injunction against the enforcement of the warrantless search condition for those without a specific EM Order authorizing it, Defendants asked the Court to provide two additional weeks—until March 12—to address the impact of the Court's injunction in a manner that minimizes disruption for those PTEM Program participants while maintaining public safety. If anything, the Opposition highlights why granting this limited additional time is prudent. Contrary to

Plaintiffs' misstatement, Defendants do not seek additional time to unilaterally impose "unlawful mass arrests," but instead seek a short extension to avoid arrests and allow for the orderly consideration by the Superior Court of pretrial release conditions for certain individuals impacted by this Court's injunction. The interests of the affected class members and public safety clearly support this minimal extension. The Court should grant the Motion.

## II.  Argument

The limited stay or modification of the preliminary injunction requested in the Motion is consistent with law and in the interests of class members, the SFSO, and the public. Plaintiffs claim that the Motion "seek[s] to evade the Court's injunction entirely." ECF No. 82 at 2. That is not accurate. The Motion addresses the portions of the Court's injunction that most impact public safety and the lives of class members. For example, the Motion does not request to alter the Court's injunction as to the original rules subclass. Plaintiffs' apparent disagreement as to the narrowness of the requests in the Motion is based on their minimization of the degree to which pre-injunction changes by the Superior Court already addressed Plaintiffs' concerns. Each aspect of the Motion calls for new, distinct, procedurally appropriate determinations by the Court in light of its preliminary injunction ruling.

### A.  The Court Should Stay Pending Appeal or Modify Its Injunction Against Sharing of GPS Location Data with Other Law Enforcement Agencies to Exclude PTEM Participants Subject to the Revised Admonitions.

As the Motion lays out, there is more than adequate justification for the Court to stay pending appeal or modify its injunction against the sharing of GPS location data, to exclude participants who are subject to the Superior Court's revised admonitions.

#### 1.  The Court should stay this aspect of the injunction pending appeal.

Defendants satisfy all the requirements for a stay pending appeal of the injunction against sharing of GPS location data with other law enforcement agencies for PTEM Program participants like Simon who are subject to the Superior Court's revised admonitions. "[D]istrict courts properly 'stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained.'" *Protect Our Water v. Flowers*, 377 F.

2

Supp. 2d 882, 884 (E.D. Cal. 2004) (citing *Washington Metro. Area v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

Any concerns Plaintiffs may have had about the sharing of GPS location data under the original admonitions were addressed by the Superior Court's revised admonitions, in which the court tells individuals that "Your GPS location dat[a] can be shared with law enforcement agencies for criminal investigations during the pendency of the case and until the case is fully adjudicated." ECF No. 53-3; *see* ECF No. 79-2 (Simon admonitions); ECF No. 73 at 5–6; ECF No. 57 at 5–6. The repeated consent by Simon and similarly situated class members to sharing of their GPS location data in court and during their time as PTEM Program participants should be given effect, in light of the case law. *In re York*, 9 Cal. 4th 1133, 1149 (1995); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994).

Almost all of the cases cited by Plaintiffs in their Opposition concerning the likelihood of success on the merits, ECF No. 82 at 7, were addressed in the Motion, and Plaintiffs make no attempt to explain why a reasonable court could not reach a contrary conclusion to the one reached by the Court with respect to those cases or more generally. Without rehashing the merits of the Court's preliminary injunction order, the order "chart[ed] new and unexplored ground." *Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 16 (D. Haw. 1972).

Moreover, the balance of equities and the public interest weigh in favor of modification or stay of the Court's order. When assessing the harm to the opposing party and weighing the public interest where the government is opposing a preliminary injunction, the balance of harms and public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (when the government is a party, the public interest and the balance of equities merge). And here, these factors weigh in favor of maintaining the status quo. If the Court's injunction is not stayed, the SFSO will be prevented from sharing GPS with other law enforcement agencies, to the detriment of both public safety and accountability of PTEM Program participants. *See also* S.F. Charter §§ 4.127, 6.105 (describing distinct responsibilities of San Francisco Police Department and SFSO in the same city and county). The status quo here is the operation of the PTEM Program rules

before this litigation was filed. *Miracle v. Hobbs*, 427 F. Supp. 3d 1150, 1164 (D. Ariz. 2019). It should be preserved pending appeal.

Plaintiffs' contrary argument ignores the public safety concerns implicated by this case and disregards the case law cited above. *See* ECF No. 82 at 8. Plaintiffs give no consideration to the public protection interests Defendants raised. And they disregard the public interests in respecting orders and admonitions entered by the Superior Court, including its admonition making potential sharing of location information with other law enforcement agencies a condition of release. *See id.* As courts have pointed out, a preliminary injunction is an "extraordinary" remedy, and a "heavy-handed" one. *Winter v. Nat. Res. Def. Couns.*, 555 U.S. 7, 24 (2008); *Doe v. Bd. of Trustees of Whitman Coll.*, __ F. Supp. 3d __, 2023 WL 3316893, at *10 (E.D. Wash. Apr. 25, 2023). "Due to concerns of comity and federalism, the scope of federal injunctive relief against an agency of state government must always be narrowly tailored to enforce federal constitutional and statutory law only." *Clark v. Coye*, 60 F.3d 600, 603–04 (9th Cir. 1995); *see Beauchamp v. Los Angeles Cnty. Metro. Transp. Auth.*, 191 F.3d 459 (9th Cir. 1999) (reversing portion of a preliminary injunction because "the relief [was] not narrowly tailored, as it must be when state or municipal agencies are involved"). Plaintiffs argue that the SFSO has no legitimate interest in pursuing "its public safety mission in violation of civil liberties." ECF No. 82 at 8. But the question at this juncture is whether the status quo should remain while the appellate court has an opportunity to consider whether there has been a violation of civil liberties. And Plaintiffs cite case law generally stating that denial of constitutional rights constitutes irreparable harm. But "the mere assertion of [constitutional] rights does not automatically require a finding of irreparable injury." *CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019). As explained above, here these factors weigh in favor of maintaining the status quo pending appeal.

**2. In the alternative, the Court should exercise its inherent authority to modify the preliminary injunction to permit GPS data sharing for revised rules subclass members.**

As an alternative to a stay, Defendants requested that the Court exercise its inherent authority to modify the preliminary injunction so that GPS data sharing with other law enforcement agencies would be permitted as to the revised rules subclass. ECF No. 79 at 12.

4

Defs' Motion to Modify or Stay in Part Preliminary Injunction
Case No. 22-cv-05541-JST
n:\lit\li2024\230184\01738382.docx

In opposition, Plaintiffs argue that Defendants' only recourse for modification was to file an administrative motion for leave to file a motion for reconsideration pursuant to Local Rule 7-9. ECF No. 82 at 2–3. Plaintiffs are incorrect. A district court has inherent power to modify a preliminary injunction, independent of the procedures set forth in the Federal Rules:

> "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981) (emphasis added); *see also Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (stating that when a district court issues "an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59").

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *id.* at 886 ("A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure.").

Additionally, contrary to Plaintiffs' position, exercising this inherent power does not require new facts; it can be exercised based on "*newly revealed* facts or circumstances." *United States v. Washington*, 853 F.3d 946, 979 (9th Cir. 2017) (emphasis added). And here, Defendants have furnished the Court with a transcript showing that the Superior Court expressly admonished a class representative that as a condition of his release subject to the PTEM Program, his GPS location data could be shared with law enforcement agencies, *and* that the class member stated his acceptance of this condition. Given this evidence of a clear admonishment and consent, the Court should modify the injunction in light of the irreparable harms to crime victims from disallowing GPS location sharing as to members of the revised rules subclass. ECF No. 79 at 14–15.

The cases cited by Plaintiffs are distinguishable. The issue in *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005), was the appealability of a denied motion to modify an injunction, not a court's inherent power to modify. And *Wang v. Kahn*, 2022 WL 36105 (N.D. Cal. Jan. 4, 2022), concerned a court's authority to reconsider its prior holding under the Federal Rules. Not only that, notwithstanding the movant's noncompliance with Local Rule 7-9, the court still addressed the request for reconsideration on its merits. Finally, Plaintiffs' citation of *System Federation No. 91, Railway Employees' Department, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961),

5

for the principle of "[f]irmness and stability" in an injunctive ruling was inapposite, because that case concerned a decade-old final consent decree. It did not concern a preliminary injunction issued one week before.

If the Court is not inclined to grant a stay pending resolution of these issues at the Court of Appeals or modify this aspect of the injunction, it should at least grant a narrower stay pending a request to the Ninth Circuit for a stay pending appeal and an order on that request. Doing so would allow for the orderly processing of a stay motion in the Court of Appeals. Fed. R. App. P. 8(a)(1).

### B. The Court Should Extend by Two Weeks the Time to Stop Enforcement of the Warrantless Search Condition as to Remaining Affected Individuals.

In the Motion, Defendants explained that the interests of affected class members, the SFSO, and the public all support providing a limited additional period for compliance with the Court's injunction against the warrantless search condition for PTEM Program participants who do not have an EM Order specifically listing such a condition. Nothing in the Opposition undermines Defendants' request for a two-week extension to avoid sudden potential disruption in the lives of the fewer than 37 (based on orders issued since February 15 and warrantless search conditions entered by the Superior Court other than through use of the revised EM Order template conditions) individuals affected by this aspect of the Court's injunction.

Plaintiffs transparently misrepresent the basis for the requested extension—saying Defendants seek additional time to arrest PTEM Program participants. ECF No. 82 at 4. This is exactly wrong. The purpose of the additional requested time is to *avoid*, to the extent possible, the need to present affidavit warrants to the Superior Court. With additional time, and in cooperation with the parties and Superior Court in the criminal cases, the SFSO aims to minimize the disruption to the PTEM Program participants whose warrantless search conditions have been enjoined. *See, e.g.*, ECF No. 79 at 18 ("To hopefully avoid the need for warrants, the SFSO is working with the Superior Court and District Attorney's Office to try to expedite the pace with which these individuals receive a Superior Court hearing regarding an updated EM Order. The SFSO believes the Superior Court could complete the hearing process for at least a majority of these class members with two additional weeks." (citations

omitted)). The Court should reject Plaintiffs' arguments, which depend on their inaccurate framing.

Defendants provided briefing and evidence supporting the importance of the warrantless search condition to the purposes of PTEM Program monitoring including public safety. *See, e.g.*, ECF No. 79 at 17; ECF No. 31-17 ¶¶ 14–15; ECF No. 31 at 16, 23–24. And they explained why presentation of affidavit warrants to the Superior Court will be necessary for the SFSO to comply with its mandate from this Court and from the Superior Court if the injunction against the search condition comes into effect before the Superior Court can consider the conditions of pretrial release for affected individuals—including issuance of revised EM Orders as appropriate. ECF No. 79 at 17–18; ECF No. 79-3 ¶ 5. The Declaration from Deputy Public Defender Sujung Kim, submitted by Plaintiffs, corroborates that the SFSO lacks an independent ability to add hearings to the criminal court's calendar, as the parties to the criminal cases might with a motion, given that it is not a party in the Superior Court. *See* ECF No. 82-1 (declaration from Deputy Public Defender Sujung Kim representing just that the SFSO can "request that the court add to calendar" without identifying a mechanism to do so). The number of individuals affected by this aspect of the preliminary injunction is much smaller than it would have been less than a year ago because the SFSO has been working with the Superior Court to re-admonish the affected class members. *Compare* ECF No. 71 (reflecting more than 300 individuals subject to the previous EM Order as of May 2023 and 90 as of September 15, 2023). And the SFSO could not have known the injunction the Court would enter or its precise form. In any event, it is clearly better to give the Superior Court and parties in criminal court the opportunity to address pretrial release for the fewer than 37 individuals affected by the injunction against the warrantless search condition in an orderly fashion to the extent possible. Whether based on the evidence submitted with the Motion supporting modification or under the rubric of a stay, a two-week extension is appropriate.

Plaintiffs argue that there is no need for an extension because the SFSO lacks legal authorization to arrest PTEM Program participants, but this argument misses two crucial points. First, the SFSO does not decide whether to issue a warrant. That decision rests solely with the Superior Court. What the SFSO must do is to provide the state court with information to use in making that

7

choice via an affidavit. The affidavits presented by the SFSO, if attempts to minimize or avoid their necessity are unsuccessful, will describe to the judge each participant's performance on the PTEM Program including lack of compliance with program rules such as stay-away orders. Second, of course, any request for a warrant presented to the Superior Court will describe facts giving rise to sufficient cause. Many program participants have violated of the Program Rules multiple times. *See* ECF No. 74-2 (reflecting Simon's 36 Notices of Rule Violations, including a stay away violation, before presentation of an affidavit warrant); Alissa Skog & Johanna Lacoe, *Pretrial Electronic Monitoring in San Francisco*, California Policy Lab, 26 (Nov. 2022), https://www.capolicylab.org/wp-content/uploads/2022/11/Pretrial-Electronic-Monitoring-in-San-Francisco.pdf ("Non-compliance with a condition of release is the most common misconduct type for terminations without an arrest in San Francisco (67%)" and "nearly half the reports (45%) include a violation of a stay-away order."). The information provided by the SFSO will inform the *Superior Court's* decision regarding whether to issue warrants. The SFSO operates the PTEM Program in a collaborative fashion with Program participants aimed at the participants' success and does not reflexively seek affidavit warrants when there are violations of the Program Rules. *See* ECF No. 74-2 (Simon affidavit warrant); *see also* ECF No. 73-2 at 15–16 (describing importance of the warrantless search condition). When PTEM Program participants violate the Program Rules, the SFSO's staff evaluates the correct response and tries to work with these participants, recognizing the challenges they face. The SFSO's response to the preliminary injunction is consistent with that approach.

As to this aspect of the Court's injunction, the Motion raises the narrow issue of whether to provide all involved with a limited additional period to address the effects of the injunction in an orderly fashion. If anything, Plaintiffs' opposition to the presentation of affidavit warrants accentuates the importance of an extension. Presented with the full set of circumstances, including the SFSO's inability to enforce Program Rule 5, the Superior Court has a set of options available to it including setting a new hearing on pretrial conditions, discontinuing a participant's PTEM as successful, or determining that pretrial release is no longer appropriate. However the Superior Court addresses these pretrial release issues on the merits, in conjunction with the parties to the state court criminal cases (of

8
Defs' Motion to Modify or Stay in Part Preliminary Injunction
Case No. 22-cv-05541-JST
n:\lit\li2024\230184\01738382.docx

which the SFSO is not one), the additional time for the Court to set hearings for original rules subclass members will diminish the need to present affidavit warrants to the Superior Court, to the benefit of PTEM Program participants in the original rules subclass, the public, the Superior Court, and the SFSO.

Plaintiffs provide only a brief opposition to a two-week stay (rather than modification to extend the time for compliance), with no citations. ECF No. 82 at 8. In this short discussion, they again clearly misrepresent the Motion in stating that the purpose of an extension is "to arrest 37 individuals" and "attempt an unlawful mass arrest" when the goal—as discussed above—is exactly the opposite. *Id.* An extension of this deadline is appropriate and should be granted.

### III. Conclusion

For the reasons above and in the Motion, the Court should (1) stay pending appeal its injunction to allow for sharing of GPS location data with other law enforcement agencies in active criminal investigations for PTEM Program participants who are subject to the revised admonitions, or alternatively, modify its injunction with respect to Program Rule 11 to account for the Superior Court's admonitions; and (2) modify or stay its injunction to allow for enforcement of the warrantless search condition as to individuals who have not yet received a revised EM Order until March 12, 2024.

Dated:  February 22, 2024                    Respectfully Submitted.

DAVID CHIU
City Attorney
JAMES F. HANNAWALT
Acting Chief Trial Deputy
ALEXANDER J. HOLTZMAN
JOSE A. ZELIDON-ZEPEDA
Deputy City Attorneys


By: _____*/s/ Alexander J. Holtzman*_____
        ALEXANDER J. HOLTZMAN

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF