Shilpi Agarwal, State Bar No. 270749
Avram D. Frey, State Bar No. 347885
Emi Young, State Bar No. 311238
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
Email: sagarwal@aclunc.org
afrey@aclunc.org
eyoung@aclunc.org

Justina K. Sessions, State Bar No. 270914
Eunice Leong, State Bar No. 320499
Olivia Rosen, State Bar No. 340120
FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com
eunice.leong@freshfields.com
olivia.rosen@freshfields.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>Defendants. | CASE NO.: 4:22-cv-05541-JST<br><br>(San Francisco County Superior Court, Case No.: CGC-22-601686)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Hon. Jon S. Tigar<br>Date: Sept. 12, 2024<br>Time: 2:00 p.m.<br>Dept: Courtroom 6<br>Trial Date: Not Set |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL DEVELOPMENTS ..................................................................................... 2

III. LEGAL STANDARD ..................................................................................................... 8

IV. ARGUMENT .................................................................................................................. 8

    a. The Sheriff has violated a specific and definite order of the Court. ................................. 8

    b. Further remedial orders or a finding of contempt are appropriate to prevent continued violation of the Order and illegal detention of EM releasees. .......................................... 10

V. CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armstrong v. Brown*,
  939 F. Supp. 2d 1012 (N.D. Cal. 2013) .................................................................................. 8

*Calvillo Manriquez v. Devos*,
  411 F. Supp. 3d 535 (N.D. Cal. 2019) .................................................................................. 11

*Foucha v. Louisiana*,
  504 U.S. 71 (1992) ................................................................................................................ 11

*Gerstein v. Pugh*,
  420 U.S. 103 ......................................................................................................................... 11

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) .................................................................................................. 10

*In re Humphrey*,
  11 Cal.5th 135 (2021) ........................................................................................................... 11

*Int'l Union, United Mine Works of Am. v. Bagwell*,
  512 U.S. 821 (1994) ............................................................................................................... 8

*In re Lafayette Radio Elec. Corp.*,
  761 F.2d 84 (2d Cir. 1985) ..................................................................................................... 8

*Nuscience Corp. v. Henkel*,
  2014 WL 12810112 (C.D. Cal. Feb. 12, 2014) .................................................................... 11

*Stone v. City & Cnty. of San Francisco*,
  968 F.2d 850 (9th Cir. 1992) .................................................................................................. 8

*Waffenschmidt v. MacKay*,
  763 F.2d 711 (5th Cir. 1985) .................................................................................................. 8

**Other Authorities**

Fed. R. Civ. P. 62(c) ..................................................................................................................... 8

**NOTICE OF MOTION AND MOTION TO ENFORCE PRELIMINARY INJUNCTION**

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Joshua Simon, David Barber, and Josue Bonilla ("Plaintiffs") on September 12, 2024 at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Jon S. Tigar in Courtroom 6, United States District Court for the Northern District of California, Oakland Courthouse, 2nd Floor, 1301 Clay Street, Oakland, CA 94612, shall, and hereby do, move for enforcement of the Court's preliminary injunction against the City and County of San Francisco and Sheriff Paul Miyamoto, in his official capacity.

Plaintiffs seek relief pursuant to the Court's inherent authority to effectuate and enforce compliance with its orders. *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (federal courts may issue all orders "necessary or appropriate to effectuate and prevent the frustration of orders"); *Armstrong v. Brown*, 939 F.Supp.2d 1012, 1018 (N.D. Cal. 2013) ("A district court has the authority to make an enforcement order to secure compliance with its earlier orders and governing law"). Plaintiffs' Motion is also brought pursuant to Federal Rules of Civil Procedure Rule 70.

This Motion is based upon this Notice of Motion and Motion to Enforce the Preliminary Injunction, the accompanying Memorandum of Points and Authorities, the Declaration of Sujung Kim in Support of the Motion and all exhibits and attachments thereto, the pleadings and papers on file in this action, and any oral and documentary evidence that may be presented at the hearing on this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Motion is brought to enforce the Court's preliminary injunction, which prohibits San Francisco Sheriff Paul Miyamoto ("Sheriff"), sued in his official capacity, "from imposing or enforcing any search condition broader than that stated in each class member's Superior Court order[.]" ECF 77 at 41. In its Memorandum Opinion, the Court cautioned the Sheriff not to leverage its administration of pretrial electronic monitoring ("EM") by threatening to deny release absent the Sheriff's preferred conditions. *Id.* at 37–38 (evidence that the Sheriff "disabled the Superior Court from making individualized determinations of the appropriate conditions of release. . . . increases the likelihood that Plaintiffs will be able to show [violation of constitutional rights]") (citing *In re York*, 9 Cal. 4th 1133, 1150–51 & n.10 (1995)). Yet the Sheriff is now doing exactly that. Specifically, the Sheriff is now detaining anyone ordered released on EM without a condition permitting warrantless searches of the releasee's person, property, vehicle, and home ("four-way search condition"), in direct contravention of the Superior Court's individualized release order. In so doing, the Sheriff is coercing the Superior Court to impose that condition in all cases, including cases in which the Superior Court found that condition unwarranted.

As detailed below, the Sheriff now asserts that as a matter of policy, it will not supervise release of anyone on EM absent court authorization to search their person, property, automobile, or home at any time, without a warrant or any degree of suspicion, even where the Superior Court determines that such release is appropriate. It has taken this position while explicitly acknowledging and disregarding this Court's preliminary injunction, positing that the Order was wrongly decided. To date, the Sheriff has held individuals ordered released on EM in jail for a collective 50 days pursuant to this policy. The Sheriff is thus constructively "imposing or enforcing [a] search condition broader than that stated in each class member's Superior Court order" in contravention of this Court's preliminary injunction. *Id.* at 41. Accordingly, Plaintiffs ask this Court to find the Sheriff's actions violate the preliminary

injunction and issue whatever orders the Court deems necessary to effectuate the injunction including, as necessary, a finding of contempt.

## II. FACTUAL DEVELOPMENTS

Since the Court issued its preliminary injunction on February 13, 2024, Plaintiffs are aware of six cases in which the Superior Court ordered a defendant released on EM *without* a four-way search condition executable by the Sheriff. In each case, the Sheriff refused to execute the order of release, instead relaying to the lawyers and Superior Court that it would not release the individuals without a four-way search condition. The Sheriff insists that, as a matter of policy, it is not releasing anyone on EM absent a four-way search condition, no matter the decision of the Superior Court. The facts concerning these six cases and the Sheriff's admission are as follows:

(1) <u>Ying Ng</u>

The Superior Court held a bond hearing for Ying Ng on March 12, 2024. Declaration of Sujung Kim in Support of Plaintiffs' Motion to Enforce Preliminary Injunction ("Kim Decl.") ¶ 3. At that time, the court determined that release on EM was proper. *Id.*, Ex. 1 at 5:4–5. The court then admonished Mr. Ng:

> Defendant shall submit to a search of their person, property and home at any time by San Francisco Sheriff's sworn staff or any peace officer acting on behalf of and with the express permission of the San Francisco Sheriff's Office.

*Id.* at 6:23–27. Thereafter, however, the court asked, "did I admonish him on the search condition?" before clarifying, "I didn't mean to do that. There is no search condition. The Court is not finding a warrantless search condition based on the facts of this case." *Id.* at 7:21–25. At the conclusion of the hearing, the court ordered Mr. Ng released after striking the four-way search condition. Kim Decl., Ex. 2.

On March 15, 2024, the District Attorney ("DA") on the matter emailed Mr. Ng's counsel at the San Francisco Public Defender's Office ("PDs") to say that he "was informed by the S.F Sheriff's Department that your client, Mr. Ying Hop Ng, is still in custody. . . . because . . . . Judge Fleming did not include a warrantless search condition in his order for release on

electronic monitoring." Kim Decl., Ex. 3 at 9. In subsequent communications between the PDs and the Sheriff, counsel for the Sheriff Rani Singh wrote:

> At this juncture the SFSO cannot effectuate an HD [home detention] order without the search condition even if the court determines the search is limited to SFSO only, which is certainly an option. In order to set up the very program the court has ordered and do compliance checks as a condition if EM the SFSO needs to be able to enter the residence. That in itself necessitates a warranties [*sic*] search clause so that we do not violate participants' rights. . . . The court had and still has several options. They can OR [release on own recognizance] the defendant, place him on ACM [assertive case management], order HD EM with a SFS0 only search or any combination of the above.

*Id*. at 6–7. When the PDs responded that Mr. Ng was not in fact ordered released on home detention, Ms. Singh answered:

> If EM with a monitor will be affixed the SFSO will have to enter the home correct? I also assume compliance checks will be part of his EM as well based on the history on this case and his unknown whereabouts for a decade. So if that is the case how would we effectuate that without a warrantless search to enter the home or encounter the client for non compliance interaction and possible search. Again, these are questions that ultimately should be discussed and the court has a plethora of options for release that don't include EM.

*Id*. at 6. Ms. Singh and Sujung Kim of the PDs then exchanged text messages. Kim Decl. ¶ 6. After Ms. Kim stated that the Sheriff's "rationale would apply to every EM case" and the "point of [Judge] Tigar's injunction order is that it can't be applied on a blanket basis," Ms. Singh responded:

> Then how is 4 th amendment not violated if we need to go into the home? . . . And you are assuming Tigar's injunction first is correctly rooted and second that it will be upheld. That being said the court have choices and if they don't want EM then they should not order it. . . . A private EM can go in someone's house no fourth amendment issue.

Kim Decl., Ex. 4 at 4–5. Although Ms. Singh's response appeared to reference the Sheriff's appeal of the preliminary injunction order, ECF 85, the Sheriff has not challenged the provisions of the preliminary injunction relating to search conditions (Program Rule 5) in its appeal. Opening Br. at 5, *Simon v. City and County of San Francisco*, No. 24-1025 (9th Cir. Mar. 30, 2024), D.E. 23.1.

On March 22, 2024, Mr. Ng appeared again before the Superior Court. The Superior Court then ordered Mr. Ng released on EM with a four-way search condition "until the Court makes a final ruling as to whether or not he's to remain on search condition after I receive briefing from everyone." Kim Decl., Ex. 5 at 6:23–26. Mr. Ng was ultimately released by the Sheriff on March 25. Kim Decl. ¶ 8 & Ex. 6. He spent 13 days in jail after the Superior Court initially ordered release without a search condition. Kim Decl. ¶ 8.

(2) José Chávez

The Superior Court held a bond hearing for José Chávez on March 19, 2024. *Id*. at ¶ 9. The court ordered release on EM. Kim Decl., Ex. 7 at 6:25–26. The court then asked counsel to approach and asked, "You guys notice this litigation (indiscernible)?" *Id.* at 7:27–28. The court continued:

> I'm willing to strike these types of conditions. I'm really just enforcing the stay away, it's not like—I don't need 1035. . . .
> . . . .
> I don't know if that's going to raise release [*sic*]? I've heard cases kind of third hand that if I strike it on the form, the Sheriffs won't accept it and it comes back.
> . . . .
> So some judges have been striking this language and sometimes it goes through and sometimes it get[s] rejected . . . . So I'll leave that up to you what you want me to do. I'm not ordering it. I need to strike it from the form.

*Id.* at 8:2–4, 6–9, 16–20. "1035" is a reference to a four-way search condition. Kim Decl. ¶ 2. The court then entered an order of release on EM without the four-way search condition. *Id.*, Ex. 8. The Sheriff did not release Mr. Chávez in response to this order. Kim Decl. ¶ 11.

On March 27, 2024 the Superior Court held a further hearing concerning Mr. Chávez. *Id*. Counsel from the PDs stated that the case was calendared because the Sheriff had not released Mr. Chávez in response to the court's order; counsel asked the court to "order the Sheriff to show cause of why it shouldn't be held in contempt and for holding this person for nine days in violation of this Court's order." *Id.*, Ex. 9 at 3:4–7. The court stated:

> I've had a subsequent conversation with the Sheriff's Department. My understanding is they have a position that they cannot, for officer safety and program reasons, accept people without the 1035. . . . I understand this is up for litigation.

1  *Id.* at 3:9–15. In response to a renewed request for an order to show cause by defense counsel,

2  the court stated:

3  > I don't think the Sheriff is under the jurisdiction of the Court. . . . So I
4  > don't think this Court has any authority to order the Sheriff's—but that's subject to larger litigation at this point.

5  *Id.* at 3:23–4:3. The court then concluded:

6  > Mr. Chávez, over your attorney's legal objections, I am now imposing the
7  > search condition I had previously said that I would not impose the search condition [*sic*] because I'm mostly interested in having you stay away
8  > from this area. But this is a requirement under the Sheriff's program and so you have to agree to the search condition despite your legal objections
9  > if you want to participate in this program.

10  *Id.* at 6:4–11. Mr. Chávez was released by the Sheriff that same day. *Id.*, Ex. 10. He spent eight

11  days in jail following the Superior Court's initial decision to release him on EM absent a four-

12  way search condition. Kim Decl. ¶ 13.

13      (3) <u>Otis Mason</u>

14      The Superior Court held a bond hearing for Otis Mason on March 21, 2024. *Id.* ¶ 14.

15  The court ordered release on EM, adding "I'm striking the 1035 order on the Sheriff's sheet."

16  *Id.*, Ex. 11 at 23:9. The court then signed a form order imposing release on EM without a four-

17  way search condition. *Id.*, Ex. 12. The Sheriff did not release Mr. Mason in response to this

18  order. Kim Decl. ¶ 16. Mr. Mason remained detained until April 4, 2024—14 days after the

19  Superior Court's initial order—when he was released after he resolved his criminal charges for

20  a credit for time served sentence. *Id.* & Ex. 13.

21      (4) <u>Nathaniel Roye</u>

22      The Superior Court held a bond hearing for Nathaniel Roye on March 26, 2024. Kim

23  Decl. ¶ 17. At the hearing, the court stated that it would be inclined to order release on EM,

24  then added:

25  > I would not necessarily impose search conditions in this case as a Court
26  > order, but the sheriff's department's position is that they will only accept GPS referrals with the search condition in place.
27  > . . . .
> I'm willing to strike it [the four-way search condition]. It would end up, I think, meaning he would stay in custody because the sheriffs won't accept
28  > him under the program.

1    *Id.*, Ex. 14 at 4:3–11, 19–22. In response to an objection from defense counsel, the court

2    explained:

> The alternatives I have before me are I can release him with a search condition. I can refer him to ICR [in-custody review]. Those are the two that I'm considering. If you want me to strike the 1035, and you can take a writ and appeal that, I'm willing to do that. I wouldn't normally. As I've said on the record, this isn't a case—I want to enforce the stay away order. There's no weapon here that I'm concerned about. So I'm not imposing a search condition as a court order. I can't control what the sheriff does with their program.

8    *Id.* at 6:22–7:2. In response to continued objection, the court stated:

> I have given you the options. I think I'm defaulting right now to ordering ICR to see if there can be a plan developed for his release. If he got placement somewhere else, I think that could satisfy the Court as a different way to satisfy enforcement of the stay away order.

12   *Id.* at 7:20–25. Mr. Roye ultimately submitted to the Sheriff's four-way search requirement to

13   obtain release and was released on March 27, 2024, one day after the Superior Court indicated

14   its desire to release him absent a four-way search condition. Kim Decl. ¶ 19 & Ex. 15.

15      (5) <u>Luis Rosales Verde</u>

16        The Superior Court held a bond hearing for Luis Rosales Verde on April 17, 2024. Kim

17   Decl. ¶ 20. At that time, the court indicated its intention to order release on EM and stated:

> I'm not separately ordering a Court 1035, but I would indicate to Mr. Rosales Verdes that, if he wants to participate in the sheriff's program, they do require him to submit his person, his residence, his vehicle, any area under his control to a search at any time of the day or night, with or without a warrant, with or without his consent, with or without reasonable suspicion of probable cause.

21   Kim Decl., Ex. 16 at 6:4–10. In response to defense objection, the court stated, "I'd be happy to

22   strike the language on the form if you want," *id.* at 7–16, but counsel declined, stating, "we

23   know where that ends with Mr. Rosales Verde staying in custody," *id.* at 18–19. The court then

24   ordered release on EM without striking the four-way search condition. Kim Decl., Ex. 17.

25      (6) <u>Jackson Vandeusen</u>

26        The Superior Court held a bond hearing for Jackson Vandeusen on May 16, 2024. Kim

27   Decl. ¶ 22. At the hearing, Mr. Vandeusen was ordered released on EM without a search

28

condition. *Id.*, Ex. 18. The Sheriff did not release Mr. Vandeusen in accordance with this order. Kim Decl. ¶ 23.

On May 17, 2024, a representative of the Sheriff emailed the court clerk that the minute order in Mr. Vandeusen's case stated "Search Conditions are not Imposed." Kim Decl., Ex. 19 at 5. The representative added:

> [W]e will need the minute order corrected allowing a warrantless search condition by at least the SF Sheriff's Office covering the person, vehicle, property, and home of the defendant, for him to participate in the SFSO PTEM program. This will avoid violating the defendants Fourth Amendment rights while on supervised release.

*Id.* In a subsequent email that day, Sheriff's counsel Rani Singh elaborated:

> The court can change its order to OR for the defendant if they do not feel he needs the supervision required under our EM program guidelines. The court can also order ACM in the alternative without EM. The court can also order EM with 10-35 SFSO only which limits other law enforcement from Engaging in a search. But as SFSO has made it clear we are not able to effectively supervise someone on EM without the ability to do compliance checks etc which may necessitate basic 10-35 allowances.

*Id.* at 2.

On May 20, the Superior Court held a hearing in Mr. Vandeusen's case to address his continued detention. Kim Decl. ¶ 24. At this hearing, the court stated, "[t]he program that conducts the electronic monitoring does not want to monitor Mr. Vandeusen unless there is what is called a 1035 search condition." Kim Decl., Ex. 20 at 3:19–21. Defense counsel argued that Mr. Vandeusen had by then been unlawfully detained four days in violation of the Superior Court's order and this Court's preliminary injunction; counsel asked for an order to show cause as to why the Sheriff should be held in contempt. *Id.* at 3:1–21, 5:7–16. The Superior Court stated that it did not consider the Sheriff's policy "unreasonable" and so would not issue an order to show cause, but in any event, the court "relieve[d] Mr. Vandeusen of his electronic monitoring condition" and directed that he be released to a drug treatment program as previously ordered. *Id.* at 7:15–18. Mr. Vandeusen was released on May 30, 2024, and spent 14 days in jail beyond the court's initial order of release on EM without a four-way search condition. Kim Decl. ¶ 25 & Ex. 21.

## III. LEGAL STANDARD

A district court has inherent authority to make orders to "secure compliance with its earlier orders and governing law." *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1018 (N.D. Cal. 2013); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees."); *In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 93 (2d Cir. 1985) ("[A]ncillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity"). Absent a stay, the district court retains jurisdiction to enforce a preliminary injunction while an appeal is pending. Fed. R. Civ. P. 62(c).

"A district court also has the inherent authority to enforce compliance with its orders through a civil contempt proceeding." *Armstrong*, 939 F. Supp. 2d at 1018. On a motion to enforce a district court's order, the court "has 'wide latitude in determining whether there has been a contemptuous [defiance] of its order.'" *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (quoting *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984)); *Int'l Union, United Mine Works of Am. v. Bagwell*, 512 U.S. 821, 826 (1994) ("[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.").

## IV. ARGUMENT

### a. The Sheriff has violated a specific and definite order of the Court.

In issuing its preliminary injunction, this Court directed the Sheriff to cease "imposing or enforcing any search condition broader than that stated in each class member's Superior Court order[.]" ECF 77 at 41. This Order protects all persons who have in the past been, are currently, or will in the future be subject to the EM Program Rules as revised in May 2023 ("revised rules subclass"), *id.* at 27, 41, and was based on a showing that the Sheriff likely "impermissibly impos[es] its own intrusive conditions of release upon class members on a blanket basis without individualized assessment of their necessity by a neutral decision maker"

and "disabled the Superior Court from making individualized determinations of the appropriate conditions of release." *Id*. at 37–38.

Despite the clarity of this Order and its underlying rationale, the Sheriff has defied and attempted to undermine the Court's directive at every turn. On March 19, 2024, Defendants filed a declaration signed by Undersheriff Katherine Johnson representing compliance with the preliminary injunction and indicating that the Sheriff was "not enforcing a search condition" for EM participants who did not have a court-ordered search condition. ECF 98 at ¶¶ 4, 6–7, 12. At the same time, however, the Sheriff had already begun detaining persons the Superior Court ordered released on EM without a search clause, insisting—despite the Superior Court's determination otherwise—that such a condition was necessary.[1] Kim Decl. ¶¶ 3–6. Indeed, when confronted with the inconsistency between the Sheriff's actions and this Court's preliminary injunction, counsel for the Sheriff responded by questioning the legal validity of this Court's Order, stating "you are assuming Tigar's injunction first is correctly rooted and second that it will be upheld." Kim Decl., Ex. 4 at 4–5.

Thus, the Sheriff is complying with the Order only as to class members already supervised on EM at the time the preliminary injunction was issued. But for EM participants released since the Order was issued, the Sheriff is detaining persons ordered released without a search condition in an attempt to force the Superior Court's hand and avoid the Order altogether. Such actions are plainly inconsistent with this Court's preliminary injunction, not to mention the Sheriff's duty to carry out individualized release orders issued by the Superior Court. *See* ECF 24 at 22 (representing the Sheriff acts as an agent of the state court "for purposes of implementing the court's orders regarding conditions of pretrial of release"). Moreover, they indicate the Sheriff is continuing to mandate warrantless search authority as a condition of EM release in *every* case, even where the Superior Court explicitly determines the condition is unnecessary.

---

[1] The Sheriff's claim of necessity is belied not just by the Superior Court's determination, but also by its continued supervision of a sub-class of releasees who were already on EM at the time the preliminary injunction issued and for whom operation of Rule 5 was enjoined. *See* ECF 98.

By refusing to execute the Superior Court's EM release orders and detaining people who are ordered released without a search condition, the Sheriff is compelling the Superior Court to impose a search clause or otherwise modify its release conditions simply to effectuate its orders of release, as ultimately occurred in the cases of Ng, Chávez, Roye, Rosales Verde, and Vandeusen. In four of these cases—Ng, Chávez, Roye, and Rosales Verde—the Sheriff's policy resulted in class members being released on EM with a search condition broader than that determined necessary by the Superior Court based on an individualized assessment of the least restrictive conditions of release. Kim Decl. ¶¶ 7, 12, 18–19, 21. Accordingly, the Sheriff's coercive actions amount to a flagrant violation of the Court's Order not to "impose or enforce" such conditions where not originally ordered by the Superior Court, and demonstrate that Defendants are continuing to "disable[] the Superior Court from making individualized determinations" of appropriate conditions of release. *See* ECF 77 at 37.

    b.    Further remedial orders or a finding of contempt are appropriate to prevent continued violation of the Order and illegal detention of EM releasees.

The Sheriff's statements defending its refusal to carry out EM release orders where the Superior Court determines a search condition is unnecessary demonstrate that it has failed to take "all reasonable steps within its power to comply" with this Court's Order. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). Indeed, the correspondence between the San Francisco Public Defender, the Superior Court, and legal counsel for the Sheriff over a period of months indicate that the Sheriff developed and enforced its policy requiring the Superior Court to order a search condition for all people released on EM knowing that this position conflicted with the Order. Kim Decl., Ex. 3, 4, 19. At no point did the Sheriff request clarification of the effect of the preliminary injunction or even inform this Court of its new policy to detain people ordered released on EM unless and until a search condition was imposed.

Meanwhile, the Sheriff's detention of individuals despite the Superior Court's order of release has resulted in at least six people being illegally detained for a total of 50 days. This situation is not tenable. As extensively briefed with the motion for a preliminary injunction,

1  under state and federal law, the Sheriff cannot unilaterally determine the conditions necessary

2  to justify pretrial detention, much less override a judicial determination of release: to lawfully

3  detain an arrestee pre-trial, "*a court* must first find by clear and convincing evidence that no

4  condition [of release] short of detention could suffice and then ensure the detention otherwise

5  complies with statutory and constitutional requirements." *In re Humphrey*, 11 Cal.5th 135, 143

6  (2021) (emphasis added); *see also Gerstein v. Pugh*, 420 U.S. 103, 114 ("[T]he detached

7  judgment of a neutral magistrate is essential…to furnish meaningful protection from unfounded

8  interference with liberty."). That class members have been, and will continue to be, detained

9  due to the Sheriff's intransigence and refusal to comply with the Court's Order implicates a

10 serious violation of their liberty interests, as "freedom from bodily restraint has always been at

11 the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71,

12 80 (1992). The seriousness of this invasion warrants a commensurately significant response.

13 *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 540 (N.D. Cal. 2019) ("In considering what

14 sanctions are justified, "[t]he private or public rights that the decree sought to protect are an

15 important measure of the remedy.""). A finding of contempt and imposition of sanctions are

16 therefore appropriate. At the very least, this Court should order the Sheriff to show cause as to

17 why it should not be held in contempt or otherwise sanctioned for blatantly violating this

18 Court's preliminary injunction. *See Nuscience Corporation v. Henkel*, 2014 WL 12810112, at

19 *2 (C.D. Cal. Feb. 12, 2014) (district court may issue an order to show cause on basis of

20 plaintiff's representations regarding non-compliance with injunction).

21 **V.      CONCLUSION**

22       For the foregoing reasons, Plaintiffs respectfully request that the Court find Defendants

23 have violated the preliminary injunction and issue whatever remedial orders and sanctions it

24 deems necessary and appropriate.

25

26 Dated: June 28, 2024              */s/ Emi Young*
                                    Shilpi Agarwal, State Bar No. 270749
27                                  Avram D. Frey, State Bar No. 347885
                                    Emi Young, State Bar No. 311238
28

| | |
|---|---|
| 1 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC. |
| 2 | 39 Drumm Street |
| 3 | San Francisco, CA 94111<br>Telephone: (415) 621-2493 |
| 4 | Facsimile: (415) 255-1478<br>Email: sagarwal@aclunc.org |
| 5 | afrey@aclunc.org<br>eyoung@aclunc.org |
| 6 | /s/ Eunice Leong |
| 7 | Justina K. Sessions, State Bar No. 270914<br>Eunice Leong, State Bar No. 320499 |
| 8 | Olivia Rosen, State Bar No. 340120 |
| 9 | FRESHFIELDS BRUCKHAUS DERINGER US LLP |
| 10 | 855 Main Street |
| 11 | Redwood City, CA 94063<br>Telephone: (650) 618-9250 |
| 12 | Email: justina.sessions@freshfields.com<br>eunice.leong@freshfields.com |
| 13 | olivia.rosen@freshfields.com |
| 14 | *Attorneys for Plaintiffs* |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest under penalty of perjury that the signatories above have concurred in the filing of this document.

                         */s/ Eunice Leong*
                         Eunice Leong