# EXHIBIT 7

```
 1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                   FOR THE COUNTY OF SAN FRANCISCO
 3              BEFORE THE HONORABLE VICTOR HWANG, JUDGE
 4                            DEPARTMENT 17
 5                               -o0o-
 6   PEOPLE OF CALIFORNIA,          )
                                    )
 7        Plaintiff,                )
                                    )
 8   vs.                            )  CASE NO. 24003973
                                    )
 9   JOSÉ RENÉ CHÁVEZ,              )
                                    )
10        Defendant.                )
                                    )
11   _____
12
                         TRANSCRIPT OF PROCEEDINGS
13
                        RECEIPT OF IN CUSTODY REVIEW
14
                       VOLUME 1 OF 2 - PAGES 1 - 12
15
                              MARCH 19, 2024
16
17   APPEARANCES:
18   FOR THE PEOPLE:            ALBERT UJCIC, ESQ.
                                San Francisco District Attorney
19                              350 Rhode Island Street
                                North Building 300 N
20                              San Francisco, CA 94103
21
     FOR THE DEFENDANT:         CHARLIE DICKSON, ESQ.
22                              San Francisco Public Defender
                                Office
23                              555 7th Street
                                San Francisco, CA 94103
24
25   ALSO PRESENT:
26   David Shafer, Spanish Interpreter
27   TRANSCRIBED BY:            KHALEELAH GANTT
28
```



```
 1            SAN FRANCISCO, CALIFORNIA - TUESDAY, 19 MARCH 2024
 2                          MORNING SESSION
 3                    (PROCEEDINGS IN OPEN COURT)
 4            (Call to order at 9:36 a.m.)
 5            THE COURT:  Numbers --
 6            THE CLERK:  52 and 54 of the main calendar.
 7            THE COURT:  -- 52 and 54 of the main calendar are
 8   the matters of Mr. Chavez, he's present in custody.
 9            May I have appearances of counsel and our
10   interpreter?
11            MR. UJCIC:  Albert Ujcic for the People, Your Honor.
12            MR. DICKSON:  Charlie Dickson, deputy public
13   defender attorney, here with Mr. Chavez.  He's seated beside
14   me present in custody, being assisted by the Spanish language
15   interpreter.
16            THE INTERPRETER:  David Shafer, Spanish interpreter,
17   certification number 301558.
18            THE COURT:  Thank you.  It's on for receipt of the
19   in custody review, they're indicating that they're not able to
20   work with him, he needs a higher level of care.
21            MR. DICKSON:  And Your Honor, at this point, I don't
22   know -- I guess I don't really know what ACM/ICR does, how
23   they -- it seems that they always come back with our in
24   custody clients and they need a higher level of care.  To me,
25   it's disturbing because Mr. Chavez is here on relatively minor
26   charges.  It's 166, his newer case is a 166 and a dirk.  As
27   the Court knows, in the previous 991, I brought at arraignment
28   on that, it's a small knife that the Court was considering
```

1  whether or not it even was a dirk.  We don't need to revisit
2  that, that's done, but it's not an egregious weapon.  There
3  was no brandishing or nothing like that.  Obviously someone
4  who lives on the streets would need some type of cutting thing
5  to make food or prepare shelter, whatever else you need a
6  knife for.
7          So we have here a gentleman who I think can listen
8  to a court order, I've admonished him.  It's kind of confusing
9  in his position understanding what the Court order is saying
10 because it's to stay off an entire block.  And I think he
11 understands now, especially after this period of
12 incarceration.  Furthermore, he's telling me that he would
13 abide by the electronic monitor would the Court put him back
14 on it.  He understands that the last time he was not
15 successful, he apologizes and he wishes for another chance to
16 do that.
17         Also, Your Honor, I think these cases, they're
18 diversion eligible -- well, the new case.  I think the MTR, he
19 could admit a violation, he served a decent amount of
20 custodial time now.  The other charges that are diversion
21 eligible, I think he's a great diversion candidate.  He has
22 collateral consequences and I think that he can abide by terms
23 the Court sets in terms of diversion, chiefly being to stay
24 off that block of Bartlett Street.
25         THE COURT:  People have a position?
26         MR. UJCIC:  This is ADA Ahmanda Lee's case, based on
27 the facts that I have before me, Your Honor, I would be
28 opposed to diversion, but not opposed to reinstating the

1  electronic monitoring and putting this off for a future date
2  to see if we could come to a negotiated disposition after
3  Ahmanda Lee is present or can speak with Mr. Dickson.
4            MR. DICKSON:  And that's why I'm asking for court
5  diversion.  I understand people are busy, don't know where Ms.
6  Lee is, that's okay she's not here, but I'd like to be able to
7  shop this with the Court and with the parties and it would be
8  great if we could resolve this for diversion today.
9            THE COURT:  I don't have the PSA from the newest
10 case.  I have a vague recollection of it.
11           MR. DICKSON:  He was found sleeping and this time
12 there was no -- the misconduct is really he's just -- the
13 formal violation of the court order alleged and the dirk is a
14 secondary thing that was found incident to arrest.
15           THE COURT:  I would divert him for three months with
16 the ankle monitor.  I take the ankle monitor off if he shows
17 me that he has found housing elsewhere.  But until and unless
18 he has some place to be, even if it's navigation center, I
19 would keep the ankle monitor on to enforce the stay away.  I
20 would order him to possess no weapons and obviously pick up
21 new cases.
22           MR. UJCIC:  The People would have no objections to
23 those terms, Your Honor.
24           THE COURT:  Can we pass it while you talk with him?
25           MR. DICKSON:  Thank you, Your Honor, appreciate it.
26       (Recess at 9:41 a.m., recommencing at 10:05 a.m.)
27           THE COURT:  Okay.  Recalling lines 52 and 54, in the
28 matters of Jose Chavez.  I'm going to pause because I think he

1  needs an interpreter as well.
2           MR. DICKSON:  He does.  Just about ready to have
3  that.  All right.
4           THE COURT:  All right.  Can I get appearances again?
5           MR. UJCIC:  Albert Ujcic for the People.
6           MR. DICKSON:  Charlie Dickson, public defender
7  attorney.  My client's seated beside me present in custody,
8  being assisted by a Spanish language interpreter.
9           And Your Honor, I did discuss Court diversion, he's
10 amenable to it on those terms.  I also wanted to address the
11 MTR.  I believe we'd be prepared to move forward with the MTR
12 matter.  My proposition would be an admission to a violation
13 of the law based on my independent investigation.  I'm
14 wondering if the Court would consider putting him back on
15 probation, original terms and conditions.  And then I would
16 ask if we could waive the credits he's accumulated.  And then
17 that way we could get the MTR resolved and then he would be on
18 court diversion and we could proceed like that.  That's my
19 proposition.
20          THE COURT:  Any opposition by the People?
21          MR. UJCIC:  One moment, Your Honor, we're just
22 trying to look up the report regarding probation.
23          THE COURT:  In essence, you're just saying reinstate
24 him on the same terms and conditions, no credits at this time?
25          MR. DICKSON:  Yes.
26          THE COURT:  The same termination date.
27          MR. DICKSON:  Yeah.  And then the termination would
28 just be, I guess whatever revoked time he's been in and

1  just -- or we could keep the original.
2              THE COURT: I'll just keep the original.
3              MR. DICKSON: Yeah. And he would be admitting it.
4              THE COURT: I don't even know if he needs to admit
5  it, I could just reinstate him.
6              MR. DICKSON: That's preferable.
7              MR. UJCIC: The People are not opposed, Your Honor.
8              THE COURT: All right. So as to line 54 on which
9  he's on probation, I'm going to reinstate Mr. Chavez on the
10 same terms and conditions of probation. I'm going to leave
11 the termination date the same, September 8th of 2024. He's
12 released OR on that matter.
13             In the matter at line 52 --
14             MR. DICKSON: And Your Honor, regarding that, we
15 would like to waive any credits pursuant to my conversations
16 with my office and her. Collateral reasons, the newest
17 accumulation is 14 days.
18             THE COURT: Okay. I won't give him any credits
19 on -- waive 14 days of credit.
20             THE INTERPRETER: Is that permanently?
21 (Indiscernible).
22             MR. DICKSON: I think it's waived for all purposes.
23             THE COURT: Waived for all purposes. At line 52,
24 I'm going to grant Mr. Chavez a period of diversion for three
25 months. I am going to put him on electronic monitoring GPS as
26 a condition of the diversion. I'm going to order that you
27 abide by the stay away order. I think we need a new stay away
28 order because it has to be attached to the GPS order.

```
 1              MR. UJCIC:  Okay.  We'll follow-up on that right
 2   now, Your Honor.
 3              THE COURT:  I keep getting emails from the Sheriff's
 4   Department if I say enforce the stay away but there's no stay
 5   away order attached.  I'm going to order him to possess no
 6   unlawful weapons.
 7              And Mr. Chavez, I'm going to let your -- if you find
 8   some kind of housing and support away from this area and you
 9   get settled, your attorney can bring a motion and I'll
10   terminate the electronic monitoring as long as you have shown
11   me that you have found some other place to stay.
12              THE CLERK:  Is this a general time waiver?
13              THE COURT:  It's a diversion, court diversion,
14   general time waiver --
15              MR. DICKSON:  Yeah.
16              THE CLERK:  And vacate all future dates?
17              THE COURT:  Vacate all future dates.
18              MR. DICKSON:  Thank you.
19              THE COURT:  Yeah.  And we should set a termination
20   date, June 20th, right?
21              THE CLERK:  June 20th, yeah.
22              THE COURT:  Mr. Dickson, let me ask counsel to
23   approach real quick.
24              MR. DICKSON:  Yes.
25         (Sidebar begins at 10:10 a.m.)
26              THE COURT:  So there's something I've got to
27   (indiscernible).  You guys notice this litigation
28   (indiscernible)?
```



| | |
|---|---|
| 1 | MR. DICKSON:  Yes. |
| 2 | THE COURT:  So I'm willing to strike these types of |
| 3 | conditions.  I'm really just enforcing the stay away, it's not |
| 4 | like -- I don't need 1035, the fact that it's -- |
| 5 | MR. DICKSON:  Cool. |
| 6 | THE COURT:  I don't know if that's going to raise |
| 7 | release?  I've heard cases kind of third hand that if I strike |
| 8 | it on the form, the Sheriffs won't accept it and it comes |
| 9 | back. |
| 10 | MR. DICKSON:  Is he on -- I think he's on search and |
| 11 | seizure. |
| 12 | THE COURT:  I'm just thinking, you know what the |
| 13 | normal things that you say -- the only thing I really need to |
| 14 | strike here is really the search and seizure, I suppose. |
| 15 | Well, actually, no -- you take a look at it and see.  There's |
| 16 | all this stuff here, right.  So some judges have been striking |
| 17 | this language and sometimes it goes through and sometimes it |
| 18 | get rejected and (indiscernible) -- GPS.  So I'll leave that |
| 19 | up to you what you want me to do.  I'm not ordering it, I need |
| 20 | to strike it from the form. |
| 21 | MR. DICKSON:  I think it should be stricken, what |
| 22 | I'm going to do is I'll instruct my client firmly.  And then |
| 23 | if there's any issues, we could calendar it and then -- |
| 24 | THE COURT:  I don't know if that's (indiscernible) |
| 25 | couple of days is the question.  It's up to you, I'm not |
| 26 | imposing it, not the type of case I would impose it on.  I'm |
| 27 | just -- I don't think that actually -- theoretical exercises, |
| 28 | I'm just telling you what I have heard anecdotally and I |

1   (indiscernible) back.  If the Sheriffs are declining it --
2   there was one or two judges that indicated that it maybe got
3   declined.
4           MR. DICKSON:  I appreciate that, but I don't want
5   him on that.
6           THE COURT:  So this part can be stricken, this
7   search part --
8           MR. DICKSON:  Uh-huh.
9           THE COURT:  -- the bail requirement, these parts are
10  okay, I think.  The other question -- the other thing I've
11  heard is that he's signing an official form and then giving it
12  back that contains all of the language.
13          MR. DICKSON:  I think my client would probably
14  appreciate if we could strike out that (indiscernible) --
15          THE COURT:  It's really just that whole section on
16  search.  I don't think the other stuff is what I see
17  equipment.
18          MR. DICKSON:  Those are search conditions, I mean
19  the People are not opposed to striking it, just don't want to
20  delay it -- would not be ideal.  Yeah, no for sure, I hear you
21  loud and clear.  I think we should strike it and then what I'm
22  going to do is put a reminder in my calendar to make sure he's
23  out by like Thursday.  Yeah, okay, well then by tomorrow I'll
24  put it in my calendar to make sure he's released.
25          THE COURT:  Again, just more of a theoretical thing
26  I think.
27          MR. DICKSON:  I think it's important from our aspect
28  to push back.  And then I appreciate the Court's concern.

```
 1              THE COURT:  Yeah, that's no debate, but I'll strike
 2   it.
 3              MR. DICKSON:  Thank you.
 4              THE COURT:  Okay.
 5              MR. DICKSON:  Thank you, yeah, yep, thanks.
 6        (Sidebar ends at 10:13 a.m.)
 7              THE COURT:  Do we have the other stay away?
 8              MR. UJCIC:  Yes, Your Honor, I have that right here.
 9              THE COURT:  All right.
10              MR. UJCIC:  Showing it to Defense counsel.  The
11   address?
12              MR. DICKSON:  Yeah.  Yeah, cool.  Thank you.
13              THE COURT:  And I think we need to attach that to
14   this form is what I've been told.  Can you (indiscernible)
15   that stapled to the back of this.
16              MR. DICKSON:  Do you know which copy?
17              THE COURT:  I don't know, but they --
18              MR. DICKSON:  His copy though, he signed it, he took
19   a copy.
20              THE COURT:  Maybe we staple them all together, I
21   don't know.  Somehow this has to get attached to that, that's
22   what they want.
23              THE CLERK:  (Indiscernible) copy of it so I can --
24              MR. DICKSON:  Okay.
25              MR. UJCIC:  The record will reflect counsel provided
26   copies of the stay away order.
27              THE COURT:  All right.  And we set a future date of
28   June 20th.  I'm going to order him present because we're going
```

1  to need him to come back to return the equipment.  If it's
2  modified in the meantime, I'll waive his appearance for the
3  June 20th date.
4          MR. DICKSON:  Okay.
5          THE COURT:  All right.
6       (Proceedings adjourned at 10:15 a.m., recommencing in
7  Volume 2)
8                       * * * * *



CERTIFICATION

1
2
3   I, KHALEELAH GANTT, a court-approved transcriber, do
4 hereby certify that the foregoing transcript, pages 1 through
5 12, is a correct transcript from the official electronic sound
6 recording of the proceedings in the above entitled matter, to
7 the best of my professional skills and abilities.

*Khaleelah Gantt*

_____
Khaleelah Gantt CDLT-285                          April 10, 2024
Digital Court Transcriber