# EXHIBIT 11

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2      FOR THE COUNTY OF SAN FRANCISCO

3    BEFORE THE HONORABLE VICTOR HWANG, JUDGE

4       DEPARTMENT 17

5        -o0o-

6 PEOPLE OF THE STATE OF  )

7 CALIFORNIA,      )
          )

8   People,     )
          ) CASE NO. 24000529

9 vs.        )
          )

10 OTIS MASON,     )
          )

11   Defendant.   )

12 _____

13     TRANSCRIPT OF PROCEEDINGS

14      PRE-TRIAL HEARING

15    VOLUME 1 OF 1 - PAGES 1 - 24

16      MARCH 21, 2024

17

18 APPEARANCES:

19 FOR THE PEOPLE:    ASHLEY N. LEE, ESQ.
          San Francisco District

20          Attorney's Office
          350 Rhode Island Street North

21          Building, Suite 400N
          San Francisco, CA 94103

22

23 FOR THE DEFENDANT:   CHARLES R. DICKSON, ESQ.
          San Francisco Public Defender

24          555 7th Street
          San Francisco, CA 94103

25

26 TRANSCRIBED BY:    AUBREY A. HASLOW

27

28



INDEX - VOLUME 1 - (Pages 1 - 24)

SESSIONS

PAGE

MARCH 21, 2024
    MORNING SESSION                                  3
    AFTERNOON SESSION                              4

-o0o-

1          SAN FRANCISCO, CALIFORNIA - THURSDAY, 21 MARCH 2024

2                        MORNING SESSION

3                  (PROCEEDINGS IN OPEN COURT)

4      (Call to order at 11:42 a.m.)

5          THE COURT:  All right.  Do we have Mr. Mason?

6          MR. DICKSON:  Yeah.  He's in custody.

7          THE BAILIFF:  I think he's going back.

8          THE COURT:  Oh.

9          THE BAILIFF:  Somebody walked him out the door.

10          THE COURT:  All right.  We'll handle both of them at

11  1:30, then.

12      (Recess at 11:42 a.m., recommencing at 1:51 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1          SAN FRANCISCO, CALIFORNIA - THURSDAY, 21 MARCH 2024

2                        AFTERNOON SESSION

3                   (PROCEEDINGS IN OPEN COURT)

4          (Call to order at 1:51 p.m.)

5          MR. DICKSON:  Your Honor, Charlie Dickson, public

6   defender.

7          THE COURT:  Let's call the matter for the record.

8          MR. DICKSON:  Yes.

9          THE COURT:  This is Mr. Otis Williams (sic) --

10         THE CLERK:  On (indiscernible) calendar?

11         THE COURT:  -- on our continuance calendar, lines 1

12   and 2.  He's present, in custody.

13         Can we have appearances of counsel?

14         MS. LEE:  Ashley Lee for the People.

15         MR. DICKSON:  And Charlie Dickson, deputy public

16   defender, sir.  I'm here with Mr. Mason.  He stands beside me,

17   present, in custody.

18         THE COURT:  All right.  So I've discussed one issue,

19   which is not a -- it's not one of the major issues, I think,

20   in this case.  But if this case is being assigned out for

21   trial today, the jury commissioner's office is asking if

22   counsel would want to waive Mr. Mason's presence for today for

23   purposes of jury hardship.  There's a panel ordered for today.

24   It's not I think sufficient probably to go through the jury

25   selection process.  There's going to be another panel ordered

26   for tomorrow, but it's also going to be a smaller panel.  So

27   if we could combine the two panels, that would give us enough

28   jurors to probably form the venire for the pool.

1          If Mr. Mason wants to be present, I think that's his

2   right.  I wouldn't force him to do this.  It's just if you

3   want to do it, it might speed things up a little bit.

4          MR. DICKSON:  One moment, Your Honor?

5          THE COURT:  But why don't we pass that issue,

6   because that's sort of down the line.

7          MR. DICKSON:  Okay.

8          THE COURT:  I'm just fronting it for --

9          MR. DICKSON:  Yeah.

10          THE COURT:  -- everybody to think about in the back

11   of their mind.

12          So we're on for a couple of issues.  One is an issue

13   that was raised -- I don't know if it still exists -- which

14   relates to discovery.  A second issue relates to -- the Court

15   has met with both counsel on a number of occasions today off

16   the record and I think on the record to discuss that I was

17   willing to reconsider Defense motion for release given that

18   there has been some change in circumstance in that the DA's

19   office reevaluated the charging as to the case at line 2 and

20   dismissed a number of the charges related to that count.

21          The Court's primary concern in maintaining the bail

22   on Mr. Mason was that shortly after his original release on

23   the matter at line 1, the case ending in 0529, which is a

24   domestic violence case, it appears that he returned to a

25   shared residence in violation of a number of court orders.

26   And that's why I was not willing to release him, because I

27   wasn't sure there were any conditions under which he could be

28   released.  Now that it appears that some of the protective

1    orders -- or restraining orders were not served on him and the

2    People have withdrawn those counts, the Court is willing to

3    reconsider whether or not there are avenues by which I could

4    release Mr. Mason but maintain public safety.  I've indicated

5    to counsel that I'm considering assertive case management

6    supervision release, I'm considering assertive case management

7    with GPS monitoring to enforce the stay-away order.

8           And so let's start with the bail issue first, and

9    I'll start with Defense since it was Defense motion

10   originally.

11          MR. DICKSON:  Thank you, Your Honor.  I think Mr.

12   Mason -- in my discussions, I think he'd be a good candidate

13   for release.  Specifically, I would ask for OR release.  I

14   know the Court's tentative of ACM and GPS.  I think the crux

15   of it is he will comply with court orders.  I have full faith

16   in that and that he'll be here in court for his trial.

17          And so unless the Court has other further questions,

18   I'll submit here, Your Honor.

19          THE COURT:  I think you've --

20          MS. LEE:  Your --

21          THE COURT:  -- said off the record that the

22   violation of the EPO order was in part explained by the fact

23   that he believed the EPO had expired on that date.  Do you

24   have an explanation for the remaining charge -- and I take

25   this as argument, sort of, not facts.  But related to the 166,

26   that there was an order issued in court for him not to return

27   to the residence.

28          MR. DICKSON:  Your Honor, just given the pending

1   litigation, I don't think --

2          THE COURT:  I'm taking it as argument of counsel.

3   Like --

4          MR. DICKSON:  Okay.

5          THE COURT:  -- if he's violated that court order not

6   to go back to the residence --

7          MR. DICKSON:  Oh, I understand.  So Your Honor, it's

8   something that we see in a lot of cases where there's multiple

9   orders.  And individuals sometimes don't understand that, oh,

10  there's actually two orders that are overlapping.  And so when

11  one order is set to expire or expires, individuals sometimes

12  think, oh, man, now there's no order, not realizing there's

13  overlapping orders.  That's what I was describing in chambers.

14  I've seen multiple times of that.

15         I think Mr. Mason, especially after -- I'm sure the

16  Court will admonish him thoroughly today.  I've talked to him.

17  I don't think there's going to be an issue with a violation.

18  I think he knows he can't go back there or have any contact

19  during the pendency of the orders, which will be in effect.

20  And he's nodding his head.

21         THE COURT:  All right.

22         MS. LEE:  Your Honor?

23         THE COURT:  Yes, People.

24         MS. LEE:  Okay.  So I'm going to address the

25  charging, because I think there's some confusion, because I

26  was the one that charged, and I was the one that --

27         So when I analyzed the second case, I saw two

28  crimes:  a violation of the emergency protective order and a



1    violation of the criminal protective order that was issued in

2    the first case.  San Francisco Police Department has

3    recommendations of charges.  Those are automatically inputted

4    into the system.  As DAs, we send our charges, the final

5    charges, to our paralegals, and those are the charges that

6    need to be on the complaint.  For some reason, I was only made

7    aware -- I only noticed that the charges that were on this

8    complaint are charges that I did not authorize.  The first

9    charge was for a civil restraining order that the victim

10   requested the day before the second case.  I'm assuming the

11   officer recommended that because he saw a request, and on the

12   bottom, it clearly said, this is not an order, and there was

13   no evidence of it being served.  So that's why that was not a

14   charge that I was going to put on.

15         The 368(c) charge, the officer in his opinion

16   recommended that charge because the victim said she was scared

17   of him and thinks about it every day, and that to him was

18   mental suffering.  I don't think -- I disagree with that

19   charge, and I don't think that meets probable cause for that

20   given the situation, and I also don't think that met our

21   burden.  So that's why that was dismissed.

22         The trespass charge, the reason why that was

23   dismissed is because I got evidence from the Defense showing

24   that the Defendant owns the home.  And when I looked at the

25   CALCRIM, given that, the elements are not met and he's not

26   guilty.  So I did the right thing, and I dismissed those

27   charges.  But they were not dismissed because there were no

28   longer -- it was no longer a threat.  I had made this analysis

1    when I initially charged this case, and they shouldn't have

2    been on there in the first place.

3          When I made my argument -- I understand Your Honor

4    wasn't going to release, but I wasn't able to appear because I

5    was in trial.  I made arguments after in Department 14.  It

6    was a different judge.  I forget the judge's name.  And part

7    of my argument for requesting bail was based on the initial

8    case in which the Defendant is charged with domestic violence

9    causing injury, 245(a), 368(c), and where he caused all those

10   injuries to the victim because based on that, I was arguing

11   that he was a threat to the victim's safety, especially

12   because he came back within a week and violated not only the

13   emergency protective order but the civil protective order in

14   the case.

15         So based on the initial case, which happened less

16   than a week prior, and the violation of the orders from the

17   initial case, that was my basis of my request.  So I

18   understand I dismissed the case, but there's no changed

19   circumstances in the argument that I made to the Court in

20   which the Court made a finding that there was clear and

21   convincing evidence that the Defendant would be a threat to

22   the victim.  So I want to clear that up.

23         And the argument that was made at that time by the

24   Defense was not, oh, he was confused about two different

25   orders.  The argument was, oh, he didn't realize that the

26   order was expired.  He thought he -- or he didn't realize the

27   order was still in effect.  He thought it expired.  That was

28   the argument.  Now the argument is, oh, he's confused.  I

1   don't believe he was confused.  I was there when he was

2   served.  It was explained to him by the judge.  The officers

3   explained the emergency order to him.  I don't believe there

4   is a change in circumstances.

5            I spoke to the victim today and told her that the

6   Court was considering release.  She is angry with the

7   Prosecution because she feels that -- I told her that she

8   didn't have to come to court today because I thought we were

9   just going to get sent off to trial.  And she feels like the

10  Court releasing him may put her in the position where her life

11  is at risk and she may have to defend herself, and she does

12  not feel supported or protected by the court.  And so she is

13  against release.  She is still in the home.  The Defendant has

14  a key to the home.  There's no changed circumstances.  She

15  still believes that the Defendant is going to kill her.  He

16  told her that.  There has been multiple incidents of domestic

17  violence.

18           And so the People do believe there is still a safety

19  concern and there has not been any changed circumstances, and

20  I'm going to respectfully ask the Court to keep bail set -- or

21  that the Defendant remains in custody.

22           THE COURT:  All right.  I'm looking at the original

23  PSA on the domestic violence case, which shows that Mr. Mason

24  has no arrests that I can see in San Francisco.

25           MS. LEE:  I just want to note for the record that we

26  did do an ICR/ACM, and it was returned, and they said he has

27  higher needs and they couldn't provide assistance to him.  So.

28           THE COURT:  I don't see -- I don't know if your

1    people had a long time to look at the CII or the FBI.  I don't

2    see --

3              MS. LEE:  No, Your Honor, I understand --

4              THE COURT:  -- any recent convictions for violence.

5              MS. LEE:  He doesn't.  Your Honor is correct.  I'm

6    concerned with what's going on.  I don't know if there's a --

7    the victim has said she thinks he might have schizophrenia.  I

8    don't know if he's suffering a mental break right now.  I

9    don't know what's going on right now.  All I know is I have a

10   victim who's scared, who thinks her life is in danger right

11   now, and nothing has changed.

12             THE COURT:  I --

13             MS. LEE:  And so we were supposed to be on for

14   trial, and now the Defendant's going to get released.  I'm

15   telling the Court I do believe the victim's life is in danger.

16   I'm respectfully asking the Court to keep bail, and if the

17   Court's not going to do that, I'm going to ask for an EM.  And

18   with that, I'll submit.

19             THE COURT:  All right.  So I see that he doesn't

20   have any convictions for violence.  The Court originally

21   released him on the domestic violence case, which carries the

22   bulk of the serious charges, as misdemeanors are.  Then he

23   violated the court's order, and I do understand the argument

24   related to being confused by multiple orders being served on

25   him.

26             So I am going to release him on ACM with GPS

27   monitoring to enforce the stay-away order.

28             And what, Mr. Mason, that means is you're going to

1    meet with pre-trial today.  They're going to assess you for

2    whether classes -- it could be anger management classes, it

3    could be counseling, it could be nothing, right?  I don't

4    know.  So they're going to meet with you.  Whatever they tell

5    you to do, you have to do as a condition of your release.

6    Before you're released tomorrow morning, you're going to be

7    outfitted with a GPS device.  I'm going to order you to abide

8    by the terms of the stay-away order, for now to stay 150 yards

9    away from --

10          And tell me the address again?

11          MS. LEE:  It's 5 --

12          THE COURT:  I think it's --

13          MS. LEE:  It's 585 --

14          THE COURT:  Arballo Drive?

15          MS. LEE:  -- Arballo Drive, San --

16          THE COURT:  In San Francisco.

17          MS. LEE:  Yes.

18          THE COURT:  150 yards is about a block and a half,

19    okay?  So you can't go back there.  Think about your house.

20    Think about a circle of a block and a half around that area.

21    If you go back within that area, within 150 yards, it sets off

22    an alarm with the sheriff's department.  They would come, and

23    they would arrest you on a warrant.  And then if you violate

24    again, there's really no way for me to release you, okay?  So

25    please maintain this.

26          Even if you're going to take -- I don't know exactly

27    where this is.  But if you're going to be anywhere close to

28    it, call the sheriff's department first and tell them, I'm

1   going to be on a bus, it goes on a route past this --

2               THE DEFENDANT:  Thank you, sir.

3               THE COURT:  The house.  Give them a heads up.  Make

4   sure the device is charged, you're in contact with the

5   sheriff's department, and don't contact the victim in any way.

6   Don't call her, don't email her, don't respond if she contacts

7   you, okay?

8               THE DEFENDANT:  Yes, sir.

9               THE COURT:  And I'm going to release you on those

10  terms.  You'll be out sometime midmorning tomorrow is what I

11  think, okay?

12              And so that's the other issue I've been talking to

13  your attorney and I raised with you, which is that I'm also

14  going to be sending this matter out for trial.

15              So before I do that, let me hear the -- is there an

16  outstanding discovery issue?

17              MS. LEE:  So I want to be heard on that, because

18  Defense made a huge statement, and I wasn't here, and I was

19  accused of professional -- or violating orders when Defense --

20  so there is a police report attached to the victim's

21  (indiscernible) that's in the discovery, that was discovered

22  to the Defense two months ago.  This police report is later on

23  in the discovery.  It's underneath the rap sheet, and I didn't

24  see it.

25              The Defense sent me a discovery request in January.

26  I responded.  I gave them the discovery I had.  I made more

27  requests.  I sent final emails confirming that all the

28  discovery was sent.  I didn't get a response.  The Defense

1   didn't tell me that anything was missing.

2           Yesterday, after we called ready, the Defense sent

3   me an email at 10:18 saying, there's this -- I need BWC and

4   the photos from this report.  I'm like, what?  So I try to

5   research it -- or I looked for it, and (indiscernible) find

6   it, and I give it to them, and I didn't -- and I didn't

7   realize that they had already had it.  And then I'm trying to

8   find the photo, so then I look through the (indiscernible).

9   It's not there.

10          The police report says the photo was in the property

11  room.  So I go to HOJ in the basement, in the property room,

12  and I have -- and I'm not even supposed to do that.  It's

13  supposed to be a DAI, but I was like, I need this for Defense

14  counsel, and you guys have to do this for me.  So they look,

15  and they look, and they look, and they look, and they couldn't

16  find the photo in the property room.  So I told Defense

17  counsel, I don't have it in my possession.  But then I asked

18  them, do you have any numbers of -- any other numbers or the

19  terms that you can give me so I can -- they can -- I can find

20  it or if doesn't exist.

21          I finally get connected with someone on the second

22  call, and he was able to -- the reason why it wasn't -- even

23  though she said it was up -- it was in the property room on

24  the police report, it wasn't.  She noted in her narrative that

25  it was uploaded as an attachment.  So because of that, it was

26  in their internal system, and because the victim was not

27  actually arrested for it, it wasn't something that they shared

28  with the DA's office.  So he gave it to me.  Right away when

1   he gave it to me, I sent it to Defense counsel.

2          Earlier in that day, I also had sent a request to

3   the sergeant that's in charge of sharing and looking at all

4   the BWC to share the BWC.  The officer that is the reporting

5   officer says that she turned on her BWC, but in the actual

6   front page, it says that there's two case numbers.  I asked

7   the sergeant about that.  I said, why is there two case

8   numbers when you're now telling me there's only one?  He's

9   like, I'm looking at the -- I have the database, and I only

10  have one.  The sergeant noted that she attached it.  That's

11  what we have, and that's what I shared with you.  And he told

12  me it would take 24 hours.  I told Mr. Dickson that it would

13  take 24 hours.

14         This was all before -- this was all by 1:40.  He

15  comes into Department 17, and then I'm getting text messages

16  and I'm being told that I'm not being cooperative and things

17  like that.  I'm not being cooperative.

18         The information that he wants is basically an

19  incident where a witness said that they saw the victim keying

20  the Defendant's car.  The officer came.  He didn't observe

21  that the Defendant was -- that anything was keyed.  He took a

22  picture of scratches.  The victim said she scratched his car.

23  That's the incident he wants.  It's not an arrest.  It's not a

24  conviction.  It's not admissible.  I understand he wanted it.

25  Immediately when he asked for it, I worked for three hours,

26  called people, asserted what I needed -- my dominance to get

27  what I needed to him, and I gave him his discovery.  So

28  there's no discovery violation because the discovery is not

escribers

www.escribers.net | 800-257-0885

1   being -- the discovery is not being held.

2          And I would just ask Your Honor that -- I am seeing

3   what I think is a pattern and practice of some attorneys not

4   being very clear with us about what they want or not

5   specifically requesting what they want and waiting until we

6   get to the jury trial, asking for it, and then saying there's

7   a violation.  If there's something that they need, anybody --

8   I do it.  Sometimes I do it myself.  I don't even go to the

9   paralegals.  So I will respond and get them their discovery.

10          And I would just ask that the Court -- if the Court

11  could assist in this process and at least require that if the

12  Defense are going to do this during the -- do this, that the

13  rules be complied with, which is that they request these

14  things in a timely manner so that we're not being accused of

15  discovery violations and our character and our reputation is

16  not being tarnished.

17          And so with that, I'll submit on that.

18          THE COURT:  All right.

19          MS. LEE:  And the People are ready.  He has all his

20  discovery.

21          THE COURT:  Mr. Dickson, anything further on this

22  issue?

23          MR. DICKSON:  Yes.  Yes, Your Honor.  So the Court

24  was forwarded different emails.  I do have them printed.  I

25  would like -- it's not my usual practice to get the Court

26  involved in discovery issues by forwarding emails.  But since

27  they were sent to the Court, I think I probably need to lodge

28  them so I've got a copy printed.

1          I think the biggest thing is I did tell the Court

2    that I got the photo I requested.  I made that record

3    yesterday, that I did have that item.  The biggest problem

4    that I'm hearing here -- and I know the Court I believe this

5    week has discussed this issue in another case, constructive

6    possession versus actual.  And the photo and the body-worn was

7    in possession of law enforcement.

8          To say that this incident, this 1109 incident, is

9    not relevant is not true.  The complaining witness says, I

10   scraped the tire because I was angry.  It was a vandalism to

11   his property.  It's certainly relevant.  I do have the photo

12   now.  I believe the body-worn camera was discovered.  But it's

13   not timely.

14          And I keep hearing -- and the email that was sent to

15   the Court and the records here today confirms an overall issue

16   we're having, which is discovery is self-executed.  And so

17   sometimes we identify, pinpoint things like I did when I got

18   this case transferred, took it over.  I sent a pinpoint

19   request.  But it's all self-executed.  I don't have the duty

20   to ask for pinpoint discovery, and the Government has all the

21   duty to provide it to me.

22          And so I think this Court should -- I would ask this

23   Court if the Court would consider an admonishment here

24   correcting the state of the law regarding Brady and 1054,

25   which is not that, as it stated in the email, we meet and

26   confer and then the Prosecution has 15 days to respond.

27   That's the local rules for filing a motion to compel.

28          THE COURT:  Uh-huh.

1           MR. DICKSON:  In this case, there was a motion to

2    compel filed as well asking for any relevant body-worn camera.

3    And so I think the big thing I want to point out here -- I

4    have arguments to the trial court regarding the late

5    discovery, which I think is material.  But at this stage, I

6    would just ask -- I think the Court should admonish about

7    Prosecution discovery duties, how they're self-executing, and

8    how constructive versus actual possession is not a defense to

9    not having provided it timely.

10          And with that, I'll submit, Your Honor.  Thank you.

11          MS. LEE:  Your Honor, I'm sorry.  I'm just going to

12   object.  This has turned into an attack on the Prosecution,

13   and I think this is something that the Court is supposed to

14   monitor and not allow.

15          And I understand his argument on constructive

16   possession.  My point is follow the discovery rules, which

17   say, send the request, do all this stuff, and don't do it at

18   the end -- or if you're going to do it and I comply, don't

19   make misstatements and trying to use it as a sword and not a

20   good faith discovery argument.  And so that's all I'm saying.

21          But I would object to the Court admonishing me.  I

22   simply --

23          THE COURT:  All right.  I'm not going to admonish.

24   Let me just say as a statement of law, the Prosecution's under

25   an ongoing duty that I think you guys agree with, that

26   anything that's exculpatory has to be turned over.  That is

27   what Mr. Dickson refers to as a self-executing obligation.

28   And of course, I don't know that I've seen a case where a DA's

1  not complying with that.

2           I think there's a separate question as to

3  impeachment type materials.  I think at least historically, I

4  don't know if -- and I think I discussed this yesterday

5  briefly.  I invite any briefing on this.  But historically,

6  what was required is to turn over sort of arrests,

7  convictions, police reports in San Francisco related to those

8  issues.  I don't know that there's a case that says anything

9  further other than that, such as body-worn camera or evidence,

10  has to be automatically disclosed.

11           Maybe there's something new.  At least the way that

12  I've practiced law for years, it's just limited to the police

13  report, and I think that makes sense.  If you want something

14  additional, you put in the request.  They should comply, and

15  then we can look at timeliness on a case-by-case basis.  I

16  think it looks like everything has been satisfied in this

17  case.

18           Mr. Dickson, I don't hear you asking for a

19  continuance as a form of remedy.  Do you want to go forward?

20           MR. DICKSON:  I do.  There's other remedies I'll be

21  asking for in --

22           THE COURT:  Okay.

23           MS. LEE:  That's fine.

24           MR. DICKSON:  -- the trial court, but I --

25           THE COURT:  You can reserve the remedies.  The only

26  thing I care about is whether you're asking for a continuance.

27           MR. DICKSON:  No.

28           THE COURT:  All right.



www.escribers.net | 800-257-0885

```
1            MR. DICKSON:  No, Your Honor.

2            THE COURT:  So you can argue the rest of the issues

3    in terms of whether there was late discovery --

4            And I don't hear a personal attack on you, Ms. Lee.

5    I think Mr. Dickson's phrasing in terms of constructive

6    possession I think is an issue that we addressed yesterday on

7    a different case, was part of the Prosecution's duty is to get

8    materials from the police agencies.  That's not any fault on

9    your part, but it's just if the police hold onto it, that

10   they're on your team, and --

11           MS. LEE:  And I understand that.

12           THE COURT:  -- you sort of get attributed --

13           MS. LEE:  I understand that, Your Honor, and I take

14   this discovery obligation very seriously.  We're not punished

15   for not guilty, and I pride myself in being a fair and just

16   prosecutor.

17           THE COURT:  Okay.

18           MS. LEE:  So when they want their stuff, they're

19   going to get it.  My saying this has turned into a personal

20   attack is him trying to admonish me and --

21           THE COURT:  All right.  So --

22           MS. LEE:  -- what was happening the other day.

23           THE COURT:  I'm not admonishing.

24           I'm going to send you to -- both sides are ready for

25   trial now, right?

26           MS. LEE:  Yes, Your Honor.

27           MR. DICKSON:  Yes.

28           THE COURT:  All right.  So I'm going to assign this
```



www.escribers.net | 800-257-0885

1    for tomorrow morning at 9:00 to Department 624, Judge Sharon

2    Reardon.

3              MR. DICKSON:  And Your Honor, I would ask regarding

4    the time -- I think my client might still be literally in the

5    release process.

6              THE COURT:  I'm going to order counsel to check

7    in --

8              MR. DICKSON:  Oh, yes, of course.

9              THE COURT:  -- 624.  Mr. Mason, you're ordered to

10   report to 624 as soon as you're released.

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Okay.  I don't know if there's a way for

13   you to call your lawyer as soon as you're released.  The one

14   caution I sort of have is that as you're coming into the

15   courthouse, you may be walking past the jurors in the case.

16   So I would just -- I don't know how to manage that.  They may

17   be waiting outside.  And this is the issue that I was trying

18   to --

19             MR. DICKSON:  Yeah.

20             THE COURT:  -- avoid happening.  So let me turn to

21   our final issue.  So just try to call your lawyer, but be

22   mindful that the jurors are going to be waiting around.  So

23   don't talk to anybody when you get to the civil courthouse.

24   Go straight to 624, and go inside to find your lawyer, okay?

25             MR. DICKSON:  And Your Honor, would the Court be

26   able to inform Judge Reardon about -- that he's --

27             THE COURT:  I've told her about the timing issues.

28             MR. DICKSON:  Thank you very much, Your Honor.  I



1  appreciate that.

2           THE COURT:  And again, I understand that your delay

3  is not going to be entirely in your control.  It depends on

4  when you get processed out by the sheriffs.  But don't

5  dillydally after you're released.  Go straight to Civic

6  Center --

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  -- and go to court, okay?  Because --

9           THE DEFENDANT:  I will.

10           MS. LEE:  So once he's released, then he should be

11  going straight to court?

12           THE COURT:  Tomorrow morning, he's going to be

13  released --

14           MS. LEE:  And go straight to court?

15           THE COURT:  -- and go straight to court.  All right.

16           So lastly, I just raise the one issue.  I don't know

17  if parties are interested in postponing the trial by one day

18  or agreeing to start hardship this afternoon.  I don't know

19  what they could accomplish this afternoon.  That would speed

20  up the trial one day.  Judge Reardon said she understands,

21  it's fine either way, however you want to do it.

22           MR. DICKSON:  I'd respectfully decline, Your Honor,

23  but thank you.

24           MS. LEE:  Yeah, I'm fine with the hardship.  That's

25  fine.

26           THE COURT:  They want to --

27           MR. DICKSON:  Oh, it's up --

28           THE COURT:  So I'll tell them not to -- to release



1    the panel today.  Anyway, all right.  And you're ordered to

2    report to 624 tomorrow for trial.

3              MR. DICKSON:  Yes, Your Honor.

4              THE COURT:  To be clear, since I had this issue come

5    up on another case, I'm releasing him on both lines on the

6    electronic monitoring, both lines on the ACM.

7              MR. DICKSON:  Okay.

8              THE COURT:  And as we discussed on a different case

9    yesterday, I'm striking the 1035 order on the sheriff's sheet.

10             MR. DICKSON:  Does the Court think that's going to

11   hold it up or --

12             THE COURT:  Did your other client get released?

13             MR. DICKSON:  I think he did, yeah.  I know that's

14   not -- yeah.

15             THE COURT:  All right.  Let's call our next matter.

16          (Proceedings adjourned at 2:20 p.m.)

17

18

19

20

21

22

23

24

25

26

27

28



CERTIFICATION

I, AUBREY A. HASLOW, a court-approved transcriber, do hereby certify that the foregoing transcript, pages 1 through 24, is a correct transcript from the official electronic sound recording of the proceedings in the above entitled matter, to the best of my professional skills and abilities.

_____

Aubrey A. Haslow CDLT-291                    April 10, 2024
Digital Court Transcriber