1  DAVID CHIU, State Bar #189542
   City Attorney
2  JENNIFER E. CHOI, State Bar #184058
   Chief Trial Deputy
3  ALEXANDER J. HOLTZMAN, State Bar #311813
   JOSE A. ZELIDON-ZEPEDA, State Bar #227108
4  STEVEN F. EGLER, State Bar #226227
   Deputy City Attorneys
5  Fox Plaza
   1390 Market Street, 6th Floor
6  San Francisco, California 94102-5408
   Telephone:    (415) 554-3999 [Holtzman]
7  Telephone:    (415) 355-3312 [Zelidon-Zepeda]
   Telephone:    (415) 554-3975 [Egler]
8  Facsimile:    (415) 554-3837
   Email:        alexander.holtzman@sfcityatty.org
9  Email:        jose.zelidon-zepeda@sfcityatty.org
   Email:        steven.egler@sfcityatty.org
10
   Attorneys for Defendants
11 CITY AND COUNTY OF SAN FRANCISCO,
   AND PAUL MIYAMOTO, IN HIS OFFICIAL
12 CAPACITY AS SAN FRANCISCO SHERIFF

13

14                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA
15
                         OAKLAND DIVISION
16

17 | JOSHUA SIMON, DAVID BARBER, AND | Case No. 4:22-cv-05541-JST |
   | JOSUE BONILLA, INDIVIDUALLY AND | |
18 | ON BEHALF OF ALL OTHERS | **DEFENDANTS CITY AND COUNTY OF SAN** |
   | SIMILARLY SITUATED, DIANA BLOCK, | **FRANCISCO AND SAN FRANCISCO** |
19 | AN INDIVIDUAL AND COMMUNITY | **SHERIFF PAUL MIYAMOTO'S OPPOSITION** |
   | RESOURCE INITIATIVE, AN | **TO PLAINTIFFS' MOTION TO ENFORCE** |
20 | ORGANIZATION, | **PRELIMINARY INJUNCTION** |

21          Plaintiffs,          Judge:          Honorable Jon S. Tigar
                                  Courtroom:      Courtroom 6, 2nd Floor
22          vs.                   Hearing Date:   September 12, 2024
                                  Time:           2:00 p.m.
23 CITY AND COUNTY OF SAN
   FRANCISCO, PAUL MIYAMOTO, IN HIS   Date Action Filed:  September 8, 2022
24 OFFICIAL CAPACITY AS SAN            Trial Date:         Not Set
   FRANCISCO SHERIFF,
25
            Defendants.
26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

OPPOSITION .................................................................................................................... 1

    I.       Introduction ........................................................................................... 1

    II.      Background ............................................................................................ 2

          A.      The PTEM Program and Warrantless Search Condition ............................ 2

          B.      The Preliminary Injunction ..................................................................... 4

          C.      The Motion to Enforce the Preliminary Injunction ................................... 5

               1.      Ying Ng ........................................................................... 5

               2.      José Chávez ...................................................................... 6

                3.      Otis Mason ....................................................................... 7

                4.      Nathaniel Roye .................................................................. 8

                5.      Luis Rosales-Verde ........................................................... 9

                6.      Jackson Vandeusen ........................................................... 9

    III.     Legal Standard .................................................................................... 10

    IV.     Argument ........................................................................................... 11

          A.      Plaintiffs Do Not Show the Sheriff Has Violated the Preliminary
                  Injunction. ........................................................................................ 11

          B.      Broadening the Injunction Would Endanger Public Safety, Harm Pretrial
                  Defendants, and Violate Key Limitations on Injunctive Relief ................. 15

                1.      The Court Cannot Modify the Injunction on Appeal, and
                        Plaintiffs Make No Effort to Satisfy the Standards for a New
                        Injunction. ....................................................................... 15

                2.      The Facts Undermine an Expanded Injunction ........................ 17

    V.      Conclusion ......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brady v. United of Omaha Life Ins. Co.*
  902 F. Supp. 2d 1274 (N.D. Cal. 2012) ...................................................................14

*Buffin v. California*
  23 F.4th 951 (9th Cir. 2022) ................................................................................1

*Calvillo Manriquez v. Devos*
  411 F. Supp. 3d 535 (N.D. Cal. 2019) .............................................................14, 15

*Clark v. Coye*
  60 F.3d 600 (9th Cir. 1995) ..............................................................................20

*Confederated Tribes & Bands of Yakima Nation v. Gregoire*
  2010 WL 11520037 (E.D. Wash. Aug. 4, 2010) ...................................................10

*Firefighters Loc. Union No. 1784 v. Stotts*
  467 U.S. 561 (1984) .....................................................................................10, 13

*Foucha v. Louisiana*
  504 U.S. 71 (1992) ...........................................................................................14

*FTC v. Affordable Media, LLC*
  179 F.3d 1228 (9th Cir. 1999) ...........................................................................10

*FTC v. Data Med. Cap., Inc.*
  2010 WL 1049977 (C.D. Cal. Jan. 15, 2010) .......................................................11

*In re Danielle W.*
  255 Cal. Rptr. 344 (Ct. App. 1989) .....................................................................20

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*
  10 F.3d 693 (9th Cir. 1993) ...............................................................................14

*In re TFT-LCT (Flat Panel) Antitrust Litig.*
  2013 WL 6055079 (N.D. Cal. Nov. 13, 2013) ..................................................10, 16

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*
  389 U.S. 64 (1967) ...........................................................................................14

*L.A. Cnty. Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992) .............................................................................20

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*
  564 F.3d 1115 (9th Cir. 2009) ...........................................................................11

*Laisne v. State Bd. of Optometry*
 123 P.2d 457 (Cal. 1942) ................................................................................20

*Lowery v. Rhapsody Int'l, Inc.*
 2022 WL 267442 (N.D. Cal. Jan. 28, 2022) ....................................................10

*McClatchy Newspapers v. Central Valley Typographical Union*
 686 F.2d 731 (9th Cir. 1982) ....................................................................10, 16

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*
 242 F.3d 1163 (9th Cir. 2001) .........................................................................10

*Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*
 182 F. Supp. 3d 1065 (E.D. Cal. 2016) ......................................................10, 15

*NuScience Corp. v. Henkel*
 2014 WL 12810112 (C.D. Cal. Feb. 12, 2014) ................................................13

*O'Shea v. Littleton*
 414 U.S. 488 (1974)..........................................................................................20

*People v. Bunn*
 37 P.3d 380 (Cal. 2002) ...................................................................................20

*Schmidt v. Lessard*
 414 U.S. 473 (1974)..........................................................................................14

*Shuffler v. Heritage Bank*
 720 F.2d 1141 (9th Cir. 1983) .........................................................................11

*Sophanthavong v. Palmateer*
 378 F.3d 859 (9th Cir. 2004) ...........................................................................11

*Stone v. City & County of San Francisco*
 968 F.2d 850 (9th Cir. 1992) ...........................................................................15

*Taggart v. Lorenzen*
 587 U.S. 554 (2019)..........................................................................................11

*Winter v. Nat. Res. Def. Council, Inc.*
 555 U.S. 7 (2008)..............................................................................................17

**Federal Rules**

Federal Rule of Civil Procedure § 62(d) ........................................................................10

Federal Rule of Civil Procedure § 65(d) ........................................................................14

**State Constitutional Provisions**

California Construction, art. III, § 3 ...............................................................................19

iii

Sheriff's Opposition to Motion to Enforce Preliminary Injunction          n:\lit\li2024\230184\01772236.docx
Case No. 22-cv-05541-JST

**Other Authorities**

*Enforce,* Black's Law Dictionary (12th ed. 2024) ........................................................................12

*Enforce*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/enforce ..............................................................................................12

*Impose,* Black's Law Dictionary (12th ed. 2024) .........................................................................12

*Impose*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/impose ...............................................................................................12

## **OPPOSITION**

### I. **Introduction**

The Motion to Enforce the Preliminary Injunction ("Motion") filed by Plaintiffs Joshua Simon, David Barber, and Josue Bonilla ("Plaintiffs") rests on the striking and incorrect premise that San Francisco Sheriff Paul Miyamoto (together with the City and County of San Francisco, "Sheriff") cannot control who joins the Pretrial Electronic Monitoring ("PTEM") Program run by the Sheriff's Office.[1] The preliminary injunction entered by this Court does not stand for any such principle. The Court's injunction prohibits the Sheriff from imposing or enforcing a warrantless search condition on a PTEM Program participant broader than that contained in the Superior Court's order and from sharing PTEM Program participants' location information with other law enforcement agencies. Nothing about the injunction requires the Sheriff to accept any new defendant into the PTEM Program. Because no class member is subject to a warrantless search condition broader than that contained in the Superior Court's order, Plaintiffs have not shown a violation of the preliminary injunction entered by the Court much less shown by the required clear and convincing evidence that the Sheriff has failed to substantially comply with the injunction.

Seemingly recognizing their failure to demonstrate a violation of the terms of the preliminary injunction, Plaintiffs rely on reasoning in the Court's order to urge a broader view of the injunction. But the Court cannot and should not alter the injunction in the manner Plaintiffs suggest. The Court cannot modify the existing preliminary injunction in that way given the pending Ninth Circuit appeal. And any new injunction controlling who the Sheriff accepts into the PTEM Program would conflict with the Superior Court's understanding of the PTEM Program, pretrial release process, and constitutional relationship with the Sheriff; override the Sheriff's judgments on public safety and criminal justice in the design of the PTEM Program; collaterally invalidate clear Superior Court orders; and inject the Court further into administration of pretrial release in San Francisco. As the Superior Court explained to the defendants described by Plaintiffs in the Motion, it knows the options

---

[1] The City and County of San Francisco ("City") does not control the PTEM Program, which Sheriff Miyamoto administers in his capacity as a state officer. *See Buffin v. California*, 23 F.4th 951, 962 (9th Cir. 2022). But for ease of reference, this brief refers to Defendants together as "Sheriff."

available to it for pretrial release, will not order the Sheriff to show cause regarding PTEM Program policies, and does not believe the Sheriff is subject to its jurisdiction such that it can order the Sheriff to accept defendants into the PTEM Program.

Plaintiffs misconstrue the preliminary injunction, ignore relevant standards, disregard the Superior Court's rulings, invite violations of federalism and the separation of powers, and seek to catalyze changes to pretrial release in San Francisco that the evidence shows will be unfavorable to criminal defendants. The Court should deny the Motion.

## II.     Background

### A.      The PTEM Program and Warrantless Search Condition

In determining the appropriate pretrial release conditions for criminal defendants, the Superior Court has many options, of which the PTEM Program is only one. For example, it can release defendants on their own recognizance ("OR") without conditions; it can impose stay away orders or curfews; it can require drug testing; it can enter no-gun and no-drug conditions; it can require enrollment in residential treatment; it can order varying levels of non-residential case management by the Pretrial Diversion Project; and it can place defendants on private electronic monitoring not supervised by the Sheriff. In appropriate cases, the Superior Court can condition release from custody on participation in the PTEM Program run by the Sheriff. The court is not obligated to place any defendant in the PTEM Program.

The PTEM Program does not solely involve GPS monitoring. It is an intensive supervision program available to the Superior Court when less intensive forms of supervision are insufficient. The program includes an initial home check, regular check-ins, GPS tracking, and random compliance checks. Declaration of Undersheriff Katherine Johnson in Support of Sheriff's Opposition to Plaintiffs' Motion to Enforce Preliminary Injunction ("Johnson Decl.") ¶ 4. Defendants released from custody subject to participation in the PTEM Program are typically charged with serious, violent offenses. *See, e.g.*, ECF Nos. 31-2, 31-4, 31-7. No state or federal law requires the Sheriff to operate the PTEM Program.

Like other supervision programs, such as drug treatment programs, the PTEM Program has standards for participation. Johnson Decl. ¶ 3. Among those required standards is a warrantless search

condition extending at least to allow searches by the Sheriff's Office. No search condition is required in the particular circumstance when a defendant will be placed in a residential treatment program that will be responsible for supervision. *Id.* The warrantless search condition is necessary to ensure that, in conducting the PTEM Program, the Sheriff does not violate the Fourth Amendment rights of participants. *Id.*; ECF No. 31-17 ¶¶ 14–15; ECF No. 79-3 ¶ 4. In conducting initial home checks and periodic compliance checks as part of the PTEM Program, the Sheriff relies on the warrantless search condition. Johnson Decl. ¶ 3. It would not be feasible to have the PTEM Program without a warrantless search condition applicable to participants. *Id.*

The Sheriff's Office or other peace officers at its direction must be able to search PTEM Program participants to ensure they are complying with the court's orders on their pretrial release and the PTEM Program. These can include, for example, conditions prohibiting weapons. *Id.* ¶ 4. The warrantless search condition allows the SFSO to determine what PTEM Program participants are doing and whether they are violating the terms of their release. *Id.* In lieu of detention, PTEM Program participants are released into society. *Id.* The warrantless search condition supports both the interests in public safety and the participants' return to court. *Id.* The GPS monitor is helpful in informing the Sheriff's Office about where PTEM Program participants are located but not necessarily what they are doing. *Id.* The search condition can help identify, for example, weapons, burglary tools for those charged with burglary, and car keys for those who are prohibited from driving. *Id.*

For years before entry of the preliminary injunction, the Superior Court was aware that the PTEM Program involved a warrantless search condition. *See, e.g.*, *id.* Ex. M (providing the program rules to the presiding judge); *id.* Exs. N–Q (examples of correspondence between the Superior Court and Sheriff's Office involving the warrantless search condition); Declaration of Justina K. Sessions in Support of Plaintiffs-Appellees' Opposition to Motion to Stay ("Sessions Decl."), Ex. C, *Simon v. City and County of San Francisco*, No. 24-1025 (9th Cir. Mar. 5, 2024), Dkt. No. 8.4 (letter from the Superior Court to the Sheriff referring to *re*-admonishing criminal defendants on the PTEM Program about the warrantless search condition the court understood was in place); *see also* Sessions Decl., Ex. B, Dkt. No. 8.3 (Sheriff's letter to the Superior Court).

Since May 2023, all new PTEM Program participants have received and agreed to specific

3

admonitions from the Superior Court about the warrantless search condition to which they will be subject. *See* ECF No. 53-3 (admonitions); ECF No. 79-2 at 14:3–17 (Simon receiving and agreeing to admonitions). They have each signed a Superior Court order describing their Fourth Amendment waiver including a specific description of the warrantless search condition and have received a minute order confirming the admonitions and warrantless search condition. *See* ECF No. 57-2 (Pre-Sentenced Defendant Electronic Monitoring – Court Order ("EM Order")); ECF No. 71-4 (Simon EM Order); ECF No. 71-3 (Simon minute orders).

## B. The Preliminary Injunction

On February 13, 2024, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, Granting Motion for Class Certification, and Granting Motion for Preliminary Injunction ("Order"). ECF No. 77. The Court certified two subclasses:

> The first subclass, which the Court terms the "original rules subclass," consists of all individuals who have in the past been, are currently, or will in the future be subject to the versions of the Program Rules and Participant Contract that were in place at the time that Plaintiffs filed this action, prior to the May 2023 revisions. The second subclass, the "revised rules subclass," consists of all individuals who have in the past been, are currently, or will in the future be subject to the revised version of the Program Rules that was put into place following the May 2023 changes.

*Id.* at 27 (citations omitted). As to these subclasses, the Court entered a preliminary injunction against the Sheriff, set apart at the end of the order and reading in full:

> It is therefore ORDERED that Defendants and Defendants' successors-in-interest, agents, principals, officers, servants, employees, and attorneys, and those persons or parties in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are preliminarily enjoined from imposing and enforcing, as to the original rules subclass, the Sheriff's EM Program Rules' four-way search condition (Rule 5) and data sharing provision (Rule 13); and *as to the revised rules subclass, from imposing or enforcing any search condition broader than that stated in each class member's Superior Court order* and from imposing and enforcing the Program Rules' data sharing provision (Rule 11).
>
> Defendants shall (1) within 14 days of the date of this order, cease the enforcement of the specified Rules; and (2) within 35 days from the date of this order, file with the Court and serve on Plaintiffs a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the preliminary injunction. This injunction shall remain in effect until the entry of final judgment in this action or until further order of this Court.

*Id.* at 41–42 (emphasis added).

Sheriff's Opposition to Motion to Enforce Preliminary Injunction
Case No. 22-cv-05541-JST

n:\lit\li2024\230184\01772236.docx

### C.     The Motion to Enforce the Preliminary Injunction

Plaintiffs filed the Motion on June 28, 2024, without conferring with the Sheriff's counsel about the substance or timing. Although Plaintiffs do not explain the relief they seek in the Motion, they evidently ask the Court to divest the Sheriff of the ability to set minimum standards for participation in the PTEM Program. *See* Mot. at 10–11. Plaintiffs do not identify any previous order limiting a supervision program's ability to set minimum standards for participation, and the Sheriff is unaware of any such order.

In support of the Motion, Plaintiffs submitted evidence about the circumstances of pretrial release of six defendants represented by the Public Defender's Office. Mot. at 2–7 & Exs. 1–21. In each defendant's pretrial release hearing, the Superior Court and defense counsel discussed the warrantless search condition. The Sheriff did not impose or enforce a warrantless search condition for any of these individuals broader than the Superior Court's written warrantless search condition. Indeed, since the deadline for compliance with the preliminary injunction on February 27, 2024, the Sheriff's Office has not imposed or enforced any warrantless search condition for a PTEM Program participant broader than the Superior Court's written warrantless search condition entered in that participant's case. Johnson Decl. ¶ 5.

#### 1.     Ying Ng

The paperwork that the Sheriff's Office received from the Superior Court following the March 12, 2024, hearing in Ying Ng's case was contradictory with respect to a warrantless search condition. The minute order reflected that the Superior Court had imposed a warrantless search condition, while the EM Order crossed out the search condition. Declaration of Sujung Kim in Support of Plaintiffs' Motion to Enforce Preliminary Injunction ("Kim Decl."), Ex. 2. The Sheriff's Office therefore sought clarification from the Superior Court and parties about the Superior Court's intentions, consistently explaining that a warrantless search condition was required if the Superior Court wanted to place Mr. Ng on the PTEM Program. *See id.*, Ex. 3 at 7 ("we alerted the court immediately and alerted the DA to notice the PD to problem solve within 24 hours of the discrepancy"). The Superior Court had many options for release. *See, e.g.*, *id.* at 6 ("Again, these are questions that ultimately should be discussed and the court has a plethora of options for release that don't include EM."). But as reflected

in the transcript from the March 12 hearing, the Superior Court was not willing to release Mr. Ng from custody without electronic monitoring. *Id.*, Ex. 1 at 6:10–12 ("The Court finds that the real question is whether he's a flight risk, but that can be managed via electronic monitoring. So therefore by clear and convincing evidence the Court is going to put Mr. Ng on electronic monitoring."). A week later, the Superior Court amended the March 12 minute order to reflect that it did not initially impose a warrantless search condition. *Id.*, Ex. 2; *id.*, Ex. 3 at 7.

Before that amendment, the District Attorney's Office followed up with Ng's counsel about scheduling a further hearing on pretrial release. *Id.*, Ex. 3. At that hearing, following argument by Mr. Ng's counsel about the constitutionality of the Sheriff's requirement of a warrantless search condition to join the PTEM Program, the Superior Court imposed a warrantless search condition. *Id.*, Ex. 5 at 4:12–13 ("Just read it. Say this is the Court order and it's going to be . . . ."); *id.* at 6:23–26 ("THE COURT: Right now he's on a search condition until the Court makes a final ruling as to whether or not he's to remain on search condition after I receive briefing from everyone."). The Superior Court issued an EM Order stating "Defendant shall submit to a search of their person, vehicle, property and home at anytime by SFSO sworn staff or any peace officer acting on behalf of and with the express permission of the SFSO." The order made "Release Contingent on EM Placement." Johnson Decl., Ex. A. The minute order for the hearing explained "The defendant is advised of the search condition they will be subject to while on electronic monitoring. Upon questioning by the Court, they state that they have had an opportunity to consult with their counsel and that they accept the conditions set forth on the record." *Id.*, Ex. B. Consistent with the Superior Court's orders, Mr. Ng was released from custody and enrolled in the PTEM Program. Kim Decl. ¶ 8.

### 2.     José Chávez

At an initial hearing on eligibility for post-arraignment release, the Superior Court explained to José Chávez that it concluded Assertive Case Management—a less intensive form of supervision than PTEM, conducted by the San Francisco Pretrial Diversion Project—was an insufficient condition for release and that electronic monitoring was necessary. The parties and court then discussed the warrantless search condition. The Superior Court warned Chávez and his counsel that the Sheriff's Office would likely not enroll Mr. Chávez in the PTEM Program, but defense counsel nonetheless

requested that the court not order the warrantless search condition. Kim Decl., Ex. 7 at 7:26–9:24. When, consistent with its policy and the Superior Court's explanation, the Sheriff did not accept Mr. Chávez into the PTEM Program, the parties returned to court. *See id.*, Ex. 9. Defense counsel argued that the Sheriff was under the Superior Court's jurisdiction such that the court should just order the Sheriff to accept Mr. Chávez into the PTEM Program, but the Superior Court rejected that view. The court explained "I don't think the Sheriff is under the jurisdiction of the Court. For example, I can't order that they accept somebody on home detention outside of the 50 mile radius. The Sheriff's Department is an independent department that has the authority to set their own rules for their program." *Id.* at 3:23–4:1. Defense counsel requested an order to show cause why the Sheriff should not be held in contempt, and the Superior Court denied that request. *Id.* at 4:6–9. And the Superior Court found that participation in the PTEM Program, including the warrantless search condition, was necessary for Mr. Chávez's release from custody. *Id.* at 4:23–5:1 ("[Defense Counsel]: No, my request is for the Court to release him without the electronic monitor. THE COURT: Okay, I'm not going to do that . . . in light of the fact that he's violated the Court's order, I'm willing to explore other options through an in-custody referral."); *id.* at 6:4–5 ("THE COURT: It's Mr. Chavez, over your attorney's legal objections, I am now imposing the search condition[.]"). The court issued an EM order and minute order including a warrantless search condition. Johnson Decl., Exs. C, D. Consistent with the Superior Court's orders, Mr. Chávez was released from custody on March 27, 2024, and enrolled in the PTEM Program. Kim Decl. ¶ 13.

On April 5, 2024, Judge Harold Kahn issued Affidavit Warrants revoking Mr. Chavez's OR release in light of Mr. Chávez's violation of the PTEM Program rules. Johnson Decl., Ex. E. Mr. Chávez was arrested on June 19, 2024, on the Sheriff's Affidavit Warrants and new charges including felony vandalism. *Id.* ¶ 11. He remained in custody as of July 8, 2024. *Id.*

### 3. Otis Mason

The minute orders that the Sheriff's Office received from the Superior Court following the March 21, 2024, bail hearing in the cases against Otis Mason reflected that the court had included a warrantless search condition, while the EM Order deleted the search condition. *Compare* Johnson Decl., Ex. F, *with* Kim Decl., Ex. 12. Mr. Mason never enrolled in the PTEM Program and was not

subject to the program rules Plaintiffs challenge. Johnson Decl. ¶ 13. The Sheriff's Office has not imposed or enforced a warrantless search condition on Mr. Mason since entry of the preliminary injunction. *Id.*

### 4.      Nathaniel Roye

At the arraignment for Nathaniel Roye on March 26, 2024, the Superior Court explained to defense counsel—the same attorney representing Mr. Chávez—that the result of conditioning release from custody on participation in the PTEM Program while striking the warrantless search condition would be that Mr. Roye would remain in custody. *Id.*, Ex. 14 at 4:20–22 ("It would end up, I think, meaning he would stay in custody because the sheriffs won't accept him under the program."). The Superior Court told the parties that it "can't control what the sheriff does with their program." *Id.* at 7:1–2. Defense counsel argued that participation in the PTEM Program was unnecessary for release. *Id.* at 4:25–26 ("I think the least restrictive means is a regular ACM referral."). But the Superior Court rejected that suggestion and explained that it "could only consider the alternatives that [were] before" it at the time, which were to "release [Roye] with a search condition" or "refer him to ICR." *Id.* at 6:9–10, 6:22–24; *see id.* at 7:5–6 ("I need a better way to enforce the stay away order, since he's violated the Court's order already."). The Superior Court also offered to "strike the [search condition from the order] and [Roye could] take a writ and appeal that." *Id.* at 6:25–26. Having "given [defense counsel] the options," the court decided to order an in-custody assessment "to see if there [could] be a plan developed for [Roye's] release." *Id.* at 7:20–22. Although the Sheriff does not have a copy of any hearing transcript in Roye's case other than the one submitted by Plaintiffs, it appears that same day Roye decided instead of the in-custody assessment proposed by the court to consent to the warrantless search condition. Kim Decl. ¶ 19. The court issued an EM Order and minute order including an express warrantless search condition and making release contingent on placement in the PTEM Program. Johnson Decl., Exs. G, H. Consistent with the Superior Court's orders, Mr. Roye was released from custody on March 27, 2024, and enrolled in the PTEM Program. Kim Decl. ¶ 19.

On April 27, 2024, Superior Court Judge Curtis Karnow issued a Sheriff's Affidavit Warrant to revoke Mr. Roye's OR release. Johnson Decl., Ex. I. The Affidavit Warrant reflects that, from March

Sheriff's Opposition to Motion to Enforce Preliminary Injunction
Case No. 22-cv-05541-JST

n:\lit\li2024\230184\01772236.docx

27, 2024, to March 31, 2024, Mr. Roye violated his stay away order five times and that, as of the date of the warrant, it had been 23 days since he had reported for a compliance check. *Id.*

### 5.   Luis Rosales-Verde

At the arraignment for Luis Rosales-Verde on April 17, 2024, the Superior Court once again explained to defense counsel—the same attorney representing Mr. Roye and Mr. Chávez—that it was aware of the options available for pretrial release and believed participation in the PTEM Program was necessary for Mr. Rosales-Verde's release. Kim Decl., Ex. 16 at 5:16–19 ("THE COURT: I think it's the less restrictive alternative, right? We've [OR'd] him once; he hasn't complied. So at this point, I need to have some further enforcement."); *id.* at 5:27–6:1 ("You can -- if he doesn't want to agree to the 1035, the alternative is to order an ICR."). The court again described that a warrantless search condition was required for participation in the PTEM Program. *Id.* at 6:5–10. And the court discussed with the parties some reasons a warrantless search condition is important. *Id.* at 6:15–28 ("I think the sheriff's position, as I understand it -- I would agree with this part of it -- is that wearing an electronic bracelet is a 1035. You are submitting yourself to constant search" and "inherently, they require somebody to check-in[] when they're on electronic monitoring -- sort of random check-in. They do pat searches and things like that for officer safety reasons when they're in facilities. These are the conditions of their program."). Defense counsel asked the Superior Court to issue an "O.S.C." to "the sheriff's department to show cause for this program," and the court denied the request. *Id.* at 7:13–15. The Superior Court issued an EM Order and minute order entering a warrantless search condition. Johnson Decl., Exs. J, K.

### 6.   Jackson Vandeusen

The EM Order issued by the Superior Court in Jackson Vandeusen's case included the warrantless search condition while the minute order stated that the warrantless search condition was not imposed. *Compare* Johnson Decl., Ex. L, *with* Kim Decl., Ex. 18. The Sheriff's Office reached out to the Superior Court and counsel to clarify, consistently making clear that the Superior Court had many options for release and that release to the PTEM Program requires a warrantless search condition. *See* Johnson Decl., Ex. 19. Mr. Vandeusen never enrolled in the PTEM Program and was not subject to the program rules challenged here. Johnson Decl. ¶ 20. The Sheriff's Office has not

9

imposed or enforced a warrantless search condition on Mr. Mason since entry of the preliminary

injunction. *Id.*

### III.    Legal Standard

The filing of a notice of appeal generally divests the district court over the matters appealed.

*McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734–35

(9th Cir. 1982).[2] Although courts retain the ability to enforce their orders, they "may not materially

alter the status of the case on appeal." *Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State*

*Grange*, 182 F. Supp. 3d 1065, 1072 (E.D. Cal. 2016) (citation omitted); *Nat. Res. Def. Council, Inc.*

*v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("We conclude that the district court

possessed jurisdiction to modify the injunction while the consolidated appeal was pending, because the

changes preserved the status quo and did not materially alter the status of the case on appeal."). "While

an appeal is pending, the district court . . . may not take any action that would change the core issues

before the appellate court." *In re TFT-LCT (Flat Panel) Antitrust Litig.*, No. C-07-01827 SI, 2013 WL

6055079, at *1 (N.D. Cal. Nov. 13, 2013); *see also McClatchy Newspapers*, 686 F.3d at 735.

"The standard for finding a party in civil contempt is well settled: The moving party has the

burden of showing by clear and convincing evidence that the [nonmoving party] violated a specific

and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999)

(citation omitted). In enforcing an order, district courts must be guided by the terms of the order at

issue. *See Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984) (in assessing an order

purporting to enforce a consent decree: "the 'scope of a consent decree must be discerned within its

four corners, and not by reference to what might satisfy the purpose of one of the parties to it' or by

what 'might have been written had the plaintiff established his factual claims and legal theories in

---

[2] Under Rule 62, when an appeal is pending from a preliminary injunction order, "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d); *Lowery v. Rhapsody Int'l, Inc.*, No. 16-cv-01135-JSW, 2022 WL 267442, at *1 (N.D. Cal. Jan. 28, 2022). That rule is inapplicable here. It "is generally applied when a party loses at the district court, has an injunction entered against them, and seeks to stay the injunction while they appeal it." *Confederated Tribes & Bands of Yakima Nation v. Gregoire*, No. CV-08-3056-RHW, 2010 WL 11520037, at *3 (E.D. Wash. Aug. 4, 2010) (analyzing former Federal Rule of Civil Procedure 62(c), now 62(d)). In other words, this Rule serves to preserve (not change) the status quo, while an appeal is pending. *Nat'l Grange*, 182 F. Supp. 3d at 1072 (same).

litigation'"); *FTC v. Data Med. Cap., Inc.*, No. SA CV 99-1266 AHS, 2010 WL 1049977, at *24 (C.D. Cal. Jan. 15, 2010) (in adjudicating civil contempt of permanent injunction: "The Court need not look beyond the four corners of the Order to determine its scope when the provisions are clear on their face."). Thus, a court must find that a party "willfully disobey[ed] a *specific and definite order* requiring him to do or to refrain from doing an act." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983) (emphasis added).

## IV.   Argument

Plaintiffs cannot meet the high standard to establish that Defendants violated a "specific and definite" order of the Court—the preliminary injunction. They argue that the "underlying rationale" of the Court's order points in a certain direction. Mot. at 8. But that argument does not show a violation of the injunction, or a need to enforce it, much less establish civil contempt by clear and convincing evidence.

A finding of civil contempt requires that Plaintiffs establish: "(1) that [Defendant] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (citation omitted). A party fails to comply with a court order when it fails to take "all the reasonable steps within [its] power to insure compliance" with the court's order. *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146–47 (9th Cir. 1983) (citation omitted). "Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [*sic*] highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (citation omitted). In short, "civil contempt should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (citation omitted; emphasis in original).

### A.   Plaintiffs Do Not Show the Sheriff Has Violated the Preliminary Injunction.

As to new criminal defendants who enroll in the PTEM Program as a condition of release from custody, such as four of the six defendants highlighted by Plaintiffs, the Court's preliminary injunction

prevents the Sheriff from "imposing or enforcing any search condition broader than that stated in each class member's Superior Court order" and from sharing location information for these class members with other law enforcement agencies. ECF No. 77 at 41. Plaintiffs do not contend the Sheriff is violating the latter restriction; only the former requirement is at issue. *See* ECF No. 101 at 1. Individuals who do not join the PTEM Program, including Mr. Mason and Mr. Vandeusen, are not subject to the program rules Plaintiffs have challenged in this lawsuit. *Id.* at 27.[3] Since the February 27, 2024, deadline for compliance with the preliminary injunction, the Sheriff has only imposed or enforced search conditions consistent with specific, written Superior Court orders in individuals' cases. Johnson Decl. ¶ 5; ECF No. 98 ¶ 4.

As a matter of plain meaning, the Sheriff does not "impose" or "enforce" any warrantless search condition before defendants join the PTEM Program and are subject to the program rules. *See Impose,* Black's Law Dictionary (12th ed. 2024) (defining "impose" as "To levy or exact (a tax or duty)"); *Impose*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/impose (defining "impose" as "to establish or apply by authority" and "to establish or bring about as if by force"). *Enforce,* Black's Law Dictionary (12th ed. 2024) (defining "enforce" in relevant part as "To give force or effect to (a law, etc.)" and "to compel obedience to"); *Enforce*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/enforce (defining "enforce" in relevant part as "to carry out effectively").[4] Because the Sheriff has only imposed or enforced warrantless search conditions consistent with each class member's Superior Court order, he has not violated the preliminary injunction.

---

[3] Plaintiffs seemingly recognize this, describing the asserted violations as affecting "EM participants released since the Order was issued" without explaining how the injunction therefore applies to Mr. Mason or Mr. Vandeusen. Mot. at 9; *see also* ECF No. 77 at 27 (including only those subject to the PTEM Program rules in the subclass definitions).

[4] Despite not addressing in this Court the Sheriff's argument that the injunction they were pursuing was mandatory rather than prohibitory, Plaintiffs argued to the Ninth Circuit that the injunction is solely prohibitory to try to obtain a more permissive standard of review. *See* Plaintiff-Appellees' Answering Br. at 17–18, *Simon v. City and County of San Francisco*, No. 24-1025 (9th Cir. May 10, 2024), Dkt. No. 32.1 ("Answering Br."). This is inconsistent with Plaintiffs' construction of the injunction in the Motion as requiring the Sheriff to accept new criminal defendants in the PTEM Program. The status quo is that the Sheriff can determine the circumstances required for participation. Plaintiffs' erroneous construction of the injunction would destroy this status quo.

For the same reasons, the Court should not grant Plaintiffs' alternative request to issue an order to show cause. *See* Mot. at 11; *cf. NuScience Corp. v. Henkel*, No. CV 08-2661 GAF (FFMx), 2014 WL 12810112, at *2 (C.D. Cal. Feb. 12, 2014) (cited by Plaintiffs but involving factual allegations constituting a violation of the injunction), *report and recommendation adopted*, 2014 WL 1307085 (C.D. Cal. Mar. 31, 2014). The Superior Court has already rejected class members' requests for orders to show cause, recognizing that when the executive branch sets the criteria for participation in a government program, that does not violate anyone's constitutional rights. *See* Kim Decl., Ex. 9 at 4:6–9; *id.*, Ex. 16 at 7:13–15. Instead of seeking writ review, Plaintiffs are improperly asking this Court to intervene.

Seemingly recognizing that the Sheriff has not violated any express terms of the injunction, the Motion relies on other parts of the Order, but those statements are not terms of the injunction. *See Firefighters Loc. Union No. 1784*, 467 U.S. at 574; Mot. at 1 (quoting ECF No. 77 at 37–38); *id.* at 8–9 (same); *id.* at 9 (invoking the "underlying rationale" of the preliminary injunction order and the Sheriff's (unsuccessful) motion to dismiss); *id.* at 10 (citing non-injunction language from preliminary injunction order); *id.* at 11 (citing *In re Humphrey*, 482 P.3d 1008, 1012 (Cal. 2021)). Plaintiffs assert that "the Court cautioned the Sheriff not to leverage its administration of pretrial electronic monitoring ('EM') by threatening to deny release absent the Sheriff's preferred conditions," but do not explain how the portion of the Order they cite reflects that admonition or alters the scope of the injunction. Mot. at 1 (citing ECF No. 77 at 37–38). Rather than identifying specific injunctive relief, Plaintiffs' invocations of the rationales of the Court's order seem intended to suggest this Court broaden its injunction, an issue discussed below.[5]

Plaintiffs also attempt to synthesize new holdings, not rooted in the Order's discussion. For example, they rewrite the injunction to require the Sheriff "not to 'impose or enforce' [warrantless search] conditions where not *originally ordered* by the Superior Court," Mot. at 10 (emphasis added), when the distinction between conditions "originally ordered" versus ordered at some later time does

---

[5] Failing to demonstrate an actual violation of the injunction, Plaintiffs resort to conclusory and unsupported assertions. *See* Mot. at 9 ("the Sheriff has defied and attempted to undermine the Court's directive at every turn"); *id.* at 10 ("the Sheriff's coercive actions amount to a flagrant violation of the Court's Order"). These conclusory assertions do not meet the stringent standard for contempt.

13

Sheriff's Opposition to Motion to Enforce Preliminary Injunction          n:\lit\li2024\230184\01772236.docx
Case No. 22-cv-05541-JST

not appear in the actual Order. A limitation based on conditions "originally ordered" would conflict with the ability of judges to modify conditions of pretrial release based on the circumstances. Finally, Plaintiffs assert, "That class members have been, and will continue to be, detained due to the Sheriff's intransigence and refusal to the comply with the Court's Order implicates a serious violation of their liberty interests." Mot. at 11. But no aspect of the Court's order directs the Sheriff on the timing of pretrial release, which is driven by many factors beyond the Sheriff's control. *See* Kim Decl., Ex. 3; *compare Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (cited by Plaintiffs but directly challenging indefinite detention after acquittal under the Due Process Clause).

To the extent there is any uncertainty about what the injunction requires (there is none), that uncertainty means there cannot be a violation of the preliminary injunction, and especially not one that justifies a finding of contempt. "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam); *see* Fed. R. Civ. P. 65(d); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (vacating judgment of contempt despite technical violations of an order and observing "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the [court's order]" (citation and internal quotation marks omitted)). "The judicial contempt power is a potent weapon. . . . Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). If treated as aspects of the injunction, the portions of the Court's analysis Plaintiffs identify would render the contours of the injunction "of such an indeterminate character that [the Sheriff] cannot readily determine what conduct is being prohibited." *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1284 (N.D. Cal. 2012) (dismissing request for injunctive relief).

The cases cited by Plaintiffs involved clear and repeated violations of preliminary injunctions, unlike here. In *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535 (N.D. Cal. 2019), there was "no question that Defendants violated the preliminary injunction. . . . Defendants [did] not provide[]

evidence that they were unable to comply with the preliminary injunction, and the evidence show[ed] only minimal efforts to comply with the preliminary injunction." *Id.* at 540. Indeed, the defendants in *Calvillo Manriquez* admitted the defendant "had erroneously sent 16,034 notices that payment were due" in violation of the preliminary injunction. *Id.* at 538. Unlike the defendants in *Calvillo Manriquez*, the Sheriff has complied with the preliminary injunction. Plaintiffs also cite *Stone v. City & County of San Francisco*, 968 F.2d 850 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992), for the proposition that the "district court has 'wide latitude in determining whether there has been a contemptuous def[iance] of its order,'" but the issue in *Stone*—like *Calvillo Manriquez*—was whether clear violations of a consent decree were contemptuous, not whether the asserted injunctive prohibitions were clear. *Id.* at 856; *see id.* at 852–53 ("the total jail capacity was exceeded on numerous occasions" and "Jail No. 1 was chronically overcrowded"); *id.* at 857 ("the jail had been overcrowded for eight months before the district court entered the contempt order" and "the City in the past had failed to comply with other provisions of the consent decree"). Here, far from demonstrating many substantial violations over several years, Plaintiffs have shown no violation at all. The Court should therefore deny the Motion.

### B. Broadening the Injunction Would Endanger Public Safety, Harm Pretrial Defendants, and Violate Key Limitations on Injunctive Relief.

In light of the lack of evidence of the Sheriff's violation of the injunction and Plaintiffs' extensive citation to the Order's purported rationales, Plaintiffs appear to seek an injunction applying to more criminal defendants and enjoining more conduct by the Sheriff. To the extent the Motion may be construed in that way, the Court should reject Plaintiffs' request including because (1) the Court cannot modify the existing injunction on appeal, and Plaintiffs do not attempt to satisfy the standard for a new injunction; and (2) the facts do not support an expanded injunction divesting control from the Sheriff of standards for participation in the PTEM Program.

### 1. The Court Cannot Modify the Injunction on Appeal, and Plaintiffs Make No Effort to Satisfy the Standards for a New Injunction.

To the extent Plaintiffs seek to modify this Court's previous preliminary injunction or enter unspecified "further remedial orders," they have not established the Court can or should do so. *See* Mot. at 10–11. Again, courts "may not materially alter the status of the case on appeal." *Nat'l Grange*,

182 F. Supp. 3d at 1072 (citation omitted). "While an appeal is pending, the district court . . . may not take any action that would change the core issues before the appellate court." *TFT-LCT (Flat Panel) Antitrust Litig.*, 2013 WL 6055079, at *1; *see also McClatchy Newspapers*, 686 F.3d at 735.

The "core issues before the appellate court" and in the Motion, are the enforceability of the PTEM Program conditions, including whether the Sheriff can enforce the Superior Court's written orders. *See* Appellants' Opening Br. at 59, *Simon v. City and County of San Francisco*, No. 24-1025 (9th Cir. Mar. 29, 2024), Dkt. No. 23.1 ("Opening Br.") ("the Sheriff respectfully asks the Court to reverse the district court's injunction as applied to individuals subject to specific orders and admonishments by the Superior Court about conditions of release"); *id.* at 5 (identifying as the first issue presented by the appeal: "Can the Sheriff enforce conditions of pretrial release entered on the record by the Superior Court, including the condition allowing for sharing of GPS location data with other law enforcement agencies, for criminal defendants released from custody by the Superior Court subject to participation in the PTEM Program?"). Plaintiffs and the Public Defender's Office submitted most of the transcripts accompanying the Motion to the Ninth Circuit, underlining that the Motion and appeal address overlapping core issues. *See* Plaintiffs-Appellees' Motion for Judicial Notice, *Simon v. City and County of San Francisco*, No. 24-1025 (9th Cir. May 10, 2024), Dkt. Nos. 33.1–33.8; Brief of *Amicus Curiae* San Francisco Public Defender in Support of Plaintiffs-Appellees, *Simon, et al.* and Affirmance, No. 24-1025 (9th Cir. May 17, 2024), Dkt. Nos. 39.2. The Court's injunction does not require the Sheriff to disregard the Superior Court's post-May 2023 written orders setting warrantless search conditions. *See* ECF No. 77 at 41. Plaintiffs ask this Court to extend the injunction to do so now. *See* Mot. at 10–11. The appellate briefs distinguish between the warrantless search condition and sharing of GPS location information on this basis. *See* Opening Br. at 17; Appellants' Reply Br. at 3, *Simon v. City and County of San Francisco*, No. 24-1025 (9th Cir. June 7, 2024), Dkt. No. 56.1 ("Reply Br."). Especially while the appeal is pending, such an extension is improper because it "would change the core issues before the appellate court." *In re TFT-LCT (Flat Panel) Antitrust Litig.*, 2013 WL 6055079, at *1. While this Court may preserve the status quo, it may not "finally adjudicate substantial rights directly involved in the appeal." *McClatchy Newspapers*, 686 F.3d at 735 (citation omitted).

To the extent the Motion is alternatively construed as a motion for entry of a new preliminary injunction requiring the Sheriff to accept criminal defendants into the PTEM Program inconsistent with the program design, Plaintiffs make no effort to satisfy the standards for a new injunction. Their notice of motion and proposed order do not seek such relief. They do not discuss any of the factors for entry of a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (listing required showings by plaintiff). Nor do they provide evidence supporting expansion of the certified subclasses to reach defendants not in the PTEM Program. *See* Fed. R. Civ. P. 23.

### 2.    The Facts Undermine an Expanded Injunction.

It is entirely inappropriate for Plaintiffs to use a purported motion to enforce the injunction to sidestep having to make a proper motion to modify the injunction. That is particularly so given the serious separation of powers and federalism issues implicated by Plaintiffs' desired expansion of the terms of the injunction. Given the gravity of these issues, the Court should decline to entertain Plaintiffs' efforts. A preliminary injunction of the type envisioned by Plaintiffs would conflict with the Superior Court's process of considering pretrial release and constitutional relationship with the Sheriff; override the Sheriff's judgments on public safety and criminal justice in the design of the PTEM Program; collaterally invalidate clear Superior Court orders; and inject the Court further into administration of pretrial release in San Francisco.

The Superior Court hearing transcripts submitted by Plaintiffs with the Motion and earlier in this case do not support Plaintiffs' position, but rather support the Sheriff. The transcripts show the Superior Court recognizes the options available to it in addressing pretrial release from custody. *See* Kim Decl., Ex. 9 at 4:23–28 (DEFENSE COUNSEL: "No, my request is for the Court to release him without the electronic monitor. THE COURT: Okay, I'm not going to do that -- DEFENSE COUNSEL: Okay. THE COURT: -- in light of the fact that he's violated the Court's order."); *id.* Ex. 14 at 6:22–24 (THE COURT: "The alternatives I have before me are I can release him with a search condition. I can refer him to ICR. Those are the two that I'm considering."). The transcripts reflect individualized consideration of charges, evidence, and performance while out of custody. *See id.*; Ex. 16 at 5:16–19 ("THE COURT: I think it's the less restrictive alternative, right? We've ordered him once; he hasn't complied. So at this point, I need to have some further enforcement."); *id.*, Ex. 11

at 11:19–13:7 (discussing defendant's circumstances and conditions); ECF No. 58-2 at 3:26–4:1

("THE COURT: The Court previously, the last time she was arrested, referred her for in-custody

review, and that hasn't seemed to have been sufficient. What are you proposing beyond that?"). And

the transcripts directly undermine Plaintiffs' untenable position that the Sheriff is incapacitated from

setting conditions for the PTEM Program. *See id.*, Ex. 9 at 3:23–4:1 ("I don't think the Sheriff is under

the jurisdiction of the Court. . . . The Sheriff's Department is an independent department that has the

authority to set their own rules for their program."); ECF No. 58-2 at 5:28–6:2 (THE COURT: "The

litigation involves her not -- litigants not understanding that they're being put on 1035. But those are

the conditions of the sheriff's program.").

The Sheriff has concluded that the warrantless search condition is necessary to ensure that, in

conducting the PTEM Program, the Sheriff's Office does not violate the Fourth Amendment rights of

Program participants. Johnson Decl. ¶¶ 3–4; ECF No. 31-17 ¶¶ 14–15; ECF No. 79-3 ¶ 4. The PTEM

Program provides an option for intensive supervision on pretrial release to the criminal courts,

allowing for the release from custody of defendants who would otherwise be detained. Johnson Decl.

¶ 4; ECF No. 31-17 ¶ 4. But given the nature of the program and typical charges faced by participants,

the Sheriff's Office or other peace officers at its direction must be able to search PTEM Program

participants to ensure they are complying with the terms of the court's orders on their pretrial release

and the PTEM Program. Johnson Decl. ¶ 4. The warrantless search condition allows the Sheriff's

Office to determine what PTEM Program participants are doing and whether they are violating the

terms of their release. *Id.* In conducting initial home checks and periodic compliance checks as part of

the PTEM Program, the Sheriff's Office relies on the warrantless search condition. Johnson Decl. ¶ 3.

A warrantless search condition is not required when a defendant will be enrolled in residential

treatment program that will supervise the defendant. *Id.* But it would not be feasible to have the PTEM

Program without a warrantless search condition applicable to PTEM Program participants supervised

by the Sheriff. *Id.* In lieu of detention, PTEM Program participants are released into society. *Id.* ¶ 4.

The warrantless search condition supports both the interests in public safety and the participants return

to court. *Id.* The GPS monitor is helpful in informing the SFSO about where PTEM Program

participants are located but not necessarily what they are doing. *Id.* The search condition can help

identify, for example, weapons, burglary tools for those charged with burglary, and car keys for those who are prohibited from driving. *Id.* Preventing the Sheriff from effecting warrantless searches when necessary and authorized by the Superior Court's orders would therefore harm public safety and upset the Sheriff's judgments on criminal justice in the design of the PTEM Program.[6]

Plaintiffs, even more clearly than before, have the wrong defendants for the broader injunction they seek because their requested relief would involve collaterally invalidating Superior Court orders. Plaintiffs' position is directly inconsistent with the orders issued in the cases they discuss. *See* Johnson Decl., Exs. A–D, F–H, J–L. On appeal, Plaintiffs' lead argument about why they can collaterally invalidate the Superior Court's admonitions about sharing of location information with other law enforcement agencies is that those admonitions are not orders. *See* Answering Br. at 23–27. Whatever the merits of that argument in the context of the information sharing condition, Plaintiffs have no such argument on the warrantless search condition that is reflected in both the EM Order and minute order. As the Superior Court explained to counsel for Nathaniel Roye, the appropriate course to challenge these Superior Court orders is through a writ in state court, not this case. Kim Decl., Ex. 14 at 6:25–26.

The broader injunction sought by Plaintiffs would also create a separation of powers conflict between the Superior Court and Sheriff with respect to the design of the PTEM Program. Article III, section 3 of the California Constitution states, "[t]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others . . . ." Cal. Const., art. III, § 3. Again, the Superior Court has repeatedly recognized and respected the distinct constitutional roles of the court and Sheriff. *See, e.g.*, Kim Decl., Ex. 9 at 3:23–4:1 ("I don't think the Sheriff is under the jurisdiction of the Court. . . . The Sheriff's Department is an independent department that has the authority to set their own rules for their program."). As the executive officer in charge of the PTEM Program, the Sheriff is constitutionally empowered to decide

---

[6] Plaintiffs suggest in a footnote that the Sheriff's public safety rationale is contradicted by his decision not to seek Sheriff's Affidavit Warrants for the diminishing number of defendants on the PTEM Program without an enforceable warrantless search condition under the injunction. *See* Mot. at 9 n.1. This assertion is inconsistent with the record, which reflects the Sheriff's significant concerns about this issue. *See, e.g.*, Sessions Decl., Ex. A, Dkt. No. 8.3 ("Limiting the Sheriff's Office's ability to enforce the Court's order endangers the public and crime victims."). And it is surprising given Plaintiffs' repeated assertion that Sheriff should not request affidavit warrants in this context. *See, e.g.*, ECF No. 82 at 5.

whether to run such a program and to design the program consistent with his criminal justice reform and public safety priorities. *See* Johnson Decl. ¶¶ 3–4. The courts can then decide whether they want to condition a defendant's release from custody on participation in the PTEM Program. An injunction forcing the Sheriff to accept new PTEM Program participants without a warrantless search condition would improperly wrest "complete" control of the ability to set minimum standards for enrolling in the Program from the Sheriff. *Laisne v. State Bd. of Optometry*, 123 P.2d 457, 460 (Cal. 1942); *see People v. Bunn*, 37 P.3d 380, 389 (Cal. 2002) ("[T]he Constitution . . . vest[s] each branch with certain 'core' or 'essential' functions that may not be usurped by another branch.") (citation omitted). It would not leave the Sheriff with the required "ultimate control over" the Program's design. *In re Danielle W.*, 255 Cal. Rptr. 344, 350 (Ct. App. 1989).

On top of these many other problems, the injunction Plaintiffs seek to impose would improperly place the federal courts in the position of policing whose warrantless search conditions are enforceable and whose are not. The Court would be put in the position of deciding when the Superior Court constitutionally ordered a warrantless search condition and when an order with a written warrantless search condition acknowledged by the defendant on the record in court is unenforceable. Plaintiffs apparently believe this review would include not just the orders issued by the Superior Court but the transcripts of all hearings involving pretrial release conditions. *See generally* Mot. (relying on excerpts from hearing transcripts); *see* Mot. at 5–6 (asserting violations as to Nathaniel Roye even though his initial release orders included a warrantless search condition). This type of micromanagement conflicts with *O'Shea v. Littleton*, 414 U.S. 488 (1974), amounting to "nothing less than an ongoing federal audit of state criminal proceedings." *Id.* at 500; *see L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992). And it is inconsistent with the required narrow tailoring of any injunction against a state or local government. *See Clark v. Coye*, 60 F.3d 600, 603–04 (9th Cir. 1995).

## V.     Conclusion

For the above reasons, the Court should deny Plaintiffs' Motion to Enforce the Preliminary Injunction.

1   Dated:  July 12, 2024                         Respectfully Submitted.

2                                                 DAVID CHIU
                                                  City Attorney
3                                                 JENNIFER E. CHOI
                                                  Chief Trial Deputy
4                                                 ALEXANDER J. HOLTZMAN
                                                  JOSE A. ZELIDON-ZEPEDA
5                                                 STEVEN F. EGLER
                                                  Deputy City Attorneys
6

7                                         By:  _____ */s/ Alexander J. Holtzman*_____
                                                  ALEXANDER J. HOLTZMAN
8
                                                  Attorneys for Defendants
9                                                 CITY AND COUNTY OF SAN FRANCISCO, PAUL
                                                  MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN
10                                                FRANCISCO SHERIFF

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21