Shilpi Agarwal, State Bar No. 270749
Avram D. Frey, State Bar No. 347885
Emi Young, State Bar No. 311238
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
Email: sagarwal@aclunc.org
afrey@aclunc.org
eyoung@aclunc.org

Justina K. Sessions, State Bar No. 270914
Eunice Leong, State Bar No. 320499
Olivia Rosen, State Bar No. 340120
Andrew Ehler (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com
eunice.leong@freshfields.com
olivia.rosen@freshfields.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,<br><br>Defendants. | CASE NO.: 4:22-cv-05541-JST<br><br>(San Francisco County Superior Court, Case No.: CGC-22-601686)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

    A. The Sheriff's Conduct Violates the Plain and Unambiguous Language of the Preliminary Injunction ........................................................................................... 2

    B. Should the Court Deem Clarification or Modification of its Order Appropriate, It Has Jurisdiction to Do So ............................................................................................ 4

    C. The Sheriff's Efforts to Impose Search Conditions Found Unnecessary by the Superior Court Violate State and Federal Law ................................................................... 6

III. CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
  284 F.3d 1091 (9th Cir. 2002) ..............................................................................................4, 5

*Armstrong v. Brown*,
  768 F.3d 975 (9th Cir. 2014) ......................................................................................................4

*Clemmons v. City of Long Beach*,
  283 F. App'x 487 (9th Cir. 2008) ..............................................................................................7

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ...................................................................................................................7

*Hawaii v. Trump*,
  871 F.3d 646 (9th Cir. 2017) ......................................................................................................4

*In re Humphrey*,
  11 Cal. 5th 135 (2021) ...............................................................................................................7

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*,
  686 F.2d 731 (9th Cir. 1982) ......................................................................................................6

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
  242 F.3d 1163 (9th Cir. 2001) ....................................................................................................5

*Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*,
  182 F. Supp. 3d 1065 (E.D. Cal. 2016) ......................................................................................6

*Simon v. City & Cnty. of S.F., et al.*,
  No. 24-1025 (9th Cir. Mar. 30, 2024) ...............................................................................1, 5, 6

*Simon v. City & Cnty. of S.F., et al.*,
  No. 24-1025 (9th Cir. May. 10, 2024) .......................................................................................5

*Vallindras v. Mass. Bonding & Ins. Co.*,
  42 Cal. 2d 149 (1954) .................................................................................................................7

*Williams v. Dart*,
  967 F.3d 625 (7th Cir. 2020) ..................................................................................................7, 8

*In re York*,
  9 Cal. 4th 1133 (1995) ................................................................................................................7

**Rules**

Fed. R. Civ. P. 62(d) ..........................................................................................................................5

**Page(s)**

**Statutes**

Cal. Civ. Proc. Code § 262.1 …………………...…………………………………………………..2, 7

**Other Authorities**

*Impose*, The American Heritage Dictionary.com, https://www.ahdictionary.com/word/search.
html?q=impose (last visited on July 18, 2024) …………………………………………………...3

*Impose*, Cambridge Dictionary.org, https://dictionary.cambridge.org/us/dictionary/english/ impose
(last visited on July 18, 2024) …………………………..………………………………...3

*Impose*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/impose (last visited on
July 18, 2024) ……………………………………………………………………….…………3

*Impose*, Oxford Learner's Dictionaries.com, https://www.oxfordlearnersdictionaries.com/us/
definition/american_english/impose (last visited on July 18, 2024) ……………………….…..3

I.   INTRODUCTION

In this Court's preliminary injunction order ("Order"), Defendants were enjoined from "imposing or enforcing any search condition broader than that stated in each class member's Superior Court order." ECF 77 at 41. With the word "impos[e]," the Order broadly prohibits the Sheriff from requiring or compelling a four-way search condition as to criminal defendants for whom the Superior Court determined the condition unnecessary. Defendants argue they have not violated the injunction because they have ceased imposing these conditions directly upon electronic monitoring ("EM") releasees via the program agreements; instead, they have imposed the condition vis-à-vis interaction with the Superior Court: *i.e.*, by defying the Court's Order of release and detaining releasees while directing the Superior Court to revise its release orders as a pre-condition for seeing its EM release orders executed. Defendants are well aware that their actions are designed to contravene the Court's Order; indeed, their own statements suggest they chose to defy the Order because they disagree with its reasoning.

Because the Order is clear and unambiguous, the Court need not reach the issue of modification. However, if it decides clarification or modification is appropriate, the pending appeal does not deprive it of jurisdiction to enter such orders. Nor should it give weight to the Sheriff's new argument, that any order requiring it to execute Superior Court release orders that do not contain its preferred conditions creates a "separation of powers conflict." ECF 104 at 24. Throughout this litigation, the Sheriff has repeatedly and consistently characterized itself as acting solely to implement the San Francisco Superior Court's release orders. *See, e.g.*, ECF 24 at 8 ("the SFSO acts, for purposes of pretrial release, solely to implement the criminal court's directives"); ECF 31-17, ¶ 3 ("[t]he San Francisco Sheriff's Office, in implementing the PTEM, is enforcing the criminal court's orders"); Appellants' Opening Br. at 2, *Simon v. City & Cnty. of S. F., et al.*, No. 24-1025 (9th Cir. Mar. 30, 2024), D.E. 23.1 ("Appellants' Opening Br.") ("[T]he Sheriff relies on the validity of orders entered by state courts. He is not – and constitutionally cannot be – in the position of second guessing these orders").

Now, the Sheriff changes tactics and defends its refusal to carry out individualized EM release orders on the ground that "[a]s the executive officer in charge of the PTEM Program, the

Sheriff is constitutionally empowered . . . to design the program consistent with his criminal justice reform and public safety priorities." ECF 104 at 24–25. But Defendant Sheriff has no legal authority to set conditions of pretrial release or defy the Superior Court's lawful orders. In unlawfully detaining class members to express its disagreement with the Superior Court release orders, the Sheriff ignores both the constitutional role of the court as a neutral adjudicative body in deciding the appropriate conditions of pretrial release, as well as the Sheriff's *duty* under state law to carry out all orders of the court unless they are patently void. Cal. Civ. Proc. Code § 262.1. Plaintiffs respectfully request that this Court intercede to prevent Defendants from continuing to violate the plain language of the preliminary injunction, state and federal law, and the rights of class members.

## II.  ARGUMENT

### A.  The Sheriff's Conduct Violates the Plain and Unambiguous Language of the Preliminary Injunction

The language of the preliminary injunction is direct and unambiguous. Under the Order, Defendants are preliminarily enjoined from:

> imposing or enforcing any search condition broader than that stated in each class member's Superior Court order and from imposing and enforcing the Program Rules' data sharing provision (Rule 11).

ECF 77 at 41. "The 'revised rules subclass,' consists of all individuals who have in the past been, are currently, or will in the future be subject to the revised version of the Program Rules . . . put in[] place [after] May 2023[.]" *Id.* at 27.

To establish a violation of the Order, Plaintiffs must show that: 1. as to a member or members of the revised rules subclass, 2. Defendants imposed or enforced a search condition broader than that stated in that individual's Superior Court order. They have sufficiently demonstrated each element.

*First*, as to class membership, there is no dispute that four of the six individuals cited in the Motion to Enforce – Ying Ng, José Chávez, Nathaniel Roye, and Luis Rosales Verde – are members of the revised rules subclass because they were or are enrolled in EM and subject to the revised EM Program Rules. *See* ECF 104 at 16–17 (conceding class membership for four cited individuals). The Sheriff contends that the remaining two, Otis Mason and Jackson Vandeusen, were not class members because they were never released on the PTEM Program (due to the Sheriff's refusal to

execute the Superior Court's release orders for them). *Id*. at 17. In making this argument, Defendants construe the Court's order regarding class membership too narrowly. The operative event determining when someone "will in the future be subject to . . . the Program Rules," ECF 77 at 41, is when the Superior Court orders them released on EM and requires they submit to the EM Program Rules. *See, e.g.*, ECF 101-13 at 2 (court order to obey "all orders and rules given by any SFSO employee(s)" and requiring defendants to sign agreement to follow the EM program rules). Both Mason and Vandeusen were ordered released on EM by the Superior Court, ECF 101 at 9–11, and these orders rendered them part of the "revised rules subclass" notwithstanding the Sheriff's refusal to follow these orders. Accordingly, the Court should find that each of the individuals cited in the Motion to Enforce met the criteria for class membership at the time of their EM release order.

  *Second*, as to class members, the terms of the preliminary injunction unambiguously prohibited the Sheriff from *imposing* a search condition where the Superior Court did not order one. ECF 77 at 41. This prohibition applies whether the Sheriff imposed such requirements directly on EM participants or by communicating to the Superior Court that it must impose these conditions to see its order effectuated. Contrary to Defendants' narrow interpretation, the plain meaning of the term "impose" includes where an actor requires or compels acceptance of a particular rule or result. *See, e.g*, Cambridge English Dictionary ("to officially force a rule . . . to be obeyed or received" // "to force someone to accept something")[1]; Oxford Advanced American Dictionary ("to order that a rule . . . be used")[2]; Merriam-Webster Dictionary ("to establish or apply by authority")[3]; The American Heritage Dictionary ("[t]o establish or apply as compulsory").[4] Plainly, the Sheriff is treating a warrantless search condition as compulsory and requiring incorporation by the Superior Court as a precondition for obeying its release orders, even when it is informed that the Superior Court has *already* ordered an individual class member released without such conditions. In several

---

[1] Impose, Cambridge Dictionary.org, https://dictionary.cambridge.org/us/dictionary/english/ impose (last visited on July 18, 2024).
[2] Impose, Oxford Learner's Dictionaries.com, https://www.oxfordlearnersdictionaries.com/us/ definition/american_english/impose (last visited on July 18, 2024).
[3] Impose, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/impose (last visited on July 18, 2024).
[4] *Impose*, The American Heritage Dictionary.com, https://www.ahdictionary.com/word/search. html?q=impose (last visited on July 18, 2024).

cases, this conduct directly compelled the Superior Court to revise its release orders for class members by adding a search condition it had deemed unnecessary. ECF 101 at 6–9 (describing release orders of Ying Ng and Jose Chávez).

Defendants' construction of the preliminary injunction reflects their desired outcome, not its actual terms. In effect, they argue they are enjoined from "imposing" a search condition only insofar as they were informing EM participants directly of such a requirement, but retain their ability to "impose" the rule as a requirement for executing the Superior Court's release order. This is not a distinction reflected anywhere in the Court's Order, nor is such a reading justifiable under either the explicit terms of the injunction or its underlying reasoning. The Sheriff's position is further belied by the statements of its own legal counsel, who defended the Sheriff's actions *not* on the ground that they were consistent with the injunction, but instead by suggesting the Court's Order was wrongly decided. ECF 101-5 at 4–5 ("[Y]ou are assuming Tigar's injunction first is correctly rooted and second that it will be upheld.")

In sum, this Court should reject the Sheriff's artificial construction of the Order and find that its actions coercing the Superior Court to impose the Sheriff's preferred conditions on class members where the Court has already ordered otherwise violate the preliminary injunction.

### B. Should the Court Deem Clarification or Modification of its Order Appropriate, It Has Jurisdiction to Do So

Plaintiffs do not believe the preliminary injunction is ambiguous and have not filed a request seeking modification of the Order. Should the Court find modification appropriate, however, it "has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002); *see also Hawaii v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) ("The district court has the power to supervise compliance with an injunction and to 'modify a preliminary injunction in consideration of new facts.'") (citation omitted). Modification may occur in response to a motion to enforce the injunction, provided the opposing party has notice and an opportunity to respond. *Armstrong v. Brown*, 768 F.3d 975, 979–81 (9th Cir. 2014).

Contrary to Defendants' argument, the pending appeal does not deprive the Court of jurisdiction. Federal Rule of Civil Procedure 62(d) grants courts authority to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights" while an appeal of the order is pending.[5] Fed. R. Civ. P. 62(d). In applying this rule, the relevant question is whether the modifications "materially alter the status" of the appeal. *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (holding "minor adjustments that effectuated the underlying purposes of the original requirements" did not impact the core questions on appeal). The Ninth Circuit has held that "a district court lacks jurisdiction to modify the injunction in such manner as to 'finally adjudicate substantial rights directly involved in the appeal.'" *A&M Recs.*, 284 F.3d at 1099 (citation omitted).

Regardless of how broadly Defendants attempt to construe the issues on appeal, the relevant briefing makes it clear that they have challenged the Court's Order *only* as to warrantless data sharing. *See* Appellants' Opening Br. at 23–25 (summarizing arguments pertaining wholly to the location data sharing condition). As such, even if the Court decides to modify the Order's prohibitions regarding search conditions, that decision would not materially alter the Parties' rights and legal questions on appeal.

Defendants argue that Plaintiffs have made the Court's Order regarding search conditions relevant by submitting several of the transcripts filed with the Motion to Enforce in the appellate record. ECF 104 at 21. But Plaintiffs explicitly indicated that the sole purpose of introducing the transcripts on appeal was to refute the Sheriff's factual assertion that they are "merely following the superior court's orders" in administering the EM program and imposing program rules. *See* Plaintiffs-Appellee's Mot. for Judicial Notice at 8, *Simon v. City & Cnty. of S.F.*, No. 24-1025 (9th Cir. May 10, 2024), D.E. 33.1. Modification of the Order regarding search conditions will not disrupt the core issues on appeal; if anything, any modification consistent with Plaintiffs' motion would only force the Sheriff to conform its behavior to the representations it has made on appeal.

---

[5] Defendants assert Rule 62 is inapplicable. This is incorrect. *See, e.g., A&M Recs.*, 284 F.3d at 1099 (applying the language of Rule 62(d), then as 62(c), to modification of preliminary injunction extending requirements as to enjoined party).

Appellants' Opening Br. at 2 ("[T]he Sheriff relies on the validity of orders entered by state courts. He is not – and constitutionally cannot be – in the position of second guessing these orders").[6]

Finally, even if this Court finds that provisions of the preliminary injunction relating to search conditions are part of the appeal, Plaintiffs merely seek to enforce the clear intent of the Order and preserve the status quo. *See McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734–35 (9th Cir. 1982) (final judgment may be amended while appeal is pending to preserve the status quo). "The status quo is measured at the time the appeal is filed." *Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1072 (E.D. Cal. 2016). To Plaintiffs' knowledge, the Sheriff did not begin refusing to release people ordered released on EM without a search condition until weeks after the notice of appeal was filed. *See* ECF 85 (Notice of Appeal filed February 27, 2024); *cf.* ECF 101 at 6 (identifying earliest known case of Sheriff detaining EM releasee to compel issuance of a search condition as occurring on or around March 12, 2024). Plaintiffs thus seek to return the Parties to their positions before the Sheriff's pattern of unlawful detentions to compel modification of Superior Court release orders began.

### C. The Sheriff's Efforts to Impose Search Conditions Found Unnecessary by the Superior Court Violate State and Federal Law

Defendants argue that construing or modifying the preliminary injunction to prohibit the Sheriff from requiring a search condition for all EM releases raises "serious separation of powers and federalism issues." ECF 104 at 22. But they cite no legal authority for their assertion that the Sheriff can override court-ordered release determinations for its own program prerogatives. Nor can they, for the law says otherwise. By refusing to carry out the Superior Court's lawful release orders unless it accedes to the Sheriff's demands, the Sheriff violates state law and creates grave constitutional issues.

---

[6] Defendants' argument that Plaintiffs seek an order "requir[ing] the Sheriff to disregard the Superior Court's post-May 2023 written orders" is accordingly baseless. ECF 104 at 21. The purpose of this motion is to compel the Sheriff to *comply* with the Superior Court's individualized release orders.

It is the role of the court, not the executive branch, to decide when pretrial release is appropriate and determine necessary conditions of release. *In re Humphrey*, 11 Cal. 5th 135, 154 (2021) (to detain a person pretrial, the *court* must find by "clear and convincing evidence, that no nonfinancial condition of release can reasonably protect [the government's] interests); *In re York*, 9 Cal. 4th 1133, 1149–50 (1995) (release conditions "define the degree of liberty that the *court* or *magistrate*, in his or her discretion, has determined is appropriate to grant to the OR releasee") (emphasis added). Moreover, California state law *requires* the Sheriff to execute all orders issued by the court unless they are patently void. Cal. Civ. Proc. Code § 262.1 ("A sheriff or other ministerial officer . . . shall execute, all process and orders regular on their face and issued by competent authority"); *see also Clemmons v. City of Long Beach*, 283 F. App'x 487, 488–89 (9th Cir. 2008) (recognizing that under section 261.1 the Sheriff has a legal duty to execute orders of the court and may be found liable for failing to do so).[7] Accordingly, the validity of an order regarding commitment or release from custody is "ultimately for the courts, not the sheriff, to decide." *Vallindras v. Mass. Bonding & Ins. Co.*, 42 Cal. 2d 149, 154 (1954).

Federal courts have reached the same conclusion on constitutional grounds. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 112–13 (1975) (requiring judicial determination to justify continued restraint of liberty following arrest); *Williams v. Dart*, 967 F.3d 625, 629–30 (7th Cir. 2020). In *Williams*, for instance, the Seventh Circuit held that plaintiffs – criminal defendants who were ordered admitted to bail subject to Sheriff's electronic monitoring but who were detained because the Sheriff disagreed with the court's release orders – stated a claim for wrongful pretrial detention. 967 F.3d at 633–34. Recognizing that a "core function of the Fourth Amendment is to put neutral decision-makers between unchecked official discretion and invasions of private liberty by search or seizure[,]" the Court of Appeal concluded that decisions undercutting the criminal court's release orders "were not the Sheriff's to make." *Id*.

---

[7] Defendants argue the transcripts submitted in support of the motion to enforce "directly undermine . . . that the Sheriff is incapacitated from setting conditions for the PTEM Program." ECF 104 at 23. That the judges of the Superior Court do not acknowledge – and may not be aware – that state law requires the Sheriff to carry out its orders, and disclaim any ability to compel compliance with their individualized orders, does not prove Defendants' contention that they are *legally authorized* to refuse to comply with the Superior Court's release orders.

These authorities make clear that by refusing to carry out the Superior Court's EM release orders unless they contain the *Sheriff's* preferred condition – and intentionally detaining class members ordered released to achieve its own ends – the Sheriff is likely violating state and federal constitutional law. It should not be given further leeway to do so at the expense of the rights and liberty of class members.

The Sheriff avers that in its view, it "would not be feasible to have the PTEM Program without a warrantless search condition applicable to participants." ECF 104 at 8. But again, this is belied by the Sheriff's own admission, following the Court's Order, that there were individuals who remained on EM against whom the Sheriff did not enforce a search condition. ECF 98, ¶¶ 4, 6. It is further belied by the findings of the Superior Court in cases where it did *not* find a warrantless search condition appropriate, such as where the purpose of placing an individual on EM was solely to permit remote GPS tracking and ensure court attendance. *See, e.g.,* ECF 101-2 at 7–9 (declining to impose search condition where the court was solely concerned with managing flight risk via electronic monitoring).

Finally, Defendants submit varied objections regarding the administrability of an injunction that prohibits them from conditioning EM release upon a warrantless search condition, even where the Superior Court determines the condition unnecessary. These arguments can be summarily dismissed.

*First*, Defendants appear to construe Plaintiffs' motion as requesting this Court determine "when the Superior Court constitutionally ordered a warrantless search condition." ECF 104 at 25. Plaintiffs make no such request. They simply seek enforcement of the principal that the *Sheriff* must abide by the Superior Court's orders regarding the necessity or lack thereof of a search condition as to each individual EM releasee. There is no question that the Sheriff had and will have the information necessary to comply with any such requirement moving forward. *See* ECF 101 at 6–11 (describing repeated instances in which the Sheriff acknowledged receiving release orders without a search condition but indicated their refusal to comply).

*Second*, contrary to Defendants' suggestion, Plaintiffs have not requested that this Court "collaterally invalidat[e]" any Superior Court order. ECF 104 at 24. The preliminary injunction

binds only the Sheriff, and Plaintiffs' requests for enforcement are accordingly limited. While the Court's decision and reasoning may inform how the Superior Court approaches future EM release orders, the record suggests that the Superior Court is in fact looking to this Court for guidance on these issues. *See* ECF 101-10 at 4–5 ("I don't think the Sheriff is under the jurisdiction of the Court. . . . So I don't think this Court has any authority to order the Sheriff's—but that's subject to larger litigation at this point."). Neither federalism nor separation of powers concerns bar the Court from enforcing and interpreting its own Order, and Defendants' arguments should be discarded as an attempt to relitigate issues this Court has already decided. ECF 77 at 19–20.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find Defendants have violated the preliminary injunction and issue appropriate remedial orders and/or sanctions. If the Court finds the preliminary injunction does not adequately prohibit the conduct at issue, Plaintiffs alternatively request that the Court clarify or modify the language of the injunction in accordance with its stated reasoning and intent.

Dated: July 19, 2024

/s/ Emi Young
Emi Young, State Bar No. 311238
Shilpi Agarwal, State Bar No. 270749
Avram D. Frey, State Bar No. 347885
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
Email: sagarwal@aclunc.org
afrey@aclunc.org
eyoung@aclunc.org

/s/ Eunice Leong
Justina K. Sessions, State Bar No. 270914
Eunice Leong, State Bar No. 320499
Olivia Rosen, State Bar No. 340120
Andrew Ehler (*pro hac vice*)

FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com
eunice.leong@freshfields.com
olivia.rosen@freshfields.com
andrew.ehler@freshfields.com

*Attorneys for Plaintiffs*